## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

_____

This Document Relates To:

ALL CASES

Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880

## SUPPLEMENTAL RESPONSE BRIEF OF NON-PAPST PARTIES REGARDING PROTECTIVE ORDER AND DISQUALIFICATION ISSUES

Pursuant to the Court's Order of December 13, 2007, the Non-Papst parties,

including Fujifilm, Matsushita, JVC, Olympus, Samsung, and Casio[1] submit this

Supplemental Response Brief in opposition to Papst's Motion for Entry of a Protective

Order (Case No. 06-1751 (*Casio*) Dkt. Nos. 49-50) ("Papst Mot."), regarding issues of an

appropriate protective order and the possibility of disqualification.  All Non-Papst parties

share the same concerns provided in Casio's Opposition to Papst's Motion for a

Protective Order (*Casio* docket No. 58) (Casio Opp.).

In addition to the points made in Casio's opposition brief relating to the

shortcomings of Papst's proposed prosecution bar, the Non-Papst parties make the

following additional points: i) Papst grossly understates the need to safeguard the Non-

Papst parties' technical information from Papst's patent prosecutors; ii) Papst's attempt to

exclude from the prosecution bar individuals who are "indirectly" involved in

---

[1]    The Court's December 13 Order sought input from Non-Papst parties other than Casio.  Casio respectfully requests permission to join in this submission, however, as it joins in the newly proposed provisions for the Protective Order to govern all cases, and agrees with the positions taken herein. Casio hopes that its joining in this paper will allow the Court to address one, combined position of all the Non-Papst parties rather than handling Casio separately on these issues.  To the extent there are differences between this paper and the Casio Opposition, Casio hereby withdraws those earlier positions to allow for a single, combined position of all Non-Papst Parties.

prosecution appears to be unprecedented and effectively renders the bar meaningless; iii) Papst's suggestion that a prosecution bar can be used as a "litigation weapon" is contrived; iv) Papst's proposed one-year prosecution bar is far too brief; and v) Papst's proposal to restrict the bar to only the prosecution of the patents-in-suit and continuations is unjustified and without legal basis.  Papst's proposed prosecution bar should be rejected, the bar proposed by the Non-Papst parties below should be adopted, and the parties should be given additional time in which to fashion a complete protective order governing discovery in this matter.

With respect to the possible need for disqualification of the Welsh & Katz firm, the Non-Papst parties agree that the involvement of Welsh & Katz litigators in licensing negotiations involving the patents-in-suit presents a likelihood that those attorneys will need to testify on damages issues, creating ethical conflicts requiring disqualification. However, the Non-Papst parties propose as an alternative to disqualification that the damages issue be bifurcated for discovery and trial so that the Welsh & Katz attorneys can be permitted to represent Papst at a trial directed to the liability issues.  If this Court rejects bifurcation, the Non-Papst parties request an order compelling Papst to produce information relating to the licensing/disqualification issue so that the Non-Papst parties can make an informed decision with respect to disqualification.  This information includes complete responses to Casio's interrogatory No. 4, as well as the deposition of Mr. Schnayer, Papst's lead litigation counsel.

I.    **PROPOSED PROTECTIVE ORDER IS INADEQUATE; THE PROSECUTION BAR PROPOSED BY THE NON-PAPST PARTIES SHOULD BE ENTERED**

