UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING DIGITAL CAMERA PATENT LITIGATION | ) ) ) ) ) ) ) ) |

1:07-mc-00493-RMC

MDL Docket Number 1880

ALL CASES

**[PAPST'S PROPOSED] SCHEDULING AND CASE MANAGEMENT ORDER NO. 1**

The Court, having considered the proposals of counsel, HEREBY ORDERS, the following:

I.     Pre-Trial Schedule

   A.     Discovery Schedule

| Date | Event |
|---|---|
| April 3, 2008 | 1.  Papst is to file with the Court an identification of a single Lead Counsel.  The Camera Manufacturers as a group are to file with the Court an identification of a single Lead Counsel.  The duties of Lead Counsel are set forth in Par. III.E. of this Order. |
| | 2.  Each party shall file with the Court an identification of an E-Discovery Liaison whose duties are specified in Par. III.I. of this order. |
| | 3.  Parties shall file Answers and Counterclaims in response to all pending Complaints, including Papst's Complaint pending against Fujifilm Corporation and Fujifilm U.S.A., Inc.  Papst to add U.S. parties related to Matsushita Electric Industrial Co., Ltd. (Panasonic Corporation of North America) and Victor Company of Japan, Ltd. (JVC Company of America) in the Counterclaims. The filing of Answers and Counterclaims shall not constitute an admission that jurisdiction was proper in transferor Court.  See, Par. II.A.2. |
| | 4.  Parties to serve Rule 26(a)(1) disclosures for all parties, including Panasonic Corporation of North America and JVC Company of America.  See, Par. II.A.2. |
| April 3 – 11, 2008 | 5.  All parties, including all E-Discovery Liaisons, to meet and confer regarding the details of their stored electronic information and the stored electronic information of their legally related companies.  See, Par. III.I. |

| April 14, 2008 | 6.  All parties to serve document requests and interrogatories.  See, Par. III.G. |
| | 7.  Interrogatories are limited in number, but can ask for parties' contentions.  See, Par. III.G. |
| | 8.  Parties to file Replies to any Counterclaims.  The filing of replies shall not constitute an admission that jurisdiction was proper in the transferor Court.  See, Par. II.A.2. |
| May 26, 2008 | 9.  Due date by which all parties are to file responses to interrogatories and document requests, and produce responsive documents.  Panasonic Corporation of North America and JVC Company of America shall also comply at this time with any discovery request directed to them. |
| | 10.  Each of the Camera Manufacturers to file with the Court a final position paper as to whether they will rely on advice of counsel concerning any defense where advice of counsel is relevant, and if each party does rely on advice of counsel they are to produce all relevant documents concerning this subject matter by this date.  If documents are withheld on the basis of privilege, a privilege log complying with Fed.R.Civ. P. shall be served at that time.  See, Section III.L. |
| July 14, 2008 | 11.  Fact depositions to commence. |
| Week of September 15, 2008 | 12.  Status Hearing with the Court discussing how to proceed with matters leading up to the *Markman* hearing, including a *Markman* schedule and procedure concerning all expert reports. |
| |   - Papst's current proposals concerning the tentative schedule for these matters are included in paragraphs I.B. and I.C below. |
| March 14, 2009 | 13.  Tentative end of fact depositions.  See, III.H. |
| | 14.  The parties are to meet and confer and file with the Court a report concerning whether a further period for the parties to take nonexpert depositions is needed. |

B.     *Markman* Scheduling and Hearing

Papst contends that it is premature to set a final *Markman* schedule until the bulk of fact discovery is complete.  Papst first requests a status hearing during the week of September 15, 2008 to discuss *Markman* scheduling.  It is preferable to hold such a hearing after discovery is mostly complete because it will permit the Court to consider evidence developed during discovery, will allow the parties to focus on what claim terms are truly in dispute, and will hopefully avoid the necessity of revisiting claim construction issues later in the case.  Most courts that have considered the issue of when to hold a *Markman* hearing have concluded that the best time to hold such a hearing is after the close of discovery.  In support thereof, Papst has filed simultaneously herewith a Position Paper explaining why the *Markman* process should not commence until the bulk, if not all, of fact discovery has occurred.

| Number of days after the court determines that the *Markman* process should commence | *Markman* Event | |
|---|---|---|
| 14 | 1. | Papst's current infringement contentions disclosure |
| 30 | 2. | Each of the Camera Manufacturers to provide their invalidity and unenforceability contentions<br><br>- Each of the Camera Manufacturers to list all patent claim elements they assert need to be interpreted by the Court during the *Markman* Hearing, and why each such patent claim element is at issue |
| 30-45 | 3. | All parties to meet and confer about which patent claim elements the Court should interpret.  It is presumed that the Court will only interpret 10 claim issues.  If the parties cannot agree on which 10 claim issues will be presented to the Court, Papst and Camera Manufacturers shall each identify 5 claim issues each to be interpreted.  Should a party desire the interpretation of additional claim issues, that party shall file a motion explaining why the Court's presumptive limit 10 claim issues is insufficient. |
| 45 | 4. | The parties to file with the Court a final list of contested claim terms that need to be construed by the Court |
| 75 | 5. | Papst's expert report on claim interpretation |
| 105 | 6. | Camera Manufacturers' expert reports on claim interpretation |
| 135 | 7. | Papst's reply expert report on claim interpretation |
| 145-175 | 8. | Depositions of claim interpretation experts |
| 190 | 9. | Papst's opening *Markman* brief |
| 220 | 10. | Camera Manufacturers' responsive *Markman* brief |

| 250 | 11. | Papst's reply *Markman* brief |
|-----|-----|-------------------------------|
| 280 | 12. | *Markman* Hearing |

C.    Post *Markman* Ruling Schedule

Papst's Post *Markman* Ruling Schedule follows the normal and most efficient manner of handling expert discovery in patent cases.  Without having this Court first interpret the claims before expert reports, the experts would be required to guess how the Court will interpret the claims for the purpose of providing their infringement and invalidity positions.  Then, when the Court does provide it claim interpretations, expert reports (and corresponding depositions) would have to be repeated to apply the Court's actual claim interpretations.  This inefficient repetition of expert reports and depositions can be avoided with Papst's schedule below.

| Number Days After the Court's *Markman* Ruling | Post *Markman* Event | |
|:----:|-----|-----|
| 0 | 1. | *Markman* Ruling by the Court |
| 60 | 2. | Papst's final infringement contentions consistent with the Court's *Markman* patent claim interpretation ruling |
| 90 | 3. | Camera Manufacturers' final response to Papst's infringement contentions and Camera Manufacturers' final invalidity and unenforceability contentions consistent with the Court's *Markman* claim interpretation ruling |
| 120 | 4. | Papst's Reply to Camera Manufacturers' invalidity and unenforceability contentions consistent with the Court's *Markman* claim interpretation ruling |
| 120 | 5. | Fact Discovery Closes |

| 160 | 6. | Each party to file with the Court expert reports on all non-*Markman* issues that each of them has the burden on.  See, Par. II.9. |
|---|---|---|
| 190 | 7. | Each party to file with the Court responsive expert reports |
| 220 | 8. | Each party to file with the Court rebuttal expert reports |
| 230-270 | 9. | Depositions of Experts |
| 280 | 10. | Status Hearing with Court to discuss remand back to trial courts |

II.     Local Rule 16(c) Issues

1.          **LCvR 16(c)(1)     Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion.**

Papst's position:   Papst believes that it is highly unlikely that the case will be resolved by dispositive motions because of the factual complexity and highly technical nature of the subject matter of the technology involved in Papst's charges of infringement.  The products charged with infringement of Papst patents include, *inter alia*, digital cameras, and concern the operation of the microprocessor controlled electronic circuits that control the operation of the digital cameras, and how information stored in the cameras, such as electrical signals representative of pictures taken by a camera, is transferred to personal computers.

2.          **LCvR 16(c)(2)     The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

Papst's position:   Papst believes that the parties should follow the Federal Rules of Civil Procedure concerning the issue of joining new parties and

amending the pleadings. On February 28, 2008, Papst filed a lawsuit in the District Court of Illinois against a company called Ricoh, based on its sale of allegedly infringing digital cameras. Papst will be filing a request with the Panel on Multidistrict Litigation to have this lawsuit transferred to these MDL proceedings as a "Tag-Along" action. Papst believes it is likely that it may file lawsuits against additional infringers of the same two patents Papst is asserting against the Camera Manufacturers in these proceedings, and that Papst also would ask the Panel on Multidistrict Litigation to add those parties to these MDL Proceedings as "Tag-Along" actions.

In the FIRST PRACTICE & PROCEDURE ORDER (Docket No. 3) filed November 30, 2007, the Court ordered in paragraph 9:

> "The obligation to answer or otherwise respond to the initial complaints filed in these actions shall remain stayed pending the Initial Scheduling Conference and further order of the Court."

In one of the constituent actions joined in these MDL proceedings, Camera Manufacturers, Matsushita and Victory Company of Japan (JVC), filed a declaratory judgment Complaint against Papst. That case was stayed prior to the time that Papst was required to answer the Complaint. In another action, Camera Manufacturer Fuji filed a complaint against Papst, but the case was stayed before Papst was required to answer the Complaint. In another action, Papst filed a Complaint against Fuji, but Fuji responded by filing a motion to dismiss based on venue. Fuji has yet to file an Answer.

The current scheduling order needs to allow the parties to complete their pleadings so that claims between the parties are clearly defined and settled.

For example, Papst will file a response and counterclaims to these pending Complaints, and seek to add additional U.S. parties related to Matsushita and JVC, who are also involved in the infringement of Papst's patents. Fuji should also be required to Answer the Complaint pending against it (despite its pending Motion to Dismiss) so that all the claims between the parties are at-issue before discovery commences. Papst's proposed scheduling order above includes a period of time for the responses and counterclaims to be filed. See, paragraph I.A. above.

Papst's proposed scheduling order also includes a provision requiring the current Matsushita and JVC parties to provide discovery responses on behalf of their U.S. related parties, since they are believed to be wholly owned subsidiaries of the current parties. This is done so that a delay in the discovery in this case is not caused by waiting for these parties to be served.

