**FIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION**
_____

**This Document Relates To:**

**ALL CASES**

**Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880**

<u>**CAMERAS MANUFACTURER'S PROPOSED PROTECTIVE ORDER
(EXHIBIT A) AND COMMENTS ON OUTSTANDING ISSUES**</u>

The Camera Manufacturers, including Fujifilm, Matsushita, JVC, Olympus,

Samsung, and Casio, respectfully submit their Proposed Protective Order (Exhibit A

hereto) and this position paper on the outstanding protective order issues.

The Manufacturers recognize that, by the Court's January 31, 2008 Order, all

parties were directed to submit a "joint proposed protective order."  To that end, at the

request of counsel for Papst, the Manufacturers prepared and provided to Papst a draft

protective order, including Prosecution Bar provisions precisely as ordered by the Court.

But rather than propose revisions to the Manufacturers' draft protective order so that the

parties could jointly file a single document, Papst submitted its own proposed order

(Exhibit B), and the parties have several outstanding issues.  Regrettably, therefore, the

Manufacturers were unable agree with Papst on a joint submission.

I.      <u>**PROSECUTION BAR PROTECTION**</u>

A.      <u>**Documents Subject to the Prosecution Bar Designation**</u>

At the January 31 hearing (transcript attached as Exhibit C), this Court stated, in

response to a specific inquiry from counsel for Papst, that the Manufacturers should be

allowed to designate as Prosecution Bar materials any documents or information that they believe in good faith should be so designated, subject to later challenge by Papst (*id.* at 7-8).

Disregarding the Court's instructions, Papst proposes a complex and narrow definition of what may be Prosecution Bar material. Exhibit B, Paragraph 1(d). Under Papst's proposed order, the Manufacturers will not be allowed to decide in good faith which of their confidential information should be designated Prosecution Bar, but must only designate information as Prosecution Bar that complies with Papst's complex and narrow definition (Exhibit B, Paragraph 1(d)). The Papst proposed Prosecution Bar definition requires that materials so designated must concern "only" the technical aspects of the cameras; it inexplicably is limited to information concerning cameras on sale for less than two years (the Manufacturers possess extremely sensitive technical information relating to cameras and other products that have been on sale much longer than two years and the Papst applications could predate cameras sold ten years ago); it would only cover information that is "relevant" to the scope of the patents-in-suit (regardless of the scope of the other applications Papst is currently prosecuting); it must meet some unidentified definition of a "trade secret"; and it must not apply to information "independently developed or rightfully in the possession of a party" (breeding further disputes).

Papst's proposed definition would be a logistical nightmare for the parties and the Court, and it is flatly inconsistent with the Court's statement that the Manufacturers would decide in good faith which information is Prosecution Bar, subject to later challenge by Papst if appropriate. The pertinent provision in the Manufacturers' Proposed Order is found in Exhibit A, paragraph 5.

2

### B.    Duration of the Prosecution Bar Restriction

At the January 31 hearing, the Court said it was inclined to adopt the Prosecution Bar provision proposed by the Manufacturers.  Exhibit C, at 6.  That provision provided that the bar would extend until three years after the conclusion of all of the MDL actions, and it is found in the Manufacturers' Proposed Order, Exhibit A, paragraphs 10(a), (b).

Papst's proposal only bars lawyers from prosecuting applications for one year after termination of the litigation and appeals.  Exhibit B, Paragraph 7(c).  Consistent with the Court's expressed inclination at the January 31 hearing, the bar should last for three years post-litigation.  *See, e.g., Wm. Wrigley Jr. Co.*, 2005 WL 146967, *2 (explaining that "[t]he period of limitation ought to be longer than one year given the current length of time it takes to secure a patent and the ability of an applicant to amend the patent application during prosecution," and imposing a three year bar).  Given that Papst's sole business is the prosecution and enforcement of intellectual property, and the magnitude of highly confidential technical information that is likely to be produced from the several Manufacturers in this litigation, a bar of three years is warranted here.

## II.    OTHER PROTECTIVE ORDER ISSUES

In addition to the Prosecution Bar issues, there are numerous other reasons why the Proposed Protective Order from the Manufacturers should be adopted over the order proposed by Papst.

### A.    Confidential Information

The Manufacturers propose a definition of "Confidential Information" that may include materials that the disclosing party represents in good faith are not normally publicly disclosed.  Exhibit A, paragraph 3.  If, in the normal course of their businesses,

the Manufacturers maintain the materials at issue in confidence, they should not be required to open such materials to unprotected disclosure simply due to this litigation.

Papst, on the other hand, proposes a definition that is far more complex, and would require a showing that the materials would create competitive damage if publicly disclosed. Exhibit B, paragraph 1(b). This proposed definition is unworkable as it will generate needless disputes, and it fails to keep confidential all those materials that are currently kept in confidence by the Manufacturers. For example, under the Papst proposal, the Manufacturers would be required to show how sales numbers from five years ago would damage their competitive positions. Although such information is routinely kept very confidential, the Manufacturers would be required to meet this further showing of the vague standard of "competitive damage" if it is disclosed. Papst has no need for its restrictive and burdensomely narrow definition, since the Manufacturers are agreeable to allowing even in-house Papst personnel to see the lower level of "Confidential" materials. For this reason, the Manufacturers' proposal should be adopted. Exhibit A, paragraph 8(b).

### B.    Tiers of Confidentiality

Papst proposes only one level of confidentiality other than Prosecution Bar information, thus allowing in-house personnel of Papst to see the most sensitive non-technical information of the Manufacturers. Exhibit B, paragraphs 6 and 7. Two additional tiers, as proposed by the Manufacturers, allows for more flexibility and ability to protect information appropriately. Exhibit A, paragraphs 3-4.

### C.    Deposition Confidentiality Default

In accordance with their experiences in other cases, the Manufacturers propose

that deposition transcripts be held at the highest level of confidentiality until de-designated. Exhibit A, paragraph 6(b). Papst proposes instead that confidentiality designations need to be made on the fly at the depositions (or, apparently, kept non-confidential until the transcript is designated). Exhibit B, paragraph 2. But this is highly impractical because during the deposition counsel will be focused on the substance of the deposition, and not on whether each sentence might be confidential and if so at which level. Moreover, appropriate designation levels often cannot be determined without an opportunity for client consultation after receipt of the transcript. Accordingly, the proposal of the Manufacturers should be adopted.

### D.    Other Issues

There are numerous other issues on which the parties cannot agree, but the positions of the parties are clear from their respective proposed orders.

## IV.    CONCLUSION

For all the foregoing reasons, the Manufacturers respectfully request that the Court enter the Protective Order of Exhibit A.


Respectfully Submitted,

DATED:  February 27, 2008          /s/ J. Kevin Fee
                                   J. Kevin Fee
                                   Morgan, Lewis & Bockius LLP
                                   1111 Pennsylvania Avenue, NW
                                   Washington, D.C. 20004
                                   Tel.: (202) 739-5355
                                   Fascimile: (202) 739-3001 (fax)
                                   jkfee@morganlewis.com

                                   Attorney of Record for Casio America,
                                   Inc. and Casio Computer Co., Ltd

Steven J. Routh
HOGAN & HARTSON L.L.P.
555 13th Street, NW
Washington, DC 20004-1109
Telephone:  (202) 637-6472
Facsimile:   (202) 637-5910
*sjrouth@hhlaw.com*

Attorney of Record for Fujifilm
Corporation and Fujifilm U.S.A., Inc.

Patrick J. Kelleher
DRINKER BIDDLE & REATH LLP
191 N. Wacker Dr. #3700
Chicago, IL 60606
Telephone:  (312) 569-1000
Facsimile:   (312) 569-3375
*patrick.kelleher@dbr.com*

Attorney for Record for Samsung Techwin
Co., Ltd. and Samsung Opto-Electronics,
America, Inc.

Richard de Bodo
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone:  (310) 785-4694
Facsimile:   (310) 785-4601
*rdebodo@hhhlaw.com*

Attorney of Record for Matsushita Electric
Industrial Co., Ltd., Olympus Corporation,
and Olympus Imaging America, Inc.

Rachel M. Capoccia
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone:  (310) 785-4744
Facsimile:   (310) 785-4601
*rmcapoccia@hhlaw.com*

Attorney of Record for Victor Company
Of Japan, Ltd.

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

_____

This Document Relates To:

ALL CASES

Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880

## PROPOSED PROTECTIVE ORDER

### Scope and Definition of Protected Information

1.      All documents, materials, items, and/or information produced either by a party or by a third party (a "Producing Party") to any of the parties in this case (a "Receiving Party") shall be governed by this Protective Order.

2.      A Producing Party may designate any information or materials it produces in this action as (1) "Confidential," (2) "Highly Confidential – Outside Counsel Only," or (3) "Highly Confidential – Prosecution Bar Information" under the terms of this Protective Order (collectively referred to herein as "Protected Information").  Absent a specific order by this Court, Protected Information shall be used by a Receiving Party solely in connection with this litigation, and not for any business, competitive, or governmental purpose or function, or any other litigation, and such information shall not be disclosed to anyone except as provided herein.

3.      Information or materials designated as "**Confidential**" shall be those things that may be disclosed to the parties for the purposes of the litigation, but which should be protected against disclosure to third parties.  Examples of such information or materials include without limitation materials a party reasonably and in good faith believes contain or disclose information

that the party, in the ordinary course of business, does not or would not publicly disclose, or information that a party is under a preexisting obligation to maintain as confidential.

