# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **CASIO INC.,** | **Case No. 1:06-CV-01751** |
| **Plaintiff** | |
| v. | |
| **PAPST LICENSING GMBH & CO. KG** | **Judge: Gladys Kessler** |
| **Defendant.** | **Magistrate Judge: Deborah Robinson** |
| | |
| **PAPST LICENSING GMBH & CO. KG,** | **Next status conference: December 4, 2007** |
| **Counter-Plaintiff** | |
| v. | |
| **CASIO INC. and CASIO COMPUTER CO., LTD.** | |
| **Counter-Defendants** | |

## CASIO'S MOTION FOR RULE 37 SANCTIONS FOR
## PAPST'S NON-COMPLIANCE WITH THIS COURT'S ORDERS

Plaintiff and Counter Defendant, Casio Inc. and Counter-Defendant Casio Computer Co., Ltd. (collectively, "Casio"), hereby move this Court for an Order sanctioning Papst for its refusal to comply with this Court's Orders by failing to provide "complete responses" to Casio's interrogatories. Casio requests that this Court provide the sanctions as set forth in the accompanying Memorandum and Proposed Order.

In accordance with Local Rule 7(m), a meet and confer took place by telephone on June 20, 2007 between counsel for Casio and counsel for Papst. Counsel for Papst had no explanation for any of its responses and insisted that they were complete and proper.

Respectfully submitted,

DATED:  June 21, 2007

/s/  Scott D. Stimpson
Scott D. Stimpson, Esq. (pro hac vice)
The Law Office of Scott D. Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, New York 10601
Tel: (203) 258-8412

Jeffrey M. Gold, Esq. (pro hac vice)
Morgan, Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

J. Kevin Fee, Esq. (D.C. Bar No. 494016)
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

Attorneys for Plaintiff and Counter-Defendant
Casio Inc. and Counter-Defendant Casio
Computer Co., Ltd.

Jeffrey M. Gold, Esq. (*pro hac vice*)
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178-0060
Tel: (212) 309-6000
Fax: (212) 309-6001

J. Kevin Fee, Esq. (D.C. Bar No. 494016)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

Scott D. Stimpson, Esq. (*pro hac vice*)
The Law Office of Scott D. Stimpson
445 Hamilton Avenue -- Suite 1102
White Plains, New York 10601
Tel: (203) 258-8412

Attorneys for Plaintiff and Counter- Defendant Casio
Inc. and Counter-Defendant Casio Computer Co., Ltd.

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **CASIO INC.,** | **Case No. 1:06-CV-01751** |
| **Plaintiff** | |
| v. | |
| **PAPST LICENSING GMBH & CO. KG** | |
| **Defendant.** | **Judge: Gladys Kessler** |
| | **Magistrate Judge: Deborah Robinson** |
| **PAPST LICENSING GMBH & CO. KG,** | **Next status conference: December 4, 2007** |
| **Counter-Plaintiff** | |
| v. | |
| **CASIO INC. and CASIO COMPUTER CO., LTD.** | |
| **Counter-Defendants** | |

## CASIO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RULE 37 SANCTIONS FOR PAPST'S NON-COMPLIANCE WITH THIS COURT'S ORDERS

Casio, Inc. and Casio Computer Co., Ltd. (collectively "Casio") hereby move for sanctions for Papst's conduct in this case, including its refusals to comply both with Judge Kessler's March 13, 2007 Order, and with that portion of Judge Robinson's Order of June 1, 2007 that directed Papst to provide "complete responses" to Casio's interrogatories.[1]

Papst has refused to comply with this Court's Orders.  In alleged satisfaction of Judge Robinson's June 1 Order, supposedly responding to Casio's interrogatory seeking an infringement analysis, Papst failed to identify the asserted patent claims, failed to identify all the accused products, failed to provide its interpretations of the patent claim elements, and failed to provide any theory on how Casio could possibly be infringing.  Papst also failed to respond to the other five interrogatories, promising to provide much of the information at some unidentified future date (not on the date ordered by the Court), refusing to provide any information surrounding the alleged invention, and refusing to give any details on virtually any of these other interrogatories.

Papst has already been sanctioned once for its discovery abuse.  *See* June 1, 2007 Order. And another motion for sanctions under Rule 26(g) will be filed very soon for Papst's discovery requests, which literally required, among other things, production of every document having any relation to Casio Digital Cameras from every Casio-related company all over the world.

Given Papst's repeated failures to abide by this Court's Orders, its inability and refusal to provide any cogent infringement theory, and its continuing abuse of the discovery and litigation processes, Casio respectfully seeks a variety of sanctions directed to the Papst misconduct as set forth in Section II, below, and in our Proposed Order.[2]

---

[1]    The portion of the June 1 Order relating to document production is not at issue in this motion.  Casio still is waiting to see if Papst will comply with that portion of the Order.

[2]    The parties had a meet and confer pursuant to Rule 7(m) on June 20.  Counsel for Papst had no reasonable explanation for any of its responses, and instead insisted that they were complete and proper.

## I.   THE COURT ORDER AND PAPST'S SUPPLEMENTAL RESPONSES

On May 31, at the conclusion of the hearing on Casio's motion to compel and for sanctions, this Court ordered that "complete responses [to Casio's interrogatories] without objections . . . be served within ten days. . . ." Exhibit A, at 27 (emphasis added).  The decision was confirmed on the next day, in the June 1 Order.  On the due date, Papst served supplemental responses to the Casio interrogatories.  Exhibit B.  These responses are grossly inadequate.

### A.   Interrogatory 1

Interrogatory 1 (Exhibit B) requested Papst to state in full and complete detail, how each accused product allegedly infringed on each asserted claim.  It also requested Papst's proposed claim interpretation.  Papst's response is lengthy only due to the length of the two claims it addresses, but it leaves Casio in the dark about the number and identities of accused products and asserted claims, it provides no claim interpretations, and it provides no theory or evidence sufficient to show how Papst is accusing Casio of infringement.

#### 1)   Accused products

Papst's supplemental response does not identify all the accused products, instead identifying six cameras, and stating in a footnote that its charges of infringement are "not limited to the above-noted Casio digital still cameras."  Thus, nearly four months after serving this interrogatory, Casio still does not know the accused products.

#### 2)   The asserted claims

These patents have numerous claims, and despite the Court Orders, Papst does not identify the claims it is asserting.  Instead, its supplemental response says that Casio infringes "at least claim 1" of each patent.  (Exhibit B, at 3, 12)  Casio therefore still does not know what patent claims are asserted against Casio.

### 3)  Claim interpretation

Claim interpretation defines what the patent claims cover, and so it is a first step to both infringement and validity analyses.  Importantly, as the name implies, claim interpretation is underline{definitional}.

For every claim element, Papst provides headings entitled "interpretation" but no actual interpretations are provided.  Instead, Papst begins every "interpretation" with "**[t]he. . . claim element reads on, for example**, [alleged structure in the Casio cameras]."  This information is no definition, and states no more than what everyone already knows:  Papst is asserting that Casio infringes.  A claim interpretation would begin, for example, "the claim element **means**. . ."

This is no trivial distinction.  By refusing to state what the claim terms mean, counsel for Papst assures that there are no definitions that can be used by Casio to show how the prior art meets those definitions and thus invalidates the patent.  For example, the Papst "interpretation" of "host device" on page 4 of Exhibit B states:  "A 'host device' reads on, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ('PC')."  Does the prior art (which obviously does not use Windows XP because it did not exist at the time) have a "host device" according to the Papst analysis?  It is impossible to tell, because Papst has refused to provide the interpretation requested by this interrogatory and ordered by the Court.[3]

### 4)  How does Casio infringe?

Every claim requires a "host device" and connection of the interface (which Papst alleges to be inside the Casio cameras) to that host.  Papst does not allege that Casio makes or sells the

---

[3]  *See, e.g., Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (in banc) ("the underline{scope} and underline{meaning} of the claims" must be determined) (emphasis added).

host. Accordingly, Casio does not directly infringe these claims under 35 U.S.C. §271(a), nor does Papst even allege direct infringement.[4]

This interrogatory asked Papst to "state in full and complete detail the bases for the charge of infringement. . . ." If Casio does not directly infringe because it does not sell the host, then how does it infringe? Does Papst assert contributory infringement or inducement of infringement under 35 U.S.C. §271(b) or (c)?[5]

The Papst supplemental response does not even mention contributory or inducement issues, or provide even the smallest shred of evidence that could support them or give any insight into Papst's infringement theory, or how it even had a Rule 11 basis for its infringement contentions in the first place. Casio is left in the dark, despite the Court Orders.

## B)   <u>Interrogatory 2</u>

Papst was ordered to provide complete responses by June 11. Information on each prior art reference was requested (through the definition of "identify" in the Interrogatories), but the Papst supplemental response only lists them and promises to provide, at some later time, information identifying where in the Papst production we can find the many prior art references. Responses under Rule 33(d) are acceptable, of course, but under this Rule Papst needs to identify where the references can be found in the production. To date, more than a week after this information was ordered to be produced, Casio has not received this information, and it cannot even be sure (without extensive effort) that all these prior art references have been produced.

---

[4]   Direct infringement requires that the accused device contain each and every limitation of the claim. *Imatec, Ltd. v. Apple Computer, Inc.*, 81 F. Supp. 2d 471, 484 (S.D.N.Y. 2000).

[5]   Contributory infringement under 35 U.S.C. §271(c) requires, among other things, proof of a direct infringement, and proof that the accused instrumentality has no substantial non-infringing use. *DSU Medical v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006). Inducement of infringement requires, among other things, proof of a direct infringement and that the party accused of infringement actually intended to cause an infringement. *Id.* at 1304-05.

**C)** **Interrogatory 3**

Secondary considerations are sometimes used to support patent validity. Interrogatory 3 requested the identification of all alleged secondary considerations, including supporting facts for each secondary consideration. Papst's supplemental response was nothing more than a list of potential secondary considerations that one might find in any patent law treatise – there is absolutely no substance. No effort was made to comply with the Court Order.

**D)** **Interrogatory 4**

This interrogatory requested information on the various companies that Papst has tried to convince to take a license, including information about the people involved, the documents and things at issue in the discussions (e.g., what products were at issue), dates of communications, and terms of licensing discussions, etc.

The Papst supplemental response does nothing but identify the companies that it has approached, and promises to provide, at some unspecified later date, a letter identifying documents that Papst believes may relate to some of the requested information. Papst has not even attempted to provide information about any of the oral discussions it has had with any of the 39 identified companies, and even if the documents did fully respond to this interrogatory (they certainly will not), Papst has made no effort to provide a complete response within the time ordered by the Court.

Papst's counsel has orally discussed financial terms with at least some of these companies, but there is nothing about those discussions provided in this response. To take the most obvious example of missing information, Papst has orally provided financial terms to Casio which we know will be nowhere reflected in the documents, but even that information is not provided in the response.

