**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** | |
| _____ | **Misc. Action No. 07-493 (RMC)** **MDL Docket No. 1880** |
| **This Document Relates To:** | |
| **ALL CASES** | |

**NOTICE OF RE-FILING OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER ACTION FROM THE NORTHERN DISTRICT OF ILLINOIS TO THE DISTRICT OF THE DISTRICT OF COLUMBIA FOR TRIAL**

Pursuant to the Court's Second Practice and Procedure Order dated April 8, 2008, FUJIFILM Corporation and FUJIFILM U.S.A., Inc. (collectively, "Fujifilm") hereby give notice of the re-filing of their Motion to Dismiss or, in the Alternative, to Transfer which was originally filed in the United States District Court for the Northern District of Illinois on June 22, 2007.

As set forth in Fujifilm's motion and memorandum, the Complaint Papst filed in the Northern District of Illinois fails to allege infringing activities by Fujifilm or plead facts that support personal jurisdiction over Fujifilm in the Northern District of Illinois, in particular with respect to FUJIFILM Corporation.  Moreover, if the Complaint is not dismissed in its entirety, it should be transferred to this Court for trial where the actions brought by at least Casio, Fujifilm, Matsushita and JVC will be tried.

Dated: April 14, 2008                Respectfully submitted,


                                     s/ Steven J. Routh_____
                                     Steven J. Routh
                                     HOGAN & HARTSON L.L.P.
                                     555 13th Street, NW
                                     Washington, DC 20004-1109
                                     Telephone:  (202) 637-6472
                                     Facsimile:  (202) 637-5910
                                     sjrouth@hhlaw.com

                                     Attorney of Record for Fujifilm Corporation And
                                     Fujifilm U.S.A., Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April, 2008, I served the foregoing Notice Of Re-Filing Of Motion To Dismiss Or, In The Alternative, To Transfer Action From The Northern District Of Illinois To The District Of The District Of Columbia For Trial and accompanying Notice of Motion, Motion, Memorandum in Support and Exhibits on all counsel of record by filing it through the United States District Court for the District of Columbia Electronic Case Management System.

_s/ Steven J. Routh_____
Steven J. Routh

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

---

| | |
|---|---|
| PAPST LICENSING GmbH & Co. KG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07cv3401 |
| | ) |
| FUJIFILM Corporation, and | ) |
| FUJIFILM U.S.A., Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

### NOTICE OF MOTION

To:    Jerold B. Schnayer
       John L. Ambrogi
       WELSH & KATZ, LTD.
       120 South Riverside Plaza, 22nd Floor
       Chicago, IL  60606

**PLEASE TAKE NOTICE** that on Tuesday, July 10, 2007, at 9:00 a.m., we shall appear before the Honorable James Holderman, or any judge sitting in his stead, in Courtroom 2541 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois 60604, and shall then and there present *Motion to Dismiss or, in the Alternative, to Transfer this Action to the United States District Court for the District of Columbia,* a copy of which is being electronically served on all attorneys of record by means of the Court's CM/ECF system.

Dated: June 22, 2007                    Respectfully submitted,

                                   By:   s/ Matthew J. Gryzlo
                                         Matthew J. Gryzlo (mgryzlo@mwe.com)
                                         Brent A. Hawkins (bhawkins@mwe.com)
                                         McDERMOTT WILL & EMERY LLP
                                         227 West Monroe Street, Suite 4400
                                         Chicago, Illinois  60606
                                         (312) 372-2000
                                         (312) 984-7700 (facsimile)

                                         **Counsel for Defendants-Fujifilm
                                         Corporation, and Fujfilm U.S.A., Inc.**

**Of Counsel:**

HOGAN & HARTSON LLP
Steven J. Routh (Bar No. 376068)
Sten A. Jensen
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Telecopier: (202) 637-5910
E-Mail: sjrouth@hhlaw.com
sajensen@hhlaw.com

William H. Wright
Robert J. Benson
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4670
Telecopier: (310) 785-4601
E-Mail: whwright@hhlaw.com

John R. Inge
Shinjuku Center Building
46th Floor
25-1 Nishi-Shinjuku 1-Chome
Shinjuku-ku Tokyo, 163-0646
Japan
E-Mail: jringe@hhlaw.com

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that on June 22, 2007, the Notice of Motion was electronically filed with the Clerk of Court using the CM/ECF system, and notification of such filing was sent via the CM/ECF system, upon:

Jerold B. Schnayer (jbschnayer @welshkatz.com)
John L. Ambrogi (jambrogi@welshkatz.com)
WELSH & KATZ, LTD.
120 South Riverside Plaza, 22nd Floor
Chicago, IL  60606
Telephone:  (312) 655-1500
Facsimile:  (312) 655-1501

                       By: s/ Matthew J. Gryzlo

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PAPST LICENSING GmbH & Co. KG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07cv3401 |
| | ) |
| FUJIFILM Corporation, and | ) |
| FUJIFILM U.S.A., Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Pursuant to Rules 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a), defendants Fujifilm Corporation ("Fujifilm Japan") and Fujifilm U.S.A., Inc. ("Fujifilm U.S.A.") (collectively, "Fujifilm") hereby move to dismiss the Complaint filed by Papst Licensing GmbH & Co. KG ("Papst Licensing") or, in the alternative, to transfer this action to the United States District Court for the District of Columbia.

As set forth more fully in the accompanying memorandum, the District of Columbia is the presumptive venue, under 35 U.S.C. § 293, for patent actions involving foreign holders of U.S. patents, such as Papst Licensing, that have no registered agent for service of process in the United States. Pursuant to that statutory provision, an action already is pending in the United States District Court for the District of Columbia that involves precisely the same two patents asserted by Papst Licensing before this Court. *Casio, Inc. v. Papst Licensing*, 1:06-cv-01751-GK (USDC DC). Thus, this action is not the "first-filed" action on the patents-in-suit, and for that reason alone it should be transferred or dismissed. *See, e.g., Coleman Co. v. Black & Decker Corp.,* 1996 WL 41484 (N.D. Ill. 1996).

Moreover, on June 21, 2007, Fujifilm filed a declaratory judgment Complaint against Papst Licensing in the District of Columbia on the same two patents-in-suit. While Fujifilm's District of Columbia Complaint is well-pleaded in all respects, the bare three-page Complaint filed by Papst Licensing in this Court is defective on its face. In particular, the handful of substantive paragraphs in the Papst Licensing Complaint do not actually allege infringement of the patents-in-suit by Fujifilm, or even a good-faith belief based on reasonable investigation that such infringement has occurred. Rather, Papst Licensing has merely alleged that it hopes "a reasonable opportunity for further investigation or discovery" will "provide evidentiary support" that Fujifilm has committed acts of infringement or has induced others to do so. Because such paper-thin allegations are susceptible to a motion to dismiss under Rule 12(b)(6), the declaratory judgment Complaint filed by Fujifilm in the District of Columbia should also be given priority over the Papst Licensing Complaint under the "first-to-file" doctrine.

Transfer or dismissal of this action is further supported by the relevant equitable considerations, including the interests of justice and the convenience of the parties and witnesses. A transfer also would avoid the prospect of inconsistency between the rulings of this Court and the Casio court in the District of Columbia on issues of claim construction, invalidity, and unenforceability.

Finally, as indicated above, the Complaint filed by Papst Licensing in this Court is defective and should be dismissed because it fails to allege actual infringing activities by Fujifilm, and therefore fails to state a claim upon which relief may be granted. The Complaint further should be dismissed because it fails to identify any specific Fujifilm products that Papst Licensing alleges infringe the patents-in-suit. Moreover, Papst has failed to plead facts that support personal jurisdiction over Fujifilm, in particular with respect to Fujifilm Japan.

For these reasons and on the additional grounds set forth in detail in the attached

memorandum of points and authorities and exhibits filed herewith, Fujifilm moves to dismiss or

transfer this action pursuant to Rules 12 (b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of

Civil Procedure and 28 U.S.C. § 1404(a).

Dated: June 22, 2007

**Respectfully submitted,**

By:   s/ Matthew J. Gryzlo
      Matthew J. Gryzlo (mgryzlo@mwe.com)
      Brent A. Hawkins (bhawkins@mwe.com)
      McDERMOTT WILL & EMERY LLP
      227 West Monroe Street, Suite 4400
      Chicago, Illinois  60606
      (312) 372-2000
      (312) 984-7700 (facsimile)

      **Counsel for Defendants-Fujifilm
      Corporation, and Fujifilm U.S.A., Inc.**

**Of Counsel:**

HOGAN & HARTSON LLP
Steven J. Routh (Bar No. 376068)
Sten A. Jensen
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Telecopier: (202) 637-5910
E-Mail: sjrouth@hhlaw.com
sajensen@hhlaw.com

William H. Wright
Robert J. Benson
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4670
Telecopier: (310) 785-4601
E-Mail: whwright@hhlaw.com

John R. Inge
Shinjuku Center Building
46th Floor
25-1 Nishi-Shinjuku 1-Chome
Shinjuku-ku Tokyo, 163-0646
Japan
E-Mail: jringe@hhlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 22, 2007, the Motion To Dismiss Or, In The Alternative, To Transfer This Action To The United States District Court For The District Of Columbia was electronically filed with the Clerk of Court using the CM/ECF system, and notification of such filing was sent via the CM/ECF system, upon:

Jerold B. Schnayer (jbschnayer @welshkatz.com)
John L. Ambrogi (jambrogi@welshkatz.com)
WELSH & KATZ, LTD.
120 South Riverside Plaza, 22nd Floor
Chicago, IL  60606
Telephone:  (312) 655-1500
Facsimile:  (312) 655-1501

By: s/ Matthew J. Gryzlo

CHI99 4844431-1.080246.0011

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PAPST LICENSING GmbH & Co. KG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07cv3401 |
| | ) |
| FUJIFILM Corporation, and | ) |
| FUJIFILM U.S.A., Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Nine months before it filed the above-captioned action, plaintiff Papst Licensing GMbH ("Papst Licensing") was sued by Casio, Inc. in the District of Columbia on the same two patents now asserted against defendants Fujifilm Corporation ("Fujifilm Japan") and Fujifilm U.S.A., Inc. ("Fujifilm U.S.A.") (collectively, "Fujifilm"). *See Casio, Inc. v. Papst Licensing*, 1:06-cv-01751-GK (USDC DC) ("Casio Action"). The Casio Action involves issues relating to claim construction, infringement, and validity of U.S. Patent No. 6,470,399 (the '399 patent) and U.S. Patent No.6,895,449 (the '449 patent), just as this action will involve those same issues. More recently, Fujifilm filed a declaratory judgment action in the District of Columbia ("Fujifilm DJ Action) raising the same two patents and same set of issues.

Under the "first-to-file" rule endorsed by this Court and the Federal Circuit, the existence of the Casio Action and the Fujifilm DJ Action in the District of Columbia support the dismissal of this "second-filed" case. Alternatively, this case should be transferred to the U.S. District Court for the District of Columbia for consideration in connection with those two "first-filed

cases pending there.  Moreover, as described below, considerations of judicial economy, the convenience of parties and witnesses, forum shopping, and the lack of any meaningful connection between this action and the Northern District of Illinois further support the dismissal or transfer of this action.  Accordingly, Fujifilm moves to dismiss this lawsuit under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, for transfer pursuant to 28 U.S.C. § 1404(a).

