J. Kevin Fee (D.C. Bar No. 494016)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

Scott D. Stimpson (pro hac vice)
The Law Office of Scott D. Stimpson
445 Hamilton Avenue -- Suite 1102
White Plains, New York 10601
Tel: (203) 258-8412

Attorneys for Plaintiff and Counter-Defendant Casio
America, Inc. and Counter-Defendant Casio Computer
Co., Ltd.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** _____ **This Document Relates To:** **Casio, No. 06-cv-1751** | **Misc. Action No. 07-493 (RMC)** **MDL Docket No. 1880** |

## CASIO'S MEMORANDUM IN OPPOSITION TO PAPST'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

# I.  THE SCOPE OF THE PAPST MOTION

Without a deep and detailed review of the Papst proposed order, the Papst exhibits, and even documents Papst did not attach to its motion, the scope of what Papst is asking this Court to do is difficult to fully appreciate.  To ensure that the enormity of the Papst motion is clear, Papst seeks an order that all the following documents, and more, be produced by Casio within ten days:

1. Every document from every Casio company all over the world relating in any way to any research, design, development, testing, licensing, commercial production, sale, offer for sale, or importation of every Casio Digital Camera.  Requests 2-4 and 6, Papst proposed order ¶6.[1]

2. From every Casio company all over the world, and for every feature of every Casio Digital Camera (regardless of whether it is in issue), all "engineering specifications, assembly drawings, production drawings, parts drawings, schematic drawings, block diagrams, parts lists, bills of material, prototypes, specification sheets, sales manuals, brochures, instruction or operating manuals, user manuals, technical publications, technical documentation, white papers, or technical bulletins relating to any and all Casio Digital Cameras."  Request 5, see also, *e.g.,* Request 6, Papst proposed order ¶6.

3. Every document written, created, received, and/or generated by any Casio company all over the world that has any relation to Casio Digital Cameras.  Request 6, Papst proposed order ¶6.

4. Every communication with every customer of Casio Digital Cameras all over the world.  Request 7, Papst proposed order ¶¶6, 9.

5. Every document from every Casio company worldwide that relates to any property, characteristic, advantage, or disadvantage of any Casio Digital Camera.  Request 10, Papst proposed order ¶6.

6. Every document related to Casio sales all over the world.  Request 19, Papst proposed order ¶9.

7. Every advertisement, brochure, bulletin, price list, circular, press release, commercial article, or other materials concerning Casio Digital Cameras all over the world.  Requests 35-37, Papst proposed order ¶6.

8. Every document exchanged between any Casio company and any licensee or product manufacturer, and every document relating to every meeting with every manufacturer.  Requests 59-61, Papst proposed order ¶6.

---

[1]  For the Court's convenience, the Papst order is attached hereto as Exhibit E to the declaration of J. Kevin Fee "Fee Decl.."  Please also see Request 71, and ¶16 of the Papst proposed order.  Request 71 sought every document related to the Papst interrogatories.  Papst did not provide those interrogatories to the Court, but they are attached hereto as Fee Decl. Exs. A and B .

9.  Every document ever exchanged between any Casio companies, not limited to cameras. Request 67(c), Papst proposed order ¶10.

10. Every document that describes details of the electronic information systems of every Casio company over the last ten years, and every application that has ever been run on those systems.  Request 70, Papst proposed order ¶11.

11. Every document, including documents in the files of Casio's litigation counsel, relating to studies of the patents (thus, without any mention in its memorandum, Papst is requesting the Court to order Casio to waive privilege and work product).  Requests 38, 39, 44-51, 53-55, 71, 74; Papst proposed order ¶13, 16.

12. Every document setting forth officers and directors, or other people with controlling interests, for every Casio company worldwide for the last ten years.  Requests 56, 58, Papst proposed order ¶14.

13. Every document identifying every person worldwide that has been involved with management, sales, licensing, marketing, design, and engineering for every Casio Digital Camera for the last ten years.  Request 57, Papst proposed order ¶14.

What would Papst do if, assuming it were even possible, Casio actually produced all these documents?  Does it really intend to have teams of translators and lawyers ready to review the millions upon millions of documents and emails in the Japanese, German, French, Indian, Korean, Taiwanese, and Chinese languages?

It is not the discovery Papst seeks by this motion, it is the associated expense to Casio. Papst now seeks to use this Court as an instrumentality to increase expenses so much that it will be able to extract a settlement from Casio.

The Papst motion to compel could not pass Rule 11 muster – no good faith analysis would consider any significant fraction of these requested documents relevant.  Casio has refrained from filing that motion.  Casio does, however, seek all its costs and fees associated with responding to the frivolous scope of this motion.  Fed. R. Civ. P. 37(a)(4)(B).[2]

---

[2]  *See* Federal Trade Commission's report "To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy" (pertinent pages attached as Fee Decl. Ex. C) at pages 38-43 (referring to numerous observations that non-practicing entities attempt to set licensing fees below the cost of litigation, "so as to make the taking of a license the only economically sensible alternative, regardless of the strength of the patent" and referring to such practices as "hold-ups").  This report was cited by Supreme Court Justices Souter and Breyer in their concurring opinion in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396 (2006).

## II.    THE DOCUMENTS NOT ADDRESSED IN THE PAPST MEMORANDUM

Papst does not attempt to justify the full scope of documents it seeks. While Papst claims, in footnote 1, that "more detailed explanation as to how each individual Document Request relates to the issues in this lawsuit" is provided in Exhibit G (sic, Exhibit H), that Exhibit has no detail at all – it is just a check list with no reasoning or legal support.[3]

Discovery is only relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Papst has not addressed the relevance issue for the vast majority of its requests. Consistent with precedent of this Court and positions Papst has taken elsewhere, the motion should be denied because Papst has not made a specific and detailed showing of why the full scope of information it seeks is relevant.[4]

The issues in this case are whether the Casio cameras infringe the patents, and whether the patents are valid. Papst's requests seek documents far removed from these issues. For example, Papst pursues Request 6, which seeks every document at every Casio company worldwide that has any relation to digital cameras.[5] There is so much encompassed by this

---

[3]    *Cf. Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999) (denying motion to compel because "plaintiffs . . . must show in their initial motion that the information they seek to compel is relevant . . . . Their initial motion is comprised of only two pages and offers little in the way of legal citation or reasoning . . . .").

[4]    *In re: Papst Licensing, GmbH, Patent Litig.*, No. 99-MD-1298, 2001 U.S. Dist. LEXIS 10012, at *46 (D. La. July 12, 2001) (sustaining Papst's objection because opposing party "has not provided the court with a specific relevance basis for this request."); *see also* *49-50 (two instances of the same) and *54 (on Papst's objections, refusing to compel any production from set of requests that were "broad and burdensome by any standard"); *see also Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000) ("once a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is discoverable."); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 631 (M.D. Pa. 1997) (same). Papst should not be allowed to try to plug these holes in its reply memorandum. *Cf. Hebert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992) ("To consider an argument discussed for the first time in a reply would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response.").

[5]    Papst proposed order ¶6; Papst Exhibit H; Papst Mem. at 5 (addressing *inter alia* Request 6: "Casio should be ordered to produce all responsive documents concerning all Casio Digital Cameras….") (emphasis by Papst).

request that Casio cannot possibly even address it.[6]  None of it, beyond the documents Casio has

produced or agreed to produce, bears any reasonable relation to the issues in this case.

Even if Papst had somehow established marginal relevance to some of the documents it

seeks, that relevance must be balanced against the burden to Casio.[7]  It is self-evident that

collecting even a fraction of the documents Papst seeks would be an enormous burden and

expense to Casio, which is a major international corporation with nearly 13,000 employees, and

dozens of worldwide subsidiaries.[8]  *See* Fee Decl. Exs. F (¶8) and G (¶7).  The third-party

discovery Papst seeks would place similar burdens on Casio subsidiaries all over the world, and

require escapades from country-to-country, hiring translators for many different languages, legal

review of every document, etc.[9]

### III.    CASIO HAS OR WILL PRODUCE THE NECESSARY DOCUMENTS

Subject to resolution of Casio's pending motions for sanctions Casio has already

produced or agreed to produce at least the following in the liability phase of this case:

- Infringement:  All Casio cameras are available for inspection; all user manuals; all
  service manuals; documents sufficient for a full understanding of how the Casio cameras
  function and operate with regard to the technology at issue; and R&D documents relating
  to transfer of data from the cameras to a PC.

- Generally relevant documents:  Non-privileged/work product documents related to the
  patents and Papst; documents supporting or contradicting Casio's claims and defenses;
  non-privileged/work product documents relating to claim interpretation; document
  retention policies; and documents providing a general overview of electronic systems.

---

[6]    *See* Fed. R. Civ. P. 34(b) (requiring requested documents to be described with "reasonable particularity").  This
request, for example, would include a letter from Casio Singapore to a Singapore truck driver changing the
time of a delivery of cameras, a French testing report for the battery life of a camera, a complaint from a
German customer about an inoperative shutter, a Korean customer's question about flash operation, etc.

[7]    *In re: Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301-02 (D.D.C. 2000); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii)
(holding that the court should limit discovery when "the burden or expense of the proposed discovery
outweighs its likely benefit….").

[8]    Fee Decl. Ex. D, p. 48-49.

[9]    Casio stands behind all its objections (including privilege, work product, relevance, undue burden, etc.), even
though space limitations will not allow discussion of each.

- <u>Commercial success</u>:  Sales summaries for the United States; and sales summaries from Casio Japan to all countries of the world.
- <u>Validity</u>:  Any prior art or other documents relied on by Casio, and other documents supporting or contradicting the validity defenses.

## IV.    THE DOCUMENTS REQUESTED BY PAPST

### A.    Technical Documents – Papst Section III(A)

Papst seeks production of all documents, not limited to these "narrowed" technical areas. *See* Papst proposed order, ¶6 and Papst Ex. H.  In any event, even the narrowed technical areas are far too broad.[10]  The cases cited by Papst do not support the Papst position that every technical document regarding each of Casio's digital cameras needs to be collected and produced, and Papst provides no explanation as to why it allegedly needs them.  Casio will produce documents sufficient for an understanding of how the Casio products operate and function, and it offered, subject to its pending sanctions motion, to provide R&D documents relating to transfer of data from a camera to a PC – that is the technology accused of infringement.  Papst needs no more.

### B.    Products Not Accused Of Infringement – Papst Section III(B)

As requested in Casio's pending motion for sanctions (MDL docket #38), Papst should be limited to the six products it has accused, as a sanction for its failure to comply with the Court Orders.  If that request is denied, Casio will produce documents on other products.  There is no

---

[10]    Narrowed topic 1 seeks, for example, all documents related to the cameras taking pictures ("acquisition and processing of light images. . ."). This narrowed topic alone would capture such irrelevant technical subject areas as optical and digital zooms, shutter release, flash operation, focusing and contrast, night shot options, exposure control and compensation, white balance, image brightness, backlight functioning, color filters, image sharpness, color saturation, and image contrast.  None of these technical areas, all evident from the Casio manuals produced to Papst, are relevant.  The other topics are equally overbroad, requesting all documents on such things as mega-pixels per acquired photo, types of SD cards, image file formats, movie formats, data compression, audio and recording media, image data amount options, camera set up, camera photo quality options, computer programs for all these irrelevant technical areas, camera video quality options, recording volume options, and built-in memory capacities.

justification, however, for Papst's request that Casio be ordered to produce the vast scope of documents it seeks (see Section I), but instead only documents offered by Casio in Section A above should be required.

### C.     Damages and Willfulness Documents – Papst Section III(C)

On April 8, 2008, this Court ordered that liability and damages are bifurcated for discovery and for trial and that discovery on damages and willfulness is stayed pending a determination of liability.  Based on this Order, Casio will not be producing documents in connection with these requests, and we assume Papst no longer seeks the production of damages and willfulness documents at this time.  However, Casio notes in passing that Papst's requests on these topics are vastly overbroad, seeking to invade the files of Casio's litigation counsel for privilege and work product, and seeking far more discovery than is needed on either damages or willfulness issues.

### D.     Foreign Activities – Papst Section III(D)

#### 1.     Lack Of  Relevance, Undue Burden

There is no need for documents from foreign Casio companies.  Casio Japan designs the vast majority of the camera models, and they are assembled according to the Casio Japan specifications by Yamagata Casio and two unaffiliated companies in China.  Casio Japan has in its possession the documents on R&D, design and operation for these cameras and its costs simply include payments to these three other manufacturing companies.  *See* Fee Decl. Ex. F.[11]

---

[11]     Two digital camera models, the LV-10 and the GV-10, were designed and manufactured by third parties, Mustek Systems Inc. and Primax Electronics, Ltd.  Papst has not accused either of these models of infringement (despite having their detailed manuals since May of 2007) and the sales of these products are extremely small in comparison to the models Papst accused of infringement (they account for substantially less than 1% of the sales of the accused models).  Casio Computer Co. has some documents showing the design and operation of the LV-10 and GV-10 but other documents would be in the custody of Mustek Systems Inc. and Primax Electronics, Ltd.  *See* Fee Decl. Ex. F.

Casio Japan sells the cameras to Casio America, and Casio America sells them in the United States. *See* Fee Decl. Ex. G.   The only intentional exception was an agreement Casio Japan had with Pentax from 2002-2004. *Id.* at ¶5.   If Papst articulates an infringement theory that could possibly cover sales in that period, Casio will produce related documents. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Papst makes the argument at page 6 of its memorandum that Casio is liable by inducement for sales outside the United States if there is an expectation that the products later will be sold in the United States in an infringing manner.[12]   This is a wild fishing expedition, and there is no such expectation. *See* Fee Decl. Ex. G.

The only other argument made by Papst is that these documents may be relevant to commercial success.   But Papst should be precluded from asserting any commercial success as a sanction for its refusal to comply with the Court's Orders (MDL docket #37, interrogatory 3). If the Court allows Papst to assert foreign commercial success, Casio will agree to provide sales summaries from Casio Japan to foreign countries.[13]

## 2.     The Control Issue

Even if Papst had some plausible theory of relevance of documents from foreign companies, and even if that relevance could somehow overcome the unthinkable burden to Casio to produce what Papst seeks from all Casio companies, Papst has made no showing that either

---

[12]     *DSU Med. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006).

[13]     *See, e.g., Minnesota Mining and Mfg. Co. v. Smith & Nephew PLC,* 3-91 CIV 274, 1992 U.S. Dist. LEXIS 22785, at *6-7 (N.D. Ill. July 27, 1992) ("limited discovery of . . . foreign sales information").

Casio party has control over the documents at foreign Casio companies. It is Papst's burden to prove control with specific facts, for each of these many companies.[14]

Papst is asking this Court to order a Japanese company to obtain massive amounts of confidential information from many foreign countries, including China, Korea, India, France, Germany, England, and Taiwan. Yet Papst does not say a word in its brief of the comity issues involved. Whether the documents Papst demands can be produced will depend in significant part on foreign law.[15]

### E.    Confidential Technical Documents – Papst Section III(E)

Pertinent confidential information on the operation of the cameras in the possession of Casio Japan is being produced now that the protective order issues are resolved.

### F.    Date for Production – Papst Section III(F)

Casio will undertake to produce additional documents relating to the patents-in-suit, if any, within two weeks, subject to resolution of pending motions.

### G.    Other Documents – Papst Section III(G)

**1.    Financial Documents**: As a result of the Court's April 8, 2008 Order bifurcating damages and staying discovery on this issue pending a determination of liability, Casio will not be producing documents responsive to these requests.

---

[14]    *Steele Software Sys., Corp. v. Dataquick Info. Sys., Inc.*, 237 F.R.D. 561, 565 (D. Md. 2006). As evidence of control, Papst presents at page 8 of its memorandum only a single page from a 2006 Casio Annual Report. It provides a list of related Casio companies and nothing more. It does not "demonstrate that Casio Japan is in control of twenty-seven other Casio entities likely to possess relevant information," as Papst claims.

[15]    *Cf. In re Ski Train Fire*, MDL No. 1428, 2006 U.S. Dist. LEXIS 29987, at *18 (S.D.N.Y. May 16, 2006) (considering Austrian law in connection with control issue); *Astra Aktiebolag, et. al. v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 97-98 (S.D.N.Y. 2002) (considering German law with regard to privilege issues).

2.      **Documents from all Casio Entities**:  Please see Section IV(D), above.

