**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** | |
| _____ | **Misc. Action No. 07-493 (RMC)** |
| **This Document Relates To:** | **MDL Docket No. 1880** |
| **Casio, No. 06-cv-1751** | |

## PAPST'S PROPOSED DISCOVERY PLAN

The Court ordered the parties to file a joint proposed discovery plan by May 8, 2008. At about 7:45 p.m. eastern time, Casio sent Papst a revised draft of a plan. Casio's revised draft made substantial and significant changes to an earlier draft plan Papst sent to Casio earlier in the day. Counsel for Papst told Casio that they needed more time to consider and address the issue with Casio, that all of Papst's secretarial staff had left, and requested Casio to file that evening a request for a one day extension of time to allow the parties further time to meet and confer and try to further minimize the issues. Casio's counsel refused and said it would file the plan that evening. Unfortunately, Casio's proposed plan did not include Papst's positions that were provided to Casio earlier in the day. See Exhibit A attached. The Papst sections of the proposed plan that were deleted by Casio are reproduced below *in italics* as follows:

## I.    *REQUESTED CLARIFICATION OF THE APRIL 24 ORDER*

### A.    *Papst's Position*

*The Court stated in its First Order Regarding Casio/Papst Discovery dated April 24, 2008, in paragraph 4,*

*Despite the fact the Court has stricken Papst's first discovery requests to Casio, Papst and Casio are entitled to receive reasonable discovery and both parties are obligated to provide reasonable discovery. Accordingly, Papst and Casio shall meet and confer no later than May 1, 2008, to determine specifically the reasonable discovery to be requested and to which the opposing party shall respond.*

*The Court also stated in paragraph 6,*

*Each party is limited to a maximum of twenty-five interrogatories, twenty-five requests for production, and twenty-five requests for admission, including discrete subparts.*

It is Papst's understanding from this Order that the Court wanted Papst and Casio to meet and confer to somehow define with specificity the discovery that Casio needs to produce to Papst in this case. It is also Papst's understanding that the Court allowed Papst to generate a revised set of requests for production and interrogatories, each to be consistent with the Court's April 24 Order.

With this in mind, and consistent with the Court's Order the parties met and conferred on April 28, 2008 concerning discovery. Casio provided Papst with a list of categories of documents it proposed that it should produce, and merely said to Papst that it would produce some documents in the various categories. Papst believes it is appropriate that in order to memorialize the parties' agreement, it should be in the form of document requests and interrogatories, and that to do so would be consistent with what the Court ordered. To that end, Papst sent a revised set of document requests and interrogatories to Casio and each of the other defendants, and asked counsel for both Casio and the other defendants to provide them any proposed limitations on these requests which they felt were necessary to be consistent with the Court's April 24, 2008 Order. On May 7th Casio did provide Papst some pointed comments on certain production requests, including Papst's instructions section of its requests.

Papst then sent Casio's counsel and the other defendants a revised set of requests which

*had been redrafted so that they would be consistent with Casio's comments. Attached hereto and marked as Exhibit B is Papst's revised set of requests which Papst would like not only Casio to respond to, but all of the other defendants. Papst has again requested that Casio and the other defendants provide comments and proposed limitations to these requests, if they believe they are inconsistent with the Court's Order.*

*Casio has taken the position that Papst does not have the right to serve additional interrogatories and document requests. However, it appears that in the April 24, 2008 Order the Court allowed Papst to serve additional discovery requests. In any event, Papst and Casio must come up with some list of documents and other information which Casio has to provide to Papst in connection with this case.*

*The fact that Papst's proposed document requests and interrogatories are consistent with the document requests and interrogatories that Papst has asked the other defendants in this case to respond to is significant because this would allow discovery in these MDL proceedings to proceed in a coordinated fashion.*

*Papst respectfully requests that the Court order Casio to respond to these new discovery requests in a reasonable period of time so that discovery may proceed against all defendants in a uniform fashion.*

## II.    DISCOVERY RESPONSES

### A.    The Papst Position

*Papst produced over 22,700 pages of documents during the Casio v. Papst lawsuit. On Friday, May 8, 2008, intends to produce over 50,000 pages of additional documents to counsel for all defendants. On May 7, 2008, Papst also served interrogatory answers on all defendants which totaled over 100 pages. A copy of those interrogatory responses are attached hereto as Exhibit C.*

*Papst's interrogatory responses, Exhibit C, respond to and are coextensive with many of Defendant Casio's interrogatories. By this Friday, Papst will provide the few remaining additional updated responses to Casio's interrogatories, consistent with the Court's April 24, 2008 Order.*

*Prior to the stay that was entered in the Casio v. Papst lawsuit, Casio produced no confidential technical documents to Papst, based on its position that a protective order was not entered in the case, and it would not produce the documents prior to that time. Yesterday, May 7, 2008, Casio produced additional technical documents to Papst. Casio apparently has limited its production of documents to Papst, which will be discussed in a further section of this paper.*

*Papst also had a meeting with counsel for all defendants, including Casio's counsel, on May 7, 2008, to discuss the form of the production of documents. Unfortunately, no further agreement was reached by the parties concerning this issue.*

*Papst is in the process of preparing further documents for production in this case, and will produce them when they are processed. These documents are in response, inter alia, to the document requests served by all of the defendants in this action.*

### III.    *THE PENDING MOTIONS*

#### A.    *Papst's Position*

*Papst sees the following dispute over the meaning of paragraphs 2 through 5 of the Court's April 24 Order (docket #77). In paragraph 5 the Court states that,*

> *Casio shall complete its current production of documents to Papst no later than <u>May 6, 2008</u>. Such production shall include information regarding sales of the six model cameras that Papst alleges infringe the patents-in-suit.*

*In paragraphs 2 and 3 the Court holds in abeyance Casio's request for sanctions related to Papst's first discovery requests and related to Casio's First Set of Interrogatories. Considering*

*the Court's Order in paragraph 6 requiring Casio to produce documents by May 6, 2008, Papst*

*understands that the motion for sanctions referred to in paragraphs 2 and 3 only concerned the*

*issue of whether monetary sanctions would apply. Casio has taken the position and has limited*

*its document production until the Court has ruled on the sanction motion. By limiting its*

*document production, Casio has delayed potentially indefinitely its discovery in this case. The*

*parties request clarification on this issue.*

This marks the end of the Papst positions that were deleted by Casio in its proposed discovery

plan.


### PAPST'S COMMENTS ON CASIO'S PROPOSED DISCOVERY PLAN

The proposed plan filed by Casio has  commentary about Papst that is misleading and in

some cases moot.  For example, the plan has Footnote 3 inserted by Casio, that concerns the

instructions to Papst's discovery requests.  In a telephone conference on May 7, 2008, Papst's

counsel told Casio's counsel that it was sending Casio a revised set of discovery requests that

Papst believed dealt with Casio's pointed comments concerning the instructions.  Papst's

discovery requests (Exhibit B, Parts 1 and 2) were served on Casio's counsel on May 8, 2008.

The proposed plan that Casio has provided the Court comments on the wrong set of discovery

requests.

Casio complains in its footnote 3 on pages 5 and 6 of its unauthorized discovery plan that

Papst still has not sufficiently narrowed its discovery requests.  However, Casio's complaint is

directed to the wrong set of requests not even at-issue between the parties.  The following are

two specific examples that refute Casio's arguments.  First, Casio asserts that Papst "still

demands documents from all Casio-related companies all over the world (definition number 1)".

Yet the latest draft Papst sent to Casio was drafted by Papst to eliminate this issue.  Specifically Instruction 1 in Papst latest draft states,

> "As use of herein, "Camera Manufacturer," "Defendant," "You" or "Your" means Casio Inc., Casio Computer Co., Ltd., Fujifilm Corporation, Fujifilm U.S.A., Inc., Matsushita Electric Industrial Co., Ltd., Victor Company of Japan, Ltd., Olympus Corp., Olympus Imaging America, Inc., Samsung Techwin Col, Samsung Opto-Electronics America, Inc., Panasonic Corporation of North America, JVC Company of America, Ricoh Company, Ltd., Ricoh Americas Corporation, Ricoh Corporation, Hewlett-Packard any other Product manufacturer or seller subsequently added to this MDL., all of their predecessor(s) and successor(s) in interest, and any person employed by or for any or all of these entities, and all of their attorneys, accountants, and consultants."

To Papst's understanding, this instruction is limited to the parties in suit.  This instruction is similar in language to the language contained in similar instructions in all of Defendants' discovery requests.

Second, also in footnote 3 on page 5 and 6 of Casio's proposed plan, Casio refers to "(instructions 21-30)".  Yet Papst's latest draft of its document request <u>only has 15 instructions</u> (see pages 1 through 7 of Exhibit B).  Thus, in footnote 3, Casio does not address the right document.  Papst's last proposal for written discovery requests is Exhibit B.  Papst's latest discovery requests were modified to try to eliminate the problems raised by Casio.  Thus, Casio's comments in Footnote 3 are moot.

<u>**COMMENTS ON CASIO PRODUCTION OF DOCUMENTS**</u>

Papst provides the following comments of Casio's document production to put in perspective the need for an appropriate discovery plan.  Casio has produced about 100,000 pages of documents.  A vast majority of these Casio documents are written in Japanese.  Casio's final document production likely could be significantly more than this since Casio still has not produced documents it alleges are covered by third party confidentiality agreements.

The following is one example of the problem with Casio's document production.  Casio produced 27 versions of what appears to be a Japanese language specification, each of which is over 35 pages in length.  These specifications appear to concern one of the most important features of Papst patents at issue here, i.e., how the Casio Cameras communicate with personal computers connected to Casio cameras.  There are 49 Casio products asserted to be infringed by Papst.  It is unclear which of the twenty-five plus versions of this specification, if any, apply to which of the 49 Casio products.  Casio's document production is like a picture puzzle written in Japanese that would be the size of a room.  This illustrates the monumental task Papst has in solving the puzzle of Casio's documents.

Papst's interrogatories (Exhibit B) were carefully drafted to help Papst unravel and simplify this puzzle and get the information it needs.  For example, Papst Interrogatories 2 and 4 ask specific questions concerning what are called "identifiers."  These are part of the computer code in each of Casio's products that would describe whether each product uses the important feature of Papst's patent discussed above.  In these interrogatories, Papst asked Casio and the other defendants, *inter alia*, to identify all specific "identifiers" used in each of their products, and to point to documents that confirm this fact.  Casio has complained it does not want to answer these specific questions, and that it prefers to proceed informally.  If Casio wants to proceed on a cooperative basis, Papst agrees.  However, if Casio does not cooperate as it asserts it will, Papst will request the Court's assistance in compelling Casio to provide the necessary information.

## PAPST PROPOSAL ON HOW TO PROCEED WITH DISCOVERY

Thus, Papst's proposed plan is simple.  Casio's counsel has repeatedly claimed that Papst has all the documents Papst "needs", and that Casio would like to discuss informally any

problems Papst has with Casio's discovery production. Casio's counsel has asserted that this would be the most economical process to proceed with discovery. Papst agrees with Casio's proposal, but expects Casio cooperate.

Papst has a deposition scheduled for May 14 and 15, 2008 of an individual Casio has identified in its Rule 26 initial disclosures as a person with knowledge about the technical issues in this case. Papst will depose this individual on the technical issues that are the subject matter of this case. Subsequent to the deposition Papst will meet with Casio's counsel to address specific issues and any deficiencies in Casio's document production. If this occurs, and Papst has further questions it needs answered, it will address those with the Court if they cannot be resolved amicably.

Dated: May 9, 2008

Respectfully submitted,


/s/ Joseph E. Cwik
James P. White
Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza, 22nd Floor
Chicago, IL 60606
(312) 655-1500

Robert F. Muse (Bar No. 166868)
Jacob A. Stein (Bar No. 052233)
Joshua A. Levy (Bar No. 475108)
Stein, Mitchell & Mezines, LLP
1100 Connecticut Ave., NW,
 Suite 1100
 Washington, D.C. 20036
(202) 737-7777
**Counsel for Papst Licensing GmbH & Co. KG**

# EXHIBIT A

## Schnayer, Jerold

| | |
|---|---|
| **From:** | Scott Stimpson [stimpsonlaw@gmail.com] |
| **Sent:** | Thursday, May 08, 2008 6:47 PM |
| **To:** | Schnayer, Jerold |
| **Cc:** | jkfee@morganlewis.com; White, James; Cwik, Joseph |
| **Subject:** | Re: Papst Camera Patent MDL |
| **Attachments:** | jointdiscoveryPAPST.doc |

Jerry:

Here is the revision.  We are filing this tonight, and you just told me that you would wait.

We will wait for your comments, and then file tonight.

Scott

On Thu, May 8, 2008 at 7:44 PM, Schnayer, Jerold <jbschnayer@welshkatz.com> wrote:

    Dear Scott,


    I have no secretarial help.  I cannot provide you with a written response tonight since
    you have not sent me a proposed draft by now.  I am leaving my office.  We can reconvene
    tomorrow morning.


    You have my consent to file a non contentious request for a one day extension to file
    the report.


    Thank you,



    Jerold Schnayer

    Welsh & Katz, Ltd.

    120 South Riverside Plaza 22nd Floor

    Chicago, IL 60606

    312-655-1500

    http://www.welshkatz.com

# EXHIBIT A

CONFIDENTIALITY NOTICE

This e-mail or the documents accompanying this e-mail contain information which may be confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you have received this e-mail in error, please notify us immediately so that we can take action to correct the problem.

**From:** Sliwinski, Cynthia
**Sent:** Thursday, May 08, 2008 5:15 PM

**To:** stimpsonlaw@gmail.com; jkfee@morganlewis.com
**Cc:** Schnayer, Jerold
**Subject:** FW: Papst Camera Patent MDL

Attached are the exhibits.

**From:** Sliwinski, Cynthia
**Sent:** Thursday, May 08, 2008 4:55 PM
**To:** stimpsonlaw@gmail.com; 'jkfee@morganlewis.com'
**Cc:** Schnayer, Jerold
**Subject:** Papst Camera Patent MDL

Jerry Schnayer asked me to send you the attached draft for your review and consideration.

--
Scott D. Stimpson
The Law Office of Scott D. Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
email: stimpsonlaw@gmail.com

5/9/2008

phone: 203-258-8412

Disclaimer: This email is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy, or distribute this message. If you have received this communication in error, please notify me immediately by email and delete the original message.

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION**

**This Document Relates To:**

**Casio, No. 06-cv-1751**

**Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880**

## JOINT PROPOSED DISCOVERY PLAN

Papst Licensing GmbH & Co. KG ("Papst"), with Casio Inc. and Casio Computer Co., Ltd. (collectively "Casio"), hereby provide this joint proposed discovery plan pursuant to the Order of the Court, dated April 24, 2008 (docket #77).

The parties met and conferred, pursuant to paragraph 4 of the Court's April 24 Order, and were able to agree on few issues. There are, accordingly, issues raised herein for which we jointly request the Court's assistance.

## I.    REQUESTED CLARIFICATION OF THE APRIL 24 ORDER

### A.    Papst's Position

The Court stated in its First Order Regarding Casio/Papst Discovery dated April 24, 2008, in paragraph 4,

Despite the fact the Court has stricken Papst's first discovery requests to Casio, Papst and Casio are entitled to receive reasonable discovery and both parties are obligated to provide reasonable discovery.  Accordingly, Papst and Casio shall meet and confer no later than May 1, 2008, to determine specifically the reasonable discovery to be requested and to which the opposing party shall respond.

The Court also stated in paragraph 6,

Each party is limited to a maximum of twenty-five interrogatories, twenty-five requests for production, and twenty-five requests for admission, including discrete subparts.

It is Papst's understanding from this Order that the Court wanted Papst and Casio to meet and confer to somehow define with specificity the discovery that Casio needs to produce to Papst in this case.  It is also Papst's understanding that the Court allowed Papst to generate a revised set of requests for production and interrogatories, each to be consistent with the Court's April 24 Order.

With this in mind, and consistent with the Court's Order the parties met and conferred on April 28, 2008 concerning discovery.  Casio provided Papst with a list of categories of documents it proposed that it should produce, and merely said to Papst that it would produce some documents in the various categories.  Papst believes it is appropriate that in order to memorialize the parties' agreement, it should be in the form of document requests and interrogatories, and that to do so would be

consistent with what the Court ordered.  To that end, Papst sent a revised set of document requests and interrogatories to Casio and each of the other defendants, and asked counsel for both Casio and the other defendants to provide them any proposed limitations on these requests which they felt were necessary to be consistent with the Court's April 24, 2008 Order.  On May 7th Casio did provide Papst some pointed comments on certain production requests, including Papst's instructions section of its requests.

Papst then sent Casio's counsel and the other defendants a revised set of requests which had been redrafted so that they would be consistent with Casio's comments.  Attached hereto and marked as Exhibit A is Papst's revised set of requests which Papst would like not only Casio to respond to, but all of the other defendants.  Papst has again requested that Casio and the other defendants provide comments and proposed limitations to these requests, if they believe they are inconsistent with the Court's Order.

Casio has taken the position that Papst does not have the right to serve additional interrogatories and document requests.  However, it appears that in the April 24, 2008 Order the Court allowed Papst to serve additional discovery requests.  In any event, Papst and Casio must come

3

up with some list of documents and other information which Casio has to provide to Papst in connection with this case.

The fact that Papst's proposed document requests and interrogatories are consistent with the document requests and interrogatories that Papst has asked the other defendants in this case to respond to is significant because this would allow discovery in these MDL proceedings to proceed in a coordinated fashion.

Papst respectfully requests that the Court order Casio to respond to these new discovery requests in a reasonable period of time so that discovery may proceed against all defendants in a uniform fashion.

## B.    Casio's Position[1]

Paragraph 6(b) of the Court's April 24 Order (docket #77) stated that each party is limited to twenty-five interrogatories, twenty-five document requests, and twenty-five requests for admission. Casio and Papst disagree as to whether this means that Papst may now serve additional discovery requests on Casio.

On April 8, 2008, in response to thorough briefing and a hearing that

---

[1]    Clarification of Papst Statement:  Casio never provided comments to the Papst discovery requests so that Papst could serve anything on Casio, as Papst implies.  Papst is referring to the draft of this report sent to it on the morning of May 7, which contained the basic text of what is now footnote 3, *infra*.

4

addressed the issue, this Court expressly held that "no further written discovery requests shall be allowed between Casio and Papst."  Docket #36, ¶4.  This effectively reconfirmed the May 14, 2007 Order of Judge Kessler that there would be no further written discovery requests between Casio and Papst after July 1, 2007 – a deadline that passed long ago.  As the April 24 Order does not vacate either the Court's April 8, 2008 Order, or the earlier Order of Judge Kessler, Casio does not believe the Court intended to again open up written discovery for Casio and Papst.[2]  Indeed, if Papst and Casio were to serve discovery requests all over again, it would have been inconsistent for the Court to order them to meet and confer now for the purpose of determining the specific scope of further discovery.  April 24 Order, ¶4 (docket #77).

Casio has already been forced to deal with 148 document requests from Papst, many very detailed interrogatories served on both Casio Japan and Casio America, and 130 requests for admission.  Dealing with the Papst discovery requests was a painful and expensive experience.  The Court found the Papst discovery requests "outrageously over the top" and "stunning" in their over breadth, served in "bad faith," and struck them in their entirety.  *Id*. ¶2; May 6 Order, fn 2 (docket #82).  If the Court

---

[2]    *See* Exhibit D at 27 (to counsel for Papst:  "you're dangerously close to being so grossly overbroad <u>and you're too late to change it now</u> and now what are you going to do?  How can I enforce it?  I mean, you've let yourself get to the end of a limb") (emphasis added).

now combines that ruling with an order effectively allowing Papst to simply start the written discovery process anew, the only party that will have been punished as a result of Papst's discovery abuse is Casio because it would have to bear the additional burden and costs associated with responding to additional written discovery served ten months after the deadline.

Casio does not understand the Court to have intended to reverse itself on this issue, and Casio again urges the Court to deny Papst's request to reopen this Pandora's Box and the substantial expense associated with it.

Casio has produced over 100,000 pages of documents, including tens of thousands of pages directly on the technology at issue. After Papst has reviewed those documents in detail, if it believes there are additional documents needed and has good reason for this belief, Casio will supplement its production. The approach Papst wants to take – serving another overbroad set of requests for documents before it even bothers to review the documents it already has – will only add additional layers of expense and burden for both Casio and the Court. Papst has what it needs, and if its counsel would simply review the Casio production documents that should become clear.

Papst claims that Casio should respond to the discovery requests

6

that are attached as Exhibit A. Those requests were only served on

counsel for Casio at 3:00 p.m. on the same afternoon this submission was

due (and Papst's first inserts and comments to this submission itself came

three hours later, at 6:00 p.m.). Counsel for Casio was not given sufficient

time to comment on these new requests, except to state that Papst

should not be allowed any additional written discovery. Indeed, counsel

for Casio has spent the last several days focusing on a different

"narrowed" set of Papst requests that counsel for Papst served on Casio

and presented as its proposed compromise on the Casio document

production. *See* Exhibit C and fn 3, *infra*.

## II.    **DISCOVERY RESPONSES**

### A.    **The Papst Position**

Papst produced over 22,700 pages of documents during the Casio

v. Papst lawsuit. On Friday, May 8, 2008, intends to produce over 50,000

pages of additional documents to counsel for all defendants. On May 7,

2008, Papst also served interrogatory answers on all defendants which

totaled over 100 pages. A copy of those interrogatory responses are

attached hereto as Exhibit B.

Papst's interrogatory responses, Exhibit B, respond to and are

coextensive with many of Defendant Casio's interrogatories. By this

Friday, Papst will provide the few remaining additional updated responses

to Casio's interrogatories, consistent with the Court's April 24, 2008 Order.

Prior to the stay that was entered in the Casio v. Papst lawsuit, Casio produced no confidential technical documents to Papst, based on its position that a protective order was not entered in the case, and it would not produce the documents prior to that time. Yesterday, May 7, 2008, Casio produced additional technical documents to Papst. Casio apparently has limited its production of documents to Papst, which will be discussed in a further section of this paper.

Papst also had a meeting with counsel for all defendants, including Casio's counsel, on May 7, 2008, to discuss the form of the production of documents. Unfortunately, no further agreement was reached by the parties concerning this issue.

Papst is in the process of preparing further documents for production in this case, and will produce them when they are processed. These documents are in response, *inter alia*, to the document requests served by all of the defendants in this action.

### B.    <u>Casio's Position</u>

<u>Papst document Production</u>:  Casio has not received any documents from Papst since the stay was lifted. While Papst now states that some documents will be produced this week, they concede that this

8

will not be all the Papst documents, and there is no deadline for them to complete the production. Accordingly, Casio requests an order that Papst produce all its documents within ten days.

Papst Responses to Interrogatories:  Papst has agreed to provide, this week, full responses to Casio's outstanding interrogatories, as ordered in paragraphs 6(k) – 6(o) of the April 24 Order.

Casio's Production:  Pursuant to paragraph 5 of the Court's Order, Casio produced additional documents on May 6. Approximately 69,000 additional documents, or about an additional 23 boxes worth, were produced that day.

With regard to the scope of the Casio production, the parties agreed that Casio would produce a number of additional documents, including things like service manuals and documents sufficient for an understanding of the specific relevant technology. Casio's plan was to include in this joint submission a specific list of what the parties would jointly agree to be the scope of any future Casio production.

But after working with Papst to reach agreements per the Court's Order, Papst rendered the agreements entirely meaningless by serving new document requests. Exhibit C.  Casio had provided concessions on what it was willing to produce, in order to reach a final, amicable

9

resolution, only to find out two days later that Papst was still demanding

an outrageous scope of production.[3]

---

[3]    Papst claimed that the new requests (Exhibit C) were "narrowed" per the Court orders and instructions. Despite the numbering on the actual requests, they were not even close to the 25 request limit ordered by the court, as was clear from the vast array of documents demanded in the "instructions" to the requests (instructions 21-30). While purporting to limit some of the requests to certain features of the cameras, they nevertheless continued to demand documents from every Casio-related company all over the world (definition number 1) that had any mention of any of these features, including every technical document virtually ever written or created anywhere in the world (see, e.g., instructions 21 and 25), every document on the development history of every such feature (id.); every marketing plan, advertisement, brochure, bulletin, and market study, all over the world, making any reference to any of the features (instruction 23); every document from every "patent related" federal or state lawsuit, administrative proceeding, ITC proceeding, Patent Office proceeding, and "international cases and proceedings filed in any tribunal" anywhere in the world, that involves the cameras (request 12, instruction 13); every document related to prosecution of every patent and application all over the world that even partially mentions any of the features (request 17); etc. According to the requests, the documents identified in these "instructions" (obviously in large part simply copied from Papst's first set of requests) were only "examples" of what must be produced. Papst even expanded its requests in some respects, insisting that, for every responsive document that has ever been destroyed by any Casio related company worldwide in the last 23 years (instructions 1 and 17), Casio must identify the person who destroyed it, the date it was destroyed, the reasons for and circumstances surrounding the destruction (instruction 7). Papst also demanded that Casio produce every document relating to every review or analysis of any competitor product with these features (instruction 21), every document showing every tweak to any related software that has been made over the past 23 years (id.), every communication between every Casio employee from every country of the world with manufacturers or suppliers of integrated circuitry (id.), etc. At the April 22 telephonic hearing, the Court expressly warned Papst about using discovery "as a weapon" and told counsel for Papst: "don't do it again" (Exhibit D at 5). The message did not sink in.

