UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

This Document Relates To:
Casio v. Papst, 06-1751

Misc. Action No. 07-493 (RMC);
MDL Docket No. 1880

**THIRD ORDER REGARDING CASIO/PAPST DISCOVERY**

In this Multi-District Litigation ("MDL"), Papst Licensing GMBH & Co. KG ("Papst") and Casio America Inc. ("Casio USA")[1] and Casio Computer Company, Ltd. ("Casio Japan") (collectively "Casio") continue to have discovery disputes. Most recently, the Court held that Papst had waived all privileges and the work product doctrine by its untimeliness, gamesmanship, and bad faith. *See* Mem. Op. [Dkt. #82]. At the hearing that preceded that decision, the Court struck Papst's discovery requests directed to Casio but also noted that Casio could not avoid all discovery in the case. *See* First Order Regarding Casio/Papst Discovery [Dkt. #77]. Papst took that comment as *carte blanche* permission to propound new discovery demands. Papst misperceives its situation: its discovery has been stricken, the time for discovery between these parties has expired, and the Court advised Casio that it could not be unreasonable in refusing to provide necessary information to Papst. Papst, however, has no right to propound discovery: with its discovery stricken, and the time for discovery closed, it must rely on behaving in a civil and professional manner and persuading Casio or the Court that it needs additional discovery beyond that

---

[1] Casio America Inc. was formerly known as "Casio, Inc."

already provided.  Training in civil and professional conduct is a necessary part of this litigation. The facts presented by the parties in brief are as follows:[2]

1. The Court ordered the parties to meet and confer about any further discovery and to file a joint report no later than May 8, 2008.  *See* First Order Regarding Casio/Papst Discovery [Dkt. #77] at ¶ 6.

2. Casio sent a draft report to counsel for Papst on the morning of May 7 and urged a prompt response.

3. Counsel for Papst did not provide any edits or text until 6:00 p.m. on May 8, the day the joint report was due.

4. The "revision" Papst sent to counsel for Casio removed *all* of the Casio text and replaced it with Papst text.

5. Casio restored its own text, edited the report, and sent it back to counsel for Papst at 6:45 p.m., in Chicago time, where Papst's lawyers are located.  However, Jerold B. Schnayer, Papst's patent counsel who appears to be also primary litigation counsel, had left the office and sent an email to inform Casio's counsel that he could not provide additional revisions and to ask Casio to obtain an extension from the Court.  Since Casio had already expressly declined to do so, it filed an individual report that evening.

6. On the next day, May 9, Papst filed a Notice of Intent to File Papst's Proposed Discovery Plan.  It explained:

> On May 7, 2008, Papst received Casio's Proposed Joint Discovery Plan.  During the business day on May 8, 2008 negotiations between

---

[2] These are the facts as set forth in Casio's Proposed Discovery Plan [Dkt. #90] and Papst's Proposed Discovery Plan [Dkt. # 93].

> counsel for the parties ensued as to the discovery plan content. As of the close of business, the parties were still continuing their discussions on the joint discovery plan. Papst requested Casio to file a joint motion with this Court seeking a one day extension so the parties could continue their discussions and file a *joint* report as ordered by the court on May 9 [sic], 2008. Casio refused to file a joint motion and instead filed their own proposed discovery plan with the Court on May 8, 2008 at 8:45 p.m. As a result, Papst has now been forced to file its own separate plan which it will do today.

Notice of Intent to File Papst's Proposed Discovery Plan [Dkt. #92] at 1.

7.     Papst then filed its individual report on May 9, 2008, one day late. It explained:

> The Court ordered the parties to file a joint proposed discovery plan by May 8, 2008. At about 7:45 p.m. eastern time, Casio sent Papst a revised draft of a plan. Casio's revised draft made substantial and significant changes to an earlier draft plan Papst sent to Casio earlier in the day. Counsel for Papst told Casio that they needed more time to consider and address the issue with Casio, that all of Papst's secretarial staff had left, and requested Casio to file that evening a request for a one day extension of time to allow the parties further time to meet and confer and try to further minimize the issues. Casio's counsel refused and said it would file the plan that evening. Unfortunately, Casio's proposed plan did not include Papst's positions that were provided to Casio earlier in the day.

Papst's Proposed Discovery Plan [Dkt. #93] at 1.

