UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** _____ **This Document Relates To: Casio v. Papst, Case No. 06-1751** | **Misc. Action No. 07-493 (RMC) MDL Docket No. 1880** |

**PAPST'S REPLY IN SUPPORT OF ITS MOTION FOR
CLARIFICATION CONCERNING THE SCOPE OF WAIVER**

**INTRODUCTION**

Papst is not asking this Court to reconsider its ruling concerning waiver of privilege and work product. Rather, now that the sanction has been imposed, Papst is seeking clarification as to the scope of the waiver. The scope of the waiver was never previously addressed by either party because there was no need to address this issue until there was an actual order imposing the waiver. Papst is seeking this clarification to ensure that it fully understands this Court's order when it produces its privileged and work product documents.

Defendants contend that the waiver imposed by this Court should have virtually no limits, and that Papst should produce privileged and work product materials that have or may come into Papst's possession throughout the course of this litigation relating to the subject matter of this suit. If all Defendants were allowed unfettered access to everything in Papst's counsel's files relating to this suit, it would be extremely difficult if not impossible for Papst to effectively conduct discovery and prepare for trial. Because the sanction affirmed by this Court consisted of a monetary payment and a waiver of objections based on privilege and work product, rather than outright dismissal, Papst respectfully submits that the waiver should be fashioned so that Papst is

not completely handcuffed in its efforts to prepare its case and take it to trial. Imposing the broad waiver urged by Defendants would result in an unduly harsh sanction and undermine the integrity of the adversary system.

## ARGUMENT

### I. PAPST DOES NOT CONTINUE TO VIOLATE THIS COURT'S ORDERS

Casio's contention that Papst is continuing to violate this Court's orders is baseless, and omits key facts concerning the discovery proceedings thus far. For instance, Casio complains that Papst has not provided adequate claim interpretations for the patents in suit. (Response p. 2.) However, as explained in Papst's moving brief, Papst has made several disclosures containing detailed claim interpretations for each element of each claim in the patents in suit, and perhaps more importantly, this Court gave Papst until May 28, 2008, in which to "file its asserted claims and infringement contentions." (Doc. No. 36 par. 17.) On May 28, 2008, Papst filed its specific claim interpretations as ordered by the Court, and Casio's objections on this point are moot.[1]

Casio further condemns Papst for failing to produce all of its documents on June 10, 2007. However, Magistrate Judge Robinson's May 31, 2007 Order required Papst to "*respond* to Casio USA's initial discovery requests" within ten days of the order—not necessarily to produce the tens of thousands of responsive documents on that date. (Doc. No. 82, pp. 8-9, emphasis added.) In fact, Papst thereafter filed an unopposed motion and received this Court's permission to produce documents by June 25, 2007. (Minute Order of 6/27/07 in Case No. 06-1751.) Thereafter, on June 22, 2007, Papst served Casio with over 10,000 pages of documents in response to Casio's discovery requests, and on June 25, 2007, Papst served Casio with another

---

[1] Papst is aware that Casio claims in its Motion For Dismissal filed May 29, 2008 that the claim interpretations filed by Papst on May 28, 2008 are inadequate. Casio's contention is without merit and will be fully addressed by Papst in an Opposition to that motion to be filed later.

2

12,000 additional pages of documents. Shortly thereafter, on July 17, 2007, discovery was stayed "pending a consolidated determination by the MDL panel." (Minute Order of 7/17/07 in Case No. 06-1751.) On November 30, 2007, after the MDL was instituted, this Court further stayed all discovery until a discovery order was established by the Court. (First Practice and Procedure Order, Doc. No. 3.) The stay of discovery was not lifted until March 20, 2008. (Second Practice and Procedure Order, Doc. No. 36.) So, Casio should not be heard to complain that documents were "inexcusably withheld for the past eleven months" (Response p. 3) when in fact a stay of discovery had been imposed in this case for eight of those months. Moreover, the production of tens of thousands of document pages is an ongoing process, particularly in a complex patent litigation involving multiple parties, and document production from all parties in this case has not been a one-time event but continues as documents are discovered, reviewed by counsel, and prepared for production.

Accordingly, Papst does not, as Casio claims, continue to violate this Court's orders, and Papst's request for clarification is appropriate based on its good faith and ongoing efforts to respond to Casio's discovery requests.

**II.     PAPST'S PROPOSED LIMITS CONCERNING DOCUMENTS RELATED SOLELY TO CASIO'S PRODUCTS AND A TIME LIMITATION WOULD PROVIDE A FAIR AND REASONABLE APPROACH TO THE WAIVER OF PRIVILEGE ORDERED BY THE COURT**

Defendants further contend that the waiver ordered by this Court should not have a time limit because a privilege waiver is a "subject waiver" that "should extend to materials relating to the same subject regardless of the time the waiver occurred." (*See* Casio's Response p.5.) However, the "subject matter waiver" cases cited by Defendants to support their argument on this point are distinguishable because they involve policies not in play here. In these cases, full disclosure of waived material was required, without temporal limitations, because the waiving

3

party had voluntarily waived privilege in order to gain a tactical advantage. As noted by the Federal Circuit, the "widely applied standard" for determining the scope of a waiver in these cases "is that the waiver applies to all other communications relating to the same subject matter." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007), quoting *Fort James Corp. v. Solo Cup Corp.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). This broad scope is grounded on "principles of fairness," and "serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones." *Id*. The waiver in the present case, on the other hand, was not done voluntarily in order to gain a tactical advantage, but was imposed as a discovery sanction, with the presumed purpose of punishing Papst and deterring similar conduct.

Applying the "principles of fairness" discussed in *Seagate*, the purpose of the waiver imposed here should be balanced against the need for counsel to adequately represent Papst's interests in this case and maintain the integrity of the adversary process. To that end, it would be reasonable and fair to place temporal limits on the waiver of attorney-client privilege for materials in existence prior to May 31, 2007 because that is the date of the initial order imposing the sanction, and such a temporal limitation would punish Papst for its conduct up to that point without continuing to punish Papst for its conduct after that date, which has not been sanctionable. This temporal limitation will also enable Papst to communicate with counsel and otherwise engage in discovery and prepare for trial.

The courts recognize that subject matter waiver is not absolute, and the scope of waiver should be tailored so as to achieve the purpose behind the waiver. For instance, in *In re Seagate*, the Federal Circuit held that waiver of the attorney-client privilege in connection with opinion

4


counsel for purposes of asserting a good faith defense did not extend to trial counsel because "communications of trial counsel have little, if any, relevance warranting their disclosure . . ." 497 F.3d at 1374. And in *In re Echostar Communications Corp.*, the Federal Circuit held the petitioner who had asserted a good faith defense based on opinion of counsel was not required to produce work product materials that were never communicated to the client, because their "relevant value is outweighed by the policies of the work-product doctrine." 448 F.3d 1294, 1305 (Fed. Cir. 2006). Thus, this Court can and should weigh the relative need to sanction Papst against the policies of the work product doctrine and attorney-client privilege, and should limit the scope of waiver of privilege or work product to include the materials before May 31, 2007, because including materials after that date would continue to unfairly punish Papst, and the value of such materials is outweighed by the policies of the work product doctrine of safeguarding our judicial system. *See Seagate* 497 F.3d at 1375 ("Protecting lawyers from broad subject matter of work product disclosure 'strengthens the adversary process and . . . may ultimately and ideally further the search for truth.'") (internal citations omitted); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980) ("[t]he purpose of the [work product] privilege, however, is not to protect any interest of the attorney . . . but to protect the adversary trial process itself. It is believed that the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans concerning the case.").

Moreover, the concept of subject matter waiver relied on by Defendants applies only to attorney-client privilege, not to attorney work product. *In re United Mine Workers of America Employee Benefit Plans Litigation*, 159 F.R.D. 307, 310-11 (D.D.C. 1994) ("a waiver of the attorney work product privilege as to particular documents does not extend to other documents addressing the same subject matter."). The court in *United Mine Workers* declined to impose a

5

subject matter waiver for work product material because that case, like the case at bar, did not present a situation where a party deliberately disclosed documents in an attempt to gain tactical advantage:

> A complete subject matter waiver would probably yield additional attorney work product that would provide the defendants with a substantial strategic windfall. Where, as here, the law does not mandate a subject-matter waiver and such a waiver is more likely to undermine the adversary system than to promote it, it was contrary to law for the Magistrate Judge to extend the waiver of attorney work product to encompass previously undisclosed documents related to the same subject matter.

*Id*. at 312. Because a complete waiver of work product materials in this case would also be "more likely to undermine the adversary system than to promote it," and would give defendants a "substantial strategic windfall," Papst respectfully requests that the waiver be limited in time. *Id*. It is also reasonable to limit the production of privileged materials to documents that relate solely to Casio's product, because the sanctioned conduct was directed toward Casio alone, and not the other defendants.

Because this Court has "broad discretion in deciding the appropriate scope of a waiver," *United Mine Workers*, 159 F.R.D. at 309, this Court should exercise its discretion and tailor the waiver in a manner that will punish Papst for its conduct before May 31, 2007, which was directed solely at Casio, and will also permit Papst to reasonably prepare and present its case.

### III. PRIVILEGED MATERIALS SHOULD NOT BE PRODUCED TO OTHER MDL PARTIES

In response to Papst's request that the privileged or work product materials produced not be provided to the other MDL defendants, Casio accuses Papst of blowing "hot and cold" on this issue because Papst previously expressed the concern that Papst would have to produce privileged material to the other five MDL defendants if Papst were ordered to produce otherwise

6

privileged documents.  Because Papst is still concerned that, without this Court's clarification, it may be required to produce any privileged material to all of the MDL defendants in this suit, Papst has sought an order from this Court clarifying that such materials need not be produced to all MDL Defendants because they were not part of the discovery dispute that lead to the award of sanctions, and the disclosure of these highly sensitive documents to the other MDL Defendants would result in a substantial windfall to these Defendants and unfair prejudice to Papst.  Papst has not taken an inconsistent position on this point.

Moreover, Casio's argument concerning "selective waiver" is without merit because this principle does not apply in the current situation.  The cases cited by Casio state the general rule that a client cannot "pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981); *see also Navajo Nation v. Peabody Holding Co., Inc*., 209 F.Supp.2d 269, 286 (D.D.C. 2002) ("parties should not be permitted to disclose documents for tactical purposes in one context, and then claim attorney-client privilege in another context.").  In the case at bar, as previously noted, Papst did not choose to disclose material containing attorney-client privileged materials for a tactical advantage against one party and not the others—Papst has been forced to produce these materials as a discovery sanction against a single party to this suit.  By limiting the disclosure of this material to the party who was involved in the discovery dispute and not disclosing the materials to the other MDL defendants, Papst will still suffer the consequences of the waiver but the parties not involved in the dispute will not obtain the benefit of the waiver when they are not entitled to it.  Papst asks this Court to exercise its discretion in this matter and limit the

disclosure of privileged and work product material to only Casio under the terms of the Protective Order.

Moreover, as the court in *Permian* noted, the "selective waiver" principle does not apply to work product material. Whereas the attorney-client privilege has a "strict standard of waiver," a "more liberal standard" applies to work product material, and the limited disclosure of work product does not amount to a waiver of privilege:

> [T]he work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent . . .. A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege. We conclude, then, that while the mere showing of a voluntary disclosure to a third person will generally suffice to show a waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.

*Permian Corp*., 665 F.2d at 1219, quoting *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). If a voluntary disclosure made in pursuit of trial preparation and under terms of confidentiality does not waive the privilege as to other parties, then Papst's involuntary disclosure of work product materials to Casio, under terms of confidentiality, should not result in a waiver of the privilege as to the other MDL defendants, who have provided no legitimate reason why they should be permitted access to Papst's work product information.

## **CONCLUSION**

For the reasons stated herein and in Papst's moving brief, Papst respectfully request this Court to clarify its ruling of May 6, 2008, and order that (1) any materials protected by attorney-client privilege, consulting expert privilege, or materials that constitute attorney work product (hereafter "Privileged Materials") that Papst produces in response to Casio USA's initial discovery requests shall be limited to materials that relate solely to Casio's products; (2) the

Privileged Materials that Papst produces in response to Casio USA's initial discovery requests shall be limited to those materials that existed as of May 31, 2007; and (3) the Privileged Materials that Papst produces in response to Casio USA's initial discovery requests shall be disclosed only to Casio USA and not to other parties to this MDL proceeding.

    Dated:  May 30, 2008

    /s/__Robert F. Muse_____
    Robert F. Muse (Bar No. 166868)
    STEIN MITCHELL & MEZINES, LLP
    1100 Connecticut Ave, NW
    Washington, D.C. 20036
    (202) 737-7777

    James P. White
    Jerold B. Schnayer
    Joseph E. Cwik
    WELSH & KATZ, LTD.
    120 South Riverside Plaza • 22nd Floor
    Chicago, Illinois 60606
    (312) 655-1500

    *Attorneys for Papst Licensing GmbH & Co. KG*

## **CERTIFICATE OF SERVICE**

    I hereby certify that I caused a true and correct copy of the foregoing document to be served upon all counsel of record by the CM/ECF system on May 30, 2008.

                                                  /s/ Robert F. Muse
                                                  *Counsel for Papst Licensing GmbH & Co KG*