A.    **Papst Baselessly Downplays The Risk Of Disclosure Of The Non-Papst Parties' Technical Information**

As a preliminary matter, Papst vastly understates the necessity of preventing the disclosure of the Non-Papst parties' confidential technical information about their products to those involved with patent prosecution.  The "inventions" of the patents-in-suit have nothing to do with digital cameras.  Yet, the Welsh & Katz firm is this very day seeking new patent claims in related continuation patent applications that Papst, no doubt, hopes to assert against the cameras of all the Non-Papst parties when and if the Patent and Trademark Office ("PTO") allows those claims.  Papst's task would be made significantly easier if the attorneys prosecuting the application were also privy to the confidential technical information regarding the Non-Papst Parties' cameras.  Indeed, Jeffrey Salmon, a Principal at the Welsh & Katz firm who is prosecuting and signing Papst's filings with the PTO in Papst's "continuation" patent applications, has attended substantive discussions between Samsung and Papst, including an August 30, 2006 meeting, regarding Papst's infringement allegations.  Declaration of Daejin Jeon, filed concurrently herewith, ¶¶ 3-4.  Moreover, as pointed out in the Casio opposition brief, the Welsh & Katz litigators have been involved in the prosecution of the pending applications – a fact not disputed in the Papst Reply Memorandum.  *See* Exhibit B to the Casio Opposition.  Clearly, the distinction between prosecution and litigation activities at the Welsh & Katz firm is not clearly defined.

Papst, however, suggests that its prosecuting attorneys will be able to momentarily forget the Non-Papst parties' confidential information when engaged in

prosecution activities (Papst Mot. at 4.), a proposition that many courts have recognized as a virtual impossibility. *Mercexchange, L.L.C. v. eBay, Inc.*, 467 F.Supp.2d 608, 623 (E.D. Va. 2006) ("it is oftentimes impossible for an individual, even with the noblest of intentions, to delineate between ideas that they may advance as a result of their own creation, and those influenced by past exposure to confidential information.").[2] Papst also insists incorrectly that no protection is needed because Papst does not compete with the Non-Papst parties (Papst Mot. at 7). Papst's business, however, is to seek out the same consumer dollars through its intellectual property enforcement as those that the Non-Papst parties seek through sales of their products. Several courts agree that this constitutes competition for purposes of granting relief under Rule 26(c). *In re Papst Licensing, GmbH, Patent Litigation*, No. MDL 1278, 2000 WL 554219, *4 (E.D. La. May 4, 2000) ("preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decision-making activity").[3] The importance of shielding Papst's prosecution lawyers from the Non-Papst parties' confidential information is vital.

---

[2]    *See also Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783 (D. Nev. 1998) ("[n]o matter how much good faith [such lawyers] might exercise, it is unrealistic to expect that . . . knowledge of [plaintiff's] secret technology would not or could not influence the nature of his advice to [defendant]"); *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 WL 16189689, *5 (D. Del. Dec. 19, 1994) (explaining that an attorney's segregation of confidential third-party knowledge from future prosecution efforts is a "Sisyphean task, for as soon as one idea would be stamped 'untainted,' another would come to mind," and the "level of introspection that would be required is simply too much to expect").

[3]    *See also Infosint S.A. v. H. Lundbeck A.S.*, No. 06CIV2869LAKRLE, 2007 WL 1467784, *4 (S.D.N.Y. May 16, 2007) (finding that attorney was involved in competitive decision-making because he assisted in patent prosecution) ; *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 WL 1196965, *2 (D. Del. May 25, 2004) ("Prosecuting patent applications involves designs of scope and emphasis that implicate competitive decision-making") (internal quotations omitted).

**B.** **Papst's Proposed Prosecution "Bar" Would Permit Prosecution Activities By Those Who Have Access To Non-Papst Parties' Technical Information**

In light of Papst's continuing prosecution activities, and the obvious intermingling between Papst's prosecution and litigation efforts, Papst's proposed prosecution bar is exceedingly permissive. That bar inexplicably grants access to "prosecution bar information" to any outside counsel of record who is not "directly" involved in patent prosecution. Papst Proposed Order, ¶ 7(a). Papst presumably included the word "directly" in its provision for a reason. As Casio pointed out in its opposition brief, that reason is probably Papst's intent for its "litigation" counsel, with complete access to the Non-Papst parties' technical information, to participate in future prosecution efforts "indirectly," perhaps even assisting Papst's prosecutors with claim drafting behind the scenes (depending upon how Papst unilaterally and secretly construes the term "directly.") This is precisely what the prosecution bar is intended to prevent. The prosecution bar should apply to prosecution activities regardless of whether they are "direct" or "indirect," as is the case almost uniformly. *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, No. 04 C 0346, 2005 WL 146967, *2 (N.D. Ill. Jan. 21, 2005) (entering a prosecution bar stating that any person receiving confidential information "shall not participate in any way, *direct or indirect*, in the prosecution or support of the prosecution of any patent application, reexamination or reissue of a patent in the field of [the relevant] technology") (emphasis added); *Cummins-Allison Corp. v. Glory Ltd.*, No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653, *34 (N.D. Ill. Dec. 31, 2003) (protective order stated that "[a]ny person who receives Confidential -- Patent Prosecution Information shall not *directly or indirectly* participate in the prosecution of any patent application") (emphasis

added).[4]  These provisions are consistent with the teaching of the Manual of Complex

Litigation.  *Manual of Complex Litigation (Fourth)*,§ 33.25, page 768 ("consider

including a provision in the protective order that restricts *any* participation in the

prosecution of patent applications in the technical area at issue for a designated period of

time") (emphasis added).  There is virtually no precedent or justification for Papst's

qualified prosecution bar.

### C.    **Papst's Proposed Prosecution Bar Is Deficient In Several Other Ways**

Papst's proposed definition of "Prosecution Bar Information," the category of

information that triggers its prosecution bar, is exceedingly complex and unnecessarily

narrow.  Casio discusses the specific flaws of that definition in its opposition brief, and

the Non-Papst parties generally agree with that discussion and do not repeat it here.

Casio Opp. at 5-6.  It should also be noted that Papst's purported basis for its complex

and admittedly narrow proposed definition is to prevent Casio from using the designation

as a "litigation weapon."  Papst Mot. at 3.  But Papst does not, and cannot, explain how

such a designation could hamper its litigation efforts.  Papst's litigation counsel will have

complete access to this information, so long as they are not involved in patent

prosecution.  In the unlikely event Papst determines that it has a legitimate basis for

disclosing to its patent prosecutors information that has been designated under the

prosecution bar, it will be free to challenge the legitimacy of that designation at that time.

In addition, Papst's proposed bar of one year after the termination of this action is

far too brief.  Papst Proposed Order, ¶ 7(a).  It is common for prosecution bars to last

---

[4]    *See also Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 U.S. Dist. LEXIS 91453,
    *16 (E.D. Tex. Dec. 19, 2006) (prosecution bar stating that any person receiving confidential
    information "shall not draft, file, prosecute, or assist in the drafting, filing, or prosecution of any new
    or currently pending patent applications"). *Commissariat A L'Energie Atomique*, 2004 WL 1196965
    (prosecution bar stating that any person receiving confidential information "will not participate in,
    direct or supervise any patent prosecution activity").

much longer than one year. *See, e.g., Wm. Wrigley Jr. Co.*, 2005 WL 146967, *2 (explaining that "[t]he period of limitation ought to be longer than one year given the current length of time it takes to secure a patent and the ability of an applicant to amend the patent application during prosecution," and imposing a three year bar); *Chan v. Intuit, Inc.,* 218 F.R.D. 659, 661-62 (N.D. Cal. 2003) (Prosecution bar lasting two years after termination); *Visto Corp.*, 2006 U.S. Dist. LEXIS 91453, *16 (eighteen month bar). Given the fact that Papst's sole business is the prosecution and enforcement of intellectual property, as well as the magnitude of highly confidential technical information that is likely to be produced from the several Non-Papst parties in this litigation, a bar of three years is warranted here.

Finally, Papst's prosecution bar is flawed because it applies only to the patents-in-suit or their related continuation applications (Papst Proposed Order, ¶ 7(a)), and not more broadly to any technology related to the patents-in-suit. The risk that Papst will use the Non-Papst parties' confidential technical information improperly to ensure that new claims cover the Non-Papst parties' products is present regardless of whether those new claims are in the continuation applications of the patents-in-suit, or in an entirely new family of patent applications. For this reason, prosecution bars are generally not limited to the family of the patents in suit, but include all related technology. *Wm. Wrigley Jr. Co.*, 2005 WL 146967, at *2 (prohibiting future prosecution "in the field of chewing gum technology"); *Cummins-Allison Corp.*, 2003 U.S. Dist. LEXIS 23653, at *34 (barring prosecution of any application "relating to the subject matter of the patents-in-suit"); *Commissariat A L'Energie Atomique*, 2004 WL 1196965 (D. Del. May 25, 2004)

(barring prosecution of any application involving "LCD technology"). The prosecution

bar entered in this case should have a similar scope.

      **D.**     <u>**The Prosecution Bar Proposed By The Non-Papst Parties Should Be Entered**</u>

      The Non-Papst parties respectfully request that the Court direct that any

Protective Order entered in this matter contain the following prosecution bar provisions:

> No attorney involved in any manner with the drafting or prosecution of
> any new or pending patent application relating to the subject matter of the
> patent in suit shall have access to any [information to be protected from
> prosecution counsel];[5] and

> No attorney who has been given access to any such information may be
> involved in any manner with the drafting or prosecution of any new or
> pending patent application relating to the subject matter of such
> information during the pendency of this litigation and for a period of three
> years following the termination (including any appeals) of all suits that are
> a part of this MDL.

      The above proposed prosecution bar addresses each of the concerns discussed

herein because it i) applies to all prosecution activities, and not just those that can

arguably be described as "direct;" ii) is of an adequate duration to address the risk that

Papst will use the Non-Papst parties' information improperly; iii) does not require the use

of a complex and unduly narrow definition of the category of protected information; and

iv) applies to the prosecution of any patents that would be implicated by the Non-Papst

parties' confidential information, and not just to the family of the patents-in-suit.

---

[5]    The parties propose that the precise scope of documents triggering the prosecution bar be negotiated at
a later time, but reject the overly complex and controversial definition of "Prosecution Bar
Information" proposed by Papst.

In addition, any future protective order should include a provision imposing hefty sanctions on Papst, the Welsh & Katz firm, and the individual attorneys involved for any breach.[6]

## II.   DAMAGES ISSUES SHOULD BE BIFURCATED OR, ALTERNATIVELY, PAPST SHOULD BE ORDERED TO PRODUCE INFORMATION RELATING TO DISQUALIFICATION

Mr. Schnayer, and likely other members of his firm, have been leading licensing negotiations for the patents-in-suit with the Non-Papst parties as well as with other companies, as Casio discussed at length in its opposition brief (Casio Opp. at 2-3). As a result, those attorneys likely will be necessary witnesses on the damages issues of this case. However, pursuant to the professional rules of conduct in this and other jurisdictions, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."  N.J. Rules of Prof. Conduct, Rule 3.7; Del. Prof. Cond. R. 3.7; N.D. Ill. Local Rule 83.53.7; and D.C. Rules of Prof. Conduct, Rules 1.7 and 3.7, and related commentary ("Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.").[7] Accordingly, there is a strong chance that Papst's lead counsel, Mr. Schnayer, and possibly others of the Welsh & Katz firm and/or that entire law firm, should be disqualified.

However, the Non-Papst parties agree, and have proposed to Papst, that this disqualification issue can be avoided if the damages and liability issues are bifurcated. That is, as the Welsh & Katz attorneys would only need to be witnesses regarding

---

[6]   "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."  *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988).

[7]   As this is now a multi-district litigation, and some of the cases will be transferred back to their home forums for trial, the pertinent rules of all the involved courts should be considered in this regard.

damages, there may be no need for them to be disqualified in a liability phase if these cases are bifurcated and liability is litigated before damages. This Court is empowered to do so. *See, e.g., In re Data General Corp. Antitrust Litigation*, 510 F.Supp. 1220, 1223 (J.P.M.L. 1979) ("Judge Orrick has adopted a bifurcated approach to the actions before him in the transferee district. Discovery and trial have been scheduled to occur first on the antitrust tie-in issues present in the actions, to be followed by discovery and trial of the remaining issues.); *Multidistrict Litigation Manual*, § 10:6 ("Remand may be appropriate where the transferee court orders bifurcated proceedings and the discovery and trial on the common issues is complete"); *Id*., § 9:12 ("The transferee court may order bifurcation of litigation, and may defer discovery on some issues until after the trial of a threshold issue.") Furthermore, bifurcation has been suggested as an appropriate means to negate prejudice to a party in the *Manual of Complex Litigation*. *Manual of Complex Litigation*, 4th ed., § 33.23 at 762 ("bifurcation is appropriate . . . where used to negate prejudice to a party. . . ."). Courts have also considered bifurcation a reasonable solution to disqualification issues. *Coolsavings.com Inc, v. E-Centives, Inc.*, No. 98 C 4924, 2000 U.S. Dist. LEXIS 12985, *14-22 (N.D. Ill. August 31, 2000) (bifurcating to avoid disqualification issue); *see also Summagraphics Corp. v. Sanders Assoc., Inc.,* No. B-88-352, 1991 U.S. Dist. LEXIS 16387, at *9-11 (D. Conn. March 12, 1991) (considering bifurcation as an option to avoid disqualification). Bifurcation is appropriate in this case for several additional reasons. *See* Casio's pending motion for bifurcation (06-cv-1751, docket # 54). Thus, if the Court bifurcates discovery of damages issues and recommends the bifurcation of trial, the Non-Papst parties will forego a disqualification motion in the liability phase of the cases.

If, however, the Court denies the Non-Papst parties' request for bifurcation, then the Non-Papst parties request discovery on the issue of disqualification, which the parties presently lack the facts necessary to evaluate adequately (*i.e.*, whether to file a motion and, if so, which attorneys should be disqualified) as a result of Papst's ongoing discovery misconduct.[8]  *See, e.g.*, Casio Opp. at 2-3.  Thus, should the Court determine that bifurcation is not warranted, the Non-Papst parties request an order compelling Papst to produce the information needed to make an informed decision regarding disqualification.  This discovery should include documents and information sufficient to show the identities of all Welsh & Katz counsel who were involved in licensing negotiations, as well as the specific licensing and negotiating activities of those individuals.  This would include all correspondence with potential and actual licensees, and any notes, presentations, and meeting minutes from those negotiations.  The Non-Papst parties should also be permitted to take the deposition of Mr. Schnayer regarding these matters.  This discovery is needed to determine which Welsh and Katz attorneys of record will be necessary witnesses on damages and, therefore, which attorneys should be disqualified.

## III.    <u>CONCLUSION</u>

For all the foregoing reasons, the Non-Papst Parties respectfully request:

(1) A strict Protective Order provision to protect the confidential technical

---

[8]    As Papst has unreasonably refused to allow access to the key documents and information needed by the Non-Papst Parties, and refused to comply with the express order of Magistrate-Judge Robinson for a "complete response" to Casio's interrogatory requesting information on the licensing negotiations (06-cv-1751, docket No. 35-2, page 27), the Non-Papst Parties respectfully request that the Court employ a presumption that the documents and information are unfavorable to Papst on the disqualification issue.  *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) v. NLRB*, 459 F.2d 1329, 1336 (D.C. Cir. 1972)  ("[W]hen a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.")

information of the Non-Papst Parties, as outlined in Section I.D., *supra*; and

(2) An order bifurcating discovery and trial on the issues of liability and damages.

In the event the Court declines bifurcation, the Non-Papst Parties respectfully request an order permitting the Non-Papst Parties to take discovery so they may determine whether to file a motion to disqualify Mr. Schnayer and any of his colleagues. Specifically, in the event bifurcation is denied, the Non-Papst Parties request an order that:

(a) Papst produce to all Non-Papst Parties, within ten days, all documents regarding licensing negotiations and a complete response to Casio's Interrogatory 4;

(b) all documents and information described in part (a) be unrestricted with regard to time, and include any information allegedly subject to the attorney client privilege or attorney work product protection in light of Magistrate-Judge Robinson's Order that Papst has waived its privilege objections (*see* 06-cv-1751, docket No. 35-2);

(c) a deposition of Mr. Schnayer on the licensing negotiations be held within 14 days of the service of the documents and information described in part (a); and

(d) the Non-Papst Parties file any motions for disqualification within 14 days of the deposition of Mr. Schnayer, or advise the Court that they have declined to do so.

Dated: January 11, 2008                    Respectfully submitted,


                                           s/ Steven J. Routh_____
                                           Steven J. Routh
                                           HOGAN & HARTSON L.L.P.
                                           555 13th Street, NW
                                           Washington, DC 20004-1109
                                           Telephone:  (202) 637-6472
                                           Facsimile:  (202) 637-5910
                                           sjrouth@hhlaw.com

                                           Attorney of Record for Fujifilm Corporation
                                           And Fujifilm U.S.A., Inc.


                                           s/ Patrick J. Kelleher_____
                                           Patrick J. Kelleher
                                           DRINKER BIDDLE & REATH LLP
                                           191 N. Wacker Dr. # 3700
                                           Chicago, IL  60606
                                           Telephone:  (312) 569-1000
                                           Facsimile:  (312) 569-3375
                                           patrick.kelleher@dbr.com

                                           Attorney of Record for Samsung Techwin
                                           Co., Ltd. and Samsung Opto-Electronics
                                           America, Inc.


                                           s/ Richard de Bodo_____
                                           Richard de Bodo
                                           HOGAN & HARTSON LLP
                                           1999 Avenue of the Stars, Suite 1400
                                           Los Angeles, CA 90067
                                           Telephone:  (310) 785-4694
                                           Facsimile:  (310) 785-4601
                                           rdebodo@hhlaw.com

                                           Attorney of Record for Matsushita Electric
                                           Industrial Co., Ltd., Olympus Corp. and
                                           Olympus Imaging America, Inc.

13

s/ Rachel M. Capoccia
Rachel M. Capoccia
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone:  (310) 785-4744
Facsimile:  (310) 785-4601
rmcapoccia@hhlaw.com

Attorney of Record for Victor Company Of
Japan, Ltd.


s/ J. Kevin Fee
J. Kevin Fee
MORGAN, LEWIS & BOCKIUS, L.L.P.
1111 Pennsylavania Avenue, NW
Washington, DC 20004-2541
Telephone:  (202) 739-5353
Facsimile:  (202) 239-3001 (fax)
jkfee@morganlewis.com

Attorney of Record for Casio, Inc. and Casio
Computer Company, Ltd.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE PAPST LICENSING GMBH &
CO. KG PATENT LITIGATION

Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880

This Document Relates To:

ALL CASES

DECLARATION OF DAEJIN JEON
IN SUPPORT OF SAMSUNG TECHWIN'S AND SAMSUNG OPTO-
ELECTRONICS AMERICA, INC.'S SUPPLEMENTAL RESPONSE BRIEF ON
PAPST'S MOTION FOR ENTRY OF A PROTECTIVE ORDER

I, Daejin Jeon, hereby declare as follows:

1.      I am the Manager for the Intellectual Property Department for Samsung Techwin Co., Ltd. ("STW"). I have personal knowledge of the facts stated herein, and, if called to testify, I would testify as stated herein.

2.      Although Korean is my primary language, I am able to read and write English.

3.      On August 30, 2006, I attended a meeting in Chicago, Illinois on behalf of STW where representatives of Papst Licensing GmbH & Co. KG ("Papst") discussed Papst's infringement allegations regarding United States Patent Nos. 6,470,399 and 6,895,449, the patents that Papst has asserted in this litigation.

4.    Mr. Jeffrey Salmon and Mr. Jerold Schnayer, who are principals at the Welsh & Katz law firm  represented Papst at the August 30, 2006 meeting.

5.    Because I understand that Mr. Salmon is prosecuting patent applications before the United States Patent and Trademark Office for Papst that are related to the patents-in-suit, I have serious concerns regarding the production of STW's confidential technical information to Papst and the Welsh & Katz firm, especially to Mr. Salmon.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _10_ day of January, 2008

At Suwon-City, Gyeonggi-Do, Republic of Korea

_____
Daejin Jeon

CH02/ 22508189.2