Papst does not believe that the legal and factual issues can be narrowed at this time.

3.     **LCvR 16(c)(3)     Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

Papst's position: The parties agree that this case should not be assigned to a magistrate judge for all purposes. In the FIRST PRACTICE & PROCEDURE ORDER (Docket No. 3) filed November 30, 2007, the Court, in pertinent part, states in paragraph 11:

> "The Court hereby vacates all orders referring matters in these cases to a Magistrate Judge."

At the status conference, the Court did not indicate that it wanted to use a Magistrate Judge in these proceedings. Papst contends that this case should not be assigned to a Magistrate Judge for any purposes.

4.      **LCvR 16(c)(4)      Whether there is a realistic possibility of settling the case.**

Papst's position:  Papst believes that there is a good possibility that it can settle one or more of the lawsuits against the Camera Manufacturers. This is based in part on the fact that Papst has now settled with two companies for the same two patents at issue in these MDL Proceedings.

5.      **LCvR 16(c)(5)      Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.**

Papst's position:  Papst believes that the case may benefit by the Court's alternative dispute resolution (ADR) procedure (or some other form of ADR), depending on whether some or all of the Camera Manufacturers agree with this procedure.

6.      **LCvR 16(c)(6)      Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

Papst's position:  Due to the complexities of the patent and highly complex factual technical issues involved in these proceedings, Papst does not believe that this case can be resolved by summary judgment.

7.          **LCvR 16(c)(7)     Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1), Fed.R.Civ.P., and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

Papst agrees with the Camera Manufacturers that initial disclosures are necessary.  Papst does not propose any changes to the scope, form or timing of the initial disclosures.

The Court stated in paragraph 10 of page 4 of the FIRST PRACTICE & PROCEDURE ORDER (Docket No. 3), filed November 30, 2007, that:

> "All discovery proceedings in these actions are stayed until further order of the Court ..."

While the parties should comply with the initial disclosures required by Rule 26(a)(1), Fed.R.Civ.P., the parties will need time to exchange initial disclosures when the Court lifts the stay.  In Papst's proposed Schedule, Papst proposes that the parties should serve initial disclosures on each other on April 3, 2008.

8.          **LCvR 16(c)(8)     The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

<u>Scheduling</u>:  Papst's proposal concerning discovery is addressed in paragraph I above.

<u>Protective order</u>:  The parties are concurrently submitting their positions on an appropriate protective order.

<u>Limits on Discovery</u>:  Papst's proposed limits on discovery are addressed in paragraph III.G and H below.

9.    **LCvR 16(c)(9)    Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), Fed.R.Civ.P., should be modified, and whether and when depositions of experts should occur.**

Papst's position:  The parties agree that there should be no changes to the requirements of Rule 26(a)(2), except that no draft expert reports will be discoverable.   Papst further proposes that the parties expand upon this preliminary agreement by entering into the following stipulation:

a.  The parties agree to limit the scope of expert related discovery and testimony in the interests of preserving time and resources, and to minimize the potential for discovery issues relating to expert discovery.

b.  The terms of this stipulation do not imply or admit that information protected by this Order would otherwise be discoverable.

c.  The parties shall make all disclosures required by Fed.R.Civ.P. 26(a)(2)(A) as modified by this stipulation, at the times and in the sequence directed by this Court.

d.  The parties agree that the following categories of information are protected, outside the scope of permissible discovery and not a proper subject or basis of questions during deposition:

(i)    Any communication, oral or written, between the expert and attorneys for the party offering the testimony of such expert witness, except the nature of the compensation arrangement with the expert witness;

(ii)   Preliminary, intermediate or draft opinions prepared by, for or at the direction of an expert witness.

e.  Notes, writings, and oral or written communications that are relied on by the expert in connection with the expert's opinions in this matter are still discoverable.

f.  To the extent that any part of this stipulation waives disclosure requirements under Fed.R.Civ.P. 26(a)(2)(B), the parties agree to such waiver.

g.  The parties agree to comply with this stipulation pending the Court's approval and entry of this order.

As far as the timing of expert reports, Papst's Post *Markman* Ruling Schedule follows the normal and most efficient manner of handling expert discovery in patent cases.  Without having this Court first interpret the claims before expert reports, the experts would be required to guess how the Court will interpret the claims for the purpose of providing their infringement and invalidity positions.  Then, when the Court does provide it claim interpretations, expert reports (and corresponding depositions) would have to be repeated to apply the Court's actual claim interpretations.  This inefficient repetition of expert reports and depositions can be avoided with Papst's proposed schedule above.

Papst's proposal for timing of expert disclosures is addressed in paragraphs I.B. and I.C.

10.  **LCvR 16(c)(10)   Class Actions.**

Not applicable

11.  **LCvR 16(c)(11)   Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

Papst's position:  At the hearing on January 31, 2008, the Court denied the Camera Manufacturers' request for bifurcation.  Papst agrees with the Court's decision that bifurcation should not occur.  Papst's position concerning why bifurcation should not be ordered in these proceedings is addressed in its previous brief in this case found at Docket No. 22.

12.        **LCvR 16(c)(12)   Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

Not applicable.

13.        **LCvR 16(c)(13)   Such other matters that the parties believe may be appropriate for inclusion in a scheduling order**.

See list of additional matters in paragraph III. below.

III.    Further Provisions Proposed By Papst

   A.    Discovery Of Privileged Materials.

   1.    Proposed Order:

"Upon agreement of the parties, attorney-work product and attorney-client privileged materials created after the Complaints were filed in the district court actions are to be excluded from production and need not be placed on any privilege logs produced in response to any discovery requests.  As a clarification, Papst interprets the parties' agreement to mean that all attorney-work product and attorney-client privileged materials created after earliest filed complaint in these proceedings (i.e. the Casio Complaint filed Oct. 16, 2006), should be excluded from production and need not be placed on any privilege logs produced in response to any discovery requests.  The exception to the parties' agreement are those documents related to

opinions of counsel as they relate to the issues of willful patent infringement and inducement of patent infringement."

See, Par. III.L. for a further discussion on the reliance of opinion of counsel.

B.    Service

1.    Proposed Order:

"Upon agreement of the parties, service of documents shall be e-mail, excluding large appendices.  The parties agree that documents will be served in searchable PDF format except for any discovery documents requiring a response (for example, but not limited to, discovery requests) which will be served in both PDF and word format.  Any large appendices will be sent by overnight delivery for next day delivery."

C.    Newly Filed Or Transferred Actions

1.    Proposed Order:

"When an action that properly belongs as a part of In re Papst Licensing Litigation is hereafter filed in the District of Columbia or transferred here from another court, the Clerk of this Court shall:

    a.    File a copy of this Order in the separate file for such action;

    b.    Send the following memorandum to the Court and to Lead Counsel for the parties:

    [Title of Court and Cause and File Number assigned in this District].  The above entitled action was this day filed [or transferred from the District Court of _____] and has been docketed and filed as a part of In re Papst Licensing Digital Camera Patent Litigation;

    c.    Make an appropriate entry on the master docket sheet;

     d.     Mail to the attorneys for the plaintiffs in the newly filed or transferred case a copy of this Order; and

     e.     Upon the first appearance of any new defendant, mail to the attorneys for the defendant in such newly filed or transferred case a copy of this Order.

If any newly filed or transferred action is added to this pending MDL action, the parties shall meet and confer within 30 days to discuss how the newly filed or transferred action should be handled to catch up to the procedural stage of the pending MDL action."

    D.    <u>Applications Of This Order To Subsequently Filed Cases</u>

    1.    Proposed Order

"This Case Management Order No. 1 shall apply to each case subsequently filed in this Court or transferred to this Court and consolidated as part of <u>In re Papst Licensing Litigation</u>. A party to any such action that objects to any provision of this Order shall, within twenty (20) days after the date upon which a copy of this Order is mailed by the Clerk to counsel for such party, file an application for modification of such provision. Pending the Court's ruling on such application, the provisions of this Order shall apply."

    E.    <u>Responsibility Of Lead Counsel For Papst And The Camera Manufacturers</u>

    1.    Papst's Comments:

The First Practice & Procedure Order entered in this MDL proceeding states that "[t]he Court will be guided by the *Manual for Complex Litigation 4th*, approved by the Judicial Conference of the United States, and counsel are directed to familiarize themselves with that publication." (Doc. No. 3 par. 15.) The *Manual for Complex Litigation*, in turn, expressly provides for and recommends the appointment of "designated counsel" (divided into two categories—liaison counsel and lead counsel) to avoid the problems that may arise when

numerous parties are represented by separate counsel, which may "waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily." *Manual for Complex Litigation, Fourth*, § 10.22.

The Manual for Complex Litigation, which governs this case, provides clear definitions of the roles of liaison and lead counsel, so the Camera Manufacturers' professed confusion about the roles of such counsel is without merit. Papst maintains that the appointment of lead counsel is necessary in this case in order to avoid the problems that can arise when there are multiple parties in a case.[1] In this proceeding, there are presently ten different Camera Manufacturer parties, with additional parties soon to be joined.[2] Due to the large number of parties, the appointment of lead counsel is critical to the efficient operation of this case.

The fact that the Camera Manufacturers "already are coordinating with each other successfully" (Doc. No. 23 p. 2) is beside the point. Apart from the fact that it is early in the litigation, and the time may come when the Camera Manufacturers do not get along so well, the appointment of lead counsel will aid in the efficient management of this case so that the Court and Papst will have only one counsel to deal with on behalf of the Camera Manufacturers instead of several, in connection with discovery and motion practice.

---

[1] Papst believes that if Lead Counsel is appointed as set forth in its Proposed Scheduling Order, then the appointment of Liaison Counsel will not be necessary.

[2] Papst recently filed an infringement suit in the District Court of Illinois against Ricoh, based on its sale of digital cameras. Papst will be filing a request with the Panel on Multidistrict Litigation to have the Ricoh lawsuit transferred to these MDL proceedings as a "tag-along" action. Papst may also file lawsuits against additional infringers of the patents at issue here, which will likely be the subject of additional "tag-along" actions.

2.     Proposed Order

"1.     <u>Lead Counsel For Papst</u>

On April 3, 2008, Papst shall identify in writing to the Court and all parties its Lead Counsel who generally shall be responsible for coordinating the activities of Papst during pre-trial proceedings and shall:

(a)     determine, after consultation with other Papst counsel as may be appropriate, and in briefs, oral argument or such other fashion as may be appropriate present personally or by a designee to the Court and opposing parties the position of Papst on all matters arising during the pre-trial proceedings;

(b)     coordinate the initiation and conduct of discovery on behalf of Papst consistent with the requirements of Fed. R. Civ. P. 26(g), including the preparation of interrogatories and requests for production of documents and the examination of witnesses in depositions;

(c)     delegate responsibilities for specific tasks to other counsel in a manner to assure that pre-trial preparation for Papst is conducted effectively, efficiently and economically;

(d)     monitor the activities of co-counsel to assure that schedules are met and unnecessary expenditures of time and monetary expenses are avoided; and

(e)     perform such other duties as may be incidental to proper coordination of Papst's pre-trial activities or authorized by further order of the Court.

(f)     maintain and distribute to co-counsel and to the Camera Manufacturers' Lead Counsel an up-to-date service list; and

(g)     receive and, as appropriate, distribute to co-counsel orders for the court and documents from opposing parties and counsel.

2.    Lead Counsel For The Camera Manufacturers

On April 3, 2008, the Camera Manufacturers shall identify in writing to the Court and all parties of record the Camera Manufacturers' Lead Counsel who generally shall be responsible for coordinating the activities of the Camera Manufacturers during pre-trial proceedings and shall:

(a)    determine, after consultation with other Camera Manufacturers' counsel as may be appropriate, and in briefs, oral argument or such other fashion as may be appropriate present personally or by a designee to the Court and opposing parties the position of the Camera Manufacturers on all matters arising during the pre-trial proceedings;

(b)    coordinate the initiation and conduct of discovery on behalf of the Camera Manufacturers consistent with the requirements of Fed. R. Civ. P. 26(g), including the preparation of the Camera Manufacturers' joint interrogatories, joint requests for production of document, and joint examination of witnesses in depositions;

(c)    delegate responsibilities for specific tasks to other counsel in a manner to assure that pre-trial preparation for the Camera Manufacturers is conducted effectively, efficiently and economically;

(d)    monitor the activities of co-counsel to assure that schedules are met and unnecessary expenditures of time and monetary expenses are avoided;

(e)    perform such other duties as may be incidental to proper coordination of the Camera Manufacturers' pre-trial activities or authorized by further order of the Court;

(f)    maintain and distribute to co-counsel and to Papst's Lead Counsel an up-to-date service list; and

(g)    receive and, as appropriate, distribute to co-counsel orders for the court and documents from opposing parties and counsel.

(h)    Counsel for the Camera Manufacturers who disagree with their Lead Counsel or those acting on behalf of their Lead Counsel or who have individual or divergent positions may present written and oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their client(s) as appropriate, provided that in doing so they do not repeat arguments, questions, or actions of Lead Counsel or delay or interfere with any discovery, pre-trial or trial schedule approved or set by the Court.

(i)    If agreement cannot be reached between the Camera Manufacturers on a method for periodically reimbursing attorneys for expenses incurred and paying them for services rendered as Lead Counsel, the matter will be presented to the Court for resolution.  Lead Counsel who anticipate seeking an award of attorneys' fees from the Court shall keep a daily record of their time spent and expenses incurred in connection with this litigation, indicating with specificity the hours and particular activity (such as "conduct deposition of A.B.").  The failure to maintain such records will be grounds for denying court-awarded attorneys' fees, as will an insufficient description of the activity (such as "research" or "review of correspondence").

(j.)    By the 15th day of each month, each firm that may seek an award (or approval) of a fee by the Court as Lead Counsel shall file under seal with the Clerk a report summarizing according to each separate activity the time and expenses spent by its members or associates during the preceding month (and the ordinary billing rates of such attorneys in effect during such month) and the accumulated total of the firm's time, hourly rates and expenses to date."

F.    <u>Filings With The Court</u>

1.    Proposed Order

"All submissions by Camera Manufacturers to the Court, including but not limited to motions, memoranda and correspondence, shall be filed or approved for filing by Lead Counsel in accordance with the Local Rules.    All submissions filed by the Camera Manufacturers should be filed as a joint submission of the Camera Manufacturers unless otherwise permitted by this Order.  Camera Manufacturers desiring to file separate submissions shall certify, under Penalty of Rule 11 of the Federal Rules of Civil Procedure, that the submission raises unique arguments that have not been addressed in any joint submission and have not already been ruled on by the Court."

G.    <u>Written Discovery Requests And Document Production</u>

1.    Proposed Order

a.    "No single party to this MDL action may be served with more than a total of 40 interrogatories in accordance with the Fed.R.Civ.P.  To avoid any confusion, the Camera Manufacturers will be required to jointly serve their discovery on Papst and shall serve no more than a total of 40 interrogatories on Papst.   The Camera Manufacturers should work together to jointly submit their joint written discovery requests to Papst.  Papst shall also prepare a uniform set of no more than 40 interrogatories that will be served on each of the Camera Manufacturers. Should Papst or the Camera Manufacturers desire to issue additional discovery requests, leave of Court will first be required upon good cause shown."

b.    "Any previous written discovery requests, responses, and motions related those discovery requests and orders issued in *Casio v. Papst Licensing*, 1:06-1751 (Judge

Kessler) are hereby vacated, without prejudice, so that the Court can manage and supervise future ***coordinated*** discovery in this MDL action."

       c.       "The parties shall produce all responsive paper documents as follows. The parties shall produce all responsive hard copy documents in single-page Tagged Image File Format ("TIFF") with an accompanying Summation or Concordance load file.  To the extent available, the load file shall contain for each document the beginning Bates number, the ending Bates number, a description of the source for the document.  Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source documents.  No other legend or stamp will be placed on the document image other than the Bates Number, confidentiality legend (where applicable), and redactions.  In addition, hard copies of all documents shall be made available for inspection, and further copying if requested by a party.  These hard copies shall be produced as they were kept in the ordinary course of business.  This shall include stapling of documents, segregating individual file folder and ordering groups of file folders and documents as they were kept in the ordinary course of business.  The parties shall also provide for each group of documents to the extent known (1) the name of the person(s) and/or group(s) whose file each group of documents came from, and (2) an identification of the custodian(s) of each group of documents, all as the documents were kept in the ordinary course of business.

       d.       "The parties shall produce all responsive electronic documents in single-page Tagged Image File Format ("TIFF") with an accompanying Summation or Concordance load file.  To the extent available, the load file shall contain for each document the beginning Bates number, the ending Bates number, a description of the source from which the document

came, a description of the computer from which the document came, the associated file name, and the associated directory path for the document. Documents that present imaging or formatting problems shall be promptly identified and the Parties shall meet and confer to attempt to resolve the problems. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source documents. No other legend or stamp will be placed on the document image other than the Bates Number, confidentiality legend (where applicable), and redactions. Each party will bear the burden and cost of any OCR post-processing. The parties agree that during the first round of exchanging documents the parties need not exchange metadata, except as referenced above. If any party should later desire to obtain additional metadata, the parties will attempt to work it out amicably. An extracted text file of electronic documents shall be made part of the load file associated with each electronic document."

        d.    "Each party must maintain a depository of all documents and things produced in this litigation. The depository shall be located in the United States and shall be reasonably accessible to all parties upon reasonable notice."

    2.    Papst's Comments:

    With respect to electronic documents, Papst and Casio previously agreed to this format of production and both have already produced thousands of documents in this format. See, *Casio v. Papst*, 06-cv-1751, Docket No. 28. (Ex. B, pp. 17-18).

H.    <u>Depositions</u>

1.    Proposed Order

a.    "Unless agreed to by the parties or ordered by the Court, no individual shall be deposed in this pending MDL action more than one time.  Only one attorney appointed by Lead Counsel may conduct any single deposition."

b.    "Unless agreed to by the parties or ordered by the Court , all depositions of domestic and foreign party witnesses shall take place in Washington D.C."

c.    "The parties shall meet and confer within14 days of this Order to discuss whether the deposition limits presumed by the Federal Rules should apply in this action."

d.    "All depositions taken in this MDL action may later be used in any individual action to which the MDL action applies."

2.    Papst's Comments:

Because many of the parties are located in Japan or Germany, it will be overly burdensome for attorneys to repeatedly crisscross the world in order to take the depositions of the many necessary fact witnesses.  There are currently eleven parties in suit and soon there will be four more Camera Manufacturers added to this MDL.  Papst will also likely add more Camera Manufacturers as time passes.  Taking depositions in Japan will only further slow down discovery in this matter as all depositions in Japan must take place at the U.S. Embassy and the wait to the U.S. Embassy facilities is often many months.  For example, the U.S. Embassy in Tokyo currently reports that its facilities for depositions are not available until at least September 29, 2008.   http://tokyo.usembassy.gov/e/acs/tacs-7116.html. Given the increasingly large number of parties in suit, Papst also requests that the parties be allowed to take depositions until at March 14, 2009.

I.      E-Discovery

1.      Proposed Order:

"This Court adopts, as modified herein, the default standard for discovery of electronically stored information as promulgated by the United States District Court, District of Delaware and attached hereto as Exhibit A, as follows:

1.      Introduction.  It is expected that parties to this case will cooperatively reach agreement on how to conduct e-discovery. In the event that such agreement has not been reached by the Fed. R. Civ. P. 16 scheduling conference, however, the following default standards shall apply.

2.      Discovery conference.  Parties shall discuss the parameters of their anticipated e-discovery at the conference scheduled above for April 3-11, 2008, as well as at the Fed. R. Civ. P. 16 scheduling conference with the court, consistent with the concerns outlined below.  Also, prior to the conference between April 3-11, 2008, the parties shall exchange the following information:

- A list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities.

- A list of each relevant electronic system that has been in place at all relevant times and a general description of each system, including the nature, scope, character, organization, and formats employed in each system. The parties shall include other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility. Electronic documents of limited accessibility may include those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.

- The name of the individual responsible for that party's electronic document retention policies ("the retention coordinator"), as well as a general description of the party's electronic document retention policies for the systems identified above.

- The name of the individual who shall serve as that party's "E-Discovery Liaison."

- Provide notice of any problems reasonably anticipated to arise in connection with e-discovery.

3.      E-discovery liaison.  In order to promote communication and cooperation between the parties, each party to a case shall designate a single individual through which all e-discovery requests and responses are made ("the E-Discovery Liaison"). This designation shall be done by April 3, 2008.  See, paragraph I.A. above.  Regardless of whether the e-discovery liaison is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, he or she must be:

- Familiar with the party's electronic systems and capabilities in order to explain these systems and answer relevant questions.

- Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues.

- Prepared to participate in e-discovery dispute resolutions.

The court notes that, at all times, the attorneys of record shall be responsible for compliance with e-discovery requests. However, the E-Discovery Liaisons shall be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process.

4.      Timing of e-discovery.  Discovery of electronic documents shall proceed in a sequenced fashion.

- After receiving requests for document production, the parties shall search their documents, other than those identified as limited accessibility electronic documents, and produce responsive electronic documents in accordance with Fed. R. Civ. P. 26(b)(2).

- Electronic searches of documents identified as of limited accessibility shall not be conducted until the initial electronic document search has been completed. Requests for information expected to be found in limited accessibility documents must be narrowly focused with some basis in fact supporting the request.

- On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

5.      Search methodology.  If the parties intend to employ an electronic search to locate relevant electronic documents, the parties shall disclose any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the electronic documents. The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective E-Discovery Liaisons, who are charged with familiarity with the parties' respective systems. The parties also shall reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g., time frames, fields, document types).

6.      Retention.  At the parties' conference scheduled for April 3-11, 2008, the parties shall work towards an agreement (akin to the standard protective order) that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronic

documents. In order to avoid later accusations of spoliation, a Fed. R. Civ. P. 30(b)(6) deposition of each party's retention coordinator may be appropriate.

The retention coordinators shall:

- Take steps to ensure that e-mail of identified custodians shall not be permanently deleted in the ordinary course of business, and that electronic documents maintained by the individual custodians shall not be altered.

- Provide notice as to the criteria used for spam and/or virus filtering of e-mail and attachments; e-mails and attachments filtered out by such systems shall be deemed non-responsive so long as the criteria underlying the filtering are reasonable.

Within seven (7) days of identifying the relevant document custodians, the retention coordinators shall implement the above procedures and each party's counsel shall file a statement of compliance as such with the court.

7.    Privilege.  Electronic documents that constitute or contain attorney work product or that are protected from discovery by the attorney-client privilege or any other privilege, shall be immediately returned if the documents appear on their face to have been inadvertently produced or if the producing party provides written notice of the inadvertent production.

8.    Costs.  Each party shall bear the costs of its own discovery compliance."

J.    Privilege Logs

1.    Proposed Order

a.    "Unless ordered otherwise, privilege logs shall be provided to Lead Counsel 60 days after the first production of documents by the producing party."

b.    "Privilege challenges shall generally be conducted in accordance with the procedures set forth in United States v. Philip Morris, Inc., 2001 U.S. Dist. LEXIS 12603 (D.D.C. 2001) as follows:

(1) Papst, on one hand, and the joint Camera Manufacturers, on the other hand, may each seek to challenge the assertion of privilege of up to five hundred (500) documents per thirty (30) day period; provided, however, that no one party shall be required to respond to more than 250 challenges to asserted privileges within a thirty (30) day period. The Court may, in its discretion, modify the number of challenges a party can make each month, as circumstances dictate.

(2) For purposes of facilitating resolution of privilege disputes, the parties, after meeting and conferring, shall present to the Court no later than 90 days after initial privilege logs are exchanged, proposals for establishing categories into which allegedly privileged documents may be grouped for review and determination of the validity of privilege claims or exceptions thereto. Nothing in this provision shall limit any party from subsequently submitting to the Court additional suggestions for proper categorization of privilege challenges, based upon timely review of submitted privilege logs.

(3) Prior to filing a motion for relief with the Court with respect to challenging an assertion of privilege, the parties shall meet and confer in good faith, in accordance with LCvR 7.1(m), with respect to the assertion of privilege.

(4) If, after the meet and confer, unresolved privilege disputes remain, the challenging parties may file a motion for relief."

c.      "Challenges to Assertions of Privilege and Exceptions to Assertions of Privilege

(i) The party challenging the privilege assertion shall indicate in its memorandum to the Court the document identification number of the challenged documents, the identity of the party asserting the privilege, and the legal and factual bases on which the party believes that the document is not privileged. The party alternatively shall argue, in the event that the Court finds that the document(s) are privileged, the factual and legal bases for any exceptions to privilege that the party in good faith believes apply. The party shall include any submissions or other evidentiary showing necessary to support its arguments. If the party does not argue exceptions to privilege at this time, the party shall be deemed to have waived the arguments, unless it can show good cause for not raising the issue in the motion.

(ii) The party asserting the privilege shall, in its response and accompanying memorandum, indicate the factual and legal bases that justify the assertion of the privilege. The party shall also set forth the factual and legal bases on which it argues that the exceptions claimed by the moving party are inapplicable to the assertion of privilege. The party shall include any submissions or other evidentiary material necessary to support its arguments."

d.      "In Camera and Ex Parte Filings. The Court shall allow motions, oppositions, replies, supporting memoranda, affidavits and other submissions to be submitted *ex parte* and *in camera*, as necessary, to maintain the confidentiality of any claims of privilege. At any hearing required or authorized by the Order, the party asserting the privilege shall be provided an opportunity to present submissions and argument *ex parte* and *in camera* as necessary to protect its claims of privilege. Any *ex parte* hearings regarding privilege shall be transcribed, and the transcript shall be sealed and made available only to the Court and the party

presenting such argument and submissions. Any *ex parte*, *in camera* filings and copies of transcripts of *ex parte* hearings made available to the Court shall be indexed and held under seal by the Clerk of Court. Any filing pursuant to this provision may be done without the necessity of obtaining a Court Order.  Pursuant to a subsequent Order of the Court, the Court shall have access to such materials during normal business hours."

        K.     <u>Motions For Summary Judgment</u>

            1.     Proposed Order

"No motions for summary judgment shall be filed until after the completion of all expert discovery in this MDL action."

        L.     <u>Reliance on Opinion of Counsel</u>

            1.     Proposed Order

"Papst proposes that no later than May 26, 2008, the Camera Manufacturers will inform Papst in writing if each of them elects that  they will rely on an opinion of counsel concerning the issue of willful infringement. At that time, all previously requested documents relating to any opinion of counsel must also be produced.  To the extent that the Camera Manufacturers claim that any document relating to any opinion of counsel is protected by any privilege or doctrine, any and all such documents, including documents created after commencement of this litigation, must be identified on a privilege log in accordance with the Federal Rules of Civil Procedure on May 26, 2007."

            2.     Papst's comments

Because at least one Camera Manufacturer, Casio, is now denying Papst Licensing's allegations of infringement by inducement, Papst proposes that discovery concerning the opinions of counsel provided to the Camera Manufacturers should proceed now as those

opinions relate to the state of mind of the Camera Manufacturers which is evidence of the Camera Manufacturers' infringement by inducement.  To the extent that the Camera Manufacturers assert that they need not disclose documents related to opinions of counsel, those documents, including any documents created after this litigation commenced, should be placed on a privilege log on May 26, 2008.

This procedure is required because the opinions of counsel received by the Camera Manufacturers may be discoverable as a result of defenses that the Camera Manufacturers. may pose regarding willful infringement.  Generally, where a potential infringer has actual notice of another's patents rights, he has an affirmative duty of due care to respect those rights.  *Ryco Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed.Cir. 1988).  The duty of care often involves the potential infringer obtaining complete legal advice before engaging or continuing allegedly infringing activities.  *Ryco*, 857 F.2d at 1428.  A party that seeks and follows advice of counsel may assert reliance on that advice as evidence that it did not breach its duty to respect the patent rights.

When good faith reliance on advice of counsel is asserted to defend against a charge of willful infringement, the assertion waives any attorney client privilege with respect to that advice.  *Abbott Labs  v. Baxter Travenol Lab,* 676 F.Supp. 831, 832 (N.D.Ill. 1987).  Moreover, a party cannot claim reliance on advice of counsel and, at the same time, conceal the full nature and extent of that advice.  *Id.* at 833.  Therefore, when reliance on advice of counsel is asserted, the waiver is complete, and extends to all communications on that subject matter.  *Id.* at 832. Therefore, if the Camera Manufacturers inject into this case an allegation that they relied on advice of counsel, it must be done on May 26, 2008, so that all communications and/or privilege

logs on the same subject may be discovered during fact discovery. *Belmont Textile Mach. v. Superba, S.A.*, 48 F.Supp.2d 521, 523-24 (W.D.N.C. 1999).

Also at issue in this case is whether the Camera Manufacturers actively induced others to infringe the patents in suit. Active inducement occurs when one party, who does not directly infringe the patent, nevertheless induces another to directly infringe the patent with knowledge that it is inducing actual infringement. *DSU Medical v. JMS Co.*, 471 F.3d 1293 (Fed.Cir. 2006)("[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements."). Therefore, the Camera Manufacturers' knowledge of the at-issue patents, and their understanding of whether the actions that induced its customers to make would infringe the patents at issue, are highly relevant to this case. Because opinions of counsel will provide direct evidence of the Camera Manufacturers' statement of mind and their understanding of their inducement actions, discovery on those opinions should proceed now.

Allowing the Camera Manufacturers to withhold this discoverable information until the end of the discovery period would add to the cost of the litigation. If opinions are first disclosed after the depositions of fact witnesses have been completed, Papst will likely be forced to conduct a second round of depositions, at least including the recipients of the opinions, or those who are alleged to have acted in reliance on the opinions. To avoid re-deposing witnesses, the Camera Manufactures should be required to make its election before depositions begin. Furthermore, given the need in this case for international discovery through the Hague Convention and the like, it is very possible that the parties will be allowed to only depose third-party fact witnesses once, which further supports an early election in this case.

Further, delaying discovery on these issues will have the effect of cutting off Papst from any follow-up discovery, such as deposing the persons who requested, prepared, and received the opinions.  Once again, the issue is the state of the mind of the corporations, which is determined by discovering the state of mind of the persons within the corporation.  Documents may go a long way toward establishing the state of mind of the Camera Manufacturers, but documents are unlikely to tell the full story.  Papst should be allowed to take discovery on the issue of the Camera Manufacturers' state of mind throughout the discovery process.  To achieve this end, Papst requests  that this Court require that no later than May 26, 2008, the Camera Manufacturers will inform Papst Licensing in writing if each of them elects that (they will rely on an opinion of counsel concerning the issue of willful infringement.   Papst Licensing further requests that discovery move forward on opinions of counsel relevant to the issue of infringement by inducement.  To the extent, that Casio is not willing to disclose documents related to opinions of counsel, those documents, including any documents created after this litigation commenced, must be placed on a privilege log on May 26, 2008.


IT IS SO ORDERED this _____ day of _____, 2008.


                                                             _____

UNITED STATES DISTRICT JUDGE
ROSEMARY M. COLLYER

The Ad Hoc Committee for Electronic Discovery of the United States District Court for the District of Delaware has developed a default standard for the discovery of electronic documents. This default standard is available for use by the Court and by parties engaged in litigation in the District of Delaware.  The Ad Hoc Committee includes the following members:

> Chief Judge Sue L. Robinson
>
> Kevin F. Brady, Esquire, Skadden, Arps, Slate, Meagher & Flom
>
> Mary B. Graham, Esquire, Morris Nichols Arsht & Tunnell
>
> Richard K. Herrmann, Esquire, Blank Rome
>
> William F. Lee, Esquire, Hale and Dorr
>
> Michael A. O'Shea, Esquire, Clifford Chance
>
> George F. Pappas, Esquire, Venable LLP
>
> Matthew D. Powers, Esquire, Weil Gotshal & Manges
>
> Paul A. Ainsworth, Law Clerk to Chief Judge Robinson
>
> Janet A. Gongola, Law Clerk to Chief Judge Robinson

The Judges of the Court express their gratitude to the Ad Hoc Committee members for their work on this project.

## DEFAULT STANDARD FOR DISCOVERY OF
## ELECTRONIC DOCUMENTS ("E-DISCOVERY")

1.  **Introduction.**  It is expected that parties to a case will cooperatively reach agreement on how to conduct e-discovery. In the event that such agreement has not been reached by the Fed. R. Civ. P. 16 scheduling conference, however, the following default standards **shall apply** until such time, if ever, the parties conduct e-discovery on a consensual basis.

2.  **Discovery conference.**  Parties shall discuss the parameters of their anticipated e-discovery at the Fed. R. Civ. P. 26(f) conference, as well as at the Fed. R. Civ. P. 16 scheduling conference with the court, consistent with the concerns outlined below.  More specifically, prior to the Rule 26(f) conference, the parties shall exchange the following information:

- A list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities (<u>see</u> ¶ 6).

- A list of each relevant electronic system that has been in place at all relevant times[1] and a general description of each system, including the nature, scope, character, organization, and formats employed in each system.  The parties

---

[1]For instance, in a patent case, the relevant times for a patent holder may be the date the patent(s) issued or the effective filing date of each patent in suit.

should also include other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility. Electronic documents of limited accessibility may include those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.

- The name of the individual responsible for that party's electronic document retention policies ("the retention coordinator"), as well as a general description of the party's electronic document retention policies for the systems identified above (see ¶ 6).

- The name of the individual who shall serve as that party's "e-discovery liaison" (see ¶ 2).

- Provide notice of any problems reasonably anticipated to arise in connection with e-discovery.

To the extent that the state of the pleadings does not permit a meaningful discussion of the above by the time of the Rule 26(f) conference, the parties shall either agree on a date by which this information will be mutually exchanged or submit the issue for resolution by the court at the Rule 16 scheduling conference.

3. **E-discovery liaison.** In order to promote communication and cooperation between the parties, each party to a case shall designate a single individual through which all e-discovery

2

requests and responses are made ("the e-discovery liaison"). Regardless of whether the e-discovery liaison is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, he or she must be:

- Familiar with the party's electronic systems and capabilities in order to explain these systems and answer relevant questions.

- Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues.

- Prepared to participate in e-discovery dispute resolutions.

The court notes that, at all times, the attorneys of record shall be responsible for compliance with e-discovery requests. However, the e-discovery liaisons shall be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process.

4. **Timing of e-discovery.** Discovery of electronic documents shall proceed in a sequenced fashion.

- After receiving requests for document production, the parties shall search their documents, other than those identified as limited accessibility electronic documents, and produce responsive electronic documents in accordance with Fed.

3

R. Civ. P. 26(b)(2).

- Electronic searches of documents identified as of limited accessibility shall not be conducted until the initial electronic document search has been completed. Requests for information expected to be found in limited accessibility documents must be narrowly focused with some basis in fact supporting the request.

- On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

5. **Search methodology.** If the parties intend to employ an electronic search to locate relevant electronic documents, the parties shall disclose any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the electronic documents. The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. The parties also shall reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g., time frames,

fields, document types).

6. **Format.** If, during the course of the Rule 26(f) conference, the parties cannot agree to the format for document production, electronic documents shall be produced to the requesting party as image files (e.g., PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic document's contents, i.e., the original formatting of the document, its metadata and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of electronic documents in their native format.

7. **Retention.** Within the first thirty (30) days of discovery, the parties should work towards an agreement (akin to the standard protective order) that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronic documents. In order to avoid later accusations of spoliation, a Fed. R. Civ. P. 30(b)(6) deposition of each party's retention coordinator may be appropriate.

The retention coordinators shall:

- Take steps to ensure that e-mail of identified custodians shall not be permanently deleted in the ordinary course of business and that electronic documents maintained by the individual custodians shall not be altered.

- Provide notice as to the criteria used for spam and/or virus filtering of e-mail and attachments; e-mails and attachments filtered out by such systems shall be deemed non-responsive so long as the criteria underlying the filtering are reasonable.

Within seven (7) days of identifying the relevant document custodians, the retention coordinators shall implement the above procedures and each party's counsel shall file a statement of compliance as such with the court.

8. **Privilege.** Electronic documents that contain privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production within thirty (30) days of such.

9. **Costs.** Generally, the costs of discovery shall be borne by each party. However, the court will apportion the costs of electronic discovery upon a showing of good cause.

10. **Discovery disputes and trial presentation.** At this time, discovery disputes shall be resolved and trial presentations shall be conducted consistent with each individual judge's guidelines.

J. Kevin Fee, Esq.
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000

Jeffrey M. Gold, Esq. (*pro hac vice*)
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 1018-0060
Tel.: (212) 309-6000

Scott D. Stimpson, Esq. (*pro hac vice*)
The Law Office of Scott D. Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, New York 10601
Tel. 203-258-8412

Attorneys for Plaintiff and Counter- Defendant
Casio Inc. and Counter-Defendant Casio
Computer Co., Ltd

Campbell Killefer
Venable LLP
575 7th Street, NW
Washington, DC 20004
Tel: (202) 344-4000

Jerold B. Schnayer
Joseph E. Cwik
Welsh & Katz, Ltd.
120 S. Riverside Plaza, 22nd Floor
Chicago, IL 60606
Tel: (312) 655-1500

Attorneys for Papst Licensing GmbH & Co. KG

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CASIO INC., <br><br> **Plaintiff** <br><br> v. <br><br> **PAPST LICENSING GMBH & CO. KG** <br><br> **Defendant.** <br><br>——————————————————————<br> **PAPST LICENSING GMBH & CO. KG,** <br> **Counter-Plaintiff** <br> v. <br><br> **CASIO INC. and** <br> **CASIO COMPUTER CO., LTD.** <br><br> **Counter-Defendants** | **Case No. 1:06-CV-01751** <br><br><br><br> **Judge Gladys Kessler** |

## JOINT MEET AND CONFER STATEMENT

This report summarizes the meet and confer teleconferences held between Casio Inc.,

Casio Computer Co., Ltd. (hereinafter collectively "Casio") and Papst Licensing GMBH & Co.

KG ("Papst Licensing").  Pursuant to the Court's local rule LCvR 16.3, the parties discussed the

following items and reached the following agreements and disagreements:

1.　　Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion.

　　Casio believes that this case will be disposed of by dispositive motion.  Papst Licensing

proposes that this case is not likely to be disposed of by dispositive motion at any time.

2.　　The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.

　　The parties agree that the parties shall be free to join parties and amend their pleadings at

any time upon appropriate motion before the Court showing good cause.  The parties agree that

the legal and factual issues cannot be narrowed at this time.

3.　　Whether the case should be assigned to a magistrate judge for all purposes, including trial.

　　The parties preliminarily agree that this case should not be assigned to a magistrate judge

for any purpose.

4.　　Whether there is a realistic possibility of settling the case.

　　Casio's position: The parties are worlds apart with respect to settlement.  Casio

responded to Papst's proposed license agreement with a counter-proposal suggesting that it

would consider a royalty free license under Papst's patents.  At this point, Casio believes that

Papst's patents are being improperly asserted, and intends to vigorously pursue fees and costs.

2

Papst Licensing's position: Papst Licensing believes that this can be settled soon. Papst Licensing provided a written settlement offer to Casio U.S. and Casio Japan. In response, Casio raised the issue of a royalty free license, but never provided a written response to the offer. Papst Licensing believes that its patents are being infringed, and intends to pursue its counterclaims for infringement against Casio U.S. and Casio Japan.

5.      Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients. In assessing the above, counsel shall consider:
        (i)      the client's goals in bringing or defending the litigation;
        (ii)     whether settlement talks have already occurred and, if so, why they did not produce an agreement;
        (iii)    the point during the litigation when ADR would be most appropriate, with special consideration given to:
                 (aa) whether ADR should take place after the informal exchange or production through discovery of specific items of information; and
                 (bb) whether ADR should take place before or after the judicial resolution of key legal issues;
        (iv)     whether the parties would benefit from a neutral evaluation of their case, which could include suggestions regarding the focus of discovery, the legal merits of the claim, an assessment of damages and/or the potential settlement value of the case; and
        (v)      whether cost savings or any other practical advantages would flow from a stay of discovery or of other pre-trial proceedings while an ADR process is pending.

Casio proposes that the case is more easily resolved by dispositive motion, as mediation is unlikely to provide any benefit at this time given how far apart the parties are on settlement. If the case is not resolved by dispositive motion, then mediation may make more sense at that time, at the close of fact discovery, or after the patent claims are construed by the Court.

Papst Licensing proposes Mediation as soon as possible.

Both parties agree that the case is not amenable to arbitration.

3

6.      Whether the case can be resolved by summary judgment or motion to dismiss; dates for
        filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed
        dates for a decision on the motions.

Casio proposes that this case can be resolved by summary judgment of non-infringement

and/or patent invalidity.  This is particularly true in light of the new decision by the United States

Supreme Court in *KSR Int'l Co. v. Teleflex Inc., et. al.*, No. 04–1350, 550 U.S. ___ (April 30,

2007).

Papst Licensing proposes that this case is not likely to be disposed of by dispositive

motion at any time.

Papst Licensing and Casio propose that no deadline for dispositive motions is required.

7.      Whether the parties should stipulate to dispense with the initial disclosures required by
        Rule 26(a)(1), Fed.R.Civ.P., and if not, what if any changes should be made in the scope,
        form or timing of those disclosures.

The parties agree that initial disclosures are necessary, and have agreed to exchange them

on June 4, 2007.  The parties do not propose any changes to the scope, form or timing of the

initial disclosures.

8.       The anticipated extent of discovery, how long discovery should take, what limits should
        be placed on discovery; whether a protective order is appropriate; and a date for the
        completion of all discovery, including answers to interrogatories, document production,
        requests for admissions, and depositions.

Casio proposal regarding scheduling:  Casio proposes that fact discovery should be

scheduled to close on December 11, 2007 and that expert discovery close on June 16, 2008.  This

is a relatively standard patent case, and contrary to the Papst position we see no reason why

"international discovery" should make it any more complex, as most discovery will be from

4

parties to the case. While extensive discovery will be required from the alleged inventors, who are not parties, if Papst expects to bring the inventor to trial it should also provide discovery from him as needed, and so there should be no need for obtaining discovery through international treaties.

Papst proposal regarding scheduling: Papst Licensing proposes that fact discovery close on June 9, 2008. This is a complex case that will involve extensive international discovery from Papst Licensing located in Germany, the inventor is located in Germany, and Casio Japan and its related entities are located in Japan and other countries in the Far East. It has been difficult for Papst Licensing to determine an appropriate fact discovery deadline because Casio has been unwilling to provide Papst Licensing with many details regarding potential discovery from Casio in this action. Thus, Papst Licensing reserves the right to request additional time for fact discovery should it become necessary.

Protective order and scope of discovery: Both parties agree that a Protective Order is necessary and appropriate to govern confidentiality matters in the case. Casio will provide a draft protective order to Papst for consideration in advance of the May 14, 2007 Scheduling Conference. The parties also agree that discovery is needed on all the separate causes of actions in this case (*e.g.*, invalidity and non-infringement), but disagree on whether damages and willfulness issues should be bifurcated (addressed below).

9.     Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), Fed.R.Civ.P., should be modified, and whether and when depositions of experts should occur.

Casio's proposal regarding experts: Casio proposes that opening expert reports be due on February 15, 2008 and that rebuttal expert reports be due on March 17, 2008. All experts would be deposed and expert discovery would close on June 16, 2008. Casio agrees with Papst's

5

proposals (a), (b), and (d) below, with the exception of the timing and the need for Casio to first provide a report on secondary considerations, although Casio is willing to provide secondation considerations of obviousness (not non-obviousness) at that time. Part (c) regarding rebuttal reports below is unnecessary and will needlessly extend the time for expert discovery.

<u>Papst Licensing's proposal regarding experts:</u> Papst Licensing proposes the following schedule with respect to experts:

(a). the party bearing the burden of proof with respect to any claims and defenses shall disclose the name, address, and curriculum vita of all expert witnesses, and shall serve the reports required by Fed. R. Civ. P. 26(a)(2) no later than August 8, 2008. To avoid any uncertainty on the patent validity issue, Casio US and Casio Japan will serve any expert reports relating to any objective indicia of non-obviousness at this time.

(b.) The name, address, and curriculum vita of any expert witnesses offering opinions in response to any reports described in paragraph (a.) above and the corresponding responsive report(s) governed by Fed. R. Civ. P. 26(a)(2), shall be served no later than September 8, 2008. Papst Licensing will serve any expert reports relating to Casio US' and Casio Japan's alleged objective indicia of non-obviousness at this time.

(c.) The name, address, and curriculum vita of all expert witnesses offering opinions solely to rebut evidence raised in response to the responsive reports discussed in paragraph (b.) above, as well as the corresponding rebuttal report(s) governed by Fed. R. Civ. P. 26(a)(2), shall be served no later than October 8, 2008.

(d.) The depositions of all experts shall begin on October 8, 2008, and be completed by November 7, 2008.

6

10.    Class Actions: N/A

11.    Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.

Casio's position:

Pursuant to Fed. R. Civ. P. 42(b), Casio proposes that the damages and willfulness issues be bifurcated for discovery and trial such that, in the event Papst proves liability and the case has not settled, then discovery will be had on these issues.  Casio has requested, in its co-pending motion to compel and for sanctions, that the Court order bifurcation as a sanction for Papst misusing the 26(f) procedures, and Casio believes that sanction is entirely appropriate.[1]

Casio further requests that the Court consider the subsequent discovery misconduct of Papst.  Papst has repeatedly warned Casio and its counsel that if settlement is not forthcoming, the litigation will be very expensive, even mentioning a recent case where their opponents allegedly spent $60 million in fees.  Papst is now ensuring that will be the case, and using the damages and willfulness issues as two of its most potent weapons.  Papst recently served a ridiculously overbroad set of document requests on both Casio companies, in plain violation of Federal Rule of Civil Procedure 26(g).  These requests show the discovery nightmare that Papst intends to inflict on Casio and the Court if damages and willfulness are not bifurcated.[2]

_____

[1] Indeed, bifurcation can granted by courts pursuant to Fed. R. Civ. P. 42(b) when the circumstances dictate it is appropriate, as it is here, not necessarily as a sanction.  *See, e.g., Paine, Webber v. Merrill Lynch*, 587 F. Supp. 1112, 1115-1117; 38 Fed.R.Serv. 2d 1070 (D. Del. 1984).

[2] The Papst document requests served on Casio Japan are attached as Exhibit A.  They demand documents from not just Casio Japan, but also from every company or person having any relation to Casio Japan anywhere in the world (see definition 1).  As just a small sampling of the comically overbroad Papst damages and willfulness document requests, they seek: (a) every document that has any relation to any Casio digital camera (Request 6); (b) every document having any relation to a communication with any digital camera customer (Request 7); (c) every document having any relation to shipments or receipts of Casio digital cameras (Requests 8 and 9); (d) every document relating in any way

7

The damages and willfulness issues, if not bifurcated, will also create a host of other problems. For example, counsel for Papst, Jerold Schnayer and very likely other Welsh & Katz attorneys, have been deeply involved with, and in fact largely running, the business dealings of Papst and attempting to license these patents all over the world. It is believed that the discovery Papst is refusing to produce and that is subject to our motion to compel will show the depth of involvement of the Welsh & Katz firm in the business dealings of Papst, particularly regarding licensing efforts on these patents with many different companies, and these are all highly relevant to the damages issues.[3] If the damages issues are not bifurcated, certainly Mr. Schnayer,

---

to any characteristic, property, advantage or disadvantage of any Casio digital camera (Request 10); (e) all agreements relating in any way to a Casio digital camera (Requests 13, 14, 15, 24, 25, 31); (f) every document and pleading relating to every legal proceeding anywhere in the world relating to any Casio digital camera (Requests 16, 17, 18); (g) every document relating to revenue derived from any digital camera made or sold anywhere in the world (Request 28); (h) every document relating in any way to Casio's digital camera costs and profits all over the world (Requests 29, 30); (i) every document relating to any advertisement, price list, or promotional material for Casio digital cameras from every country of the world (Requests 35, 36, 37); (j) every document related to every communication on every Papst patent anywhere in the world, specifically not limited to the patents-in-suit (Request 55); and (k) every document ever exchanged with any manufacturer of any Casio digital camera (Request 59). Similar requests were served on Casio America. While we intend to ask that these requests be stricken in their entirety, and appropriate sanctions be ordered by the Court pursuant to Rule 26(g), the manner in which Papst intends to use the damages and willfulness issues – to drive up Casio expenses and thus improperly coerce Casio to settle – is clear from their actions to date. *Compare, Chapman & Co. v. Itel Container Int'l v. B.V.*, 865 F.2d 676, 685 (5 Cir. 1989) (upholding sanctions where the discovery requested was "unreasonable, unnecessary, and unduly burdensome," and where it was found that the defendant was attempting to "inundate [the plaintiff] with unnecessary discovery requests to raise the costs of litigation to a point that [the plaintiff] would be forced to 'give up without a fight because of the expense.'").]

[3]     *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1561 (Fed. Cir. 1983) (the Federal Circuit criticized the district court for not considering the actual license negotiations of the parties in determining royalties); *Integra Lifesciences I, Ltd. v. Merck KGaA* , 2004 U.S. Dist. LEXIS 20725, *32-33 (S.D. Cal. 2004) ("back and forth negotiation regarding a license, which provides some factual basis to assist this Court in determining a reasonable royalty."; *Dragan v. L.D. Caulk Co.* , 1989 U.S. Dist. LEXIS 13966 at *29 (D.Del. 1989) (evidence of actual negotiations for a license relevant to damages analysis).

8

and possibly other attorneys in his firm, will be primary witnesses, requiring immediate disqualification of the Welsh & Katz firm.[4]

Moreover, as counsel for Papst has made clear, if the willfulness issue is not bifurcated, they will use that to seek production from the files of Casio's <u>litigation counsel</u>, claiming that these documents will be relevant to the willfulness issue. *See, e.g.,* document request 64 (calling for "all legal opinions, conclusions, and work product" about the patents); see also requests 44 and 45. The disruption this would create is self-evident.

Papst has written a full brief on bifurcation, below. Casio does not believe that briefing should be required (see our pending motion to compel and for sanctions), nor does Casio believe the Court desires full briefing in this report. Suffice it to say that we disagree very much with the Papst brief, and we will submit full briefing on this issue should the Court request it. Bifurcation, while not granted in every case, is the norm, especially in complex patent cases. *See, e.g., Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997) (bifurcating willfulness and damages: "Courts have found that concerns of prejudice, complexity, expedition, and judicial economy are particularly significant in patent cases…..").[5]

<u>Papst's position:</u>

Casio's speculative and inflamatory statements regarding Papst Licensing's motives in this lawsuit are untrue, unsupported, and only create animosity between the parties at a time

---

[4]    *Personalized Mass Media Corp. v. The Weather Channel, Inc.* , 899 F. Supp. 239, 243-244 (E.D. Va. 1995) (Counsel disqualified in a patent action because counsel was "the expert on all aspects of the Company's patent position.")

[5]    See also the following patent cases where the issues of willfulness and damages were bifurcated at both the discovery and trial phases: *Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc.*, 2001 U.S. Dist. LEXIS 10738 at *8-*11 (C.D. Cal. May 4, 2001);  *Novopharm Limited v. Torpharm, Inc.*, 181 F.R.D. 308, 312 (E.D.N.C. 1998); *Lemelson v. Apple Computer Inc.*, 1993 U.S. Dist. LEXIS at *6-*10, *20 (D. Nev. June 4, 1993).

when the parties should be working together. Papst Licensing merely informed Casio that it previously successfully defended itself against another plaintiff who pursued its case against Papst Licesning. Papst Licensing also informed Casio that the plaintiff was seeking over 500 million dollars from Papst Licensing and that after an eleven weeks bench trial the District Court overwhelmingly ruled in Papst's Licensing's favor on all counts. Papst Licensing is not using damages and willfulness issues as "weapons." Documents concerning these issues are overlapping with other issues in this case and are significant issues in almost every patent infringment case. Casio's statement that Welsh & Katz, Ltd.'s previous attempts to settle this lawsuit somehow disqualifies Welsh & Katz, Ltd. lacks legal and factual support, and if true, would also disqualify Casio's own counsel Morgan Lewis & Bockius, who also participated in the prior settlement discussions. Finally, the scope of Papst Licensing's discovery requests have been carefully tailored to match the scope of discovery needed by a patentee in any patent litigation which, by definition, addresses a broad number of topics. For example, Papst Licensing's requests for sales data on the accused products relates not only to Papst Licensing's damages claim, but also to the issue of commercial success which is a factor considered in connection with Casio's own invalidity claims. Papst Licensing's requests are also no broader in scope than Casio's own requests. Papst Licensing further submits that any objections to Papst Licensing's discovery requests should first be discussed in the context of a meet and confer between counsel, and not raised for the very first time in the context of this joint scheduling statement.

Papst Licensing proposes that Casio has failed to satisfy its burden that bifurcation of this action is necessary. More importantly, Papst Licensing will be greatly prejudiced if bifurcation is granted. Among other things, the final and complete resolution of this matter will be delayed,

and Papst Licensing will be forced to incur substantial additional cost and time to conduct two separate phases of discovery and two separate trials before two separate juries. This is especially true in this case where the vast majority of potential fact witnesses reside overseas.

The decision whether to bifurcate a patent case is left to the discretion of the trial court, and the party seeking bifurcation has the burden of showing bifurcation is appropriate. *Innovative Office Products. v. SpaceCo.* 2006 U.S.Dist.LEXIS 29439, *3 (E.D.Pa. 2006); *Mellon v. Beecham Group PLC,* 17 U.S.P.Q.2d 1149, 1154 (D.N.J. 1989)("The parties seeking bifurcation have the burden of showing that bifurcation is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties.") Indeed, bifurcation "is not the usual course that should be followed." *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 608 (N.D.Ga. 1989)

Bifurcation is not appropriate when issues and evidence overlap. *Monaghan v. SZS 33 Assocs.*, 827 F.Supp. 233, 245 (S.D.N.Y. 1993). Here, several issues in this case overlap rendering bifurcation inappropriate. In *THK Am. v. Nippon Seiko KK.*, 141 F.R.D. 463, 464 (N.D.Ill. 1991), the court specifically addressed the concern about overlapping liability and damages issues and the resulting need to present evidence twice to two separate juries:

> Plaintiff correctly argues that the damages trial cannot be conducted in an evidentiary vacuum. A jury will have to be familiar with the patents at issue, the products, and the linear guide industry itself. Therefore, much of the evidence that can be expected to be introduced in a trial on damages will duplicative of the evidence that can be expected to be presented in a trial on liability. If the case were bifurcated, it would be necessary to revisit the testimony and demonstrative evidence that previously had been used to explain to the liability jury, *to-wit*, what linear guides are, how they operate, how they are made, used, sold and other basic information. It goes without saying that if proof overlaps substantially, the parties, the witnesses, and the Court would be inconvenienced by the presentation of the same evidence several times.

*THK Am. Inc. v. NSK Co.*, 151 F.R.D. 625, 630 (N.D.Ill. 1993).

11

Here, as in the *THK Am. (NSK)* case, having two separate trials before two separate juries would require substantial duplication in terms of presenting evidence at trial and offering testimony of the same witnesses. Furthermore, given that two of the three parties in this action are foreign companies whose factual witnesses reside overseas (plus a third-party inventor in Germany), bifurcation would result in multiple depositions and trial appearances of the same foreign witnesses which will greatly burden the parties and counsel in terms of costs and time. There is simply no need to travel overseas to depose the same individuals on multiple occasions. The most efficient course is for all the foreign factual witnesses to be deposed once. Furthermore, given the fact that discovery of third-party fact witness will likely have to achieved through the Hague Convention and the like, it is very possible that the parties will only be permitted by the international authorities to depose a third-party fact witness once.

Several other factual issues overlap in this action. Casio has alleged that each patent-in-suit is invalid under 35 U.S.C. § 103, or in other words, obvious in view of the prior art. Accordingly, evidence of commercial success may be used in liability phases of litigation to rebut Casio's defense of obviousness. To establish commercial success, Papst Licensing will need to rely upon the "the sales data of the infringing products, size of the market involved, market share, market share growth, and the extent to which market share is attributable to the merits of the claimed invention as opposed to extraneous factors, such as advertising and product promotion." *IPPV Enters. v. Cable/Home Commc'n Corp*, 26 U.S.P.Q.2d 1714, 1715 (S.D.Cal. 1993).

Evidence of commercial success is equally relevant to the issue of damages. Commercial success is one of the primary factors in determining a reasonable royalty. *See, Willemijn*

*Houderstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F.Supp. 1429, 1434 (D.Del. 1989). The court in *THK Am. (NSK)* noted the substantial overlap, stating that:

> Evidence regarding commercial success of plaintiff's patented [invention] will be the same in significant respects as the evidence relating to damages and, therefore, ought to be presented once rather than twice. *THK Am. (NSK)*, 151 F.R.D. at 629.

There is also an overlap between liability and willfulness issues and evidence in this case. Courts have held that the question of whether an infringement was willful touches upon *both* liability and damages. *See Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F.Supp. 374, 375 (N.D.Ill. 1991). For instance, evidence of copying is relevant to both validity and willfulness. *THK Am. (NSK)*, 151 F.R.D. at 630.

Moreover, only the fact finder concerning liability issues can appropriately put the nature of Casio's infringement in the proper context to determine if that infringement was willful. *See Kimberly-Clark*, 131 F.R.D. at 609. ("[T]he willfulness determination, *i.e.*, the defendant's state of mind when it infringed the patent, is a finding of fact inextricably bound to the facts underlying the alleged infringement.")(citing *Smith v. Aleyska Pipeline Serv. Co.,* 538 F.Supp. 977, 986 (D.Del. 1982), *aff'd.*, 758 F.2d 668 (Fed.Cir. 1984); *Keyes Fibre*, 763 F.Supp. at 375 ("The evidence relating to [defendant's] state of mind when it committed the infringement, which is clearly relevant to damages, cannot be neatly separated from the underlying liability issue of whether the patent was infringed upon in the first place.") Indeed, as one court has observed:

> Merely apprising the damages jury of the liability jury's determination that a particular party's conduct was willful will not inform them of the degree of willfulness. Consequently, the damages jury will be without the necessary factual predicate upon which to assess damages for willful conduct. And if the parties were required to provide the necessary factual predicate to the damages jury, wasteful duplication of evidence and effort would occur, and the parties' litigation expenses would concurrently be increased.

13

*THK Am. (Nippon),* 141 F.R.D. at 465. Having a single trial on all issues, including liability and willfulness, would avoid the inefficient and costly duplication of two separate trials before two different juries.

Considering whether separate trials will unduly prejudice Papst Licensing as the nonmoving party is paramount. *See. H.B. Fuller Co. v. Nat'l Starch & Chem. Corp.*, 595 F.Supp. 622, 625 (D.Del. 1984); *Calmar v. Emson Research Inc.*, 850 F.Supp. 861, 866 (C.D.Cal. 1994); *Keyes Fibre,* 763 F.Supp. at 375. Indeed, "[e]ven when bifurcation has been found to promote judicial economy, courts have refused to order separate trials if bifurcation would result in unnecessary delay, additional expenses, or some other form of prejudice. *See Willemijin*, 707 F.Supp. at 1433.

Casio's proposed bifurcation will severely prejudice Papst Licensing because it would unnecessarily delay a final resolution of Papst Licensing's claims. The *Willemijin* court stated, "[a]s plaintiff has correctly indicated, prejudice under these circumstances may simply amount to unfair delay of the final disposition of the matter." *Id.* This prejudice would be further exacerbated if Casio appeals an adverse decision on liability, because final resolution of the case will be further delayed. *See* 28 U.S.C. § 1292(c)(2). The delay alone establishes prejudice to Papst Licensing. Therefore, for all the reasons discussed above, Casio has not and cannot meet its burden to demonstrate that bifurcation is appropriate.

.

12. The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).

Casio proposes that the pretrial conference take place on September 15, 2008.

14

Papst Licensing proposes that the pretrial conference take place on January 8, 2009.

13. Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.

The parties agree that the court should set a trial date at the pretrial conference that will be 30 to 60 days after that conference.

14. Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.

See list of additional matters below.

15

## ADDITIONAL MATTERS DISCUSSED

1.     **DISCOVERY:**  The parties agree that attorney-work product and attorney-client privileged materials created by counsel after the Complaint was filed by Casio Inc. are to be excluded from production and need not be placed on any privilege logs produced in response to any discovery requests.  The exception to this agreement are those documents related to opinions of counsel addressed in paragraph 6 below.

2.     **SCHEDULING**:  Casio proposes that this case be considered a complex litigation due to the involvement of foreign entities and that the case will require approximately 18 months to be ready for trial.  Papst Licensing agrees that this case should be considered a complex litigation and that the case will approximately be ready for trial approximately 8 months after the close of fact discovery.

3.     **SERVICE:**  The parties agree on e-mail service of documents, excluding large appendices.  The parties agree that documents will be served in PDF format except for any discovery documents requiring a response (for example, but not limited to, discovery requests) which will be served in both PDF and word format.  Any large appendices will be sent by overnight delivery for next day delivery.  Service will not be considered achieved until the date the complete document, including all appendices and exhibits, is actually received by both local and trial counsel for the opposing party.

4.     **EXPERT REPORTS**: Casio proposes that no draft expert reports will be discoverable and that otherwise, expert discovery should proceed per the Federal Rules.

Papst Licensing proposes the following stipulation concerning expert discovery:

a.    The following categories of information are protected, outside the permissible

scope of discovery and not a proper subject or basis of questions during

deposition:

1.    Except as provided below, any correspondence or other communications

(whether oral or written) between the expert and attorneys for the party

offering the testimony of such expert witness, except the nature of the

compensation arrangement with the expert witness.

2.    Preliminary, intermediate or draft opinions prepared by, for or at the

direction of an expert witness.

3.    Except as provided below, notes of the expert that are not part of the

expert report.

b.    Notes, writings, documents, and oral or written communications that are relied on

by the expert in connection with the expert's opinions in this matter are not

outside the scope of permissible discovery.

c.    To the extent that any part of this proposal waives disclosure requirements under

Fed. R. Civ. P. 26(a)(2)(B), Papst proposes that the Court deem any such waiver

to have occurred. .

5.    **EDISCOVERY**:

Format of Production

(a)    The parties agree to produce all responsive hard copy and electronic documents in

single-page Tagged Image File Format ("TIFF") with an accompanying Summation or

Concordance load file.  To the extent available, the load file shall contain for each document the

beginning Bates number, the ending Bates number, a description of the source from which the

17

document came, a description of the computer from which the document came, the associated file name, and the associated directory path for the document.

(b)  Documents that present imaging or formatting problems shall be promptly identified and the Parties shall meet and confer to attempt to resolve the problems.

(c)  Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source documents.  No other legend or stamp will be placed on the document image other than the Bates Number, confidentiality legend (where applicable), and redactions.

Each party will bear the burden and cost of any OCR post-processing.  The parties agree that during the first round of exchanging documents the parties need not exchange metadata, except as referenced  above.  If any party should later desire to obtain additional metadata, the parties will attempt to work it out amicably.

Papst further proposes that an extracted text file of electronic documents be part of the load file associated with each electronic document.

6.  **WILLFULNESS/INDUCEMENT.**

Casio proposal:  As set forth above, Casio proposes that the issue of willful infringement be bifurcated with the damages issues until such a time as infringement is determined.  As such, any decision with respect to a waiver the privilege associated with any opinions of counsel would be untimely as well as prejudicial before a finding of liability.  Regardless, what Papst seeks by proposing that Casio decide whether or not it will rely on a privileged opinion of counsel so early in the discovery process is a road map to Casio's case against Papst's patent.

18

The issue of willfulness is applicable almost exclusively to damages, and then only after liability is found. Demanding that Casio decide whether to waive its privilege before Casio has even advanced its non-infringement contentions is premature and prejudicial. *See, e.g., Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 34 (D. Del. 1995); *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. at 260 citing *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643-44 (Fed. Cir. 1991)[6]. Casio proposes that to the extent the case is not bifurcated, its decision whether or not to rely on its opinion of counsel be considered after the close of fact discovery.

With respect to Papst's proposal regarding Casio's contention that it has never induced infringement, that issue has no bearing on the timing of the production of opinions of counsel.

Papst proposal: Papst Licensing proposes that no later than June 2, 2007, Casio Japan and Casio U.S. will inform Papst Licensing in writing if each of them elects that they will rely on an opinion of counsel concerning the issue of willful infringement. At that time, all previously requested documents relating to any opinion of counsel must also be produced. To the extent that Casio claims that any document relating to any opinion of counsel is protected by any privilege or doctrine, any and all such documents, including documents created after commencement of this litigation, must be identified on a privilege log in accordance with the Federal Rules of Civil Procedure on June 2, 2007. Because Casio is now denying Papst Licensing's allegations of infringement by inducement, Papst proposes that discovery concerning

---

[6] "An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court in camera, reveal that the defendant is indeed confronted with this dilemma."

19

the opinions of counsel provided to Casio should proceed now as those opinions relate to the state of mind of Casio which is evidence of Casio's infringement by inducement. To the extent that Casio asserts that it need notto disclose documents related to opinons of counsel, those documents, including any documents created after this litigation commenced, should be placed on a privilege log on June 2, 2007.

This procedure is required because the opinions of counsel received by Casio Japan and Casio U.S. may be discoverable as a result of defenses that Casio Japan and Casio U.S. may pose regarding willful infringement. Generally, where a potential infringer has actual notice of another's patents rights, he has an affirmative duty of due care to respect those rights. *Ryco Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed.Cir. 1988). The duty of care often involves the potential infringer obtaining complete legal advice before engaging or continuing allegedly infringing activities. *Ryco*, 857 F.2d at 1428. A party that seeks and follows advice of counsel may assert reliance on that advice as evidence that it did not breach its duty to respect the patent rights.

When good faith reliance on advice of counsel is asserted to defend against a charge of willful infringement, the assertion waives any attorney client privilege with respect to that advice. *Abbott Labs v. Baxter Travenol Lab,* 676 F.Supp. 831, 832 (N.D.Ill. 1987). Moreover, a party cannot claim reliance on advice of counsel and, at the same time, conceal the full nature and extent of that advice. *Id.* at 833. Therefore, when reliance on advice of counsel is asserted, the waiver is complete, and extends to all communications on that subject matter. *Id.* at 832. Therefore, if Casio Japan or Casio U.S. injects into this case an allegation that it relied on advice of counsel, it must be done on June 2, 2007, so that all communications and/or privilege logs on

20

the same subject may be discovered during fact discovery. *Belmont Textile Mach. v. Superba, S.A.*, 48 F.Supp.2d 521, 523-24 (W.D.N.C. 1999).

Also at issue in this case is whether Casio Japan or Casio U.S. actively induced others to infringe the patents in suit. Active inducement occurs when one party, who does not directly infringe the patent, nevertheless induces another to directly infringe the patent with knowledge that it is inducing actual infringement. *DSU Medical v. JMS Co.*, 471 F.3d 1293 (Fed.Cir. 2006)("[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements."). Therefore, Casio Japan's and Casio U.S.'s knowledge of the at-issue patents, and its understanding of whether the actions that induced its customers to make would infringe the patents at issue, are highly relevant to this case. Because opinions of counsel will provide direct evidence of Casio's statement of mind and its understanding of its inducement actions, discovery on those opinions should proceed now.

Allowing Casio Japan and Casio U.S. to withhold this discoverable information until the end of the discovery period would add to the cost of the litigation. If opinions are first disclosed after the depositions of fact witnesses have been completed, Papst Licensing will likely be forced to conduct a second round of depositions, at least including the recipients of the opinions, or those who are alleged to have acted in reliance on the opinions. To avoid re-deposing witnesses, Casio Japan and Casio U.S. should be required to make its election before depositions begin. Furthermore, given the need in this case for international discovery through the Hague Convention and the like, it is very possible that the parties will be allowed to only depose third-party fact witnesses once, which further supports an early election in this case.

21

Further, delaying discovery on these issues will have the effect of cutting off Papst Licensing from any follow-up discovery, such as deposing the persons who requested, prepared, and received the opinions. Once again, the issue is the state of the mind of the corporations, which is determined by discovering the state of mind of the persons within the corporation. Documents may go a long way toward establishing the state of mind of Casio Japan and Casio U.S., but documents are unlikely to tell the full story. Papst Licensing should be allowed to take discovery on the issue of Casio Japan's and Casio U.S.'s state of mind throughout the discovery process. To achieve this end, Papst Licensing requests that this Court require that no later than June 2, 2007, Casio Japan and Casio U.S. will inform Papst Licensing in writing if each of them elects that (they will rely on an opinion of counsel concerning the issue of willful infringement. Papst Licensing further requests that discovery move forward on opinions of counsel relevant to the issue of infringement by inducement. To the extent, that Casio is not willing to disclose documents related to opinons of counsel, those documents, including any documents created after this litigation commenced, must be placed on a privilege log on June 2, 2007.

22