4.      Information or materials designated as "**Highly Confidential – Outside Counsel Only**" shall be those things of a proprietary business or technical nature that would be of value to a competitor or potential customer of the party or third party holding the proprietary rights thereto, and that should be protected from disclosure.  Examples of such information or materials include without limitation a party's trade secrets; confidential technical or business information; technical practices; methods or other know-how; marketing or business plans; product sales data or other projections; financial data; business strategy; confidential agreements or relationships with third parties; or materials that a party is under a pre-existing obligation to a third party to treat as such.

5.      Information or materials designated as "**Highly Confidential – Prosecution Bar Information**" shall be those things of a proprietary technical nature that could be of value to a competitor or potential customer of the party or third party holding the proprietary rights thereto when prosecuting patent applications relating to the technology disclosed, discussed, or documented in the materials so marked.  Examples of such information or materials include a party's trade secret or confidential technical information, including without limitation specification and design documents, schematics, blueprints, CAD drawings and data, source code, and other technical documents and information.  The Camera Manufacturers and third parties may designate materials as "Highly Confidential – Prosecution Bar Information," but under no circumstances shall Papst as the producing party designate any materials as "Highly Confidential – Prosecution Bar Information" absent agreement of the Parties or further Order of the Court.

## Method of Designating Protected Information

6.      The designation of information or material as "Confidential," "Highly Confidential – Outside Counsel Only," or "Highly Confidential – Prosecution Bar Information"

for purposes of this Protective Order shall be made in the following manner by the Producing Party:

      (a)    in the case of documents, exhibits, briefs, memoranda, interrogatory responses, responses to requests for admission, or other materials (apart from depositions or other pretrial testimony):  by affixing the legend "Confidential," "Highly Confidential – Outside Counsel Only," or "Highly Confidential – Prosecution Bar Information" as appropriate, to each page containing any Protected Information at the time such documents are produced or disclosed, or as soon thereafter as the Producing Party becomes aware of the confidential nature of the information or material disclosed and sought to be protected hereunder.  No liability or sanctions, however, shall arise or be imposed for any disclosure by a Receiving Party before such post-production designation to those not authorized to view the materials under this Protective Order after such post-production designation.

      (b)    in the case of depositions or other pretrial testimony:  The parties shall treat all deposition and other pretrial testimony of the Camera Manufacturers or any of their directors, agents, employees, or other representatives, and of third parties as "Highly Confidential – Prosecution Bar Information" unless and until such testimony is re-designated as not Protected Information or as a lower level of confidentiality.  The parties shall treat all deposition and other pretrial testimony of Papst or any of its directors, agents, employees, or other representatives as "Highly Confidential – Outside Counsel Only" unless and until such testimony is re-designated as not Protected Information or as a lower level of confidentiality. The parties shall treat all deposition and other pretrial testimony of Papst's consultants or experts that relies upon "Highly Confidential – Prosecution Bar Information" of any of the Camera Manufacturers as "Highly Confidential – Prosecution Bar Information" unless and until such testimony is re-designated as not Protected Information or as a lower level of confidentiality. The party offering the testimony so designated shall make a good faith effort to re-designate such testimony upon a reasonable request by another party.  The parties may modify this procedure

for any particular deposition or proceeding through agreement on the record at such deposition or proceeding or otherwise by written stipulation, without further order of the Court; provided, however, that any such modification is subject to review by the Court, if appropriate.  If any Protected Information is disclosed during the course of a deposition, that portion of the deposition record reflecting such Protected Information shall be sealed and stamped with the designated degree of confidentiality, and access thereto shall be limited pursuant to the other terms of this Protective Order.

(c)     With respect to any testimony elicited during any deposition, whenever counsel for any party deems that any question or line of questioning calls for or has resulted in disclosure of Protected Information and any person is in attendance at the deposition who is not qualified to receive such information pursuant to this Order, and such person is not the witness being examined, such person shall be excluded from those portions of the proceeding during which disclosure of the Protected Information occurs.

7.     For applications and motions to the Court with which a party submits Protected Information, all documents and chamber copies containing the materials so marked shall be filed with the Court in sealed envelopes or other appropriate sealed containers.  The word "Confidential" shall be stamped on the envelope and a statement substantially in the following form shall also be printed on the envelope(s):

> **This envelope is sealed pursuant to Order of the Court, contains Confidential Information and is not to be opened or the contents revealed, except by Order of the Court or agreement by the parties.**

## Disclosure of Protected Information and Prosecution Bar

8.     Information or material designated as "Confidential," or copies or extracts therefrom and compilations and summaries thereof, may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:

(a)    the Parties' respective Outside Counsel and regular and temporary employees of such Outside Counsel to whom it is necessary that the information or material be shown for the purposes of this litigation.  For purposes of this Protective Order, "Outside Counsel" shall be defined as any attorney of record who enters an appearance in this action and is not an employee, officer, director, or greater than one-percent owner of a Party.

(b)    three (3) designated in-house personnel of the legal or intellectual property department of each Party whose assistance is needed by counsel for the purposes of this litigation, subject to and conditioned upon compliance with Paragraph 12 herein; provided that in the good faith judgment of Outside Counsel, the in-house employees are reasonably necessary to that Party's prosecution or defense of this action.  In the event that an in-house member of the legal or intellectual property department designated by the Receiving Party to receive Protected Information under this Order changes his or her job position or employer such that he or she no longer serves in such position, the Receiving Party may designate a replacement in-house member of the legal or intellectual property department under this paragraph.

(c)    consultants who have been retained by a Party or counsel of record in this litigation for purposes of assisting in the preparation of this litigation for trial and who have been qualified pursuant to Paragraph 12 of this Protective Order (such as independent accountants, statisticians, economists, technical consultants, or other technical experts);

(d)    third party contractors, including their employees and agents, involved solely in one or more aspects of graphics or design services for purposes of preparing demonstrative exhibits, organizing, filing, copying, coding, converting, sorting, translating, or retrieving data or designing programs for handling data connected with this action, including the performance of such duties in relation to a computerized litigation support system, subject to and conditioned upon compliance with Paragraph 12 herein;

(e)    the Court, Court personnel, jurors, and others employed by the Court;

(f)     court reporters and employees of court reporters engaged in connection with this action to record and transcribe testimony in this litigation who have agreed to be bound by and comply with this Protective Order, and any outside copy services who have agreed to be bound by and comply with this Protective Order;

(g)     non-technical jury or trial consulting services retained by counsel for a party;

(h)     any authors or recipients of the information or materials marked Confidential and, in the case of information or materials prepared in connection with the author's employment, any witnesses currently employed by the same entity that employed the author at the time the information or materials were created;

(i)     mock jurors engaged by the Parties and/or their consultants in preparation for trial, provided that (i) no Party will use any mock juror who is or was employed or affiliated with any Party to this action; (ii) mock jurors will not be allowed to retain any tangible materials that contain or disclose any Protected Information, and (iii) mock jurors first agree in writing to maintain the confidentiality of any Protected Information provided to them in connection with being a mock juror; and

(j)     any other person only upon order of the Court or upon written consent of the Producing Party.

9.     Information or material designated as "Highly Confidential – Outside Counsel Only," or copies or extracts therefrom and compilations and summaries thereof, may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the persons of Paragraphs 8(a) and 8(c)-(j), according to the terms specified in those paragraphs.

10.     Information or material designated as "Highly Confidential – Prosecution Bar Information," or copies or extracts therefrom and compilations and summaries thereof, may be

disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:

(a)     the Parties' respective Outside Counsel and regular and temporary employees of such Outside Counsel to whom it is necessary that the information or material be shown for the purposes of this litigation, provided that no such individuals given access to "Prosecution Bar Information" shall be involved in any manner, directly or indirectly, with the drafting or prosecution of any new or pending patent application relating to the subject matter of the "Prosecution Bar Information" during the pendency of this litigation and for a period of three years following the termination (including any appeals) of all suits that are a part of this MDL. For purposes of this Protective Order, "Outside Counsel" shall be defined as any attorney of record who enters an appearance in this action and is not an employee, officer, director, or greater than one-percent owner of a Party.

(b)     consultants who have been retained by a Party or counsel of record in this litigation for purposes of assisting in the preparation of this litigation for trial and who have been qualified pursuant to Paragraph 12 of this Protective Order (such as independent accountants, statisticians, economists, technical consultants, or other technical experts), provided that no such individuals given access to  "Prosecution Bar Information" shall be involved in any manner, directly or indirectly, with the drafting or prosecution of any new or pending patent application relating to the subject matter of  the "Prosecution Bar Information" during the pendency of this litigation and for a period of three years following the termination (including any appeals) of all suits that are a part of this MDL.

(c)     any of the persons identified in Paragraphs 8(d)-(j), according to the terms specified in those paragraphs.

11.     This Protective Order has no effect upon, and shall not apply to, a party's use or disclosure of its own confidential information for any purpose.  Nothing contained herein shall

impose any restrictions on the use or disclosure by a party of Protected Information obtained lawfully by such party independently of any proceedings in this action, or which:

      (a)     was already known to such party by lawful means prior to acquisition from, or disclosure by, another Party in this action;

      (b)     is or becomes publicly known through no fault or act of such Party; or

      (c)     is rightfully received by such party from a third Party which has authority to provide such information or material and without restriction as to disclosure.

### Designating  Individuals to Receive Protected Information

12.     A Party seeking to provide access to Protected Information for individuals designated under Paragraphs 8(b), 8(c), 8(d) and 10(b) shall:

      (a)     Before giving such individual access to Protected Information, confirm the individual's understanding and agreement to abide by the terms of this Protective Order by obtaining a completed and signed a copy of an undertaking in the form attached hereto as Exhibit A before.

      (b)     A Party seeking approval  for a member of its legal or intellectual property department to receive Protected Information pursuant to Paragraph 8(b) herein shall provide the other parties with such person's name and title, and a copy of a completed and signed undertaking in the form attached hereto as Exhibit A.

      (c)     A Party seeking approval for a consultant pursuant to in Paragraphs 8(c) or 10(b) herein shall provide the other Parties with a current resume or curriculum vitae of such person, identifying the consultant's past and present employment, persons or entities with whom the consultant has been engaged in any consulting relationships for the last five years, a brief description of the subject matter of that consulting work, and a copy of a completed and signed undertaking in the form attached hereto as Exhibit A.

13.     Within ten (10) calendar days after service (via email or overnight delivery) of the information and signed undertaking by the Party seeking approval, any other Party may object to

the individual proposed for approval, stating the basis for withholding approval. Failure to object within ten (10) days to an individual proposed shall be deemed approval, but shall not preclude a party from objecting to continued access to Protected Information by that person if new facts suggesting a basis for objection are subsequently learned by the party or its counsel. If any other Party so objects, the parties shall, within fifteen (15) days from the date of the mailing of the notice of objection, confer and attempt to resolve the dispute. If the Parties cannot resolve the dispute, or if the conference does not take place, then within thirty (30) days from the date of the mailing of notice of objection, the objecting party may move the Court for an order that access to Protected Information be denied to the designated person. Once an objection is raised, the designated person shall not be given access to Protected Information until the objection is resolved by agreement of the parties or Court order.

<u>**Challenging Designations of Protected Information**</u>

14.    No party shall be obligated to challenge the propriety of the designation of any Protected Information and a failure to do so shall not preclude any subsequent objection to such designation or motion to seek permission to disclose such material or the information contained therein to persons not identified in this Order, or from otherwise modifying the provisions of this Order.

15.    A party may challenge another party's designation of Protected Information by serving a written objection upon the Producing Party. The Producing Party shall notify the challenging party in writing of the bases for the asserted designation within five (5) business days after receiving any written objection. The parties shall confer in good faith as to the validity of the designation within three (3) business days after the challenging party has received the notice of the bases for the asserted designation. To the extent the parties are unable to reach an agreement as to the designation, the objecting party may make an appropriate application to this Court, with confidential portions thereof to be kept under seal, requesting that specifically identified documents, information, and/or deposition testimony be excluded from the provisions

of this Protective Order or downgraded in terms of the degree of protection provided.  Until a dispute over the asserted designation is finally resolved by the parties or the Court, all parties and persons shall treat the information or materials in question as designated.

16.    Entering into, agreeing to, and/or producing or receiving Protected Information or otherwise complying with the terms of this Protective Order shall not:

(a)    operate as an admission by any party that any Protected Information contains or reflects trade secrets, proprietary or commercially sensitive information, or any other type of confidential information;

(b)    operate as an admission by any party that the restrictions and procedures set forth herein constitute or do not constitute adequate protection for any particular Protected Information;

(c)    prejudice in any way the rights of the parties to object to the production of documents they consider not subject to discovery;

(d)    prejudice in any way the rights of any party to object to the authenticity or admissibility into evidence of any document, testimony, or other evidence subject to this Protective Order;

(e)    prejudice in any way the rights of a party to seek a determination by the Court whether any information or material should be subject to the terms of this Order;

(f)    prejudice in any way the rights of a party to petition the Court for a further protective order relating to any purportedly confidential information or persons to whom such information may be disclosed;

(g)    prejudice in any way the rights of a party to make a showing that information or materials of proprietary or competitive value, but which is not specifically included in the categories of "Highly Confidential – Outside Counsel Only" information or "Highly Confidential – Prosecution Bar Information" delineated above, is properly designated; or

(h)      prevent the parties to this Protective Order from agreeing in writing or on the record during a deposition or hearing in this action to alter or waive the provisions or protections provided for herein with respect to any particular information or material produced by the parties.

## "Clawback" Provisions

17.      Any Producing Party who inadvertently fails to designate Protected Information or otherwise wishes to change the designation of confidentiality under this Protective Order may later do so, and such document/information shall be treated by all other Parties as being so designated from the time of the notification in writing of the inadvertent misdesignation or failure to designate.  A Producing Party shall correct its failure to mark an item as Protected Information in writing accompanied by substitute copies of each item, container, or folder, appropriately marked with the proper confidentiality designation pursuant to this Protective Order.  The inadvertent disclosure of Protected Information by the Producing Party in producing discovery, regardless of whether the information was designated as such at the time of disclosure, shall not be treated as a waiver in whole or in part of a Producing Party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject, and each Party agrees to make reasonable efforts to preserve the confidentiality of the inadvertently disclosed information.  As soon as the Receiving Party has notice of the inadvertent production, the Receiving Party must endeavor in good faith to obtain all copies of the document which it distributed or disclosed to persons not authorized to access such information by Paragraphs 8-10 above, as well as any copies made by such persons.

18.      If a Producing Party inadvertently discloses to a Receiving Party any information that is privileged or otherwise immune from discovery, said Producing Party shall promptly upon discovery of such disclosure advise the Receiving Party in writing and request that the item or

items of information be returned.  In that event, the disclosure shall not serve as a waiver of any privilege or immunity.

(a)  Upon receiving notification of inadvertent production, the Receiving Party shall within five (5) calendar days destroy or return to the Producing Party the inadvertently produced privileged material and all copies thereof and shall expunge from any other document or material information solely derived from such inadvertently produced privileged material.

(b)  After return or destruction of the inadvertently produced privileged material, the Receiving Party may move the Court for an order compelling production of such material, but the Receiving Party may not assert as a ground for compelling production the fact or circumstance that the inadvertently produced privileged material has already been produced.

(c)  The parties recognize that the protection under this paragraph is stricter than that provided for under Federal Rule of Civil Procedure 26(b)(5)(B).

**Miscellaneous Provisions**

19.    Information produced by a third party in this proceeding and designated in conformity with the provisions of this Protective Order shall be subject to the provisions herein and provide the third party with all of the rights and obligations set forth herein.  In order to expedite third Party discovery, a copy of this Protective Order and a letter generally informing the third Party of its right to invoke the protections set out herein shall be served with all such discovery.

20.    If any Party (a) is subpoenaed in another action, (b) is served with a demand in another action to which it is a Party, or (c) is served with any other legal process by one not a Party to this action seeking Protected Information that was produced by someone other than that Party, the Party shall give prompt actual written notice, by hand or facsimile transmission, within ten (10) days of receipt of such subpoena, demand, or legal process, to those who produced the Protected Information, shall furnish the Producing Party with a copy of said subpoena or other process or order, shall object to its production by setting forth the existence of this Protective

Order, and shall reasonably cooperate with respect to any procedure sought to be pursued by the party whose interest may be affected.  The Producing Party asserting the confidential treatment shall have the burden of defending against such subpoena, process, or order.  Nothing herein shall be construed as requiring the Party or anyone else covered by this Protective Order to challenge or appeal any order requiring production of information or material covered by this Protective Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court.

21.    Within sixty (60) days after receiving notice of the entry of an order, judgment, or decree finally disposing of this action as to all parties or as to any individual party, including any appeals therefrom, all persons having received Protected Information hereunder, except the Court and those employed by the Court, shall return such material and all copies thereof (including summaries and excerpts) to counsel for any Producing Party for whom the action has been disposed or, alternatively, shall destroy such material and provide written certification of such destruction to counsel for such Producing Party.  Whether the Protected Information shall be returned or destroyed shall be at the option of the Producing Party.  Notwithstanding the foregoing, Outside Counsel described in Paragraph 10(a) above shall be entitled to retain court papers, deposition transcripts, and attorney work product (including court papers, transcripts, and attorney work product that contain information or material designated as "Confidential," "Highly Confidential – Outside Counsel Only," "Highly Confidential – Prosecution Bar Information).  All materials returned to the parties or their counsel by the Court likewise shall be disposed of in accordance with this paragraph.

**IT IS SO ORDERED.**

DATED this ___ day of _____, 2008.          _____

                                                              Hon. Rosemary M. Collyer
                                                              United States District Judge

13

**EXHIBIT A**

**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I, the undersigned, _____ [print or type name], hereby acknowledge that I have received a copy of the Stipulated Protective Order (the "Order") entered on _____, 2008 in the matter entitled "*In Re Papst Licensing GMBH & Co. KG Litigation*" Case No. 07-493 RMC, pending in the United States District Court for the District of Columbia.  My business/residence address is: _____.

I hereby acknowledge that I have read and understand the Order, and agree to (1) be bound by all of the provisions thereof, and (2) submit to the jurisdiction of the United States District Court for the District of Columbia for purposes of enforcing the Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Agreement was executed on the _____ day of _____, 200__, at _____.


_____

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

IN RE PAPST LICENSING GMBH          )
& CO. KG LITIGATION                 ).
                                    )
                                    )
_____       )       Misc. Action No. 07-493 (RMC)
This Document Relates To:           )       MDL Docket Number 1880
                                    )
                                    )
ALL CASES                           )
_____)

[PROPOSED] PROTECTIVE ORDER

      Whereas the parties hereto are engaged in discovery which will involve the disclosure by these parties, as well as by third-parties, of confidential, trade secret, proprietary, technical, business and financial information, which information is subject to protection under the applicable state trade secret law or otherwise;

      Accordingly, it is hereby ordered as follows:

1.    As used herein:

      a.    "Document" means any written, printed, typed, graphic, electronic or otherwise recorded matter of any kind, however produced or reproduced, including but not limited to:

            i.    all originals, nonidentical copies, intermediate drafts and revisions of any written matter; and

            ii.    all deposition transcripts, exhibits, affidavits, interrogatories, answers to interrogatories or other litigation materials;

b.    "Confidential Information" means trade secret or other sensitive or proprietary non-public information, regardless of whether in a Document, electronically stored or orally communicated, and includes all information extracted from Documents containing such trade secret or other sensitive or proprietary non-public information and includes information or documents that contain or refer to trade secrets or other confidential information and that, if disclosed to a business competitor or other party, would tend to damage the disclosing party's competitive position or violate a non-disclosure agreement.

c.    "Camera Manufacturers" are defined as those parties in suit who have contested Papst's allegations of infringement against them and/or have contested the validity or enforceability of the patents-in-suit.  Should additional parties be added later to this action who also contest Papst's allegations of infringement against them and/or contest the validity or enforceability of the patents-in-suit, those parties shall be included as "Camera Manufacturers"for the purpose of this Protective Order.

d.    "Prosecution Bar Information" as used herein means Confidential Information that (1) contains each of the limitations of the Confidential Information described above, (2) concerns only to the technical aspects of those products of the Camera Manufacturers that have been on sale anywhere in the world for less than two years, (3) is of the type of information relevant to the scope of coverage of the patents-in-suit, (4) is a trade secret, and (5) that may be disclosed only to those persons listed in

paragraph 7 below.  "Prosecution Bar Information" shall not apply to information (i) independently developed and rightfully in the possession of a party, (ii) legally obtained from third parties; or (iii) is publicly available.

e.   "Person" means an individual, corporation, partnership, association, unincorporated organization, governmental entity, quasi-governmental entity or any other entity, including, without limitation, each party to this action, experts and consultants for any Party;

f.   "Party" or "Parties" means the parties to this Protective Order, individually and collectively, and includes their officers, employees, and attorneys and their parents and affiliates and their officers, employees, and attorneys;

g.   "Produce" means providing documents or information to a party whether pursuant to settlement discussions or in response to discovery requests;

h.   "Disclose" means to furnish, divulge, reveal, describe, summarize, paraphrase, quote, transmit or otherwise communicate documents or information received from any other party or third-party witness to any other person or party, whether voluntarily or involuntarily, whether pursuant to request, interrogatory or process, and whether pursuant to the Federal Rules of Civil Procedure or otherwise;

i.   The "Litigation" refers to the above-captioned litigation;

ji.    "Expert" refers to a person retained or specially employed by a Party to

assist in preparation for trial or to testify at trial of this Litigation.  The term also

includes all employees of such person.

k.    "Third Party" refers to any Person who Produces information as part of

this Litigation, whether pursuant to Subpoena or otherwise.

2.    Any Document that a Party or Third Party (including Michael Tasler and

Labortechnik Tasler GmbH) Produces or information that a Party or Third Party Discloses in the

course of the Litigation, whether voluntarily or in response to an order of this Court, which the

producing or disclosing counsel for a party believes in good faith contains or reflects

Confidential Information or Prosecution Bar Information may be so designated by that party and

shall be governed by the provisions of this Protective Order.  To be afforded protections pursuant

to this Protective Order, all such Confidential Information or Prosecution Bar Information shall

be designated as follows:  by stamping each page thereof which contains information the party

wishes to protect, with the words, as appropriate, "CONFIDENTIAL," "PROSECUTION BAR,"

or if in non-tangible form, by stating on the record at the deposition or at time of disclosure (or

by so designating any transcript made within 30 days of the receipt by the parties) that the

statements or testimony contains Confidential Information or Prosecution Bar Information,

pursuant to this Protective Order or, if at a hearing before the Court, by requesting the Court to

designate that portion of the transcript that contains Confidential Information or Prosecution Bar

Information as protected pursuant to this Protective Order.  Papst Licensing does not expect that

it will be designating information as Prosecution Bar Information at this time, but can apply for a

Court Order to designate information as Prosecution Bar Information if the need later arises.

3.      Confidential Information or Prosecution Bar Information, including any information contained therein or extracted therefrom, shall be treated as Confidential Information or Prosecution Bar Information and shall be used only for the purposes of the settlement, prosecution or defense of this Litigation, subject to the terms of this Protective Order.  Persons to whom any Confidential Information or Prosecution Bar Information is disclosed under the circumstances set forth above shall not disclose any such material to any other person unless permitted by this Protective Order.

4.      If a designating party inadvertently omits to designate Confidential Information or Prosecution Bar Information as Confidential, that party shall notify the other parties that such documents or information should be treated as though it were properly marked in accordance with this Protective Order, and the Parties in possession of such documents and information shall treat them or it accordingly.  Parties in possession of such documents will also make reasonable efforts to retrieve the newly designated material that had been sent to persons who do not have access to the material under the newly requested designation.  Provided these reasonable efforts are made, no Party shall be liable for disclosure of a document or information not marked as Confidential Information or Prosecution Bar Information before receiving notice of its confidentiality.  Inadvertent disclosure or misdesignation by a producing party will not be deemed a waiver of confidentiality.

5.      All Confidential Information or Prosecution Bar Information and any transcript, chart, brief, affidavit, exhibit, or other document containing any such Confidential Information or Prosecution Bar Information which a party hereto wishes or is required to file in connection with this Litigation, but only such portion of any such filing, shall be filed with Clerk of the Court in a sealed envelope or other sealed container in accordance with Local Rule 5(j).  All such

documents shall be maintained by the Clerk separate from the public records in this action and shall not be released or made public except upon further Order of the Court.

6.       Subject to the use restrictions and notification requirements set forth herein, Confidential Information produced or disclosed by a party pursuant to this Protective Order may be disclosed only to the following Persons, and in the manner described below:

a.       Outside counsel of record representing a Party hereto in this Litigation and their attorneys and support staff, including but not limited to stenographic, paralegal and clerical employees to whom disclosure is deemed necessary by said counsel of record;

b.       Two in-house counsel, members of an in-house legal department, or members of an in-house intellectual property department designated by each Party hereto in this Litigation to whom disclosure is deemed necessary; provided however that the requirements of Paragraph 21 are complied with first,  the designated in-house counsel for Papst Licensing are Tobias Kessler and Daniel Papst;  the designated in-house counsel, in-house intellectual property department or in-house legal department members for each of the Camera Manufacturers are_____,

c.       Any non-party expert who is consulted or retained by a Party or its counsel in order to assist in the conduct of this Litigation including without limitation accountants and economists, but only to the extent that, and for the time during which, such disclosure is necessary for the

performance of such assistance; provided however that the requirements of Paragraph 21 are first complied with;

d.     This Court (using the procedures specified herein);

e.     Outside contractors and their employees performing one or more litigation support aspects of organizing, filing, coding, converting, storing, copying or retrieving data or otherwise providing computerized litigation support to any Party;

f.     Court reporters transcribing, and videographers recording, a deposition or hearing at which the document or information is disclosed; and

g.     Any deponent in this action (who is not otherwise within one of the above categories) and to whom it is necessary to disclose Confidential Information for the purpose of his or her deposition, provided however *before* such disclosure is made, each of the following conditions must be met:  (1) any such person to whom disclosure is to be made has been given a copy of this Protective Order and has signed a copy of the Confidentiality Agreement attached hereto as Exhibit A; (2) notice (either oral or written) has been provided to the other Party(ies) of the specific information to be given a particular deponent; and (3) the producing party consents or such disclosure is ordered by the Court.  If notice of the disclosure is made at the deposition immediately before the proposed disclosure is to be made, in addition to the other requirements, all Parties must consent to the disclosure (to prevent surprise).

7.     Confidential Information designated as "Prosecution Bar Information" shall be disclosed only to the following persons, and in the manner described below:

a.     Outside counsel of record representing a Party hereto in this Litigation and their attorneys and support staff, including but not limited to stenographic, paralegal and clerical employees to whom disclosure is deemed necessary by said counsel of record, subject to the exceptions of paragraph 7.b. and 7.c. below.

b.     No attorney, paralegal, patent agent or person involved in any manner with the drafting or prosecution of any new or pending patent application relating to the subject matter of the patent in suit shall have access to any Prosecution Bar Information.

c.     No attorney, paralegal, patent agent or person who has been given access to any such Prosecution Bar Information may be involved in any manner with the drafting or prosecution of any new or pending patent application relating to the subject mater such information during the pendency of this litigation and for a period of one year following the termination (including any appeals) of all suits that are part of this MDL. Notwithstanding the foregoing, those attorneys who are provided access to Prosecution Bar Information constituting material prior art that would possibly be required to be disclosed to a Patent Offices in connection with a party's patent applications shall be allowed to disclose that material prior art to those attorneys prosecuting that party's patent applications.

c.      Any non-party expert who is consulted or retained by a Party or its counsel in order to assist in the conduct of this Litigation including without limitation accountants and economists, but only to the extent that, and for the time during which, such disclosure is necessary for the performance of such assistance; provided however that the requirements of Paragraph 21 are complied with first;

d.      This Court (using the procedures specified herein);

e.      Outside contractors and their employees performing one or more litigation support aspects of organizing, filing, coding, converting, storing, copying or retrieving data or otherwise providing computerized litigation support to any Party;

f.      Court reporters transcribing, and videographers recording, a deposition or hearing at which the document or information is disclosed; and

g.      Any deponent in this action (who is not otherwise within one of the above categories) and to whom it is necessary to disclose Prosecution Bar Information for the purpose of his or her deposition, provided however *before* such disclosure is made, each of the following conditions must be met: (1) any such person to whom disclosure is to be made has been given a copy of this Agreed Protective Order and has signed a copy of the Confidentiality Agreement attached hereto as Exhibit A; (2) notice (either oral or written) has been provided to the other Party(ies) of the specific information to be given a particular deponent; and (3) the producing party consents or such disclosure is ordered by the Court. If notice of the

disclosure is made at the deposition immediately before the proposed

disclosure is to be made, in addition to the other requirements, all Parties

must consent to the disclosure (to prevent surprise).

8.      In the case of disclosures to specific persons other than those covered by

paragraphs 6 and 7 above, the disclosure of Confidential Information or Prosecution Bar

Information may be made only upon seven business days advance notice in writing to the party

which designated the material pursuant to this Protective Order, so as to provide the designating

party with an opportunity to object to the proposed disclosure.  The notice of intent to disclose

shall contain the name, title, and business address of the person to whom the information is

proposed to be disclosed, a description of the documents and/or information to be disclosed, and

the reason for the disclosure.  Documents and information shall be disclosed to such person(s)

only if the designating party consents in writing to the proposed disclosure.  If an objection to

disclosure is received or the designating party does not consent to disclosure, the party seeking

the disclosure may then apply to the Court for an order permitting disclosure.  Nothing in this

paragraph shall prevent the party objecting to the disclosure from filing a motion opposing the

disclosure or shall prevent the parties from agreeing that the matter may be brought before a

court in any other manner.  Regardless of which party is the moving party, the party requesting

permission for disclosure will bear the burden for disclosure.  If the parties are unable to resolve

the matter informally, the intended disclosure shall not be made until the matter is resolved by a

court.

9.      Nothing in this Protective Order will be construed as preventing a party from

opposing a designation of materials made pursuant to this Order.  Acceptance by a party of any

information, document, or thing designated as Confidential Information or Prosecution Bar
Information will not constitute a concession that the information, document or thing is
confidential or otherwise appropriately designated.  Similarly, failure to object to a designation
will not constitute an admission that the material was properly designated.

10.    A party wishing to object to a designation made pursuant to this Protective Order
will serve a written objection, including a statement of the grounds for the objection, on the
Parties, and to the extent the designating party was a Third Party, on such party.  Following
service of the written objection, the designating party has fourteen  days from the receipt of the
objection to modify or withdraw the designation(s) at issue.  If the designation is not modified or
withdrawn within that fourteen day period with respect to designated documents, any party may
move the Court for an order confirming or disputing the designation of documents at any time
after receipt of service of the objection.  If the designation is not modified or withdrawn within
that fourteen day period with respect to designated deposition testimony, the designating party
shall be required to file a Motion for Protective Order within the next 14 days thereafter to justify
its designated deposition testimony.  Regardless of which party is the moving party, the
designating party will bear the burden of proof to justify the disputed designation.  If the parties
are unable to resolve the matter informally, the intended disclosure shall not be made until the
matter is resolved by a court.

11.    Upon a motion of a party to this Protective Order, a court of competent
jurisdiction may at any time examine and review in camera any document governed by the terms
of this Protective Order.

12.    In the event that a Person subject to this Protective Order receives any subpoena
or other legal process relating to Confidential Information or Prosecution Bar Information

received pursuant to this Protective Order, such Person shall be obligated to provide timely notice to the party who produced such documents or information and shall object to the production of such records or information unless directed otherwise by the producing party. Thereafter, the party receiving the subpoena may only produce any Confidential Information or Prosecution Bar Information requested by subpoena only if specifically so ordered by the court from which the subpoena was issued, after notice has been provided to all counsel of record. At all times, the party receiving the subpoena shall take reasonable precautions to maintain the confidentiality of the Confidential Information or Prosecution Bar Information.

13.    The final determination or settlement of the Litigation shall not relieve any person who has received Confidential Information or Prosecution Bar Information from the obligations imposed by this Protective Order. Within fourteen days following the final determination or settlement, all such Confidential Information or Prosecution Bar Information in the possession of a Party shall be returned to the producing party or, to the extent it contains attorney work product, such information shall be destroyed and counsel shall certify to its destruction, unless a Party is otherwise under a legal obligation to retain such Confidential Information or Prosecution Bar Information. Each Party and its outside counsel will be responsible for retrieving and destroying all designated materials provided to consultants, experts, and other outside assistants. By agreement among the Parties, outside counsel for a Party may retain documents or information designated Confidential Information or Prosecution Bar Information to the extent that the designated document or information comprises or is included in: pleadings; court filings; correspondence; demonstratives and exhibits used in court; court transcripts; written discovery responses; expert reports; and attorney notes or drafts.

14.     This Protective Order shall in no way affect or impair the right of any party or person to raise or assert any defense or objection, including, but not limited to, defenses or objections to the discovery or production of documents or information and to the use, relevance or admissibility at trial of any evidence, whether or not comprised of documents or information governed by this Protective Order.

15.     Nothing in this Protective Order shall limit the right of a Party to use any document or information derived therefrom at a hearing or trial of the merits of the Litigation, nor does this Order limit the right of any party or person to seek from a court Confidential treatment or other limited disclosure of any document or information derived therefrom.

16.     If any designated material is inadvertently disclosed to any person other than as authorized by this Protective Order, the Party learning of the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the designating party.  The Party learning of the disclosure will make every reasonable effort to retrieve the improperly disclosed material and to prevent further unauthorized disclosure on its own part, and will also make every reasonable effort to prevent further use and disclosure on the part of the unauthorized recipient of such information or material.

17.     If information, including without limitation any computerized media, subject to a claim of attorney-client privilege, work product or any other privilege or immunity is nevertheless inadvertently produced to a party or parties, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of the privilege or immunity.  If a claim of inadvertent production is made with respect to information then in the custody of another party, such other party shall promptly return the original and all copies of the information to the producing party.  The recipient of such inadvertent production shall not use

such information for any purpose other than in connection with a motion to compel, which shall be filed under seal, provided that the fact of inadvertent production may not be argued in support of such a motion. The party claiming the privilege or immunity will bear the burden of establishing the applicability of that privilege or immunity.

18.    In the event that a party produces computerized media, including without limitation hard drives, diskettes, CD-ROMs, DVDs, and other media, that contains information subject to a claim of attorney-client privilege, work product or any other ground on which production of such information should not be made, the producing party may produce a copy of such computerized media without the protected information, provided, however, that counsel for the producing party maintains an unaltered electronic copy of such information that will be available for review by an appropriate third-party expert if needed, and provide a written log to the non-producing party containing a list of all such redactions.

19.    This Protective Order will not prejudice the rights of any Party to oppose production of any information on grounds other than confidentiality.

20.    This Court shall retain jurisdiction after final determination or settlement of this action to enforce or modify the provisions of this Protective Order unless jurisdiction over this Litigation is transferred by order or agreement to another court, in which case this Court shall retain jurisdiction until such other court has assumed jurisdiction over this matter and entered an order identical to this Order or in a form agreeable to all parties. All disputes concerning the designation of documents or other information as protected pursuant to this Order may be brought before this Court or such other court to the extent jurisdiction over this Litigation has been transferred (a) upon proper notice and (b) after a good faith effort to resolve such disputes has been made. Any party may, on notice, move this Court or such other

court to the extent jurisdiction over this Litigation has been transferred for relief from, or modification of, any of the provisions of this Protective Order.

21.    Any Party proposing to disclose Confidential Information or Prosecution Bar Information to a non-party expert or consultant retained by a Party or its counsel to assist in the conduct of this Litigation shall, before disclosing the Confidential Information or Prosecution Bar Information, provide such person with a copy of this Protective Order and require him or her to sign a copy of the Confidentiality Agreement attached hereto as Exhibit A, thereby agreeing to be bound by the terms of this Order, and shall submit a statement to counsel for the opposing Parties identifying the expert or consultant, providing a current curriculum vitate and describing all employment of or consulting by the expert or consultant in the last five (5) years.  Any Party proposing to disclose Confidential Information or Prosecution Bar Information to an in-house counsel, in-house legal department member, or in-house intellectual property department member shall, before disclosing the Confidential Information or Prosecution Bar Information, provide such person with a copy of this Protective Order and require him or her to sign a copy of the Confidentiality Agreement attached hereto as Exhibit A  Unless an objection is made by the opposing counsel in writing to any person proposed under this paragraph, including the grounds of the objection, within fourteen (14) days after submission of this statement, counsel may disclose Confidential Information or Prosecution Bar Information to that person.  If an objection is asserted, disclosure of the Confidential Information or Prosecution Bar Information to the proposed person shall not be made without leave of Court.  The party seeking to prevent disclosure shall have the burden of establishing good cause to support its objection and shall file the appropriate motion to prevent disclosure within two weeks of submitting an objection.

Dated:  March __, 2008




_____                                    U.S.
Dist. Court Judge Rosemary M. Collyer

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING GMBH | ) |
| & CO. KG LITIGATION | ). |
| | ) |
| | ) |
| _____ | )    Misc. Action No. 07-493 (RMC) |
| This Document Relates To: | )    MDL Docket Number 1880 |
| | ) |
| | ) |
| ALL CASES | ) |
| _____ | ) |

**CONFIDENTIALITY AGREEMENT**

I, _____, have read and understood the Protective Order entered in the above-captioned action and hereby agree to be bound by its terms and provisions. I hereby consent to the personal jurisdiction of the United States District Court, District of Columbia, for any proceedings involving the enforcement of the Protective Order.

_____

Dated: _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


PAPST LICENSING DIGITAL      :
CAMERA PATENT LITIGATION      :
                              :
          Plaintiffs,         :          Docket No. MC 07-493
                              :
          vs.                 :          Washington, D.C.
                              :          Thursday, January 31, 2008
CASIO INC., ET AL             :              2:10 p.m.
                              :
          Defendants.         :
--------------------------x



TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiffs:          ROBERT F. MUSE, Esquire
                             KERRIE DENT, Esquire
                             Stein, Mitchell & Mezines
                             1100 Connecticut Avenue, NW
                             Washington, DC  20036

                             JAMES P. WHITE, Esquire
                             JEROLD B. SCHNAYER, Esquire
                             Welsh & Katz, LTD.
                             120 South Riverside Plaza 22nd Floor
                             Chicago, IL 60606-3912

For the Defendants:          SCOTT D. STIMPSON, Esquire
                             The Law Office of Scott Stimpson
                             445 Hamilton Ave.
                             White Plains, NY  10601

                             J. KEVIN FEE, Esquire
                             Morgan Lewis & Bockius LLP
                             1111 Pennsylvania Avenue, NW
                             Washington, DC  20004



```
 1  Appearances continued:

 2  For the Defendants:         PATRICK J. KELLEHER, Esquire
                                Drinker Biddle Gardner Carton
 3                              191 North Wacker Drive
                                Suite 3700
 4                              Chicago, IL  60606-1698

 5                              ROBERT B. WOLINSKY, Esquire
                                Hogan & Hartson
 6                              555 Thirteenth Street, NW
                                Washington, DC  20004
 7
                                RACHEL M. CAPOCCIA, Esquire
 8                              Hogan & Hartson
                                1999 Avenue of the Stars
 9                              Suite 1400
                                Los Angeles, CA  90067
10

11  Court Reporter:            CRYSTAL M. PILGRIM, RPR
                               United States District Court
12                             District of Columbia
                               333 Constitution Avenue, NW
13                             Room 4704
                               Washington, DC  20001
14

15  Proceedings recorded by machine shorthand, transcript produced
    by computer-aided transcription.
16

17

18

19

20

21

22

23

24

25
```

1          THE DEPUTY CLERK:  Miscellaneous action 07-493 Papst

2   Licensing Digital Camera Patent Litigation versus Olympus Corp.

3   et al.  Counsel please come forward and identify yourselves for

4   the record.

5          MR. STIMPSON: Thank you, Your Honor, good afternoon.

6   I'm Scott Stimpson.  I'm with the law office of Scott Stimpson.

7   I represent Casio.  And with me today so they don't have to

8   make the trip as well is Kevin Fee from Morgan Lewis & Bockius,

9   as well as my associate Laura Crasik from Morgan Lewis &

10  Bockius.

11         THE COURT:  Thank you.

12         MR. MUSE:  Good afternoon, Your Honor.  My name is

13  Bob Muse, M-U-S-E.  I'm with the law office of Stein Mitchell

14  and Mezines here in Washington.  With me from the same firm is

15  Kerrie Dent who's at counsel table.  Also appearing on behalf

16  of Pabst are two lawyers from Chicago, James P. White.

17         MR. WHITE:  Good afternoon, Your Honor.

18         MR. MUSE:  Mr. White is a former Assistant U.S.

19  Attorney in Chicago and has been with Welsh & Katz for many

20  years.  He will be primarily speaking today.  Also is Jerold

21  Schnayer also from Welsh & Katz who will be here at counsel

22  table as well, thank you.

23         THE COURT:  Who else is in the courtroom, are these

24  just other associates or are any of the additional parties

25  represented?

4

1          MR. WOLINSKY: Good afternoon, Your Honor.  My name is

2 Robert Wolinsky from Hogan & Hartson.  I'm here representing

3 Fuji film today.

4          THE COURT:  Okay, thank you.

5          MR. KELLEHER:  Good afternoon, Your Honor.  I'm

6 Patrick Kelleher of Drinker Biddle on behalf of the Samsung

7 parties.

8          THE COURT:  Thank you.

9          MS. CAPOCCIA:  Good afternoon, Your Honor.  I'm

10 Rachel Capoccia.  I'm here representing Matsushita and JVC from

11 Hogan & Hartson.

12          THE COURT:  Thank you.  The reason that we're holding

13 this conference or hearing today before we've done the actual

14 initial scheduling conference or even asked everybody to set up

15 a way that you think this case should, these cases should

16 proceed, is because there seems to be a dispute over the scope

17 of a protective order and then potentially a dispute over

18 whether Welsh & Katz can really stay in the case.

19     Although, as I understand the most recent filing from all

20 of the, what we called before non-Papst parties.  We have to

21 come up with a different way to say that.  We can't do that for

22 the next 12 months ladies and gentlemen.  Come up with

23 something else.

24          But anyway, all those parties have joined together in a

25 single response and they're no longer pushing to have Welsh &

1  Katz disqualified at this point as much as they want to have a

2  really strict protective order, do I understand that right?

3          MR. STIMPSON:  That's correct, Your Honor.

4          THE COURT:  My inclination is to in fact impose a

5  really strict protective order.  It seems to me that the

6  chances for inadvertent disclosure of trade secrets here or

7  other kinds of confidential information could be quite

8  injurious to all parties, but most particularly those parties

9  who have actual products at issue.  And this is not said with

10  any disregard to the Papst parties, but Papst doesn't have any

11  products, as I understand it.

12     So if Papst loses something from one of its patents, it's

13  not going to actually lose anything that affects its

14  marketplace except insofar as it's in the market for other

15  patents.  The other parties have products that could be really

16  effected by the loss of otherwise confidential information in

17  an inadvertent way.

18     I'm not suggesting that anything would be advertent.  I'm

19  just saying that the potential loss on the non-Papst side of

20  the fence here is potentially of greater moment.

21          I say that only insofar as I have read what you have

22  submitted to date.  Because I surely don't understand what

23  these patents are about yet.  All I know is that they really

24  don't have much to do with cameras, they just happen to be

25  inside cameras, do I have that right?

```
 1              MR. STIMPSON:  In a nutshell.

 2              THE COURT:  In a nutshell.  They're in the cameras,

 3   but they don't really have a whole lot to do with the cameras

 4   but they're very critical to the operation of the cameras.

 5              MR. STIMPSON:  Those are the allegations.

 6              THE COURT:  Now if Papst wants to stand up and argue

 7   about this, I don't want to rule on this point without giving

 8   Papst an opportunity whichever of you gentlemen wishes to

 9   address it if you wish to any further.

10        But I do have proposed from the non-Papst parties at

11   page eight of their brief two paragraphs which are fairly

12   strict kinds of protective language, wouldn't make an entire

13   protective order, but would be the guts of it and so it's that

14   I'm thinking of adopting.

15              MR. MUSE:  Give us just one second, Your Honor.

16              THE COURT:  Yes sir.

17              (Pause).

18              MR. WHITE:  Your Honor, James White on behalf of

19   Papst.

20              THE COURT:  Yes, good afternoon.

21              MR. WHITE:  Good afternoon, Your Honor.  With respect

22   to the issues that are raised at page eight of their

23   supplemental response of the MDL defendants.  How's that

24   instead of Papst parties, little better?

25              THE COURT:  Little better, we're moving in the right
```

1  direction.  Although some of them are plaintiffs.

2          MR. WHITE:  Yes, that's true, so I'll have to tweak

3  that even.

4          THE COURT:  Yes.

5          MR. WHITE:  What we are talking about here in this

6  paragraph is prosecution bar information.  And we don't really

7  have a problem in terms of prosecution bar information.  It

8  becomes a matter of tweaking the issues at how we define that.

9  And what we need to do, we believe, is we need to sit down and

10  in good faith discuss this with our opponents with respect to

11  how we come up with something that is easily discernible for

12  prosecution bar, for the definition of prosecution bar.  For

13  example, we had said trade secrets.  I think there's an issue

14  with that.  Our opponents think that trade secrets is too hard

15  to define.  We don't think it is.

16          The period of time; for example, they want a three year

17  prosecution bar.  We had suggested a year.  I know Your Honor

18  wants a strict protective order and I will, I know I speak on

19  behalf of my colleagues.  We would like a strict protective

20  order that allows us to determine what is prosecution bar and

21  what isn't very easily.  That's really what we need.  We need

22  to be able to sit there and say this document is prosecution

23  bar or is not.

24          THE COURT:  What about any document that's marked by

25  any of your opposing parties as prosecution bar or prosecution

1  bar unless you oppose and I say it's not.  But other than that,

2  they get to say because it's their information, and therefore

3  you get it.

4          MR. WHITE:  Right.

5          THE COURT:  You as Papst counsel here and others with

6  you, but no one else at Welsh & Katz, no one.

7          MR. WHITE:  Right.

8          THE COURT:  Not anybody who's a legal assistant on

9  another case or anything.

10          MR. WHITE:  I think the issue you're talking about

11  the direct and indirect issue, we agree, absolutely not.

12          THE COURT:  I mean a real honest to goodness iron

13  curtain.

14          MR. WHITE:  If I could be so bold.

15          THE COURT:  Yes.

16          MR. WHITE:  As to just throw this out for purposes of

17  argument this afternoon.

18          THE COURT:  We're only discussing it.

19          MR. WHITE:  Okay, discussion.

20      If we had the definition that Your Honor just proposed,

21  okay.  I would be concerned from my experience in these types

22  of cases that you would end up with a motion practice that

23  would be continual.  One litigation tactic would be to mark

24  things prosecution bar that aren't necessarily prosecution bar.

25  For example, the deal with patent prosecution.  What if they

1  produced to us something that is prior art, that we determined

2  is prior art.  Then I've got to come to you.

3          THE COURT:  And you've got to say to me it's prior

4  art.

5          MR. WHITE:  And argue motions back and forth.

6      I'm sorry, Your Honor.

7          THE COURT:  No, go on.  No, no, we're right in the

8  same place so keep going.

9          MR. WHITE:  We have the duty of candor of the PTO to

10  disclose that prior art.

11          THE COURT:  Right.

12          MR. WHITE:  It would be to their advantage not to

13  have us disclose it because then the patent would be invalid.

14  It's that type of thing that concerns us.  But having said

15  that, if that's what Your Honor would like, we can do that.

16          THE COURT:  Well, I am not a patent lawyer.  And you

17  guys and women are going to have to learn that and explain to

18  me parts and parcel of patent law. I have had patent cases, but

19  not as complicated as this one promises to be.

20      On the other hand, you understand where I'm coming from.

21          MR. WHITE:  I do.

22          THE COURT:  All right.  I understand the business

23  your client is in.  In the West it would have been called claim

24  jumping.  That's the business.

25          MR. WHITE:  That's a characterization that I've

1  heard.  I've heard worse.

2          THE COURT:  Well, people get rich on claim jumping.

3  You find the 4-inches in the center of the mind that isn't

4  covered by anybody's patent, land patents in that case and you

5  file a claim and there you go, make a lot of money.  I

6  understand that.

7         But as a result, in this, for this purpose.

8          MR. WHITE:  Yes.

9          THE COURT:  And for this purpose only, what I'm

10 saying is my concern is for the, your opposing parties who have

11 actual products in the market place.

12          MR. WHITE:  Yes.

13          THE COURT:  And I'm more concerned about protecting

14 their trade secrets and other intellectual property as to those

15 real products.  Now your duty of candor to the PTO, if you are

16 under an order from this Court that says you don't share this

17 information with anybody.  Then you don't share it with anybody

18 unless I tell you you can.

19        And if the PTO doesn't know and you don't get a chance to

20 go to the PTO and say, oh, that's prior art, their patent

21 should be destroyed as a result.  What I don't want to have

22 happen is for the litigation here to allow either side to use

23 information gained to their advantage in the patent office,

24 patent and trademark.

25        You cited me cases about how it's perfectly permissible to

1  file a patent on top of somebody else's patent, et cetera.  I

2  understand that, but not in litigation.  You can do that in

3  patent litigation, but not in court litigation.  I don't want

4  this case to be become something like that, do you see?

5           MR. WHITE:  I understand you perfectly, Your Honor.

6           THE COURT:  Okay, so if it gets to be too much then

7  we'll revisit the issue.

8           MR. WHITE:  Absolutely.

9           THE COURT:  Okay.  Now what I need for you all to do

10  because you've only given me this sort of semi-outline that I

11  say, well, that looks good to me, is actually do talk to each

12  other and work up a protective order.

13           MR. WHITE:  I believe we need to work up a scheduling

14  order.

15           THE COURT:  We need to work up a lot of things, but

16  let's start with the protective order.

17           MR. WHITE:  Be happy to Judge.

18           THE COURT:  Now the other issue is if there's any

19  problem with Welsh & Katz continuing as counsel to Papst.

20      I think that the arguments that you have made that this

21  is for the moment anyway, it's just MDL for discovery, I think

22  that's a very sound argument.  And I think that with this kind

23  of protective order we've addressed the problem anyway.

24      So to the extent that the non-Papst parties believe that I

25  should disqualify Welsh & Katz from participating in this

1   litigation as MDL, I'm not going to do that.  I don't think

2   it's necessary.  I don't think it's appropriate and I think

3   that we can do a work around.  So that Papst can continue to

4   have the counsel it wishes to have represent it.  If this ever

5   gets to trial and it doesn't all get shaken out and resolved

6   one way or the other before trial, then somebody can raise that

7   issue again at trial.

8           MR. WHITE:  Thank you, Your Honor.

9           THE COURT:  Okay, now let's see other things.

10  There's been some argument about bifurcating, liability and

11  damages.  I think for my purposes because I'm not sufficiently

12  familiar with the entire process that we're going to go through

13  these cases, that's premature for me.

14      I'm inclined to think that the overlap is too great, that

15  we wouldn't actually save any effort or any trees or any lawyer

16  time by that bifurcation.  But that's just sort of an

17  inclination at the moment.  I'm not going -- I'm just going to

18  deny it without prejudice.  If somebody wants to resume making

19  that argument at a later time when you have had more

20  opportunity to give me some information as to the full scope of

21  this.

22          Now the next issue is one of scheduling.  The issue

23  that's touched on by Mr. White.  And I do need you all to meet

24  and talk about that as well.  I would like to do a Markman

25  hearing as early as possible.

1        I would like to have Papst identify its claim

2   construction, claims construction so that the non-Papst parties

3   everybody knows what we're dealing with here and how it is

4   Papst thinks that its patents are being infringed by the

5   non-Papst parties, patents and products.

6        I know that we have plaintiffs and defendants on both

7   sides here.  That some of the companies are plaintiffs and

8   Papst of course is a plaintiff as well.  Papst began this, this

9   little legal dispute here by asserting that the camera

10  companies have violated its patents in one form or another,

11  something about which you're familiar and I don't know.

12       It seems to me that conceptually whether in any given case

13  Papst is a plaintiff or a defendant.  Papst is the initiator of

14  all of this and so for purposes of whose the plaintiff and

15  whose the defendant or who goes first or who bears what burden

16  or whatever, again, this is a very early on subject to

17  revisiting, but I think conceptually Papst is the one that

18  initiated this, these series of disputes.  So with that in

19  mind, you should think that through in terms of the schedule,

20  the order and things like that that you think how things should

21  proceed.

22        Do we have all of the companies represented?  I know

23  Fuji Film is here, Matsushita is here, Victor Company of Japan.

24  Ms. Capoccia are you representing them as well?

25            MS. CAPOCCIA:  Yes, it's Ms. Capoccia.

```
 1              THE COURT:  I'm sorry.

 2              MS. CAPOCCIA:  Ms. Capoccia.

 3              THE COURT:  I'm sorry.  It's Ms. Capoccia.  You see I

 4  looked down too late and it was already partway in my mouth.

 5  Okay, what about Olympus?

 6              MR. STIMPSON:  I don't believe Olympus is represented

 7  today.

 8              THE COURT:  Okay.  Does anybody know where the Potter

 9  Anderson firm is, what city they're in?

10              MR. WHITE:  I think Delaware, Your Honor.

11              THE COURT:  Okay, that's not too far.

12              MS. CAPOCCIA:  Your Honor.

13              THE COURT:  Yes, ma'am.

14              MS. CAPOCCIA:  Olympus is also represented by other

15  attorneys at Hogan & Hartson.  And those attorneys are actually

16  out of the country at the moment, so were not able to attend.

17              THE COURT:  Okay, well I don't feel insulted if

18  that's what you're worried about.  It's okay.  We're just going

19  to issue an order as a result of this hearing and I wanted to

20  know who was actually present and who we were going to be

21  catching unawares.  But since somebody from Hogan & Hartson is

22  here, we'll pretend we're not catching unawares at all.

23          Let me tell you a couple of things about how I try to

24  manage cases.  I don't know if it will work in the context of

25  this many lawyers and this many clients, but I'm hopeful that
```

1  once we have lead counsel and everything identified that we can

2  continue with my sort of normal practice.

3      I came from practice and so I am somewhat sensitive to

4  clients' bills, having had to send them out and collect them.

5  And I love the clients who paid well and the ones that didn't

6  and you had to urge them and stuff that's somewhat difficult.

7      But my approach is to try to save your clients money at

8  least around the edges.  So for one thing, I don't like motions

9  to compel and things like that.  It seems to me that that takes

10  a lot of lawyer time, it costs very much, it takes time for me

11  to figure out that the motion is finally ripe.  I can now rule

12  on it.  In the meantime we've held you up because everybody is

13  waiting for a ruling for the motion to compel.

14      We're undoubtedly going to have problems going through

15  this in discovery.  To the extent possible, I would like to

16  follow my customary practice which is to have people call me on

17  the telephone.  And we try to resolve in a telephone conference

18  call whatever the discovery issue is.  I want to say that to

19  you so that when you're thinking in terms of what needs to be

20  done and whose going to do what and all of that, you've got

21  some of this in mind.

22      I like to respect the lawyers in the cases in front of

23  me and let them try their own cases, but I do have a very

24  strict order that you are all to behave yourselves as civilized

25  and professional people.  I hate lawyers who are bullies or who

1  miscite things or who overlook controlling legal theory because

2  it doesn't help them.  So I'm telling you all at the beginning,

3  let's not do that this time, okay.  Let's not play games with

4  discovery.

5      Let's understand that your clients have a dispute not the

6  lawyers, no matter how close you are to your clients.  And that

7  we're going to let the clients have all the heat in this

8  dispute and the lawyers are going to conduct themselves in a

9  very professional fashion.  And we're not going to play

10 discovery games.  I'm not suggesting anybody has played

11 discovery games in this dispute at all.  I have no idea of

12 knowing.

13     And I think you've had a very serious issue between you,

14 among you as to the scope of the protective order which has

15 somewhat slowed things down for almost a year.  So I'd like to

16 get this up and moving again, okay.  I'd like to get this to

17 the stage where you either know what the issues are.  You can

18 resolve it among yourselves or we can send it back to trial

19 with the best possible speed given the issues that have to be

20 resolved and the number of lawyers and clients involved.  Does

21 that make sense to everybody?

22         MR. STIMPSON:  Yes, Your Honor.

23         THE COURT:  I'm generally not a terrible formal

24 Judge, I know how to be.  It's more fun when I don't have to

25 be.  When the lawyers are acting like lawyers and I can just be

1  the Judge and I make rulings and you like them and you don't

2  like them and you know you save your fire for the next appeal

3  when you're going to get me jammed against the wall by the

4  Court of Appeals.  I don't mind that, you know.  Sometimes I'm

5  right, sometimes I'm wrong.  That's what their job is for.  But

6  our job is to try cases or resolve them short of trial.  That's

7  what we do here.  We try cases and we don't play games, okay.

8      All right, how long do you think it will take you now

9  that we've got sort of the basic underpinnings of a protective

10 order in mind.  How long will it take you to draft a protective

11 order which you might all agree or not, that's fine.  Do the

12 best you can and then send me what you've got.  And we need a

13 schedule.  We need a discovery schedule.  We need lead and

14 liaison counsel, and then we need eventually to know how soon

15 we can have a Markman hearing on claims construction.  That's

16 kind of what we need to do.

17      MR. WHITE:  Your Honor, since we started the dispute,

18 I guess we can be called plaintiff at this point.

19      THE COURT:  Well, I don't know that I can formally

20 call you plaintiff.  But I can in terms of whose doing what and

21 where and how I'm saying Papst started it, so conceptually

22 you're the plaintiff at least.

23      MR. WHITE:  Right, what I would say in all honesty is

24 we have sent out a proposed scheduling order that was attached

25 as an exhibit to the joint status report we filed with the

1    Court.  That's a starting point and it's been distributed to

2    all of the parties.  I say that because I think to answer your

3    question we could come back to the court subject to what the

4    non-Papst parties say or opposing counsel say within 30 days

5    with both the scheduling order and the protective order.

6           THE COURT:  All right, if we use the Papst scheduling

7    proposal as a basis that may be true.  Is there strong and

8    ardent opposition to using the Papst scheduling order as the

9    basis to begin the discussion?

10          MR. STIMPSON:  Scott Stimpson, Your Honor.  We do

11   have certainly have issues with the Papst scheduling order, but

12   using it as a starting point there's nothing wrong with that.

13   I think the 30 day suggestion is just fine.  We can briefly

14   confirm with the other.

15          THE COURT:  Everybody looked around at everybody else

16   and they all nodded.

17          MR. STIMPSON:  Correct, so 30 days should be fine.

18          THE COURT:  All right, let's set another status

19   conference for 30 days Ms. White.

20          THE DEPUTY CLERK:  Yes, Your Honor.

21          THE COURT:  Well, let's set it for more like 32 days,

22   so you have 30 days to actually submit something whatever

23   you're going to submit.  And I need you to submit that which,

24   that as to which you agree and any points of disagreement so

25   that we can resolve those as quickly as possible.  So if you

1  submit that within 30 days, maybe 35 so I have time to look at

2  it and come to rest.

3         THE DEPUTY CLERK:  February the 7th at 10:30.

4         THE COURT:  That's not 30 days.

5         THE DEPUTY CLERK:  I'm sorry, I was looking at

6  March 7th actually, that's not going to work.

7         THE COURT:  It's going to have to be the 21st of

8  March.

9         THE DEPUTY CLERK:  That's Good Friday.

10         THE COURT:  What about Thursday, what is the date?

11         THE DEPUTY CLERK:  The 20th.

12         THE COURT:  The 20th of March at 3 o'clock.  So what

13  is, if rather than 30 days there's no need to push you to 30

14  days if we're not going to be able to reconvene until the 20th

15  of March, can everybody do that?  So why don't we say that your

16  protective order and discovery schedule identifying lead and

17  liaison counsel, Markman hearing and briefing and stuff would

18  be due on the 12th of March.  That gives me time to take a look

19  at it and be ready for a hearing on the 20th, okay. Is that

20  acceptable to everybody?

21      I'd like you to try to be as reasonable as you can be in

22  your plans so that you give yourself enough time, but not too

23  much time.  I know lawyers always want extensions.  I'd really

24  like to try to do this, now that we're finally getting it

25  going, I'd really like to try to do this in the time of a

1   decent initial schedule.  It gives you a little more pressure

2   then you're comfortable with.  But after all, you all know how

3   to work so hard it'll be all right, okay, got it?

4           MR. STIMPSON:  Yes, Your Honor.

5           THE COURT:  Yes sir.

6           MR. WHITE:  The filing with Your Honor on the 12th of

7   March.

8           THE COURT:  Yes sir.

9           MR. WHITE:  Separate filings if we do not have a

10  stipulated document that we can present to Your Honor for

11  entry?

12          THE COURT:  Well, I'd like you to try to reach as

13  much agreement as possible, but if you have, if you haven't

14  reached full agreement then yes, separate filings.  The

15  protective order should definitely be a separate filing because

16  if you've reached full agreement on that then I can just sign

17  that and it'll be immediately in effect and we'll be done with

18  that issue.  So then the rest of it, the discovery schedule and

19  everything you may well have some points on which you've

20  reached agreement and some on which you have not.

21          MR. WHITE:  Understood.

22          THE COURT:  Okay.

23          MR. WHITE:  Understood.

24          THE COURT:  Are there more things we can do today to

25  get this organized and moving?

1          MR. KELLEHER:  Hello again, Your Honor.  I'm Patrick

2     Kelleher on behalf of the Samsung parties.

3          THE COURT:  Yes, sir.

4          MR. KELLEHER:  There's one thing that I think would be

5     a good idea to talk about because I'm afraid it might be a

6     source of dispute when we sit down to talk about the protective

7     order.

8          THE COURT:  Very smart for you to raise it here.

9          MR. KELLEHER:  I think it is the category or type of

10    information that could be properly marked as prosecution bar.

11         THE COURT:  Yes.

12         MR. KELLEHER:  The real, the paradigm of the danger

13    here is that someone prosecuting patents is going to sit down

14    and write claims to cover products that the other side is

15    selling or is going to introduce in the near future.  That's

16    sort of the paradigm of the danger which is why we have a

17    prosecution bar.

18         THE COURT:  Right.

19         MR. KELLEHER:  The parties over here definitely have

20    that danger.  We have products out there they're going to get

21    confidential information about.  We have forthcoming products

22    they might get information about. They really don't have that

23    problem.  They don't sell products that we might go and write

24    claims to cover so we can sue them for infringement.

25         THE COURT:  Right.

1          MR. KELLEHER:  So I find it difficult to think that

2    they in fact might have any information that could properly be

3    marked as prosecution bar.  That's exactly what happened, Your

4    Honor, in the case that's cited on page four of the joint brief

5    we put in which was In Re: Papst.  It was the MDL down in

6    Louisiana.  The judge said the defendants, for lack of a better

7    word, were able to mark things prosecution bar, but Pabst was

8    not.  And I think that's probably the way this is going to come

9    out here.  But I thought we should probably talk about this so

10   that we don't fight about it when we meet and talk.

11          THE COURT:  That's a very good point.  Did you want

12   to address that at all Mr. White?  It does sound sensible to me

13   that what Papst owns is intellectual property represented by

14   its patent not products.

15          MR. WHITE:  It's hard to think about this Judge in a

16   vacuum in this particular case.  I recognize opposing counsel's

17   discussion and respect that with respect to the Louisiana case.

18   And I want to say this, as I stand here today right now after

19   consulting for less then 15 seconds with Mr. Schnayer, he

20   doesn't believe at this particular point in time that there

21   would be prosecution bar material for Papst.  But in this

22   particular case there is another individual, Mr. Tasler, whose

23   the inventor of this patent who has an interest in this case,

24   who we will get documents from in the sense that he has that

25   interest.  We're going to end up with documents from him, I

```
 1  assume.  He may want to do something prosecution bar.  I don't

 2  know at this particular time.

 3          THE COURT:  Does he work for Papst?

 4          MR. WHITE:  No.

 5          THE COURT:  He's an independent third party?

 6          MR. WHITE:  That's correct.

 7          THE COURT:  So he would be able, should he wish, to

 8  assert any such right.  He would be able to assert it on his

 9  own.  He would not be represented, I assume, by you or by Welsh

10  & Katz.

11          MR. WHITE:  No, but if -- I'm thinking out-loud.  If

12  a document request steered us in that direction and said we

13  have to produce that information, we would produce it from him

14  and he may very well say that's prosecution bar.  He's in

15  Germany.  And we would mark it as such.

16          THE COURT:  Well, why don't you think about it. Now

17  that the issue has been highlighted, we'll operate on the

18  assumption that Papst qua Papst will almost certainly not have

19  anything that would be prosecution bar.

20          MR. WHITE:  We'll bring it to your attention if we

21  do.

22          THE COURT:  And if there's something else then you

23  need to identify it that way.

24          MR. WHITE:  That's fine.

25          THE COURT:  You understand, okay.
```

1          Thank you, everybody.

2          MR. STIMPSON:  Thank you, Your Honor.

3          THE COURT:  Nice to meet you all.  I look forward to

4    this, I think.  Anyway, thanks a lot, stay warm.

5                          -oOo-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                         CERTIFICATE

 2         I certify that the foregoing is a true and correct

 3  transcript, to the best of my ability, of the above pages, of

 4  the stenographic notes provided to me by the United States

 5  District Court, of the proceedings taken on the date and time

 6  previously stated in the above matter.

 7         I further certify that I am neither counsel for,

 8  related to, nor employed by any of the parties to the action in

 9  which this hearing was taken, and further that I am not

10  financially nor otherwise interested in the outcome of the

11  action.

12

13     _____          _____

14     Crystal M. Pilgrim, RPR                 Date

15

16

17

18

19

20

21

22

23

24

25
```