### E) **Interrogatory 5**

This interrogatory seeks Papst's information on the art area and the level of ordinary skill in the art.[6] Papst refuses to respond, stating it "plans to later amend and/or supplement its responses, if necessary. . . ." In light of this Court's Order that Papst provide a complete response to the interrogatories, this response is untenable. It is nothing less than an outright refusal to do what the Court ordered.

### F) **Interrogatory 6**

Interrogatory 6 sought a description in full and complete detail of the facts about the conception and reduction to practice of the alleged invention, for each asserted claim. Papst's response only promises to, at some later date, identify documents that relate to this issue, and further states that Papst "plans to later amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the court of this action and at trial."

This response flies in the face of this Court's Order, with Papst even flatly stating that it will investigate the issue later and give us its response when it wants to do so. No substantive response is provided at all.

## II. **THE REQUESTED SANCTIONS**

This is the second time that this Court has issued an Order that should have resulted in proper responses to these interrogatories, and the second time that Papst has refused to consider the Order seriously. This Court already sanctioned Papst for its first refusal to comply, but

---

[6]  The art area and level of ordinary skill in the art are highly relevant to numerous issues. *See, e.g., Slip Track Sys. v. Metal Lite, Inc.*, 113 Fed. Appx. 930, 937 (Fed. Cir. 2004) ("Claim construction starts with the language of the claims as understood by one of ordinary skill in the art."); *Neupak, Inc. v. Ideal Mfg. & Sales Corp.*, 41 Fed. Appx. 435, 440 (Fed. Cir. 2002) ("[O]bviousness is determined from the perspective of a hypothetical person of ordinary skill in the art.").

neither Judge Kessler's March 13, 2007 Order, nor Magistrate-Judge Robinson's subsequent

Order for compliance and associated sanctions, has been enough to get Papst to cooperate.

It appears as though Papst is deliberately avoiding this discovery and refusing to comply

with the Court Orders, knowing the potential consequences but resigned to simply accept them.

Casio is only one of 39 companies that Papst is pursuing on these patents. *See* Exhibit B,

response to Interrogatory 4. If Papst complies with the Court Orders and commits to claim

interpretations, infringement analyses, dates of invention, and the like, it will be stuck with these

responses for all of the other 38 companies it is pursuing. Perhaps Papst feels that the sanctions

it will face for continuing to ignore the Court Orders will be a lesser evil. Why should Papst risk

its position with all 39 of its targets, when it can refuse compliance with this Court's Orders and

thus only risk its position with one?

More serious sanctions are now warranted pursuant to Rule 37 for at least the following

reasons:

- Judge Kessler ordered discovery to proceed on March 13, 2007. It is now mid-June, and

  we are still trying to get Papst to cooperate and properly proceed with discovery.   Papst

  has unilaterally wiped three months from the relatively short fact discovery schedule the

  Court ordered.

- Casio has been substantially prejudiced, because Casio is now months into this litigation

  and still does not know how Papst is asserting infringement, what products are accused,

  and what patent claims are at issue.  Casio cannot properly defend itself against phantom

  charges that never materialize.

- Casio has also been prejudiced due to the substantial and needless expense of trying to

  obtain discovery that Papst has in its possession now and should have been willingly

provided months ago, and in objecting and responding to outrageous discovery requests (see our motion to strike, to be filed on June 22).

- It appears that Papst may be deliberately flaunting the Court Orders, so that it can preserve its positions with 38 other companies.

- Refusals to comply with the multiple Court Orders are only part of the Papst game plan. The evidence suggests that Papst may be deliberately trying to increase Casio's expenses. In this regard, the Court is respectfully referred to our motion to strike the Papst discovery requests.

- The Court has already tried lesser sanctions to get Papst to cooperate, but those other sanctions have failed to obtain Papst's cooperation. See the June 1 Order.

- Papst's refusals to abide by multiple Court Orders reflect an attack on the integrity of the Court. Absent substantial sanctions, other litigants may be encouraged to similarly ignore Court orders when it suits their purpose to do so.

By continuing to disregard the Court's discovery orders, Papst is even risking default judgment. *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 853-54 (2d Cir. 1995) (affirming default judgment: "Defendants rolled the dice on the district court's tolerance for deliberate obstruction, and they lost"); *see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures, Corp.,* 602 F.2d 1062, 1068 (2d. Cir. 1979) ("where counsel clearly should have understood his duty to the court the full range of sanctions may be marshalled.").

We request the following sanctions:

1) Papst be ordered to pay all of Casio's costs and fees associated with this motion;

2) Papst be precluded from accusing any Casio products of infringement other than the six listed in its supplemental response to interrogatory 1;

3) Papst be precluded from asserting any claims other than the two identified in its supplemental response to interrogatory 1;

4) Papst be ordered (again) to provide proper infringement analyses for the six products and two asserted claims;

5) Papst be precluded from advancing any claim interpretations or arguments different than those provided in its supplemental responses in Exhibit B;

6) Papst be precluded from asserting any secondary considerations for its failure to provide a response to interrogatory 3;

7) Papst be precluded from pursuing any information related to licensing from Casio, as a result of Papst's refusal to respond to interrogatory 4;

8) Papst be precluded from introducing any evidence or contesting Casio's position on the art area and level of ordinary skill in the art, as a result of its refusal to respond to interrogatory 5;

9) Papst be required (again) to provide a complete response to interrogatory 6, but be precluded from asserting an invention date of these patents any earlier than the March 4, 1997 priority date for both patents; and

10) An express warning to Papst that future misconduct or discovery violations will result in judgment against it.

III.    **CONCLUSION**

For all the foregoing reasons, we respectfully request that the Court enter our Proposed

Order.

Respectfully submitted,

DATED:  June 21, 2007                  /s/  Scott D. Stimpson
                                       Scott D. Stimpson, Esq. (*pro hac vice*)
                                       The Law Office of Scott D. Stimpson
                                       Suite 1102
                                       445 Hamilton Avenue
                                       White Plains, New York 10601
                                       Tel: (203) 258-8412

                                       Jeffrey M. Gold, Esq. (*pro hac vice*)
                                       Morgan, Lewis & Bockius LLP
                                       101 Park Avenue
                                       New York, New York 10178-0060
                                       Tel: (212) 309-6000
                                       Fax: (212) 309-6001

                                       J. Kevin Fee, Esq. (D.C. Bar No. 494016)
                                       Morgan, Lewis & Bockius LLP
                                       1111 Pennsylvania Avenue, NW
                                       Washington, D.C. 20004
                                       Tel.: (202) 739-3000
                                       Fax: (202) 739-3001

                                       Attorneys for Plaintiff and Counter- Defendant Casio Inc.
                                       and Counter-Defendant Casio Computer Co., Ltd.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
--------------------------------------------------------------X
CASIO INC., 570 Mount Pleasant Avenue,        :
Dover, New Jersey  07801                      :
                                              : Civil Action No. 1:06 CV 01751
            Plaintiff,                        : Judge:  Gladys Kessler
                                              : Magistrate: Deborah A. Robinson
      v.                                      :
                                              : Next status conference: December 4, 2007
                                              :
PAPST LICENSING GMBH & CO. KG,                :
Bahnhofstrasse 33, 78112 Georgen,             :
Germany                                       :
                                              :
            Defendant.                        :
--------------------------------------------------------------X
--------------------------------------------------------------X
PAPST LICENSING GMBH & CO. KG,                :
Bahnhofstrasse 33, 78112 Georgen,             :
Germany                                       :
                                              : Civil Action No. 1:06 CV 01751
            Counter-Plaintiff,                : Judge:  Gladys Kessler
                                              : Magistrate: Deborah A. Robinson
      v.                                      :
                                              : Next status conference: December 4, 2007
                                              :
CASIO INC. and                               :
CASIO COMPUTER CO., LTD.                      :
                                              :
            Counter-Defendants                :
--------------------------------------------------------------X
```

## DECLARATION OF JEFFREY M. GOLD, ESQ.

I, Jeffrey M. Gold, hereby declare as follows:

1.      I am a partner at the law firm of Morgan, Lewis & Bockius LLP in the New York Office located at 101 Park Avenue, New York, New York 10178.

2.      I have been admitted to practice law in the State of New York since 1997.  I am further admitted to practice in the Southern and Eastern Districts of New York, the Federal Circuit Court of Appeals and before the Patent and Trademark Office.  I am also currently admitted pro hac vice before this court as part of this action.

1-NY/2193210.1

3.     Attached hereto as Exhibit A is a true and correct copy of the Transcript of Motions Hearing Before the Honorable Deborah A. Robinson United States Magistrate Judge held on May 31, 2007.

4.     Attached hereto as Exhibit B is a true and correct copy of Defendant Papst Licensing GMBH & Co. KG's First Supplemental Answers to Plaintiff Casio Inc.'s First set of Interrogatories (Nos. 1-6), served on counsel for Casio on June 11, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 21, 2007                    By:_____
                                                          Jeffrey M. Gold

2



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                                :
In the Matter of:               :
                                :
CASIO, INC.,                    :
                                :
      Plaintiff,                :
                                :
          vs.                   :    Civil Action No. 06-1751
                                :
PAPST LICENSING GMBH & CO.,     :
                                :
      Defendant.                :
                                :    Washington, D.C.
- - - - - - - - - - - - - - - x     May 31, 2007


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:          J. KEVIN FE, ESQ.
                            SCOTT D. STIMPSON, ESQ.

For the Defendant:          JEROLD B. SCHNAYER, ESQ.
                            DAMON W.D. WRIGHT, ESQ.


Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M1837V/bf

1              **P R O C E E D I N G S**

2              THE CLERK:  Civil Case Number 06-1751.  This is

3    in the matter of Casio, Inc. versus Papst Licensing GMBH &

4    Company.  I don't know what the "KG" is.  I have that on our

5    archive.  Kevin Fe and Scott D. Stimpson for the Plaintiffs;

6    Jerold B. --

7              MR. SCHNAYER:  "Schnayer."

8              THE CLERK:  -- Schnayer and Damon Wright for the

9    Defendant.  This is set for a motions hearing.

10             THE MAGISTRATE JUDGE:  Now, good afternoon to all

11   of you.  This matter was scheduled for a hearing on the

12   motion filed by Casio, to compel and for sanctions.

13             The issue presented by the motion is a relatively

14   straightforward one, and the Court indeed considered ruling

15   on the motion without scheduling a hearing.  But recognizing

16   that the status of the issue presented might have changed

17   as of the time the Court made a ruling had there been no

18   hearing, the Court thought it prudent for counsel to come in

19   and address the matter.

20             I understand, based upon your informal discussion

21   off the record my law clerk before the case was called, that

22   it may be the case that some responses to the outstanding

23   interrogatories have been served.  However, recognizing that

24   that may not fully address the pending motion, the Court

25   will hear first from Plaintiff's counsel, then from counsel

1   for the Defendant, regarding these issues.

2          Now, who will address the matter on behalf of

3   the Plaintiff?

4          MR. STIMPSON:  I will, Your Honor.  Scott

5   Stimpson.

6          THE MAGISTRATE JUDGE:  Mr. Stimpson, good

7   afternoon.

8          MR. STIMPSON:  Good afternoon, and thank you.

9   I will be brief.

10          We were served last night with responses to

11   interrogatories and document requests.  There are many

12   objections.  We still have not received a single document

13   in document production.

14          I think it would help just to have a very short

15   recitation of the chronology as things have played out here.

16          On March 2 we had what we believed to be our 26(f)

17   conference and we served our discovery requests.  We served

18   a proposed discovery plan on the other side on March 9.  It

19   was more than six weeks later before we got any comments

20   from the other side after this motion was filed.

21          On March 13, Judge Kessler issued an order that

22   discovery proceed.

23          Exhibit J to our motion is a letter we sent to

24   opposing counsel shortly before their responses were due,

25   which I think is instructive here.  We were getting wind

1   that -- it's "J," Your Honor.  We were getting wind that

2   perhaps they were not going to respond on time, and we sent

3   a letter telling them that Judge Kessler has ordered

4   discovery to proceed and we expect full and appropriate

5   responses, and if we don't get them we are going to take

6   appropriate action.

7           So counsel for Papst took the risks they were

8   taking with their eyes wide open to what might happen here.

9           It is now May 31.  We are about three months since

10  we served our discovery requests.  We are two-and-a-half

11  months after Judge Kessler ordered discovery to proceed.

12  We do not have a single document.  And the responses we

13  received last night are riddled with objections.

14          THE MAGISTRATE JUDGE:  May I ask you to state the

15  substance of some of the objections.  In other words, what

16  sort of objections were raised.

17          MR. STIMPSON:  I only received them last night,

18  so I went over them briefly today, Your Honor.

19          The objections to the document requests -- they

20  have objections on a protective order, they have objections

21  on over-breadth, they have, you know, your typical

22  objections you'd expect, privilege and work product.

23          Some of the document requests, they say they will

24  give us some documents at some unspecified date.  Some of

25  the document requests, they simply -- if I remember

1    correctly, they simply say, "No," or "We'll think about it.

2    We'll talk to you at some other time." Or, "We'll have a

3    meet and confer, and discuss it."

4        But as I say, we have yet to receive a single

5    document, and the case has been going for three months now -

6    discovery has been going for three months.

7        THE MAGISTRATE JUDGE: What is your proffer

8    regarding whether or not any agreement was reached with

9    respect to objections?

10       MR. STIMPSON: I believe no agreement was reached

11   -- absolutely none.

12       THE MAGISTRATE JUDGE: Very well, you may

13   continue.

14       MR. STIMPSON: So, Your Honor, my opponent is

15   trying to make this into a 26(f) issue. 26(f) is long since

16   done, and this is not a 26(f) issue. This is a 26(d) issue.

17   This is about a failure to respond to the Court order.

18   26(d) says that discovery can proceed regardless of whether

19   there's been a 26(f) conference if the Court orders it, and

20   unquestionably the Court ordered it.

21       So the question, I think, or the consequences of

22   what's happened here, it's very clear that the Court order

23   has been -- they have not complied with the Court order.

24   And so we request basically four remedies for that.

25       One is, since the objections are untimely, they

1  are waived.  That we get prompt discovery, including all the

2  documents that should have been produced.  We also request

3  our fees and costs under 37(a) and (b).

4          THE MAGISTRATE JUDGE:  And by "fees and costs,"

5  may I assume you mean fees and costs associated with the

6  filing of the motion?

7          MR. STIMPSON:  Correct.  Correct.  And lastly,

8  Your Honor, I think an appropriate sanction in this

9  situation would be entry of an order bifurcation.  I think,

10  for one thing, it's going to avoid another motion which may

11  be coming, and bifurcation is particularly appropriate in

12  this case.

13          Judge Kessler has asked that fact discovery be

14  completed by December, December of this year.  We've now had

15  three months of our fact discovery period go by.  We haven't

16  received a single document.  We've now just got six months

17  left.  And if damages and willfulness are left in this case,

18  it is going to be darn near impossible to get this done

19  pursuant to Judge Kessler's order.  And it's a particularly

20  appropriate sanction here, Your Honor, because they're

21  effectively using the 26(f) procedures as a shield to

22  prevent themselves from having to comply with the CRA.

23          So if there are no questions, I'll turn it over to

24  my opponent.

25          THE MAGISTRATE JUDGE:  Well, I do have one

1    additional question, Mr. Stimpson.  Is your request for what

2    you term "bifurcation" a request for a sanction or is it

3    simply your view that, given the delay in making discovery

4    that discovery cannot be completed in the time for which the

5    Court already provided.

6            MR. STIMPSON:  Well, it's both actually, Your

7    Honor.  We've cited cases where, in fact, one Court

8    specifically mentioned entering a scheduling order by

9    opposing party if they didn't comply with the Court orders.

10    It's certainly an appropriate sanction for what's happened

11    here.

12            But stepping back and just looking at where we are

13    now, and we've got six more months of fact discovery, it's a

14    very complicated case, even liability-wise.  We've got two

15    patents, we've got many accused products, we've got lots and

16    lots of prior art.  I assume there will be many accused

17    claims of each patent that are alleged to be infringed.

18    It is going to be a mountain for a jury.  And if you add

19    damages and willfulness to that, it is going to be a very

20    lengthy trial and I can't see how we can really get it done

21    in time.

22            So there are many reasons for bifurcation.  I will

23    leave that argument for another day, if it's needed.  But a

24    short answer to your question is, as a sanction and because

25    it's appropriate, we request bifurcation.

1   THE MAGISTRATE JUDGE:  Very well.  Thank you very

2 much, Mr. Stimpson.

3   MR. STIMPSON:  Thank you.

4   THE MAGISTRATE JUDGE:  Mr. Schnayer?

5   MR. SCHNAYER:  Yes, Your Honor.

6   THE MAGISTRATE JUDGE:  Very well.  Good afternoon.

7   MR. SCHNAYER:  Good afternoon.  Nice to see you

8 again.

9   Your Honor, first of all, let me make it clear we

10 did serve discovery responses, and I would like to point out

11 that the -- I'm going to hand up a copy -- they only have

12 one copy, but I'd like to point out --

13   THE MAGISTRATE JUDGE:  Let me interrupt you just

14 one moment.

15   MR. SCHNAYER:  Sure.

16   THE MAGISTRATE JUDGE:  I don't believe that I need

17 to see the responses.  Let me ask whether you concede that

18 service of any responses last night was well beyond the time

19 in which --

20   MR. SCHNAYER:  No, Your Honor.

21   THE MAGISTRATE JUDGE:  -- the responses were due.

22   MR. SCHNAYER:  Your Honor -- no.

23   THE MAGISTRATE JUDGE:  When were you served with

24 the discovery requests?

25   MR. SCHNAYER:  We were served with the discovery

1  requests -- maybe I should go back and give you my version

2  of what happened.

3       THE MAGISTRATE JUDGE:  Well, let me ask when you

4  were served with the discovery requests.

5       MR. SCHNAYER:  On March 2nd, we were served with

6  the discovery responses, Your Honor.  And --

7       THE MAGISTRATE JUDGE:  Discovery "requests."

8       MR. SCHNAYER:  Discovery requests.

9       THE MAGISTRATE JUDGE:  Very well.  You may

10  continue.

11       MR. SCHNAYER:  Your Honor, in this case originally

12  we had been having discussions about infringement charges.

13  I'm going to go back to the beginning, because I think it

14  needs to be understood.  We've had discussions with Casio

15  about charges of infringement we made against them

16  concerning two patents that are involved in this lawsuit.

17  They concern digital cameras.  We had one meeting with them,

18  never with their client, and my normal experience is we

19  usually have five, ten meetings with companies and we

20  discuss the issues.  They decided to sue Papst, to bring a

21  DJ action.  So this case started as a DJ action.

22       We filed a counterclaim against them, and

23  originally it was Casio USA involved, and we also sued Casio

24  Japan.  And when we sued Casio Japan we did so because it's

25  our understanding that they manufacture the infringing goods

1   here.

2           And we had meetings with counsel before the

3   Rule 26(f) conference that they claim happened, and we said

4   to them, "Lookit, do you represent Casio Japan?  Would you

5   accept service of process for Casio Japan?"

6           And we were told, "We don't represent Casio Japan

7   and we won't accept service of process for Casio Japan."

8           So we were forced to go through the Hague

9   Convention.  What that means is, since it's a foreign

10  company we have to file a request with the Court, the Court

11  files a request with the Justice Department, the Justice

12  Department here files a request in Japan, and they serve the

13  company, and eventually they got served.

14          And so a lot of delay that was caused in this case

15  was caused by the Plaintiff in this case.  They could have

16  accepted services of process.

17          Now, we have this meeting, and we asked them to

18  provide us with a draft before the meeting.  We also asked

19  them whether they represented Casio Japan.  Because Casio

20  Japan is a party.  And they come to the meeting, we never

21  got a draft of a proposal for the 26(f) scheduling order

22  that we had to present to the Court -- they're the

23  Plaintiff.  And they come to the meeting and they say,

24  "We don't represent Casio Japan."

25          So I said, "Well, how could we have a 26(f)

1    conference if you don't represent Casio Japan?"

2            And they said, "Well, we don't represent them.

3    And we're not going to accept service of process."

4            Counsel wasn't at that conference.  It lasted for

5    about 15 minutes.

6            THE MAGISTRATE JUDGE:  Do you agree, Mr. Schnayer,

7    that there's no authority which holds that even the complete

8    absence of a meet and confer session relieves a party of

9    the time limits which otherwise apply to the service of

10   responses to interrogatories and requests for production of

11   documents?

12           MR. SCHNAYER:  I don't.  I think the rule is

13   clear.  I think you have --

14           THE MAGISTRATE JUDGE:  What portion of the rule

15   is it --

16           MR. SCHNAYER:  26(f) --

17           THE MAGISTRATE JUDGE:  -- on which you rely?

18           MR. SCHNAYER:  Okay.  Yes.  It says --

19           THE MAGISTRATE JUDGE:  What portion are you

20   reading?

21           MR. SCHNAYER:  I'm in 26(d), Timing and Sequence

22   of Discovery.  "Except in categories of proceedings exempt

23   from initial disclosure under Rule 26(a)(1)(E) or when

24   authorized under these rules or by order of agreement of

25   the parties, a party may not seek discovery from any source

1  before the parties have conferred as required by Rule

2  26(f)."

3          And then, Your Honor --

4          THE MAGISTRATE JUDGE:  Doesn't the order of Judge

5  Kessler, which directed that discovery proceed, mean that

6  your reliance on that rule is misplaced?

7          MR. SCHNAYER:  I don't think so, Your Honor,

8  at all.  It's not how I read the Judge's order.

9          Counsel asked that discovery be allowed to go

10  forward.  After we had that 15-minute conference, this

11  so-called 26(f) conference, we met numerous times for many

12  hours on the phone.

13          And when I saw the Judge's order, it was my

14  understanding that we had to -- that discovery would go

15  forward, but the Judge never said that you don't have to

16  comply with 26(d).  26(d) is very specific.  It says you

17  have to have a 26(f) conference.  That doesn't mean meet for

18  15 minutes and discovery goes forward.  It means you're

19  supposed to prepare a discovery plan.  You're supposed to

20  discuss the issues.  And I have a section of the statute

21  that -- I'm going to hand up a copy of this, if I may, Your

22  Honor?

23          THE MAGISTRATE JUDGE:  You need not hand up the

24  statute or the rule.  We have it here.

25          MR. SCHNAYER:  Well, these are the notes for the -

1  - committee notes for that, that were part of it, describing

2  what was contemplated under new twenty -- or, 26(f), and

3  what it basically talks about is -- these were recently

4  passed.  It talks about electronic discovery, it talks about

5  the requirement to talk about electronic discovery, to

6  exchange information; that the committee now wants these

7  initial conferences to be significant, to exchange

8  information, for the parties to cooperate.

9       And the first conference we had, one of the

10  parties wasn't even present at that conference.  Because

11  they wouldn't agree -- the same attorneys that represent

12  them now wouldn't agree to talk on their behalf.  We

13  couldn't have had a conference.

14       I asked them to provide me with information about

15  electronic discovery.  The new rules say this is an

16  important issue that must be addressed, and we had hours of

17  conversations after this.  Right up until the time we filed

18  the 26(f) statement.  And we -- we -- took the initiative

19  on that.

20       We asked them to provide us with a bunch of

21  information.  If you look at the letters attached to my

22  motion, we sent out letters and we show you a list of

23  questions we asked them, that they never complied with.

24       So, for example -- we were trying to hone the

25  issues down.  This is a complicated case.  Understand,

1   there's a Japanese company and a U.S. company.  This is not

2   easy.  There might be additional companies involved here.

3   If we don't get the parties that we need involved or find

4   out about the electronic data, it's hard for us to comply

5   with Rule 26(f) as contemplated by the rules.  And we had

6   conversation after conversation with them.  And they

7   wouldn't provide us with the information.  Their answer was,

8   "We're not going to give you free discovery."

9           Serve formal requests.  Well, the rule

10  contemplates the parties are going to cooperate.  We hoped

11  to get a 26(l) conference completed pretty quickly, but we

12  couldn't until the very last day because the parties were

13  exchanging extensive drafts, because we weren't getting

14  cooperation.  In the end, I finally threw up my hands and

15  said, "Okay, I have to move forward, I have to agree on

16  something," and we submitted a joint report to the Court.

17          THE MAGISTRATE JUDGE:  Do you agree that in the

18  joint report this issue which -- when I say the "joint

19  report," I mean the joint report which you also signed --

20  does not raise this issue at all?

21          MR. SCHNAYER:  No, it doesn't really address it at

22  all.  They filed a separate motion.  It doesn't address it.

23  And it does not --

24          THE MAGISTRATE JUDGE:  Do you also acknowledge

25  that you did not file a motion to extend the deadline for

1   serving your answers to these discovery requests until a

2   more meaningful meet and confer session could take place?

3          MR. SCHNAYER:  Your Honor, I didn't -- the rule is

4   specific.  It says you have to have one beforehand.

5          You know, I feel like I'm getting set up here.

6   You know, they complain my answers aren't sufficient.  Your

7   Honor, they gave me nothing in their answers.  They gave me

8   nothing.  They objected to everything.  I provided them with

9   substantive responses.  You know, we walk into this case --

10         THE MAGISTRATE JUDGE:  Is there a motion pending

11   regarding your client's concerns about the sufficiency of

12   the responses served by Casio?

13         MR. SCHNAYER:  I haven't had a chance to meet and

14   confer with them.  We were preparing for this motion, and

15   we'll deal with it.  We have to meet and confer.  I was only

16   -- he comes in and he says my responses aren't good.  I was

17   responding to that.  And I was pointing out to you and I was

18   going to show you, here's a several-page response showing

19   how the claims read on their device.

20         We gave them substantive responses.  They didn't

21   give us substantive responses.  They wouldn't provide us

22   with the information we needed for the 26(f) conference.

23   It's my view that it never occurred until the day we

24   finalized, signed off on the agreement, and sent it to the

25   Court, and the answers aren't due until -- they're not even

1  due today. We served them early. By serving him yesterday,

2  we served him early.

3       THE MAGISTRATE JUDGE: What is your contention

4  regarding when the answers to discovery requests served on

5  March 2nd, 2007, are due?

6       MR. SCHNAYER: They won't be due until a couple

7  of days from now. They're not due, because we never had a

8  26(f) conference.

9       THE MAGISTRATE JUDGE: What is the basis of your

10  determination that they're not due until two days from

11  today?

12       MR. SCHNAYER: Because we took the exact date when

13  the parties did have a completed 26(f) conference, after

14  several substantive meetings, and the parties came to a

15  proposal to submit to the Court and we submitted the

16  scheduling proposal. That's the day that we had our 26(f)

17  conference and finalized it. And it's my position that's --

18  according to the rules, that's the only date that makes

19  sense.

20       If I'm wrong, I apologize. We did this in good

21  faith. We did not do this to delay anything. This is a

22  complicated case. There's complicated issues. We have been

23  looking into getting documents, we've got a client from

24  Germany, we've got a -- the patentee doesn't work for our

25  company, so it's not such an easy issue, but we have been

1   gathering documents.  And we put together a very substantive

2   charge of infringement here.  Your Honor, they don't have

3   anything like this in their discovery responses.  So this

4   took time to put together.

5           But they complain that I delayed everything.  It's

6   not true.  We tried to get the 26(f) conference done sooner.

7   We couldn't get any responses from them.  They didn't give

8   us the information.  I'll point out the letters to you,

9   because I think those are important.

10          If you look at our brief --

11          THE MAGISTRATE JUDGE:  I have it here.

12          MR. SCHNAYER:  And if you look at Exhibit A.

13  This is an interesting one.  Exhibit A, in the back two

14  pages, is a letter from opposing counsel.  It starts out

15  as a -- the bottom part is an e-mail from J. Gold, who is

16  Plaintiff's counsel, and Mr. Swick, Joseph Swick, who is the

17  top part, this is a response to a e-mail, is on the part --

18  is the top part.

19          But if you look at the second page -- and this is

20  the letter that Mr. Gold sent after that supposed

21  conference.  It says, "With regard --" on the last page of

22  this.  Second to last page, I'm sorry.  Second to last page,

23  point 4 of Exhibit A, it says -- Point 4 on there?  Second

24  line?

25          THE MAGISTRATE JUDGE:  I have it.

1        MR. SCHNAYER:  Okay.  "Regarding your request to

2  identify the specific details of Casio Inc., Casio Japan,

3  and any related entities' computer systems, such a request

4  is beyond the scope of the 26(f) conference."  Then he goes

5  on and gives us a little bit of information about it, but

6  he says -- and this is the important part -- bottom line,

7  last line, "If you believe you are entitled to any more

8  information about Casio Inc.'s system or any specific

9  discovery, please serve a discovery request and we'll

10  consider it."  That was their attitude.  We're not going to

11  give you free discovery.  As the rules contemplate, parties

12  should cooperate.

13        Then if you look at my letter, if you look at

14  Exhibit  -- look at Exhibit, if you would, please, Your

15  Honor, E.  First page.

16        THE MAGISTRATE JUDGE:  I have it.

17        MR. SCHNAYER:  This discusses a conference that

18  Mr. Swick in my office had with Mr. Gold, and Mr. Gold

19  represents the Plaintiff.  And you can see the second

20  paragraph.  It says, "At the conference we asked you several

21  questions relevant to developing a carefully considered

22  litigation schedule.  At the time, you weren't able to

23  provide any answers to several of our questions.  We ask

24  that you please provide us with answers to these questions

25  before our next meeting on April 16th."  So these were part

1    of the continuing meetings.

2          And you can see we're asking questions about the

3    name of the companies that were involved in the design and

4    development, so we can decide if we have the right parties

5    and know how long discovery is going to take -- reasonable

6    questions.  "What are the names of the companies that were

7    involved in the manufacture of the cameras.  What are the

8    names --" 3, "What are the names of all Casio companies that

9    were involved in the sale of the cameras."  That's also

10   relevant.  "Are both Casio Japan and Casio USA willing to

11   voluntarily produce relevant information and witnesses from

12   all their parent companies?"  So we're trying to find out

13   how much foreign discovery we have to do.  That's a

14   reasonable request.

15          Five, "Is Casio Japan and Casio US potentially

16   relevant electronic information reasonably accessible?"

17   The rules require you to talk about reasonable accessibility

18   in the 26(f) conference.  That is something you must

19   discuss.  Or you should discuss.  And that is, is the

20   information reasonably accessible because electronic

21   discovery is very complicated and if it's not reasonably

22   accessible, then you have to talk about shifting costs and

23   who should pay for it.  And that's important, according to

24   the new rules, to deal with electronic discovery.  We asked

25   them questions about that and we got no answers.

1       And then we asked, "Who are the names of the --

2 names, titles and employers of those individuals at Casio

3 Japan and Casio US who have special knowledge about each

4 respective party's computer system."  If you read the

5 section of the rule, the notes on it, it says that that's

6 the kind of information you're supposed to talk about.

7 In fact, they discuss and some Courts have said you've got

8 to bring somebody knowledgeable about it from the company

9 and have a real significant exchange.  So we tried to do

10 that with them.

11       And now look, if you would, at Exhibit F.

12 Exhibit F is April 18th, a further letter from Mr. Swick to

13 Mr. Gold.  "We are disappointed that you called this morning

14 to state you were unilaterally canceling our previously

15 agreed to upon continuation of the Rule 26(f) conference

16 scheduled to occur today.  As we understand it, you are

17 unwilling to participate because you have not received

18 _____ proposal.  However, at this time you also

19 indicated you were unwilling to discuss many of the

20 Rule 26(f) issues that will help parties develop a carefully

21 developed scheduling plan.  Specifically, you told me, for

22 the first time, you're unwilling to discuss the following

23 questions," and those are the same questions that we had

24 listed in our other letter to them.  And there's no letter

25 that says, "Yes, we were willing to discuss these with you."

1 So a lot of the delay here was caused in having

2 the final Rule 26(f) conference by counsel for Plaintiff not

3 giving us, quote, "free discovery," which is the kind of

4 cooperation you need in a case to formulate a reasonable

5 discovery plan.

6 THE MAGISTRATE JUDGE:  Am I correct, Mr. Schnayer,

7 that the sole basis of your client's determination to serve

8 no answers until last night has to do with the manner in

9 which the conference was conducted?

10 MR. SCHNAYER:  The fact that there was no

11 conference.  There was no conference.  And --

12 THE MAGISTRATE JUDGE:  Very well.

13 MR. SCHNAYER:  There was none.  That's not a

14 conference.  And it didn't occur until we signed the papers

15 after many discussions, and trying to do it in a quick

16 fashion.

17 I also have one other point I'd like to make.

18 THE MAGISTRATE JUDGE:  Yes.

19 MR. SCHNAYER:  Counsel has raised an issue, and

20 this is sort of a side point, but I want to make this clear

21 because I think it's important.

22 He said one of the sanctions we want is that you

23 should segregate out the damages issue and willfulness

24 issue.  And I'd like to point out that at the hearing that

25 occurred with the Judge, the scheduling hearing that we had,

1  the one hearing, the Judge -- that issue was before the

2  Court because both parties addressed it in the papers they

3  filed, this big paper we put together finally which listed

4  the parties' positions.  And they asked the Judge for

5  bifurcation.  They asked the Judge for bifurcation.

6        And the Judge, at the end of the hearing, issued

7  an order and that's -- of the record, and she ordered the

8  schedule.  And there's nothing in the order that talks about

9  bifurcation.  And after she read the order -- she read it

10  out loud, and then she issued it in writing after the

11  hearing, she said, "Are there any more questions?"  She

12  turned to Plaintiff first.  Counsel didn't raise any

13  questions.  He didn't raise this issue with the Judge.

14        Bifurcation was already considered by the Court --

15  by the District Court Judge -- and denied.  It was denied.

16  And now they're saying, we want the sanction of bifurcation.

17  Well, they have it -- it's already been ruled on.  And

18  second, it's not a proper -- there's no authority to say

19  that this is a proper sanction under the rules.  There's no

20  authority for it.  it's just like, we want it because we

21  want it.  It's not proper.  So it's already been ruled on.

22        So, Your Honor, we did believe that the Judge's

23  order -- they have the ability to ask the Judge -- and they

24  never did in the papers they filed -- to address the issue

25  of the Rule 26(f) conference.  They never said to the Judge,

1    "You know, we want a specific ruling that discovery should

2    be considered served as of that day."  They never asked for

3    it in their pleading.  And the Judge never ruled on it.  If

4    you look at the paper they filed, it doesn't ask for that.

5    So they never asked for it, the Judge never ruled on it, and

6    we proceeded with that understanding.

7            If I'm wrong, I apologize.  We served our

8    discovery requests.  But it's not sanctionable, Your Honor.

9            THE MAGISTRATE JUDGE:  Very well, thank you,

10   Mr. Schnayer.

11           MR. SCHNAYER:  Thank you, Your Honor.

12           THE MAGISTRATE JUDGE:  Mr. Stimpson, if you wish

13   a brief reply I will hear you.

14           MR. STIMPSON:  Your Honor, I don't (inaudible)

15   have 30 seconds.

16           THE MAGISTRATE JUDGE:  My expectation was that one

17   of you would address the issue -- do you need a moment to

18   confer with Mr. Schnayer?  If so, you certainly may do so

19   and I'm happy to take a brief recess if you need more than a

20   moment or two to huddle.

21           MR. STIMPSON:  Not a problem.

22           MR. SCHNAYER:  Your Honor?

23           THE MAGISTRATE JUDGE:  Mr. Schnayer, yes.

24           MR. SCHNAYER:  If I may, please.  Thank you.

25   Counsel points out to me, co-counsel, that the committee

1    notes _____ -- Subsection (f) of the committee notes

2    points out and it talks about Rule 26(f) as amended to

3    direct the parties to discuss discovery electronically

4    stored information during their discovery planning

5    conference.  And the rule focuses on the issues relating to

6    disclosure or discovery of electronically stored

7    information.  Discussion is not required in cases which

8    involve -- don't involve electronic discovery.  In this

9    case, of course, it does.

10          And it goes on in the committee notes, it says,

11   it talks extensively about how this is important to focus

12   the issues, to focus the issues so that you can have a good

13   proposal to the Judge and focus the discovery in the case.

14          To have a 15-minute discussion where the parties

15   haven't done anything is not a local rule conference.  It's

16   not consistent with these guidelines that are set out in the

17   committee notes.  It really contemplates that you -- and it

18   goes through, and if Your Honor would care to read it after

19   the hearing, it goes through and it says you're supposed to

20   discuss these issues and narrow the issues.

21          THE MAGISTRATE JUDGE:  The Court is eminently

22   familiar with the committee notes.

23          MR. SCHNAYER:  Thank you, Your Honor.

24          THE MAGISTRATE JUDGE:  Very well.  Thank you.

25   You may have a seat.

1          MR. SCHNAYER:  Appreciate it.  Thank you.

2          MR. STIMPSON:  Your Honor, 30 seconds.  Just on

3    the last point that Mr. Schnayer raised, about this being

4    already -- bifurcation already being decided by Judge

5    Kessler.  And that meet and confer statement, I believe --

6    I don't have it in front of me, but I believe the very first

7    thing we said was we're asking for this as a sanction, and

8    Judge Kessler said she's passing this motion on to Your

9    Honor.  She certainly did not rule on bifurcation.

10          The rest of Mr. Schnayer's argument was all about

11   26(f), and I don't believe this is about 26(f).  This is

12   about noncompliance with Judge Kessler's order.

13          If you don't have any further questions, I'll sit

14   down.

15          THE MAGISTRATE JUDGE:  Very well.  Thank you.

16   You may have a seat.

17          MR. STIMPSON:  Thank you.

18          THE MAGISTRATE JUDGE:  As the Court indicated at

19   the outset, the Court reviewed the motion, the opposition

20   and the reply in advance of the hearing, and the Court has

21   now considered the proffers and arguments of counsel during

22   the course of the hearing.  Having done so, the Court will

23   grant the motion, largely for the reasons offered by the

24   Movant, both orally and in writing.

25          More specifically, the Court finds that what Papst

1    urges upon the Court is a novel way of counting the number

2    of days in which a party must serve responses to written

3    discovery requests.  The Court uses the term, quote,

4    "novel," close quote, because there is simply no authority

5    which supports this method of calculating the deadline.

6         The rules make plain when it is that a party is to

7    serve responses to written discovery requests.  There was no

8    motion for enlargement of time filed by Papst.  Papst did

9    not seek any clarification of the due date in the meet and

10   confer report that counsel, along with opposing counsel,

11   filed in this matter, and appears to have unilaterally taken

12   the position that because Papst was displeased with the

13   manner in which the Rule 26(f) meeting or conference was

14   conducted that the responses to the written discovery

15   requests would be withheld.

16        However, there is no authority that suggests

17   that a party may unilaterally alter the rule which would

18   otherwise apply, particularly in an instance such as this

19   where the Court ordered that discovery proceed, simply

20   because of a concern regarding the sufficiency of the 26(f)

21   conference.

22        For these reasons, the Court finds that the

23   opposition to the motion to compel and for sanctions was not

24   substantially justified and that there are no circumstances

25   which would make the imposition of sanctions unjust.

1          The Court therefore orders the following.

2          First, the Court orders that complete responses --

3 that is, without objections, which have been waived by the

4 failure to respond in a timely fashion -- be served within

5 10 calendar days of today's date.

6          Second, the Court imposes as a sanction the costs

7 to Casio, including reasonable attorney's fees, of moving to

8 compel and for sanctions.  The Court will order that such

9 costs be paid within 30 days of today's date and that

10 counsel work cooperatively to share and comment upon the

11 reasonableness of those costs.  This is not a matter that

12 should entail the filing of a motion, because the Court

13 expects that you will work cooperatively to determine what

14 the reasonable costs are.

15          To the extent that there is an additional sanction

16 that Casio requests, the motion for any additional sanction

17 other than the fees and costs, is denied.

18          The Clerk will prepare a minute entry which will

19 indicate that the motion to compel and for sanctions was

20 granted for the reasons set forth on the record at the

21 hearing.  There is no order, no written order, that will

22 follow.  The minute entry will also indicate that complete

23 responses without objection are to be served within ten days

24 of today's date, and that Papst is to pay Casio's costs

25 within 30 calendar days of today's date.

1      Now, is there anything further in this matter

2   this afternoon?  Mr. Stimpson or Mr. Fe?

3      MR. STIMPSON:  Not that's pending before Your

4   Honor right now, nothing (inaudible).

5      THE MAGISTRATE JUDGE:  Very well, thank you.

6   Mr. Schnayer, Mr. Wright?

7      MR. SCHNAYER:  Nothing further, Your Honor.

8   Thank you.

9      THE MAGISTRATE JUDGE:  Very well.  Thank you

10  very much.

11      There is nothing scheduled for the courtroom for

12  the rest of the day, so if you wish to stay and continue

13  your efforts to confer before you return to your respective

14  destinations, you are welcome to do so.

15      COUNSEL:  Thank you.

16      THE MAGISTRATE JUDGE:  Very well.  Thank you

17  very much.

18      (Whereupon, proceedings were concluded.)

19

20

21

22

UNITED STATES OF AMERICA )
                                                    ) Civil Action No. 06-1751
DISTRICT OF COLUMBIA          )

       I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                                          PAUL R. CUTLER

       I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                                         BONNIE FURLONG



EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASIO INC.

                Plaintiff,

      v.

PAPST LICENSING GMBH & CO. KG
              Defendant.
_____

PAPST LICENSING GMBH & CO. KG

              Counter-Plaintiff

      v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

              Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge: Gladys Kessler

**DEFENDANT PAPST LICENSING GMBH & CO. KG'S FIRST SUPPLEMENTAL
ANSWERS TO PLAINTIFF CASIO INC.'S FIRST SET OF
INTERROGATORIES (NOS. 1-6)**

    Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Papst

Licensing GmbH & Co. KG ("Papst Licensing"), supplements its answers Casio Inc.'s

First Set of Interrogatories as follows:

**PRELIMINARY STATEMENTS**

    1.    These answers are a supplement to Papst Licensing's Answers to Plaintiff

Casio Inc.'s First Set of Interrogatories (Nos. 1-6) served on May 30, 2007.

    2.    Papst Licensing has not completed its investigation of the facts relating to

this action. Accordingly, with respect to all of the Interrogatories, Papst Licensing reserves the right to amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the course of this action and at trial.

      3.     In those instances where the responses to Casio Inc.'s interrogatories can be derived from the business records of Papst Licensing or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Casio Inc. and Papst Licensing, Papst Licensing will specify the records from which an answer may be ascertained and afford Casio Inc.'s counsel a reasonable opportunity to audit, inspect and copy such records or provide categorized copies of such records in accordance with Federal Rule of Civil Procedure 33(d).

      4.     Pending before this Court is Papst Licensing's Motion for Clarification which requests the Court to clarify whether Papst Licensing should disclose its information that is protected by the work product doctrine, the attorney-client privilege or any other privilege recognized by law. Until such time as the Court rules on the Motion for Clarification, Papst Licensing cannot disclose such information that is protected by the work product doctrine, the attorney-client privilege or any other privilege recognized by law.

      5.     Pending before this Court is Papst Licensing's Motion for Clarification which requests the Court to clarify whether Papst Licensing should disclose confidential information that will be protected under a future Protective Order. Pursuant to agreement by the parties dated June 5, 2007, Papst Licensing will disclose its confidential information on an outside counsel only basis until the protective order issues are resolved

by the Court.

6.     Soon pending before this Court will be Papst Licensing's Objections to

U.S. Magistrate Robinson's May 31, 2007 rulings on discovery issues.  Should U.S.

District Court Judge Kessler rule differently on those issues, Papst Licensing reserves the

right to further supplement these answers accordingly.

## ANSWERS TO INTERROGATORIES

INTERROGATORY NO. 1

Separately with respect to each claim of the patents-in-suit asserted by Papst to be
infringed (directly or indirectly), and for each accused product, state in full and complete
detail the bases for such charge of infringement including, but not limited to, how Papst
contends that each element of each such claim should be interpreted and provide a
detailed element-by-element comparison for each claim with each such product
(identifying where in each accused product each element is allegedly found, or otherwise
specifically identifying which feature of each accused product is alleged to meet each
claim element).  For each element allegedly met under the doctrine of equivalents,
specifically state all reasons why Papst contends the element in the accused product is
insubstantially different.

ANSWER:

**U.S. Patent No. 6,470,399**

Subject to the Preliminary Statements above which are incorporated herein and

upon information and belief, Casio's digital still camera model nos. EX-P700, EX-S500,

EX-Z60, EX-Z70, EX-Z110 and EX-Z600[1] ("Casio Infringing Products") literally

infringe at least claim 1 of United States Patent No. 6,470,399.  Each claim element is set

---

[1]     Papst Licensing's infringement charges are not limited to the above-noted Casio
digital still cameras.  Rather, the infringement charges are intended to include all
Casio products (*e.g.*, digital video cameras and digital sound recorders) that, from
an infringement standpoint, have a construction that is similar to that of the

forth hereinafter in bold and underlined typeface.  Presented in underlined typeface below each claim element is Papst Licensing's position as to how each claim element should be interpreted, and how each claim element reads on the Casio Infringing Products.

### 1.  An interface device for communication between

Interpretation

This claim element reads on, for example, electronic circuitry that allows a device from which analog data is to be obtained to be connected to a host device such as a personal computer, subject to the other features of the claim that describe the interface device.

Application

Six schematic, block diagrams are attached hereto as Exhibit A which show some of the components of each one of the above-referenced Casio digital still cameras.  The Casio Infringing Products include an "interface device" that is formed by at least a portion of the CPU and the on-chip memory that are a part of the camera and audio chip.

### a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and

Interpretation

A "host device" reads on, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC").

A "driver for input/output devices customary in a host device" reads on, for example, a software driver that is a part of an operating system of a personal computer when the personal computer is sold to an end user.

A "multi-purpose interface" reads on, for example, a port of a personal computer

above-noted digital still cameras.

that can be used for two or more different purposes.

## Application

The Casio Infringing Products can be connected to, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC") and that forms a "host device."  The files disk.sys and PartMgr.sys, as well as usbscan.sys, ptpusb.dll and ptpusd.dll, are included as standard programs in Windows XP, Version 2002 with Service Pack 2.  Disk.sys and PartMgr.sys form a software driver for input/output devices customary in a host device.  The files usbscan.sys, ptpusb.dll and ptpusd.dll also form a software driver for input/output devices customary in a host device.  The PC has at least one USB port, which is a multi-purpose interface.

### a data transmit/receive device, the data transmit/receive device being arranged for providing analog data, comprising:

## Interpretation

A "data transmit/receive device" reads on, for example, a device that is adapted to "receive" data by being exposed to an analog wave signal, the device being further adapted to "transmit" or provide analog data.

## Application

The Casio Infringing Products include a first "data transmit/receive device" formed at least in part by a lens and the diode array formed in a CCD chip that converts light into analog data that is representative of an image.

The Casio Infringing Products include a second "data transmit/receive device" formed at least in part by a transducer inside of a microphone that converts sound waves into an analog sound signal.

### a processor;

5

Interpretation

A "processor" reads on, for example, circuitry that interprets and executes program instructions.

Application

The Casio Infringing Products include a camera and audio chip, at least a portion of which forms a "processor."

**a memory;**

Interpretation

A "memory" reads on, for example, circuitry that stores information in electronic form that is subject to recall.

Application

The Casio Infringing Products include an on-chip memory that is located on the camera and audio chip and a memory card that can be located in a socket. The on-chip memory forms at least a portion of the claimed "memory."

**a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and**

Interpretation

The above-referenced claim element reads on, for example, circuitry that allows the above-referenced interface device to be electrically connected to a multi-purpose user interface of a personal computer such as a USB port.

Application

The Casio Infringing Products include a USB socket that can be connected to a USB port of a personal computer by a USB cable. The Casio Infringing Products also include a USB interface that is located on the camera and audio chip. The "first

connecting device" is formed by at least the USB socket, the USB interface on the camera and audio chip, and the electrical connections between the two.

### a second connecting device for interfacing the interface device with the data transmit/receive device,

#### Interpretation

The above-quoted claim element reads on, for example, circuitry that connects the above-referenced data transmit/receive device to the above-referenced interface device, subject to the other features of the claim that describe the second connecting device.

#### Application

The Casio Infringing Products include a CCD chip having a gates and registers block, as well as a CCD controller chip that includes an a/d converter and a CCD controller. At least the a/d converter, the gates and registers block, and the CCD controller form at least a portion of a first "second connecting device."

The Casio Infringing Products include a camera and audio chip having a sample and hold circuit and an a/d converter that receives an analog sound signal from a microphone. At least the transducer in the microphone, as well as the a/d converter and the sample and hold circuit on the camera and audio chip, form at least a portion of a second "second connecting device."

### the second connecting device including a sampling circuit for sampling the analog data provided by the data transmit/receive device and

#### Interpretation

The above-referenced claim element reads on, for example, circuitry that couples a device that generates analog data that is representative of an analog wave signal (*e.g.*, light or sound waves) to an analog to digital converter.

7

<u>Application</u>

The Casio Infringing Products include a gates and registers block that forms a part of a CCD chip and a CCD controller that forms a part of a CCD controller chip.  At least the gates and registers block and the CCD controller form at least a portion of a first "sampling circuit."

The Casio Infringing Products include a camera and audio chip that has a sample and hold circuit.  The sample and hold circuit samples and holds the analog sound signal provided by the transducer of the microphone, and forms at least a portion of a second "sampling circuit."

**<u>an analog-to-digital converter for converting<br>data sampled by the sampling circuit into digital data,</u>**

<u>Interpretation</u>

This claim element reads on, for example, circuitry that converts an analog signal into a digital signal.

<u>Application</u>

The Casio Infringing Products include an a/d converter that forms a part of the CCD controller chip.  The a/d converter converts the analog data supplied to it from the gates and registers block into digital data that is representative of an image.

The Casio Infringing Products include a second a/d converter that forms a part of the camera and audio chip.  The second a/d converter converts the analog data supplied to it from the transducer of the microphone into digital data that is representative of a sound signal.

**<u>wherein the interface device is configured by the processor and the memory</u>**

8

**to include a first command interpreter and a second command interpreter,**

Interpretation

This claim element reads on, for example, a set of program instructions that is stored in a memory of a device in accordance with the other claim elements that are executed by a processor of the device to cause the device to operate in a certain way as described later in the claim.

Application

An instruction set is programmed into the on-chip memory of the camera and audio chip of the Casio Infringing Products. At least a portion of the instruction set forms a "first command interpreter" and a "second command interpreter."

**wherein the first command interpreter is configured in such a way that the command interpreter, when receiving an inquiry from the host device as to a type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is an input/output device customary in a host device,**

Interpretation

This claim element reads on, for example, a set of program instructions that is adapted to cause the device under control of the processor, after an inquiry signal from a multi-purpose interface of a personal computer is received and processed, to automatically and without user intervention send a response signal to the personal computer's multi-purpose interface. The set of program instructions causes the response signal to contain data that, when received and processed by the personal computer, allows the personal computer to automatically and without user intervention understand how to communicate with and receive data from a peripheral device.

Application

9

The USB socket of the Casio Infringing Products is adapted to receive inquiry signals that the PC sends to its USB port to determine when something is operatively coupled thereto. The "first command interpreter" is adapted to cause the CPU on the camera and audio chip to send, after the USB socket is coupled to the PC's USB port, and after an inquiry signal has been received and processed, a response signal comprising data stored in the on-chip memory defined in the camera and audio chip to the PC's USB port.

When the Casio Infringing Products are in Mass Storage mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by disk.sys and PartMgr.sys.

When the Casio Infringing Products are in PTP mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by usbscan.sys, ptpusb.dll and ptpusd.dll.

**whereupon the host device communicates with the interface device
by means of the driver for the input/output device customary in a host device, and**

Interpretation

This claim element reads on, for example, the above-referenced interface device that communicates with and transmits data to a personal computer by means of a software driver for an input/output device customary in a host device.

Application

When the Casio Infringing Products are in Mass Storage mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a

software driver formed by disk.sys and PartMgr.sys to allow the "interface device" to communicate with the PC.

When the Casio Infringing Products are in PTP mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by usbscan.sys, ptpusb.dll and ptpusd.dll to allow the "interface device" to communicate with the PC.

**wherein the second command interpreter is configured to interpret a data request command from the host device to the type of input/output device signaled by the first command interpreter as a data transfer command for initiating a transfer of the digital data to the host device.**

Interpretation

This claim element reads on, for example, a set of program instructions that is adapted to interpret a data request command from a multi-purpose interface of a personal computer as being a command to transfer digitized analog data stored in the above-referenced memory.

Application

The USB socket and USB interface of the Casio Infringing Products is adapted to receive data request commands that the PC sends through the USB port. The "second command interpreter" is adapted to cause the CPU to interpret a data request command from the PC as being a command to initiate a transfer of digital data to the PC. The digital data can include digitized still pictures, digitized video, and digitized sound files.

**U.S. Patent No. 6,895,449**

Subject to the Preliminary Statements above which are incorporated herein and upon information and belief, Casio's digital still camera model nos. EX-P700, EX-S500, EX-Z60, EX-Z70, EX-Z110 and EX-Z600[2] ("Casio Infringing Products") literally infringe at least claim 1 of United States Patent No. 6,895,449. Each claim element is set forth hereinafter in bold and underlined typeface. Presented in underlined typeface below each claim element is Papst Licensing's position as to how each claim element should be interpreted, and how each claim element reads on the Casio Infringing Products.

### 1. An interface device for communication between

#### Interpretation

This claim element reads on, for example, electronic circuitry that allows a device from which analog data is to be obtained to be connected to a host device such as a personal computer, subject to the other features of the claim that describe the interface device.

#### Application

Six schematic, block diagrams are attached hereto as Exhibit A which show some of the components of each one of the above-referenced Casio digital still cameras. The Casio Infringing Products include an "interface device" that is formed by at least a portion of the CPU and the on-chip memory that are a part of the camera and audio chip.

---

[2]     Papst Licensing's infringement charges are not limited to the above-noted Casio digital still cameras. Rather, the infringement charges are intended to include all Casio products (*e.g.*, digital video cameras and digital sound recorders) that, from an infringement standpoint, have a construction that is similar to that of the above-noted digital still cameras.

12

**a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and**

Interpretation

A "host device" reads on, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC").

A "driver for input/output devices customary in a host device" reads on, for example, a software driver that is a part of an operating system of a personal computer when the personal computer is sold to an end user.

A "multi-purpose interface" reads on, for example, a port of a personal computer that can be used for two or more different purposes.

Application

The Casio Infringing Products can be connected to, for example, a personal computer that utilizes Windows XP, Version 2002 with Service Pack 2 ("PC") and that forms a "host device." The files disk.sys and PartMgr.sys, as well as usbscan.sys, ptpusb.dll and ptpusd.dll, are included as standard programs in Windows XP, Version 2002 with Service Pack 2. Disk.sys and PartMgr.sys form a software driver for input/output devices customary in a host device. The files usbscan.sys, ptpusb.dll and ptpusd.dll also form a software driver for input/output devices customary in a host device. The PC has at least one USB port, which is a multi-purpose interface.

**a data transmit/receive device comprising the following features:**

Interpretation

A "data transmit/receive device" reads on, for example, a device that is adapted to "receive" data by being exposed to an analog wave signal, the device being further adapted to "transmit" or provide analog data.

13

<u>Application</u>

The Casio Infringing Products include a first "data transmit/receive device" formed at least in part by a lens and the diode array formed in a CCD chip that converts light into analog data that is representative of an image.

The Casio Infringing Products include a second "data transmit/receive device" formed at least in part by a transducer inside of a microphone that converts sound waves into an analog sound signal.

**<u>a processor;</u>**

<u>Interpretation</u>

A "processor" reads on, for example, circuitry that interprets and executes program instructions.

<u>Application</u>

The Casio Infringing Products include a camera and audio chip, at least a portion of which forms a "processor."

**<u>a memory;</u>**

<u>Interpretation</u>

A "memory" reads on, for example, circuitry that stores information in electronic form that is subject to recall.

<u>Application</u>

The Casio Infringing Products include an on-chip memory that is located on the camera and audio chip and a memory card that can be located in a socket. The on-chip memory forms at least a portion of the claimed "memory."

**<u>a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and</u>**

14

Interpretation

The above-referenced claim element reads on, for example, circuitry that allows the above-referenced interface device to be electrically connected to a multi-purpose user interface of a personal computer such as a USB port.

Application

The Casio Infringing Products include a USB socket that can be connected to a USB port of a personal computer by a USB cable. The Casio Infringing Products also include a USB interface that is located on the camera and audio chip. The "first connecting device" is formed by at least the USB socket, the USB interface on the camera and audio chip, and the electrical connections between the two.

**a second connecting device for interfacing the
interface device with the data transmit/receive device,**

Interpretation

The above-quoted claim element reads on, for example, circuitry that connects the above-referenced data transmit/receive device to the above-referenced interface device and converts the analog data from the data transmit/receive device to digital data.

Application

The Casio Infringing Products include a CCD chip having a gates and registers block, as well as a CCD controller chip that includes an a/d converter and a CCD controller. At least the a/d converter, the gates and registers block, and the CCD controller form at least a portion of a first "second connecting device."

The Casio Infringing Products include a camera and audio chip having a sample and hold circuit and an a/d converter that receives an analog sound signal from a microphone. At least the transducer in the microphone, as well as the a/d converter and

15

the sample and hold circuit on the camera and audio chip, form at least a portion of a

second "second connecting device."

**wherein the interface device is configured by the processor and the memory in**
**such a way that the interface device, when receiving an inquiry from the host**
**device as to the type of a device attached to the multi-purpose interface**
**of the host device, sends a signal, regardless of the type of the data**
**transmit/receive device attached to the second connecting device of the**
**interface device, to the host device which signals to the host device that it**
**is a storage device customary in a host device,**

Interpretation

This claim element reads on, for example, a set of program instructions that is

adapted to cause the device under control of the processor, after an inquiry signal from a

multi-purpose interface of a personal computer is received and processed, to

automatically and without user intervention send a response signal to the personal

computer's multi-purpose interface. The set of program instructions causes the response

signal to contain data that, when received and processed by the personal computer, allows

the personal computer to automatically and without user intervention understand how to

communicate with and receive data from a peripheral device.

Application

The USB socket of the Casio Infringing Products is adapted to receive inquiry

signals that the PC sends to its USB port to determine when something is operatively

coupled thereto.

An instruction set is programmed into the on-chip memory of the camera and

audio chip of the Casio Infringing Products. The instruction set is adapted to cause the

CPU on the camera and audio chip to send, after the USB socket is coupled to the PC's

USB port, and after an inquiry signal has been received and processed, a response signal

16

comprising data stored in the on-chip memory defined in the camera and audio chip to the PC's USB port.

When the Casio Infringing Products are in Mass Storage mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by disk.sys and PartMgr.sys.

When the Casio Infringing Products are in PTP mode, the response signal contains information that, when received and processed by the PC, causes the PC to recognize that it can communicate with the "interface device" by means of a software driver that is formed by usbscan.sys, ptpusb.dll and ptpusd.dll.

**whereupon the host device communicates with the interface device
by means of the driver for the storage device customary in a host device, and**

Interpretation

This claim element reads on, for example, the above-referenced interface device that communicates with and transmits data to a personal computer by means of a software driver for an input/output device customary in a host device.

Application

When the Casio Infringing Products are in Mass Storage mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by disk.sys and PartMgr.sys to allow the "interface device" to communicate with the PC.

When the Casio Infringing Products are in PTP mode, the instruction set stored in the on-chip memory of the Casio Infringing Products is adapted to utilize a software driver formed by usbscan.sys, ptpusb.dll and ptpusd.dll to allow the "interface device" to

17

communicate with the PC.

**wherein the interface device is arranged for simulating a virtual file
system to the host, the virtual file system including a directory structure.**

Interpretation

This claim element reads on, for example, the memory of the above-referenced
"interface device" that is adapted to simulate a virtual file system by containing therein
"virtual" data.  The data is virtual in the sense that it is representative of something else.

This claim element also reads on, for example, an interface device that sends a
signal to a personal computer that informs the personal computer that the interface device
has a rotatable disk memory when, in actuality, the interface device has an integrated
circuit memory.  By doing so, the interface device is simulating a virtual file system.

Application

The instruction set stored in the on-chip memory of the Casio Infringing Products
is adapted to store pictures in a file system and a directory structure defined in its
memory.  The file system is "virtual" in the sense that the data stored therein is "virtual"
– the digitized data digitized still pictures, digitized video, and digitized sound files being
representative of images, moving images and sound waves.  After the USB socket of the
Casio Infringing Products is coupled to a USB port on a PC, a representation of all of the
digitized analog data that are stored in memory is shown on the screen of the PC as being
contained in a file folder.

The Casio Infringing Products simulate a virtual file system for an additional
reason.  When in mass storage mode, each Casio Infringing Product is adapted to inform
a personal computer that each Casio Infringing Product contains a rotatable disk memory
when, in actuality, each Casio Infringing Product contains an integrated circuit memory.

18

INTERROGATORY NO. 2

     Identify all prior art, including but not limited to prior art that has been asserted by others relating to one or both patents-in-suit.

ANSWER:

     Subject to the Preliminary Statements above which are incorporated herein, the

following references have been identified by others as potential prior art to the patents-in-

suit.  To the extent this Interrogatory requests details concerning each reference, the

references will be produced under Rule 33(d) and the references will disclose details to

the extent Papst Licensing is aware of them.  Papst Licensing will identify those

documents by Bates number in a letter after Papst Licensing produces the documents.

**US Patents**

3,714,635; 3,805,245; 3,976,979; 4,509,113; 4,642,759; 4,680,732; 4,888,680; 4,901,275;

4,972,470; 5,070,474; 5,088,033; 5,131,089; 5,197,128; 5,214,761; 5,291,584; 5,296,611;

5,297,124; 5,379,382; 5,430,855; 5,444,644; 5,487,154; 5,493,335; 5,499,378; 5,506,692;

5,508,821; 5,510,774; 5,524,047; 5,528,765; 5,532,825; 5,548,782; 5,548,783; 5,581,741;

5,614,948; 5,639,606; 5,712,682; 5,724,574; 5,748,924; 5,765,027; 5,778,205; 5,784,581;

5,812,879; 5,841,471; 5,844,961; 5,871,368; 5,875,415; 5,884,103; 5,914,748; 5,915,106;

5,920,709; 5,923,193; 5,926,208; 5,929,903; 5,969,750; 5,991,530; 5,995,080; 6,005,613;

6,012,113; 6,026,217; 6,081,856; 6,086,430; 6,088,532; 6,098,116; 6,101,276; 6,119,180;

6,131,125; 6,167,456; 6,182,145; 6,188,675; 6,286,073; 6,292,589; 6,298,388; 6,470,399;

6,545,775; 6,895,449; 7,051,281


**Japanese Patents**

53145535 A; 61034652 A; 61060164 A; 01303554 A; 01293404 A; 02114351 A; 09016506 A; JP 8-191410

**Other Documents**

IEEE Standard for a High Performance Serial Bus, 1996. 392 pp. (IEEE Std 1394-1995); Digidesign 882/20 I/O Audio Interface Installation Guide, 14 pp.; Information Technology -- Serial Bus Protocol 2 (SBP -2), T10 Project 1155D, Revision 4, 5/19/98, 107 pp.;An American National Standard, IEEE Standard for a Simple 32-Bit Backplane Bus: NuBus; 1998, 51 pp. (ANSI/IEEE 1196-1987); Polaroid Digital Camera PDC-2000 User Guide for Macintosh or Windows applications (142 pp.); apple-history.com, Macintosh Quadra 650 (with NuBus Slots), Apple Computer, Inc., (produce introduced 10/93) 11/29/05, 2 pp.; Wang, James www.sims.berkeley.edu Third Party NuBus AV (Audio-Video) Cards, 1993-1996 1 pg.; Accredited Standards Committee X3, Information Technolgoy, John Lohmeyer, X3T10/96-202r1, Agenda and Results of Meeting, X3T10 SCSI Working Group Meeting, 07/24/96 (6 pp.); Intel Corporation, Universal Host Controller Interface Design Guide (UHCI), Revision 1.1, March 1996 (47 pp.); Twain Working Group Committee, Twain Toolkit Release V1.6, Twain Specification Release, 2/5/96 (367 pp.); Digidesign Website, www.digidesign.com, Tabular cross-reference "Pro Tools 4.0.1 NuBus Systems compatibility" as supported by Digidesign, Inc., Palo Alto, CA, 3 pp.; Twain Working Group, www.twain.org, About Twain, 4 pp.; Pournelle Alex, Jetsend Technology Allows Device connectivity with No Servers, Drivers, or Code, Computer Technology Review, 07/1999, Vol. 19, Iss. 7, Pg. 22, 4 pp.; Business Editors/Technology Writers, Salutation Port-of-Entry Software Lets Application Developers Control Network Peripherals from the Windows Desktop,

Business Wire, 07/13/98, Pg. 1 (3 pp.); Wire Feed, HP Introduces JetSend for Pocket PC JetSend Solutions Now Compatible with Complete Range of Microsoft Windows CE- and Pocket PC-based Products, M2 Presswire, 4/26/2000, Pg. 1 (3 pp.); Stedman, John HP and TROY Group Extend JetSend Protocal to Simplify Printing Over Networks and the Internet; JetSend Protocol Expands Cutting-edge Capabilities to Non-HP Printers, HP Deskjet Printers, Legacy HP LaserJet Printers and Future Products, M2 Presswire, 2/10/2000, Pg. 1 (2 pp.); Business Editors, An Industry First, TROY Group's NetSend Makes Up to 9 Million HP Legacy Printers Internet-Ready, Business Wire, 11/16/99, Pg. 1 (3 pp.); Keele, Richard Designing Control Units that Interface Peripherals to the IBM I/O Channel, Computer Technology Review, Fall 1988; Vol. 8, Iss. 13, pg. 71 (1 page); Lang, Michael Optical Server Uses Network Protocal for Plug-and Play Integration, Computer Technology Review, 12/1993, Vol 13, Iss. 15, pg. 85 (3 pp.); Bursky, Dave Inter-System Communication Standard to Ease Clustered System Implementation, Electronic Design, 10/13/97, Vol. 45, Iss. 22, pg. 32 (3 pp.); Hadden, Thomas H., Tape Drive Without Backup Software? Wait No More, Computer Technology Review Los Angeles, 10/1995, Vol. 15 Iss. 10, p. 34 (4 pp.); Ferelli, Mark, 12-inch WORM becomes the key to document image processing Computer Technology Review Los Angeles, 3/1994, Vol. 14, Iss. 3, p. 1 (3 pp.); Nelson, Andy Catching a Direct Bus. InfoWorld, 6/17/96, VOl. 18, Iss. 25, pg. 129 (2 pp.); DeMonker, Judy 120 Moves Into Clustering, Storage Arenas, InfoWorld, 12/9/96, Vol. 18, Iss. 50, p. 37 (2 pp.); Krause, Reinhardt I/O Driver Spec to be Unveiled, Electronic News, 1/29/96, Vol. 42, Iss. 2101, pg. 1 (3 pp.); Microsoft Windows 95 README for MS-DOS Device Drivers, 08/95, pg. 1 (2 pp.); Lang, Michael Optical server uses network protocols for plug-and-play integration,

Computer Technology Review: Special Fall Issue, Los Angeles, Dec. 1993, Vol. 13, Iss. 15 p. 85 (6 pp.); Universal Serial Bus Specification," 1.0 Final Draft Revision, November 13, 1995; Universal Serial Bus Specification," Revision 1.0, January 15, 1996

## INTERROGATORY NO. 3

Identify all alleged secondary considerations or other objective evidence that defendant contends evidence non-obviousness of any one or more of the claims of the '449 and '399 patents, state all supporting facts including all evidence attributing the secondary considerations to the claims, identify all persons having knowledge or such facts, and identify all documents relating to, referring to, describing or constituting any response hereto.

## ANSWER:

Subject to the Preliminary Statements above which are incorporated herein, the following is a list of secondary considerations that may support the non-obviousness of the at-issue claims of the '449 and '399 patents: commercial success, the failure of others to provide a solution to a long standing problem, the long felt need for the inventions disclosed in the '449 and '399 patents, future licenses to the '449 and '399 patents, the unexpected results of the inventions disclosed in the '449 and '399 patents, copying of the inventions disclosed in the '449 and '399 patents, skepticism about the merits of the inventions disclosed in the '449 and '399 patents, and skepticism about whether the inventions disclosed in the '449 and '399 patents would solve the problem presented.

Papst Licensing has not yet determined the remaining information requested in this Interrogatory. Accordingly, Papst Licensing plans to later amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the course of this action and at trial.

22

INTERROGATORY NO. 4

Identify all persons with or to whom Papst or any other person, has discussed a license, offered a license, negotiated a license or agreed to a license under the patents-in-suit (or any claim thereof), including, but not limited to, the identity of each person communicated with, the date of such communication, the financial terms of such discussion, offer, negotiation or license, the identity of all documents and things concerning each such discussion, offer, negotiation or license, and the identity of persons most knowledgeable about each such discussion, offer, negotiation or license.

**ANSWER:**

Subject to the Preliminary Statements above which are incorporated herein, non-privileged communications with third-parties will be provided under Rule 33(d). To the extent this Interrogatory requests details concerning each person, the produced documents will disclose details to the extent Papst Licensing is aware of them. Papst Licensing will identify those documents by Bates number in a letter after Papst Licensing produces the documents. Papst Licensing has discussed a potential license to either U.S. Patent No. 6,895,449 or U.S. Patent No. 6,470,399, or both, with the following entities: Acer, Hewlett Packard, Samsung, Canon, Sony, Casio, Olympus, Nikon, Konica, Fujifilm, Kodak, Sanyo, Pentax, Ricoh, BenQ, Kyocera, Panasonic, Polaroid, VIVITAR, PREMIER, HON HAI, Sony Ericsson, Flextronics Int'l Ltd., Nokia, LG Electronics, Matsushita, Toshiba, Character Group LLC, JVC, AIPTEK, DXG, Mustek, MPIO, Creative, Jungsoft, RIM, Centon, Cowon, and Astone.

INTERROGATORY NO. 5

State the art area and level of ordinary skill in the art pertaining to the patents-in-suit and state in detail all bases for each such contention.

ANSWER:

Subject to the Preliminary Statements above which are incorporated herein, Papst

23

Licensing has not yet determined the art area, the level of ordinary skill in the art, and all bases for any such contentions. Accordingly, Papst Licensing plans to later amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the course of this action and at trial.

<u>INTERROGATORY NO. 6</u>

Separately for each claim of the patents-in-suit that Papst asserts is infringed by Casio, describe in full and complete detail the facts concerning the conception and reduction to practice of the alleged invention. To be complete, your response should state the specific dates of such conception and reduction to practice, identify each person involved in such conception and reduction to practice, describe the location and circumstances of the conception and reduction to practice, and identify all documents and things tending to establish, refute or identify the dates, locations, individuals or circumstances sought in this interrogatory and any alleged corroboration.

<u>ANSWER:</u>

Subject to the Preliminary Statements above which are incorporated herein, non-privileged documents will be provided under Rule 33(d) relating to conception and reduction to practice information to the extent Papst Licensing is aware of it. Papst Licensing will identify those documents by Bates number in a letter after Papst Licensing produces the documents. Papst Licensing plans to later amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the course of this action and at trial.

Dated: June 11, 2007

AS TO PRELIMINARY STATEMENTS:

/s/ Joseph E. Cwik
Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza ● 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

Campbell Killefer (Bar No. 268433)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000
**Attorneys for Defendant/Counter-Plaintiff Papst Licensing GmbH & Co. KG**

25

## VERIFICATION UNDER 28 U.S.C. § 1746

The undersigned, hereby verifies, under penalty of perjury under the laws of the United States, that he has read the responses set forth above, and that he believes, on information and belief, including information known by him and information supplied by others, that the foregoing responses are true and correct.

Executed on: _____, 2007

_____
Authorized Representative of Papst
Licensing GmbH & Co. KG

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing DEFENDANT PAPST LICENSING GMBH & CO. KG'S SUPPLEMENTAL ANSWERS TO PLAINTIFF CASIO INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-6) was served on this the 11th day of June, 2007 upon the attorneys for Casio Inc. as follows:

**VIA E-MAIL**
J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
jkfee@morganlewis.com


**VIA E-MAIL**
Jeffrey Gold
Laura Krawczyk
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178
jgold@morganlewis.com
lkrawczyk@morganlewis.com

**VIA E-MAIL**
Scott D. Stimpson
The Law Office of Scott Stimpson
Suite 1102
445 Hamilton Ave.
White Plains, New York 10601
stimpsonlaw@gmail.com
**Counsel for Casio Inc. and Casio Computer Co., Ltd.**



/s/ Joseph E. Cwik
Attorney for Papst Licensing GmbH & Co.
KG



EXHIBIT A



**Casio EXILIM S500 Digital Still Camera**



**Casio Exilim EX-Z70 Digital Still Camera**

# Casio EXILIM Z600 Digital Still Camera

Casio EXILIM Z110 Digital Still Camera

**Casio EXILIM Z60 Digital Still Camera**



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------X

CASIO INC., 570 Mount Pleasant Avenue,
Dover, New Jersey 07801

                                  Plaintiff,

      v.

PAPST LICENSING GMBH & CO. KG,
Bahnhofstrasse 33, 78112 Georgen,
Germany

                              Defendant.

: **Civil Action No. 1:06 CV 01751**
: Judge: Gladys Kessler
: Magistrate Judge: Deborah A. Robinson
:
: Next status conference: 12/4/07

-------------------------------------------------------------------X

-------------------------------------------------------------------X

PAPST LICENSING GMBH & CO. KG,
Bahnhofstrasse 33, 78112 Georgen,
Germany

                            Counter-Plaintiff,

      v.

CASIO INC., 570 Mount Pleasant Avenue,
Dover, New Jersey 07801, and CASIO COMPUTER
CO., LTD., 6-2, Honmachi 1-chome, Shibuya-ku, Tokyo
151-8543, Japan

                        Counter-Defendants.

-------------------------------------------------------------------X

## [PROPOSED] ORDER

Upon consideration of the Motion of Plaintiff and Counter Defendant, Casio Inc. and

Counter-Defendant Casio Computer Co., Ltd. (collectively, "Casio") for Rule 37 Sanctions for Papst's

Non-Compliance with this Court's Orders, it is hereby

**ORDERED** that:

1) Papst pay all of Casio's costs and fees associated with this motion;

2) Papst is precluded from accusing any Casio products of infringement other than the six listed in its supplemental response to interrogatory 1;

3) Papst is precluded from asserting any claims other than the two identified in its supplemental response to interrogatory 1;

4) Papst must provide proper infringement analyses for the six products and two asserted claims;

5) Papst is precluded from advancing any claim interpretations or arguments different than those provided in its supplemental responses to Casio's first set of interrogatories;

6) Papst is precluded from asserting any secondary considerations;

7) Papst is precluded from pursuing any information related to licensing from Casio;

8) Papst is precluded from introducing any evidence or contesting Casio's position on the art area and level of ordinary skill in the art;

9) Papst must provide a complete response to interrogatory 6, but is precluded from asserting an invention date of these patents any earlier than the March 4, 1997 priority date for both patents; and

10) Papst is hereby warned that future misconduct or discovery violations will result in judgment against it.


DATED:_____                    _____
                                                    Deborah Robinson
                                                    United States Magistrate Judge