The Papst Complaint also is deficient on its face and should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6).  Although it purports to assert a claim of patent infringement, the Complaint does not contain any allegation that Fujifilm is in fact infringing the patents-in-suit.  Instead, the Complaint alleges merely that "reasonable opportunity for further investigation or discovery is likely to provide evidentiary support" for a claim of infringement.  Complaint ¶ 9.  The Complaint further is defective because it fails to identify any specific accused products made or sold by Fujifilm.  And, the Complaint also fails to allege sufficient facts to establish personal jurisdiction over Fujifilm, particularly with respect to Fujifilm Japan.  While Fujifilm acknowledges that the Federal Rules allow notice pleading, the Papst Complaint fails to satisfy even that threshold standard, and, accordingly, it should be dismissed.

## **Factual Background**

Papst Licensing has sent numerous "warning letters" to companies that manufacture or sell digital cameras threatening them with litigation if they did not agree to license the '399 and '449 patents.   In response, on or about October 16, 2006, Casio filed a Complaint against Papst Licensing in the United States District Court for the District of Columbia, pursuant to 35 U.S.C. § 293, seeking a declaratory judgment that the '399 and '449 patents are invalid and not infringed.  *See* Exhibit A.  A Scheduling Order has been entered in the Casio Action, and discovery is under way.  Significantly, on May 31, 2007, Magistrate Judge Robinson in the

District of Columbia sanctioned Papst Licensing for failing to comply with its discovery

obligations. *See* Exhibit B at 25-28. Thus, while Papst Licensing already is a party to litigation

in the District of Columbia involving the same patents-in-suit in the instant action, it apparently

has decided that the District of Columbia is no longer a forum to its liking.

On June 15, 2007, Papst Licensing filed the instant action against Fujifilm in this Court.

The patents-in-suit in this case are the same two patents that are at issue in the Casio Action

pending in the District of Columbia.

On June 21, 2007, Fujifilm filed a declaratory judgment action in the United States

District Court for the District of Columbia. *See* Exhibit C. In that Complaint, Fujifilm seeks

relief that includes the relief sought by Casio in the Casio Action. Specifically, Fujifilm seeks a

declaration that the '399 and '449 patents are invalid and not infringed.

<u>Argument</u>

I. **THIS ACTION SHOULD BE DISMISSED OR TRANSFERRED TO THE DISTRICT OF COLUMBIA**

A. **This Case Should Be Dismissed Or Transferred To The District Of Columbia For Consolidation With The First-Filed Casio Action**

Because the Casio Action is the first-filed action seeking to adjudicate the validity and

other issues relating to the '399 and '449 patents, the "first-to-file" rule supports dismissal of this

action or transfer to the District of Columbia.

> In resolving venue disputes and issues of appropriate forum where two
> actions involve closely related patent infringement questions, the Federal
> Circuit has strongly endorsed the 'first-to-file' doctrine.

*Vanguard Products Group, Inc. v. Protex Int'l Corp.,* 2006 WL 695700, *2 (N.D. Ill. 2006). The

"first-to-file rule" provides that "if actions involving nearly identical parties and issues have been

filed in two different courts, the court in which the first suit was filed should generally proceed to

judgment." *Id.*

In circumstances such as those now before this Court, the first-to-file rule weighs in favor of dismissing the second-filed action for improper venue under Federal Rule of Civil Procedure 12(b)(3).  *See, e.g., Vanguard* (dismissing infringement action in favor of first-filed declaratory judgment action); *Design Automotive Group, Inc. v. Lund Indus., Inc.,* 1996 WL 377063 (N.D. Ill. 1996) (same).  Alternatively, the second-filed action may be transferred under 28 U.S.C. § 1404(a).  *See, e.g., Bowe, Bell & Howell Co. v. MidSouth Technologies, LLC,* 2005 WL 1651167 (N.D. Ill. 2005) (electing to transfer rather than dismiss).  The "first-to file" rule thus strongly favors dismissal or transfer of the Complaint filed by Papst Licensing in this Court, because the previously-filed Casio Action involves identical issues and was filed nine months ago.[1]

This Court's decision in *Coleman Co. v. Black & Decker Corp.,* 1996 WL 41484 (N.D. Ill. 1996) is directly on point.  In September and October of 1995, Black & Decker sued several defendants for patent infringement in the Eastern District of Virginia.  Subsequently, in December 1995, Coleman – which was not a party to the Virginia action – brought a declaratory judgment action against Black & Decker in Illinois.  Under those facts, this Court granted Black & Decker's motion to transfer the Illinois action to Virginia, even though Coleman was not a party to the first-filed Virginia action.  Although the Illinois action was the first action filed between Coleman and Black & Decker, "the first case filed concerning the validity of the patents-in-suit was in Virginia."  *Id.*  Accordingly, this Court held that "the pre-existing Virginia litigation weighs heavily against maintaining this case in this district."  *See also Abbott Laboratories v. Selfcare, Inc.,* 1999 WL 162805 (N.D. Ill. 1999) (granting transfer to Massachusetts, venue of first-filed action, where "the two actions, even though directed to different patents, involve the same parties and substantially similar technology").

---

[1]     Although Fujifilm has yet to answer or file counterclaims in this Court, it has asserted invalidity in the Fujifilm DJ Action and will do so in this action as well if it is not dismissed.

As in *Coleman*, the Casio Action was filed first, and even though it involves different accused infringers (Casio rather than Fujifilm), it seeks adjudication of the same issues of law and fact. The invalidity of the Papst '399 and '449 patents is at issue in both cases. Allowing both cases to proceed simultaneously would give rise to the "possibility of inconsistent judgments and patent interpretations." *Coleman,* 1996 WL 41484. Accordingly, given that the Casio Action involves the same issues of patent invalidity, the "first-to-file" rule weighs heavily in favor of dismissal of this action or, alternatively, transfer to the District of Columbia.

**B.     The Declaratory Judgment Action Filed By Fujifilm In The District Of Columbia Should Also Be Considered A "First-Filed" Action**

As set forth below in Section II, the Complaint filed by Papst Licensing in this action is fatally defective and dismissible under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). The Complaint does not adequately allege that Fujifilm has infringed the patents-in-suit, it does not identify any specific accused products, and it fails to allege facts establishing personal jurisdiction over Fujifilm Japan. Thus, the declaratory judgment Complaint filed by Fujifilm in the District of Columbia is the first-filed, *non-defective* action between Fujifilm and Papst Licensing, and as such it should be given priority over the instant action. It is well-established that the first-filed action should be preferred regardless of whether it is a declaratory judgment action. *Vanguard,* at *2; *accord, e.g., Bowe, Bell & Howell Co. v. MidSouth Technologies, LLC,* 2005 WL 1651167 (N.D. Ill. 2005). Thus, the Fujifilm DJ Action also is a first-filed action that supports dismissal of this action or transfer to the District of Columbia.

**C.     Equitable Considerations Further Support Dismissal Of This Action Or Transfer To The District Of Columbia**

The strong presumption that the instant case should be dismissed or transferred to the District of Columbia, in favor of the first-filed Casio Action and Fujifilm DJ Action, is reinforced by the following equitable considerations: "(1) jurisdiction over the parties, (2)

5

judicial efficiencies and economies, (3) conveniences to the parties, (4) availability and convenience of witnesses, and (5) the extent to which the declaratory judgment action filed in another forum is anticipatory and motivated by forum shopping." *Vanguard,* 2006 WL 695700 at *4. Those same considerations also support transfer of this action under 28 U.S.C. § 1404(a). *Holley Performance Products, Inc. v. Barry Grant, Inc.* 2004 WL 3119017 at * 5 (N.D. Ill. 2004) ("The factors the court considers when deciding whether to dismiss an … action in favor of litigation pending in a different district are the same as the factors considered when deciding to transfer venue to another district."). *Accord, e.g., Abbott,* 1999 WL 162805 at * 1; *Law Bulletin Publ'g, Co. v. LRP Publications, Inc.,* 992 F.Supp. 1014, 1017 (N.D.Ill.1998).

The relevant equitable considerations thus provide further support for relief requested in the motion. Moreover, even if this Court were to deem the Papst Complaint to be the "first-filed" action – which it should not – the aforementioned equitable considerations would still support transfer of this case to the District of Columbia. *Abbott,* 1999 WL 162805 at * 3, *citing Serco Servs. Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1039 (Fed.Cir.1995).

## 1.    The Interests Of Justice Support Transfer

The most important factor that governs whether to dismiss or transfer a duplicative action is "the interests of justice." The interests of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Abbott,* 1999 WL 162805 at * 1. "The interest of justice analysis focuses on efficient functioning of the courts, rather than the private interests of the litigants." *Holley,* 2004 WL 3119017 at * 7 (*citing TIG Ins. Co. v. Brightly Galvanized Products, Inc.,* 911 F.Supp. 344, 346 (N.D.Ill.1996)). "In determining the interests of justice, the court considers the possibility of consolidation with related litigation." *Holley,* 2004 WL 3119017 at * 7. "Public interest factors or interests of

justice 'relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale.'" *Technical Concepts L.P. v. Zurn Indus., Inc.,* 2002 WL 31433408 at * 2 (N.D. Ill. 2002) (*citing, VonHoldt v. Husky Injecting Molding System Ltd.,* 887 F.Supp. 185, 188 (N.D.Ill.1995)).

In *Coleman,* this Court found the "interests of justice" persuasive in its determination to transfer an infringement action to Virginia, even though the previously-filed action involved different accused infringers. The Court reasoned:

> The interests of justice clearly favor Virginia over this forum. The '206 patent's validity and scope has been at issue in the Eastern District of Virginia since September 1995. Common questions of fact and law are involved. … Thus, it is readily apparent that there is a possibility of inconsistent judgments and patent interpretations if this case is not transferred to the Eastern District of Virginia. With or without Coleman, the Virginia litigation will continue … Thus, the feasibility of consolidating the cases in Virginia strongly favors transferring venue. [citations omitted] Because scarce judicial resources may only be conserved by transferring this case to the Eastern District of Virginia, the interests of justice clearly weigh [in favor of] Virginia."

*Coleman Co. v. Black & Decker Corp.,* 1996 WL 41484 (N.D. Ill. 1996).

Similarly, transfer was ordered by this Court in *Abbott Laboratories v. Selfcare, Inc.,* 1999 WL 162805 (N.D. Ill. 1999), even though the previously-filed action did not involve the same patents, because the two cases were sufficiently related that it would be judicially efficient to consolidate them. The *Abbott* Court's reasoning supports dismissal or transfer of this case:

> "When a case is transferred to a district in which a related case is pending, the expectation is that the two cases will be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, if practicable. *Waller v. Burlington N. R.R. Co.,* 650 F.Supp. 988, 991 (N.D.Ill.1987). Consolidation not only conserves scarce judicial resources, but also reduces the resources ultimately expended by the litigants. *Keppen v. Burlington N. R.R. Co.,* 749 F.Supp. 181, 183-84 (N.D.Ill.1990). By preventing duplicative efforts on the part of both the courts and the parties, transfer and subsequent consolidation serve the interests of justice within the meaning of the venue transfer statute. As the Supreme Court has acknowledged, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the

wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26 (1960). Transfer of venue also curbs the risk of inconsistent judgments. *Countryman v. Stein Roe & Farnham,* 681 F.Supp. 479, 484 (N.D.Ill.1987). These concerns have led this district to adopt "a strong policy in favor of transferring a case to the district where a related action is pending." *Keppen,* 749 F.Supp. at 184.

The same factors found persuasive by this Court in *Coleman* and *Abbott* are equally persuasive here.  The Casio Action has been pending for nine months longer than the present case.  Accordingly, the Court in the Casio Action is likely to consider and issue Markman rulings construing the '399 and '449 patents prior to a Markman hearing in this case.  Proceeding with both cases simultaneously also presents the possibility of inconsistent discovery rulings and inconsistent determinations on the merits on common issues such as invalidity.  Moreover, there is an enormous duplication of judicial time and effort involved in  adjudicating identical issues of patent validity, claim construction, and possibly infringement, in two different Courts.  Such a duplication of effort, combined with the potential for inconsistent results, weighs strongly in favor of transferring this case to the District of Columbia.

### 2.    The Convenience Of Parties And Witnesses Supports Transfer

It is well-settled that a "plaintiff's choice of forum ha[s] reduced value where the forum lacks any significant contact with the underlying cause of action."  *Hotel Constructors, Inc. v. Seagrave Corp.,* 543 F.Supp. 1048, 1050 (N.D. Ill. 1982) (citing *Cunningham v. Cunningham,* 477 F.Supp. 632, 634 (N.D. Ill. 1979)).  Patent infringement cases are centered around the activities of the accused infringer, not the patent holder.  *See Gen 17, Inc. v. Sun Microsystems, Inc.,* 953 F.Supp. 240, 243 (N.D. Ill. 1997).  "[W]here the plaintiff's choice is not its resident forum, the chosen forum is entitled to less deference" and becomes "only one of many factors the court considers."  *Holley,* 2004 WL 3119017 at * 6; *Bryant v. ITT Corp.,* 48 F.Supp.2d 829, 832 (N.D.Ill.1999); *Hotel Constructors,* 543 F.Supp. at 1050.

According to its Complaint, "Papst Licensing is a company existing under the laws of the Federal Republic of Germany with its principal place of business [in] Germany." Complaint ¶ 3 2/. It apparently chose the Northern District of Illinois for the convenience of its counsel, rather than for that of any party or witness. Convenience of counsel, however, is entitled to *no weight*. *See, e.g., Wolford v. Amer. Home Prods. Corp.,* 948 F. Supp. 47, 50 (N.D. Ill. 1996).

The only connection with Illinois alleged by Papst Licensing is that some, unidentified Fujifilm products are allegedly sold here. None of the manufacturing or design work is alleged to occur in Illinois. Moreover, as Papst admits, there is nothing unique about Fujifilm having a sales presence in Illinois, because Fujifilm has an "on-going business *throughout* the United States." Complaint ¶ 4 (emphasis added). When a product is distributed across the United States, the fact that some entities sell the product in Illinois is insufficient to establish a substantial connection to this forum when considering a motion to transfer. "[S]ales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Technical Concepts,* 2002 WL 31433408 at * 3, *quoting, Energaire Corp. v. E.S. Originals, Inc.,* 1999 U.S. Dist. LEXIS 17304, at * 7 (N.D.Ill. Oct. 27, 1999), and *Anchor Wall Systems, Inc. v. R & D Concrete Prods., Inc.,* 55 F.Supp.2d 871, 874 (N.D.Ill.1999).

The convenience of witnesses and parties weighs in favor of the District of Columbia. Among other things, Fujfilm U.S.A. is a New York corporation and its principal place of business is in Valhalla, New York, which is closer and more easily accessible to the District of Columbia than Chicago.

---

2/       It is beyond question that Papst Licensing is subject to the jurisdiction of the District Court for the District of Columbia. *See* 35 U.S.C. § 293. In contrast, as discussed in Section II.C., *infra.*, the Complaint in this action fails to allege facts sufficient to establish personal jurisdiction over Fujifilm Japan and thus should be dismissed as to that defendant. That fact also weighs in favor of dismissing or transferring this action in favor of the declaratory judgment action now pending in the District of Columbia. *Abbott,* 1999 WL 162805 at * 3

Again, the facts of this case are highly analogous to *Coleman.* In *Coleman,* this Court transferred an action to Virginia even though the defendant had sales offices in the Chicago area and solicited customers in Chicago. The parties were not Illinois corporations, they did not conduct any manufacturing or design activities in Illinois, there were no significant witnesses within the Court's subpoena power, and Illinois lacked any "significant" connection with the case. "Limited sales activities," without more, did not warrant keeping the case in Chicago. Moreover, the defendant's facilities in Connecticut and North Carolina were closer to the transferee forum (Virginia) that to Illinois. *Coleman,* 1996 WL 41484.

Accordingly, on balance, the convenience of the parties and witnesses supports dismissal of this action or transfer to the District of Columbia.

### 3. Papst Licensing's Apparent Forum Shopping Also Supports Transfer

In the Casio Action, Magistrate Judge Robinson recently granted Casio's motion for sanctions against Papst for failing to provide discovery. Although Papst Licensing's request for a clarification of that sanctions order remains pending, it appears that the sanctions imposed on Papst Licensing may include waiver of certain privileges and protections over documents requested by Casio in discovery as well as attorneys' fees and costs associated with Casio's motion. With that recent set-back in the Casio Action, due to Papst Licensing's own misconduct, it appears that Papst Licensing has decided to look for other district courts in which to seek resolution of disputes relating to the patents-in-suit. Particularly in light of the lack of any meaningful connection between the Northern District of Illinois and Papst Licensing, Fujifilm, and/or the subject matter of the instant action, it is apparent that Papst Licensing is shopping for a more favorable forum than the District of Columbia in which to press its claims. Such forum shopping should not be condoned.

## II.     THE COMPLAINT ALSO SHOULD BE DISMISSED UNDER FED. R. CIV P. 12(b)(2) and 12(b)(6)

### A.     The Complaint Should Be Dismissed For Failure To State A Claim

In ruling on a Rule 12(b)(6) motion, a Court should consider only well-pleaded facts. *Chisholm v. Foothill Capital Corp.,* 940 F. Supp. 1273, 1280 (N.D. Ill. 1996). The Court is "not obliged to accept mere conclusory allegations, without any supporting facts, as true." *Id.* (*citing Tamari v. Backe & Co. (Lebanon) S.A.L.*, 565 F.2d 1194, 1199 (7th Cir. 1977)). Indeed, the Supreme Court recently recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (May 21, 2007). Accordingly, a plaintiff cannot avoid dismissal "simply by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims." *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

The Complaint filed by Papst Licensing in this Court fails to satisfy even notice pleading standards. Indeed, it does not allege any act of patent infringement. Instead, it alleges only that "[a] reasonable opportunity for further investigation or discovery is likely to provide evidentiary support [sic] the Fujifilm defendants have made, used, sold or offered to sell to numerous customers in the United States or have imported into the United States digital cameras which infringe the Patents in Suit." Complaint ¶ 9. It contains similarly vague allegations with respect to contributory, induced and willful infringement. *See id.* ¶¶ 10-11. Thus, the allegations do not even support a conclusion that Papst Licensing has conducted an investigation of available facts sufficient to support a good faith belief that Fujifilm has infringed the patents-in-suit.

Indeed, if any reasonable inference can be drawn from the highly conclusory allegations of the Complaint, it is that Papst Licensing has not conducted a reasonable investigation or

analysis of its claims, because it has alleged merely that "further investigation or discovery" might lead to evidence to support a claim of infringement.  If any such "evidence" had been identified to date, or Papst Licensing undoubtedly would have alleged at least some fact relating to infringement of the patents-in-suit.  Because the Complaint does nothing more than state a "suspicion [of] a legally cognizable right of action," it must be dismissed under Rule 12(b)(6).  *See Bell Atlantic*, 127 S. Ct. at 1965 (quoting 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004)).

## B.  The Complaint Should Be Dismissed For Failure To Identify Accused Products

It is well-established that "[f]or fair notice to be given, a complaint must at least include the operative facts upon which plaintiff bases his claim." *Kyle v. Morton High Sch.,* 144 F.3d 448, 455 (7th Cir. 1998) (internal quotation marks omitted)).  In the context of a patent infringement complaint, a plaintiff must either identify the specific products it is accusing of infringement or provide a "limiting parameter" that would allow defendant to determine which of its products are accused products.  *See, e.g., Bay Industries v. Tru-Arx Mfg., L.L.C.*, 2006 WL 3469599 (E.D. Wis. 2006); *Agilent Tech., Inc. v. Micromuse, Inc.,* 2004 WL 2346152 (S.D.N.Y. 2004); *In re Papst Licensing GmbH Patent Litigation*, 2001 WL 179926 (E.D. La. 2001).  The reason for this rule is that a defendant "should not have to guess which of its products infringe nor guess how its products might fall within plaintiff's interpretation of the claims of the patent". *Bay Industries,* 2006 WL 3469599 at *2.  *See also eSoft, Inc. v. Astaro Corp.*, 2006 U.S. Dist. LEXIS 52336, *4 (D. Colo. 2006) ("Defendant cannot realistically be expected to frame a responsive pleading without risk of prejudice in the absence of any indication as to which of its products are accused.").

The Complaint before this Court does not identify any specific accused products; instead, it broadly asserts a potential claim against certain unnamed Fujifilm "digital cameras." Fujifilm has manufactured and sold dozens of different digital camera models with different types of operating systems, features, and components. The Complaint does not identify even a single Fujifilm digital camera model that is accused of infringement. Nor does it provide any "limiting parameter" that would enable Fujifilm to determine which products Papst Licensing is accusing. For that reason as well, the Complaint is defective and should be dismissed.

### C.   The Complaint Fails to Plead Facts Establishing That This Court Has Personal Jurisdiction Over Fujifilm

Under Rule 12(b)(2), a Complaint must be dismissed if it fails to allege facts sufficient to establish that the Court has jurisdiction over a defendant. This Court conducts a two-step inquiry to evaluate whether a complaint adequately pleads personal jurisdiction: (1) it determines whether plaintiff has pled facts demonstrating that defendants are subject to jurisdiction under Illinois' long-arm statute; and (2) it considers whether plaintiff has pled facts demonstrating that the exercise of jurisdiction comports with due process requirements. *See Brooks v. Bekins Van Lines, LLC*, 2006 WL 3524426 (N.D. Ill. 2006). Plaintiff bears the burden of making a prima facie showing that the complaint satisfies the statutory and constitutional requirements for personal jurisdiction. *See Vandeveld v. Christoph*, 877 F. Supp. 1160, 1163 (N.D. Ill. 1995).

The Complaint fails to establish personal jurisdiction over defendants in this case. With respect to Fujifilm U.S.A., plaintiff has alleged only that it has a sales office in Hanover Park, Illinois. Complaint ¶ 4. The Complaint contains no allegations regarding the involvement of this sales office in the conduct that is alleged to be infringing. Likewise, there are no allegations that would demonstrate that this office engages in the type of continuous and systematic contacts with this forum that would support the exercise of general jurisdiction over Fujifilm U.S.A.

The Complaint even more clearly fails to allege facts sufficient to support this Court's exercise of personal jurisdiction over Fujifilm Japan. Plaintiff alleges only that Fujifilm is a "multinational corporation having an established and on-going business throughout the United States." Complaint ¶ 4. That allegation sets forth no facts relating to Fujifilm Japan's contacts with this forum. Moreover, courts in Seventh Circuit have repeatedly held that this type of conclusory allegation is insufficient to support the exercise of personal jurisdiction over a non-resident defendant. *See, e.g., Gentry v. Environmental Recycling, Inc.*, No. 1:05-CV-0507-SEB-VSS, 2006 WL 3198025 (S.D. Ind. March 6, 2006); *Wasendorf v. DBH Brokerhaus AG*, No. 04-C-1904, 2004 WL 2872763 (N.D.Ill. Dec. 13, 2004); *Sanderson v. Spectrum Labs, Inc.*, 227, F.Supp.2d 1001, 1013 (N.D. Ind. 2000); *Search Force, Inc. v. Dataforce Intern., Inc.*, 112 F.Supp.2d 771, 774 (S.D.Ind.2000); *Meltzer v. McGeorge School of Law*, No. 87 C 2542 1997 WL 28263 (N.D. Ill. Nov. 16, 1987); *see also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997) ("mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous' ").

To the extent the Complaint alleges the existence of a "Fujifilm" sales office in Hanover Park, Illinois, Complaint ¶ 4, that allegation also is insufficient to establish personal jurisdiction over Fujifilm Japan. As the Complaint itself acknowledges, Fujifilm U.S.A. and Fujifilm Japan are separate corporations. The sales and distribution center located in Hanover Park, Illinois is an office of Fujifilm U.S.A., not Fujifilm Japan. *See* Exhibit D, Declaration of Jonathan E. File ¶¶ 5-6 (submitted solely in support of Fujifilm's motion under Rule 12(b)(2)). The law is clear that personal jurisdiction over a parent corporation cannot be premised merely on the conduct of a subsidiary. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 540 (7th Cir.1998)). *Accord, e.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773,

14

788 n.17 (7th Cir. 2003); *Joseph P. Caulfield & Associates, Inc. v. Litho Productions, Inc.*, 155 F.3d 883, 887 (7th Cir. 1998); *A.M Mfg. Co., Inc. v . J.C. Ford Co.,* 2006 WL 1987825 (N.D. Ill. 2006); *Faust Printing, Inc. v. Man Capital Corp.,* 2006 WL 1719532 (N.D. Ill. 2006).

Because the Complaint contains no factual allegations regarding the contacts of Fujifilm Japan with this forum, and because the contacts of Fujifilm U.S.A. cannot, as a matter of law, be attributed to Fujifilm Japan, the Complaint is deficient and should be dismissed because it does not adequately plead personal jurisdiction over Fuji Japan.[3/]

## Conclusion

For the foregoing reasons, the Court should dismiss the Complaint for improper venue under Rule 12(b)(3), for failure to state a claim as required by Rule 12(b)(6), and for failure to allege facts establishing personal jurisdiction under Rule 12(b)(2). In the alternative, the Court should transfer this case to the United States District Court for the District of Columbia where there are actions already pending that involve the same patents asserted in this action.

Dated: June 22, 2007

Respectfully submitted,

By: s/ Matthew J. Gryzlo
Matthew J. Gryzlo (mgryzlo@mwe.com)
Brent A. Hawkins (bhawkins@mwe.com)
McDERMOTT WILL & EMERY LLP
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606
(312) 372-2000
(312) 984-7700 (facsimile)

**Counsel for Defendants-Fujifilm Corporation, and Fujfilm U.S.A., Inc.**

---

[3/] The Complaint is defective for the additional reason that it does not allege that either of the Fujifilm defendants has committed any acts of infringement in this judicial district under 28 U.S.C. § 1400(b).

**Of Counsel:**

HOGAN & HARTSON LLP
Steven J. Routh (Bar No. 376068)
Sten A. Jensen
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Telecopier: (202) 637-5910
E-Mail: sjrouth@hhlaw.com
sajensen@hhlaw.com

William H. Wright
Robert J. Benson
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4670
Telecopier: (310) 785-4601
E-Mail: whwright@hhlaw.com

John R. Inge
Shinjuku Center Building
46th Floor
25-1 Nishi-Shinjuku 1-Chome
Shinjuku-ku Tokyo, 163-0646
Japan
E-Mail: jringe@hhlaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 22, 2007, the Memorandum Of Points And Authorities In Support Of Defendants' Motion To Dismiss Or, In The Alternative, To Transfer This Action To The United States District Court For The District Of Columbia was electronically filed with the Clerk of Court using the CM/ECF system, and notification of such filing was sent via the CM/ECF system, upon:

Jerold B. Schnayer (jbschnayer @welshkatz.com)
John L. Ambrogi (jambrogi@welshkatz.com)
WELSH & KATZ, LTD.
120 South Riverside Plaza, 22nd Floor
Chicago, IL  60606
Telephone:  (312) 655-1500
Facsimile:  (312) 655-1501

By: s/ Matthew J. Gryzlo

CHI99 4844442-1.080246.0011

FILED

OCT 16 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                          :
CASIO INC.
570 Mount Pleasant Avenue                 :
Dover, New Jersey  07801
                                          :
           Plaintiff,
                                          :
     -against-
                                          :
PAPST LICENSING GMBH & CO. KG
Bahnhofstr. 33                            :
78112 St. Georgen
Germany                                   :

           Defendant.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**COMPLAINT**

CASE NUMBER  1:06CV01751

JUDGE: Gladys Kessler

DECK TYPE: General Civil

DATE STAMP: 10/16/2006

JURY ACTION

Plaintiff Casio, Inc. ("Casio"), for its Complaint against Defendant Papst Licensing GmbH & Co. KG ("Papst Licensing"), alleges and states as follows:

## NATURE OF ACTION

1.    This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the patent laws of the United States, Title 35 U.S.C. § 1 et seq.

## THE PARTIES

2.    Casio is a New York corporation in the business of, among other things, selling electronic goods, with its principal place of business located at 570 Mount Pleasant Avenue, Dover, New Jersey 07801.

3.    On information and belief, Defendant Papst Licensing is a German partnership in the business of licensing, enforcing, and commercializing U.S. Patents and other forms of

1-NY/2092959.4

intellectual property, with its principal place of business located at Bahnhofstrasse 33, 78112 St. Georgen, Germany.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

5.    This Court has personal jurisdiction over Papst Licensing pursuant to 35 U.S.C. § 293.

6.    Venue is proper in this judicial district at least pursuant to 28 U.S.C. § 1391(c).

## GENERAL ALLEGATIONS

7.    Casio imports, markets and sells electronic goods in the United States including digital cameras.

8.    On information and belief, Papst Licensing owns various United States patents, has filed numerous patent infringement suits in the United States to enforce its rights under those patents, and has negotiated numerous license agreements with a variety of United States companies relating to those patent rights.

9.    Papst Licensing claims to be the owner of U.S. Patent Nos. 6,895,449 ("the '449 patent") and 6,470,399 ("the '399 patent").

10.    Papst Licensing has accused Casio of infringing upon both the '449 and '399 patents. For example, in a letter dated March 14, 2006, Papst Licensing accused Casio of infringing the '449 and '399 patents.  Papst Licensing has repeated its accusations on numerous occasions since that time.

1-NY/2092959.4

11.     Casio responded with a detailed analysis of why it does not infringe the '449 patent or the '399 patent.

12.     Notwithstanding, Papst Licensing demanded, among other things, that Casio pay it royalties for the use of the '449 and '399 patents in Casio's digital cameras that have been sold in the United States.  Papst Licensing offered to license the '449 and '399 patents to Casio.  Casio has rejected Papst Licensing's demands for payment of royalties and Papst Licensing's offer to license its '449 and '399 patents.

13.     Papst Licensing has asserted and continues to assert, that the '449 and '399 patents are infringed by Casio.

## COUNT ONE

### DECLARATORY JUDGMENT OF
### NON-INFRINGEMENT AND INVALIDITY
### OF THE '449 PATENT

14.     Casio repeats and realleges the averments of paragraphs 1-13 as if fully set forth herein.

15.     There is an actual controversy between Casio and Papst as to the infringement and the validity of the '449 patent.

16.     Casio has not infringed and does not infringe the '449 patent.

17.     The '449 patent is invalid for failure to comply with the patent laws of the United States, including the requirements of 35 U.S.C. §§ 102, 103, and/or 112.

## COUNT TWO

### DECLARATORY JUDGMENT OF
### NON-INFRINGEMENT AND INVALIDITY
### OF THE '399 PATENT

18.     Casio repeats and realleges the averments of paragraphs 1-17 as if fully set forth herein.

19.     There is an actual controversy between Casio and Papst as to the infringement and the

validity of the '399 patent.

20.     Casio has not infringed and does not infringe the '399 patent.

21.     The '399 patent is invalid for failure to comply with the patent laws of the United States,

including the requirements of 35 U.S.C. §§ 102, 103, and/or 112.

### JURY DEMAND

22.     Casio demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff Casio Inc. respectfully requests that the Court enter judgment

against Papst Licensing GMbH & Co. KG, including:

    a.      a declaration that Casio Inc. has not infringed, and is not infringing the '449 and
            '399 patents;

    b.      a declaration that each of the claims of the '449 and '399 patents are invalid;

    c.      an injunction prohibiting Papst Licensing from alleging infringement of the '449
            and '399 patents by Casio Inc.;

    d.      an award of damages Casio Inc. has sustained;

    e.      a declaration that this case is an "exceptional case" within the meaning of 35
            U.S.C. § 285 due to, *inter alia,* the above actions of Papst Licensing;

1-NY/2092959.4

f.   an award of costs and attorneys fees and other expenses Casio Inc. has been
     forced to incur; and

g.   such further relief as the Court may deem just and proper.

October 13, 2006                          Respectfully submitted:

                                          J. Kevin Fee (Bar No. 494016)
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          1111 Pennsylvania Avenue, NW
                                          Washington, DC 20004
                                          Tel.: (202) 739-3000
                                          Fax: (202) 739-3001

                                          Attorney for Plaintiff
                                          Casio Inc.

1-NY/2092959.4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                              :
In the Matter of:             :
                              :
CASIO, INC.,                  :
                              :
      Plaintiff,              :
                              :
          vs.                 :    Civil Action No. 06-1751
                              :
PAPST LICENSING GMBH & CO.,   :
                              :
      Defendant.              :
                              :    Washington, D.C.
- - - - - - - - - - - - - - - x    May 31, 2007


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:          J. KEVIN FE, ESQ.
                            SCOTT D. STIMPSON, ESQ.

For the Defendant:          JEROLD B. SCHNAYER, ESQ.
                            DAMON W.D. WRIGHT, ESQ.

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M1837V/bf

```
 1                        P R O C E E D I N G S
 2            THE CLERK:  Civil Case Number 06-1751.  This is
 3    in the matter of Casio, Inc. versus Papst Licensing GMBH &
 4    Company.  I don't know what the "KG" is.  I have that on our
 5    archive.  Kevin Fe and Scott D. Stimpson for the Plaintiffs;
 6    Jerold B. --
 7            MR. SCHNAYER:  "Schnayer."
 8            THE CLERK:  -- Schnayer and Damon Wright for the
 9    Defendant.  This is set for a motions hearing.
10            THE MAGISTRATE JUDGE:  Now, good afternoon to all
11    of you.  This matter was scheduled for a hearing on the
12    motion filed by Casio, to compel and for sanctions.
13            The issue presented by the motion is a relatively
14    straightforward one, and the Court indeed considered ruling
15    on the motion without scheduling a hearing.  But recognizing
16    that the status of the issue presented might have changed
17    as of the time the Court made a ruling had there been no
18    hearing, the Court thought it prudent for counsel to come in
19    and address the matter.
20            I understand, based upon your informal discussion
21    off the record my law clerk before the case was called, that
22    it may be the case that some responses to the outstanding
23    interrogatories have been served.  However, recognizing that
24    that may not fully address the pending motion, the Court
25    will hear first from Plaintiff's counsel, then from counsel
```

Case 07-cv-00934-RMC Document 10-52-6 Filed 06/24/2012 Page 32 of 29
Case 1:06-cv-01751-GK-DAR     Document 35-2     Filed 06/06/2007     Page 4 of 30

3

1   for the Defendant, regarding these issues.

2           Now, who will address the matter on behalf of

3   the Plaintiff?

4           MR. STIMPSON:  I will, Your Honor.  Scott

5   Stimpson.

6           THE MAGISTRATE JUDGE:  Mr. Stimpson, good

7   afternoon.

8           MR. STIMPSON:  Good afternoon, and thank you.

9   I will be brief.

10          We were served last night with responses to

11  interrogatories and document requests.  There are many

12  objections.  We still have not received a single document

13  in document production.

14          I think it would help just to have a very short

15  recitation of the chronology as things have played out here.

16          On March 2 we had what we believed to be our 26(f)

17  conference and we served our discovery requests.  We served

18  a proposed discovery plan on the other side on March 9.  It

19  was more than six weeks later before we got any comments

20  from the other side after this motion was filed.

21          On March 13, Judge Kessler issued an order that

22  discovery proceed.

23          Exhibit J to our motion is a letter we sent to

24  opposing counsel shortly before their responses were due,

25  which I think is instructive here.  We were getting wind

Case 1:07-cv-00493-RMC Document 10-52-6 Filed 06/22/2008 Page 42 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 5 of 30

4

1  that -- it's "J," Your Honor.  We were getting wind that
2  perhaps they were not going to respond on time, and we sent
3  a letter telling them that Judge Kessler has ordered
4  discovery to proceed and we expect full and appropriate
5  responses, and if we don't get them we are going to take
6  appropriate action.
7        So counsel for Papst took the risks they were
8  taking with their eyes wide open to what might happen here.
9        It is now May 31.  We are about three months since
10 we served our discovery requests.  We are two-and-a-half
11 months after Judge Kessler ordered discovery to proceed.
12 We do not have a single document.  And the responses we
13 received last night are riddled with objections.
14       THE MAGISTRATE JUDGE:  May I ask you to state the
15 substance of some of the objections.  In other words, what
16 sort of objections were raised.
17       MR. STIMPSON:  I only received them last night,
18 so I went over them briefly today, Your Honor.
19       The objections to the document requests -- they
20 have objections on a protective order, they have objections
21 on over-breadth, they have, you know, your typical
22 objections you'd expect, privilege and work product.
23       Some of the document requests, they say they will
24 give us some documents at some unspecified date.  Some of
25 the document requests, they simply -- if I remember

Case 1:07-cv-00493-RMC   Document 1-52-6   Filed 06/24/2008   Page 52 of 29
Case 1:06-cv-01751-GK-DAR     Document 35-2     Filed 06/06/2007     Page 6 of 30

5

1   correctly, they simply say, "No," or "We'll think about it.

2   We'll talk to you at some other time."  Or, "We'll have a

3   meet and confer, and discuss it."

4           But as I say, we have yet to receive a single

5   document, and the case has been going for three months now -

6   discovery has been going for three months.

7           THE MAGISTRATE JUDGE:  What is your proffer

8   regarding whether or not any agreement was reached with

9   respect to objections?

10           MR. STIMPSON:  I believe no agreement was reached

11   -- absolutely none.

12           THE MAGISTRATE JUDGE:  Very well, you may

13   continue.

14           MR. STIMPSON:  So, Your Honor, my opponent is

15   trying to make this into a 26(f) issue.  26(f) is long since

16   done, and this is not a 26(f) issue.  This is a 26(d) issue.

17   This is about a failure to respond to the Court order.

18   26(d) says that discovery can proceed regardless of whether

19   there's been a 26(f) conference if the Court orders it, and

20   unquestionably the Court ordered it.

21           So the question, I think, or the consequences of

22   what's happened here, it's very clear that the Court order

23   has been -- they have not complied with the Court order.

24   And so we request basically four remedies for that.

25           One is, since the objections are untimely, they

1   are waived.  That we get prompt discovery, including all the

2   documents that should have been produced.  We also request

3   our fees and costs under 37(a) and (b).

4          THE MAGISTRATE JUDGE:  And by "fees and costs,"

5   may I assume you mean fees and costs associated with the

6   filing of the motion?

7          MR. STIMPSON:  Correct.  Correct.  And lastly,

8   Your Honor, I think an appropriate sanction in this

9   situation would be entry of an order bifurcation.  I think,

10  for one thing, it's going to avoid another motion which may

11  be coming, and bifurcation is particularly appropriate in

12  this case.

13         Judge Kessler has asked that fact discovery be

14  completed by December, December of this year.  We've now had

15  three months of our fact discovery period go by.  We haven't

16  received a single document.  We've now just got six months

17  left.  And if damages and willfulness are left in this case,

18  it is going to be darn near impossible to get this done

19  pursuant to Judge Kessler's order.  And it's a particularly

20  appropriate sanction here, Your Honor, because they're

21  effectively using the 26(f) procedures as a shield to

22  prevent themselves from having to comply with the CRA.

23         So if there are no questions, I'll turn it over to

24  my opponent.

25         THE MAGISTRATE JUDGE:  Well, I do have one

1    additional question, Mr. Stimpson.  Is your request for what

2    you term "bifurcation" a request for a sanction or is it

3    simply your view that, given the delay in making discovery

4    that discovery cannot be completed in the time for which the

5    Court already provided.

6            MR. STIMPSON:  Well, it's both actually, Your

7    Honor.  We've cited cases where, in fact, one Court

8    specifically mentioned entering a scheduling order by

9    opposing party if they didn't comply with the Court orders.

10   It's certainly an appropriate sanction for what's happened

11   here.

12           But stepping back and just looking at where we are

13   now, and we've got six more months of fact discovery, it's a

14   very complicated case, even liability-wise.  We've got two

15   patents, we've got many accused products, we've got lots and

16   lots of prior art.  I assume there will be many accused

17   claims of each patent that are alleged to be infringed.

18   It is going to be a mountain for a jury.  And if you add

19   damages and willfulness to that, it is going to be a very

20   lengthy trial and I can't see how we can really get it done

21   in time.

22           So there are many reasons for bifurcation.  I will

23   leave that argument for another day, if it's needed.  But a

24   short answer to your question is, as a sanction and because

25   it's appropriate, we request bifurcation.

```
 1              THE MAGISTRATE JUDGE:  Very well.  Thank you very

 2   much, Mr. Stimpson.

 3              MR. STIMPSON:  Thank you.

 4              THE MAGISTRATE JUDGE:  Mr. Schnayer?

 5              MR. SCHNAYER:  Yes, Your Honor.

 6              THE MAGISTRATE JUDGE:  Very well.  Good afternoon.

 7              MR. SCHNAYER:  Good afternoon.  Nice to see you

 8   again.

 9              Your Honor, first of all, let me make it clear we

10   did serve discovery responses, and I would like to point out

11   that the -- I'm going to hand up a copy -- they only have

12   one copy, but I'd like to point out --

13              THE MAGISTRATE JUDGE:  Let me interrupt you just

14   one moment.

15              MR. SCHNAYER:  Sure.

16              THE MAGISTRATE JUDGE:  I don't believe that I need

17   to see the responses.  Let me ask whether you concede that

18   service of any responses last night was well beyond the time

19   in which --

20              MR. SCHNAYER:  No, Your Honor.

21              THE MAGISTRATE JUDGE:  -- the responses were due.

22              MR. SCHNAYER:  Your Honor -- no.

23              THE MAGISTRATE JUDGE:  When were you served with

24   the discovery requests?

25              MR. SCHNAYER:  We were served with the discovery
```

9

1    requests -- maybe I should go back and give you my version

2    of what happened.

3              THE MAGISTRATE JUDGE:  Well, let me ask when you

4    were served with the discovery requests.

5              MR. SCHNAYER:  On March 2nd, we were served with

6    the discovery responses, Your Honor.  And --

7              THE MAGISTRATE JUDGE:  Discovery "requests."

8              MR. SCHNAYER:  Discovery requests.

9              THE MAGISTRATE JUDGE:  Very well.  You may

10   continue.

11             MR. SCHNAYER:  Your Honor, in this case originally

12   we had been having discussions about infringement charges.

13   I'm going to go back to the beginning, because I think it

14   needs to be understood.  We've had discussions with Casio

15   about charges of infringement we made against them

16   concerning two patents that are involved in this lawsuit.

17   They concern digital cameras.  We had one meeting with them,

18   never with their client, and my normal experience is we

19   usually have five, ten meetings with companies and we

20   discuss the issues.  They decided to sue Papst, to bring a

21   DJ action.  So this case started as a DJ action.

22             We filed a counterclaim against them, and

23   originally it was Casio USA involved, and we also sued Casio

24   Japan.  And when we sued Casio Japan we did so because it's

25   our understanding that they manufacture the infringing goods

```
 1    here.

 2             And we had meetings with counsel before the

 3    Rule 26(f) conference that they claim happened, and we said

 4    to them, "Lookit, do you represent Casio Japan?  Would you

 5    accept service of process for Casio Japan?"

 6             And we were told, "We don't represent Casio Japan

 7    and we won't accept service of process for Casio Japan."

 8             So we were forced to go through the Hague

 9    Convention.  What that means is, since it's a foreign

10    company we have to file a request with the Court, the Court

11    files a request with the Justice Department, the Justice

12    Department here files a request in Japan, and they serve the

13    company, and eventually they got served.

14             And so a lot of delay that was caused in this case

15    was caused by the Plaintiff in this case.  They could have

16    accepted services of process.

17             Now, we have this meeting, and we asked them to

18    provide us with a draft before the meeting.  We also asked

19    them whether they represented Casio Japan.  Because Casio

20    Japan is a party.  And they come to the meeting, we never

21    got a draft of a proposal for the 26(f) scheduling order

22    that we had to present to the Court -- they're the

23    Plaintiff.  And they come to the meeting and they say,

24    "We don't represent Casio Japan."

25             So I said, "Well, how could we have a 26(f)
```

Case 1:07-cv-00493-RMC   Document 1-52-6   Filed 02/14/2007   Page 12 of 29
Case 1:06-cv-01751-GK-DAR     Document 35-2     Filed 06/06/2007     Page 12 of 30

11

1    conference if you don't represent Casio Japan?"

2         And they said, "Well, we don't represent them.

3    And we're not going to accept service of process."

4         Counsel wasn't at that conference.  It lasted for

5    about 15 minutes.

6         THE MAGISTRATE JUDGE:  Do you agree, Mr. Schnayer,

7    that there's no authority which holds that even the complete

8    absence of a meet and confer session relieves a party of

9    the time limits which otherwise apply to the service of

10    responses to interrogatories and requests for production of

11    documents?

12         MR. SCHNAYER:  I don't.  I think the rule is

13    clear.  I think you have --

14         THE MAGISTRATE JUDGE:  What portion of the rule

15    is it --

16         MR. SCHNAYER:  26(f) --

17         THE MAGISTRATE JUDGE:  -- on which you rely?

18         MR. SCHNAYER:  Okay.  Yes.  It says --

19         THE MAGISTRATE JUDGE:  What portion are you

20    reading?

21         MR. SCHNAYER:  I'm in 26(d), Timing and Sequence

22    of Discovery.  "Except in categories of proceedings exempt

23    from initial disclosure under Rule 26(a)(1)(E) or when

24    authorized under these rules or by order of agreement of

25    the parties, a party may not seek discovery from any source

 1   before the parties have conferred as required by Rule

 2   26(f)."

 3            And then, Your Honor --

 4            THE MAGISTRATE JUDGE:  Doesn't the order of Judge

 5   Kessler, which directed that discovery proceed, mean that

 6   your reliance on that rule is misplaced?

 7            MR. SCHNAYER:  I don't think so, Your Honor,

 8   at all.  It's not how I read the Judge's order.

 9            Counsel asked that discovery be allowed to go

10   forward.  After we had that 15-minute conference, this

11   so-called 26(f) conference, we met numerous times for many

12   hours on the phone.

13            And when I saw the Judge's order, it was my

14   understanding that we had to -- that discovery would go

15   forward, but the Judge never said that you don't have to

16   comply with 26(d).  26(d) is very specific.  It says you

17   have to have a 26(f) conference.  That doesn't mean meet for

18   15 minutes and discovery goes forward.  It means you're

19   supposed to prepare a discovery plan.  You're supposed to

20   discuss the issues.  And I have a section of the statute

21   that -- I'm going to hand up a copy of this, if I may, Your

22   Honor?

23            THE MAGISTRATE JUDGE:  You need not hand up the

24   statute or the rule.  We have it here.

25            MR. SCHNAYER:  Well, these are the notes for the -

1  - committee notes for that, that were part of it, describing

2  what was contemplated under new twenty -- or, 26(f), and

3  what it basically talks about is -- these were recently

4  passed.  It talks about electronic discovery, it talks about

5  the requirement to talk about electronic discovery, to

6  exchange information; that the committee now wants these

7  initial conferences to be significant, to exchange

8  information, for the parties to cooperate.

9           And the first conference we had, one of the

10  parties wasn't even present at that conference.  Because

11  they wouldn't agree -- the same attorneys that represent

12  them now wouldn't agree to talk on their behalf.  We

13  couldn't have had a conference.

14           I asked them to provide me with information about

15  electronic discovery.  The new rules say this is an

16  important issue that must be addressed, and we had hours of

17  conversations after this.  Right up until the time we filed

18  the 26(f) statement.  And we -- we -- took the initiative

19  on that.

20           We asked them to provide us with a bunch of

21  information.  If you look at the letters attached to my

22  motion, we sent out letters and we show you a list of

23  questions we asked them, that they never complied with.

24           So, for example -- we were trying to hone the

25  issues down.  This is a complicated case.  Understand,

Case 1:07-cv-00934-RMC Document 1-52-6 Filed 06/24/2008 Page 14 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 15 of 30

14

1   there's a Japanese company and a U.S. company.  This is not

2   easy.  There might be additional companies involved here.

3   If we don't get the parties that we need involved or find

4   out about the electronic data, it's hard for us to comply

5   with Rule 26(f) as contemplated by the rules.  And we had

6   conversation after conversation with them.  And they

7   wouldn't provide us with the information.  Their answer was,

8   "We're not going to give you free discovery."

9         Serve formal requests.  Well, the rule

10   contemplates the parties are going to cooperate.  We hoped

11   to get a 26(l) conference completed pretty quickly, but we

12   couldn't until the very last day because the parties were

13   exchanging extensive drafts, because we weren't getting

14   cooperation.  In the end, I finally threw up my hands and

15   said, "Okay, I have to move forward, I have to agree on

16   something," and we submitted a joint report to the Court.

17         THE MAGISTRATE JUDGE:  Do you agree that in the

18   joint report this issue which -- when I say the "joint

19   report," I mean the joint report which you also signed  --

20   does not raise this issue at all?

21         MR. SCHNAYER:  No, it doesn't really address it at

22   all.  They filed a separate motion.  It doesn't address it.

23   And it does not --

24         THE MAGISTRATE JUDGE:  Do you also acknowledge

25   that you did not file a motion to extend the deadline for

1    serving your answers to these discovery requests until a

2    more meaningful meet and confer session could take place?

3         MR. SCHNAYER:  Your Honor, I didn't -- the rule is

4    specific.  It says you have to have one beforehand.

5         You know, I feel like I'm getting set up here.

6    You know, they complain my answers aren't sufficient.  Your

7    Honor, they gave me nothing in their answers.  They gave me

8    nothing.  They objected to everything.  I provided them with

9    substantive responses.  You know, we walk into this case --

10        THE MAGISTRATE JUDGE:  Is there a motion pending

11   regarding your client's concerns about the sufficiency of

12   the responses served by Casio?

13        MR. SCHNAYER:  I haven't had a chance to meet and

14   confer with them.  We were preparing for this motion, and

15   we'll deal with it.  We have to meet and confer.  I was only

16   -- he comes in and he says my responses aren't good.  I was

17   responding to that.  And I was pointing out to you and I was

18   going to show you, here's a several-page response showing

19   how the claims read on their device.

20        We gave them substantive responses.  They didn't

21   give us substantive responses.  They wouldn't provide us

22   with the information we needed for the 26(f) conference.

23   It's my view that it never occurred until the day we

24   finalized, signed off on the agreement, and sent it to the

25   Court, and the answers aren't due until -- they're not even

1    due today.  We served them early.  By serving him yesterday,

2    we served him early.

3            THE MAGISTRATE JUDGE:  What is your contention

4    regarding when the answers to discovery requests served on

5    March 2nd, 2007, are due?

6            MR. SCHNAYER:  They won't be due until a couple

7    of days from now.  They're not due, because we never had a

8    26(f) conference.

9            THE MAGISTRATE JUDGE:  What is the basis of your

10   determination that they're not due until two days from

11   today?

12           MR. SCHNAYER:  Because we took the exact date when

13   the parties did have a completed 26(f) conference, after

14   several substantive meetings, and the parties came to a

15   proposal to submit to the Court and we submitted the

16   scheduling proposal.  That's the day that we had our 26(f)

17   conference and finalized it.  And it's my position that's --

18   according to the rules, that's the only date that makes

19   sense.

20           If I'm wrong, I apologize.  We did this in good

21   faith.  We did not do this to delay anything.  This is a

22   complicated case.  There's complicated issues.  We have been

23   looking into getting documents, we've got a client from

24   Germany, we've got a -- the patentee doesn't work for our

25   company, so it's not such an easy issue, but we have been

1    gathering documents.  And we put together a very substantive

2    charge of infringement here.  Your Honor, they don't have

3    anything like this in their discovery responses.  So this

4    took time to put together.

5         But they complain that I delayed everything.  It's

6    not true.  We tried to get the 26(f) conference done sooner.

7    We couldn't get any responses from them.  They didn't give

8    us the information.  I'll point out the letters to you,

9    because I think those are important.

10        If you look at our brief --

11        THE MAGISTRATE JUDGE:  I have it here.

12        MR. SCHNAYER:  And if you look at Exhibit A.

13   This is an interesting one.  Exhibit A, in the back two

14   pages, is a letter from opposing counsel.  It starts out

15   as a -- the bottom part is an e-mail from J. Gold, who is

16   Plaintiff's counsel, and Mr. Swick, Joseph Swick, who is the

17   top part, this is a response to a e-mail, is on the part --

18   is the top part.

19        But if you look at the second page -- and this is

20   the letter that Mr. Gold sent after that supposed

21   conference.  It says, "With regard --" on the last page of

22   this.  Second to last page, I'm sorry.  Second to last page,

23   point 4 of Exhibit A, it says -- Point 4 on there?  Second

24   line?

25        THE MAGISTRATE JUDGE:  I have it.

Case 1:07-cv-00493-RMC Document 1-52-6 Filed 06/24/2008 Page 18 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 19 of 30

18

 1           MR. SCHNAYER:  Okay.  "Regarding your request to
 2   identify the specific details of Casio Inc., Casio Japan,
 3   and any related entities' computer systems, such a request
 4   is beyond the scope of the 26(f) conference."  Then he goes
 5   on and gives us a little bit of information about it, but
 6   he says -- and this is the important part -- bottom line,
 7   last line, "If you believe you are entitled to any more
 8   information about Casio Inc.'s system or any specific
 9   discovery, please serve a discovery request and we'll
10   consider it."  That was their attitude.  We're not going to
11   give you free discovery.  As the rules contemplate, parties
12   should cooperate.
13           Then if you look at my letter, if you look at
14   Exhibit  -- look at Exhibit, if you would, please, Your
15   Honor, E.  First page.
16           THE MAGISTRATE JUDGE:  I have it.
17           MR. SCHNAYER:  This discusses a conference that
18   Mr. Swick in my office had with Mr. Gold, and Mr. Gold
19   represents the Plaintiff.  And you can see the second
20   paragraph.  It says, "At the conference we asked you several
21   questions relevant to developing a carefully considered
22   litigation schedule.  At the time, you weren't able to
23   provide any answers to several of our questions.  We ask
24   that you please provide us with answers to these questions
25   before our next meeting on April 16th."  So these were part

1   of the continuing meetings.

2          And you can see we're asking questions about the

3   name of the companies that were involved in the design and

4   development, so we can decide if we have the right parties

5   and know how long discovery is going to take -- reasonable

6   questions.  "What are the names of the companies that were

7   involved in the manufacture of the cameras.  What are the

8   names --" 3, "What are the names of all Casio companies that

9   were involved in the sale of the cameras."  That's also

10  relevant.  "Are both Casio Japan and Casio USA willing to

11  voluntarily produce relevant information and witnesses from

12  all their parent companies?"  So we're trying to find out

13  how much foreign discovery we have to do.  That's a

14  reasonable request.

15         Five, "Is Casio Japan and Casio US potentially

16  relevant electronic information reasonably accessible?"

17  The rules require you to talk about reasonable accessibility

18  in the 26(f) conference.  That is something you must

19  discuss.  Or you should discuss.  And that is, is the

20  information reasonably accessible because electronic

21  discovery is very complicated and if it's not reasonably

22  accessible, then you have to talk about shifting costs and

23  who should pay for it.  And that's important, according to

24  the new rules, to deal with electronic discovery.  We asked

25  them questions about that and we got no answers.

Case 1:07-cv-00934-RMC Document 1-52-6 Filed 06/24/2008 Page 20 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 21 of 30

20

1    And then we asked, "Who are the names of the --
2    names, titles and employers of those individuals at Casio
3    Japan and Casio US who have special knowledge about each
4    respective party's computer system." If you read the
5    section of the rule, the notes on it, it says that that's
6    the kind of information you're supposed to talk about.
7    In fact, they discuss and some Courts have said you've got
8    to bring somebody knowledgeable about it from the company
9    and have a real significant exchange. So we tried to do
10   that with them.
11   And now look, if you would, at Exhibit F.
12   Exhibit F is April 18th, a further letter from Mr. Swick to
13   Mr. Gold. "We are disappointed that you called this morning
14   to state you were unilaterally canceling our previously
15   agreed to upon continuation of the Rule 26(f) conference
16   scheduled to occur today. As we understand it, you are
17   unwilling to participate because you have not received
18   _____ proposal. However, at this time you also
19   indicated you were unwilling to discuss many of the
20   Rule 26(f) issues that will help parties develop a carefully
21   developed scheduling plan. Specifically, you told me, for
22   the first time, you're unwilling to discuss the following
23   questions," and those are the same questions that we had
24   listed in our other letter to them. And there's no letter
25   that says, "Yes, we were willing to discuss these with you."

Case 1:07-cv-00934-RMC Document 1-52-6 Filed 06/24/2008 Page 22 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 22 of 30

21

1      So a lot of the delay here was caused in having

2 the final Rule 26(f) conference by counsel for Plaintiff not

3 giving us, quote, "free discovery," which is the kind of

4 cooperation you need in a case to formulate a reasonable

5 discovery plan.

6      THE MAGISTRATE JUDGE:  Am I correct, Mr. Schnayer,

7 that the sole basis of your client's determination to serve

8 no answers until last night has to do with the manner in

9 which the conference was conducted?

10      MR. SCHNAYER:  The fact that there was no

11 conference.  There was no conference.  And --

12      THE MAGISTRATE JUDGE:  Very well.

13      MR. SCHNAYER:  There was none.  That's not a

14 conference.  And it didn't occur until we signed the papers

15 after many discussions, and trying to do it in a quick

16 fashion.

17      I also have one other point I'd like to make.

18      THE MAGISTRATE JUDGE:  Yes.

19      MR. SCHNAYER:  Counsel has raised an issue, and

20 this is sort of a side point, but I want to make this clear

21 because I think it's important.

22      He said one of the sanctions we want is that you

23 should segregate out the damages issue and willfulness

24 issue.  And I'd like to point out that at the hearing that

25 occurred with the Judge, the scheduling hearing that we had,

Case 1:07-cv-00944-RMC Document 1-52-6 Filed 06/24/2008 Page 22 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 23 of 30

22

1   the one hearing, the Judge -- that issue was before the

2   Court because both parties addressed it in the papers they

3   filed, this big paper we put together finally which listed

4   the parties' positions.  And they asked the Judge for

5   bifurcation.  They asked the Judge for bifurcation.

6        And the Judge, at the end of the hearing, issued

7   an order and that's -- of the record, and she ordered the

8   schedule.  And there's nothing in the order that talks about

9   bifurcation.  And after she read the order -- she read it

10  out loud, and then she issued it in writing after the

11  hearing, she said, "Are there any more questions?"  She

12  turned to Plaintiff first.  Counsel didn't raise any

13  questions.  He didn't raise this issue with the Judge.

14       Bifurcation was already considered by the Court --

15  by the District Court Judge -- and denied.  It was denied.

16  And now they're saying, we want the sanction of bifurcation.

17  Well, they have it -- it's already been ruled on.  And

18  second, it's not a proper -- there's no authority to say

19  that this is a proper sanction under the rules.  There's no

20  authority for it.  it's just like, we want it because we

21  want it.  It's not proper.  So it's already been ruled on.

22       So, Your Honor, we did believe that the Judge's

23  order -- they have the ability to ask the Judge -- and they

24  never did in the papers they filed -- to address the issue

25  of the Rule 26(f) conference.  They never said to the Judge,

1    "You know, we want a specific ruling that discovery should

2    be considered served as of that day."  They never asked for

3    it in their pleading.  And the Judge never ruled on it.  If

4    you look at the paper they filed, it doesn't ask for that.

5    So they never asked for it, the Judge never ruled on it, and

6    we proceeded with that understanding.

7           If I'm wrong, I apologize.  We served our

8    discovery requests.  But it's not sanctionable, Your Honor.

9           THE MAGISTRATE JUDGE:  Very well, thank you,

10   Mr. Schnayer.

11          MR. SCHNAYER:  Thank you, Your Honor.

12          THE MAGISTRATE JUDGE:  Mr. Stimpson, if you wish

13   a brief reply I will hear you.

14          MR. STIMPSON:  Your Honor, I don't (inaudible)

15   have 30 seconds.

16          THE MAGISTRATE JUDGE:  My expectation was that one

17   of you would address the issue -- do you need a moment to

18   confer with Mr. Schnayer?  If so, you certainly may do so

19   and I'm happy to take a brief recess if you need more than a

20   moment or two to huddle.

21          MR. STIMPSON:  Not a problem.

22          MR. SCHNAYER:  Your Honor?

23          THE MAGISTRATE JUDGE:  Mr. Schnayer, yes.

24          MR. SCHNAYER:  If I may, please.  Thank you.

25   Counsel points out to me, co-counsel, that the committee

Case 1:07-cv-00934-RMC Document 1-52-6 Filed 06/24/2008 Page 24 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 25 of 30

24

1    notes _____ -- Subsection (f) of the committee notes

2    points out and it talks about Rule 26(f) as amended to

3    direct the parties to discuss discovery electronically

4    stored information during their discovery planning

5    conference.  And the rule focuses on the issues relating to

6    disclosure or discovery of electronically stored

7    information.  Discussion is not required in cases which

8    involve -- don't involve electronic discovery.  In this

9    case, of course, it does.

10          And it goes on in the committee notes, it says,

11    it talks extensively about how this is important to focus

12    the issues, to focus the issues so that you can have a good

13    proposal to the Judge and focus the discovery in the case.

14          To have a 15-minute discussion where the parties

15    haven't done anything is not a local rule conference.  It's

16    not consistent with these guidelines that are set out in the

17    committee notes.  It really contemplates that you -- and it

18    goes through, and if Your Honor would care to read it after

19    the hearing, it goes through and it says you're supposed to

20    discuss these issues and narrow the issues.

21          THE MAGISTRATE JUDGE:  The Court is eminently

22    familiar with the committee notes.

23          MR. SCHNAYER:  Thank you, Your Honor.

24          THE MAGISTRATE JUDGE:  Very well.  Thank you.

25    You may have a seat.

1          MR. SCHNAYER:  Appreciate it.  Thank you.

2          MR. STIMPSON:  Your Honor, 30 seconds.  Just on

3     the last point that Mr. Schnayer raised, about this being

4     already -- bifurcation already being decided by Judge

5     Kessler.  And that meet and confer statement, I believe --

6     I don't have it in front of me, but I believe the very first

7     thing we said was we're asking for this as a sanction, and

8     Judge Kessler said she's passing this motion on to Your

9     Honor.  She certainly did not rule on bifurcation.

10          The rest of Mr. Schnayer's argument was all about

11     26(f), and I don't believe this is about 26(f).  This is

12     about noncompliance with Judge Kessler's order.

13          If you don't have any further questions, I'll sit

14     down.

15          THE MAGISTRATE JUDGE:  Very well.  Thank you.

16     You may have a seat.

17          MR. STIMPSON:  Thank you.

18          THE MAGISTRATE JUDGE:  As the Court indicated at

19     the outset, the Court reviewed the motion, the opposition

20     and the reply in advance of the hearing, and the Court has

21     now considered the proffers and arguments of counsel during

22     the course of the hearing.  Having done so, the Court will

23     grant the motion, largely for the reasons offered by the

24     Movant, both orally and in writing.

25          More specifically, the Court finds that what Papst

Case 1:07-cv-00940-RMC Document 1-52-6 Filed 02/24/2008 Page 26 of 29
Case 1:06-cv-01751-GK-DAR    Document 35-2    Filed 06/06/2007    Page 27 of 30

26

1   urges upon the Court is a novel way of counting the number

2   of days in which a party must serve responses to written

3   discovery requests.  The Court uses the term, quote,

4   "novel," close quote, because there is simply no authority

5   which supports this method of calculating the deadline.

6              The rules make plain when it is that a party is to

7   serve responses to written discovery requests.  There was no

8   motion for enlargement of time filed by Papst.  Papst did

9   not seek any clarification of the due date in the meet and

10  confer report that counsel, along with opposing counsel,

11  filed in this matter, and appears to have unilaterally taken

12  the position that because Papst was displeased with the

13  manner in which the Rule 26(f) meeting or conference was

14  conducted that the responses to the written discovery

15  requests would be withheld.

16             However, there is no authority that suggests

17  that a party may unilaterally alter the rule which would

18  otherwise apply, particularly in an instance such as this

19  where the Court ordered that discovery proceed, simply

20  because of a concern regarding the sufficiency of the 26(f)

21  conference.

22             For these reasons, the Court finds that the

23  opposition to the motion to compel and for sanctions was not

24  substantially justified and that there are no circumstances

25  which would make the imposition of sanctions unjust.

1        The Court therefore orders the following.

2        First, the Court orders that complete responses --

3 that is, without objections, which have been waived by the

4 failure to respond in a timely fashion -- be served within

5 10 calendar days of today's date.

6        Second, the Court imposes as a sanction the costs

7 to Casio, including reasonable attorney's fees, of moving to

8 compel and for sanctions.  The Court will order that such

9 costs be paid within 30 days of today's date and that

10 counsel work cooperatively to share and comment upon the

11 reasonableness of those costs.  This is not a matter that

12 should entail the filing of a motion, because the Court

13 expects that you will work cooperatively to determine what

14 the reasonable costs are.

15        To the extent that there is an additional sanction

16 that Casio requests, the motion for any additional sanction

17 other than the fees and costs, is denied.

18        The Clerk will prepare a minute entry which will

19 indicate that the motion to compel and for sanctions was

20 granted for the reasons set forth on the record at the

21 hearing.  There is no order, no written order, that will

22 follow.  The minute entry will also indicate that complete

23 responses without objection are to be served within ten days

24 of today's date, and that Papst is to pay Casio's costs

25 within 30 calendar days of today's date.

```
 1            Now, is there anything further in this matter
 2    this afternoon?  Mr. Stimpson or Mr. Fe?
 3            MR. STIMPSON:  Not that's pending before Your
 4    Honor right now, nothing (inaudible).
 5            THE MAGISTRATE JUDGE:  Very well, thank you.
 6    Mr. Schnayer, Mr. Wright?
 7            MR. SCHNAYER:  Nothing further, Your Honor.
 8    Thank you.
 9            THE MAGISTRATE JUDGE:  Very well.  Thank you
10    very much.
11            There is nothing scheduled for the courtroom for
12    the rest of the day, so if you wish to stay and continue
13    your efforts to confer before you return to your respective
14    destinations, you are welcome to do so.
15            COUNSEL:  Thank you.
16            THE MAGISTRATE JUDGE:  Very well.  Thank you
17    very much.
18            (Whereupon, proceedings were concluded.)
19
20
21
22
```

UNITED STATES OF AMERICA )
                         ) Civil Action No. 06-1751
DISTRICT OF COLUMBIA     )

     I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                                    PAUL R. CUTLER

     I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                                      BONNIE FURLONG

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FUJIFILM CORPORATION,<br>Midtown West, 7-3, Akasaka 9-chome<br>Minato-ku, Tokyo 107-0052<br>Japan,<br><br>FUJIFILM U.S.A., INC.<br>200 Summit Lake Drive, Floor 2<br>Valhalla, NY 10595,<br><br>          Plaintiffs,<br><br>          v.<br><br>PAPST LICENSING GmbH & Co., KG<br>Bahnhofstrasse 33<br>78112 St. Georgen, Germany,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 1:07-cv-01118
Assigned To : Kessler, Gladys
Assign. Date : 6/21/2007
Description: General Civil

## COMPLAINT FOR DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT AND INVALIDITY OF PATENTS

Plaintiffs Fujifilm Corporation ("Fujifilm Japan") and Fujifilm U.S.A., Inc.

("Fujifilm U.S.A.") (collectively, "Fujifilm") bring this action against Papst Licensing GmbH &

Co, KG ("Papst Licensing") for a declaration of non-infringement by Fujifilm digital camera

products and invalidity with respect to two patents purportedly owned by Papst Licensing.

### Parties

1.     Plaintiff Fujifilm U.S.A. is a New York corporation with its principal place of

business at 200 Summit Lake Drive, Floor 2, Valhalla, New York 10595.

2.     Plaintiff Fujifilm Japan is a Japanese corporation with its principal place of

business at Midtown West, 7-3, Akasaka 9-chome, Minato-ku, Tokyo 107-0052, Japan.

3.     Fujifilm U.S.A. and Fujifilm Japan are in the business of manufacturing and selling a wide range of consumer electronics products, including digital cameras.

4.     Upon information and belief, Papst Licensing is a company existing under the laws of The Federal Republic of Germany with its principal place of business at Bahnhofstrasse 33, 78112 St. Georgen, Germany.

5.     Upon information and belief, Papst Licensing does not manufacture or sell any consumer products.  Its sole business is to acquire and enforce intellectual property rights.

**Patents in Suit**

6.     Papst Licensing has held itself out as the owner of United States Patent No. 6,470,399 B1 ("the '399 patent") entitled "Flexible Interface for Communication Between a Host and an Analog I/O Device Connected to the Interface Regardless of the Type of the I/O Device," which issued on October 22, 2002.

7.     Papst Licensing has also held itself out as the owner of United States Patent No. 6,895,449 B2 ("the '449 patent") entitled "Flexible Interface for Communication Between a Host and an Analog I/O Device Connected to the Interface Regardless the Type of the I/O Device," which issued on May 17, 2005.

8.     Papst Licensing has been active in prosecuting continuations and divisional applications of the patents in suit, including pending application No. 11/078,778.

9.     Papst Licensing has represented that Fujifilm, along with dozens of other companies, must either license the patents in suit or be faced with costly litigation and massive injury to business and reputation.  Papst Licensing has made these threats without conducting an appropriate analysis of the Fujifilm digital camera products it accuses of infringement and with knowledge that those products clearly and objectively do not infringe the patents in suit.

2

10.     Papst Licensing has specifically accused Fujifilm products of infringing the '399 patent and the '449 patent. For example, in a letter dated March 31, 2006 Papst Licensing accused the Fujifilm FinePix E550 and other unnamed digital cameras of infringing both of the patents-in-suit. Papst Licensing has repeated its accusations of infringement on numerous occasions since that time.

11.     Fujifilm has presented Papst Licensing with a detailed analysis of why Fujifilm products do not infringe the '399 patent or the '449 patent. Fujifilm has explained why its products do not infringe the patents-in-suit to Papst Licensing on multiple occasions, including in meetings in July and November 2006, and by letter in September 2006.

12.     Notwithstanding the clear evidence that Fujifilm products to do infringe the patents-in-suit, Papst Licensing has continued to demand that Fujifilm pay Papst Licensing royalties for use of the '399 and '449 patents.

13.     Fujifilm has refused to take a license to these patents on the ground that no such license is needed because Fujifilm's digital camera products clearly and objectively do not infringe the '399 and '449 patents.

## Jurisdiction and Venue

14.     This action arises under the Declaratory Judgment Act and the patent laws of the United States. See 28 U.S.C. §§ 2201 and 2202; Title 35 U.S.C. §§ 100 et seq.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

16.     This Court has personal jurisdiction over Papst Licensing pursuant to 35 U.S.C. § 293.

17.     Venue in this judicial district is proper under at least 28 U.S.C. § 1391(c) and (d) and 35 U.S.C. § 293.

3

18.     The patents in suit are already being litigated in this forum.  Specifically, Casio, Inc. filed an action against Papst Licensing seeking a declaratory judgment that the '399 and '449 patents are not infringed by Casio products and are invalid.  That action is styled *Casio v. Papst Licensing*, Case No. 1:06-cv-01751-GK.

19.     An actual and justiciable controversy exists between Fujifilm, on the one hand, and Papst Licensing on the other, as to the infringement and validity of the patents in suit.

### Count I
### (Declaratory Judgment of non-infringement and invalidity of the '399 patent)

20.     Fujifilm re-alleges and incorporates by reference its allegations in paragraphs 1 through 19 above as if fully set forth herein.

21.     Fujifilm has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '399 patent, nor is Fujifilm, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '399 patent.

22.     The '399 patent is invalid for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112.

23.     An actual and justiciable controversy exists between Fujifilm and Papst Licensing regarding the alleged infringement and validity of the '399 patent by virtue of the allegations made by Papst Licensing that Fujifilm and/or its customers are or have been infringing the '399 patent.

24.     This case is an exceptional case pursuant to 35 U.S.C. § 285 entitling Fujifilm to an award of its attorneys' fees.

## Count II
### (Declaratory Judgment of non-infringement and invalidity of the '449 patent)

25.     Fujifilm re-alleges and incorporates by reference its allegations in paragraphs 1 through 24 above as if fully set forth herein.

26.     Fujifilm has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '449 patent, nor is Fujifilm, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '449 patent.

27.     The '449 patent is invalid for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112.

28.     An actual and justiciable controversy exists between Fujifilm and Papst Licensing regarding the alleged infringement and validity of the '449 patent by virtue of the allegations made by Papst Licensing that Fujifilm and/or its customers are or have been infringing the '399 patent.

29.     This case is an exceptional case pursuant to 35 U.S.C. § 285 entitling Fujifilm to an award of its attorneys' fees.

30.     Fujifilm expressly reserves the right to amend this Complaint to add declaratory judgment counts with respect to any continuation or divisional applications relating to the patents in suit that may issue after the date this complaint is filed.

## **Prayer for relief**

WHEREFORE, plaintiffs Fujifilm U.S.A. and Fujifilm Japan pray this Court for the following relief:

1.      A declaration that Fujifilm has not infringed, and is not infringing, the '399 or '449 patents;

2.      A declaration that Fujifilm has not infringed, and is not infringing, any of the claims of any continuation or divisional application relating to the patents in suit that may hereafter issue;

3.      A declaration that each of the claims of the '399 and '449 patents are invalid;

4.      An injunction prohibiting Papst Licensing from alleging infringement of the '399 and '449 patents by Fujifilm;

5.      An award of damages that Fujifilm has sustained;

6.      A declaration that this case is exceptional under 35 U.S.C. § 285, and that plaintiffs be awarded their reasonable attorney fees and costs incurred in connection with this action; and

7.      Such other further relief as the Court deems just and proper.

## **Jury Demand**

Plaintiffs Fujifilm U.S.A. and Fujifilm Japan demand a jury trial on all issues so triable.

Dated: June 21, 2007

HOGAN & HARTSON LLP

Steven J. Routh (#376068)
Sten A. Jensen (#443300)
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6465
Telecopier: (202) 637-5910
E-Mail: sjrouth@hhlaw.com
sajensen@hhlaw.com

Of counsel:

William H. Wright
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4670
Telecopier: (310) 785-4601
E-Mail: whwright@hhlaw.com

John R. Inge (#413383)
Shinjuku Center Building
46th Floor
25-1 Nishi-Shinjuku 1-Chome
Shinjuku-ku Tokyo, 163-0646
Japan
E-Mail: jringe@hhlaw.com

ATTORNEYS FOR PLAINTIFFS
FUJIFILM CORPORATION AND
FUJIFILM U.S.A., INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PAPST LICENSING GmbH & Co. KG )
                         )
           Plaintiff, )
                         )
        v. )           Civil Action No. 07cv3401
                         )
FUJIFILM Corporation, and )
FUJIFILM U.S.A., Inc. )
                         )
           Defendants. )

## DECLARATION OF JONATHAN E. FILE

I, Jonathan E. File, hereby declare and state as follows:

1. I am over the age of eighteen and am competent to testify to and have personal knowledge regarding the facts set forth herein.

2. I am the Vice President and General Counsel of FUJIFILM Holdings America Corporation. In that position, I have responsibility for overseeing legal and business matters relating to FUJIFILM U.S.A., Inc. ("FUJIFILM U.S.A."), which is a New York Corporation with its principal place of business in Valhalla, New York.

3. FUJIFILM Corporation ("FUJIFILM Japan") is a Japanese corporation with its principal place of business in Tokyo, Japan. FUJIFILM U.S.A and FUJIFILM Japan are separate companies. They are each subsidiaries of FUJIFILM Holdings Company.

4. FUJIFILM U.S.A. is also an indirect subsidiary of FUJIFILM Japan. FUJIFILM Japan directly owns FUJIFILM Holdings America Corporation, which in turn directly owns all of the shares of FUJIFILM U.S.A.

\\\DC · 083367/000019 · 2564518 v1

5.    FUJIFILM U.S.A. has a sales and distribution office in Hanover Park,

Illinois.

6.    The sales and distribution center in Hanover Park, Illinois is a FUJIFILM
U.S.A. office, not a FUJIFILM Japan office.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 21, 2007

Jonathan E. File