3.      **Computer systems**:  Papst does not attempt to explain how the full scope of these requested documents are relevant.  Absent such a showing, Papst's motion to compel the production of these documents should be denied.[16]

4.      **Other lawsuits**:  Papst requests production of all documents (including privilege and work product) related to every lawsuit worldwide, no matter what the legal or technical issues of the litigation.  Casio objects on grounds of relevance, undue burden, privilege, and work product.  These objections are consistent with objections Papst successfully made in another case on the exact issue.[17]

5.      **Prior Art**:  Contrary to the *Rohm and Haas* case, Papst requests prior art, with no explanation of how it could possibly be relevant or useful if Casio is not relying on it.  This request, as with so many others, is nothing but "make-work" for Casio.

6.      **Communications with customers**:  These documents have no relevance to this litigation, and would be extremely burdensome for Casio to collect and produce.  Papst's cited case does not support this request.

7.      **Identities of people and businesses**:  By demanding every document at every Casio company worldwide that identifies every officer, director, and person or entity involved in any way with the cameras for the last ten years (Requests 56, 57, 58, 66), Papst has chosen the discovery route that will increase Casio expense as much as possible, and Papst has

---

[16]    *See, e.g., India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 194 (E.D. Wis. 2006).

[17]    *In re: Papst,* 2001 U.S. Dist. LEXIS 10012 at *34-35 (denying discovery from other litigations and noting both parties' "ironic desire for, and abhorrence of, discovery concerning other litigation."); *see also id.* at *41 (Papst's objection to producing documents in other courts sustained in part, limiting the request to litigations on the patents-in-suit); *id.* at *55; *Payne v. Howard*, 75 F.R.D. 465, 469 (D.D.C. 1977) (denying motion due to the lack of specific showing of relevance of other litigations:  "Whether pleadings in one suit are 'reasonably calculated' to lead to admissible evidence in another suit is far from clear.  Fed. R. Evid. 401, 406.  In the Court's view, discovery of this type typically will *not* lead to admissible evidence.  *Id.*") (emphasis in original).

shown no need for it.  Indeed, Papst successfully objected to the same discovery request in a different litigation – an objection that carries much more force here as Papst demands the same thing for dozens of companies all over the world.[18]

**V.    CONCLUSION**

For all the foregoing reasons, we respectfully request that the Court deny the Papst motion in its entirety, and grant Casio fees and costs pursuant to Fed. R. Civ. P. 37.


Respectfully submitted,


DATED:  April 18, 2008              ___/s/ J. Kevin Fee___
                                    J. Kevin Fee (D.C. Bar No. 494016)
                                    Morgan, Lewis & Bockius LLP
                                    1111 Pennsylvania Avenue, NW
                                    Washington, D.C. 20004
                                    Tel.: (202) 739-3000
                                    Fax: (202) 739-3001

                                    Scott D. Stimpson (pro hac vice)
                                    The Law Office of Scott D. Stimpson
                                    Suite 1102
                                    445 Hamilton Avenue
                                    White Plains, New York 10601
                                    Tel: (203) 258-8412

                                    Attorneys for Plaintiff and Counter-Defendant Casio
                                    America, Inc. and Counter-Defendant Casio
                                    Computer Co., Ltd.

---

[18]    *In re: Papst*, 2001 U.S. Dist. LEXIS 10012 at *46 (sustaining Papst's objection to a document request because it "would require Papst Licensing to produce information about every employee, director and shareholder…."); *see also* *51 (sustaining Papst's objection to documents referring or relating to organizational structure as "overly broad").

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

This Document Relates To:

Casio, No. 06-cv-1751

Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880

## DECLARATION OF J. KEVIN FEE, ESQ.

I, J. Kevin Fee, hereby declare as follows:

1.     I am a partner at the law firm of Morgan, Lewis & Bockius LLP in the
Washington D.C. Office located at 1111 Pennsylvania Avenue, NW, Washington, D.C. 20004.

2.     I have been admitted to practice law in the District of Columbia since 2005.  I am
further admitted to practice law in the states of New York and Pennsylvania.

3.     Attached hereto as Exhibit A is a true and correct copy of Defendant Papst
Licensing GMBH & Co. KG's First Set of Interrogatories (Nos. 1-2), to Casio Computer Co.
Ltd., served on April 20, 2007.

4.     Attached hereto as Exhibit B is true and correct copy of Defendant Papst
Licensing GMBH & Co. KG's First Set of Interrogatories (Nos. 1-3) to Casio Inc., served on
April 20, 2007.

5.     Attached hereto as Exhibit C is true and correct copy of the Federal Trade
Commission's report "To Promote Innovation: The Proper Balance of Competition and Patent
Law and Policy", Ch. 3, pp. 38-43, October 2003.

6.     Attached hereto as Exhibit D is a true and correct copy of Casio Computer Co.,
Ltd.'s 2006 Corporate Report.

7.     Attached hereto as Exhibit E is a true and correct copy of Papst Licensing GMBH
& Co. KG's Proposed Order Granting Motion to Compel the Production of Documents, filed on
April 16, 2008 (Dkt. 55).

8.     Attached hereto as Exhibit F is a true and correct copy of the Declaration of
Satoshi Katakai.

1-NY/2303134.1

9.     Attached hereto as Exhibit G is a true and correct copy of the Declaration of Koichi Kaneda.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  April 18, 2008                    By: _____
                                              J. Kevin Fee

1-NY/2303134.1                           2



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASIO INC.

        Plaintiff,

      v.

PAPST LICENSING GMBH & CO. KG
        Defendant.

    Civil Action No. 1:06 CV 01751

    Judge: Gladys Kessler

PAPST LICENSING GMBH & CO. KG

        Counter-Plaintiff

      v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

        Counter-Defendants

**PAPST LICENSING GMBH & CO. KG'S
FIRST SET OF INTERROGATORIES TO CASIO COMPUTER CO., LTD.**

    Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant/Counter-Plaintiff, Papst Licensing GmbH & Co. KG ("Papst"), through counsel, requests Plaintiff/Counter-Defendant, Casio Computer Co., Ltd. ("Casio Japan"), to respond to each of the Interrogatories below.

**DEFINITIONS**

1.    "Counter-Defendant," "you," "your," and "Casio Japan" means (a) Casio Computer Co., Ltd., Casio Inc. and all of their parent corporations, predecessor corporations, successor corporations, subsidiary corporations, affiliated or related

companies, and groups and divisions thereof; (b) Casio Japan's present or past directors, officers, employees, agents, consultants, accountants, attorneys and independent contractors that have contractual relations with it; and (c) any person acting or purporting to act or, at the time of the stated subject matter, was acting or purporting to act for or on behalf Casio Japan or anyone under its control, direction or instruction.

2.      "Document" shall be construed in it broadest sense and shall mean all written, printed, typed, recorded, graphic, stenographic, computer-generated, computer-stored and electronically stored matter of every kind and description, however and by whomever produced, prepared, reproduced, disseminated, or made, including all originals, copies and drafts thereof and all attachments and appendices thereto, and shall also include audiovisual works and magnetic recordings of any type such as video tape recordings, slides, floppy and hard disks, audio recordings and photographic pictures or movies. A copy of any document that contains notes, sketches, annotations, highlighting, underlining or other markings, comments or modification on or of another document shall be considered a separate document.

3.      "Thing" has the broadest meaning accorded that term by Federal Rule of Civil Procedure 34, and includes every kind of physical specimen or tangible item, other than a document, in Your possession, custody or control.

4.      A request for a Document shall be deemed to include a request for a Thing. A request for a Thing shall be deemed to include a request for a Document.

5.      "Or" is inclusive referring to any one or more of the disjoined words or phrases listed.

6.      "Relating to," "relate to," "relation to," or "relating" means constituting,

2

discussing or referring to, analyzing, embodying, evidencing, consulting, recording, communicating, involving, describing, pertaining to, concerning, or containing, directly or indirectly in any way, the subject matter of the particular request.

7.    "Communication," "communicate" or "communicating" means every manner or means of disclosure, transfer or exchange, and every disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, telex, facsimile, personal delivery or otherwise.

8.    The term "Lawsuit" means any type of legal action including but not limited to lawsuits filed in federal or state courts, administrative proceedings, ITC proceedings, USPTO proceedings and international cases filed in any tribunal.

9.    The terms "identify" or "identity" or "identification" when used in connection with an individual means: state the individual's full name; his or her home and business addresses; his or her last known employer; his or her position, title, or job description; and if employed by You, the individual's dates and regular places of employment and general duties.

10.    The terms "identify" or "identity" or "identification" when used in connection with a company, corporation, association, partnership, joint venture, or any legal entity other than a natural person means; state its full name and type of organization or entity; state the address of its principal place of business, its date and place of incorporation; and identify its officers, directors, and managing agents.

11.    The terms "identify" or "identity" or "identification" when used in connection with an oral statement or discussion means: state the name of the speaker; the date of the statement; the place at which the statement was made; the person or persons to

whom the statement was addressed, if practicable, and otherwise a general description of the persons to whom the statement was addressed; the subject matter of the statement; and if the statement was memorialized in writing or mechanical or other recording, state the date and present location of said recording.

12.    The terms "identify" or "identity" or "identification" when used in connection with a written document or statement means; state the name of the author, the type of document or writing, the date, the addressee, or recipient, if practicable, and otherwise a general description of the persons to whom the writing was distributed, the subject matter, and the present location.  In lieu of such identification, You may attach a copy of the written containing said written statement and refer thereto in Your answer.

13.    As used herein, "Casio Digital Camera" shall mean all designs, implementations, models, and versions of all Casio digital cameras capable of transferring picture information to another device.

14.    "Patents-in-Suit" refers to United States Patent No. 6,895,449 ("the '449 patent") and United States Patent No. 6,470,399 ("the '399 patent").

## INSTRUCTIONS

1.    Where knowledge or information in Your possession is requested, the request extends to knowledge or information in the possession of Your agents, representatives, and attorneys.  Whenever an answer to these interrogatories contains information that is not based upon Your personal knowledge, state the source and the nature of such information.

2.    Answer all of the interrogatories completely.  If You contend that the answer to any interrogatory is privileged in whole or in part, state all facts supporting such privilege,

4

and identify each person having knowledge of the factual basis on which the privilege is asserted. Answer should be made of all knowledge and information which is not privileged.

3.     If You have no knowledge or information responsive to a particular interrogatory, please state such.

4.     These interrogatories shall be deemed continuing and Casio Japan shall supplement and seasonably amend its responses as required under the Federal Rules.

5.     If an objection is made to any interrogatory, answer should be made of all knowledge and information to which the objection does not relate.

6.     If Casio Japan finds the meaning of any term in these interrogatories unclear, Casio Japan shall assume a reasonable meaning, state what the assumed meaning is, and respond to the interrogatory according to the assumed meaning.

7.     Unless otherwise specified, the interrogatories below are not limited to the knowledge or information in the United States. Instead, they relate to any such knowledge or information in any country.

8.     The phrase "Identify any entity or person involved in the research, development, design, re-design, prototype production, testing, licensing, manufacturing, commercial production, sale, offer for sale or importation for each Casio Digital Camera used, manufactured, sold, offered for sale, licensed or imported into the United States" shall mean:

> a.     For each entity or person identified, describe what each entity or individual did in the research, development, design, re-design, prototype production, testing, licensing, manufacturing, commercial production, sale, offer for sale or importation for each

5

Casio Digital Camera; the corresponding time period(s) in which each entity or person was involved in the research, development, design, re-design, prototype production, testing, licensing, manufacturing, commercial production, sale, offer for sale or importation for each Casio Digital Camera; and each individual's title and employer during those corresponding time period(s);

b.     Identify all documents (by Bates Number) showing the identity of any entity or person involved in the research, development, design, re-design, prototype production, testing, licensing, manufacturing, commercial production, sale, offer for sale or importation for each Casio Digital Camera.

## PAPST'S INTERROGATORIES

**INTERROGATORY NO. 1:**     Identify any entity or person involved in the research, development, design, re-design, prototype production, testing, licensing, manufacturing, commercial production, sale, offer for sale or importation for each Casio Digital Camera used, manufactured, sold, offered for sale, licensed or imported into the United States after October 22, 2002.

**INTERROGATORY NO. 2:**     Separately with respect to each of the Patents-In-Suit, state:

    (A)    The dates upon which, and the circumstances under which, Casio first became aware of the Patents-In-Suit, and the persons who became aware of them;

    (B)    Whether Casio received legal advice at any time, including after the filing of the Complaint, that it did not infringe each of the patents in suit, or that each of the Patents-In-Suit was invalid or unenforceable and, if so, identify the date upon which, and the circumstances under which Casio obtained such legal advice, or caused any studies relating to such advice to be made, as well as any oral or written opinion of legal counsel, with respect to:

        (i)    the infringement or non-infringement of the Patents-In-Suit; and/or

        (ii)    the validity, invalidity, enforceability or unenforceability of the Patents-In-Suit;

(C)    Identify all persons having knowledge of the subject matter of Casio's

response to this interrogatory, and locate and identify all documents

pertaining to the subject matter of Casio's response to this interrogatory;

and

(D)    Identify all discussions, communications, events or documents that relate

to or refer to any legal advice received by Casio with respect to:

(i)    the infringement or non-infringement of the Patents-In-Suit; and/or

(ii)    the validity, invalidity, enforceability or unenforceability of the

Patents-In-Suit.


Dated:  April 20, 2007


 /s/ Joseph E. Cwik
Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza ● 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

Campbell Killefer (Bar No. 268433)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000
**Attorneys      for      Defendant/Counter-
Plaintiff, Papst Licensing GmbH & Co.
KG**

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing PAPST LICENSING GMBH & CO. KG'S FIRST SET OF INTERROGATORIES TO CASIO COMPUTER CO., LTD. was served on this the 20th day of April, 2007 upon the attorneys for Casio Inc. as follows:

**VIA U.S. MAIL and E-MAIL**
J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Counsel for Casio Inc.

**VIA U.S. MAIL And E-MAIL**
Scott Simpson
Jeffrey Gold
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178

/s/ Joseph E. Cwik
Attorney for Papst Licensing GmbH & Co. KG

EXHIBIT

B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASIO INC.

        Plaintiff,

      v.

PAPST LICENSING GMBH & CO. KG
      Defendant.

_____

PAPST LICENSING GMBH & CO. KG

        Counter-Plaintiff

      v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

        Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge: Gladys Kessler

**PAPST LICENSING GMBH & CO. KG'S**
**FIRST SET OF INTERROGATORIES TO CASIO INC.**

     Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant/Counter-Plaintiff, Papst Licensing GmbH & Co. KG ("Papst"), through counsel, requests Plaintiff/Counter-Defendant, Casio Inc. ("Casio"), to respond to each of the Interrogatories below.

**DEFINITIONS**

    1.   "Plaintiff," "you," "your," and "Casio" means (a) Casio Inc., Casio Computer Co., Ltd. and all of their parent corporations, predecessor corporations, successor corporations, subsidiary corporations, affiliated or related companies, and

groups and divisions thereof; (b) Casio's present or past directors, officers, employees, agents, consultants, accountants, attorneys and independent contractors that have contractual relations with it; and (c) any person acting or purporting to act or, at the time of the stated subject matter, was acting or purporting to act for or on behalf Casio or anyone under its control, direction or instruction.

2.    "Document" shall be construed in it broadest sense and shall mean all written, printed, typed, recorded, graphic, stenographic, computer-generated, computer-stored and electronically stored matter of every kind and description, however and by whomever produced, prepared, reproduced, disseminated, or made, including all originals, copies and drafts thereof and all attachments and appendices thereto, and shall also include audiovisual works and magnetic recordings of any type such as video tape recordings, slides, floppy and hard disks, audio recordings and photographic pictures or movies. A copy of any document that contains notes, sketches, annotations, highlighting, underlining or other markings, comments or modification on or of another document shall be considered a separate document.

3.    "Thing" has the broadest meaning accorded that term by Federal Rule of Civil Procedure 34, and includes every kind of physical specimen or tangible item, other than a document, in Your possession, custody or control.

4.    A request for a Document shall be deemed to include a request for a Thing. A request for a Thing shall be deemed to include a request for a Document.

5.    "Or" is inclusive referring to any one or more of the disjoined words or phrases listed.

6.    "Relating to," "relate to," "relation to," or "relating" means constituting,

discussing or referring to, analyzing, embodying, evidencing, consulting, recording, communicating, involving, describing, pertaining to, concerning, or containing, directly or indirectly in any way, the subject matter of the particular request.

7.     "Communication," "communicate" or "communicating" means every manner or means of disclosure, transfer or exchange, and every disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, telex, facsimile, personal delivery or otherwise.

8.     The term "Lawsuit" means any type of legal action including but not limited to lawsuits filed in federal or state courts, administrative proceedings, ITC proceedings, USPTO proceedings and international cases filed in any tribunal.

9.     The terms "identify" or "identity" or "identification" when used in connection with an individual means: state the individual's full name; his or her home and business addresses; his or her last known employer; his or her position, title, or job description; and if employed by You, the individual's dates and regular places of employment and general duties.

10.     The terms "identify" or "identity" or "identification" when used in connection with a company, corporation, association, partnership, joint venture, or any legal entity other than a natural person means; state its full name and type of organization or entity; state the address of its principal place of business, its date and place of incorporation; and identify its officers, directors, and managing agents.

11.     The terms "identify" or "identity" or "identification" when used in connection with an oral statement or discussion means: state the name of the speaker; the date of the statement; the place at which the statement was made; the person or persons to

whom the statement was addressed, if practicable, and otherwise a general description of the persons to whom the statement was addressed; the subject matter of the statement; and if the statement was memorialized in writing or mechanical or other recording, state the date and present location of said recording.

12.     The terms "identify" or "identity" or "identification" when used in connection with a written document or statement means; state the name of the author, the type of document or writing, the date, the addressee, or recipient, if practicable, and otherwise a general description of the persons to whom the writing was distributed, the subject matter, and the present location. In lieu of such identification, You may attach a copy of the written containing said written statement and refer thereto in Your answer.

13.     As used herein, "Casio Digital Camera" shall mean all designs, implementations, models, and versions of all Casio digital cameras capable of transferring picture information to another device, that have been used, manufactured, sold, offered for sale, licensed or imported into the United States since October 22, 2002.

14.     "Patents-in-Suit" refers to United States Patent No. 6,895,449 ("the '449 patent") and United States Patent No. 6,470,399 ("the '399 patent").

## INSTRUCTIONS

1.     Where knowledge or information in Your possession is requested, the request extends to knowledge or information in the possession of Your agents, representatives, and attorneys. Whenever an answer to these interrogatories contains information that is not based upon Your personal knowledge, state the source and the nature of such information.

2.     Answer all of the interrogatories completely. If You contend that the answer

4

to any interrogatory is privileged in whole or in part, state all facts supporting such privilege, and identify each person having knowledge of the factual basis on which the privilege is asserted. Answer should be made of all knowledge and information which is not privileged.

3.      If You have no knowledge or information responsive to a particular interrogatory, please state such.

4.      These interrogatories shall be deemed continuing and Casio shall supplement and seasonably amend its responses as required under the Federal Rules.

5.      If an objection is made to any interrogatory, answer should be made of all knowledge and information to which the objection does not relate.

6.      If Casio finds the meaning of any term in these interrogatories unclear, Casio shall assume a reasonable meaning, state what the assumed meaning is, and respond to the interrogatory according to the assumed meaning.

7.      Unless otherwise specified, the interrogatories below are not limited to the knowledge or information in the United States. Instead, they relate to any such knowledge or information in any country.

8.      The phrase "Describe in full and complete detail how each Casio Digital Camera does not infringe each of the Patents-in-Suit" shall mean:

         a.      Describe in full and complete detail the meaning of each term and each claim element in each claim and the basis for Casio's alleged meaning of each term and each claim element, including, but not limited to, an identification and explanation of all documents and other evidence that concerns and/or supports the interpretation of each phrase and each claim element;

5

b.   Provide a full and complete identification and description of each Casio Digital Camera, including a full and complete identification of all documents that concern or describe the operation and/or construction of each Casio Digital Camera;

c.   Provide a full and complete explanation of how any and all claim elements do not read on each Casio Digital Camera; and

d.   Provide an identification of all documents and things that support in any way Casio's Complaint, Answer or Affirmative Defenses and a full and complete explanation of how they support Casio's Complaint, Answer or Affirmative Defenses.

e.   Describe, for each and every claim element, whether any non-infringement is literal non-infringement and/or non-infringement under the doctrine of equivalents.

9.   The phrase "Describe in full and complete detail the bases for the allegations in Casio's Complaint that the Patents-in-Suit are invalid for failing to comply with the patent laws of the United States" shall mean:

a.   Describe in full and complete detail the meaning of each term and each claim element in each claim and the basis for Casio's alleged meaning of each term and each claim element, including, but not limited to, an identification and explanation of all documents and other evidence that concerns and/or supports the interpretation of each phrase and each claim element;

b.   Provide a full and complete identification and description of each

6

alleged prior art reference, including a full and complete identification of all documents that concern or describe each prior art reference, including all documents that provide written corroboration that any actual product constituting alleged prior art was or was not on sale or sold anywhere in the world;

c.   Provide a full and complete explanation of how any and all prior art reference(s), in combination or alone, read on each element of each claim of the Patents-In-Suit;

d.   Provide an identification of all documents and things that support in any way Casio's Complaint, Answer or Affirmative Defenses and a full and complete explanation of how it supports Casio's Complaint, Answer or Affirmative Defenses;

e.   For any invalidity assertion under 35 U.S.C. § 103, provide a full and complete explanation how each prior art reference teaches, suggests or otherwise provides a motivation to combine with any other prior art reference;

f.   Provide a full and complete explanation of why the Patents-In-Suit are invalid for failing to comply with 35 U.S.C. § 112.

## PAPST'S INTERROGATORIES

**INTERROGATORY NO. 1:**    Describe in full and complete detail how each Casio Digital Camera does not infringe each of the Patents-in-Suit.

**INTERROGATORY NO. 2:**    Describe in full and complete detail the bases for the allegations in Casio's Complaint that the Patents-in-Suit are invalid for failing to comply with the patent laws of the United States.

**INTERROGATORY NO. 3:**    Separately with respect to each of the Patents-In-Suit, state:

   (A)    The dates upon which, and the circumstances under which, Casio first became aware of the Patents-In-Suit, and the persons who became aware of them;

   (B)    Whether Casio received legal advice at any time, including after the filing of the Complaint, that it did not infringe each of the patents in suit, or that each of the Patents-In-Suit was invalid or unenforceable and, if so, identify the date upon which, and the circumstances under which Casio obtained such legal advice, or caused any studies relating to such advice to be made, as well as any oral or written opinion of legal counsel, with respect to:

      (i)    the infringement or non-infringement of the Patents-In-Suit; and/or

      (ii)    the validity, invalidity, enforceability or unenforceability of the

8

Patents-In-Suit;

(C)    Identify all persons having knowledge of the subject matter of Casio's response to this interrogatory, and locate and identify all documents pertaining to the subject matter of Casio's response to this interrogatory; and

(D)    Identify all discussions, communications, events or documents that relate to or refer to any legal advice received by Casio with respect to:

    (i)    the infringement or non-infringement of the Patents-In-Suit; and/or

    (ii)    the validity, invalidity, enforceability or unenforceability of the Patents-In-Suit.

Dated:  April 20, 2007

        /s/ Joseph E. Cwik
        Jerold B. Schnayer
        Joseph E. Cwik
        WELSH & KATZ, LTD.
        120 South Riverside Plaza • 22nd Floor
        Chicago, Illinois 60606
        (312) 655-1500

        Campbell Killefer (Bar No. 268433)
        VENABLE LLP
        575 7th Street, N.W.
        Washington, D.C. 20004
        (202) 344-4000
        **Attorneys for Defendant/Counter-Plaintiff, Papst Licensing GmbH & Co. KG**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing PAPST LICENSING GMBH & CO. KG'S FIRST SET OF INTERROGATORIES TO CASIO INC.was served on this the 20th day of April, 2007 upon the attorneys for Casio Inc. as follows:

### VIA U.S. MAIL and E-MAIL
J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Counsel for Casio Inc.

### VIA U.S. MAIL AND E-MAIL
Scott Simpson
Jeffrey Gold
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178

/s/ Joseph E. Cwik
Attorney for Papst Licensing GmbH & Co. KG

10



 FEDERAL TRADE COMMISSION 

# To Promote Innovation:
## The Proper Balance of
## Competition and Patent Law and Policy



### A Report by the Federal Trade Commission
### October 2003









In their business survey, Professors Hall and Ziedonis concluded that semiconductor firms with large sunk costs in complex manufacturing facilities started to patent defensively in the 1980s to reduce, among other things, "concerns about being held up by external patent owners."[237] These concerns stemmed in part from Polaroid's successful patent infringement suit against Kodak.[238] One industry participant interviewed by Professors Ziedonis and Hall stated, "a preliminary injunction would be detrimental to a firm if it means shutting down a high-volume manufacturing facility; loss of one week's production alone can cost millions of dollars."[239] Firms in the computer hardware industries responded to the possibility of having their production enjoined by accumulating large patent portfolios. If a rival company sought to employ a hold-up strategy against them, they would draw on their portfolio to assert patent infringement counterclaims against that rival, resulting in what panelists described as "mutually assured destruction" or "MAD."[240]

(i).     The Rise of Non-Practicing Entities

The potential for hold-up to result in mutually assured destruction means firms actively participating in the industry – patent practicing entities (PPEs) – are unlikely to employ this strategy against each other.[241] Panelists, however, identified firms referred to as non-practicing entities (NPEs) that can successfully employ a hold-up strategy without fear of retaliation.[242] NPEs obtain and enforce patents against other firms, but either have no product or do not create or sell a product that is vulnerable to infringement countersuit by the company against which the patent is being enforced. As discussed *supra* in Chapter 2, MAD strategies to mitigate hold-up will not work against NPEs, who are not susceptible to the threat of a countersuit shutting down their production.[243] In contrast, NPEs can threaten PPEs with patent infringement and an injunction, which, if granted, could inflict substantial losses.[244]

Panelists identified three types of NPEs in the computer hardware industry: (1) non-practicing design firms, which patent their inventions but do not make or sell patented products to consumers; (2)

---

[237] Hall & Ziedonis, 32 RAND J. ECON. at 104; *see also* Box 3-6; Rosemarie Ziedonis, *When the Giants' Shoulders are Crowded: Fragmented Rights and Patent Strategies in Semiconductors* 4 (July 2002) *in draft at* http://www.isnie.org/ISNIE02/Papers02/ziedonis.pdf.

[238] *See* Hall & Ziedonis, 32 RAND J. ECON. at 109.

[239] *Id.*; *see generally* John R. Boyce & Aidan Hollis, *Innovation, Imitation & Preliminary Injunctions in Patents* (Public Comment), at http://www.ftc.gov/os/comments/intelpropertycomments/02 05xxhollis.pdf.

[240] *See* Hall 2/28 at 662; Detkin 2/28 at 669; Poppen 2/28 at 684-85; Barr 2/28 at 713; *see also* Hall & Ziedonis, 32 RAND J. ECON. at 109.

[241] *See* Poppen 2/28 at 684-86.

[242] *See* Rhoden 2/28 at 723-24; Carl Shapiro, *Technology Cross-Licensing Practices: FTC v. Intel (1999)*, *in* 4 THE ANTITRUST REVOLUTION: ECONOMICS, COMPETITION AND POLICY 350, 356 (John E Kwoka, Jr. & Lawrence J. White eds. 2004).

[243] *See* Poppen 2/28 at 685-89; Detkin 2/28 at 671-72.

[244] *See* Poppen 2/28 at 685-89; Detkin 2/28 at 671-72; Hall & Ziedonis, 32 RAND J. ECON. at 109. For additional discussion of issues raised by NPE conduct, *see supra* Ch. 2(III)(C)(2) and Second Report (forthcoming).

"professional" patent assertion companies that buy patents from other companies, particularly those that are bankrupt, and then assert them against practicing entities; and (3) "patent miners," which are companies that assert their patent portfolios against firms outside of their business.[245]

Professor Ziedonis noted that the number of cases filed by NPEs has increased since the mid-1980s, and that the sale of patents by failing companies has increased since the 1990s.[246] One third of the patent

lawsuits filed by a group of 136 companies, for example, involved patents not invented by the company.[247] Two panelists confirmed that an increasing number of companies are seeking to buy and sell the patent portfolios of failing companies to assert against other firms.[248] In their business analysis of licensing practices in the semiconductor and electronics industry, Professors Grindley and Teece observe that "occasionally, firms can purchase a portfolio of patents with which to establish cross-licensing relationships; but quality patents often are not available in this fashion."[249]

(ii)    Hold-Up and Patent Thickets

In industries such as the computer hardware industries, where innovation is cumulative, panelists noted that hold-up is more likely to occur, because the presence of a patent thicket makes patent infringement very difficult to avoid.[250] As Professor Shapiro observed, participants in the semiconductor industry receive "thousands of patents . . . each year and manufacturers can potentially infringe on hundreds of patents with a single product."[251] Another panelist stated that "the large number of

---

[245] See Poppen 2/28 at 685-88; Detkin 2/28 at 672.

The panelists discussed two reasons for the emergence of "patent mining" by companies. First, the need to patent defensively has forced many firms to develop extensive patent portfolios, at considerable cost. One business representative stated that it costs about $200,000 to maintain a patent worldwide over a period of 20 years. See Brunt 3/20 at 25. Panelists reported that some companies have sought to offset these costs by seeking to license their patents to other companies, particularly companies that operate outside the market of the patent holder, because a higher royalty can be extracted due to an imbalance in bargaining positions. See id.; Poppen 2/28 at 684; Thurston 3/20 at 34.

Second, panelists contended that business attitudes towards patents have changed since the 1980s. The management of some companies, some asserted, have begun to treat patents as an asset that must generate a return, instead of as a means to exclude parties from a particular invention. See Wolin 3/20 at 81. Panelists cited two examples to support this change in attitude. First, a number of panelists mentioned Texas Instruments, which successfully instigated a patent mining program in the late 1980s to save the company from bankruptcy, and thereby became an example to other companies of how to mine their patents. See Thurston 3/20 at 28-29; Wolin 3/20 at 81; Ziedonis 3/20 at 83; Telecky 2/28 at 653; Macher et al., Semiconductors at 281; Grindley & Teece, 39 CAL. MGMT. REV. at 20. Second, a widely read book in business circles entitled Rembrandts in the Attic encourages managers to generate revenue from their patents by mining them. See Hughes 2/28 at 614; KEVIN G. RIVETTE & DAVID KLINE, REMBRANDTS IN THE ATTIC: UNLOCKING THE HIDDEN VALUE OF PATENTS (Harvard Business School Press 1999).

[246] See Ziedonis 3/20 at 71, 73-74.

---

[247] See Ziedonis 3/20 at 73-74.

[248] See Thurston 3/20 at 75; Wolin 3/20 at 76.

[249] Grindley and Teece, 39 CAL. MGMT. REV. at 31; see also Shapiro 11/6 at 176 (observing that "I've even seen a situation where a portfolio was split up and some patents split off to a third party who had no other commercial interests, so they could assert it most aggressively against other industry players.").

[250] See Barr 2/28 at 676; Hall & Ziedonis, 32 RAND J. ECON. at 110.

[251] See Shapiro, Navigating the Patent Thicket at 125.

issued patents in our field makes it virtually impossible to search all potentially relevant patents, review the claims, and evaluate the possibility of an infringement claim or the need for a license."[252] This problem of unavoidable patent infringement is heightened, commentators stated, by the risk of patent applications still pending and unpublished by the PTO after a company has sunk significant costs in a new product.[253]

Commentators have also observed that companies seeking to hold up rivals can set the licensing fees below the cost of litigation, including the managerial distraction, so as to make the taking of a license the only economically sensible alternative, regardless of the strength of the patent.[254] Professor Shapiro contends that the lack of effective mechanisms to challenge questionable patents, the presumption of validity, and "a patent office that is generous to patent applicants" also facilitate the use of hold-up strategies by NPEs.[255] Several panelists asserted that companies can use a continuation on their own patent application deliberately to delay

patent issuance by the PTO.[256] This enables such companies, one panelist asserted, to tailor their patent claims to cover a rival's product using insights gained from reverse-engineering that product.[257]

### (iii).    The Potential for Hold-Up to Harm Consumers

Commentators identified four ways that hold-up can harm competition and innovation. First, obtaining a license after costs have been sunk will result in a higher royalty to the NPE than if a license were negotiated prior to the sinking of costs.[258] One reason for this higher royalty is that PPEs obtaining a license under threat of hold-up typically do not have the option of designing around the patent the NPE asserted, because redesigning a product after significant costs have been sunk is usually not economically viable.[259] According to Professor Shapiro, the higher royalty paid by companies subject to a hold-up strategy may result in higher prices to consumers, inefficiently low use of the affected

---

[252] Robert Barr, *Statement* (2/28/02) 1, *at* http://www.ftc.gov/opp/intellect/barrrobert.doc (hereinafter Barr (stmt)).

[253] *See* Barr 2/28 at 676; Shapiro, *Navigating the Patent Thicket* at 125-26. *See supra* Ch. 2(III)(C) and *infra* Chs. 4(II)(C)(1) and 5(II)(C)(4).

[254] *See* Ziedonis 3/20 at 71-72; Barr 2/28 at 680 and (stmt) 2; Mark A. Lemley, *Rational Ignorance at the Patent Office*, 95 Nw. L.Rev. 1495, 1517 (2001) (noting that "patent owners might try to game the system by seeking to license even clearly bad patents for royalty payments small enough that licensees decide that it is not worth going to court").

[255] Shapiro, *Technology Cross-Licensing Practices: FTC v. Intel (1999)* at 355.

[256] *See* Poppen 2/28 at 687-88; McCurdy 3/20 at 37; Mar-Spinola 2/28 at 715-16; Barr 10/30 at 146-47; *see also infra* Ch. 4(II)(C)(1).

[257] *See* Poppen 2/28 at 688.

[258] *See* Shapiro, *Navigating the Patent Thicket* at 125.

[259] *See* Shapiro, *Navigating the Patent Thicket* at 125; Barr (stmt) 2-3; Rosemarie Ziedonis, *When the Giants' Shoulders are Crowded: Fragmented Rights and Patent Strategies in Semiconductors* at 8. Just as an NPE may wish to set the royalty fee it seeks at just below what it would cost the "held up" firm to litigate the validity or infringement of the NPE's patent, so an NPE may wish to set its requested royalty fee at just below what it would cost the firm to redesign around the patent.

products, and deadweight loss.[260]  The cumulative effect of many such licenses may exacerbate these effects.[261]  Second, innovation may suffer because some companies will "refrain from introducing certain products for fear of hold-up."[262]

Third, by seeking royalties below the cost of challenging a patent's validity, NPEs can obtain royalties on improperly granted patents.  Royalties on improperly granted patents cause an inefficient allocation of society's resources and a transfer that "encourages patenting and discourages competition to a greater extent than is socially optimal."[263]  One panelist observed that NPEs can use this same strategy to induce PPEs to obtain licenses for patents that are likely not infringed by the PPE's product.[264]  Finally, a number of panelists representing manufacturing firms contended that hold-up causes a wealth transfer from firms engaged in innovation that results in benefits to firms that are simply exploiting the patent system without benefitting consumers.[265]  One panelist, however,

responded that "we're not sure that in every instance where there's a patentee with no product, that they haven't legitimately contributed something to the fund of human knowledge."[266]

## F.    Tools to Navigate the Patent Thicket

The panelists discussed three licensing strategies that firms can use to navigate patent thickets:  (1) cross-licensing; (2) patent pooling; and (3) standard setting. The panelists generally agreed that each strategy, despite involving certain transaction costs, has been effective in clearing the patent thicket.[267]

### 1.    Cross-Licensing

Cross-licensing is one of the mechanisms used by integrated firms and hardware companies in particular to obtain design freedom when a patent thicket exists.[268]  The main variables are:  (1) the number of patents at issue; and (2) the use of balancing payments (*i.e.*, monetary payments to even out the value of the portfolios being cross-licensed).[269]  The

---

[260] See Shapiro, *Navigating the Patent Thicket* at 125; Poppen 2/28 at 690.

[261] See Shapiro, *Navigating the Patent Thicket* at 126.

[262] *Id.*; *see also* Grindley & Teece, 39 CAL. MGMT. REV. at 20.

[263] Lemley, 95 NW. L. REV. at 1517.

[264] Barr (stmt) 2-3.

[265] See Poppen 2/28 at 689-90; Barr 2/28 at 679 and (stmt) 1-3 (the exploitation of the patent system as a revenue-generating tool in its own right has hindered true innovation and outweighed the benefits); Detkin 2/28 at 673 and 728-30. Another concern expressed was that hold-up may force innovative firms to move their manufacturing and sales operations offshore to minimize their exposure to such strategies.

[266] Telecky 2/28 at 703.

[267] See Grindley & Teece, 39 CAL. MGMT. REV. at 16; Detkin 2/28 at 711 (stating that hold-up is the problem, not thickets).

[268] See McCurdy 3/20 at 67 (noting the greater prevalence of cross-licensing in semiconductors and information technology industries than in pharmaceuticals). For a discussion of the antitrust treatment of cross-licensing, *see* Second Report (forthcoming).  For an historical overview of licensing practices at Texas Instruments, *see* E. Thompson 11/6 at 9-11.

[269] See McCurdy 3/20 at 67-69.

number of patents that are cross-licensed can vary from two to a complete patent portfolio, which might include thousands of patents. Balancing payments are often negotiated by the parties and are used to address a relative imbalance in patent portfolio size or quality.[270]

One panelist outlined three factors his company considers when deciding whether to license: (1) potential patent infringement claims the prospective licensee might have against his company; (2) potential patent infringement claims his company has against the prospective licensee; and (3) the relative interest of the parties in reaching a cross-licensing arrangement.[271] According to another panelist, integrated firms and hardware companies usually settle cross-licensing negotiations without filing lawsuits.[272]

## 2.    Patent Pools

The centralized management that patent pools entail may help in avoiding the royalty stacking/complements problems that economists have suggested may develop when multiple patents are needed for follow-on activities, and each patentee independently determines its own royalty

rates.[273]  One panelist stated that "patent pools have become critically important mechanisms for enabling widespread use of new technologies that require access to a multitude of patents dispersed among a multitude of parties."[274]

That panelist expressed two concerns, however, about the use of patent pools.  First, he stated that some patent holders with critical patents avoid *ex ante* negotiations by asserting that the antitrust laws prevent them from negotiating royalties prior to selection of the specific patents in the pool.[275]  He argued that the negotiation of the royalty in advance of the selection of specific patents in the pool was preferable.[276]  Second, he contended that applicants should be able to choose which patents they license from a patent pool, rather than be forced to take a license for the totality of patents, which is the most commonly used approach.[277]

---

[270]  *See id.* at 69, 72.

[271]  *See* Detkin 2/28 at 669-70 (stating that Intel considers three things when deciding whether to license: "What have they got on us, what do we have on them, and who cares?").

[272]  *See* McCurdy 3/20 at 69.  For a discussion of some of the antitrust issues raised by cross-licensing, *see* Second Report (forthcoming).

[273]  *See* Barr 2/28 at 733 (finding patent pools useful for consolidating administration and limiting royalty stacking problems).  *See generally supra* Ch. 2(III)(C)(3) (discussing royalty stacking and Cournot's complements problem).

[274]  Fox 2/28 at 700.

[275]  *See id.* at 732; *see also* Second Report (forthcoming).

[276]  *See* Fox 2/28 at 737, 732 (suggesting that lower royalties or better terms might be negotiated in return for accepting the patent into the pool).  For analysis of analogous issues raised by *ex ante* negotiations involving standard-setting bodies, *see* Second Report (forthcoming).

[277]  *See* Fox 2/28 at 699.  For analysis of the relevant antitrust considerations, *see* Second Report (forthcoming).

### 3.    Standard-Setting

By establishing rules governing access to the intellectual property embodied in their standards, standard-settings organizations (SSOs) can clear patent thickets that otherwise might stand in the way of follow-on innovation. Professor Lemley, who recently conducted a study of SSOs, found them most active "in industries in which it looks like patent hold-up is the biggest problem [such as] in computers, in semiconductors . . . [but not in] pharmaceuticals, in biotechnology, and so forth."[278] Without a way to "clear[]" intellectual property rights held by "dozens or hundreds of different parties," he warned, "nobody's going to be able to make a product that works with a particular technical standard."[279] Professor Lemley found that 17 of the 21 SSOs studied in fact required "some form of licensing . . . [m]ost commonly . . . on 'reasonable and non-discriminatory terms.'"[280]

## G.    Conclusion

Panelists in the hardware and semiconductor industries emphasized competition as a driver of innovation. Trade secret protection also contributes to innovation in these industries. Testimony regarding the role of patents was mixed. The record generally corresponded with the results obtained by Professors Cohen,

Nelson, and Walsh in their business survey of appropriability mechanisms for firms in the United States: the semiconductor industry was among the least reliant on patents to appropriate returns on investment in R&D.[281] Panelists, however, also identified an exception to these results: patents are a driver of innovation for design firms.

The hearing record highlighted many of the issues that economists suggested might arise in contexts that involve cumulative innovation and a multiplicity of patents. Specifically, the participants from these industries confirmed a trend toward defensive patenting and stated that patents can deter innovation: (1) by contributing to patent thickets, and (2) through their use by NPEs to hold up PPEs. Panelists also observed that various patent licensing arrangements – cross-licensing, patent pools, and the licensing requirements of standard setting organizations – have helped to mitigate the potential harm to innovation caused by patent thickets.

---

[278] Lemley 4/18 at 35-37. Of course, other factors, such as considerations of achieving compatibility and network effects, also might explain this result.

[279] *Id.* at 20.

[280] *Id.* at 23. Certain of the antitrust issues raised by SSO activities are discussed in Second Report (forthcoming).

[281] *See* COHEN ET AL., PROTECTING THEIR INTELLECTUAL ASSETS.



Casio
Corporate Report
2006

Successful Business for a Sustainable World

CASIO



Contact Information

**Casio Computer Co., Ltd.**
http://world.casio.com

For inquiries on CSR in general:
CSR Operations Section
Casio Computer Co., Ltd.
1-6-2 Honmachi, Shibuya-ku Tokyo 151-8543
Tel +81-3-5334-4901 Fax +81-3-5334-4547
Email csr-report@casio.co.jp

For enquiries on environmental issues:
Environment Center
Casio Computer Co., Ltd.
3-2-1 Sakae-cho, Hamura-shi Tokyo 205-8555
Tel +81-42-579-7256 Fax +81-42-579-7718
Email eco-report@casio.co.jp

Published: December 2006

Introduction

## Growing with Society through Creativity and Contribution

"Let's build the ideal calculator with our very own hands." This was the mantra adopted by the four Kashio brothers as they developed a calculator that used only electrical circuits—back when gear-operated mechanical calculators were the only available technology. By 1957, the four brothers had already succeeded, introducing the world's first small, fully electric calculator (the "14-A"), and founding Casio Computer Co., Ltd.

Ever since, Casio has been leveraging its digital technologies to advance into new business fields—timepieces, musical instruments, and LCD monitors, to name a few. Casio's dynamism comes from its profound ability to develop innovative products that meet latent but universal needs. Again and again, Casio has defied conventional wisdom to give people the things they really need but haven't even thought of yet. The company is contributing to societies around the world by delivering convenience and entertainment, creating new markets, and facilitating cultural development.

True to its corporate creed, "Creativity and Contribution," Casio's greatest responsibility is improving people's lives by developing groundbreaking new products. Along with this core commitment, Casio is proud to say that all of its employees have, as part of their job descriptions, determined their own personal commitment to social contribution. The goal of the company and all of its people is to grow, by helping society to grow.

# Contents

Message from the President of Casio's Social Responsibility

### Company Profile
History of Casio .......................................... 02
Business Outline .......................................... 04
Casio's Unique Strength .................................. 12

### CSR Highlights
Research & Development—Next Generation Fuel Cell
Production—Yamagata Casio Factory (the 2006 Nikkei "Monozukuri" Grand Prix
Social Contribution—Factory Tours for 10,000 People
Environment—Initiatives to Help Prevent Global Warming: Working to Achieve
Fiscal 2011 Targets .................................................... 16
European Regulatory Initiatives ...................................... 20
                                                                       21

### CSR Management
Corporate Creed and Charter of Creativity ........................... 22
Corporate Governance ............................................... 23
Compliance and Risk Management .................................... 24

### Responsibility to the Market
Responsibilities to Customers—Customer Satisfaction and
Quality Assurance .................................................. 26
Responsibilities to Suppliers—Building Strong Partnerships .......... 28
Responsibilities to Shareholders—Optimum
Shareholder Return and Information Disclosure ...................... 29
Responsibilities to Customers—Research and Development of
Next Generation Products

### Responsibility to the Environment
Environmental Management Vision .................................... 30
Casio Environment Charter and Casio Environmental
Environmental Policies ............................................... 31
Environmental Action Plan, "Clean & Green 21" Initiative ............ 32
From Eco-product Design to CSR Design ............................ 34
LCA Evaluation Report .............................................. 35
Master of Business Activities ....................................... 36
Communication and Disclosure about the Environment ............... 37
Environmental Accounting ........................................... 38
  Environmental Management System
  Green Procurement and Green Purchasing
  Material Balance by Business
  Prevention of Air Pollution and Reduction of Industrial Water Usage
  Control of Chemical Substances and Reducing Their Use
  Reduction of Waste and Resource Conservation
  Environmentally Friendly Distribution
  Environmentally Friendly Packaging Materials

### Casio and Employees
Creating Employment Opportunities ................................. 40
Appointing and Effectively Deploying Qualified Workers ............. 41
Building a Supportive Work Environment ............................ 42
Efforts of Occupational Safety and Health .......................... 43

### Casio and Society
Social Contribution Initiatives ...................................... 44
  Philosophy, Local Communities,
  Community, International Community

### Company Data
Company Data ...................................................... 48
  Recognition from Society/Scope of the Report
  Employees' Comment
  Our Company Logo

## Editorial Policy

Casio began producing its Environmental Report in 1999. In 2004, the publication was changed to the Sustainability Report, with the addition of social and economic content. In 2005, the name was further changed to create the Corporate Social Responsibility Report.

Responsibility Report (CSR Report). This year's report has been renamed the Corporate Report.

The Corporate Profile: By also adding in information that stakeholders are offering, more detailed data, Casio is making efforts to provide more available information to all of its stakeholders.

This report has been prepared in an easy-to-understand format, so that all stakeholders, including employees, customers, shareholders, business partners, and others who have Casio products or an interest in Casio, can fully grasp the content.

In this report, the name "Casio Computer Co., Ltd." refers to the parent company, while "Casio" as a group of companies.

Beginning with this report, Casio has changed the way it designates the fiscal year in order to standardize on the scope of the fiscal year to match the calendar year.

In this report FY2006 means from April 1 2005 to March 31 2006.

The text and numerical data in this report include results from the following reporting period.

Figures are diagrams may be used to help make the information easier to understand, but in some cases, including those with rounding, totals may not add up, etc.

Casio has created this report in keeping with the GRI Sustainability Reporting Guidelines 2002. For more detailed information, the communication with stakeholders.

Organizations:
All organizations of Casio include customers, suppliers, employees, investors, shareholders, communities, and others. Casio, NPOs, NGOs, the mass media, governments, research institutions, research partners, and government agencies.

**Domestic and
Personal Boundary Restrictions**
The data templates are focused on the performance of Casio's corporate group. Reports on CSR activities carried out mainly in Japan through the Casio Computer Co., Ltd. Reports on the contribution were gathered mainly from the entire Casio group including group companies. While statements include personal boundaries, the scope of the report reflects the performance that differs from the usual practices.

Issued December 2006
(Previous publication:
Casio Computer Co., Ltd. Corporate Social Responsibility Report 2005

A Web version of this report including spreadsheet and detailed information, as well as company opinions, has also been published.

**Environmental Report Website**
http://world.casio.com/env/

Message from the President on Casio's Social Responsibility



Kazuo Kashio
President & CEO

# "Casio has been pursuing 'Creativity and Contribution' since the beginning. These unchanging values define our commitment to fulfilling our corporate social responsibility."

## Our Corporate Creed: "Creativity and Contribution"

Casio's corporate creed has been "Creativity and Contribution" since we established Casio Computer Co., Ltd. after inventing a small, fully electric calculator in an era when mechanical calculators were the norm. Ever since, our commitment has been to contribute to society by offering the kind of original, useful products that only Casio can.

We have accomplished this over the years by identifying latent needs that people have yet to discover, and then meeting those needs with innovative products and services, which soon become an integral part of people's daily lives.

In doing so, we always strive to think bigger than the mere provision of new technology, products, or services—our real goal is to inspire new lifestyles and contribute to culture.

"Times may change, but our commitment to 'Creativity and Contribution' is unswerving. This creed defines the company's very reason for being.

Looking to the future, Casio has its sights set on bringing out and wonder to people everywhere and continuing to make a real difference in the world. To earn its place in a sustainable global society, Casio must keep demonstrating the meaning of 'Creativity and Contribution'.

## CSR Initiatives

In Japan, 2004 has been called the dawn of the "age of CSR," as many companies introduced a variety of CSR initiatives. Many also came out with their own definitions of CSR, but these definitions are by no means universal. The scope of CSR and the core competers expect themselves to pay differs with each organization's perspective.

In 2004, Casio inaugurated its CSR Operations Section, and set up a CSR Committee comprised of the company directors and auditors. These steps have provided a forum for discussion of a broad range of CSR issues. Also in that year, we added a section on social contributions to our *Environmental Report* (published since 1999) to create the expanded *Sustainability Report*.

Since 2004, we have promoted a wide range of CSR initiatives, including strengthening our compliance system, obtaining Privacy Mark certification for personal data protection, achieving zero emission standards in Casio's main operations sites in Japan, taking steps to comply with environmental regulations, promoting CSR procurement, and issuing the Corporate Social Responsibility Report in 2005.

## Pursuing CSR-driven Management

Despite all of these achievements, Casio—like all other companies today—is subject to ever stronger demands and higher expectations from society. In order to secure fair and transparent management and continue to improve corporate value, we recognize the need to once more return to the founding principles of "Creativity and Contribution." In doing so, we intend to find and exploit synergies between our everyday business activities and CSR initiatives.

We shall make CSR a core driver of management by faithfully executing on the following commitments.

● To continue realizing the unchanging, foundational principles of "Creativity and Contribution," Casio will adhere to the Charter of Creativity for Casio and the Casio Common Commitment.

● Casio will observe all applicable laws and regulations, and will strive to improve corporate value by reinforcing its system of internal controls and implementing effective compliance and risk management throughout its entire global supply chain.

● Through its primary business activities, Casio will continue to create new value to help resolve various issues facing the global community.

● Casio will consistently implement environmental innovations that integrate eco-efficiency as well as resource conservation and energy saving features into all processes related to creating products and services.

● Casio will disclose financial and other information in a simple, accessible format to all stakeholders, and increase management transparency by creating more opportunities for interactive communication.

In past years, Casio has published the Corporate Profile and Corporate Social Responsibility Report separately. This year, however, we have combined the two into an Integrated Corporate Report—the one you are reading now—in order to present a fuller picture of Casio to readers of both publications. I hope this Corporate Report will serve as an important means of communication between Casio and all of its stakeholders. For a variety of details that could not be included in this publication due to space limitations, I invite you to visit the Casio Website (http://world.casio.com).

I am committed to managing Casio for socially responsible business success, and I would appreciate hearing your frank opinions of our efforts.

History of Casio

# Contributing to Society: A History of Innovative Product Craftsmanship and Strong Stakeholder Relationships



**CSR Activities**

**Business Activities**

1957











Casio's Unique Strengths

# Casio's Originality and Technology Bring Growth to Both Society and the Company

Casio contributes to society by developing original products that never existed before, yet meet universal needs. This enables Casio to grow side-by-side with all of its stakeholders.

### ● Casio's Concept Development and Core Technologies Give the World Innovative Products



### ● Business Strategy: Generate Both Profitability and Future Potential

# CSR Highlights

Casio is committed to frankly reflecting on itself as a public entity, and is constantly re-envisioning its own future contribution to society.

Casio values persistent questioning: "What is this for? Who is it for? Why are we doing this? What needs improvement? And to what degree?"

The questioning doesn't stop there, however. Casio goes on to ask: How original is this approach? Does the project have a clear focus on sustainability? Has it really given customers happiness and delight? Have we provided value that inspires new trends in the culture?

Casio people ask themselves questions like these every day. The following pages provide an overview of Casio's CSR initiatives. We invite you to explore this unique Casio process and take note of its outstanding results.

- Creating Energy from Natural Environmentally Friendly Fuels
- Applying the Mechanisms of Human Intelligence to Manufacturing Technologies
- Providing a Place for Young People to Gain Resiliency for a Meaningful Life
- Reducing Casio's Greenhouse Gas Emissions
- Complying with European Environmental Laws

---

### Creating Energy from Natural Environmentally Friendly Fuels

# Research & Development   Next Generation Fuel Cell

**Original Casio Technology—Reformed Methanol Fuel Cell System**

Casio is striving to realize a truly mobile society by developing micro fuel cells that can produce electrical energy from methanol.

Global research in this field is highly competitive, and various methods have been proposed. Casio has developed and recommended the Reformed Methanol Fuel Cell System, a technology that combines the high power output and environmental friendliness required for the mobile devices of the future.

The basic mechanism of this sophisticated technology involves extracting hydrogen from methanol, a type of alcohol, and then converting it into electricity (Figure 1).

The mechanism behind this technology has been known for many years, but before Casio, most scientists have never thought it to be viable.

**Development of the Micro Reformer Module**

The most difficult part of this development involved was inventing the reformer (photo 1, right), which extracts hydrogen from methanol. Casio applied its expertise in semiconductor processing—a long one core competency—and combined it with the latest nano-catalyst and chemical reaction technologies to develop a unique reformer module.

Casio's latest module, announced to the public in spring 2006, integrates three chemical reactors that produce hydrogen and render emissions harmless and a waste-temperature sensor on a single chip, which achieves start-up in just six seconds. The module also boasts a thermally insulated construction that keeps the outer surface of the device at only 40°C despite an internal heat of up to 280°C. The module's compactness are fully compatible with mobile device requirements.

**Development of the Fuel-Cell Stack**

Casio's fuel-cell stack, which creates electricity from hydrogen (photo 1, left), has a laminated structure. Every power-generating cells consists of a polymer membrane electrode assemblies (HEA). The high-density component

**The Solution Was Right in Front of Us!—Beating Latent Universal Needs**

Masaharu Shioya
Core Technologies R&D Division
Casio Computer Co., Ltd

Batteries are a wonderful technology with a history of over 100 years, but they do have shortcomings. Many people find it annoying to wait for cell-phone batteries to recharge, or for the need to replace the batteries in a camera. Our challenge, it seemed, was to develop some device that could be used to the fullest whenever or used as an alternative to our mobile electronic devices.

mounting is based on Casio's core competencies, with a level of water-resistance and durability. The company has also integrated technologies for its original gas-flow channels for the characteristics of the hydrogen produced by the micro reformer, providing improved MEA resistance or a carbon monoxide. The result is 19.4 watts of rated output in a cell that is only 22 millimeters (6511 × 18W × 190mm). The rated power output per unit volume (power density) of the cell has reached 880W/L. The highest in the world among cells for use in mobile devices with a similar-sized container. When it comes to output power (rated power) per unit volume, used as an index for comparing mobile devices.

**Practical Applications for Micro High-Output Fuel Cells**

Casio has combined its micro reformer module and its newly developed fuel-cell stack to create a compact, high-power fuel cell for mobile devices. Casio's fuel cell—including the methanol cartridge (photo 2, right)—is capable of powering a notebook PC for about four times longer than a conventional lithium-ion battery of the same volume, now working on the necessary peripheral parts and plans to start delivering samples for performance evaluation by fiscal 2006. Casio as well on the way to creating yet another successful new business.

After giving this issue some thought in 1996, I decided to look into solving the problem. My early forays into the technology and the environment was reaching new heights at the time, and it was clear to me that the time had come to question the common assumptions of the field. We developed all kinds of devices. I searched for ways to resolve the problem, going back to the fundamental principles of physics and chemistry, and reconceiving all of them.

The technology that I finally decided to pursue was fuel cells. Tiny, easily carried fuel cells that use methanol or another fuel, and the fuel is used to generate electricity to run a mobile electronic device. The simple, basic components can be made so thin that people everywhere ask for geniand becomes a universal need. Casio creates products that meet these needs and that stand in position to question the usual technologies and devise practical applications that help people achieve the goal of living in harmony with the environment.

# CSR Highlights   Applying the Mechanisms of Human Intelligence to Manufacturing Technologies

## Production   Yamagata Casio Receives 2005 Nikkei "Monozukuri" Grand Prix

Yamagata Casio Co. Ltd. manufactures cellular phones, wristwatches such as the G-SHOCK series, and digital cameras, as well as metal molds and molded plastic components for its products. It also develops and sells chip mounters for electronic component mounting equipment.

The reasons Yamagata Casio won the award are described below.

① Cellular phone and digital camera products are subject to rapid replacement by new models. In order to meet the short and intensive production periods for these products and to integrate the processes from metal mold design to molding, Yamagata Casio has incorporated in real-time the entire production process. This innovation was greatly reduced. This innovation uses the expertise of the "monozukuri" (true craftsmanship) in ② Japanese production technologies. It also links its processes via a network, and has connected to a network, and the processing of information that manages mold design, and all dealing with design and

② Computer intensively manages design and machine mold along with design, and all

### Metal mold design and data preparation

### Metal mold production

## The Digital Network System for a plastic molding and precise metal molds factory



### Trial molding

### Mass production and monitoring




## Taking on the Challenge of Creating Monozukuri!

### Manufacturing Technologies for People on Site: How to Work Smarter, Not Harder

**Toshihiko Kuroda**

# CSR Highlights  Providing a Place for Young People to Gain Resiliency for a Meaningful Life

## Social Contribution  Factory Tours for 10,000 People





## Promoting ISO Activities for Kids







### Providing a Place for Young People to Gain Resiliency for a Meaningful Life through Discovery and Wonder

Tomoaki Furuya
Kids Casio Co., Ltd.



# CSR Highlights Reducing Casio's Greenhouse Gas Emissions

## Environment Initiatives to Help Prevent Global Warming: Working to Achieve Fiscal 2011 Targets

Casio set out plans for the following environmental action to address global warming, each of which was targeted to be achieved by fiscal 2011:

(1) developing eco-products
(2) saving energy and reducing greenhouse gas emissions in business and production sites, and (3) lowering emissions in the distribution stage (see pages 32 and 33).

### Product Initiatives

Casio has been a leader in innovation since its founding, and seen its corporate competence the company has developed compact, lightweight, slim, and energy-efficient products. Casio is working to equip all of its radio-controlled watches with a solar power system that is able to obtain power even from weak light sources such as Japan's new electrical and electronic industry associations standard. Casio's even more challenging target for 2020 is to set a single battery charge, even with a battery charge, even with a single bright 2.8-inch wide LCD. The company's MA320 mobile phone offers continuous talk time of about 220 minutes.

Casio is committed to continuing to improve the energy-efficiency of its products. The company is also pushing forward with R&D to commercialize its

### CO2 Reduction Targets in Three Areas



## Complying with European Environmental Laws

## European Regulation Initiatives

### Complying with the European WEEE Directive

Casio has started to set up a recovery and recycling system that meets EU standards in order to comply with the European WEEE Directive for proper disposal of electrical and electronic devices. Casio Europe GmbH, located in Germany, has been the hub for the company's WEEE promotion project since 2004.

In fiscal 2006, Casio completed the following legal requirements:

● Registering as a manufacturer in EU member states which have established new WEEE Directive regulations
● Contracting with recycling providers in principal countries

Companies must conform to the individual regulations of each of the 25 EU member states. This has made more

### Example recycling system in Germany



## Corporate Creed and Charter of Creativity

The Charter of Creativity for Casio has been established based on Casio's corporate creed of "Creativity and Contribution." The creed and charter provide the foundation for the execution of Casio's CSR driven management.

The corporate creed of Casio has at its core "Creativity and Contribution." Casio's late co-founder, the late Tadao Kashio.

Casio got its start with the invention of a small fully electric calculator. It was unique in an era when mechanical calculators were the norm. Ever since, the company has been true to its commitment to contribute to society by offering the kind of original, useful products that only Casio can provide.

The people of Casio provide the values of Creativity and Contribution in the performance of their work. These values are deeply ingrained in the company and are passed down from generation to generation, almost like a genetic heritage.

Today's shorter product development cycles and increasingly complex specifications, however, have made the company's operations more and more specialized. Along with this, each person's job requires increasingly specific knowledge and skills. As Casio grows and its operations become more specialized, maintaining the "balance" between top management and frontline employees is growing ever more important.

At the same time, society now expects companies to strengthen their CSR management with an awareness of all

stakeholders, and to achieve uncompromisingly fair, transparent corporate governance.

Given this situation, Casio is encouraging all of its employees to recognize the significance of Creativity and Contribution, and to maintain their awareness of the corporate creed. This will enable Casio to sustain its creative corporate culture, while continuing to contribute to societies around the world.

In light of these trends, on June 1, 2003—the anniversary of the company's founding—the Charter of Creativity for Casio was established to better articulate the meaning of the corporate creed today for all employees. In December of the same year, the Casio Common Commitment was also distributed to provide a more specific description of the employee conduct that is expected and valued.

At Casio employees carry a card printed with the Charter of Creativity and Common Commitment. Top management has also issued messages describing the kind of company this Casio ought to be, and to gather input from the company's frontline. These steps are enabling Casio to secure a group-wide understanding of its commitment to CSR.

Charter of Creativity (card)

## Charter of Creativity for Casio and Casio Common Commitment
—A Promise from Everyone Working at Casio—

**First Chapter**   We will value creativity, and ensure that our products meet universal needs.
[Casio Common Commitment]
1. We will be sure to ensure that our products meet universal needs, and this includes not only manufactured goods, but also services and support, and everything else that we do.
2. We will be idealistic in all of our work.
3. We will carry our work through to completion, with a strong determination to take on every challenge that comes our way.

**Second Chapter**   We will strive to be of service to society, providing customers with delight, happiness, and pleasure.
[Casio Common Commitment]
1. We will provide people with "timeless inspiration."
2. We will make life richer and more prosperous for people.
3. We will strive daily to improve everything we do.

**Third Chapter**   We will back up our words and actions with trustworthiness and integrity, and work as
[Casio Common Commitment]
1. We will take concrete responsibility to be a part of our words and actions in accordance with all laws and regulations.
2. We will challenge ourselves to find spiritual and material prosperity and success, according to our own clear role.
3. We will be proud members of our company, and we are proud of Casio. This is the reason of this product development but of every other part of the business.

Corporate creed

## Corporate Governance

Casio is constantly striving to strengthen its corporate governance, focusing on the priority issues of quick decision making, proper execution of operations, and improved transparency of business management.

### Corporate Governance System

Casio recognizes that quick decision making, proper execution of operations, and a robust management oversight function that increases the transparency of business management are extremely important factors in achieving business goals and ensuring a sound corporate value. This recognition guides the company's ongoing efforts to improve corporate governance.

In June 1999, Casio Computer Co., Ltd. made a change in its board of directors, reducing its size by half, from 24 to 12 directors. At the same time, the company adopted a system of operating officers to clearly separate the management oversight and execution functions. In December 2004, a CSR Committee was also established to drive the company's efforts to fulfill its corporate social responsibility.

With the adoption of this system, Casio Computer Co., Ltd. has built a corporate governance system that consists of the operating officer system, internal audit system, and CSR Committee, in addition to the board of directors and the board of auditors. The objective, role and membership of each of these bodies are described below.

### ● Board of Directors

The board of directors is tasked with making prompt, responsible, and transparent decisions. Board meetings are attended by directors and auditors, who discuss and make decisions on important matters.

### ● Board of Operating Officers

Meetings of the board of operating officers are attended by operating officers, directors and auditors. They deliberate on

important management affairs relating to the execution of business operations. This mechanism enables a prompt implementation of company-wide adjustments and measures.

### ● Board of Auditors

The board of auditors consists of three auditors, two of them external. In accordance with audit policies and responsibilities approved by the board of auditors, auditors attend board of directors' meetings and meetings of the operating officers. In addition, they perform careful audits by gathering information and receiving reports from directors and others. By reviewing resolution documents relating to important decisions.

### ● Internal Audit Department

The internal audit department performs audits of Casio operations to ensure they are in conformity with laws and regulations as well as internal standards such as the organization's control standard. It also conducts evaluations and offers recommendations for improvement.

### ● CSR Committee

The CSR Committee is composed of the directors and auditors, and the company president serves as chairman. The committee discusses matters related to CSR, including the determination of CSR management policies, policies and systems for execution. The decisions made by the CSR Committee for each CSR issue are then transformed into specific activities by each department concerned. The CSR Committee is currently addressing key issues of compliance, risk management, and protection of personal information.

Corporate governance system diagram



General Meeting of Shareholders




# Compliance and Risk Management

Casio is executing CSR-driven management that emphasizes the complete integration of everyday business and CSR initiatives. This is the most direct, pragmatic route to realizing the corporate creed of "Creativity and Contribution."

## Executing CSR-driven Management

## Compliance and Risk Management

### Whistleblower Hotline

## Personal Information Protection

### Philosophy on personal information security




### Personal information protection system

### Privacy Mark certification

Risk management system



Personal information protection system

# Customer Satisfaction and Quality Assurance

Casio is striving to improve the quality of its products and services, in order to increase the satisfaction and confidence of customers.

## Responsibilities to Customers

Communication is an important way for Casio to create long-lasting relationships of trust with customers. Casio's Customer Support Center is the contact point for customers submitting opinions, requests and questions. The Customer Support Center, united with the CS Control Group, has the goal of improving customer satisfaction (CS) across the development, manufacturing, sales, and service divisions.

In these ways, Casio is striving to ensure the satisfaction and happiness of customers. The operating hours of the Customer Support Center and also being steadily expanded to include weekends and holidays, in an effort to offer more customer convenience. Finally, the Customer Support Center also operates an overseas Customer Support Center. The Overseas Customer Support Center cooperates with nine customer support centers at Casio's overseas sales bases.

Customer Support Centers are carrying out various activities to improve quality as much as possible. Casio aims to be the electronics manufacturer with the smallest repair times in the overseas markets too. Casio is strengthening its systems at all levels. Moreover, Casio has repair locations for system equipment across Japan, enabling prompt dispatch of repair technicians to client sites.

### Activities of Casio Customer Support Center



● Example of an Electronic Dictionary that Reflects Customer Opinions

## Customer Satisfaction Surveys

Casio periodically conducts customer satisfaction surveys to identify the opinions and needs of customers and to reflect them in its products. The results are then reflected in the performance and design of products, and creation of future products.



## Customer Service Improvement

The Service Department, which is responsible for product repairs, strives to satisfy customers by providing service based on the following three points: prompt response, dependable technology, and reasonable fees that satisfy customers.

● Prompt response

Casio is taking steps to improve its operations by focusing on per-procurement, repair work, and repair technology, so as to shorten the repair time and return repaired products to customers as quickly as possible.

● Dependable technology

Casio is working to improve its repair technology in order to maintain customer confidence and keep the level of repair quality that customers expect. In addition, Casio is striving to improve product quality by sending feedback from the repair sites to the Product Development HQ and the Manufacturing Department.

● Reasonable fees that satisfy customers

Casio works hard to reduce any unnecessary burden on customers by providing repair costs. That is done through improvements in repair planning and setting repair fees that customers can accept. Repair method improvements are also important because they help reduce the disposal of parts during repair work. In fiscal 2006, Casio's new and improved system of digital camera repair operations—the first of a kind in Japan—was also implemented at overseas repair locations.

## Casio's Commitment to Quality

● Quality Concept

Casio maintains a strong quality assurance system, based on its belief in "Quality First." The system requires all employees to make quality their basic concern in every task they perform, enabling the company to offer products and services that please and impress customers. The company's commitment to quality supports its corporate growth and makes social contributions possible, while at the same time winning customers' trust and giving them peace of mind.

● Quality Management Policies

● To build a good corporate image, we offer products and services that please and impress our customers, gain their strong trust, and ensure their peace of mind.
● We respond to our customers' remarks and inquiries with sincerity and speed, and reflect their important comments on our products and services.
● In all our business processes, we base our actions on the Principle of the Five "Gens"—in Japanese, genba (on site), genbutsu (actual goods), genjitsu (reality), genri (principle), and gensoku (rule)—and adhere to the basics of business operations.
● We maintain and analyze quality assurance information and use it to make continuous improvements. We also maintain a system to investigate the causes of quality problems, enabling the quality information and prevention of problems before they occur, and prevent recurrence of quality problems.

To offer goods and services that please and impress customers, the Casio Group aims to provide the "best products" with the "best service." In addition to function, design and price, these areas include reliability, durability, service ability, environmental soundness, and compliance with relevant laws and regulations.

## Quality Assurance System

Casio has constructed a quality assurance system and company-wide to improve quality across the group.

The Casio Promotion Committee for Groupwide Quality Enhancement, at Casio's highest quality assurance authority. It meets approximately twice a year, led by the heads from the Electronics business segment (consumer, timepiece and system equipment segments), the Electronic Components segment and the communication business, as well as quality managers of manufacturing and service affiliate companies. Decisions are made at these meetings on company policies and important issues relating to quality. The resolutions are then communicated to individual departments and reflected in specific quality assurance activities within the departments.

In 2004, the CS Control Group was created within the Sales Department and the Electronics business to improve customer satisfaction. In addition, the CS Control Group has been conducting activities to ensure quality in cooperation with the Engineering Department (within the Product Development HQ) in an effort to further improve quality and service.

Moreover, persons responsible for quality assurance have been appointed in the development departments to look after product specifications, software, mounting, outer packaging, circuit boards, and so on, respectively. In such businesses. In addition, the quality managers who oversee the entire operations ensure product quality at each business location.

## Teachers Meeting (Product Feedback from Education)

On December 19 and 20, 2006, Casio invited 11 mathematics teachers from Australia, the United States, South Africa, Iran, Turkey, South Korea, Malaysia, Singapore and the Philippines to the Casio Teachers' Meeting in Hamura Research and Development Center. The event was held over two days to exchange information and receive the teachers' feedback on Casio products.

The main purpose of the meeting was to learn about how the teachers actually use Casio calculators in their teaching, to hear the voices of actual users and reflect their opinions in future development. During the discussion, Casio responded to these suggestions and they led to a lively exchange of opinions among the teachers.





# Building Strong Partnerships

Responsibilities to Suppliers

Casio is building strong partnerships with suppliers in and outside Japan that share Casio's procurement policies

## Basic Thoughts behind the Approach to Procurement Policies

Casio aims to fulfill its social responsibilities, including compliance with laws and social norms, and protection of the environment, in order to establish equitable transactions throughout the supply chain by strengthening partnerships with suppliers.

### ● Procurement Policies

**1. Fair and equitable transactions**
Casio carries out fair and equitable transactions by providing equal opportunities to all suppliers (and buyers) in and outside Japan in accordance with its internally established procedures.

**2. Compliance with laws and social norms**
Casio's procurement activities comply with all relevant laws, social norms, standards, and treaties worldwide, including the protection of human rights, prohibition of child labor, forced labor and discrimination. Therefore, Casio also requires its suppliers to observe the same legal and social requirements.

**3. Environmental protection**
Casio seeks to protect the global environment through environmentally friendly procurement, which is based on the Casio Environment Charter and Fundamental Environmental Policies, in cooperation with suppliers.

**4. Strengthening partnerships with suppliers**
Casio builds relationships of trust with its suppliers through reciprocal efforts, such as merging and complementing of mutual technological development abilities, supply chain cooperation, compliance with laws and social norms, and protection of the global environment, which will benefit both parties.

**5. Policies on supplier selection and transaction continuation**
Casio selects and continues transactions with suppliers based on comprehensive evaluation criteria, which include compliance with laws and social norms, environmental protection, proper information security, respect for intellectual property, sound and stable corporate management, superior technological development ability, right price and quality, stable supply capabilities, and electronic transaction systems.

**6. Right price and quality**
Casio endeavors to secure right price and quality in order to provide its customers with a stable supply of optimal products, to ensure that Casio gains the full confidence of customers around the world.

**7. Prohibition of personal-interest relationships**
Casio does not allow any employee to have personal-interest relationships with suppliers.

## Fulfilling Social Responsibilities Together with Suppliers

Casio has set forth new Social Responsibility Guidelines including compliance with laws and social norms, and protection of the environment, in order to fulfill its social responsibilities together with its suppliers through procurement activities.

### ● Social Responsibility Guidelines
Guidelines covering the following areas have been established in order to fulfill social responsibilities through procurement.

1. Compliance with laws and social norms
2. Environmental protection
3. Proper information security
4. Respect for intellectual property
5. Sound and stable corporate management
6. Superior technological development abilities
7. Right price and quality
8. Stable supply
9. Electronic transaction systems
10. Prohibition of personal-interest relationship

### ● Sharing the Guidelines
By holding of Procurement Policy Presentation Meetings and individual consultations, Casio is conveying its policies to suppliers in and outside Japan. The Guidelines have been posted on Casio's Website and also distributed in printed form to the people concerned.

### ● Managing the Guidelines
Casio works together with suppliers to resolve such issues as they are identified in the regular surveys, which are conducted by means of previously prescribed questionnaires.

### ● Reporting on the Guidelines
Casio releases regular reports on its fulfillment of the Social Responsibility Guidelines.

# Optimum Shareholder Return and Information Disclosure

Responsibilities to Shareholders and Investors

Casio is striving to improve business performance and strengthen its financial position in order to increase returns to shareholders

## Basic Policies on Profit Distribution to Shareholders

Casio considers maintenance and expansion of profit distribution to shareholders to be an important management goal. Accordingly, it is striving to improve its business performance and strengthen its financial position. Casio distributes returns to shareholders by comprehensively considering the company's profit level, financial situation and dividend payout ratio, based on a policy of maintaining stable dividends. Internal reserves are used to make appropriate investment for R&D and investment necessary for stable corporate growth. These steps will allow Casio to improve its business results and strengthen its management structure.

### Operating Results and Dividends in Fiscal 2006

In fiscal 2006, Casio moved forward aggressively with expansion of its strategic businesses, including timepieces, digital cameras, electronic dictionaries, cellular phones and TFT LCDs. At the same time, the company strove to improve management efficiency by raising the profit margin, and improving capital efficiency. As a result, record-high net sales and net income figures were achieved for the third consecutive year. Cash dividends of ¥23 billion respectively (on a consolidated basis.) Dividends were raised by ¥3 per share from ¥17 in the previous fiscal year to ¥20, marking the third consecutive year of growing dividends.

### Inclusion in SRI Index and Funds

Socially responsible investment (SRI) represents a commitment to evaluate and select corporations for investment on the basis of their performance not only in terms of financial results and business performance, but also in addition to conventional performance criteria such as financial analysis, companies are also evaluated based on their CSR performance concerning legal compliance, employment, human rights issues, social contribution, and environmental protection. SRI funds have been gaining popularity in recent years, and Casio is included in the following index and funds.

**Casio in SRI Index and Funds**
(as of June 1, 2006)



- Morningstar SRI Index (May 1, 2006)
- FTSE Asset Management Co. Ltd. FTSE4Good Index
- Sumitomo Mitsui Asset Management Co. Ltd. Eco-Balance "Umi to Sora" (Sea and Sky)

## Communication with Shareholders and Investors

Casio is actively engaged in a variety of investor-relations activities, true to the company's policy of disclosing corporate information appropriately and in a timely fashion, as outlined in the Casio Code of Conduct.

### ● IR events
After the release of financial results each quarter, Casio holds financial results briefings. As the main speaker at these events, the company's president or director in charge of IR explains the financial results and future outlook to institutional investors and securities analysts. On occasion, the company also meets individually with Japanese and overseas institutional investors and securities analysts. Factory tours and small meetings for specific business segments are provided as well.

### ● A wide array of IR tools
IR tools used by Casio include quarterly financial results, annual reports and business reports. The same information is also provided on the Casio Website.

IR Website: http://world.casio.com/ir/

### ● Communication with Individual Investors
Along with regular information disclosure on its Website, Casio is actively providing more information on individual investors. These efforts include not just improvement of general shareholder meeting content, but also holding management presentations for shareholders after the meeting.

### ● Inquiries to the IR Department
In cooperation with the General Affairs Department, the IR Department coordinates Casio's investor relation activities and responds to all manner of inquiries from Japanese and overseas shareholders and investors.

# Environmental Management Vision

Environmental Management Activities in Fiscal 2006 and Future Efforts

*Yukio Kashio*

**Yukio Kashio**
Executive Vice President and Representative Director
Chairman, Casio Environmental Conservation Committee

Casio approaches its environmental management activities as a top priority issue for the realization of its corporate creed "Creativity and Contribution." In January 1993, we established the Casio Environment Charter and Casio Fundamental Environmental Policies to serve as a framework for executing our environmental management activities. We then established the Casio Voluntary Plan for the Environment, an environmental management guideline that spells out how we will conduct specific activities. In February 2006, we updated the plan for the 10th time.

Within the plan, we have established an Environmental Action Plan (EAP), the "Clean & Green 21" Initiative, which clearly sets specific numerical targets and deadlines for execution. The EAP covers the entire group, and serves as a coordinating action plan. The company is moving forward toward the achievement of its goals. In February 2006, we updated the EAP for the 9th time.

## Activities and results

**Product-related activities and results**
Our product initiatives in fiscal 2006 included adding 114 new products to the already substantial lineup of Green Products (G.G.P.) 70. Actively raised the percentage of green products in total sales to 68%. We will continue to work at accelerating development in order to achieve our target during fiscal 2007, one year ahead of schedule.

In addition, we reduced by 22.6% the total packaging used with each product per unit sales by optimizing our packaging capacity.

We also put all of the targets of completely phasing out specified hazardous substances ahead of schedule in response to the European RoHS Directive, and completed the conversion to lead-free products through the cooperation of relevant department and business partners.

**Business site-related activities and results**
Our business site initiatives included carbon reduction efforts. The target we pursued was to reduce CO2 emissions per unit of actual production by 10% in fiscal 2006 compared to the fiscal 2004 level. However, CO2 emissions increased 5% due to a unit price decline of our IT/LCD business.

Therefore, in real terms, reduction targets to achieve zero emissions and to reduce the generation of waste per unit of production by 30% from the fiscal 2001 level. Casio Micronics Co., Ltd. (Ome) and Casio Soft Co., Ltd. achieved zero emissions status, bringing the number of sites to do so up to 13. The generation of waste per unit of production remained equal to the fiscal 2001 level.

Our hazardous substance phase-out target was to completely eliminate PCBs containing equipment (currently in storage) by the end of fiscal 2006. We completed the application for contracting the treatment of PCBs stored at the Hachioji R&D Center and the Hamura R&D Center. PCBs stored at Kofu, Casio are waiting for the treatment facility in Hokkaido to start receiving deliveries.

## Future Initiatives

**Future product initiatives**
Now that we are compliant with the WEEE and RoHS Directives, it is urgent that we steadily take steps to respond to the phase-outs of hazardous substances that are expected to be legislated in North America, China, Japan, and South Korea. We will also monitor digital legal and regulatory trends, such as the EuP Directive* and REACH Regulation* in Europe, and pursue proper compliance.

**Future business site initiatives**
Starting this fiscal year, we established new action plans for the reduction of CO2, the reduction of water consumption (at production sites), and waste reduction at business sites outside Japan. This is a major change in our worldwide expansion of our environmental conservation programs.

In Japan, we introduced a new action plan at electronic component business sites to control global warming by reducing emissions of greenhouse gases other than CO2, targeting a reduction of these emissions in 2010 to at or below the 2000 emissions level. Through this and other steps, we are working to realize the reduction targets we under the Kyoto Protocol. We are also introducing comprehensive measures, such as CDM, emissions trading, and other Kyoto mechanisms, toward the fulfillment of our new target of a 20% reduction in actual CO2 emissions by fiscal 2011.

**Pursuing CSR management**
Casio is making CSR a core driver of its management practices. In order to fuse Casio's social responsibility and eco-product designs as CSR designs by taking universal design concepts and devoting our energy to green procurement at business partners, fulfillment of CSR. We are preparing the relevant guidelines and manuals and are moving ahead quickly to implement these new practices.

See the following pages for details.

* See page 32 for explanation of terms.

---

# Casio Environment Charter and Casio Fundamental Environmental Policies

Consistent with its corporate creed of "Creativity and Contribution," Casio sets specific guidelines and targets in line with the Casio Environment Charter and Casio Fundamental Environmental Policies in order to ensure proactive execution of environmental management.

## Corporate Creed

**Creativity and Contribution**

## Casio Environment Charter

To conserve the global environment, Casio recognizes the importance in the corporate environmental responsibility across the operations of the entire group. Casio establishes basic policies and specific measures for contributing to world prosperity and human happiness from the broad perspective of international society, and endeavors to implement them.

## Fundamental Environmental Policies

1. Casio Group members shall comply with all environmental laws, agreements, and standards in Japan and overseas.
2. The Group shall establish voluntary "Casio Environmental Conservation Rules" based on consideration for the environment at all product stages of development, design, manufacture, distribution, repair services, and recovery/disposal. All Casio business divisions shall assume responsibility for their implementation, additionally auditing the degree of compliance and making continual improvements.
3. From the standpoint of corporate social responsibility, and as good corporate citizens, all Casio Group members shall assume the importance of global environmental conservation and try to heighten their awareness.
4. These policies shall apply to all Casio Group business divisions in Japan and overseas.

* The Casio Environmental Conservation Rules are specific action programs for environmental conservation, and forth in the "Casio Voluntary Plan for the Environment (CoVPE)."



Casio and the Global Environment

Casio Voluntary Plan for the Environment
(Casio Environmental Conservation Rules)
(PLAN)

Environmental Action Plan,
"Clean & Green 21" Initiative
(PLAN)

Casio Environmental Conservation Committee
PDCA

Environmental activities of Implementation organizations
(DO)

Environmental performance management
(CHECK)

Improve and strengthen environmental activities
(ACT)

PDCA at each site

# Environmental Action Plan, "Clean & Green 21" Initiative

Casio establishes targets that take account of environmental changes in and outside Japan and continually strives to achieve these goals.

● Product-related targets

● Future Initiatives

Explanation of terms



# From Eco-product Design to CSR Design

Casio is committed to broadening its design considerations, moving from eco-product designs to designs that are environmentally friendly and offer a high-quality experience for the user, in line with the universal design guidelines established by the company

### Progress for Design — Moving from Eco-product Design to CSR Designs

Casio introduced eco-product design in 1993. Since 2001, it has been developing ISO Type I environmental labeling products based of Casio's green product development guidelines.

Since 2001, Casio's Design Center, at the very helm of the Environment Center, has been working on the concept of developing a new product lineup featuring eco-product design. The idea is to systematize and combine eco-product designs with universal design as a new CSR design initiative. Casio has already worked out a Universal Design Policies, and is continuing to assess the roll of electronic dictionaries and electronic musical instruments with a view to improving the quality of the user experience

### From the customer's perspective

Obtaining evaluations from customers and actually using the products and reflecting their feedback in product development are essential part of HCD.

Casio has made it a top priority to develop products from the customer's perspective and requires its development staff themselves to listen to customers' opinions. Casio is dedicated to improving usability by applying evaluations from user tests and feedback given to the Customer Support Center.

In fiscal 2006, Casio conducted user tests on the usability and design features of products by enlisting the cooperation of a wide spectrum of users, including high school students, homemakers, and the elderly. Casio made specific improvements to the quality of the user experience, in terms of both hardware and such results across the wide range of users.

### Future Initiatives

Casio has already reviewed our the Casio Universal Design Policies during the current fiscal year in order to share policy on universal design activities with all group companies.



Casio's brand of universal mark

### Casio Universal Design Policies

1. Easily understood display and expression.
2. Simple understandable operability
3. Reduce physical and mental stress.
4. Provide safety and reliability.
5. Pursue product value.

## Universal Design Activities

### Delivering a high-quality user experience

Strategically focused on its core competence in compact, lightweight, slim, energy-efficient technologies, Casio develops products with as little environmental impact as possible, increasing performance. Casio strives to achieve a high quality experience for the user so that people who are unfamiliar with electronic devices and those who are less confident about IT can use Casio's products comfortably, looking ahead at the future social environment. Casio is committed to providing products and services that are truly beneficial to customers's lives.

Casio has set the "quality of the user experience" as the main objective for its universal design activities, improves the user experience. Casio works to develop products using human-centered design (HCD) processes. Casio applies these concepts not only to the product themselves, but also to improve packaging and user manuals.

# LCA Evaluation Report

Casio evaluated its Super Slim Projector using life cycle assessment (LCA)

### LCA Evaluation of the Super Slim Projector XJ-S30/S35, a Casio Green Product

### LCA evaluation case study

As a mobile projector, the XJ-S30/S35 has a super slim construction, and uses high-pressure mercury lamp with 2000 ANSI lumens. The lamp itself consumes 200 W of electricity resulting in the use stage of the LCA accounting for a large 86% of the overall environmental impact.

Accordingly, the product offers an Eco mode, which boasts lower power consumption than the Normal mode. By switching from Normal mode to Eco mode, the projector is put into an energy conservation mode where the lamp is less bright and the high object emits an Serceo lumens output. The Eco mode is effective for use in quiet surroundings and when one wishes to lower the brightness to create a better balance with the room lighting.

### Future challenges

Ways to lower the value for the use stage need to be studied in order to improve the projector's LCA data. A further challenge is to make further headway in reducing energy use by the light source, improving product parts, and reducing overall weight.

 



## Super Slim Projector XJ-S30/S35

Energy conservation: Energy consumption can be reduced by switching the projector from Normal mode to Eco mode.

Resource-saving:
Compared to the predecessor XJ-360, the body of the product has been
- Reduced by 14% in volume
- Reduced by 40% in thickness
- The packaging (all made from paper except the pad case) has been
- Reduced by 24% in volume
- Reduced by 17% in weight
Recyclability: The housing is made of a magnesium alloy and is easily recycled.
Elimination of hazardous substances: The product does not contain substances prohibited by the RoHS Directive.

### Product characteristics

| | |
|---|---|
| Projection system | DLP |
| Brightness | 2000 ANSI lumens |
| Display resolution | True XGA (1,024 x 768) Compatible SXGA (1,280 x 1,024) |
| Slim construction | 43 mm thick (32 mm at thinnest point) |
| USB compatible | the XJ-S3x enables PC-free presentations |

DLP is the DLP logo are the DLP marks or are trademarks of Texas Instruments

## Communication and Disclosure about the Environment

Casio communicates actively with stakeholders to help build a sustainable society

### Casio's Philosophy and Policy on Communication and Disclosure about the Environment

Casio is making an effort to help build a sustainable society by engaging in dialogue with various stakeholders. The company is also aggressively undertaking environmental conservation activities aimed at protecting biodiversity, including humankind, and putting greater preservation of the global environment, including natural resources and the atmosphere.

### Participation in Exhibitions (Eco-products 2005)

Casio has participated in the Eco-products Exhibition every year since it started in 1999. The Eco-products Exhibition, which is the largest general environmental exhibition in Japan, is a place where people from different walks of life can think about environmental issues and learn about ways to realize their own eco-lifestyles. Casio is committed to promoting environmental awareness extended even to the actual construction of its exhibition booth, which was made of eco-materials (Eco-Palette Nakai Color / Moss). The exhibition was an opportunity for Casio to introduce its overall environmental initiatives while showcasing Casio Green Products—Eco-products that make use of Casio's core competence in compact, lightweight, slim, energy-efficient technologies. For the 2005 exhibition, Casio planned a hands-on learning experience for children, giving them the chance to practice building a calculator. The company also introduced environmental initiatives using an easy-to-understand video presentation on the main stage.

Casio plans to take part again in the Eco-products 2006 Exhibition.

### CSR Reporting and Building Session Held

In August 2005, Casio held the CSR Report 2005 Reading Session under the second Teacher's Business Training Program.

Normally, there are few opportunities for companies and schools to get together and talk. Accordingly, while participants examined some actual Casio Green Products for themselves, Casio personnel gave a presentation on their manufacturing process in order to provide a slightly deeper understanding of Casio's environmental activities. The teacher's remarks included interest in the kids' ISO 14000 program and environmental education as well as the fact that "their social responsibility and education is being questioned nowadays."

Casio plans to continue to actively accommodate this type of training.

CSR Report 2005 Reading Session

### Information on the Web

Casio renewed its website for Japan in March 2006 and worldwide website in June 2006. The websites for Japan was ranked seventh on the Usability Ranking sponsored by Nikkei Personal Computing. The ranking evaluates user-friendliness and design. The renewed environmental website was also renewed, following...

Environmental Report website
http://world.casio.com/env/

Major awards and commendations in fiscal 2006

| | | |
|---|---|---|
| 2005 | June | Yamanashi Casio Co., Ltd. |
| | | Casio Micronics Co., Ltd. |
| | | Casio Electronics Co., Ltd. |
| 2006 | February | Hamura R&D Center |

---

## Material Balance of Business Activities

Below is a report of the lifecycle inputs and outputs associated with Casio's business activities



### Inputs

Energy: 56,400 (crude oil equivalent kl)
Electricity: 183.56 million kWh
Fuel: 13,172 (crude oil equivalent kl)
Water resources: 2,315 million m³
Recycled industrial water: 208,000 yd³
BPA (sulfur hexafluoride): 2 tons
Paper usage: 782 tons
PRTR substance input: 208 tons

Parts and materials: 24,718 tons
Metals (recycled material): 4,557 tons (2,117 tons)
Packaging (recycled material): 12,684 tons (10,126 tons)

### Recovered

Electricity: 87.80 million kWh
Paper document from corporate customers: 53 tons
Household PCs: 0.5 tons
Label printer laser cartridges: 3 tons
Drums and toner cartridges: 672 tons
Rechargeable batteries

### Outputs

Greenhouse gases
CO₂ emissions: 113,482 tons-CO₂
SF₆ emissions: 18,714 tons-CO₂
Air pollutants
NOx: 108 tons
SOx: 37 tons
Dust: 3 tons
Releases of estimates of PRTR substances: 127 tons
Wastewater: 2,506 million m³
Generated waste: 8,327 tons
Landfill disposal: 825 tons
Recycled waste: 5,980 tons

CO₂ emissions: 88,682 tons-CO₂
Total products sold: 180 million
TFT-LCD packaging: 14 tons
CO₂ emissions: 40,860 tons

### Recycled

System support from corporate customers: 71 tons
Household PCs: 0.4 tons
Label printer laser cartridges: 3 tons
Drums and toner cartridges: 633 tons

# Environmental Accounting



# Creating Employment Opportunities

Casio constantly strives to create opportunities for highly satisfying employment in all of its interactions with employees. Casio respects the human rights of individuals and refrains from discrimination based on gender, disability, or other trait.

## Employment Philosophy and Policies

The Casio Code of Conduct states that: "We respect others and value cooperation that is free of discrimination. We hold in high regard every individual's human rights, irrespective of gender, disability, creed, religion, ethnicity, social status, or disability. The most important standard to value judgment in the actions of our people is whether or not they create as many employment opportunities as possible.

Casio has also been working to secure jobs internally by bringing back work that had previously been contracted to companies outside the group.

Based on the philosophy and policies described above, Casio respects every person's human rights and individuality. Casio treats individuals who are highly motivated to work, irrespective of their gender, creed, religion, ethnicity, social status, or disability, in ways responding to changes in the environment that surrounds the labor market in society.

In Japan, Casio supports the Charter of Corporate Ethics of Nippon Keidanren (Japan Business Federation), and adheres to the impact on students' learning caused by the hiring season. In addition, Casio holds its annual Self-College or at other times that are convenient for students so that there are additional more convenient for students' interviews. In fiscal 2006, Casio introduced the following seminars to promote more student-friendly recruitment.

### ● Employment-related initiatives

*Total number of Casio group employees 12,373*

Employees worldwide, by region (as of March 31, 2006)

Europe 4%    North America 2%    Asia 38%    Japan 56%

working world, the Casio recruitment Website was updated with more specific job-hunting information, and job openings were increased by a large amount. As a result, the number of women who joined Casio in the spring of 2006, in graduating categories, and who were non-graduates, increased, including new employees.

### ● Hiring persons with disabilities

Casio seeks to hire individuals with the courage, determination, and creativity to take on challenges and realize their dreams, regardless of any disabilities they may have.

Presently there are 59 employees with disabilities working at Casio Computer Co., Ltd. (1.27% of the workforce). However, in order to boost the employment rate of persons with disabilities, including those working at various workplace.

Casio is also improving its workplace facilities to enable each and every employee to maximize their abilities and accessible to all, work environment that is barrier-free and accessible lavatories at both the Hamura R&D Center and the Hachioji R&D Center. As part of its measures to allow employees with disabilities to work to their full potential, Casio will continue to hire persons with disabilities and promote the creation of a work environment that is suitable for everyone to work in.

### ● Hiring senior workers

Since 2001, Casio has been operating the Casio Senior Staff Program (CSP). Its purpose is to provide employees who reach the mandatory retirement age with employment opportunities, and to effectively utilize the skills and know-how that these employees have accumulated within that group. Under this program, employees who reach the retirement age can register in the CSP database, and then a company. The program is designed for retirement-age employees who are still working, and who are healthy and possess knowledge and skills who are needed within the group. Starting in fiscal 2007, the opportunities for senior employees are expected to increase.

*Recruitment Website for applicants with disabilities*
http://www.casio.co.jp/takayouramen/jppolicy.htm

---

# Appointing and Effectively Deploying Qualified Workers

Casio has built a sound corporate culture by appointing qualified workers through a fair process, using a merit-driven system and a performance-based approach.

## Philosophy and Policies

Casio's human resource system is based on fairness and designed to champion "Creativity and Contribution." The corporate creed. The company continually reviews its personnel system, and adopts a system that hinges on the surrounding environment.

Casio's personnel system, which is merit-driven, is reviewed and revisited according to the abilities required for their position, irrespective of their academic background, age, or length of service. To complement this, Casio's performance-based approach determines the grade and compensation of employees based on the results they actually achieve in their assigned roles. The objective of Casio's human resource system is to strike an optimal balance between the development of employees under the merit-driven system, and the growth of the company that is facilitated by the performance-based approach.

### ● Human resource system

Casio's human resource system consists of three subsystems: the Grade System, Appraisal System, and Compensation System.

The Grade System forms the base of Casio's human resource system. The Qualification System applies to non-managerial staff. The system focuses on the growth of their ability to perform their duties. The Professional System applies to managers and specialists, who are graded and ranked based on their individual achievements and accomplishments.

The Appraisal System evaluates employees in three areas, namely "ability," "performance," and "attitude."

by objectives, and performance (competency) on their job type, and contribution made toward the department. The evaluation is made on a five-point scale relative to other employees, and the results are reflected in their work. Supervisors discuss the evaluation results individually with each employee in order to speak a high degree of understanding.

The Compensation System is a salary range that is based on job grade under the principle of a merit-based compensation salary. Pay raises are given in a standard performance evaluation and salary levels. Bonuses are distributed in a balanced way, depending on the evaluation.

### ● Human resource development

Casio has various programs for human resource development with the intention of developing creative employees that are eager to take on challenges. Training professionals with early tracking into specialized fields.

There are two basic types of professionals at Casio. One is the strongly generalist that parades on the company's corporate culture. The other is the technical specialist that passes on the company's unique technology and know-how.

Casio approaches the development of these employees with the philosophy that people grow through their work, and that the source of growth is one's drive. Based on this belief, Casio supports its employees to grow and improve their skills by providing them with an environment in which new abilities are constantly required. The company also gives employees opportunities to grow based by relying on their own determination and hard work.

For this reason, Casio's system of human resource development is rooted in skills development through actual work, or on-the-job training (OJT). Various supplementary training programs, including systematic study of theory, are also offered off-the-job training (Off-JT).



Organization of Casio's human resources system

# Building a Supportive Work Environment

Casio is building work environments and systems that permit all employees to demonstrate their full potential.

## Policies on Building Positive Work Environments

### Vacations

### Child and nursing care leave

### Communication between Labor and Management

## Building a Supportive Work Environment

### Continued support for achieving a balance between work and family

# Efforts on Occupational Safety and Health

Casio is taking various steps to maintain and enhance employee health and prevent occupational injuries.

## Basic Philosophy

## Activities of the Occupational Safety and Health Committee

## Promotion of employee health

## Mental health care

## Prevention of occupational injuries



Casio Corporate Report 2006

# Social Contribution Initiatives

Casio fulfills the full range of its responsibilities to society by making the most of its proprietary know-how and management resources

## Philosophy on Social Contribution

Based on its corporate creed of "Creativity and Contribution," Casio seeks to contribute to society by creating products that provide people with joy and wonder.

Casio also leverages its proprietary know-how and management resources for the betterment of society. Casio uses its core competence in compact, lightweight, slim, energy efficient technologies to make unique contributions that no other company can.

Rather than merely performing indirect activities such as providing donations, another important channel of social contribution for Casio is to offer the knowledge and experience of its employees to society.

Through communication with various stakeholders, Casio is constantly assessing its responsibilities as a good corporate citizen. Casio is also aware of the importance of establishing its own creative social contribution initiatives to fulfill its responsibilities. The company is currently working to enhance its current range of CSR activities.

Casio continues to dedicate itself to social contribution initiatives in five key areas: (1) environmental conservation to protect irreplaceable global resources and the environment; (2) education to fulfill Casio's responsibility to the next generation who are the future leaders of the world; (3) culture and arts to provide people with joy and wonder; (4) study and research that contribute to the development of the cutting-edge science and technology that are indispensable for society to grow; and (5) community activities to be a useful member of local society.

Casio plans to continue improving its social contribution initiatives by, for instance, developing mechanisms that focus the entire group's efforts, and making them known to the public in an appropriate way.

## Contribution to Local Communities

### Educational activities with the Tokyo Bureau of Environment

As an effective policy for environmental education and measures against global warming, the Tokyo Metropolitan Government has been promoting the Kids' ISO 14000 Program, developed by ArTech. Already, 8,700 Tokyo children are taking part in the program. As a participating company, Casio Computer Co., Ltd., is sending employees with instructor certification to actively participate in the program, and is developing a wide range of activities. In fiscal 2006, based on a request from the Tokyo Bureau of Environment, Casio made case-study presentations to educators and company officials responsible for CSR in the Tokyo area. In the presentations, along with activities to deepen understanding of the Kids' ISO 14000 Program, Casio undertook part of an environmental education leader follow-up course, and provided a seminar on the importance of educational activities for children and Casio's local educational initiatives.

Casio is actively promoting this kind of social contribution initiative for local communities, while providing places for youth to learn resiliency for a meaningful life, and to practice self-reliance and independence. These activities have received the appreciation of the public. Currently, Casio has received requests for classroom visits and factory tours from many educational institutions around the nation of Japan, and Casio is now preparing to undertake these activities and make other new efforts. By maintaining close ties with local communities, Casio is working hard to foster the society of the future, through both economic development and protection of the global environment. Teaching resiliency for a meaningful life to young people forms the foundation of these efforts.

### Support for comprehensive studies classes: Visit to Hatashiro Elementary School

On February 10, 2006, the General Manager of the Environment Center of Casio Computer, Co., Ltd., visited fifth-graders at Hatashiro Elementary School in Shibuya-ku, Tokyo. He went as a guest teacher to talk about Casio's efforts to help stop global warming. He spoke to 90 students in three classes.

After a video presentation on environmental activities, he explained the mechanisms behind global warming and the specific environmental efforts being made on products and distribution at various Casio sites. This was followed by an opportunity to ask questions. The students enjoyed the presentation immensely. They were particularly interested in the samples of eco-products shown to them, such as digital cameras and solar-powered radio-controlled watches that exemplify Casio's compact, lightweight, slim, energy efficient technology. The students were all amazed by, and expressed their admiration for the products, and continued to ask questions even when the class was over.

Although global warming is a complex issue, Casio heard from the students' teachers that the kids were still talking about the presentation for days afterwards. Casio hopes that the youngsters are now taking steps individually and with their families to help prevent global warming.



School visit by Casio



### Beautification and cleanup in the surrounding community

Every April 28, the Shibuya-ku ward office holds a general cleanup in order to help beautify the district, with the participation of residents and businesses in the area of Tokyo. In fiscal 2006, the headquarters of Casio Computer Co., Ltd., pitched in to help clean up and restore the appearance of the local neighborhood.

Cleanup around the head office building

Although participation was purely voluntary, 25 head office employees from all departments showed up on that day. In just 30 minutes, the participants were able to gather up a large amount of garbage from around the head office building.

Starting in fiscal 2006, staff from the Hamura R&D Center began participating in a regular volunteer cleanup activity at the nearest station, JR Ozaku. The employees at Casio Micronics (Ome) also carry out regular cleanup activities in their neighborhood. Casio will continue to actively participate in this kind of community activity whenever possible, at all Casio sites.

### CASIO WORLD OPEN GOLF TOURNAMENT

The CASIO WORLD OPEN GOLF TOURNAMENT has been held since 1981, part of Casio's social contribution through sport.

Starting in 2005, the location of the tournament was switched to the Kochi Kuroshio Country Club in Kochi Prefecture, Japan—the birthplace of Casio's founder and where Casio has a major manufacturing subsidiary. In order to convey the enjoyment of golf to a wider range of people, the CASIO WORLD OPEN invited Michelle Wie, the young female golf phenomenon with worldwide fans, to her first tournament in Japan. Although she played on weekdays, huge crowds filled the gallery in order to see her perform, and there were also large contingents from the Japanese and international mass media. Although Michelle Wie just narrowly missed making it to the weekend championship round by one shot, many fans were impressed by the sight of her battling against the top male players.

Casio is making various contributions to the people of Kochi Prefecture, which hosted the tournament.

Casio Computer Co., Ltd., donated digital cameras to the local government organizations that helped with the hosting of the golf tournament. A special golf lesson area was also set up for golfers from the tournament to give pointers to local youth on the proper golf swing. In addition, Casio worked with local elementary schools to provide students with a guided tour of the backstage sites of the tournament that are usually closed to the public, including the press conference area and the television broadcast facilities. In order to help promote sport among the local residents, Casio used the charity proceeds raised during the tournament to purchase sporting equipment and donated it to local organizations that serve the welfare of the community.



Local youth receiving golf lessons

Casio plans to hold the same kind of tournament in fiscal 2007, with the goal of benefiting the people of the local community.

## Contribution to Civic Society

### Fostering young science and technology researchers—Casio Science Promotion Foundation—

Basic research forms the foundation for science and technology. The new principles discovered in the realm of basic research often end up having an enormous impact on the wider world. However, since basic research does not produce any immediate profits, researchers are often supported by limited budgets from the government or universities. The Casio Science Promotion Foundation is providing funding for this type of research and thereby contributing to the advancement of science and technology.

The Casio Science Promotion Foundation was established in 1982 by the four Kashio brothers, and the late former chairman, Shigeru Kashio, to contribute to the growth and promotion of academic research in Japan. The foundation's main focus is on assisting cutting-edge, creative research in the early stages conducted by younger researchers. Every year, assistance is given to approximately 40 projects. In addition, approximately 10 grants are awarded to send researchers abroad and 10 more to host research meetings.

In fiscal 2006, 44 research projects received grants, totaling ¥50 million. The recipients included Professor Takeyoshi Dohi of the University of Tokyo, Professor Michio Umino of Tohoku University, and Professor Yasufumi Fujiwara of Osaka University. The grants were awarded to the recipients at the 23rd presentation ceremony held on December 2, 2005.

Number and amount of research grants awarded by Casio Science Promotion Foundation

| | Number of grants (Unit: Number of grants) | Total amount of grants awarded (Unit: ¥1000) |
|---|---|---|
| 19th year (FY2002) | 37 | 48,800 |
| 20th year (FY2003) | 42 | 55,640 |
| 21st year (FY2004) | 40 | 50,400 |
| 22nd year (FY2005) | 38 | 50,740 |
| 23rd year (FY2006) | 44 | 60,000 |

Website of the Casio Science Promotion Foundation (Japanese-language)
http://www.casio.co.jp/company/zaidan



# Social Contribution Initiatives

## Supporting the Fifth Dolphin & Whale Eco-Research Network Project

## Supporting the Teacher's Business Training Program

## Contribution to the International Community

### Casio Monetary Fund Committee for Peking University Japan Study

### Support for the World Children's Baseball Fair

## Sponsoring the Nationwide Youth Keyboard Contest in China

### Casio Monetary Fund Committee for Peking University Japan Study

### Major social contribution initiatives in fiscal 2006

### Major donations in fiscal 2006





UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



CASIO INC.

          Plaintiff,

     v.

PAPST LICENSING GMBH & CO. KG,
          Defendant.

_____

PAPST LICENSING GMBH & CO. KG,
          Counter-Plaintiff

     v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

          Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge: Gladys Kessler

Magistrate Judge: Deborah A
Robinson

## [PROPOSED] ORDER GRANTING MOTION
## TO COMPEL THE PRODUCTION OF DOCUMENTS

     Upon consideration of the motion of Defendant and Counter-Plaintiff Papst

Licensing GMBH & Co, KG, to compel discovery the production of documents from

Casio Inc. and Casio Computer Co., Ltd. (collectively "Casio"), it is hereby

     **ORDERED** that the Motion to Compel The Production of Documents is **granted**.

In particular, it is ordered that:

     1.     All documents and materials hereby ordered shall be produced within 10
calendar days of this Court order.

     2.     Casio shall respond to discovery request Nos. 1-5, 7, 10-15, 17-58, 62-74,
as further explained below.

Case 1:07-mc-00493-RMC    Document 52-14 Filed 04/06/2007 Page 2 of 4

3.    For purposes of this Order, the term "Casio Digital Cameras" shall be defined as Casio digital cameras capable of transferring picture data to another device, which were used, manufactured, sold, offered for sale, licensed or imported into the United States since October 22, 2002.

4.    Casio must produce all non-privileged documents in response to Request Nos. 2-5 and 10-12 in connection with the following aspects of the Casio Digital Cameras:

1.    The acquisition and processing of light images by cameras including, for example, the conversion of light images into electrical signals representative of the light images.

2.    The processing by a camera of electrical signals representative of light images including, for example, the conversion of analog signals representative of light images into digital electrical signals, and the transfer of those digital electrical signals to an electronic memory.

3.    The operation of any computer program stored in a memory of a camera as it concerns any of the other subject matters set forth in this list.

4.    The storage of information in a memory of a camera, including but not limited to external memory cards and other electronic memory intended to be attached to a camera.

5.    The interconnection of a camera to a personal computer.

6.    The transfer of digital electrical signals representative of light images from a camera to a personal computer including, for example, the process by which the personal computer recognizes how to communicate with and receive data from the camera.

7.    The process by which a camera communicates with and transfers information to or from a personal computer.

8.    The acquisition and processing of sound waves by cameras, how the sound waves are converted to digital electrical signals by the camera, how those digital electrical signals are processed and stored by the camera, and how those digital electrical signals are downloaded from the camera to a personal computer.

5.    Casio shall respond to all discovery requests with respect to each of its Casio Digital Cameras, and Casio's discovery responses shall not be limited to only those cameras specifically accused of infringement at this time.

6.    Casio shall produce all non-privileged materials relating to the research, design, development, testing, manufacturing, marketing, operation and commercial production of the at-issue Casio digital cameras. In particular, Casio shall produce all non-privileged materials responsive to Papst Licensing Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 35, 36, 37, 44, 53, 59, 60, 61 and 66.

7.    Casio shall not withhold any documents on the basis that they may be subject to a motion to bifurcate or a motion to disqualify counsel.

8.    Casio shall produce responsive documents relating to activities outside of the United States as well as within the United States.

9.    Casio shall produce all documents regarding the sales, profits, costs, licensing and reasonable royalty information for the at-issue Casio Digital Cameras.    In particular, Casio shall produce all non-privileged materials responsive to Papst Licensing Document Request Nos. 7, 19 to 33.

10.    Responsive documents from all Casio entities shall be produced, not just those named in this litigation. All documents responsive to Papst Doc. Request No. 67 shall be produced.

11.    Casio shall produce the requested documents regarding Casio's computer information systems.  Specifically, all documents responsive to Papst Doc. Request No. 70 shall be produced.

12.    Casio shall produce the requested documents regarding other lawsuits concerning Casio Digital Cameras. Specifically, all documents responsive to Papst Doc. Request Nos. 15, 17-18 shall be produced.

13.    Casio shall produce the requested documents concerning the Patents-In-Suit.  Specifically, all documents responsive to Papst Doc. Request Nos. 38, 39, 44, 45, 46, 47, 48, 49, 50, 51, 53, 54, 55 and 74 shall be produced.

14.    Casio shall produce the requested documents demonstrating the names of individuals and businesses involved in Casio's infringing activities.  Specifically, all documents responsive to Papst Doc. Request Nos. 56-58, 66 shall be produced.

15.    Casio shall produce the requested documents relating to prior art and related subject matter, and not just the prior art on which Casio intends to rely.  Specifically, all documents responsive to Papst Doc. Request Nos. 50, 51 and 53.

16.    Casio shall produce the requested documents identified in, responsive to, used in responding to, or relating to Papst's First Set of Interrogatories.  Specifically, all documents responsive to Papst Doc. Request No. 71 shall be produced.

17.    No Casio documents shall be withheld on the basis of confidentiality given that Papst Licensing has agreed to keep any Casio confidential documents on an outside counsel only basis until the protective order issues are resolved.

DATED: _____          _____

                                        Deborah Robinson
                                        United States Magistrate Judge

知財法務 菅野様  ← QV 内見  1/2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA



IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

_____

This Document Relates To:

Casio, No. 06-cv-1751

_____

Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880

## DECLARATION OF SATOSHI KATAKAI

  I, Satoshi Katakai, hereby declare as follows:

  1. I am a manager of 21 Development Section, Second Development Department, QV Digitalcamera Unit, Product Department HQ at Casio Computer Co., Ltd. (hereafter "Casio Computer") and have been in this position since April 1, 2006.

  2. I am in charge of digital camera design and manufacture at Casio Computer, and as such I am familiar with how the cameras are designed and manufactured.

  3. The vast majority of camera models are designed at Casio Computer, and detailed specifications are sent to three other companies which independently assemble the cameras. One of these companies is Yamagata Casio Co., Ltd., which is a subsidiary of Casio Computer. The other two companies, Flextronics International Ltd. and Ability Enterprise Co., assemble the cameras in China.

  4. Casio Computer has all the research and development on these designs, and documents sufficient to show how these cameras are assembled and how they function.

  5. Two camera models, the GV-10 and LV-10, and very few others never sold to the United States, were designed and manufactured by third parties.

  6. The GV-10 and LV-10, which were sold to Casio America in very small quantities, were designed and manufactured by third parties Primax Electronics Ltd. and Mustek Systems Inc., respectively. Some portion of the sales may have been after issuance of the patents-in-suit.

  7. Casio Computer has some documents showing the design, operation and manufacture of these models. However, other more detailed documents would be in the custody of Primax Electronics Ltd. and Mustek Systems Inc.

1-NY/2302145.2

17/04 2008 08:53 FAX 07698533222   CHANANGUO09

菅野様 ← QV 片貝

2/2

8.   Casio Computer has hundreds of employees who are involved in some manner with design, development, and testing of digital cameras. They generate incredible amounts of documents and data every year. For Casio Computer to collect and review these documents, or any significant portion of them, would be an extraordinary burden to Casio, requiring substantial time and effort from many people, and would take many weeks to complete.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  April 16, 2008

By:  _Satoshi Katakai_
Satoshi Katakai
Manager
21 Development Section
Second Development Department
QV Digitalcamera Unit
Product Department HQ
Casio Computer Co., Ltd

'08 04/17 THU 10:13  [受付番号 67611

EXHIBIT
G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------X

CASIO INC.,                            :

        Plaintiff,                    : Civil Action No. 1:06 CV 01751
                        : Judge:  Gladys Kessler
                        : Magistrate: Deborah A. Robinson
      v.                           :
                        :
                        :
PAPST LICENSING GMBH & CO. KG,          :

                        :
      Defendant.                     :
---------------------------------------------------------X
---------------------------------------------------------X
PAPST LICENSING GMBH & CO. KG,          :

                        :
      Counter-Plaintiff,            : Civil Action No. 1:06 CV 01751
                        : Judge:  Gladys Kessler
                        : Magistrate: Deborah A. Robinson
      v.                           :
                        :
                        :
CASIO INC. and                          :
CASIO COMPUTER CO., LTD.                 :
                        :
      Counter-Defendants            :
---------------------------------------------------------X

## DECLARATION OF KOICHI KANEDA

    I, Koichi Kaneda, hereby declare as follows:

    1.    I am a deputy general manager of QV Department, Overseas Marketing & Sales Division, Global Marketing Headquarters at Casio Computer Co., Ltd. and have been in this position since April 1, 2006.

    2.    I am in charge of sales of Casio cameras outside of Japan, and am responsible for knowing how Casio Computer products are being sold outside of Japan.

1-NY/2192755.1

3.    To my knowledge, with the exceptions noted below, all sales of Casio Computer cameras into the United States are done through the United States subsidiary of Casio Computer Co., Ltd.  That subsidiary is Casio, Inc.

4.    Casio Computer intends all United States sales to be done through Casio, Inc., and does not permit sales in the United States by any other Casio-related companies.  As a deputy general manager, I would expect any instances violating this policy to be immediately brought to my attention.

5.    The only voluntary instance of Casio camera modules being sold into the United States by any company other than Casio, Inc., relates to an agreement Casio Computer had with Pentax from 2002-2004.  In that time period, Casio Computer sold camera modules to Pentax and that company is believed to have sold some or all of its cameras containing Casio's camera module into the United States.

6.    On occasion, I have heard reports of Casio cameras being available for sale in the United States for prices lower than Casio, Inc. prices, and we suspect that these cameras are being sold by third parties (not Casio, Inc. or any other Casio-related companies).

7.    Casio Computer has hundreds of employees who are involved in some manner with sales of cameras, and the amount of documents and other data related to cameras and generated by those personnel over any given year is huge and nearly impossible to quantify.  For Casio Computer to collect and review these documents, or any significant portion of them, and not including the documents from Casio Computer's many subsidiaries, would take months of time and would be an enormous burden.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 9, 2007                          By: _K. La V._____

                                                       Koichi Kaneda
                                                       Deputy General Manager
                                                       QV Department
                                                       Overseas Marketing & Sales Division
                                                       Global Marketing Headquarters
                                                       Casio Computer Co., Ltd.