Counsel for Casio has been grappling with this outrageous set of document requests – Papst's proposal for "compromise" and formally served on Casio pursuant to Federal Rule 26(g) – for the last several days. Only after counsel for Papst learned that Casio would show these requests to the Court did Papst serve another set, allegedly further narrowed. Counsel for Casio has not had the

EXHIBIT A

### III.  THE PENDING MOTIONS

#### A.  Papst's Position

Papst sees the following dispute over the meaning of paragraphs 2 through 5 of the Court's April 24 Order (docket #77).  In paragraph 5 the Court states that,

> Casio shall complete its current production of documents to Papst no later than <u>May 6, 2008</u>.  Such production shall include information regarding sales of the six model cameras that Papst alleges infringe the patents-in-suit.

In paragraphs 2 and 3 the Court holds in abeyance Casio's request for sanctions related to Papst's first discovery requests and related to Casio's First Set of Interrogatories.  Considering the Court's Order in paragraph 6 requiring Casio to produce documents by May 6, 2008, Papst understands that the motion for sanctions referred to in paragraphs 2 and 3 only concerned the issue of whether monetary sanctions would apply.  Casio has taken the position and has limited its document production until the Court has ruled on the sanction motion.  By limiting its document production, Casio has delayed potentially indefinitely its discovery in this case.  The parties request clarification on this issue.

#### B.  Casio's Position

---

opportunity to focus on the new set, as they were not served until 3:00 p.m. on the day of this submission.

EXHIBIT A

In paragraphs 2 and 3 of the Court's April 24 Order (docket #77), the Court held the sanctions issues from the pending Casio motions in abeyance. The parties agree that resolution of the issues in these pending motions will significantly impact on the discovery between Casio and Papst, and so both parties respectfully request early resolution of these outstanding issues.

Resolution of Casio's motion for sanctions related to Papst's responses to Casio's interrogatories (docket #37) will dictate whether Casio and Papst need to address discovery related only to topics that may, as a result of the motion, no longer be in issue between Casio and Papst. That is, Casio has requested in that motion sanctions that, if ordered by the Court, would narrow the scope of needed discovery. Resolution of the sanctions portions of the Motion to strike (docket #38) may be relevant to the question of whether Papst may serve additional discovery requests, as one of the requested sanctions was that Papst's "bad faith" should preclude them from serving more requests. Accordingly, both parties respectfully request early resolution of these pending issues.[4]

---

[4]    The sanctions requests in the Motion to Strike are also important because Casio incurred very substantial expenses in dealing with those requests, the Motion to Strike, and the two Papst motions to compel (which were denied in their entirety). Casio requested reimbursement of its fees and costs associated with these tasks that were all necessitated only by the Papst overbroad

Dated: May ____, 2008

Respectfully submitted,

_____
Robert F. Muse (Bar No. 166868)
Jacob A. Stein (Bar No. 052233)
Joshua A. Levy (Bar No. 475108)

Stein, Mitchell & Mezines, LLP
1100 Connecticut Ave., NW,
 Suite 1100
 Washington, D.C. 20036
(202) 737-7777

James P. White
Jerold B. Schnayer
Walter J. Kawula
WELSH & KATZ, LTD.
120 South Riverside Plaza, 22nd Floor
Chicago, IL 60606
(312) 655-1500

---

approach to its discovery requests. The Court has already held that the Papst discovery requests were "outrageously over the top," "hugely overbroad," and "absolutely stunning" in their over-breadth (Exhibit D, tr. at 4, 17, 33), warned Papst about "playing those games" and "using discovery as a weapon...." (*id*. at 4-5), and has also held that they were "propounded in bad faith" (May 6 Order, fn 2, docket #82). Casio therefore respectfully suggests that the expenses Casio incurred with regard to these requests must be borne by Papst. See Fed. R. Civ. P. 26(g) ("If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction" and the sanction may include "reasonable expenses, including attorney's fees"); Fed. R. Civ. P. 37(a)(5)(B) ("If the motion [to compel] is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."); *see also* Exhibit B (page 45: "It is so overwritten, so overbroad. It is so incredibly expensive and burdensome. . . "; and page 8: "I will be really rough with somebody that I think is only playing delay and expense games.").

13

EXHIBIT A

**Counsel for Papst Licensing GmbH & Co. KG**

_____

J. Kevin Fee, Esq. (D.C. Bar No. 494016)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

Scott D. Stimpson
The Law Office of Scott D. Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, N.Y. 10601
Tel: 203-258-8412

**Attorneys for Plaintiff and Counter-Defendant
Casio Inc. and Counter-Defendant
Casio Computer Co., Ltd.**

14

EXHIBIT B - PART 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING GMBH & CO. KG LITIGATION | Misc. Action No. 07-493 (RMC) |
| This Document Relates To: ALL CASES | MDL Docket No. 1880 |

**PAPST LICENSING GMBH & CO. KG'S**
**THIRD REVISED FIRST SET OF REQUESTS FOR THE PRODUCTION OF**
**DOCUMENTS AND THINGS TO THE DEFENDANTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Papst Licensing

GmbH & Co. KG ("Papst") requests that each of the Defendants or Camera

Manufacturers (defined below) produce the following documents and things for

inspection and copying in accordance with the Definitions and Instructions set forth

herein. If the manner of production is not otherwise agreed upon, production shall be at

the offices at Welsh & Katz, Ltd., 120 South Riverside, 22nd Floor, Chicago, Illinois

60606, within thirty (30) days after service hereof, or as the parties may otherwise agree.

**DEFINITIONS AND INSTRUCTIONS**

1.  As used herein, "Camera Manufacturer, " "Defendant," "You" or "Your"

means Casio Inc., Casio Computer Co., Ltd., Fujifilm Corporation, Fujifilm U.S.A., Inc.,

Matsushita Electric Industrial Co., Ltd., Victor Company of Japan, Ltd., Olympus Corp.,

Olympus Imaging America, Inc.,  Samsung Techwin Co., Samsung Opto-Electronics

America, Inc., Panasonic Corporation of North America, JVC Company of America,

Ricoh Company, Ltd., Ricoh Americas Corporation, Ricoh Corporation, Hewlett-Packard

any other Product manufacturer or seller subsequently added to this MDL, all of their

predecessor(s) and successor(s) in interest, and any person employed by or for any or all

of these entities, and all of their attorneys, accountants, and consultants.

2.   As used herein, the term "document" shall have the full meaning ascribed to it

under Rule 34 of the Federal Rules of Civil Procedure.  Defendants shall search for and

the produce any responsive documents written in English, in whole or in part, regardless

of whether a Defendant also produces the same or similar document written in a foreign

language.

3.   If any of the information requested to be produced is available in machine-

readable form (such as punch cards, paper or magnetic tapes, drums, disks, or core

storage), state the form in which it is available and describe the type of computer or other

machinery required to access the information. If the information requested is only

available in machine-readable form, indicate whether you possess any existing program

which will print the records in some form, and identify the person(s) who is/are familiar

with the program. If no program exists, state whether you could develop one or whether

an existing program could be modified to print records in a readable form.

4.   The terms "concerning," "relating to, " or "related to" in regard to a particular

subject shall mean, without limitation, assessing, analyzing, constituting, containing,

comprising, describing, discussing, embodying, reflecting, evidencing, identifying,

mentioning, memorializing, stating, referring directly or indirectly to or in any way

relevant to such subject.

5.   In the event any information, document, or thing responsive to these requests

is not provided by reason of a claim of privilege or work product, or for any other reason,

then the following shall be provided with respect to such information, document, or thing: (a) a brief description of the subject matter of the information, document, or thing; (b) the identity of the author or creator of the information, document, or thing; (c) the source of the information, document, or thing; (d) all recipients of the information, document, or thing (including, but not limited to those receiving copies and blind copies); (e) the date the information, document, or thing (or any copy or draft thereof which is not identical to the original) was created; and (f) the basis upon which the information, document, or thing is being withheld.  With respect to any information that is redacted, the redacting party must in addition to the requirements above identify all pages by Bates Number where any redaction has occurred.

6.    As used herein, "and" or "or" shall be construed conjunctively or disjunctively, or both conjunctively and disjunctively, so as to acquire the broadest meaning possible.

7.    As used herein, "person" shall include, but is not limited to, any natural person, business, partnership, corporation, or other entity, and any employee, agent, attorney, or representative of any of the foregoing.

8.    As used herein, the term "Product" shall mean all Digital Cameras made or sold by each Defendant.  As to the Olympus parties and the Hewlett-Packard parties, the term "Product" shall also include all products made or sold by each Defendant (whether or not a Digital Camera) that acquire external light images and/or sound, and then process the external light images or sound into digital electrical signals representative of the external light images and/or sound, and then transfer those digital electrical signals to an

electronic memory, and then transfer those digital electrical signals to a personal computer, and wherein the Product also communicates with a personal computer.

9.      As used herein, "Patents-in-Suit" refers to United States Patent No. 6,895,449 ("the '449 patent") and United States Patent No. 6,470,399 ("the '399 patent").

10.     As used herein, "Specific Features" means those Product features concerning (1) how the Products electronically connect to and interact with various types of computers, (2) what standards and/or command sets are used by the Products to communicate with computers, (3) how digital information (including digital information representative of pictures and sounds) is transmitted back and forth between the Products and a computer to which they are connected, (4) the file systems used to store digital information in Products (including digital information representative of pictures and sounds), and (5) how the master boot record (MBR) and any boot sector(s) are generated by each Product during formatting of a memory chip and/or in response to an inquiry from a host computer.

11.     Where appropriate, the singular form of a word should be interpreted in the plural and *vice versa*, and the masculine form of a word shall be interpreted to also include the feminine and *vice versa*, to obtain the broadest possible meaning.

12.     These document requests are continuing in nature.  If after making its initial response hereto (and up until the time of any hearing or trial), each of the Defendants or their attorneys, agents, or representatives obtain or become aware of any further information or documents responsive to these requests that was unavailable at the time of the initial response hereto, each of the Camera Manufacturers are requested to produce such information and documents.

13.     Unless indicated otherwise, these requests apply to all documents and materials from 1985 to the present date.

14.     The methods and format of each of the Camera Manufacturers' production shall be as follows:

15.     Format of Production

(a)     With respect to all responsive paper documents, each Defendant shall serve concurrently with its responses to these requests its estimated costs to produce to Papst all responsive hard copy documents in single-page Tagged Image File Format ("TIFF") with an accompanying Summation load file.  To the extent available, the load file shall contain for each document the beginning Bates number, the ending Bates number, a description of the source for the document.  Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source documents.  No other legend or stamp will be placed on the document image other than the Bates Number, confidentiality legend (where applicable), and redactions.

Should any Defendant convert any or all paper documents into any electronic format (such as TIFF or .pdf) at its own cost at any time, each such Defendant shall inform Papst of that fact, describe the electronic format that the documents exist in, and inform Papst of the estimated costs to obtain copies of these electronic files all within five days of any conversion.

In addition, hard copies shall be produced as they were kept in the ordinary course of business.  This shall include stapling of documents, segregating individual file folder

and ordering groups of file folders and documents as they were kept in the ordinary course of business. The parties shall also provide for each group of documents to the extent known (1) the name of the person(s) and/or group(s) whose file each group of documents came from, and (2) an identification of the custodian(s) of each group of documents, all as the documents were kept in the ordinary course of business. Hard copies and things shall be maintained at a document depository in the United States and shall be reasonably accessible to all parties upon reasonable notice.

(b)      The parties shall produce all responsive electronic documents as they are kept in the usual course of business, or as otherwise agreed between the parties.     Should any Defendant convert any or all electronic documents into any other electronic format (such as TIFF or .pdf) at their own cost at any time, each such Defendant shall inform Papst of that fact, describe the electronic format that the documents exist in, and inform Papst of the estimated costs to obtain copies of these electronic files all within five days of any conversion.

Each Defendant shall serve concurrently with its responses to these requests its estimated costs to produce to Papst all responsive electronic documents in single-page Tagged Image File Format ("TIFF") with an accompanying Summation load file. To the extent available, the load file shall contain for each document the beginning Bates number, the ending Bates number, a description of the source from which the document came, a description of the computer from which the document came, the associated file name, and the associated directory path for the document. Documents that present imaging or formatting problems shall be promptly identified and the Parties shall meet and confer to attempt to resolve the problems. Each page of a produced document shall

have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source documents. No other legend or stamp will be placed on the document image other than the Bates Number, confidentiality legend (where applicable), and redactions. Each party will bear the burden and cost of any OCR post-processing. Papst is willing to mutually agree that during the first round of exchanging documents the parties need not exchange metadata, except as referenced above. If any party should later desire to obtain additional metadata, the parties will attempt to work it out amicably. An extracted text file of electronic documents shall be made part of the load file associated with each electronic document.

## <u>REQUESTS FOR DOCUMENTS AND THINGS</u>

1.     All documents relating to the development history of each Specific Feature[1] in each and every Product[2] of the Defendants.

2.     Documents sufficient to show the monthly sales (in revenues and in units) for each Product in each country from January 1, 1999 to present.

3.     Two functional samples of each and every Product used, manufactured, sold, offered for sale or imported into the United States since October 22, 2002.

4.     All advertising, marketing and promotional documents in the United States that address and/or discuss, in whole or in part, the Specific Features in any and all Products of the Defendants since January 1, 1999.

---

[1] The term "Specific Feature" is defined in the Definitions and Instructions section above.
[2] The term "Product" is defined in the Definitions and Instructions section above.

5.      Documents sufficient to show the overall construction and/or operation of each and every Product of the Defendant that has been used, manufactured, sold, offered for sale, or imported into the United States since October 22, 2002, including but not limited to, all user manuals, service manuals, overall product specifications, overall software requirements, and overall source code.

6.      All documents primarily concerning the subject matter, construction and/or operation of one or more of the Specific Features in each and every Product of the Defendants that has been used, manufactured, sold, offered for sale, or imported into the United States since October 22, 2002.

7.      All documents relating to the Defendants' alleged invalidity and/or unenforceability of the Patents-In-Suit.

8.      All documents relating to the Defendants' alleged non-infringement of the Patents-In-Suit.

9.      All documents relating to the interpretation, scope and meaning of the claims in the Patents-In-Suit.

10.     Documents sufficient to show the identification of those entities and/or individuals who are the most knowledgeable concerning the research, development, and design of one or more of the Specific Features for each and every Product of the Defendants.

11.     All documents relating to the Patents-In-Suit, Papst, LT Tasler, Michael Tasler and/or Labortechnik Tasler GmbH, including but not limited to, all documents relating to any and all work done by and/or products of Michael Tasler and/or Labortechnik Tasler GmbH.

12.    All transcripts, discovery responses and expert reports in the United States wherein a Defendant or its expert witness has described and/or discussed, in whole or in part, how its Products operate with respect to any or all of the Specific Features.

13.    All documents and things identified in, the identification of which is requested in, responsive to, or reviewed in formulating a response to Papst Licensing's First Joint Set of Interrogatories to the Defendants.

14.    All documents relating to the level of ordinary skill in the art pertaining to the Patents-In-Suit.

15.    All documents relating to any secondary considerations of  non-obviousness or obviousness, including but not limited to, the following: (1) the commercial success of the Products attributable to the claimed inventions, rather than something else, such as innovative marketing, (2) the claimed inventions satisfied a long felt need, (3) the attempt and failure of others to make the claimed inventions, (4) skepticism of the claimed inventions by experts, (5) praise by others of the claimed inventions, (6) teaching away of the claimed inventions by others, (8) copying of the claimed inventions by others, (9) experts or persons of ordinary skill in the field of the inventions expressing surprise at the making of the claimed inventions, (10) the inventor proceeded contrary to accepted wisdom, and (11) the claimed inventions achieved unexpected results.

16.    All document retention policies in place from the time each Defendant first started its research and development of the Specific Features up until today's date.

17.     All patents, patent applications and file histories of any of the Defendant's U.S. patents or patent applications that address, in whole or in part, the Specific Features of the Defendants' Products.

18.     Documents and things sufficient to show the details of the operation of each Product that has been used, manufactured, sold, offered for sale, or imported into the United States since October 22, 2002 with respect to how sound waves and/or light images are converted to representative analog signals, and how those electrical signals are converted to representative digital signals.

Dated: May 8, 2008

/s/ Jerold B. Schnayer
James P. White
Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza ● 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

Robert F. Muse
Joshua A. Levy
Kerry C. Dent
STEIN MITCHELL & MEZINES, LLP
1100 Connecticut Ave, NW
Washington, D.C. 20036
(202) 737-7777
**Attorneys for Defendant/Counter-Plaintiff Papst Licensing GmbH & Co. KG**

EXHIBIT B - PART 1

## **CERTIFICATE OF SERVICE**


       The undersigned hereby certifies that a copy of the foregoing PAPST LICENSING GMBH & CO. KG'S THIRD REVISED FIRST JOINT SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO THE CAMERA MANUFACTURERS was served on this the 8th day of May, 2008 upon the attorneys for the Camera Manufacturers as follows:

***For The Casio Parties*** (via e-mail in both Microsoft Word and .pdf format)*:*
Laura Krawczyk
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6000
Fax: (212) 309-6001
lkrawczyk@morganlewis.com

J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
jkfee@morganlewis.com

Scott D. Stimpson
The Law Office of Scott Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
stimpsonlaw@gmail.com

***For The Samsung Parties*** (via e-mail in both Microsoft Word and .pdf format)*:*
Patrick J. Kelleher
Drinker Biddle Gardner Carton
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
Phone: (312) 569-1375
Fax: (312) 569-3375
Patrick.kelleher@abr.com

***For The Fujifilm Parties*** (via e-mail in both Microsoft Word and .pdf format)*:*
Steven J. Routh
Sten A. Jensen
John R. Inge
Robert Wolinsky

EXHIBIT B - PART 1

Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone:  (202) 637-5600
Fax:  (202) 637-5910
sjrouth@hhlaw.com
sajensen@hhlaw.com
JRInge@HHLAW.com
RBWolinsky@HHLAW.com


***For the Olympus Parties*** (via e-mail in both Microsoft Word and .pdf format):
Richard de Bodo
Rachel M. Cappoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone:  (310) 785-4694
Fax:  (310) 785-4601
rdebodo@hhlaw.com
rmcappoccia@hhlaw.com

***For The Matsushita and Victory Company of Japan Parties*** (via e-mail in both
Microsoft Word and .pdf format):
Richard de Bodo
Rachel M. Capoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone: (310) 785-4694
Fax: (310) 785-4601
rdebodo@hhlaw.com
rmcapoccia@hhlaw.com

Adam K. Levin, Esq.
Hogan & Hartson LLP
555 13th Street, NW
Washington, DC 20004
aklevin@hhlaw.com

EXHIBIT B - PART 1

***For the Ricoh Parties***:
Paul Devinsky
McDermott Will & Emery LLP
600 13th Street, NW
Washington, DC 20005-3096
(202) 756-8369
Fax: (202) 756-8087
pdevinsky@mwe.com

***For Hewlett-Packard Parties:***
Heather N. Mewes
Fenwick & West, LLP
555 California St., 12th Floor
San Francisco, CA 94104
(415) 875-2300
hmewes@fenwick.com

/s/ Jerold B. Schnayer
Attorney for Papst Licensing GmbH & Co.
KG

EXHIBIT B - PART 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING GMBH & CO. KG LITIGATION | Misc. Action No. 07-493 (RMC) |
| This Document Relates To: ALL CASES | MDL Docket No. 1880 |

**PAPST LICENSING GMBH & CO. KG'S
SECOND REVISED FIRST JOINT SET OF INTERROGATORIES TO DEFENDANTS**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Papst Licensing GmbH & Co. KG ("Papst"), through counsel, requests each of the Defendants to separately respond to each of the Interrogatories below.

**DEFINITIONS**

1.    "Defendant," "Camera Manufacturer," "You" and/or "Your" shall mean the Defendant party or parties responding to the present interrogatories, each of their predecessor corporations, successor corporations, and each of their present employees, consultants, accountants, and attorneys.

2.    "Document" and "Thing" shall have the full meaning ascribed to them under Rule 34 of the Federal Rules of Civil Procedure.

3.    A request for a Document shall be deemed to include a request for a Thing. A request for a Thing shall be deemed to include a request for a Document.

4.    "Or" is inclusive referring to any one or more of the disjoined words or phrases listed.

5.    The terms "concerning," "relating to, " or "related to" in regard to a

particular subject shall mean, without limitation, assessing, analyzing, constituting, containing, comprising, describing, discussing, embodying, reflecting, evidencing, identifying, mentioning, memorializing, stating, referring directly or indirectly to or in any way relevant to such subject.

6.      "Communication," "communicate" or "communicating" means every manner or means of disclosure, transfer or exchange, and every disclosure, transfer or exchange of information whether orally or by Document or whether face-to-face, by telephone, mail, telex, facsimile, personal delivery or otherwise.

7.      The terms "identify" or "identity" or "identification" when used in connection with an individual means: state the individual's full name; his or her employer; and his or her position, title, or job description.  To the extent an individual is a former employee of Defendant, please provide a last known home address and his or her last known employer if known.

8.      The terms "identify" or "identity" or "identification" when used in connection with a company, corporation, association, partnership, joint venture, or any legal entity other than a natural person means: state its full name and state the address of its principal place of business.

9.      The terms "identify" or "identity" or "identification" when used in connection with an oral statement or discussion means: state the name of the speaker; the date of the statement; the place at which the statement was made; the person or persons to whom the statement was addressed, if practicable, and otherwise a general description of the persons to whom the statement was addressed; the subject matter of the statement; and if the statement was memorialized in writing or mechanical or other recording, state the date and

present location of said recording, and provide the production number(s) thereof.

10.    The terms "identify" or "identity" or "identification" when used in connection with a written Document or statement means: provide the corresponding Bates number for the Document; or, if no Bates Number is available, other information sufficient for Papst to specifically identify the document.  In lieu of such identification, You may attach a copy of the written Document or statement, and refer thereto in Your answer.

11.    As used herein, the term "Product" shall mean all Digital Cameras made or sold by each Defendant.  As to the Olympus parties and the Hewlett-Packard parties, the term "Product" shall also include all products made or sold by each Defendant (whether or not a Digital Camera) that acquire external light images and/or sound, and then process the external light images or sound into digital electrical signals representative of the external light images and/or sound, and then transfer those digital electrical signals to an electronic memory, and then transfer those digital electrical signals to a personal computer, and wherein the Product also communicates with a personal computer.

12.    As used herein, "Specific Features" means those Product features concerning (1) how the Products electronically connect to and interact with various types of computers, (2) what standards and/or command sets are used by the Products to communicate with computers, (3) how digital information (including digital information representative of pictures and sounds) is transmitted back and forth between the Products and a computer to which they are connected, (4) the file systems used to store digital information in Products (including digital information representative of pictures and sounds), and (5) how the master boot record (MBR) and any boot sector(s) are generated by each Product during formatting of a memory chip and/or in response to an inquiry

from a host computer.

13.     "Patents-in-Suit" refers to United States Patent No. 6,895,449 ("the '449 patent") and United States Patent No. 6,470,399 ("the '399 patent").

14.     "USB Specification" means Universal Serial Bus Specification, Revision 2.0.  The USB Specification is available from the USB Implementers Forum at http://www.usb.org/developers.

15.     "SCSI Block Command" includes any and all commands identified as SCSI Block Commands, including the commands identified in SCSI Block Commands-2 (SBC-2) (T10/1417-D) and/ or SCSI Block Commands - 3 (SBC-3) (T10/1799-D).  The SCSI specifications are available through the InterNational Committee for Information Technology Standards ("incits"), Technical Committee T10, at http://www.t10.org, and/or through ANSI, 11 West 42nd Street, 13th Floor, New York, NY 10036, Sales Dept: (212) 642-4900.

16.     "PTP Command" includes any and all commands identified in PIMA 15740:2000, Picture Transfer Protocol (PTP) for Digital Still Photography Devices, and/or ISO 15740:2005, Picture Transfer Protocol (PTP) for Digital Still Photography Devices.  The specifications are available through the International Imaging Industry Association ("I3A") at http://www.i3a.org and/or the International Organization for Standardization at http://www.iso.org.

## INSTRUCTIONS

1.     Where knowledge or information in Your possession is requested, the request extends to knowledge or information in the possession of Your agents, representatives, and attorneys.  Whenever an answer to these interrogatories contains

information that is not based upon Your personal knowledge, state the source and the nature of such information.

2.      Answer all of the interrogatories completely.  If You contend that the answer to any interrogatory is privileged in whole or in part, state all facts supporting such privilege, and identify each person having knowledge of the factual basis on which the privilege is asserted.  Answer should be made of all knowledge and information which is not privileged.

3.      If You have no knowledge or information responsive to a particular interrogatory, please state such.

4.      These interrogatories shall be deemed continuing and the Defendant shall supplement and seasonably amend its responses as required under the Federal Rules.

5.      If an objection is made to any interrogatory, answer should be made of all knowledge and information to which the objection does not relate.

6.      If You find the meaning of any term in these interrogatories unclear, You shall assume a reasonable meaning, state what the assumed meaning is, and respond to the interrogatory according to the assumed meaning.

7.      The phrase "the basis for Your interpretation of each claim element" shall mean: identify all Documents that support Your interpretation of the claim; point out the specific portions of the identified Documents, and provide a full explanation of how the specific portions of the identified Documents relate to the stated claim interpretation.

8.      The phrase "identify all evidence that supports Your allegations" shall mean at least the following: identify each person with factual information that allegedly supports Your allegations, including a full description of the information known to each person, identify all Documents that allegedly support Your allegations, and provide a full

explanation how each Document supports and/or relates your allegations.

9.    The phrase "identify each claim of the patents in suit which You contend is invalid, and for each such claim, state in full detail all facts and reasons known to You that support the basis for Your contentions" shall mean at least the following: identify the specific statutory provision(s) relied upon for invalidity; describe all Documents and other evidence that you contend renders and/or is relevant to the issue of whether any claim is invalid; provide a full explanation of the basis for your contention why each Document and other evidence supports such contentions; provide a claim chart in full detail comparing each and every element of the allegedly invalid claims to the location of said claim elements in any and all asserted prior art; identify all portions of the specification or prosecution history of the Patents-In-Suit relied upon for any invalidity claim; provide full details of Your interpretation of each and every element of each claim that You allege is found or obvious in view of the prior art; provide full details of the basis for Your interpretation of each claim element as stated in response to this interrogatory; and identify all evidence that relates to Your allegations in response to this interrogatory.

10.   In describing the development history of each Specific Feature, your answer should include, but not be limited to,: a description of any major design changes from product to product as they concern each Specific Feature; an identification of persons that were primarily responsible for each major design change as they concern each Specific Feature; an identification of those persons most knowledgeable about the major changes in the development history of the Specific Features; and an identification of representative documents which describe each major design change and the reasons for

each major design change.

## PAPST'S INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify each of Your Products that have been used, manufactured, sold, offered for sale or imported into the United States since October 22, 2002, providing separately for each Product the model name, model number, any development name or model number used by You and/or by any other entity during the design, testing, or manufacturing of those Products, and the earliest and latest date that you are aware of for each importation into the United States and each sale in the United States of those Products, and identify the two most knowledgeable persons involved in each of the areas of the research, development and design with the respect to each of the Specific Features of those Products.  See instruction 8.

**INTERROGATORY NO. 2:**      Separately and for each of Your Products identified in response to Interrogatory No. 1, state all USB descriptor information used in connection with the Products, including the Device Descriptor (USB Specification 9.6.1), Configuration Descriptor (USB Specification 9.6.3), Interface Descriptor (USB Specification 9.6.5), Endpoint Descriptor (USB Specification 9.6.6) and String Descriptor (USB Specification 9.6.7), and separately for each Product identify Documents that provide the descriptor information, and identify with specificity the portions of the Documents that describe the descriptor information.  For Products having more than one Interface Descriptor, Endpoint Descriptor, and/or String Descriptor, the response shall state all Interface Descriptors, Endpoint Descriptors, and/or String Descriptors.

**INTERROGATORY NO. 3:**        Separately and for each of Your Products identified in response to Interrogatory No. 1, provide an identification of each SCSI Block Command and each PTP Command (collectively "Support Commands") supported by each Product, identify all Documents that indicate each Support Command, identify the specific portions of the identified Documents that indicate each Support Command, and explain how each Document indicates each Support Command.

**INTERROGATORY NO. 4:**        Separately for each of Your Products identified in response to Interrogatory No. 1, state in full detail all the facts and reasons known to You that support your contention that any of Your Products do not infringe, either literally or under the doctrine of equivalents, or by inducement, contributory infringement, or otherwise, each of the patents-in-suit, including but not limited to an identification of each element of each claim that You allege Your Products assertedly does not meet, Your interpretation of each element of each claim that You allege Your Products will not meet, in full detail, the basis for Your interpretation of each claim element as stated in response to this interrogatory, and identify all evidence that supports Your allegations in response to this interrogatory.  See instructions Nos. 7 and 8.

**INTERROGATORY NO. 5:**        Identify each claim of the patents in suit which You contend is invalid, and for each such claim, state in full detail all facts and reasons known to You that support the basis for Your contentions, and identify the person(s) most knowledgeable of Your invalidity contentions.  See instruction No. 9.

**INTERROGATORY NO. 6:**    Separately with respect to each of the Patents-In-Suit and to the extent that You will contest Papst's contentions as to indirect infringement, describe in full detail all events concerning Your awareness of the Patents-In-Suit prior to the date You became a party to these MDL proceedings, identify all Documents that concern such awareness and a full explanation of how each Document concerns such awareness, identify all of Your employees and/or agents having such awareness, and describe in full detail the specific awareness of each such employee and/or agent.

**INTERROGATORY NO. 7:**    Identify the date, and substance of any and all studies, analyses, or legal advice of any kind, both oral and/or written, that You received at any time, including but not limited to after the filing of the Complaint, that relates to whether the Patents-In-Suit are infringed by Your Products, or are invalid, or are unenforceable, provide a full details of the circumstances under which You obtained such studies, analyses, or legal advice, including the identity of any oral, written or electronic communications or Documents concerning each such studies, analyses, or legal advice; identify all persons who gave, received, and/or heard such advice, and provide a full description of the advice given, received and/or heard by each person.

**INTERROGATORY NO. 8:**    Identify each person that You have consulted or expect to call to testify as an expert witness at trial, or in support of any motion for summary judgment that you anticipate that you may and/or will file in these proceedings, and for each expert identified, state in full detail the qualifications of each expert, the

subject matter on which that expert is expected to testify and the substance of the facts

and opinions to which that expert is expected to testify, including but not limited to a full

explanation of the grounds for each opinion.

**INTERROGATORY NO. 9:**        Describe the major changes in the development

history of each of the Specific Features.  See, instruction No. 10.

**INTERROGATORY NO. 10:**        State the art area and level of ordinary skill in the

art pertaining to the Patents-in-Suit and state in detail all bases for each such contention.

**INTERROGATORY NO. 11:**        Describe in general the development history, sales,

testing, construction and/or operation of the Specific Features for each device that You

are relying on as prior art; describe in general the documents the relate to the

development history, sales, testing, construction and/or operation of the Specific Features

for each prior art device, and identify the person most knowledgeable concerning each

prior art device.

EXHIBIT B - PART 2

Dated: May 8, 2008                    /s/ Jerold B. Schnayer
                                      James P. White
                                      Jerold B. Schnayer
                                      Joseph E. Cwik
                                      WELSH & KATZ, LTD.
                                      120 South Riverside Plaza ● 22nd Floor
                                      Chicago, Illinois 60606
                                      (312) 655-1500

                                      Robert F. Muse
                                      Joshua A. Levy
                                      Kerry C. Dent
                                      STEIN MITCHELL & MEZINES, LLP
                                      1100 Connecticut Ave, NW
                                      Washington, D.C. 20036
                                      (202) 737-7777
                                      **Attorneys for Papst Licensing GmbH &
                                      Co. KG**

EXHIBIT B - PART 2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing PAPST LICENSING GMBH & CO. KG'S SECOND REVISED FIRST JOINT SET OF INTERROGATORIES TO CAMERA MANUFACTURERS was caused to be served on this the 8th day of May, 2008 upon the attorneys for the Camera Manufacturers via e-mail in .pdf and Microsoft Word format as follows:

***For The Casio Parties :***
Laura Krawczyk
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0060
Phone:  (212) 309-6000
Fax:  (212) 309-6001
lkrawczyk@morganlewis.com

J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
jkfee@morganlewis.com

Scott D. Stimpson
The Law Office of Scott Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
stimpsonlaw@gmail.com

***For The Samsung Parties:***
Patrick J. Kelleher
Drinker Biddle Gardner Carton
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
Phone:  (312) 569-1375
Fax:  (312) 569-3375
Patrick.kelleher@abr.com

***For The Fujifilm Parties :***
Steven J. Routh
Sten A. Jensen
John R. Inge
Robert Wolinsky
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.

EXHIBIT B - PART 2

Washington, DC 20004
Phone:  (202) 637-5600
Fax:  (202) 637-5910
sjrouth@hhlaw.com
sajensen@hhlaw.com
JRInge@HHLAW.com
RBWolinsky@HHLAW.com


***For the Olympus Parties :***
Richard de Bodo
Rachel M. Cappoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone:  (310) 785-4694
Fax:  (310) 785-4601
rdebodo@hhlaw.com
rmcapoccia@hhlaw.com


***For The Matsushita and Victory Company of Japan Parties :***
Richard de Bodo
Rachel M. Capoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone: (310) 785-4694
Fax: (310) 785-4601
rdebodo@hhlaw.com
rmcapoccia@hhlaw.com


***For the Ricoh Parties***:
Paul Devinsky
MCDERMOTT, WILL & EMERY
600 13th Street, NW
Washington, DC 20005-3096
(202) 756-8369
Fax: (202) 756-8087
Email: pdevinsky@mwe.com

EXHIBIT B - PART 2

**_For Hewlett-Packard Parties_**
Heather N. Mewes
Fenwick & West, LLP
555 California St., 12th Floor
San Francisco, CA 94104
(415) 875-2300
hmewes@fenwick.com

/s/ Jerold B. Schnayer
Attorney for Papst Licensing GmbH & Co. KG

14

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING GMBH & CO. KG LITIGATION | Misc. Action No. 07-493 (RMC) |
| This Document Relates To: ALL CASES | MDL Docket No. 1880 |

*** *CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY INFORMATION UNDER THE PROTECTIVE ORDER****

**PAPST'S OBJECTIONS AND ANSWERS TO CAMERA MANUFACTURERS' FIRST SET OF INTERROGATORIES (NOS. 1-10)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Papst Licensing GmbH & Co. KG ("Papst"), objects to and answers the Camera Manufacturers' (the "Defendants' ") First Set of Interrogatories as follows:

## GENERAL OBJECTIONS

1.      Papst objects to Defendants' Interrogatories to the extent that they call for information protected by any applicable privilege or doctrine, including without limitation the attorney-client privilege, the work product doctrine and/or information pertaining to Papst counsel's mental impressions and/or trial preparation materials, any jointly shared privilege, and other protections afforded by Rule 26(b)(4)(B). Papst hereby asserts all such applicable privileges. Papst further objects to identifying such documents created after the commencement of the earliest Casio lawsuit.

2.      Papst objects to Defendants' Interrogatories to the extent that they call for information disclosing confidential or proprietary information, and/or trade secrets of Papst, or information restricted from dissemination because of confidentiality commitments with other

entities or pursuant to court order, statute, or regulation. Without waiving its objections, Papst will produce such information that is reasonably responsive and non-privileged upon the entry of a protective order governing such confidential information, and only after the relevant third-parties are notified of the potential disclosure and provided an opportunity to object to the potential disclosure.

3.      Papst objects to Defendants' Interrogatories to the extent that they call for the disclosure of any information that is not reasonably related to the subject matter of this action, that is not relevant to the claims or defenses asserted in this action, that is not reasonably calculated to lead to the discovery of admissible evidence, and/or to the extent that the interrogatories seek to impose discovery obligations beyond those imposed by or permitted under the Federal Rules of Civil Procedure.

4.      Papst objects to Defendants' Interrogatories as unduly and unnecessarily burdensome to the extent the requests seek information already in Defendants' possession, custody, or control.

5.      Papst objects to Defendants' Interrogatories to the extent the requests, instructions, and/or definitions are unreasonably broad, vague and ambiguous, and/or unduly burdensome.

6.      Papst has not completed its investigation of the facts relating to this action. Accordingly, with respect to all of the Interrogatories, Papst reserves the right to amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the course of this action and at trial.

7.      In those instances where the responses to Defendants' interrogatories can be

2

derived from the business records of Papst or from an examination, audit or inspection of such

business records, and the burden of deriving or ascertaining the answer is substantially the same

for Defendants and Papst, Papst will specify the records from which an answer may be ascertained

and afford Defendants' counsel a reasonable opportunity to audit, inspect and copy such records or

provide categorized copies of such records in accordance with Federal Rule of Civil Procedure

33(d), in accordance with the Court's protective order.

       8.     Papst objects to any and all interrogatories to the extent that they are repetitive,

overlapping or duplicative. Moreover, Papst may attempt to designate for production relevant

documents in response to Defendants' interrogatories. However, by so designating documents,

Papst does not represent that the identified documents are the only relevant documents, nor does

Papst represent that the identified documents are necessarily the most relevant documents. In

addition, the designation of documents is not necessarily exhaustive and other relevant documents

may or may not exist. However, Papst will make a good faith effort to identify relevant documents

and/or categories of documents as provided in Rules 33 and 34, Fed.R.Civ.P.

       9.     Papst objects to Defendants' interrogatories to the extent that they request Papst to

provide the names of persons with knowledge of certain facts and a summary of each person's

knowledge. If known, Papst will identify those persons, or documents from which the identity of

those persons may be ascertained, believed to be generally most knowledgeable regarding the

requested subjects.

### GENERAL OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

       1.     Papst objects to Defendants' Instructions and Definitions to the extent they seek to

impose obligations beyond those set forth in Rules 26 and 33 of the Federal Rules of Civil

Procedure and any applicable local rules. Papst will respond to Defendants' Interrogatories in the

manner required by the Federal Rules of Civil Procedure and applicable local rules.

2.      Papst objects to Definition B as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Papst further objects to Defendants' Definition B on the ground that the phrase "patent applications that (i) relate to or claim priority to or from any of the applications that led to the Patent-In-Suit or (ii) relate to or claim in whole or in part any of the subject matter disclosed or claimed in the Patents-In-Suit" in the context of this definition is vague and ambiguous.

3.      Papst objects to Defendants' Definition C as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Papst further objects to Defendants' Definition C on the ground that the phrase "patents, other than the Patents-In-Suit, associated with or granted by the United States or any other jurisdiction that (i) relate to or claim priority to or from any of the applications that led to the Patent-In-Suit or (ii) relate to or claim in whole or in part any of the subject matter disclosed or claimed in the Patents-In-Suit" in the context of this instruction is vague and ambiguous.

4.      Papst objects to Defendants' Definition E as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

5.      Papst objects to Defendants' Definition F as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

6.      Papst objects to Defendants' Definition G as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

7.      Papst objects to Defendants' Definition H as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

8.      Papst objects to Defendants' Definition I as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence in the context of Defendants' interrogatories.

9.      Papst objects to Defendants' Instruction F to the extent it seeks to impose obligations beyond those set forth in the Federal Rules of Civil Procedure and any applicable local rules. Papst will respond to Defendants' Interrogatories in the manner required by the Federal Rules of Civil Procedure and applicable local rules.

## SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

State in full the basis for your contention that each Camera Manufacturer has infringed the Patents-in-Suit, including without limitation, an identification of each claim you contend has been infringed by each Camera Manufacturer (the "asserted claims"), an identification of the products you contend infringe each asserted claim, a claim chart describing where each element of each asserted claim is found in each accused product, and an identification of each document or thing that refers or relates to such alleged infringement.

**ANSWER:**

Papst objects that Interrogatory No. 1 is premature to the extent that this interrogatory seeks information and responses inconsistent with the dates set in the Second Practice and Procedure Order, Docket No. 36 (April 8, 2008) ("Order"). In the Order, at Paragraph 17, the Court orders that: "Papst shall file its asserted claims and infringement contentions no later than May 28, 2008." Papst reserves the right to present its asserted claims and infringement contentions

5

at the time specified by the Order. Also, Papst reserves the right to amend or supplement the present response as the parties comply with the disclosure, briefing, and hearing schedule concerning claim construction as set forth in the Order. Papst further reserves the right to amend or supplement the present response after such time as the Court provides any rulings concerning the scope of the claims of the patents-in-suit.

Papst also objects that this interrogatory is premature in that Papst served <u>Papst Licensing GmbH & Co. KG's First Joint Set Of Interrogatories To Defendants</u> on the Camera Manufacturers on April 9, 2008. These interrogatories seek, among other things, information concerning USB descriptors and information regarding which SCSI Block Commands and which PTP Commands are supported by each device. Such information is relevant to the present responses. Papst does not expect responses from Camera Manufacturers, however, until after service of this interrogatory response. Also, at the time of this response, the Camera Manufacturers have not provided design documentation, nor any detailed product specifications, nor software code, for their digital cameras (Papst received a letter indicating that it would receive tens of thousands of documents on the day that these responses are due, but Papst has not had an opportunity to review those documents yet). Nevertheless, and without waiving any of the objections stated herein, Papst provides its responses below based on currently available information. Papst reserves the right to amend or supplement this response after it receives and evaluates any additional information as may become known as discovery progresses in this case.

Concerning the request to identify "the products you contend infringe each asserted claim," Papst objects that, at the time of service of this response, Papst has not had an opportunity to receive discovery from the Camera Manufacturers concerning the individual models each Camera Manufacturer has made and/or sold, or the geographical locations of such manufacturing and sales.

Nevertheless, and without waiving the above objections, and subject to further discovery in this case, according to Papst's best understanding at this time, devices which are believed to be configurable to operate as USB Mass Storage mode ("Mass Storage Class Digital Cameras," or "MSC Digital Cameras") and digital cameras configured to operate in PTP mode ("PTP Digital Cameras') include at least the following:

| Camera Brand | Device Model |
|---|---|
| Casio | EXILIM EX-V7 |
| | EXILIM EX-Z110 |
| | EXILIM EX-Z60 |
| | EXILIM EX-Z1050 |
| | EXILIM EX-Z75 |
| | EXILIM EX-S600 |
| | EXILIM EX-Z700 |
| | EXILIM EX-Z1000 |
| | EXILIM Pro EX-P700 |
| | EXILIM EX-Z600 |
| | EXILIM EX-S500 |
| | EXILIM EX-S770 |
| Fujifilm | FINE PIX F10 |
| | FINE PIX F650 |
| | FINEPIX S9100 |
| | FINE PIX A700 |
| | FINE PIX S5600 |
| | FINE PIX E900 |
| | FINE PIX V10 |
| HP | PHOTOSMART R827 |
| | PHOTOSMART R817 |

EXHIBIT C

| Camera Brand | Device Model |
|---|---|
| | PHOTOSMART M425 |
| | PHOTOSMART M527 |
| | PHOTOSMART E427 |
| | PHOTOSMART R927 |
| | PHOTOSMART R725 |
| | PHOTOSMART M627 |
| JVC | GZ-MG67E |
| | GZ-MG505E |
| | GZ-MG20E |
| Olympus | STYLUS 760 |
| | STYLUS 730 |
| | EVOLT E-410 |
| | FE-250 |
| | SP-510UZ |
| | Stylus 1000 |
| | FE-190 |
| | E-500 |
| | STYLUS 710 |
| | FE 120 |
| | SP-500UZ |
| | mju Digital 600 |
| | Stylus 720 SW |
| Panasonic | DMC-LZ5 EG |
| | DMC-LX1 |
| | DMC-L1K |
| | PV-GS320 |
| | HDC-SD1 |

| Camera Brand | Device Model |
|---|---|
|  | VDR-D230 |
|  | DMC-FX07 |
|  | DMC-FX01 |
|  | DMC-FX8 EG |
|  | DMC-TZ1 EG |
|  | DMC-FZ7 EG |
|  | DMC-LZ3 |
| Samsung | Digimax L55W |

Subject to the above objections and subject to further discovery in this case, according to Papst's best understanding at this time, devices which are believed to be configurable to operate at least as MSC Digital Cameras include:

| Camera Brand | Model |
|---|---|
| JVC | GZ-MG155U |
| Olympus | FE110 |
|  | Camedia C 4000 |
|  | Camedia C 370 |
|  | FE-170 |
| Samsung | SGH-D900i |
|  | SGH-D820 |
|  | Digimax V700 |
|  | Digimax I5 |
|  | Digimax A55W |
|  | Digimax A40 |
|  | NV10 |
|  | Digimax S800 |

9

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | Digimax L85 |
| | PRO815 |

     Subject to the above objections and subject to further discovery in this case, according to Papst's best understanding at this time, devices which are believed to be configurable to operate at least as PTP Digital Cameras include:

| Camera Brand | Model |
|---|---|
| Fujifilm | FINEPIX A800 |
| | FINEPIX F40FD |
| | FINEPIX Z5FD |
| | FINEPIX S700 |
| | FINEPIX S5 PRO |
| | FINE PIX F31FD |
| | FINE PIX  S6000FD |
| | FINE PIX F20 |

     Subject to the above objections and subject to further discovery in this case, according to Papst's best understanding at this time, devices identified in the following table are likely to be found to be configurable as a MSC Digital Camera, as a PTP Digital Camera, or both, after additional discovery or investigation:

| Camera Brand | Model |
|---|---|
| Casio | EXILIM EX-Z80 |
| | EXILIM EX-Z1200 |
| | EXILIM EX-Z120 |
| | EXILIM EX-Z50 |

10

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | EXILIM EX-S100 |
| | QV-R62 |
| | EXILIM EX-P505 |
| | EXILIM EX-Z750 |
| | EXILIM EX-Z57 |
| | EXILIM EX-Z55 |
| | EXILIM EX-Z500 |
| | EXILIM EX-Z200 |
| | EXILIM EX-Z850 |
| | EXILIM EX-Z1080 |
| | EXILIM EX-V8 |
| | EXILIM EX-Z100 |
| | EXILIM EX-Z9 |
| | QV-R4 |
| | QV-R52 |
| | QV-5700 |
| | QV-R3 |
| | EXILIM EX-S10 |
| | QV-R61 |
| | GV-20 |
| | EXILIM EX-S2 |
| | EXILIM EX-M2 |
| | EXILIM EX-Z3 |
| | EXILIM EX-S3 |
| | EXILIM EX-Z40 |
| | EXILIM EX-Z4/EX-Z4U |
| | EXILIM EX-S20U |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | EXILIM EX-M20U |
| | EXILIM EX-P600 |
| | QV-R40 |
| | Exilim EX-Z30 |
| | QV-R51 |
| | EXILIM EX-Z70 |
| Fujifilm | FINEPIX E 550 |
| | FINEPIX J10 |
| | FinePix F30 ZOOM |
| | FinePix A600 ZOOM |
| | FinePix F470 ZOOM |
| | FinePix A500 ZOOM |
| | FinePix A400 ZOOM |
| | FinePix F460 |
| | FinePix A345 ZOOM |
| | FinePix S9500/S9000 |
| | FinePix Z1 |
| | FinePix A350 ZOOM |
| | FinePix Z3 |
| | FinePix F100fd |
| | FinePix S3100 |
| | FinePix F11 ZOOM |
| | FinePix A610 |
| | FinePix A900 |
| | FinePix A920 |
| | FinePix F480 |
| | FinePix F50fd |

EXHIBIT C

| Camera Brand | Model |
| --- | --- |
| | FinePix S5800 |
| | FinePix Z10fd |
| | FinePix J50 |
| | FinePix S1000fd |
| | FinePix S8100fd |
| | FinePix Z20fd |
| | FinePix F455 ZOOM |
| | FinePix A820 |
| | FinePix S8000fd |
| | FinePix S602Z PRO |
| | FinePix S5500 ZOOM / S5100 |
| | FinePix S5700 |
| | FinePix F401 ZOOM |
| | FinePix A202/A200 |
| | FinePix A203 |
| | FinePix A204/FinePix 2650 |
| | FinePix A303 |
| | FinePix S304/FinePix 3800 |
| | FinePix M603 |
| | FinePix F410 ZOOM |
| | FinePix F700 |
| | FinePix A310 ZOOM |
| | FinePix A210 ZOOM |
| | FinePix F450 ZOOM |
| | FinePix F810 ZOOM |
| | FinePix E510 ZOOM |
| | FinePix F402 |

13

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | FinePix E500 ZOOM |
| | FinePix A205 ZOOM / A205S |
| | FinePix F440 ZOOM |
| | FinePix S3 PRO |
| | FinePix S20 PRO |
| | FinePix A330 |
| | FinePix A120 |
| | FinePix S3000 Z |
| | FinePix S7000 Z |
| | FinePix A340 |
| | FinePix S5000 Z |
| | FINEPIX S100fs |
| HP | PHOTOSMART R717 |
| | PHOTOSMART M517 |
| | PHOTOSMART M23 |
| | PHOTOSMART M525 |
| | PHOTOSMART R507 |
| | PHOTOSMART R607/R607V/R607XI |
| | PHOTOSMART M22 |
| | PHOTOSMART R837 |
| | PHOTOSMART R818 |
| | PHOTOSMART M415 |
| | PHOTOSMART R967 |
| | PHOTOSMART E327/E327V |
| | PHOTOSMART R727 |
| | PHOTOSMART M417 |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | PHOTOSMART M407/M407V/M407XI |
| | PHOTOSMART E317/E317V/E317XI |
| | PHOTOSMART 620 |
| | PHOTOSMART M307 |
| | PHOTOSMART E217 |
| | PHOTOSMART 320 |
| | PHOTOSMART 720 |
| | PHOTOSMART 850 |
| | PHOTOSMART 733 |
| | PHOTOSMART 735 |
| | PHOTOSMART 935 |
| | PHOTOSMART 435 |
| | PHOTOSMART 635 |
| | PHOTOSMART 945 |
| | PHOTOSMART R707 |
| | PHOTOSMART 120 |
| | PHOTOSMART R937 |
| JVC | GZ-HD5 |
| | XA-F57P |
| | XA-F107A |
| | GC-A50 |
| | GC-A55 |
| | GC-A70 |
| | XA-C210 |
| Olympus | LS-10 |
| | WS-110 |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | SP-570UZ |
| | STYLUS 1200 |
| | µ Mini S/Stylus Verve Mini S |
| | µ Mini Digital/Stylus Verve Digital |
| | C-765 UZ |
| | C-770 UZ |
| | C-160/D-395 |
| | C-360 Zoom/D-575 Zoom |
| | C-60 ZOOM |
| | C-725 UZ |
| | C-70 Zoom/C-7000 ZOOM |
| | E-300 / EVOLT E-300 |
| | C-470 Zoom/D-590 Zoom |
| | µ 500/Stylus 500 |
| | C-170/D-425 |
| | C-460 Zoom/D-580 Zoom |
| | C-7070 WideZoom |
| | C-740 UZ |
| | C-480 ZOOM/D-545 ZOOM |
| | C-500 Zoom/D-595 Zoom |
| | C55/C-5500 SPORT ZOOM |
| | µ 400/Stylus 400 |
| | IR-300 |
| | C-120/D-380 |
| | C-220 Zoom/D-520 Zoom |
| | C-300 Zoom/D-550 Zoom |

EXHIBIT C

| Camera Brand | Model |
| --- | --- |
| | C-720 UZ |
| | C-5050 ZOOM |
| | C-50 ZOOM |
| | C-450 Zoom |
| | μ 300/Stylus 300 |
| | C-310 Zoom/D-540 Zoom |
| | C-150/D-390 |
| | C-350 Zoom/D-560 Zoom |
| | C-750 UZ |
| | E-1 |
| | C-5000 ZOOM |
| | C-5060 ZOOM |
| | μ 410/Stylus 410 |
| | C-730 UZ |
| | μ 1010/Stylus 1010 |
| | μ 780/Stylus 780 |
| | E-510 |
| | FE-210 |
| | μ 790 SW/Stylus 790 SW |
| | μ 820/Stylus 820 |
| | μ 830/Stylus 830 |
| | FE-270 |
| | FE-280 |
| | SP-550 UZ |
| | E-3 |
| | FE-290 |
| | μ 1020/Stylus 1020 |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | μ 1030 SW/Stylus 1030 SW |
| | μ 840/Stylus 840 |
| | μ 850 SW/Stylus 850 SW |
| | FE-340 |
| | FE-350 |
| | E-420 |
| | C-8080 WideZoom |
| | FE-5500/D-630 Zoom |
| | FE-300 |
| | μ 700/Stylus 700 |
| | IR-500 |
| | SP-560 UZ |
| | FE-240 |
| | C-180/D-435 |
| | FE-100 |
| | SP-310 |
| | SP-700 |
| | μ 800/Stylus 800 |
| | μ 810/Stylus 810 |
| | E-330 / Evolt E-330 |
| | FE-180 |
| | FE-230 |
| | μ 770/Stylus 770 |
| | SP-350 |
| | FE-200 |
| | FE-115 |
| | μ 750/Stylus 750 |

18

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | μ 740/Stylus 740 |
| | SP-320 |
| | FE-140 |
| | FE-130 |
| | DS-20 |
| | FE-310 |
| Panasonic | EB-VS3 / VS3 |
| | DMC-FX100 |
| | Lumix DMC-TZ3 |
| | Lumix DMC-FZ50 |
| | Lumix DMC-FX12 |
| | Lumix DMC-FX30 |
| | Lumix DMC-FZ8 |
| | Lumix DMC-LS75 |
| | Lumix DMC-LZ6 |
| | Lumix DMC-LZ7 |
| | Lumix DMC-LX2 |
| | Lumix DMC-FX10 |
| | Lumix DMC-TZ5 |
| | Lumix DMC-FX55 |
| | Lumix DMC-L10K |
| | Lumix DMC-FS20 |
| | Lumix DMC-FS3 |
| | Lumix DMC-FS5 |
| | Lumix DMC-FX35 |
| | Lumix DMC-LZ10 |
| | Lumix DMC-TZ4 |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | Lumix DMC-FX50 |
| | Lumix DMC-FX33 |
| | Lumix DMC-LZ8 |
| | Lumix DMC-LC43 |
| | Lumix DMC-FX3 |
| | Lumix DMC-FZ18 |
| | Lumix DMC-FZ1 |
| | Lumix DMC-LC33 |
| | Lumix DMC-FX5 |
| | Lumix DMC-FZ10 |
| | Lumix DMC-LC50 |
| | Lumix DMC-LC70 |
| | Lumix DMC-LC1 |
| | Lumix DMC-FX7 |
| | Lumix DMC-LZ2 |
| | Lumix DMC-FZ30 |
| | Lumix DMC-F1 |
| | Lumix DMC-LS2 |
| | Lumix DMC-FZ20 |
| | Lumix DMC-FX9 |
| | Lumix DMC-LZ1 |
| | Lumix DMC-FZ5 |
| | Lumix DMC-FZ4 |
| | Lumix DMC-FZ15 |
| | Lumix DMC-LC80 |
| | Lumix DMC-FZ3 |
| | DMC-LS80 |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | HDC-SD9 |
| | VDR-D50 |
| | SDR-H18 |
| | EXLIM CARD EX-F1 |
| Ricoh | Caplio GR |
| | GR Digital |
| | Caplio RR120 |
| | Caplio R5 |
| | Caplio GX100 |
| | Caplio R7 |
| | Caplio GR Digital II |
| | Caplio R8 |
| | Caplio RR630 |
| Samsung | SC-HMX10C |
| | L73 |
| | Digimax S600 |
| | Digimax D53 |
| | GX-10 |
| | Digimax S700 |
| | Digimax S1000 |
| | L700 |
| | NV7 OPS |
| | NV3 |
| | Digimax A503 |
| | GX-1L |
| | Digimax S500 |
| | GX-1S |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | L74 wide |
| | L100 |
| | Digimax L60 |
| | S85 |
| | i8 |
| | S860 |
| | NV40 |
| | NV4 |
| | NV30 |
| | Digimax V6 |
| | Digimax i85 |
| | Digimax i6 PMP |
| | NV11 |
| | L830 |
| | L730 |
| | Digimax L77 |
| | S850 |
| | S630 |
| | S1050 |
| | S730 |
| | NV15 |
| | Digimax 240 |
| | Digimax A6 |
| | Digimax 301 |
| | Digimax 202 |
| | Digimax (Cyber) 530 |
| | Digimax U-CA 3 |

EXHIBIT C

| Camera Brand | Model |
|---|---|
| | Digimax 420 |
| | Digimax 401 |
| | Digimax V4 |
| | Digimax 430 |
| | Digimax 201 |
| | Digimax 340 |
| | Digimax 410 |
| | Digimax 350SE |
| | Digimax 230 |
| | NV24 HD |
| | Digimax 360 |
| | Digimax A5 |
| | Digimax V800 |
| | Digimax U-CA 5 |
| | Digimax A50 |
| | Digimax A402 |
| | Digimax A7 |
| | Digimax A4 |
| | Digimax 370 |
| | Digimax U-CA 505 |
| | Digimax L50 |
| | Digimax A400 |
| | Digimax U-CA 4 |
| | Digmax 250 |
| | Digimax V50 |
| | Digimax V5 |
| | Digimax U-CA 401 |

| Camera Brand | Model |
|---|---|
| | Digimax V70 |
| | NV20 |

Papst reserves the right to amend, add to, or otherwise revise the above lists of devices as its investigation proceeds and as discovery in this case proceeds.

Papst objects to the extent that Interrogatory No.1 could be read to call for a claim chart for each and every potentially infringing device. Such a requirement would be unduly burdensome, as each set of claim charts would be several pages long, and there are hundreds of digital cameras at issue in this case. Also, as set forth above, Papst has served discovery requests on the Camera Manufacturers, the responses to which are expected to be highly relevant to the preparation of claim charts, but are not available at the time of service of this response. Nevertheless, and without waiving any of the objections stated herein, in the present response, Papst provides claim charts for two representative devices: 1) digital cameras which are configurable to operate as MSC Digital Cameras; and 2) digital cameras which are configurable to operate in PTP mode.

The claim charts below provide the infringement analysis with respect to the MSC Digital Cameras identified above:

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| 1. An interface device for communication between a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and a data transmit/receive device, the data transmit/receive | Generally, a preamble is not limiting. This claim covers an interface device as defined in the body of the claim below, and does not expressly require or exclude a host device or a data/transmit receive |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| device being arranged for providing analog data, comprising: | device. See the Claim Preamble section below for additional information. |
| a processor; | The interface portion of MSC Digital Cameras typically has a processor, such as a microprocessor or microcontroller. |
| a memory; | The interface portion of MSC Digital Cameras typically includes memory. Also, a socket is typically provided for adding a memory card. |
| a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and | The MSC Digital Cameras include a first connecting device comprising a Universal Serial Bus (USB) circuit for interfacing the interface device with a multipurpose USB interface on a host PC. |
| a second connecting device for interfacing the interface device with the data transmit/receive device, the second connecting device including a sampling circuit for sampling the analog data provided by the data transmit/receive device and an analog-to-digital converter for converting data sampled by the sampling circuit into digital data, | The MSC Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| | For example some MSC Digital Cameras use a Correlated Double Sampler (CDS). |
| wherein the interface device is configured by the processor and the memory to include a first command interpreter and a second command interpreter, | The interface device of MSC Digital Cameras is configured to include first and second command interpreters as set forth more fully below. |
| wherein the first command interpreter is configured in such a way that the command interpreter, when receiving an inquiry from the host device as to a type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is an input/output device customary in a host device, | The first command interpreter may comprise, for example, a USB command interpreter. When a MSC Digital Camera is plugged in to a USB port on a host PC, the camera may receive a "Get_Descriptor" USB command. The "Get_Descriptor" USB command is an inquiry from the host PC. The first command interpreter of the MSC Digital Camera interprets the "Get_Descriptor" USB command and returns the requested descriptor(s). MSC Digital Cameras are believed, for example, to send a signal to the Host PC, regardless of the image sensor, microphone, or other data |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
|  | transmit/receive device which may be attached to the interface device, that the MSC Digital Camera is a mass storage class device, such as a disk drive, which is an I/O device customary in a host PC. See "First Command Interpreter" and "Signals to the Host Device and Customary in a Host Device" sections below for additional information. |
| whereupon the host device communicates with the interface device by means of the driver for the input/output device customary in a host device, and | Upon receiving the information signaling the host computer that the MSC Digital Camera is a mass storage device, the host PC automatically communicates with the interface device of the MSC Digital Camera by means of one or more software drivers for disk drives customary in the host PC. The interface device is configured to respond to communications from one or more of these drivers. For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
|  | with the interface device by means of disk.sys, PartMgr.sys and usbstor.sys. Digital camera-specific drivers are not necessary. The host PC also uses the disk.sys and PartMgr.sys drivers to communicate with hard disk drives, which are input/output devices customary in the host PC. The host PC also uses usbstor.sys to communicate with hard disk drives attached to the USB port. |
| wherein the second command interpreter is configured to interpret a data request command from the host device to the type of input/output device signaled by the first command interpreter as a data transfer command for initiating a transfer of the digital data to the host device. | As set forth above, the first command interpreter signals to the host PC that the MSC Digital Camera is a mass storage device, such as a disk drive. The second command interpreter is configured to interpret data request commands for such disk drives. For example, the second command interpreter may be configured to interpret SCSI Block Commands (SBC) and/or ATAPI commands. This second command interpreter, for example, is believed to interpret the READ(10) |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| | command (Operation code 28h). MSC Digital Cameras are believed to interpret this data request command and provide the requested sectors of information, including data representing images acquired by, for example, a CCD sensor and digitized by the second connecting device. |
| 2. An interface device according to claim 1, wherein the drivers for input/output drivers customary in a host device comprise a hard disk driver, and the signal indicates to the host device that the host device is communicating with a hard disk. | Windows XP drivers disk.sys and PartMgr.sys are the same drivers that would be used to communicate with a hard disk. The Interface Descriptor signals sent by the MSC Digital Camera indicating a SCSI command set indicate to the host PC that the MSC Digital Camera is a hard disk. |
| 3. An interface device according to claim 1, wherein the memory means comprises a buffer to buffer data to be transferred between the data transmit/receive device and the host device. | MSC Digital Cameras include internal memory and structure for receiving a memory card. The internal memory and/or memory card comprise a buffer to buffer data acquired by the transmit/receive |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| | device until it is transferred to the host PC. The MSC Digital Cameras may also comprise a memory buffer used during processing of images acquired by the image sensor. |
| 5. An interface device according to claim 1, wherein the processor is a digital signal processor. | MSC Digital Cameras may further comprise a digital signal processor. |
| 7. An interface device according to claim 2, which further comprises a root directory and virtual files which are present on the signaled hard disk drive and which can be accessed from the host device. | The MSC Digital Cameras are believed to comply with, for example, the Design Rule for Camera File System (DCF). The DCF requires a root directory, and for files of images to be placed in certain locations in the directory tree. The files can be accessed from the host device. |
| 11. An interface device for communication between a host device, which comprises a multi-purpose interface and a specific driver for this interface, and a data transmit/receive device, the data transmit/receive device being arranged for providing analog data, comprising: | Generally, a preamble is not limiting. This claim covers an interface device, and does not expressly require or exclude a host device or a data/transmit receive device. See the Claim Preambles section below for additional information. |
| a processor; | The interface portion of MSC Digital |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
|  | Cameras typically has a processor, such as a microprocessor or microcontroller. |
| a memory; | The interface portion of a MSC Digital Camera typically includes memory. Also, a socket is typically provided for adding a memory card. |
| a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and | The MSC Digital Cameras include a first connecting device comprising a Universal Serial Bus (USB) circuit for interfacing the interface device with a multipurpose USB interface on a host PC. |
| a second connecting device for interfacing the interface device with the data transmit/receive device, the second connecting device including a sampling circuit for sampling the analog data provided by the data transmit/receive device and an analog-to-digital converter for converting data sampled by the sampling circuit into digital data, | The MSC Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. For example some MSC Digital Cameras use a Correlated Double Sampler (CDS). |
| where the interface device is configured using the | The interface device of MSC Digital |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| processor and the memory to include a first command interpreter and a second command interpreter, | Cameras is configured to include first and second command interpreters as set forth more fully below. |
| wherein the first command interpreter is configured in such a way that the interface device, when receiving an inquiry from the host device as to the type of a device attached at the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is an input/output device customary in a host device, | The first command interpreter may comprise, for example, a USB command interpreter. When a MSC Digital Camera is plugged in to a USB port on a host PC, the camera may receive a "Get_Descriptor" USB command. The "Get_Descriptor" USB command is a type of inquiry from the host PC. The first command interpreter of the MSC Digital Camera interprets the "Get_Descriptor" USB command and returns the requested descriptor(s). MSC Digital Cameras are believed, for example, to send a signal to the Host PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached to the interface device, that the MSC Digital Camera is a mass storage class device, such as a disk drive, which is |

EXHIBIT C

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| | an I/O device customary in a host PC. See "First Command Interpreter" and "Signals to the Host Device and Customary in a Host Device" sections below for additional information. |
| whereupon the host device communicates with the interface device by means of the specific driver for the multi-purpose interface, and | Upon receiving the information signaling the host computer that the MSC Digital Camera is a mass storage device, the host PC automatically communicates with the interface device of the MSC Digital Camera by means of one or more software drivers specifically adapted for the multipurpose USB interface. For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of usbd.sys, which is a specific driver for the multipurpose USB interface. Digital camera-specific drivers are not necessary. |
| wherein the second command interpreter is | As set forth above, the first command |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| configured to interpret a data request command from the host device to the type of input/output device signaled by the first command interpreter as a data transfer command for initiating a transfer of the digital data to the host device. | interpreter signals to the host PC that the MSC Digital Camera is a mass storage device, such as a disk drive. The second command interpreter is configured to interpret data request commands for such disk drives. For example, the second command interpreter may be configured to interpret SCSI Block Commands (SBC) and/or ATAPI commands. This second command interpreter, for example, is believed to interpret the READ(10) command (Operation code 28h). MSC Digital Cameras are believed to interpret this data request command and provide the requested sectors of information, including data representing images acquired by, for example, a CCD sensor and digitized by the second connecting device. |
| 14. A method of communication between a host device, which comprises drivers for input/output devices customary in a host device and a | This claim covers a method of communicating between a host device interface device and a data |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| multi-purpose interface, and a data transmit/receive device, the data transmit/receive device being arranged for providing analog data, via an interface device, comprising: | transmit/receive device via an interface device. See the Claim Preambles section below for additional information concerning the host device and the data/transmit receive device |
| interfacing of the host device with a first connecting device of the interface device via the multi-purpose interface of the host device; | User manuals for the various MSC Digital Cameras instruct users, including users of cameras destined for the U.S., to interface a first connecting device of the MSC Digital Camera with a multipurpose interface of a host PC by connecting the MSC Digital Camera to the USB port on the host PC. |
| interfacing of the data transmit/receive device with a second connecting device of the interface device, the second connecting device including a sampling circuit for sampling the analog data provided by the data/transmit/receive device and an analog-to-digital converter for converting data sampled by the sampling circuit into digital data; | The MSC Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. |
| inquiring by the host device at the interface device | When a MSC Digital Camera is plugged |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| as to the type of device to which the multi-purpose interface of the host device is attached; | in to a USB port on a host PC, the host PC may inquire the interface device as to the type of device it is by sending a "Get_Descriptor" USB command. |
| regardless of the type of the data transmit/receive data attached to the second connecting device of the interface device, responding to the inquiry from the host device by the interface device in such a way that it is an input/output device customary in a host device, whereupon the host device communicates with the interface device by means of the usual driver for the input/output device, and | A MSC Digital Camera responds to the "Get_Descriptor" inquiry in such a way that it is an input/output device customary in a host device.  MSC Digital Cameras are believed, for example, to send a signal to the Host PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached to the interface device, that the MSC Digital Camera is a mass storage class device, such as a disk drive, which is an I/O device customary in a host PC. See "First Command Interpreter" and "Signals to the Host Device and Customary in a Host Device" sections below for additional information. Upon receiving the information signaling the host computer that the MSC Digital Camera is |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| | a mass storage device, the host PC automatically communicates with the interface device of the MSC Digital Camera by means of one or more of the usual software drivers for disk drives customary in the host PC.  For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of disk.sys, PartMgr.sys and usbstor.sys. Digital camera-specific drivers are not necessary. The host PC also uses the disk.sys and PartMgr.sys drivers to communicate with hard disk drives, which are input/output devices customary in the host PC. The host PC also uses usbstor.sys to communicate with hard disk drives attached to the USB port. |
| interpreting a data request command from the host device to the type of input/output device customary in the host device as a data transfer command for | A MSC Digital Camera is believed to interpret SCSI Block Commands (SBC) and/or ATAPI commands. For example, |

| '399 Patent Claims | MSC Digital Cameras |
|---|---|
| initiating a transfer of the digital data to the host device. | the MSC Digital Camera is believed to interpret the READ(10) command (Operation code 28h). MSC Digital Cameras are believed to interpret this data request command and provide the requested sectors of information, including data representing images acquired by, for example, a CCD sensor and digitized by the second connecting device. |
| 15. A method according to claim 14, wherein the drivers for input/output devices customary in a host device comprise a driver for a storage device and in particular for a hard disk drive. | Windows XP drivers disk.sys and PartMgr.sys are the same drivers that would be used to communicate with a storage device comprising a hard disk. |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| 1. An interface device for communication between a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and a data transmit/receive device comprising the following features: | Generally, a preamble is not limiting. This claim covers an interface device, and does not expressly require or exclude a host device or a data/transmit receive device. See the Claim Preambles section below for additional information. |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| a processor; | The interface portion of MSC Digital Cameras typically has a processor, such as a microprocessor or microcontroller. |
| a memory; | The interface portion of a MSC Digital Camera typically includes memory. Also, a socket is typically provided for adding a memory card. |
| a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and | The MSC Digital Cameras include a first connecting device comprising a Universal Serial Bus (USB) circuit for interfacing the interface device with a multipurpose USB interface on a host PC. |
| a second connecting device for interfacing the interface device with the data transmit/receive device, | The MSC Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. |
| wherein the interface device is configured by the processor and the memory in such a way | The interface device is believed to be configured by the processor and a program |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| that the interface device, when receiving an inquiry from the host device as to the type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is a storage device customary in a host device, | stored in the memory, for example, in such a way that when the MSC Digital Camera receives a "Get_Descriptor" USB command, the MSC Digital Camera sends the requested descriptor(s). The "Get_Descriptor" USB command is a type of inquiry from the host PC. MSC Digital Cameras are believed, for example, to send a signal to the Host PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached to the interface device, that the MSC Digital Camera is a mass storage class device, such as a disk drive, which is a storage device customary in a host PC. |
| whereupon the host device communicates with the interface device by means of the driver for the storage device customary in a host device, and | Upon receiving the information signaling the host computer that the MSC Digital Camera is a mass storage device, the host PC automatically communicates with the interface device of the MSC Digital Camera by means of one or more software drivers for disk drives customary in the host PC. The interface device is configured to respond to communications |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| | from one or more of these drivers, as set forth below. For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of disk.sys, PartMgr.sys and usbstor.sys. Digital camera-specific drivers are not necessary. The host PC also uses the disk.sys and PartMgr.sys drivers to communicate with hard disk drives, which are input/output devices customary in the host PC. The host PC also uses usbstor.sys to communicate with hard disk drives attached to the USB port. |
| wherein the interface device is arranged for simulating a virtual file system to the host, the virtual file system including a directory structure. | The interface portion of the MSC Digital Camera is believed to simulate a virtual file system, including, for example, simulating a master boot record, a boot sector and a sequence of sectors comprising at least one file allocation table, at least one directory, and files, as would be found on a disk drive having rotating media. |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| 2. An interface device in accordance with claim 1, in which the directory structure has a configuration file for setting and controlling functions of the interface device or an executable or a batch file for conducting a routine stored in the memory or a data file used for transferring data from the data transmit/receive device to the host device or a help file for giving help on handling the interface device. | MSC Digital Cameras may include configuration files and files used for transferring data from the data transmit/receive device to the host device. |
| 6. An interface device in accordance with claim 1 wherein, in response to a request from the host to read a boot sequence, the processor is arranged to send a virtual boot sequence to the host. | In response to a request from the host PC to read the first sector on the simulated disk drive (a typical location for a master boot record), the processor of the MSC Digital Camera is arranged to send a virtual boot sequence to the host. For example, in response to the request for the first sector, the MSC Digital Cameras is believed to provide 512 bytes of data which contain the information typically found in a master boot record (MBR), including information for at least one partition. |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| 7. An interface device in accordance with claim 6 wherein the virtual boot sequence includes a starting position and a length of a file allocation table, an indication of a type of the storage device or a number of sectors of the storage device. | The MSC Digital Cameras are believed to provide a boot sequence including a master boot record and a boot sector, which typically include a starting location and a length of a File Allocation Table. |
| 8. An interface device in accordance with claim 7 wherein, in response to a request from the host to display a directory of the storage device, a processor is arranged for transferring the file allocation table and the directory structure to the host. | The MSC Digital Camera is configured such that, in response to a request from the host PC to display a directory of the MSC Digital Camera (which appears to the host PC to be a storage device), the processor is arranged for transferring the file allocation table and the directory structure to the host PC. |
| 9. An interface device in accordance with claim 1 wherein the file allocation table and the directory structure is transferred to the host in response to a request from the host to read data from or store data to the storage device. | The MSC Digital Camera is configured such that, in response to a request from the host PC to read data from or store data to the MSC Digital Camera (which appears to the host PC to be a storage device), the processor is arranged for transferring the file allocation table and the directory structure to the host PC. |
| 12. An interface device in accordance with | In FAT file systems believed to be used in the |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| claim 1 wherein the file allocation table includes information on numbers of blocks occupied by the data file wherein the interface device is arranged for receiving block numbers or a block number range from the host when the host wants to read the data file, and wherein the interface device is arranged to start a data transfer to the host, when the block numbers or the block number range is received from the host. | MSC Digital Cameras, the number of the first cluster of a file is in the directory. READ(10) command supports reading a single logical block address comprising a single 512 byte sector, or a starting logical block address plus a transfer length comprising a range of blocks of data. |
| 13. An interface device in accordance with claim 12 wherein the processor is arranged for formatting the data acquired by the second connecting device into blocks having a predetermined size, the predetermined size being suited for the storage device. | It is believed that the processor is arranged for formatting the data acquired by the second connecting device into 512 byte blocks, which is a size being suited for a storage device. |
| 15. An interface device in accordance with claim 1 wherein the storage device is a hard disk. | The Interface Descriptor sent by the MSC Digital Camera indicating a SCSI command set is the same as an Interface Descriptor as would be sent by a hard disk. Thus, the Interface Descriptor signals the host PC that |

EXHIBIT C

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| | the storage device is a hard disk. |
| 16. An interface device in accordance with claim 1 wherein the memory has a data buffer for permitting independence in terms of time of the data transmit/receive device attachable to the second connecting device from the host device attachable to the first connecting device. | Images are typically stored in a data buffer, permitting time independence from when a photograph is captured and when it is transferred to the host PC. |
| 17. An interface device for communication between a host device, which comprises a multi-purpose interface and a specific driver for this interface, and a data transmit/receive device comprising the following features: | Generally, a preamble is not limiting. This claim covers an interface device, and does not expressly require or exclude a host device or a data/transmit receive device. See the Claim Preambles section below for additional information. |
| a processor; | The interface portion of MSC Digital Cameras typically has a processor, such as a microprocessor or microcontroller. |
| a memory; | The interface portion of a MSC Digital Camera typically includes memory. Also, a socket is typically provided for adding a memory card. |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and | The MSC Digital Cameras include a Universal Serial Bus (USB) circuit. A USB interface present on a host PC is a multipurpose interface. |
| a second connecting device for interfacing the interface device with the data transmit/receive device, | The MSC Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. For example some MSC Digital Cameras use a Correlated Double Sampler (CDS). |
| where the interface device is configured using the processor and the memory in such a way that the interface device, when receiving an inquiry from the host device as to the type of a device attached at the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of | The interface device is believed to be configured by the processor and a program stored in the memory, for example, in such a way that when the MSC Digital Camera receives a "Get_Descriptor" USB command, the MSC Digital Camera sends the requested descriptor(s). MSC Digital Cameras are believed, for example, to send a signal to the |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| the interface device, to the host device which signals to the host device that it is a storage device customary in a host device, | Host PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached, that the MSC Digital Camera is a mass storage class device, such as a disk drive, which is a storage device customary in a host PC. |
| whereupon the host device communicates with the interface device by means of the specific driver for the multi-purpose interface, and | Upon receiving the information signaling the host computer that the MSC Digital Camera is a mass storage device, the host PC automatically communicates with the interface device of the MSC Digital Camera by means of one or more software drivers for disk drives customary in the host PC. The interface device is configured to respond to communications from one or more of these drivers, as set forth below. For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of usbd.sys. Digital camera-specific drivers are not necessary. The host PC also uses the usbd.sys driver to communicate with |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
|  | hard disk drives connected to the USB interface, and hard disk drives are input/output devices customary in the host PC. |
| wherein the interface device is arranged for simulating a virtual file system to the host, the virtual file system including a file allocation table and a directory structure. | The interface portion of the MSC Digital Camera is believed to simulate a virtual file system, including, for example, simulating a master boot record, a boot sector and a sequence of sectors comprising at least one file allocation table, at least one directory, and files, as would be found on a disk drive having rotating media. |
| 18. A method of communication between a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and a data transmit/receive device via an interface device comprising the following steps: | Generally, a preamble is not limiting. This claim covers a method of communicating between a host device interface device and a data transmit/receive device via an interface device. See the Claim Preambles section below for additional information concerning the host device and the data/transmit receive device |
| interfacing of the host device with a first connecting device of the interface device via | User manuals for the various MSC Digital Cameras instruct users, including users of |

48

EXHIBIT C

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| the multi-purpose interface of the host device; | cameras destined for the U.S., to interface the a first connecting device of the MSC Digital Camera with a multipurpose interface of a host PC by connecting the MSC Digital Camera to the USB port on the host PC. |
| interfacing of the data transmit/receive device with a second connecting device of the interface device; | The MSC Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. |
| inquiring by the host device at the interface device as to the type of device to which the multi-purpose interface of the host device is attached; | When a MSC Digital Camera is plugged in to a USB port on a host PC, the host PC may inquire the interface device as to the type of device it is by sending a "Get_Descriptor" USB command. |
| regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, responding to the inquiry from the host device | A MSC Digital Camera responds to the "Get_Descriptor" inquiry in such a way that it is an input/output device customary in a host device.  MSC Digital Cameras are believed, |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| by the interface device in such a way that it is a storage device customary in a host device, whereupon the host device communicates with the interface device by means of the usual driver for the storage device, and | for example, to send a signal to the Host PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached to the interface device, that the MSC Digital Camera is a mass storage class device, such as a disk drive, which is an storage device customary in a host PC. See "First Command Interpreter" and "Signals to the Host Device and Customary in a Host Device" sections below for additional information. Upon receiving the information signaling the host computer that the MSC Digital Camera is a mass storage device, the host PC automatically communicates with the interface device of the MSC Digital Camera by means of one or more of the usual software drivers for disk drives customary in the host PC. For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of disk.sys, PartMgr.sys and |

| '499 Patent Claims | MSC Digital Cameras |
|---|---|
| | usbstor.sys. Digital camera-specific drivers are not necessary. The host PC also uses the disk.sys and PartMgr.sys drivers to communicate with hard disk drives, which are storage devices customary in the host PC. The host PC also uses usbstor.sys to communicate with hard disk drives attached to the USB port. |
| wherein the interface device is arranged for simulating a virtual file system to the host, the virtual file system including a file allocation table and a directory structure. | The interface portion of the MSC Digital Camera is believed to simulate a virtual file system, including, for example, simulating a master boot record, a boot sector and a sequence of sectors comprising at least one file allocation table, at least one directory, and files, as would be found on a disk drive having rotating media. |

The claim chart below provides the infringement analysis with respect to the PTP Digital Cameras identified above:

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| 1. An interface device for communication between a host device, which comprises | Generally, a preamble is not limiting. This claim covers an interface device as defined in the body |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| drivers for input/output devices customary in a host device and a multi-purpose interface, and a data transmit/receive device, the data transmit/receive device being arranged for providing analog data, comprising: | of the claim below, and does not expressly require or exclude a host device or a data/transmit receive device. See the Claim Preamble section below for additional information. |
| a processor; | The interface portion of PTP Digital Cameras typically has a processor, such as a microprocessor or microcontroller. |
| a memory; | The interface portion of PTP Digital Cameras typically includes memory. Also, a socket is typically provided for adding a memory card. |
| a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host device; and | The PTP Digital Cameras include first connecting device comprising a Universal Serial Bus (USB) circuit for interfacing the interface device with a multipurpose USB interface on a host PC. |
| a second connecting device for interfacing the interface device with the data transmit/receive device, the second | The PTP Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| connecting device including a sampling circuit for sampling the analog data provided by the data transmit/receive device and an analog-to-digital converter for converting data sampled by the sampling circuit into digital data, | interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. For example some PTP Digital Cameras use a Correlated Double Sampler (CDS). |
| wherein the interface device is configured by the processor and the memory to include a first command interpreter and a second command interpreter, | The interface device of PTP Digital Cameras is configured to include first and second command interpreters as set forth more fully below. |
| wherein the first command interpreter is configured in such a way that the command interpreter, when receiving an inquiry from the host device as to a type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is an input/output | The first command interpreter may comprise, for example, a USB command interpreter. When a PTP Digital Camera is plugged in to a USB port on a host PC, the camera may receive a "Get_Descriptor" USB command. The "Get_Descriptor" USB command is a type of inquiry from the host PC. The first command interpreter of the PTP Digital Camera interprets the "Get_Descriptor" command and returns the requested descriptor(s). PTP Digital Cameras are believed, for example, to send a signal to the Host |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| device customary in a host device, | PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached to the interface device, that the PTP Digital Camera is an imaging device, such as a scanner, which is believed to be an I/O device customary in a host PC. See "First Command Interpreter" and "Signals to the Host Device and Customary in a Host Device" sections below for additional information. |
| whereupon the host device communicates with the interface device by means of the driver for the input/output device customary in a host device, and | Upon receiving the information signaling the host computer that the PTP Digital Camera is an imaging device, the host PC automatically communicates with the interface device of the PTP Digital Camera by means of one or more software drivers for imaging devices customary in the host PC. For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of at least usbscan.sys. The host PC also uses usbscan.sys drivers to communicate with scanners which are |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
|  | customary on the host PC. |
| wherein the second command interpreter is configured to interpret a data request command from the host device to the type of input/output device signaled by the first command interpreter as a data transfer command for initiating a transfer of the digital data to the host device. | The second command interpreter may be configured to interpret, for example, interpret certain operation codes specified in PIMA 15740 (the PTP specification). For example, PTP Digital Cameras are believed to interpret and respond to the operation code for the GetObject command (PIMA 15740, 10.4.9). PTP Digital Cameras are believed to interpret this data request command and provide the requested object, including data representing images acquired by, for example, a CCD sensor and digitized by the second connecting device. |
| 3. An interface device according to claim 1, wherein the memory means comprises a buffer to buffer data to be transferred between the data transmit/receive device and the host device. | PTP Digital Cameras include internal memory and structure for receiving a memory card. The internal memory and/or memory card comprise a buffer to buffer data acquired by the transmit/receive device until it is transferred to the host PC. The PTP Digital Cameras may also comprise a memory buffer used during processing of images acquired by the image |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| | sensor. |
| 5. An interface device according to claim 1, wherein the processor is a digital signal processor. | PTP Digital Cameras may further comprise a digital signal processor. |
| 11. An interface device for communication between a host device, which comprises a multi-purpose interface and a specific driver for this interface, and a data transmit/receive device, the data transmit/receive device being arranged for providing analog data, comprising: | Generally, a preamble is not limiting. This claim covers an interface device, and does not expressly require or exclude a host device or a data/transmit receive device. See the Claim Preambles section below for additional information. |
| a processor; | The interface portion of a PTP Digital Camera typically has a processor, such as a microprocessor. |
| a memory; | The interface portion of a PTP Digital Camera typically includes memory. Also, a socket is typically provided for adding a memory card. |
| a first connecting device for interfacing the host device with the interface device via the multi-purpose interface of the host | The PTP Digital Cameras include first connecting device comprising a Universal Serial Bus (USB) circuit for interfacing the interface |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| device; and | device with a multipurpose USB interface on a host PC. |
| a second connecting device for interfacing the interface device with the data transmit/receive device, the second connecting device including a sampling circuit for sampling the analog data provided by the data transmit/receive device and an analog-to-digital converter for converting data sampled by the sampling circuit into digital data, | The PTP Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. For example some PTP Digital Cameras use a Correlated Double Sampler (CDS). |
| where the interface device is configured using the processor and the memory to include a first command interpreter and a second command interpreter, | The interface device of PTP Digital Cameras is configured to include first and second command interpreters as set forth more fully below. |
| wherein the first command interpreter is configured in such a way that the interface device, when receiving an inquiry from the host device as to the type of a device attached at the multi-purpose interface of the host device, sends a signal, regardless | The first command interpreter may comprise, for example, a USB command interpreter. When a PTP Digital Camera is plugged in to a USB port on a host PC, the camera may receive a "Get_Descriptor" USB command. The "Get_Descriptor" USB command is a type of |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is an input/output device customary in a host device, | inquiry from the host PC. The first command interpreter of the PTP Digital Camera interprets the "Get_Descriptor" command and returns the requested descriptor(s). PTP Digital Cameras are believed, for example, to send a signal to the Host PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached to the interface device, that the PTP Digital Camera is an imaging device, such as a scanner, which is believed to be an I/O device customary in a host PC. See "First Command Interpreter" and "Signals to the Host Device and Customary in a Host Device" sections below for additional information. |
| whereupon the host device communicates with the interface device by means of the specific driver for the multi-purpose interface, and | Upon receiving the information signaling the host computer that the PTP Digital Camera is a mass storage device, the host PC automatically communicates with the interface device of the PTP Digital Camera by means of one or more software drivers specifically adapted for the multipurpose USB interface. For example, when |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
|  | the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of usbd.sys, which is a specific driver for the multipurpose USB interface. |
| wherein the second command interpreter is configured to interpret a data request command from the host device to the type of input/output device signaled by the first command interpreter as a data transfer command for initiating a transfer of the digital data to the host device. | The second command interpreter may be configured to interpret, for example, interpret certain operation codes specified in PIMA 15740 (the PTP specification). For example, PTP Digital Cameras are believed to interpret and respond to the operation code for the GetObject command (PIMA 15740, 10.4.9). PTP Digital Cameras are believed to interpret this data request command and provide the requested object, including data representing images acquired by, for example, a CCD sensor and digitized by the second connecting device. |
| 14. A method of communication between a host device, which comprises drivers for input/output devices customary in a host device and a multi-purpose interface, and a | This claim covers a method of communicating between a host device interface device and a data transmit/receive device via an interface device. See the Claim Preambles section below for |

EXHIBIT C

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| data transmit/receive device, the data transmit/receive device being arranged for providing analog data, via an interface device, comprising: | additional information concerning the host device and the data/transmit receive device |
| interfacing of the host device with a first connecting device of the interface device via the multi-purpose interface of the host device; | User manuals for the various PTP Digital Cameras instruct users, including users of cameras destined for the U.S., to interface a first connecting device of the PTP Digital Camera with a multipurpose interface of a host PC by connecting the PTP Digital Camera to the USB port on the host PC. |
| interfacing of the data transmit/receive device with a second connecting device of the interface device, the second connecting device including a sampling circuit for sampling the analog data provided by the data/transmit/receive device and an analog-to-digital converter for converting data sampled by the sampling circuit into digital data; | The PTP Digital Cameras include a second connecting device comprising a sampling circuit and an analog to digital converter. This circuitry interfaces analog data typically provided by a data transmit receive device (typically including a CCD image sensor) with the interface device. |
| inquiring by the host device at the interface | When a PTP Digital Camera is plugged in to a |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
| device as to the type of device to which the multi-purpose interface of the host device is attached; | USB port on a host PC, the host PC may inquire the interface device as to the type of device it is by sending a "Get_Descriptor" USB command. |
| regardless of the type of the data transmit/receive data attached to the second connecting device of the interface device, responding to the inquiry from the host device by the interface device in such a way that it is an input/output device customary in a host device, whereupon the host device communicates with the interface device by means of the usual driver for the input/output device, and | PTP Digital Cameras are believed, for example, to send a signal to the Host PC, regardless of the image sensor, microphone, or other data transmit/receive device which may be attached to the interface device, that the PTP Digital Camera is an imaging class device, such as a scanner, which is believed to be an I/O device customary in a host PC. See "First Command Interpreter" and "Signals to the Host Device and Customary in a Host Device" sections below for additional information. Upon receiving the information signaling the host computer that the PTP Digital Camera is imaging class device, the host PC automatically communicates with the interface device of the PTP Digital Camera by means of one or more software drivers for imaging devices customary in the host PC. The interface device is configured to respond to communications from |

| '399 Patent Claims | PTP Digital Cameras |
|---|---|
|  | one or more of these drivers, as set forth below. For example, when the host PC is configured with the Windows XP operating system, the host PC is believed to communicate with the interface device by means of usbscan.sys. The host PC also uses the usbscan.sys driver to communicate with scanners, which are input/output devices customary in the host PC. |
| interpreting a data request command from the host device to the type of input/output device customary in the host device as a data transfer command for initiating a transfer of the digital data to the host device. | The second command interpreter may be configured to interpret, for example, interpret certain operation codes specified in PIMA 15740 (the PTP specification). For example, PTP Digital Cameras are believed to interpret and respond to the operation code for the GetObject command (PIMA 15740, 10.4.9). PTP Digital Cameras are believed to interpret this data request command and provide the requested object, including data representing images acquired by, for example, a CCD sensor and digitized by the second connecting device. |

Papst reserves the right to amend or to supplement the identification of devices in this response to

provide additional designations of devices as being MSC Digital Cameras, PTP Digital Cameras,

or both, as discovery progresses in this case and additional information becomes available.

## 1. **Claim Preambles**

In construing patent claims, structure recited in the preamble of a claim is generally not

considered a limitation of the claim. One generally should look to the body of the claims, which

define the structure of the interface device. In one example, claim 1 of the '399 patent recites the

following preamble:

> An interface device for communication between a host device, which comprises
> drivers for input/output devices customary in a host device and a multi-purpose
> interface, and a data transmit/receive device, the data transmit/receive device being
> arranged for providing analog data, comprising:

In this claim, the preamble states that the claim is for an "interface device." Other independent

apparatus claims of the '399 patent and the '449 patent similarly recite an "interface device." The

"interface device" (which is defined later in the body of each claim) is for communicating between

a "host device" and a "data transmit/receive device." The claims neither expressly require, nor

prohibit, a permanently attached data transmit/receive device. Also, the apparatus claims neither

expressly require, nor prohibit, a host device. Instead, the inquiry should be directed to whether

the interface portion of a digital camera meets the limitations in the claims for the interface device.

To provide context for the remaining portions of a claim, the term "host device" may be

understood to include Personal Computers ("PCs") and other host devices as described in the

patent written description. Such host devices typically have or are connectable to input/output

devices and have software drivers to operate those input/output devices.

The phrase "an input/output device customary in a host device" may be understood, for

example, by referring to the '399 patent, for example, at column 4, lines 23-39, column 4, line 60

to column 5, line 32, column 8, lines 43-67, and column 12, lines 23-40. Input/output devices customary in a host device include, for example, hard disk drives (e.g. column 8, lines 1-11), floppy disk drives, CD –ROM drives, or tape drives (e.g., column 4, lines 23-39) or printers (e.g., column 9, lines 38-48). Similar disclosures may be referred to for an understanding of the phrase "a storage device customary in a host device," as that phrase is used in the claims of the '449 patent.

To provide context for the remaining portions of a claim, the term data transmit/receive devices may be understood to cover an entire spectrum of sensors. The written description of the '399 patent, for example, gives as an example an image-acquisition system, which is a diagnostic radiology system. In this regard, the term "data transmit/receive device" reads on a CCD image sensor typically found in a digital camera. Also, the term "data transmit/receive device" would read on a microphone.

Additionally, the term data transmit/receive device is recited differently in the two patents-in-suit. For example, in claim 1 of the '399 patent, the data transmit/receive device is recited as "being arranged for providing analog data." (CCD image sensors provide analog data). However, in claim 1 of the 449 patent, there is no recitation that the data transmit receive device be arranged to provide analog data. If there is any interpretation of the term data transmit/receive device, that term in the '449 patent therefore should, for example, be construed more broadly than the data transmit/receive devices of the '399 patent.

## 2. First Connecting Device

An example of a "first connecting device" that is described in the '399 patent and the '449 patent includes an interface circuit. The Digital Cameras in suit all include a first connecting

64

device because they include a Universal Serial Bus (USB) circuit. The USB interface circuit is for interfacing the interface device with a multipurpose USB interface on a host PC.

### 3. Second Connecting Device

The claim language "second connecting device" as recited in claim 1 of the '399 patent covers circuitry in a digital camera-in-suit that serves as the interface between the CCD image sensor (part of the data transmit/receive device) and the processor (part of the interface device):

> a second connecting device for interfacing the interface device with the data transmit/receive device, the second connecting device including a sampling circuit for sampling the analog data provided by the data transmit/receive device and an analog-to-digital converter for converting data sampled by the sampling circuit into digital data,

Digital cameras-in-suit typically include a sample-and-hold circuit and an analog to digital converter as part of the circuitry that interfaces the data transmit/receive device to the processor of the interface device. The word "interfacing" does not require, nor does it prohibit, a permanent interface with a permanently attached data transmit/receive device.

In another example, independent claims 1 and 17 of the '449 patent recite a "second connecting device for interfacing the interface device with the data transmit/receive device," which is broader than the language in the '399 patent, because it does not recite the sampling circuit or the analog-to-digital converter. Independent claim 18 of the '449 patent recites the step of interfacing a data transmit/receive device with a broadly recited second connecting device, which does not require any particular sampling circuit or analog-to-digital converter.

### 4. First Command Interpreter

The independent claims of the '399 patent recite that the interface device be configured by the processor and the memory to include a first command interpreter and a second command interpreter.

In the claims of the '399 patent, the first command interpreter interprets USB commands, including those USB commands relating to the device enumeration process. The '449 patent is not limited to a "first command interpreter" because, for example, claim 1 of the '449 patent recites that the interface device is configured to provide certain signals in response to a received inquiry from a host PC. The host PC is believed to send several "Get_Descriptor" USB commands to the devices-in-suit. The digital cameras are believed to send responses to the "Get_Descriptor" command which may depend on whether the device is configured as a MSC Digital Camera or a PTP Digital Camera. Such responses are described in further detail below.

5. **"Signals" to the Host Device and "Customary" in a Host Device**

Claim 1 of the '399 patent recites, in part, that the "the first command interpreter" (which is part of the interface device) sends a signal to the host device "which signals to the host device that it is an input/output device customary in a host device." Claim 1 of the '449 patent recites, in part, that the "interface device" (not necessarily limited to a "command interpreter") sends signal to the host device "which signals to the host device that it is a storage device customary in a host device."

The phrase "an input/output device customary in a host device" may be understood, for example, by referring to the '399 patent, for example, at column 4, lines 23-39, column 4, line 60 to column 5, line 32, column 8, lines 43-67, and column 12, lines 23-40. Input/output devices customary in a host device include, for example, hard disk drives (e.g. column 8, lines 1-11), floppy disk drives, CD –ROM drives, or tape drives (e.g., column 4, lines 23-39) or printers (e.g., column 9, lines 38-48). Similar disclosures may be referred to for an understanding of the phrase "a storage device customary in a host device," as that phrase is used in the claims of the '449 patent.

The "signals" may be found in the responses to the "Get_Descriptor" USB commands. For example, a Casio Exilim Z75 Digital Camera is believed to respond to a "Get_Descriptor" USB command from a host PC by returning the requested descriptor(s). For example, the Casio Exilim Z75 Digital Camera, when in USB Mass Storage mode, is believed to return an Interface Descriptor which identifies the Casio Exilim Z75 Digital Camera as having a bInterfaceClass = 0x08, a bInterfaceSubClass = 0x05, and a bInterfaceProtocol = 0x50. An Interface Descriptor having the above information does not identify the attached device as a camera having an image sensor. Instead, the Interface Descriptor information given above is believed to signal to the host PC that the Casio Exilim Z75 device is an ATAPI removable rewriteable media device compatible with a SFF-8070i command set. It is further believed that a host PC receiving the above Interface Descriptor information would recognize the Exilim Z75 digital camera as an ATAPI disk drive. The host PC automatically loads standard software drivers, such as usbstor.sys, disk.sys and PartMgr.sys, and the host PC communicates with the interface device of the camera by means of such drivers. The host PC also uses the disk.sys and PartMgr.sys drivers to communicate with hard disk drives.

In another example, a Panasonic DMC-LX1 Digital Camera, when in USB Mass Storage mode, is believed to return an Interface Descriptor which identifies the Panasonic DMC-LX1 Digital Camera as having a bInterfaceClass = 0x08, a bInterfaceSubClass = 0x06, and a bInterfaceProtocol = 0x50. An Interface Descriptor having the above information does not identify the attached device as a camera having an image sensor. Instead, the Interface Descriptor information given above is believed to signal to the host PC that the Panasonic DMC-LX1 Digital Camera is a disk drive compatible with a SCSI command set. It is further believed that a host PC receiving the above Interface Descriptor information would recognize the DMC-LX1 Digital

67

Camera as a SCSI disk drive. The host PC automatically loads standard software drivers, such as usbstor.sys, disk.sys and PartMgr.sys, and the host PC communicates with the interface device of the camera by means of such drivers. The host PC also uses the disk.sys and PartMgr.sys drivers to communicate with hard disk drives.

In another example, an Olympus E-500 Digital Camera, when in USB Mass Storage mode, is believed to return an Interface Descriptor which identifies the Olympus E-500 Digital Camera as having a bInterfaceClass = 0x08, a bInterfaceSubClass = 0x06, and a bInterfaceProtocol = 0x50. An Interface Descriptor having the above information does not identify the attached device as a camera having an image sensor. Instead, the Interface Descriptor information given above is believed to signal to the host PC that the Olympus E-500 Digital Camera is a disk compatible with a SCSI command set. It is further believed that a host PC receiving the above Interface Descriptor information would recognize the Olympus E-500 Digital Camera as a SCSI disk drive. The host PC automatically loads standard software drivers, such as usbstor.sys, disk.sys and PartMgr.sys, and the host PC communicates with the interface device of the camera by means of such drivers. The host PC also uses the disk.sys and PartMgr.sys drivers to communicate with hard disk drives.

In another example, in PTP mode, a PTP Digital Camera is believed to respond to a "Get_Descriptor" USB command from a host PC by returning the requested descriptor(s). For example, the PTP Digital Camera is believed to return an Interface Descriptor which identifies the PTP Digital Camera as having a bInterfaceClass = 0x06. An Interface Descriptor having bInterfaceClass = 0x06 is believed to signal to the host PC that the PTP Digital Camera is an I/O imaging device such as a scanner. The host PC, in response to this Interface Descriptor, loads and communicates with the interface device of the camera by means of Microsoft standard software

68

drivers, such as usbscan.sys. The host PC believed to use the usbscan.sys driver to communicate with imaging devices such as scanners.

### 6. Host Device Communicates with the Interface Device

Claim 1 of the '399 patent, for example, recites communication from the host device to the interface device to be by way of a driver for an input/output device customary in a host device:

> whereupon the host device communicates with the interface device by means of the driver for the input/output device customary in a host device, and

The body of claim 1 of the '449 patent, for example, also recites communication between the host device and the interface device, but by way of a driver for a storage device:

> whereupon the host device communicates with the interface device by means of the driver for the storage device customary in a host device, and

Host devices, such as a PC are believed to communicate with the interface device of a Digital Camera-in-suit as recited above. For example, a PC operating Windows XP is believed to communicate with a Casio Exilim Z75 digital camera in USB Mass Storage Mode by means of Microsoft standard software drivers, such as usbstor.sys, disk.sys and PartMgr.sys (disk.sys and PartMgr.sys drivers are also used to communicate with I/O storage devices, such as hard disk drives, and usbstor.sys is used to communicate with hard disk drives attached to a USB port). In another example, a PC operating Windows XP is believed to communicate with a Casio Exilim Z75 digital camera in PTP Mode by means of Microsoft standard software drivers, such as usbscan.sys (the usbscan.sys driver is also used to communicate with imaging devices, such as scanners).

Claim 11 of the '399 patent and claim 17 of the '449 patent, for example, recite communication from the host device to the interface device to be by way of a driver for an input/output device customary in a host device:

whereupon the host device communicates with the interface device by means of the
specific driver for multipurpose interface, and

Host devices, such as a PC are believed to communicate with the interface device of a Casio digital

camera as recited above. For example, a PC operating Windows XP is believed to communicate

with a MSC Digital Camera by means of a specific software drivers for the multipurpose USB

interface, such as usbstor.sys. In another example, a PC operating Windows XP is believed to

communicate with a PTP Digital Camera by means of a specific software driver for the

multipurpose USB bus, such as usbscan.sys.

### 7. Second Command Interpreter

The "second command interpreter" of claim 1 of the '399 patent is a command interpreter

that interprets a data request command:

> wherein the second command interpreter is configured to interpret a data request
> command from the host device to the type of input/output device signaled by the first
> command interpreter as a data transfer command for initiating a transfer of the digital
> data to the host device.

The set of USB commands that are interpreted by the first command interpreter, e.g., the

"Get_Descriptor" commands and commands like those, do not have a data request command for

retrieving, for example, digital data corresponding to images acquired by a Digital Camera-in-suit.

Instead, data request commands are specified in different command sets. For example, the SCSI

Block Command ("SBC") set includes READ commands. In another example, the ATAPI

command set includes many of the SBC commands. MSC Digital Cameras are believed to

interpret and respond to the SBC READ command. In USB Mass Storage mode, the Casio Exilim

Z75 Digital Camera is believed to respond to, for example, a SCSI READ(10) command by

transferring one or more requested sectors as specified by the READ(10) command. It is further

believed that the Casio Exilim Z75 Digital Camera will transfer to a host computer digital data

70

representing images acquired by a CCD image sensor and associated components in response to the READ(10) command. The READ(10) command is, for example, a standard data request command that a host PC may send to a hard disk drive.

Also, the PIMA 15470:2000 specification specifies commands such as "GetObject" (PIMA Commands). PTP Digital Cameras are believed to interpret this data request command and provide the requested "object," including data representing images acquired by the CCD sensor and digitized by the second connecting device.

The interpretation of the SBC, ATAPI, and/or PIMA commands is believed to occur in a command interpreter other than the command interpreter that interprets the USB device enumeration commands.

### 8. Virtual File System

The Digital Cameras in suit are believed to represent to a host PC a file system which simulates the existence of addressable sectors, even though flash memory cards do not have any physical "sectors." This is an example of virtualization of the file system. The term "file system" generally implies the use of rotating media, which is not present in the Digital Cameras-in-suit.

### 9. Virtual Boot Sequence

The Digital Cameras in suit are believed to send a virtual boot sequence to the host PC in response to a request from the host PC. For example the written descriptions of the patents-in-suit explain that when the host device receives the response that indicates that a drive is present, it then sends a request to the interface device to read the boot sequence. The written description also explains that on actual hard disks, the boot sequence normally resides on the first sectors of the disk. It is believed that, upon identifying the MSC Digital Camera as a disk drive, the host PC

71

sends a read request to the MSC Digital Camera to read the first sector of the disk drive (which is a virtual disk drive).

In response to the request to read the first sector of the hard disk, the MSC Digital Camera is believed to send a 512 byte sector of information to the host PC. This 512 byte sector appears to contain the information of a master boot record (MBR), including partition information, which indicates the location of, for example, a boot sector. The MBR and the boot sector of the MSC Digital Camera, like the example given in the written description, are believed to include the drive type, the starting position and the length of the file allocation table (FAT), the number of sectors, etc

Documents and things that relate to infringement as pointed out above include, but are not limited to, the patents-in-suit and their respective file histories, the devices made by the Camera Manufacturers that are configurable to operate as a MSC Digital Camera and/or as a PTP Digital Camera, including the devices specifically identified in this response, Universal Serial Bus Specification, Revision 2.0, Universal Serial Bus Common Class Specification, Revision 1.0, Universal Serial Bus Mass Storage Class Specification Overview, Revision 1.2, Universal Serial Bus Mass Storage Class Bulk-Only Transport, Revision 1.0, USB Still Image Capture Device Definition, Revision 1.0, SCSI Block Commands-2 (SBC-2) (T10/1417-D) and/ or SCSI Block Commands - 3 (SBC-3) (T10/1799-D), PIMA 15740:2000, Picture Transfer Protocol (PTP) for Digital Still Photography Devices, and/or ISO 15740:2005, Picture Transfer Protocol (PTP) for Digital Still Photography Devices.

Additional documents that may relate or refer to the infringement of the patents in suit by products manufactured and/or sold by the parties in suit include documents which may be found in the following ranges: PAP0000377-PAP0000509, PAP0018972-PAP0019046,

EXHIBIT C

PAP0000920-PAP0001021, PAP 0019082-PAP0019155, PAP0000042-PAP0000106,

PAP0019239-PAP0019285, PAP0010286-PAP0019313, PAP0001918-PAP0002010,

PAP0021190-PAP0021244, PAP0001622-PAP0001688, PAP0021128-PAP0021182,

PAP0000107-PAP0000184, PAP0019314-PAP0019367.

**INTERROGATORY NO. 2:**

For each asserted claim of the Patents-in-Suit, if you assert infringement under the doctrine of equivalents, state in full the basis for your contention that each accused product performs substantially the same function in substantially the same way to obtain the same result as the subject matter claimed in the patent, describe the range of equivalents to which you contend the claimed invention is entitled, and state in full the basis for your contention that the claimed invention is entitled to such range of equivalents.

**ANSWER:**

Papst objects that Interrogatory No. 2 is premature to the extent that this interrogatory

seeks information and responses inconsistent with the dates set in the Second Practice and

Procedure Order, Docket No. 36 (April 8, 2008) ("Order"). In the Order, at Paragraph 17, the

Court orders that: "Papst shall file its asserted claims and infringement contentions no later than

May 28, 2008." Papst reserves the right to present its asserted claims and infringement contentions

at the time specified by the Order. Also, Papst reserves the right to amend or supplement the

present response as the parties comply with the disclosure, briefing, and hearing schedule

concerning claim construction as set forth in the Order. Papst further reserves the right to amend

or supplement the present response after such time as the Court provides any rulings concerning

the scope of the claims of the patents-in-suit.

Papst also objects that this interrogatory is premature in that Papst served Papst Licensing

GmbH & Co. KG's First Joint Set Of Interrogatories To Defendants on the Camera Manufacturers

on April 9, 2008. These interrogatories seek, among other things, information concerning USB

descriptors and information regarding which SCSI Block Commands and which PTP Commands

are supported by each device.  Such information is relevant to the present responses.  Papst does

not expect responses from Camera Manufacturers, however, until after service of this

interrogatory response.  Also, at the time of this response, the Camera Manufacturers have not

provided design documentation, nor any detailed product specifications, nor software code, for

their digital cameras (Papst received a letter indicating that it would receive tens of thousands of

documents on the day that these responses are due, but Papst has not had an opportunity to review

those documents yet).  Nevertheless, and without waiving any of the objections stated herein,

Papst provides its responses below based on currently available information.  Papst reserves the

right to amend or supplement this response after it receives and evaluates any additional

information as may become known as discovery progresses in this case.

Based on information currently known to Papst, Papst contends that the asserted claims are

literally infringed.  However, at this point, the Camera Manufacturers have not provided their

claim interpretation contentions or Markman briefs.  Papst reserves the right to supplement or

otherwise amend this response as discovery in this case progresses, and as the claim construction

process in this case progresses.


**INTERROGATORY NO. 3**

If you contend that the Camera Manufacturers have infringed the Patents-in-Suit indirectly,
state in full the basis for that contention by, without limitation, describing each act performed by
each Camera Manufacturer which you contend induced or contributed to infringement, the direct
infringement allegedly induced or contributed to by each such act, including the identity of the
person committing the direct infringement, and how each such act of inducement or contribution
resulted in such direct infringement.

**ANSWER:**

Papst objects that Interrogatory No. 3 is premature to the extent that this interrogatory

seeks information and responses inconsistent with the dates set in the Second Practice and

Procedure Order, Docket No. 36 (April 8, 2008) ("Order").  In the Order, at Paragraph 17, the

Court orders that: "Papst shall file its asserted claims and infringement contentions no later than May 28, 2008." Papst reserves the right to present its asserted claims and infringement contentions at the time specified by the Order. Also, Papst reserves the right to amend or supplement the present response as the parties comply with the disclosure, briefing, and hearing schedule concerning claim construction as set forth in the Order. Papst further reserves the right to amend or supplement the present response after such time as the Court provides any rulings concerning the scope of the claims of the patents-in-suit.

Papst also objects that this interrogatory is premature in that Papst served <u>Papst Licensing GmbH & Co. KG's First Joint Set Of Interrogatories To Defendants</u> on the Camera Manufacturers on April 9, 2008. These interrogatories seek, among other things, information concerning USB descriptors and information regarding which SCSI Block Commands and which PTP Commands are supported by each device. Such information is relevant to the present responses. Papst does not expect responses from Camera Manufacturers, however, until after service of this interrogatory response. Also, at the time of this response, the Camera Manufacturers have not provided design documentation, nor any detailed product specifications, nor software code, for their digital cameras (Papst received a letter indicating that it would receive tens of thousands of documents on the day that these responses are due, but Papst has not had an opportunity to review those documents yet). Nevertheless, and without waiving any of the objections stated herein, Papst provides its responses below based on currently available information. Papst reserves the right to amend or supplement this response after it receives and evaluates any additional information as may become known as discovery progresses in this case.

Papst objects to the extent that Interrogatory No.3 could be read to call for a claim chart for each and every potentially infringing device. Such a requirement would be unduly burdensome, as each set of claim charts would be several pages long, and there are hundreds of digital cameras at issue in this case. Also, as set forth above, Papst has served discovery requests on the Camera Manufacturers, the responses to which are expected to be highly relevant to the preparation of claim charts, but are not available at the time of service of this response. Nevertheless, and without

waiving any of the objections stated herein, in the present response, Papst provides claim charts for two representative devices: 1) digital cameras configured to operate in USB Mass Storage mode ("Mass Storage Class Digital Cameras," or "MSC Digital Cameras"); and 2) digital cameras configured to operate in PTP mode ("PTP Digital Cameras'). Papst believes that discovery to be provided by the Camera Manufacturers will confirm that most, if not all, of the digital cameras-in-suit may be configured to operate as MSC Digital Cameras and as PTP Digital Cameras.

Papst incorporates the response to Interrogatory No. 1, above, by reference as if fully restated herein. Papst asserts that the apparatus claims are directly infringed by the Digital Cameras-in-suit. However, at this point, the Camera Manufacturers have not provided their claim interpretation contentions or Markman briefs. Papst reserves the right to supplement or otherwise amend this response as discovery in this case progresses, and as the claim construction process in this case progresses.

Additionally, a reasonable opportunity for discovery is likely to yield evidence relating to whether the Camera Manufacturers had or have the requisite intent to induce the infringement of method claims 14 and 15 of the '399 patent, and method claim 18 of the '449 patent. The Digital Cameras-in-suit, on their own, do not perform the step of: "interfacing of the host device with a first connecting device of the interface device via the multi-purpose interface of the host device;" as recited in claim 14 of the '399 patent and claim 18 of the '449 patent. Also, the Digital Cameras-in-suit, on their own, do not perform the step of: "inquiring by the host device at the interface device as to the type of device to which the multi-purpose interface of the host device is attached;" as recited in claim 14 of the '399 patent and claim 18 of the '449 patent. However, the owners manuals and other documentation provided by the Camera Manufacturers instruct the end users of the Digital Cameras-in-suit to connect the cameras to host PCs in such a way that the steps

identified above will be performed. Based on this evidence, the Camera Manufacturers intended to cause in the U.S. the actual steps that constitute direct infringement.

In addition, Papst gave notice to each of the Camera Manufacturers that the Digital Cameras-in-suit, when used in as directed in the user manuals provided with those devices, infringe the patents-in-suit. The notice provided by Papst is relevant to each Camera Manufacturer's state of mind. However, the Camera Manufacturers have not, to date, provided discovery regarding their state of mind regarding their actions vis-à-vis the patents-in-suit.

**INTERROGATORY NO. 4**

State what Papst contends to be the proper construction of each claim of the Patents-in-Suit and state in full the basis for each such contention by, without limitation, stating the substance of the proposed construction, identifying any special or uncommon meanings of words or phrases in the claim, and identifying all intrinsic and extrinsic evidence you contend supports your proposed construction.

**ANSWER:**

Papst objects that Interrogatory No. 4 is premature to the extent that this interrogatory seeks information and responses inconsistent with the dates set in the Second Practice and Procedure Order, Docket No. 36 (April 8, 2008) ("Order"). In the Order, at Paragraph 17, the Court orders that: "Papst shall file its asserted claims and infringement contentions no later than May 28, 2008." At Paragraph 20, the Court orders that: "Papst shall file its Markman hearing brief no later than July 9, 2008," and "Papst may reply no later than July 30, 2008." Papst reserves the right to present its asserted claims, infringement contentions, and proposed claim construction at the times specified by the Order. Also, Papst reserves the right to amend or supplement the present response as the parties comply with the disclosure, briefing, and hearing schedule concerning claim construction as set forth in the Order. Papst further reserves the right to amend or

supplement the present response after such time as the Court provides any rulings concerning the

scope of the claims of the patents-in-suit. Nevertheless, and without waiving any of the objections

stated herein, Papst provides its response based on currently available information.

The response to Interrogatory No. 1, above, is incorporated herein by reference. The

remarks concerning the interpretation of claim terms stated in that response are adopted herein.

**INTERROGATORY NO. 5**

Identify the specific dates of conception and actual reduction to practice for each claim of
the Patents-in-Suit (both within the United States and outside of the United States if earlier) and
state in full the basis for each such contention, including an identification of each person
witnessing and/or participating in the acts of conception and reduction to practice, an identification
of any other corroborating evidence, and a statement as to where the alleged acts of conception and
reduction to practice occurred.

**ANSWER:**

Papst objects to this interrogatory as overly broad, unduly burdensome, and as calling for

irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

Papst further objects to this interrogatory to the extent that it calls for a legal conclusion.

Subject to the general objections and the specific objections above which are incorporated

herein, and without waiving any of the above objections, Papst answers as follows. On January 2nd





Papst will be providing documents and things that corroborate Mr. Tasler's work to develop his interface device, and will identify those documents that concern the subject matter of this interrogatory.

Papst plans to later amend and/or supplement its responses, if necessary, with additional information based upon further investigation and discovery, and to rely upon such information in the course of this action and at trial.

**INTERROGATORY NO. 6**

Describe all transfers of ownership, interest or assignment of each of the Patents-in-Suit by identifying the date of the transfer, the consideration for the transfer, the persons or entities involved, and all documents reflecting or relating to the transfer.

**ANSWER:**

Subject to the general objections above which are incorporated herein and without waiving any of the above objections, Papst answers as follows. On June 15, 2001, Michael Tasler, in consideration of one dollar "and other good and valuable consideration" assigned to Labortechnik Tasler GmbH, the entire right, title and interest in all U.S. patent applications and the corresponding Patents issued for the invention described as "Flexible Interface" at that time. The specific patent applications thereby assigned include Application No. 09/331,002 which issued as U.S. Patent No. 6,470,399, and Application10/219,105 which issued as U.S. Patent No. 6,895, 449. This assignment document was recorded at the United States Patent Office on July 23, 2001 and has a corresponding reel/frame number of 012023/0515.

On February 28, 2006, LTT Labortechnik Tasler GmbH entered into a contract with Papst Licensing GmbH & Co. KG whereby LTT Labortechnik Tasler GmbH agreed to assign its rights to U.S. Patent No. 6,470,399 and U.S. Patent No. 6,895,449, among other patents and patent applications, in exchange for certain compensation. The details of the compensation are found in the contract that Mr. Tasler signed on February 28, 2006 which Papst will designate under Rule 33(d) after the document is produced. Papst further states that a previous draft of this contract was previously produced to Casio at PAP0013103-PAP0013115.

On March 8, 2006, LTT Labortechnik Tasler GmbH sold, assigned and transferred to Papst Licensing GmbH & Co. KG its entire right, title and interest in and to: United States Patent No. 6,470,399 B1, United States Patent No. 6,895,449 B2, and United States Patent Application No. 11/078,778. This assignment document was recorded at the United States Patent Office on March 15, 2006.

**INTERROGATORY NO. 7**

For each Patent-in-Suit, describe in detail where, when, how, and by whom the subject matter described in each of its claims was publicly used, publicly disclosed, offered for sale, or sold prior to the filing date of the Patent-in-Suit, along with the factual basis for such dates and all facts and circumstances relating thereto, including, but not limited to, by or to whom such subject matter was first used, first disclosed, first offered for sale, or first sold, and identify each such person involved in such acts (and state each person's role) and identify each document or thing which refers or relates to such acts.

**ANSWER:**

Papst objects on the ground that the phrase "the subject matter described in each of its claims" and "filing date of the Patent-in-Suit" is vague and ambiguous in the context of this interrogatory. Papst objects to this interrogatory as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Papst further objects to the extent that this interrogatory calls for a legal conclusion. Subject to the general and specific objections above which are incorporated herein, and without waiving any of the above objections, Papst answers as follows. Papst is unaware of any public use,

public disclosure, offer for sale or sale of a Tasler product covered by the Patents-In-Suit before

the earliest priority filing date of the Patents-In-Suit of March 4, 1997. From January, 1996 to

# MATERIAL
# REDACTED

incorporated by reference herein

 If further information become available that is responsive to this interrogatory, Papst plans

to amend and/or supplement its responses, if necessary, with additional information based upon

further investigation and discovery, and to rely upon such information in the course of this action

and at trial.

**INTERROGATORY NO. 8**

 State in detail Papst's contentions, and the factual basis for such contentions, as to any
"objective evidence" or "secondary considerations" of any alleged non-obviousness of any of the
claims of each Patent-in-Suit in accordance with, for example, *Graham v. John Deer Co.*, 383 U.S.
1, 17 (1966), identify each person with knowledge of such prior art or facts, and identify each
document or thing which refers or relates to such prior art or such facts.

**ANSWER:**

 Papst objects that this interrogatory is premature in that Defendants have not fully

responded to the discovery requests that Papst has served on Defendants. For example, at the time

of this response, Defendants have not provided any evidence of their research and development

documents which will likely demonstrate a long felt need for the solution addressed by the

invention and the failure of others to solve the need addressed by the invention. Papst further

objects on the ground that the phrases "identify each person with knowledge of such prior art" and

"identify each document or thing which refers or relates to such prior art" is vague and ambiguous

in the context of this interrogatory. Papst reserves the right to amend or supplement the present

responses after it receives and evaluates any further substantive responses from Defendants.

Subject to the general and specific objections above which are incorporated herein and without waiving any of the above objections, Papst responds as follows. On January 2nd or 3rd,



Further, Casio and other defendants to these proceedings have identified a significant amount of prior art, such as digital cameras allegedly made by Kodak and Casio, that incorporated methods of connecting digital cameras and other interface devices to personal computers. These prior art devices did not operate in accordance with the invention, but typically required, for example, the loading of a specific software driver on the PC. Camera manufacturers continued to sell cameras having a similar design until approximately early 2000 when it is believed that they switched their camera designs so that from then on, they are covered by the patents in suit. It is believed that when they adopted the new designs covered by the claimed invention, the cameras experienced exceptional commercial success. Based, for example, on this set of facts, it is also believed likely that documents from the defendants will show the following secondary indices of nonobviousness, such as, (1) long felt need for the invention's commercial success of the claimed invention, (2) the attempt and failure of others to make the claimed inventions, (3) skepticism of the claimed inventions by experts, (4) praise by others of the claimed inventions, (5) teaching away of the

claimed inventions by others, (6) copying of the claimed inventions by others, (7) experts or

persons of ordinary skill in the field of the inventions expressing surprise at the making of the

claimed inventions, (8) the inventor proceeded contrary to accepted wisdom, and (9) the claimed

inventions achieved unexpected results..

For example, Papst contends that documents produced thus far (and documents to be later



### INTERROGATORY NO. 9

State in detail each argument, claim, or contention that has ever been asserted by any entity that any claim of the Patents-in-Suit is invalid, unenforceable, or not infringed, identify the party making such argument, claim or contention, identify all prior art asserted in each such argument, claim, or contention, identify each person having knowledge of facts relating to each argument, claim, or contention, and identify each document or thing which relates to such facts.

### ANSWER:

Papst objects to this interrogatory as overly broad, unduly burdensome, and as calling for

irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

Papst further objects to this interrogatory to the extent that it calls for information protected by any

applicable privilege or doctrine, including without limitation the attorney-client privilege, the

work product doctrine and/or information pertaining to Papst counsel's mental impressions and/or

trial preparation materials, any jointly shared privilege, and other protections afforded by Rule

26(b)(4)(B). Subject to all the general and specific objections above which are incorporated herein

and without waiving any of the above objections, non-privileged documents that identify the arguments, claims and contentions by specific third-parties that certain claims of the Patents-In-Suit are invalid, unenforceable, or not infringed have been provided to one of the Camera Manufactures in this action, Casio, and further documents will be produced in response to defendants' production requests. Pursuant to Rule 33(d), Papst previously identified such documents to Casio. See, Ex. A attached. Papst further states that it soon will be producing additional such documents responsive to this interrogatory, and also will identify those documents under Rule 33(d). Papst asserts that all such documents are protected in accordance with Rule 802 of the Federal Rules of Evidence. Papst further states that Casio's original and supplemental answers to interrogatories served on Papst in United States District Court for the District of Columbia, Docket No. 06-cv-1751, have further identified its arguments, claims and contentions that the claims of the Patents-in-Suit are invalid, unenforceable and/or not infringed. Papst assumes that Casio has already shared its original and supplemental answers to interrogatories with all of the Camera Manufacturers by this time given the Court's orders requiring cooperation between the Defendants. If not, Papst will produce Casio's interrogatory answers to the Camera Manufacturers upon written request. Papst incorporates by reference herein its answers to Interrogatory Nos. 1, 3 and 4 above.

**INTERROGATORY NO. 10**

Separately for each asserted claim, state the date on which Papst first became aware that each Camera Manufacturer was allegedly infringing each such claim and the circumstances surrounding Papst's acquisition of such knowledge, identify each person who became aware that each Camera Manufacturer was allegedly or might be infringing the Patents-in-Suit, identify each document or thing which refers or relates to such facts, and explain all of the reasons for any delay between the date on which Papst first became aware of the alleged infringement and the date Papst filed suit against each Camera Manufacturer.

**ANSWER:**

Papst objects to this interrogatory as overly broad, unduly burdensome, and as calling for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Papst further objects to this interrogatory to the extent that it calls for information protected by any applicable privilege or doctrine, including without limitation the attorney-client privilege, the work product doctrine and/or information pertaining to Papst counsel's mental impressions and/or trial preparation materials, any jointly shared privilege, and other protections afforded by Rule 26(b)(4)(B). Papst further objects on the basis that the phrases "the date on which Papst first became aware" and "each person who became aware that each Camera Manufacturer was allegedly or might be infringing the Patents-In-Suit" are vague and ambiguous in the context of this interrogatory. Papst further objects to this interrogatory on the grounds that the requested information concerns the doctrine of laches which is irrelevant in this case because Papst did not learn of the patents-in-suit until some unknown time in 2004 at the earliest and because Papst was not assigned the rights to enforce the Patents-In-Suit until 2006. *See, e.g., A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc)(A presumption of laches only arises "upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity.").

Subject to all the general and specific objections above which are incorporated herein and without waiving any of the above objections, Papst does not know when it specifically first became aware that each Camera Manufacturer was allegedly infringing each claim, but it would have been sometime between 2004 and the time each Camera Manufacturer was provided with its written notice of infringement by Papst's attorneys, Welsh & Katz, Ltd. Papst's attorneys provided Casio Inc., the Hewlett-Packard Company, the Olympus Corporation, and the Samsung Corporation with written notice of infringement of its products on March 14, 2006. Papst's

EXHIBIT C

attorneys provided Fuji Photo Film USA, Inc. with written notice of infringement of its products

on March 31, 2006. Papst's attorneys provided Panasonic Corporation of North America and

Matsushita Electric Ind. Co., Ltd. with written notice of infringement of its products on April 26,

2006. Papst's attorneys provided Ricoh Company Ltd. with written notice of infringement of its

products on April 28, 2006.

AS TO OBJECTIONS:

Dated: May 7, 2008

/s/ Jerold B. Schnayer
James P. White
Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza • 22nd Floor
Chicago, Illinois 60606
 (312) 655-1500

Robert F. Muse
Joshua A. Levy
Kerry C. Dent
STEIN MITCHELL & MEZINES, LLP
1100 Connecticut Ave, NW
Washington, D.C. 20036
(202) 737-7777
**Attorneys for Papst Licensing GmbH & Co. KG**

EXHIBIT C

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing PAPST'S OBJECTIONS AND ANSWERS TO CAMERA MANUFACTURERS' FIRST SET OF INTERROGATORIES (NOS. 1-10) was caused to be served on this the 7th day of May, 2008 upon the attorneys for the Camera Manufacturers via e-mail in .pdf format as follows:

### *For The Casio Parties:*
Laura Krawczyk
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6000
Fax: (212) 309-6001
lkrawczyk@morganlewis.com

J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
jkfee@morganlewis.com

Scott D. Stimpson
The Law Office of Scott Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
stimpsonlaw@gmail.com

### *For The Samsung Parties:*
Patrick J. Kelleher
Drinker Biddle Gardner Carton
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
Phone: (312) 569-1375
Fax: (312) 569-3375
Patrick.kelleher@dbr.com

EXHIBIT C

***For The Fujifilm Parties:***
Steven J. Routh
Sten A. Jensen
John R. Inge
Robert Wolinsky
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone: (202) 637-5600
Fax: (202) 637-5910
sjrouth@hhlaw.com
sajensen@hhlaw.com
JRInge@HHLAW.com
RBWolinsky@HHLAW.com


***For the Olympus Parties:***
Richard de Bodo
Rachel M. Cappoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone: (310) 785-4694
Fax: (310) 785-4601
rdebodo@hhlaw.com
rmcapoccia@hhlaw.com


***For The Matsushita and Victory Company of Japan Parties:***
Richard de Bodo
Rachel M. Capoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone: (310) 785-4694
Fax: (310) 785-4601
rdebodo@hhlaw.com
rmcapoccia@hhlaw.com

88

EXHIBIT C

**_For the Ricoh Parties_**:
Paul Devinsky
MCDERMOTT, WILL & EMERY
600 13th Street, NW
Washington, DC 20005-3096
(202) 756-8369
Fax: (202) 756-8087
Email: pdevinsky@mwe.com


**_For Hewlett-Packard_**:
Heather N. Mewes
Fenwick & West, LLP
555 California St., 12th Floor
San Francisco, CA 94104
(415) 875-2300
hmewes@fenwick.com


                    /s/ Jerold B. Schnayer
                    Attorney for Papst Licensing GmbH & Co. KG

EXHIBIT C

EXHIBIT A

A. SIDNEY KATZ
RICHARD L. WOOD*
JEROLD B. SCHNAYER
JOSEPH R. MARCUS
GERALD S. SCHUR
GERALD T. SHEKLETON
JAMES A. SCHEER
DANIEL R. CHERRY
ROBERT B. BREISBLATT
JAMES P. WHITE
R. MARK HALLIGAN
HARTWELL P. MORSE, III
EDWARD P. GAMSON, PH.D.
KATHLEEN A. RHEINTGEN
THOMAS W. TOLPIN*
RICHARD W. McLAREN, JR.
ELLIOTT C. BANKENDORF
ERIC D. COHEN
JOHN L. AMBROGI
JULIE A. KATZ
JON P. CHRISTENSEN
WALTER J. KAWULA, JR.
LEONARD FRIEDMAN
STEVEN E. FELDMAN
JEFFREY W. SALMON
LOUISE T. WALSH
PAUL M. VARGO, PH.D.
JOSEPH E. CWIK

**WELSH & KATZ, LTD.**

*Attorneys at Law*

120 SOUTH RIVERSIDE PLAZA · 22ND FLOOR
CHICAGO, ILLINOIS 60606-3912

TELEPHONE (312) 655-1500
FACSIMILE (312) 655-1501

www.welshkatz.com

J. ARON CARNAHAN
ERIK B. FLOM, PH.D.
JAMES B. RADEN

RICHARD J. GURAK
DANIEL M. GURFINKEL
MICHELE S. KATZ*
BRIAN J. SODIKOFF
BRETT M. TOLPIN
GEORGE S. PAVLIK
MICHAEL A. KROL, PH.D.
SHERRY L. ROLLO
CRAIG M. KUCHII
STEPHEN P. BENSON
GREGORY J. SKONY

OF COUNSEL
LAURIE A. HAYNIE
JAMES J. MYRICK
THOMAS R. VIGIL
PHILIP D. SEGREST, JR.**
WALLACE L. OLIVER, PH.D.
LAURA A. LABEOTS, PH.D.

DONALD L. WELSH (1925-1998)

* ALSO ADMITTED IN DISTRICT OF COLUMBIA
** ALSO ADMITTED IN ALABAMA

June 29, 2007

**VIA E-MAIL**
Jeffrey Gold, Esq.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178

Re:    Casio Inc. v. Papst Licensing, Case No. 1:06 CV 011751 (GK)

Dear Jeffrey:

In response to Casio Inc. Interrogatory No. 2, Papst hereby identifies the following documents pursuant to Rule 33(d):

| Beginning Bates No. For Each Document | End Bates No. For Each Document |
|---|---|
| PAP0001093 | PAP0001355 |
| PAP0002914 | PAP0002914 |
| PAP0002915 | PAP0002919 |
| PAP0002920 | PAP0002923 |
| PAP0002924 | PAP0002929 |
| PAP0002930 | PAP0002934 |
| PAP0002935 | PAP0002935 |
| PAP0002936 | PAP0002941 |
| PAP0002942 | PAP0002960 |
| PAP0002961 | PAP0003352 |
| PAP0003353 | PAP0003353 |
| PAP0003354 | PAP0003367 |
| PAP0003368 | PAP0003474 |
| PAP0003475 | PAP0003525 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 2

| | |
|---|---|
| PAP0003526 | PAP0003667 |
| PAP0003668 | PAP0003669 |
| PAP0003670 | PAP0003670 |
| PAP0003671 | PAP0003676 |
| PAP0003677 | PAP0003723 |
| PAP0003724 | PAP0003724 |
| PAP0003725 | PAP0004091 |
| PAP0004092 | PAP0004094 |
| PAP0004095 | PAP0004098 |
| PAP0004099 | PAP0004102 |
| PAP0004103 | PAP0004105 |
| PAP0004106 | PAP0004108 |
| PAP0004109 | PAP0004110 |
| PAP0004111 | PAP0004113 |
| PAP0004114 | PAP0004114 |
| PAP0004115 | PAP0004117 |
| PAP0004118 | PAP0004120 |
| PAP0004121 | PAP0004124 |
| PAP0004125 | PAP0004127 |
| PAP0004128 | PAP0004129 |
| PAP0004130 | PAP0004131 |
| PAP0004132 | PAP0004134 |
| PAP0004135 | PAP0004136 |
| PAP0004137 | PAP0004142 |
| PAP0005150 | PAP0005159 |
| PAP0005160 | PAP0005198 |
| PAP0005199 | PAP0005209 |
| PAP0005210 | PAP0005235 |
| PAP0005236 | PAP0005242 |
| PAP0005243 | PAP0005263 |
| PAP0005264 | PAP0005275 |
| PAP0005276 | PAP0005288 |
| PAP0005289 | PAP0005296 |
| PAP0005297 | PAP0005427 |
| PAP0005428 | PAP0005529 |
| PAP0005530 | PAP0005537 |
| PAP0005538 | PAP0005560 |
| PAP0005561 | PAP0005594 |
| PAP0005595 | PAP0005621 |
| PAP0005622 | PAP0005633 |
| PAP0005634 | PAP0005641 |
| PAP0005642 | PAP0005665 |
| PAP0005666 | PAP0005690 |
| PAP0005691 | PAP0005706 |
| PAP0005707 | PAP0005718 |
| PAP0005719 | PAP0005730 |
| PAP0005731 | PAP0005744 |
| PAP0005745 | PAP0005758 |
| PAP0005759 | PAP0005772 |
| PAP0005773 | PAP0005780 |
| PAP0005781 | PAP0005804 |
| PAP0005805 | PAP0005827 |
| PAP0005828 | PAP0005836 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 3

| | |
|---|---|
| PAP0005837 | PAP0005846 |
| PAP0005847 | PAP0005859 |
| PAP0005860 | PAP0005882 |
| PAP0005883 | PAP0005898 |
| PAP0005899 | PAP0005926 |
| PAP0005927 | PAP0005942 |
| PAP0005943 | PAP0005953 |
| PAP0005954 | PAP0005962 |
| PAP0005963 | PAP0005988 |
| PAP0005989 | PAP0005995 |
| PAP0005996 | PAP0006008 |
| PAP0006009 | PAP0006036 |
| PAP0006037 | PAP0006046 |
| PAP0006047 | PAP0006106 |
| PAP0006107 | PAP0006115 |
| PAP0006116 | PAP0006133 |
| PAP0006134 | PAP0006151 |
| PAP0006152 | PAP0006164 |
| PAP0006165 | PAP0006181 |
| PAP0006182 | PAP0006209 |
| PAP0006210 | PAP0006219 |
| PAP0006220 | PAP0006253 |
| PAP0006254 | PAP0006261 |
| PAP0006262 | PAP0006274 |
| PAP0006275 | PAP0006328 |
| PAP0006329 | PAP0006448 |
| PAP0006449 | PAP0006459 |
| PAP0006460 | PAP0006486 |
| PAP0006487 | PAP0006605 |
| PAP0006606 | PAP0006621 |
| PAP0006622 | PAP0006634 |
| PAP0006635 | PAP0006674 |
| PAP0006675 | PAP0006724 |
| PAP0006725 | PAP0006821 |
| PAP0006822 | PAP0006838 |
| PAP0006839 | PAP0006855 |
| PAP0006856 | PAP0006862 |
| PAP0006863 | PAP0006873 |
| PAP0006874 | PAP0006885 |
| PAP0006886 | PAP0006901 |
| PAP0006902 | PAP0006999 |
| PAP0007000 | PAP0007021 |
| PAP0007032 | PAP0007055 |
| PAP0007066 | PAP0007087 |
| PAP0007863 | PAP0008130 |
| PAP0008131 | PAP0008393 |
| PAP0013821 | PAP0013822 |
| PAP0013823 | PAP0013824 |
| PAP0013825 | PAP0013826 |
| PAP0013827 | PAP0013828 |
| PAP0013829 | PAP0013830 |
| PAP0013831 | PAP0013832 |
| PAP0013833 | PAP0013834 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 4

| | |
|---|---|
| PAP0013835 | PAP0013838 |
| PAP0013839 | PAP0013843 |
| PAP0013844 | PAP0013847 |
| PAP0013848 | PAP0013850 |
| PAP0013851 | PAP0013855 |
| PAP0013856 | PAP0013873 |

In response to Casio Inc. Interrogatory No. 4, Papst hereby identifies the following documents pursuant to Rule 33(d):

| Beginning Bates No. For Each Document | End Bates No. For Each Document |
|---|---|
| PAP0000001 | PAP0000006 |
| PAP0000007 | PAP0000007 |
| PAP0000008 | PAP0000008 |
| PAP0000009 | PAP0000009 |
| PAP0000010 | PAP0000010 |
| PAP0000011 | PAP0000011 |
| PAP0000012 | PAP0000018 |
| PAP0000019 | PAP0000025 |
| PAP0000026 | PAP0000027 |
| PAP0000028 | PAP0000029 |
| PAP0000030 | PAP0000031 |
| PAP0000032 | PAP0000033 |
| PAP0000034 | PAP0000041 |
| PAP0000042 | PAP0000042 |
| PAP0000043 | PAP0000043 |
| PAP0000044 | PAP0000046 |
| PAP0000047 | PAP0000049 |
| PAP0000050 | PAP0000054 |
| PAP0000055 | PAP0000071 |
| PAP0000072 | PAP0000073 |
| PAP0000074 | PAP0000075 |
| PAP0000076 | PAP0000076 |
| PAP0000077 | PAP0000078 |
| PAP0000079 | PAP0000081 |
| PAP0000082 | PAP0000084 |
| PAP0000085 | PAP0000085 |
| PAP0000086 | PAP0000087 |
| PAP0000088 | PAP0000089 |
| PAP0000090 | PAP0000095 |
| PAP0000096 | PAP0000098 |
| PAP0000099 | PAP0000106 |
| PAP0000107 | PAP0000107 |
| PAP0000108 | PAP0000117 |
| PAP0000118 | PAP0000119 |
| PAP0000120 | PAP0000121 |
| PAP0000122 | PAP0000124 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 5

| | |
|---|---|
| PAP0000125 | PAP0000126 |
| PAP0000127 | PAP0000127 |
| PAP0000128 | PAP0000129 |
| PAP0000130 | PAP0000131 |
| PAP0000132 | PAP0000132 |
| PAP0000133 | PAP0000137 |
| PAP0000138 | PAP0000142 |
| PAP0000143 | PAP0000155 |
| PAP0000156 | PAP0000157 |
| PAP0000158 | PAP0000158 |
| PAP0000159 | PAP0000160 |
| PAP0000161 | PAP0000172 |
| PAP0000173 | PAP0000174 |
| PAP0000175 | PAP0000175 |
| PAP0000176 | PAP0000176 |
| PAP0000177 | PAP0000184 |
| PAP0000185 | PAP0000189 |
| PAP0000190 | PAP0000190 |
| PAP0000191 | PAP0000192 |
| PAP0000193 | PAP0000197 |
| PAP0000198 | PAP0000199 |
| PAP0000200 | PAP0000201 |
| PAP0000202 | PAP0000203 |
| PAP0000204 | PAP0000205 |
| PAP0000206 | PAP0000207 |
| PAP0000208 | PAP0000216 |
| PAP0000217 | PAP0000218 |
| PAP0000219 | PAP0000222 |
| PAP0000223 | PAP0000224 |
| PAP0000225 | PAP0000226 |
| PAP0000227 | PAP0000231 |
| PAP0000232 | PAP0000232 |
| PAP0000233 | PAP0000234 |
| PAP0000235 | PAP0000236 |
| PAP0000237 | PAP0000238 |
| PAP0000239 | PAP0000241 |
| PAP0000242 | PAP0000246 |
| PAP0000247 | PAP0000252 |
| PAP0000253 | PAP0000253 |
| PAP0000254 | PAP0000255 |
| PAP0000256 | PAP0000257 |
| PAP0000258 | PAP0000259 |
| PAP0000260 | PAP0000265 |
| PAP0000266 | PAP0000269 |
| PAP0000270 | PAP0000270 |
| PAP0000271 | PAP0000276 |
| PAP0000277 | PAP0000278 |
| PAP0000279 | PAP0000279 |
| PAP0000280 | PAP0000287 |
| PAP0000288 | PAP0000288 |
| PAP0000289 | PAP0000291 |
| PAP0000292 | PAP0000292 |
| PAP0000293 | PAP0000294 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0000295 | PAP0000300 |
| PAP0000301 | PAP0000302 |
| PAP0000303 | PAP0000304 |
| PAP0000305 | PAP0000305 |
| PAP0000306 | PAP0000307 |
| PAP0000308 | PAP0000309 |
| PAP0000310 | PAP0000311 |
| PAP0000312 | PAP0000313 |
| PAP0000314 | PAP0000318 |
| PAP0000319 | PAP0000325 |
| PAP0000326 | PAP0000330 |
| PAP0000331 | PAP0000335 |
| PAP0000336 | PAP0000337 |
| PAP0000338 | PAP0000339 |
| PAP0000340 | PAP0000344 |
| PAP0000345 | PAP0000349 |
| PAP0000350 | PAP0000354 |
| PAP0000355 | PAP0000360 |
| PAP0000361 | PAP0000365 |
| PAP0000366 | PAP0000366 |
| PAP0000367 | PAP0000368 |
| PAP0000369 | PAP0000376 |
| PAP0000377 | PAP0000379 |
| PAP0000380 | PAP0000382 |
| PAP0000383 | PAP0000386 |
| PAP0000387 | PAP0000400 |
| PAP0000401 | PAP0000410 |
| PAP0000411 | PAP0000412 |
| PAP0000413 | PAP0000416 |
| PAP0000417 | PAP0000419 |
| PAP0000420 | PAP0000425 |
| PAP0000426 | PAP0000427 |
| PAP0000428 | PAP0000429 |
| PAP0000430 | PAP0000430 |
| PAP0000431 | PAP0000436 |
| PAP0000437 | PAP0000440 |
| PAP0000441 | PAP0000443 |
| PAP0000444 | PAP0000446 |
| PAP0000447 | PAP0000449 |
| PAP0000450 | PAP0000452 |
| PAP0000453 | PAP0000456 |
| PAP0000457 | PAP0000458 |
| PAP0000459 | PAP0000459 |
| PAP0000460 | PAP0000465 |
| PAP0000466 | PAP0000466 |
| PAP0000467 | PAP0000468 |
| PAP0000469 | PAP0000471 |
| PAP0000472 | PAP0000473 |
| PAP0000474 | PAP0000474 |
| PAP0000475 | PAP0000476 |
| PAP0000477 | PAP0000477 |
| PAP0000478 | PAP0000479 |
| PAP0000480 | PAP0000485 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 7

| | |
|---|---|
| PAP0000486 | PAP0000491 |
| PAP0000492 | PAP0000493 |
| PAP0000494 | PAP0000495 |
| PAP0000496 | PAP0000498 |
| PAP0000499 | PAP0000500 |
| PAP0000501 | PAP0000501 |
| PAP0000502 | PAP0000509 |
| PAP0000510 | PAP0000511 |
| PAP0000512 | PAP0000512 |
| PAP0000513 | PAP0000515 |
| PAP0000516 | PAP0000518 |
| PAP0000519 | PAP0000526 |
| PAP0000527 | PAP0000527 |
| PAP0000528 | PAP0000531 |
| PAP0000532 | PAP0000532 |
| PAP0000533 | PAP0000537 |
| PAP0000538 | PAP0000541 |
| PAP0000542 | PAP0000543 |
| PAP0000544 | PAP0000546 |
| PAP0000547 | PAP0000563 |
| PAP0000564 | PAP0000565 |
| PAP0000566 | PAP0000567 |
| PAP0000568 | PAP0000586 |
| PAP0000587 | PAP0000591 |
| PAP0000592 | PAP0000593 |
| PAP0000594 | PAP0000596 |
| PAP0000597 | PAP0000597 |
| PAP0000598 | PAP0000599 |
| PAP0000600 | PAP0000605 |
| PAP0000606 | PAP0000607 |
| PAP0000608 | PAP0000608 |
| PAP0000609 | PAP0000610 |
| PAP0000611 | PAP0000612 |
| PAP0000613 | PAP0000614 |
| PAP0000615 | PAP0000615 |
| PAP0000616 | PAP0000618 |
| PAP0000619 | PAP0000624 |
| PAP0000625 | PAP0000626 |
| PAP0000627 | PAP0000627 |
| PAP0000628 | PAP0000629 |
| PAP0000630 | PAP0000639 |
| PAP0000640 | PAP0000647 |
| PAP0000648 | PAP0000649 |
| PAP0000650 | PAP0000651 |
| PAP0000652 | PAP0000664 |
| PAP0000665 | PAP0000665 |
| PAP0000666 | PAP0000668 |
| PAP0000669 | PAP0000669 |
| PAP0000670 | PAP0000670 |
| PAP0000671 | PAP0000672 |
| PAP0000673 | PAP0000676 |
| PAP0000677 | PAP0000677 |
| PAP0000678 | PAP0000678 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 8

| | |
|---|---|
| PAP0000679 | PAP0000680 |
| PAP0000681 | PAP0000681 |
| PAP0000682 | PAP0000682 |
| PAP0000683 | PAP0000684 |
| PAP0000685 | PAP0000693 |
| PAP0000694 | PAP0000695 |
| PAP0000696 | PAP0000698 |
| PAP0000699 | PAP0000702 |
| PAP0000703 | PAP0000704 |
| PAP0000705 | PAP0000706 |
| PAP0000707 | PAP0000709 |
| PAP0000710 | PAP0000717 |
| PAP0000718 | PAP0000719 |
| PAP0000720 | PAP0000721 |
| PAP0000722 | PAP0000724 |
| PAP0000725 | PAP0000727 |
| PAP0000728 | PAP0000728 |
| PAP0000729 | PAP0000733 |
| PAP0000734 | PAP0000738 |
| PAP0000739 | PAP0000744 |
| PAP0000745 | PAP0000745 |
| PAP0000746 | PAP0000751 |
| PAP0000752 | PAP0000753 |
| PAP0000754 | PAP0000755 |
| PAP0000756 | PAP0000761 |
| PAP0000762 | PAP0000762 |
| PAP0000763 | PAP0000764 |
| PAP0000765 | PAP0000770 |
| PAP0000771 | PAP0000776 |
| PAP0000777 | PAP0000778 |
| PAP0000779 | PAP0000779 |
| PAP0000780 | PAP0000780 |
| PAP0000781 | PAP0000781 |
| PAP0000782 | PAP0000787 |
| PAP0000788 | PAP0000789 |
| PAP0000790 | PAP0000790 |
| PAP0000791 | PAP0000792 |
| PAP0000793 | PAP0000800 |
| PAP0000801 | PAP0000803 |
| PAP0000804 | PAP0000806 |
| PAP0000807 | PAP0000808 |
| PAP0000809 | PAP0000811 |
| PAP0000812 | PAP0000814 |
| PAP0000815 | PAP0000816 |
| PAP0000817 | PAP0000818 |
| PAP0000819 | PAP0000821 |
| PAP0000822 | PAP0000822 |
| PAP0000823 | PAP0000824 |
| PAP0000825 | PAP0000830 |
| PAP0000831 | PAP0000835 |
| PAP0000836 | PAP0000850 |
| PAP0000851 | PAP0000852 |
| PAP0000853 | PAP0000854 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 9

| | |
|---|---|
| PAP0000855 | PAP0000856 |
| PAP0000857 | PAP0000857 |
| PAP0000858 | PAP0000858 |
| PAP0000859 | PAP0000860 |
| PAP0000861 | PAP0000866 |
| PAP0000867 | PAP0000868 |
| PAP0000869 | PAP0000871 |
| PAP0000872 | PAP0000877 |
| PAP0000878 | PAP0000883 |
| PAP0000884 | PAP0000885 |
| PAP0000886 | PAP0000886 |
| PAP0000887 | PAP0000888 |
| PAP0000889 | PAP0000894 |
| PAP0000895 | PAP0000910 |
| PAP0000911 | PAP0000919 |
| PAP0000920 | PAP0000922 |
| PAP0000923 | PAP0000923 |
| PAP0000924 | PAP0000925 |
| PAP0000926 | PAP0000928 |
| PAP0000929 | PAP0000929 |
| PAP0000930 | PAP0000930 |
| PAP0000931 | PAP0000933 |
| PAP0000934 | PAP0000942 |
| PAP0000943 | PAP0000944 |
| PAP0000945 | PAP0000952 |
| PAP0000953 | PAP0000961 |
| PAP0000962 | PAP0000962 |
| PAP0000963 | PAP0000964 |
| PAP0000965 | PAP0000966 |
| PAP0000967 | PAP0000969 |
| PAP0000970 | PAP0000987 |
| PAP0000988 | PAP0000989 |
| PAP0000990 | PAP0000992 |
| PAP0000993 | PAP0000998 |
| PAP0000999 | PAP0000999 |
| PAP0001000 | PAP0001001 |
| PAP0001002 | PAP0001003 |
| PAP0001004 | PAP0001009 |
| PAP0001010 | PAP0001011 |
| PAP0001012 | PAP0001012 |
| PAP0001013 | PAP0001021 |
| PAP0001022 | PAP0001023 |
| PAP0001024 | PAP0001026 |
| PAP0001027 | PAP0001029 |
| PAP0001030 | PAP0001031 |
| PAP0001032 | PAP0001033 |
| PAP0001034 | PAP0001035 |
| PAP0001036 | PAP0001037 |
| PAP0001038 | PAP0001039 |
| PAP0001040 | PAP0001040 |
| PAP0001041 | PAP0001042 |
| PAP0001043 | PAP0001043 |
| PAP0001044 | PAP0001045 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 10

```
PAP0001046    PAP0001048
PAP0001049    PAP0001053
PAP0001054    PAP0001055
PAP0001056    PAP0001057
PAP0001058    PAP0001062
PAP0001063    PAP0001064
PAP0001065    PAP0001066
PAP0001067    PAP0001072
PAP0001073    PAP0001083
PAP0001084    PAP0001092
PAP0001356    PAP0001358
PAP0001359    PAP0001361
PAP0001362    PAP0001365
PAP0001366    PAP0001366
PAP0001367    PAP0001369
PAP0001370    PAP0001371
PAP0001372    PAP0001374
PAP0001375    PAP0001381
PAP0001382    PAP0001383
PAP0001384    PAP0001385
PAP0001386    PAP0001388
PAP0001389    PAP0001390
PAP0001391    PAP0001392
PAP0001393    PAP0001395
PAP0001396    PAP0001401
PAP0001402    PAP0001406
PAP0001407    PAP0001408
PAP0001409    PAP0001409
PAP0001410    PAP0001410
PAP0001411    PAP0001418
PAP0001419    PAP0001429
PAP0001430    PAP0001431
PAP0001432    PAP0001433
PAP0001434    PAP0001444
PAP0001445    PAP0001446
PAP0001447    PAP0001447
PAP0001448    PAP0001458
PAP0001459    PAP0001459
PAP0001460    PAP0001460
PAP0001461    PAP0001461
PAP0001462    PAP0001464
PAP0001465    PAP0001466
PAP0001467    PAP0001468
PAP0001469    PAP0001471
PAP0001472    PAP0001476
PAP0001477    PAP0001478
PAP0001479    PAP0001480
PAP0001481    PAP0001482
PAP0001483    PAP0001484
PAP0001485    PAP0001486
PAP0001487    PAP0001492
PAP0001493    PAP0001494
PAP0001495    PAP0001497
```

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0001498 | PAP0001502 |
| PAP0001503 | PAP0001506 |
| PAP0001507 | PAP0001507 |
| PAP0001508 | PAP0001509 |
| PAP0001510 | PAP0001512 |
| PAP0001513 | PAP0001514 |
| PAP0001515 | PAP0001516 |
| PAP0001517 | PAP0001521 |
| PAP0001522 | PAP0001524 |
| PAP0001525 | PAP0001526 |
| PAP0001527 | PAP0001527 |
| PAP0001528 | PAP0001529 |
| PAP0001530 | PAP0001535 |
| PAP0001536 | PAP0001537 |
| PAP0001538 | PAP0001540 |
| PAP0001541 | PAP0001553 |
| PAP0001554 | PAP0001621 |
| PAP0001622 | PAP0001622 |
| PAP0001623 | PAP0001625 |
| PAP0001626 | PAP0001626 |
| PAP0001627 | PAP0001629 |
| PAP0001630 | PAP0001632 |
| PAP0001633 | PAP0001637 |
| PAP0001638 | PAP0001642 |
| PAP0001643 | PAP0001644 |
| PAP0001645 | PAP0001649 |
| PAP0001650 | PAP0001651 |
| PAP0001652 | PAP0001652 |
| PAP0001653 | PAP0001657 |
| PAP0001658 | PAP0001659 |
| PAP0001660 | PAP0001660 |
| PAP0001661 | PAP0001665 |
| PAP0001666 | PAP0001671 |
| PAP0001672 | PAP0001676 |
| PAP0001677 | PAP0001684 |
| PAP0001685 | PAP0001685 |
| PAP0001686 | PAP0001688 |
| PAP0001689 | PAP0001693 |
| PAP0001694 | PAP0001694 |
| PAP0001695 | PAP0001695 |
| PAP0001696 | PAP0001699 |
| PAP0001700 | PAP0001710 |
| PAP0001711 | PAP0001716 |
| PAP0001717 | PAP0001718 |
| PAP0001719 | PAP0001722 |
| PAP0001723 | PAP0001728 |
| PAP0001729 | PAP0001729 |
| PAP0001730 | PAP0001735 |
| PAP0001736 | PAP0001738 |
| PAP0001739 | PAP0001740 |
| PAP0001741 | PAP0001762 |
| PAP0001763 | PAP0001774 |
| PAP0001775 | PAP0001776 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0001777 | PAP0001778 |
| PAP0001779 | PAP0001788 |
| PAP0001789 | PAP0001800 |
| PAP0001801 | PAP0001803 |
| PAP0001804 | PAP0001808 |
| PAP0001809 | PAP0001809 |
| PAP0001810 | PAP0001810 |
| PAP0001811 | PAP0001814 |
| PAP0001815 | PAP0001818 |
| PAP0001819 | PAP0001819 |
| PAP0001820 | PAP0001820 |
| PAP0001821 | PAP0001824 |
| PAP0001825 | PAP0001825 |
| PAP0001826 | PAP0001826 |
| PAP0001827 | PAP0001840 |
| PAP0001841 | PAP0001842 |
| PAP0001843 | PAP0001843 |
| PAP0001844 | PAP0001848 |
| PAP0001849 | PAP0001849 |
| PAP0001850 | PAP0001851 |
| PAP0001852 | PAP0001853 |
| PAP0001854 | PAP0001855 |
| PAP0001856 | PAP0001857 |
| PAP0001858 | PAP0001864 |
| PAP0001865 | PAP0001866 |
| PAP0001867 | PAP0001868 |
| PAP0001869 | PAP0001877 |
| PAP0001878 | PAP0001879 |
| PAP0001880 | PAP0001881 |
| PAP0001882 | PAP0001883 |
| PAP0001884 | PAP0001885 |
| PAP0001886 | PAP0001893 |
| PAP0001894 | PAP0001895 |
| PAP0001896 | PAP0001897 |
| PAP0001898 | PAP0001904 |
| PAP0001905 | PAP0001905 |
| PAP0001906 | PAP0001907 |
| PAP0001908 | PAP0001917 |
| PAP0001918 | PAP0001918 |
| PAP0001919 | PAP0001921 |
| PAP0001922 | PAP0001925 |
| PAP0001926 | PAP0001928 |
| PAP0001929 | PAP0001929 |
| PAP0001930 | PAP0001933 |
| PAP0001934 | PAP0001939 |
| PAP0001940 | PAP0001941 |
| PAP0001942 | PAP0001942 |
| PAP0001943 | PAP0001944 |
| PAP0001945 | PAP0001946 |
| PAP0001947 | PAP0001948 |
| PAP0001949 | PAP0001950 |
| PAP0001951 | PAP0001959 |
| PAP0001960 | PAP0001961 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 13

```
PAP0001962    PAP0001962
PAP0001963    PAP0001969
PAP0001970    PAP0001976
PAP0001977    PAP0001987
PAP0001988    PAP0001989
PAP0001990    PAP0001990
PAP0001991    PAP0002000
PAP0002001    PAP0002010
PAP0002014    PAP0002015
PAP0002016    PAP0002016
PAP0002017    PAP0002036
PAP0002037    PAP0002044
PAP0002045    PAP0002046
PAP0002047    PAP0002048
PAP0002049    PAP0002051
PAP0002052    PAP0002062
PAP0002063    PAP0002064
PAP0002065    PAP0002065
PAP0002066    PAP0002071
PAP0002072    PAP0002083
PAP0002084    PAP0002084
PAP0002085    PAP0002089
PAP0002090    PAP0002094
PAP0002095    PAP0002095
PAP0002096    PAP0002098
PAP0002099    PAP0002103
PAP0002104    PAP0002105
PAP0002106    PAP0002107
PAP0002108    PAP0002118
PAP0002119    PAP0002120
PAP0002121    PAP0002121
PAP0002122    PAP0002127
PAP0002128    PAP0002128
PAP0002129    PAP0002129
PAP0002130    PAP0002130
PAP0002131    PAP0002134
PAP0002135    PAP0002141
PAP0002142    PAP0002143
PAP0002144    PAP0002144
PAP0002145    PAP0002145
PAP0002146    PAP0002151
PAP0002152    PAP0002152
PAP0002153    PAP0002153
PAP0002154    PAP0002162
PAP0002163    PAP0002175
PAP0002176    PAP0002181
PAP0002182    PAP0002183
PAP0002184    PAP0002184
PAP0002185    PAP0002186
PAP0002187    PAP0002194
PAP0002195    PAP0002206
PAP0002207    PAP0002218
PAP0002219    PAP0002220
```

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0002221 | PAP0002221 |
| PAP0002222 | PAP0002223 |
| PAP0002224 | PAP0002224 |
| PAP0002225 | PAP0002237 |
| PAP0002238 | PAP0002239 |
| PAP0002240 | PAP0002240 |
| PAP0002241 | PAP0002249 |
| PAP0002250 | PAP0002260 |
| PAP0002261 | PAP0002263 |
| PAP0002264 | PAP0002264 |
| PAP0002265 | PAP0002273 |
| PAP0002274 | PAP0002275 |
| PAP0002276 | PAP0002279 |
| PAP0002280 | PAP0002281 |
| PAP0002282 | PAP0002293 |
| PAP0002294 | PAP0002294 |
| PAP0002295 | PAP0002296 |
| PAP0002297 | PAP0002297 |
| PAP0002298 | PAP0002302 |
| PAP0002303 | PAP0002304 |
| PAP0002305 | PAP0002314 |
| PAP0002315 | PAP0002315 |
| PAP0002316 | PAP0002318 |
| PAP0002319 | PAP0002321 |
| PAP0002322 | PAP0002322 |
| PAP0002323 | PAP0002324 |
| PAP0002325 | PAP0002326 |
| PAP0002327 | PAP0002334 |
| PAP0002335 | PAP0002337 |
| PAP0002338 | PAP0002338 |
| PAP0002339 | PAP0002339 |
| PAP0002340 | PAP0002342 |
| PAP0002343 | PAP0002345 |
| PAP0002346 | PAP0002348 |
| PAP0002349 | PAP0002353 |
| PAP0002354 | PAP0002354 |
| PAP0002355 | PAP0002356 |
| PAP0002357 | PAP0002357 |
| PAP0002358 | PAP0002365 |
| PAP0002366 | PAP0002368 |
| PAP0002369 | PAP0002369 |
| PAP0002370 | PAP0002370 |
| PAP0002371 | PAP0002372 |
| PAP0002373 | PAP0002378 |
| PAP0018684 | PAP0018690 |
| PAP0018691 | PAP0018694 |
| PAP0018695 | PAP0018700 |
| PAP0018701 | PAP0018701 |
| PAP0018702 | PAP0018703 |
| PAP0018704 | PAP0018705 |
| PAP0018706 | PAP0018736 |
| PAP0018737 | PAP0018745 |
| PAP0018746 | PAP0018749 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 15

| | |
|---|---|
| PAP0018752 | PAP0018753 |
| PAP0018754 | PAP0018757 |
| PAP0018758 | PAP0018760 |
| PAP0018761 | PAP0018761 |
| PAP0018762 | PAP0018765 |
| PAP0018766 | PAP0018769 |
| PAP0018774 | PAP0018775 |
| PAP0018776 | PAP0018776 |
| PAP0018777 | PAP0018780 |
| PAP0018781 | PAP0018781 |
| PAP0018782 | PAP0018786 |
| PAP0018787 | PAP0018789 |
| PAP0018790 | PAP0018796 |
| PAP0018797 | PAP0018800 |
| PAP0018801 | PAP0018804 |
| PAP0018805 | PAP0018809 |
| PAP0018810 | PAP0018811 |
| PAP0018812 | PAP0018825 |
| PAP0018826 | PAP0018827 |
| PAP0018828 | PAP0018829 |
| PAP0018830 | PAP0018831 |
| PAP0018832 | PAP0018835 |
| PAP0018836 | PAP0018839 |
| PAP0018842 | PAP0018864 |
| PAP0018865 | PAP0018866 |
| PAP0018867 | PAP0018869 |
| PAP0018870 | PAP0018872 |
| PAP0018873 | PAP0018875 |
| PAP0018876 | PAP0018877 |
| PAP0018878 | PAP0018884 |
| PAP0018885 | PAP0018886 |
| PAP0018887 | PAP0018889 |
| PAP0018890 | PAP0018891 |
| PAP0018892 | PAP0018899 |
| PAP0018900 | PAP0018905 |
| PAP0018906 | PAP0018910 |
| PAP0018911 | PAP0018913 |
| PAP0018914 | PAP0018918 |
| PAP0018919 | PAP0018921 |
| PAP0018922 | PAP0018925 |
| PAP0018926 | PAP0018929 |
| PAP0018930 | PAP0018933 |
| PAP0018934 | PAP0018936 |
| PAP0018937 | PAP0018940 |
| PAP0018941 | PAP0018943 |
| PAP0018944 | PAP0018948 |
| PAP0018949 | PAP0018951 |
| PAP0018952 | PAP0018954 |
| PAP0018955 | PAP0018956 |
| PAP0018957 | PAP0018957 |
| PAP0018958 | PAP0018959 |
| PAP0018960 | PAP0018960 |
| PAP0018961 | PAP0018962 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0018963 | PAP0018964 |
| PAP0018965 | PAP0018965 |
| PAP0018966 | PAP0018970 |
| PAP0018972 | PAP0018973 |
| PAP0018974 | PAP0018977 |
| PAP0018978 | PAP0018980 |
| PAP0018981 | PAP0018982 |
| PAP0018983 | PAP0018984 |
| PAP0018985 | PAP0018988 |
| PAP0018989 | PAP0018990 |
| PAP0018991 | PAP0018993 |
| PAP0018994 | PAP0018998 |
| PAP0018999 | PAP0019001 |
| PAP0019002 | PAP0019013 |
| PAP0019014 | PAP0019019 |
| PAP0019020 | PAP0019023 |
| PAP0019024 | PAP0019025 |
| PAP0019026 | PAP0019026 |
| PAP0019027 | PAP0019031 |
| PAP0019032 | PAP0019033 |
| PAP0019034 | PAP0019035 |
| PAP0019036 | PAP0019037 |
| PAP0019038 | PAP0019039 |
| PAP0019040 | PAP0019041 |
| PAP0019042 | PAP0019043 |
| PAP0019044 | PAP0019046 |
| PAP0019072 | PAP0019074 |
| PAP0019075 | PAP0019077 |
| PAP0019082 | PAP0019083 |
| PAP0019084 | PAP0019088 |
| PAP0019089 | PAP0019090 |
| PAP0019091 | PAP0019092 |
| PAP0019093 | PAP0019095 |
| PAP0019096 | PAP0019097 |
| PAP0019098 | PAP0019099 |
| PAP0019100 | PAP0019101 |
| PAP0019102 | PAP0019103 |
| PAP0019104 | PAP0019105 |
| PAP0019106 | PAP0019109 |
| PAP0019110 | PAP0019116 |
| PAP0019117 | PAP0019124 |
| PAP0019125 | PAP0019129 |
| PAP0019130 | PAP0019131 |
| PAP0019132 | PAP0019145 |
| PAP0019146 | PAP0019147 |
| PAP0019148 | PAP0019148 |
| PAP0019149 | PAP0019155 |
| PAP0019156 | PAP0019158 |
| PAP0019159 | PAP0019162 |
| PAP0019168 | PAP0019171 |
| PAP0019172 | PAP0019200 |
| PAP0019201 | PAP0019208 |
| PAP0019209 | PAP0019210 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0019211 | PAP0019212 |
| PAP0019213 | PAP0019216 |
| PAP0019217 | PAP0019219 |
| PAP0019220 | PAP0019220 |
| PAP0019221 | PAP0019222 |
| PAP0019223 | PAP0019225 |
| PAP0019226 | PAP0019229 |
| PAP0019230 | PAP0019236 |
| PAP0019237 | PAP0019238 |
| PAP0019239 | PAP0019245 |
| PAP0019246 | PAP0019258 |
| PAP0019259 | PAP0019260 |
| PAP0019261 | PAP0019272 |
| PAP0019273 | PAP0019274 |
| PAP0019275 | PAP0019276 |
| PAP0019277 | PAP0019280 |
| PAP0019281 | PAP0019285 |
| PAP0019286 | PAP0019313 |
| PAP0019314 | PAP0019315 |
| PAP0019316 | PAP0019317 |
| PAP0019318 | PAP0019330 |
| PAP0019331 | PAP0019339 |
| PAP0019340 | PAP0019341 |
| PAP0019342 | PAP0019343 |
| PAP0019344 | PAP0019346 |
| PAP0019347 | PAP0019355 |
| PAP0019356 | PAP0019357 |
| PAP0019358 | PAP0019362 |
| PAP0019363 | PAP0019367 |
| PAP0019368 | PAP0019369 |
| PAP0019370 | PAP0019373 |
| PAP0019374 | PAP0019375 |
| PAP0019376 | PAP0019379 |
| PAP0019380 | PAP0019381 |
| PAP0019382 | PAP0019384 |
| PAP0019385 | PAP0019389 |
| PAP0019390 | PAP0019391 |
| PAP0019392 | PAP0019393 |
| PAP0019394 | PAP0019395 |
| PAP0019396 | PAP0019397 |
| PAP0019398 | PAP0019401 |
| PAP0019402 | PAP0019405 |
| PAP0019419 | PAP0019426 |
| PAP0019427 | PAP0019429 |
| PAP0019430 | PAP0019432 |
| PAP0019433 | PAP0019436 |
| PAP0019439 | PAP0019441 |
| PAP0019442 | PAP0019444 |
| PAP0019445 | PAP0019446 |
| PAP0019447 | PAP0019449 |
| PAP0019450 | PAP0019453 |
| PAP0019454 | PAP0019466 |
| PAP0019467 | PAP0019467 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0019468 | PAP0019469 |
| PAP0019470 | PAP0019476 |
| PAP0019477 | PAP0019477 |
| PAP0019478 | PAP0019480 |
| PAP0019481 | PAP0019482 |
| PAP0019483 | PAP0019487 |
| PAP0019488 | PAP0019493 |
| PAP0019494 | PAP0019502 |
| PAP0019503 | PAP0019508 |
| PAP0019509 | PAP0019511 |
| PAP0019512 | PAP0019515 |
| PAP0019516 | PAP0019519 |
| PAP0019520 | PAP0019521 |
| PAP0019522 | PAP0019522 |
| PAP0019523 | PAP0019524 |
| PAP0019525 | PAP0019527 |
| PAP0019528 | PAP0019531 |
| PAP0019532 | PAP0019534 |
| PAP0019535 | PAP0019539 |
| PAP0019540 | PAP0019541 |
| PAP0019542 | PAP0019542 |
| PAP0019543 | PAP0019548 |
| PAP0019549 | PAP0019562 |
| PAP0019563 | PAP0019569 |
| PAP0019570 | PAP0019573 |
| PAP0019576 | PAP0019577 |
| PAP0019578 | PAP0019578 |
| PAP0019579 | PAP0019584 |
| PAP0019585 | PAP0019587 |
| PAP0019588 | PAP0019591 |
| PAP0019592 | PAP0019595 |
| PAP0020532 | PAP0020534 |
| PAP0020535 | PAP0020537 |
| PAP0020538 | PAP0020539 |
| PAP0020540 | PAP0020542 |
| PAP0020543 | PAP0020544 |
| PAP0020545 | PAP0020546 |
| PAP0020547 | PAP0020556 |
| PAP0020557 | PAP0020566 |
| PAP0020567 | PAP0020570 |
| PAP0020571 | PAP0020575 |
| PAP0020576 | PAP0020586 |
| PAP0020587 | PAP0020589 |
| PAP0020590 | PAP0020591 |
| PAP0020592 | PAP0020592 |
| PAP0020593 | PAP0020595 |
| PAP0020596 | PAP0020599 |
| PAP0020600 | PAP0020602 |
| PAP0020603 | PAP0020606 |
| PAP0020607 | PAP0020608 |
| PAP0020609 | PAP0020615 |
| PAP0020616 | PAP0020621 |
| PAP0020622 | PAP0020624 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0020625 | PAP0020627 |
| PAP0020628 | PAP0020629 |
| PAP0020630 | PAP0020631 |
| PAP0020632 | PAP0020634 |
| PAP0020635 | PAP0020638 |
| PAP0020641 | PAP0020642 |
| PAP0020643 | PAP0020643 |
| PAP0020644 | PAP0020654 |
| PAP0020655 | PAP0020656 |
| PAP0020657 | PAP0020658 |
| PAP0020659 | PAP0020660 |
| PAP0020661 | PAP0020662 |
| PAP0020663 | PAP0020663 |
| PAP0020664 | PAP0020672 |
| PAP0020673 | PAP0020674 |
| PAP0020675 | PAP0020681 |
| PAP0020682 | PAP0020688 |
| PAP0020689 | PAP0020693 |
| PAP0020694 | PAP0020700 |
| PAP0020701 | PAP0020709 |
| PAP0020710 | PAP0020711 |
| PAP0020712 | PAP0020715 |
| PAP0020716 | PAP0020718 |
| PAP0020719 | PAP0020726 |
| PAP0020727 | PAP0020728 |
| PAP0020729 | PAP0020732 |
| PAP0020735 | PAP0020737 |
| PAP0020738 | PAP0020746 |
| PAP0020747 | PAP0020748 |
| PAP0020749 | PAP0020750 |
| PAP0020751 | PAP0020752 |
| PAP0020753 | PAP0020756 |
| PAP0020762 | PAP0020766 |
| PAP0020767 | PAP0020794 |
| PAP0020795 | PAP0020797 |
| PAP0020798 | PAP0020799 |
| PAP0020800 | PAP0020801 |
| PAP0020803 | PAP0020804 |
| PAP0020805 | PAP0020806 |
| PAP0020807 | PAP0020835 |
| PAP0020836 | PAP0020847 |
| PAP0020848 | PAP0020849 |
| PAP0020850 | PAP0020850 |
| PAP0020851 | PAP0020852 |
| PAP0020853 | PAP0020853 |
| PAP0020854 | PAP0020855 |
| PAP0020856 | PAP0020862 |
| PAP0020863 | PAP0020865 |
| PAP0020866 | PAP0020867 |
| PAP0020868 | PAP0020871 |
| PAP0020872 | PAP0020873 |
| PAP0020874 | PAP0020875 |
| PAP0020876 | PAP0020876 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 20

| | |
|---|---|
| PAP0020877 | PAP0020881 |
| PAP0020882 | PAP0020882 |
| PAP0020883 | PAP0020884 |
| PAP0020885 | PAP0020886 |
| PAP0020887 | PAP0020888 |
| PAP0020889 | PAP0020890 |
| PAP0020891 | PAP0020891 |
| PAP0020892 | PAP0020893 |
| PAP0020894 | PAP0020894 |
| PAP0020895 | PAP0020899 |
| PAP0020900 | PAP0020907 |
| PAP0020908 | PAP0020916 |
| PAP0020917 | PAP0020921 |
| PAP0020922 | PAP0020926 |
| PAP0020927 | PAP0020927 |
| PAP0020928 | PAP0020932 |
| PAP0020933 | PAP0020933 |
| PAP0020934 | PAP0020935 |
| PAP0020936 | PAP0020937 |
| PAP0020938 | PAP0020938 |
| PAP0020939 | PAP0020940 |
| PAP0020941 | PAP0020942 |
| PAP0020943 | PAP0020944 |
| PAP0020945 | PAP0020946 |
| PAP0020947 | PAP0020949 |
| PAP0020950 | PAP0020951 |
| PAP0020952 | PAP0020958 |
| PAP0020959 | PAP0020974 |
| PAP0020975 | PAP0021002 |
| PAP0021003 | PAP0021003 |
| PAP0021004 | PAP0021006 |
| PAP0021007 | PAP0021011 |
| PAP0021012 | PAP0021012 |
| PAP0021013 | PAP0021014 |
| PAP0021015 | PAP0021016 |
| PAP0021017 | PAP0021018 |
| PAP0021019 | PAP0021031 |
| PAP0021032 | PAP0021032 |
| PAP0021033 | PAP0021034 |
| PAP0021035 | PAP0021047 |
| PAP0021048 | PAP0021050 |
| PAP0021051 | PAP0021052 |
| PAP0021053 | PAP0021053 |
| PAP0021054 | PAP0021055 |
| PAP0021056 | PAP0021057 |
| PAP0021058 | PAP0021058 |
| PAP0021059 | PAP0021064 |
| PAP0021065 | PAP0021068 |
| PAP0021069 | PAP0021073 |
| PAP0021074 | PAP0021075 |
| PAP0021078 | PAP0021080 |
| PAP0021081 | PAP0021081 |
| PAP0021082 | PAP0021083 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

| | |
|---|---|
| PAP0021084 | PAP0021087 |
| PAP0021088 | PAP0021092 |
| PAP0021093 | PAP0021101 |
| PAP0021102 | PAP0021102 |
| PAP0021103 | PAP0021104 |
| PAP0021105 | PAP0021106 |
| PAP0021107 | PAP0021108 |
| PAP0021109 | PAP0021112 |
| PAP0021113 | PAP0021114 |
| PAP0021115 | PAP0021119 |
| PAP0021128 | PAP0021130 |
| PAP0021131 | PAP0021133 |
| PAP0021134 | PAP0021161 |
| PAP0021162 | PAP0021163 |
| PAP0021164 | PAP0021167 |
| PAP0021168 | PAP0021173 |
| PAP0021174 | PAP0021175 |
| PAP0021176 | PAP0021176 |
| PAP0021177 | PAP0021180 |
| PAP0021190 | PAP0021191 |
| PAP0021192 | PAP0021195 |
| PAP0021196 | PAP0021200 |
| PAP0021201 | PAP0021202 |
| PAP0021203 | PAP0021208 |
| PAP0021209 | PAP0021210 |
| PAP0021211 | PAP0021211 |
| PAP0021212 | PAP0021215 |
| PAP0021216 | PAP0021216 |
| PAP0021217 | PAP0021218 |
| PAP0021219 | PAP0021222 |
| PAP0021223 | PAP0021223 |
| PAP0021224 | PAP0021225 |
| PAP0021226 | PAP0021228 |
| PAP0021229 | PAP0021232 |
| PAP0021233 | PAP0021239 |
| PAP0021240 | PAP0021240 |
| PAP0021241 | PAP0021244 |
| PAP0021246 | PAP0021247 |
| PAP0021248 | PAP0021250 |
| PAP0021251 | PAP0021252 |
| PAP0021254 | PAP0021255 |
| PAP0021256 | PAP0021262 |
| PAP0021263 | PAP0021269 |
| PAP0021270 | PAP0021337 |
| PAP0021338 | PAP0021347 |
| PAP0021348 | PAP0021348 |
| PAP0021349 | PAP0021350 |
| PAP0021351 | PAP0021352 |
| PAP0021353 | PAP0021353 |
| PAP0021354 | PAP0021356 |
| PAP0021357 | PAP0021357 |
| PAP0021358 | PAP0021358 |
| PAP0021359 | PAP0021360 |

EXHIBIT C

# EXHIBIT A

Jeffrey Gold

June 29, 2007
Page 22

PAP0021361   PAP0021362
PAP0021363   PAP0021368

By: _____
       Joseph E. Cwik

JEC/pm
cc:     Jerold B. Schnayer
         Campbell Killefer