Notably, Papst did not challenge Casio's description of events but only put its own "spin" on them. While neither parties' statements to the Court are affirmatively false, they are incomplete and thus misleading.[3]

---

[3] Papst's statements that "[d]uring the business day on May 8, 2008 negotiations between counsel for the parties ensued as to the discovery plan content. As of the close of business, the parties were still continuing their discussions on the joint discovery plan," *see* Notice of Intent to File Papst's Proposed Discovery Plan [Dkt. #92] at 1, are questionable given Casio's rendition of events. Casio's statement that counsel for Papst did not provide "any edits or text until 6:00 p.m. on May 8," *see* Casio's Proposed Discovery Plan [Dkt. #90], is questionable given Papst's allegation that the parties continued to negotiate throughout the day on May 8.

Conducting litigation in a professional and civil manner, as the Court has already directed the parties, means more than just not shouting at opposing counsel. *See, e.g.*, Second Practice and Procedure Order [Dkt. #36] ¶ 25 ("Counsel are expected to conduct themselves in a civil, polite, and professional manner at all times, particularly during discovery."); *see generally*, LCvR, App. B, D.C. Bar Voluntary Standards for Civility in Professional Conduct.[4]  It means treating the "job" of a lawyer like the old-fashioned profession that it is: one is honest with opposing

---

[4] The Preamble to the D.C. Bar Voluntary Standards for Civility in Professional Conduct explains:

> Civility in professional conduct is the responsibility of every lawyer. While lawyers have an obligation to represent clients zealously, we must also be mindful of our obligations to the administration of justice. Incivility to opposing counsel, adverse parties, judges, court personnel, and other participants in the legal process demeans the legal profession, undermines the administration of justice, and diminishes respect for both the legal process and the results of our system of justice.
>
> Our judicial system is a truth-seeking process designed to resolve human and societal problems in a rational, peaceful, and efficient manner and designed to be perceived as producing fair and just results. We must be careful to avoid actions or statements which undermine the system or the public's confidence in it.
>
> The organized bar and the judiciary, in partnership with each other, have a responsibility to promote civility in the practice of law and the administration of justice. Uncivil conduct of lawyers or judges impedes the fundamental goal of resolving disputes rationally, peacefully and efficiently. Such conduct may delay or deny justice and diminish the respect of law, which is a cornerstone of our society and our profession.
>
> Civility and professionalism are hallmarks of a learned profession dedicated to public service. These standards are designed to encourage us, as lawyers and judges, to meet our obligations of civility and professionalism, to each other, to litigants, and to the system of justice. The goal is to ensure that lawyers and judges will conduct themselves at all times, in both litigated and nonlitigated matters, with personal courtesy and professionalism in the fullest sense of those terms.

LCvR, App. B.

counsel and the court; one does not dissemble; one does not play "lawyer games" to gain a two-bit advantage at the loss of one's credibility.

On April 8, 2008, in a ruling that was consistent with Judge Kessler's ruling in 2007 before this became an MDL case, this Court held that "no further written discovery request shall be allowed between Casio and Papst." *See* Second Practice and Procedure Order [Dkt. #36] ¶ 4. The Court later found Papst's discovery requests "outrageously over the top," "absolutely stunning" in their breadth, and served in "bad faith." Casio's Proposed Discovery Plan, Ex. C, Tr. of Apr. 22, 2008 teleconference at 4, 17, & 33; Mem. Op. [Dkt. #82] at 3 n.2; *see also* First Order Regarding Casio/Papst Discovery [Dkt. #77] (denying Papst's motion to compel as overbroad and striking Papst's discovery requests). Papst has wasted its opportunities to propound legitimate discovery to Casio because its initial discovery was totally out-of-bounds and not submitted in good faith. If it wants or needs additional information form Casio, its counsel will have to act in a civil and professional manner and persuade Casio or the Court that its needs for information are real and not advanced for purposes of delay and expense. Casio is directed to similarly behave in a civil, professional, and reasonable manner. The parties are deemed to have withdrawn their proposed discovery plans and are directed to meet and confer and to file a joint proposed discovery plan (as set forth in the First Order Regarding Casio/Papst Discovery [Dkt. #77] ) no later than June 2, 2008. Casio and Papst also are advised that any further filings with the Court that fail to be complete, candid, and filed in good faith may expose counsel to contempt proceedings.

**SO ORDERED**.

Dated: May 19, 2008                                /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge