**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** ——————————————————— **This Document Relates To:** **Casio, No. 06-cv-1751** | **Misc. Action No. 07-493 (RMC)** **MDL Docket No. 1880** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF CASIO'S MOTION FOR DISMISSAL WITH PREJUDICE OF ALL PAPST'S CLAIMS AND FOR A DEFAULT JUDGMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    PAPST'S CONTINUED REFUSAL TO PROVIDE INTERPRETATIONS ................... 1

   A.   May 28, 2008 Was Never A Due Date For Interpretations ................................. 1

   B.   The Responses to Interrogatory 7 and the May 28, 2008 Responses ................. 2

III.   PAPST'S FAILURE TO IDENTIFY PRIOR ART ................................................... 3

IV.    PAPST'S FAILURE TO PROVIDE CONCEPTION INFORMATION ........................ 5

V.     PAPST'S REFUSALS TO PRODUCE DOCUMENTS .............................................. 5

   A.   Papst's Argument That it was Not Ordered to Produce Documents ................. 5

   B.   Papst's Argument That It Only Recently Obtained "Many" Documents ........... 6

   C.   Papst Has Never Been Sanctioned For Withholding Its Documents ................. 7

   D.   Papst's Other Misrepresentations To The Court .............................................. 7

VI.    PAPST'S DISCOVERY REQUESTS .................................................................... 8

VII.   PAPST'S LEGAL ARGUMENTS ........................................................................ 9

   A.   The Standard of Proof ................................................................................... 9

   B.   Prejudice Is Present, But Not Required ......................................................... 9

VIII.  CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

*Capitol Chem. Indus. v. Cmty. Mgmt. Corp.*, Civ. A. No. 86-2944, 1988 WL 93136 (D.D.C. Aug. 29, 1988), *aff'd*, 887 F.2d 332 (D.C. Cir. 1989) ..............................3, 11

*Dellums v. Powell*, 566 F.2d 231 (D.C. Cir. 1977) ..................................................................11

*Fair Hous. v. Combs*, 285 F.3d 899 (9th Cir. 2002) ...................................................................3

*G-K Props. v. Redev. Agency*, 577 F.2d 645 (9th Cir. 1978) .....................................................3

*Grogan v. Garner*, 498 U.S. 279 (1991) .....................................................................................9

*Henderson v. Duncan*, 779 F.2d 1421 (9th Cir. 1986) .............................................................10

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) .........................................................9

*Shea v. Donohoe Constr. Co.*, 795 F.2d 1071 (D.C. Cir. 1986) ...............................................10

*Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469 (D.C. Cir. 1995)...................................................9

*Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.,* 112 F.R.D. 185 (S.D.N.Y. 1986) ........................................................................................................................................8

*Wachtel v. Health Net, Inc.*, No. 01-4183, 2007 U.S. Dist. LEXIS 44225 (D.N.J. June 19, 2007) ....................................................................................................................................8

*Wade v. Soo Line R.R. Corp.*, 500 F.3d 559 (7th Cir. 2007) .....................................................9

*Weisberg v. Webster*, 749 F.2d 864 (D.C. Cir. 1984) ................................................................3

I.    **INTRODUCTION**

In its attempt to avoid consequences for its refusals to abide by several Court Orders, for its repeated discovery abuse, and for its outright dishonesty with this Court, Papst provides a variety of excuses. None of them are tenable, and several are demonstrably false.

Courts, including the United States Supreme Court, recognize that in circumstances such as these, entry of a default judgment or dismissal is appropriate to protect the Court's integrity and the integrity of the judicial process, particularly when lesser sanctions have proven ineffective. In this case, Papst demonstrated that even severe non-dispositive sanctions are insufficient to deter future misconduct. Accordingly, the Court should dismiss all of Papst's claims with prejudice, and enter default judgment entirely in favor of Casio.

II.    **PAPST'S CONTINUED REFUSAL TO PROVIDE INTERPRETATIONS**

A.    **May 28, 2008 Was Never A Due Date For Interpretations**

In the apparent hope that the Court will not appreciate the distinction between infringement contentions and claim interpretations, Papst continues to refer to the Court's April 8, 2008 Second Practice & Procedure Order (Dkt. 36, ¶ 17) as though it set May 28, 2008 as the date for Papst to provide its claim interpretations. Papst first presented this position in its Reply Memorandum in Support of its Motion for Clarification, at page 2 (Dkt. 115): "[P]erhaps more importantly, this Court gave Papst until May 28, 2008, in which to 'file its asserted claims and infringement contentions.' (Doc. No. 36 par. 17) On May 28, 2008, Papst filed its specific claim interpretations as ordered by the Court…." Papst continues with this effort in its Opposition Memorandum. Opp. Mem. at 1, 3 (fourth bullet).

Infringement contentions identify the asserted claims, the accused products, and match up the claim terms to the accused products. Claim interpretations define the meanings of claim terms. They are distinct concepts, as Papst surely knows. Paragraph 17 of the Second Practice

& Procedure Order, cited by Papst, states only that Papst's "asserted claims and infringement contentions" are due May 28, 2008, and it does not have any mention of claim interpretations. There is nothing in the Second Practice & Procedure Order addressing when any party would respond to interrogatories on claim interpretations.

Papst's present argument that claim interpretations would be due on May 28, 2008 is also inconsistent with Papst's earlier assurances to the Court and Casio.  In Papst's Proposed Discovery Plan, for example, which was filed on May 9, 2008, MDL Dkt. 93, Papst assured the Court that it would that day "provide the few remaining additional updated responses to Casio's interrogatories, consistent with the Court's April 24, 2008 Order."  (Dkt. 93, p. 4.)  No mention was made of claim interpretations coming later.  Papst also confirmed with counsel for Casio that by May 15 it had already provided the interrogatory answers per Judge Collyer's Order.  Ex. A.

Moreover, during a hearing on May 19, counsel for Casio advised the Court that Papst had provided its supplemental responses per Judge Collyer's April 24 Order, and that Casio was moving for judgment, citing the continuing failure of Papst to provide claim interpretations as one of the primary reasons.  Ex. B, pages  13-16.  The Court asked if there was a response from counsel for Papst, and although six lawyers were representing Papst at that hearing, not one of them responded that the claim interpretations were not yet due, or that Papst had not yet provided all the interrogatory responses per the Court's Order.  *Id.*  It was only after realizing the full scope of its predicament that Papst concocted the argument that its interpretations could be provided on May 28, 2008.

**B.      The Responses to Interrogatory 7 and the May 28, 2008 Responses**

Papst contends that it provided interpretations in its response to Casio's Interrogatory 7. Even a cursory review of that response reveals that it addresses only six elements of the many claims Papst has asserted, and it does not contain any claim interpretations.  And the specific

portions cited by Papst are not interpretations, but simply state things that Papst believes should not be part of the interpretations.[1]

According to Papst, the Court should also consider that it has now provided some claim interpretations, in its paper of May 28, 2008.  Opp. Mem. at 4-5.  The fact that Papst partially responded sometime after it violated three Orders, and after it was on notice of Casio's motion for judgment, is of no moment and should be given no weight by this Court.  *See, e.g., Fair Hous. v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("[B]elated compliance with discovery orders does not preclude the imposition of sanctions."); *Capitol Chem. Indus. v. Cmty. Mgmt. Corp.*, Civ. A. No. 86-2944, 1988 WL 93136, at *1-2 (D.D.C. Aug. 29, 1988) (granting dismissal despite late production of ordered discovery after filing of motion to dismiss); *G-K Props. v. Redev. Agency*, 577 F.2d 645, 647 (9th Cir. 1978) (affirming dismissal despite compliance after notice of motion to dismiss: "We encourage such orders."), *cited with approval* by the D.C. Circuit in *Weisberg v. Webster*, 749 F.2d 864, 871-72 (D.C. Cir. 1984).

## III.    PAPST'S FAILURE TO IDENTIFY PRIOR ART

Papst first argues that it has already been sanctioned for its failure to timely produce or identify the prior art.  Opp. Mem. at 6.  This is false – the only sanctions this Court has issued were for non-compliance with Judge Kessler's Order and for Papst serving its first set of discovery requests in bad faith.[2]

---

[1]    Papst cites its Ex. 1 at 7 ("The word 'interfacing' does not require, nor does it prohibit...."); page 10 line 25 – page 11, line 3 (stating only that any interpretation should not include a limitation of data form); page 11, lines 15-19 (stating that Casio's interpretation is wrong); and page 13, lines 5-7 ("claim 1 of the '399 patent should be, for example, broad enough to cover this situation...."). *See also* pages 13-18, not cited by Papst but addressing other elements without any interpretations provided.  It is impossible to tell from any part of this response what Papst is proposing for interpretations to any of these elements, let alone what it is proposing for interpretations to all other claim elements that are not even addressed.

[2]    The Court's June 4 Order (Dkt. 117), addressing Casio's Motion for Sanctions for Non-Compliance and its motion under Rule 26(g), held that "no further sanctions are necessary on these motions." Dkt. 117 (emphasis added).  But the Court has never sanctioned Papst for its refusal to abide by Magistrate Judge Robinson's Order for

Papst also argues that it acquired <u>some</u> (but not all) of the prior art after the stay was entered, but Papst provides no affidavit supporting this contention. Opp. Mem. at 6. In fact, Papst clearly acquired prior art references prior to that time. For example, Papst knew of the prior art referenced in Casio's Principal Memorandum at least as early as the time of its original production. The inventor's own prior art work (Prin. Mem. Ex. S) was obviously in Papst's possession and control since before the beginning of the case. Papst also knew of the prior art patents attached to Casio's Principal Memorandum as Exhibit R, because Papst submitted them to the Patent Office in June of 2007. *See* Ex. C (Information Disclosure Statement filed by Papst identifying the very art it refused to produce to Casio in response to the Court Order).

Papst next argues that it did not produce or identify prior art because it was exercising "judgment" as to whether the prior art was relevant or cumulative. Opp. Mem. at 6. But how can counsel for Papst justify on the one hand disclosing the prior art to the United States Patent Office for applications directly related to the patents-in-suit, but on the other hand using its "judgment" to determine that they were not sufficiently relevant to disclose to Casio pursuant to Magistrate Judge Robinson's Order? And under what conceivable exercise of judgment could Papst decide that the inventor's own prior art Thesis, about the very technology of the patents, was not sufficiently relevant to disclose to Casio? This newly-minted argument is not only facially untenable, it appears to be only recently fabricated, because Papst previously assured Casio that it is not withholding any documents on grounds of relevancy:

> 3) <u>We are not withholding documents on relevancy grounds</u>. We have produced responsive documents in the past, and are producing responsive documents now, <u>without holding any documents back on grounds of relevancy</u>.

---

interrogatory responses. The sanctions to which the Court referred in its June 4 Order are sanctions directed entirely to Papst's failure to comply with Judge Kessler's Order and Papst's bad faith discovery requests. Contrary to Papst's assertion now, there have been no consequences for Papst's refusal to comply with Magistrate Judge Robinson's Order for complete interrogatory responses.

Ex. D (email from counsel for Papst, emphasis added).

## IV.    PAPST'S FAILURE TO PROVIDE CONCEPTION INFORMATION

Papst states that it "has provided the best information that it has at this time regarding conception," and states that it will supplement its discovery responses later if it locates additional evidence. Opp. Mem. at 6-7. But Papst has access to all the information on the conception because it is evidence from the inventor. Papst will not locate additional evidence later that it does not already have in its control.

The Casio interrogatory asks for "specific dates" of conception, and that this information should be provided "separately for each asserted claim." Prin. Mem. Ex. D, Interrogatory 6. Papst refuses to take a stand on any asserted claim, let alone separately for each claim. Consequently, Casio cannot know the relevant dates for prior art searching, or even whether Papst will contend that potential prior art (like the inventor's Thesis) is in fact prior art. Papst simply refuses to properly respond to the Interrogatory, despite the Court Orders.

## V.    PAPST'S REFUSALS TO PRODUCE DOCUMENTS

### A.    Papst's Argument That it was Not Ordered to Produce Documents

In its Reply Memorandum in Support of its Motion for Clarification (Dkt. 115), Papst argued that Magistrate Judge Robinson did not actually order it to produce documents in response to the Casio document requests. (Dkt. 115, page 2: "Magistrate Judge Robinson's May 31, 2007 Order required Papst to '*respond* to Casio USA's initial discovery requests' within ten days of the order – not necessarily to produce the tens of thousands of responsive documents on that date.") (emphasis by Papst). In its Opposition here, Papst continues with this argument. Opp. Mem. at 8 ("Papst did not believe that the Court had set a deadline by which all documents must be produced.").

This Papst position is not credible.  Magistrate Judge Robinson <u>granted</u> Casio's motion to compel, and ordered complete responses to the requests within ten days.  The Casio Proposed Order associated with its Motion, attached hereto as Ex. E, specifically sought an order that "Papst shall provide . . . a complete document production within ten (10) days of the date of this Order."

Moreover, given that Papst's objections had been waived, other than producing documents, no other response to the document requests would be appropriate.  And if there were any doubt about Papst's due date for production, it was erased with Papst's filing of its request for an extension of time to produce its documents.  The Papst motion for an extension stated that "Papst Licensing is unable to produce **<u>each and every responsive document</u>** by Monday, June 11, 2007," and argued "[b]ecause it will be physically impossible to produce **<u>all</u>** of Papst Licensing's responsive documents by June 11, 2007, Papst Licensing respectfully requests an extension of time of fourteen days, until June 25, 2007."  Ex. F, page 2 (emphases added).  Given Papst's representations to the Court, it is far beyond the limits of credibility for Papst to now contend that its document production was not even due on June 25, 2007.

### B.    Papst's Argument That It Only Recently Obtained "Many" Documents

Since it produced 22,000 documents in response to Magistrate Robinson's Order, Papst has produced 273,000 additional pages of documents.  Papst attempts to partially excuse itself by claiming that "many" of these 273,000 documents were only obtained after its original production.  But Papst does not provide any indication of how many of the 273,000 documents supposedly fall into this group (10,000?  50,000?), and it provides no affidavit or other proof to support this allegation.  Indeed, many of the documents have dates showing that Papst obtained them before the original production.  *See, e.g.,* Prin. Mem. Ex. O (inventor's early papers), Ex. P (including web pages printed in 2006, dates on bottom right), Ex. Q. (2006 documents of the

inventor), Ex. R (prior art cited by Papst in June of 2007, see section II), Ex. S (inventor's 1996 Thesis), etc.  As a result, the Court should give this Papst argument no weight.  But even if the Court assumed without proof that Papst obtained as many as 100,000 documents since its original production, then why did it not produce the other 173,000 documents when ordered to do so by Magistrate Judge Robinson?

### C.    Papst Has Never Been Sanctioned For Withholding Its Documents

Papst argues that "Casio's complaint is that the documents were not produced fast enough, for which Papst has already been sanctioned."  Opp. Mem. at 7.  This is false.  Papst's failure to produce documents has never been the subject any sanctions motion, nor has it resulted in any sanction from the Court.  *See* Casio's Motion for Sanctions for Non-Compliance, Dkt. 37, page 1, n.1 ("The portion of the June 1 Order relating to document production is not at issue in this motion.  Casio is still waiting to see if Papst complies with that portion of the Order.").  Indeed, it is only now that the full scope of Papst's non-compliance with Magistrate Judge Robinson's document production Order is coming to light.

### D.    Papst's Other Misrepresentations To The Court

Casio's Principal Memorandum addressed Papst's false statement to the Court that it did not owe Casio any additional documents.  Prin. Mem. at 14.  With Papst's latest production, it is now clear that Papst made this misrepresentation in response to a direct inquiry from the Court while it was withholding 273,000 responsive documents.  Notably, Papst's Opposition does not address this issue at all.  Papst offers no explanation or apology for this misrepresentation.  Papst also makes no effort to explain any of its other misrepresentations, including its assurances that it was complying with the Judge Collyer's April 24 Order on May 9, and its misrepresentations about the Casio production documents.  *See* Prin. Mem. at page 12, n.7 and accompanying text.

The Court should also consider Papst's highly questionable arguments in its Opposition Memorandum, such as its arguments that claim interpretations were due on May 28; that it never understood that its documents were to be produced by June 25, 2007; that Papst has already been sanctioned for its refusals to produce documents in response to Magistrate Judge Robinson's Order; and that it did not produce prior art because it was busy deciding if they were relevant, despite its assurances to Casio that nothing was being withheld on grounds of relevance.

Papst's repeated dishonesty with the Court is relevant to the present motion. *See Wachtel v. Health Net, Inc.*, No. 01-4183, 2007 U.S. Dist. LEXIS 44225 (D.N.J. June 19, 2007) (considering "lack of candor" in awarding sanctions); *Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.,* 112 F.R.D. 185, 189 (S.D.N.Y. 1986) (imposing sanctions: "Defendants have simply sought to protect themselves from responsibility for their obligations by secrecy, deceit and disregard for court orders.").

## VI.    **PAPST'S DISCOVERY REQUESTS**

Papst addresses its first violation of Rule 26(g) only by stating that it has already been sanctioned. Opp. Mem. at 8. Even though Papst has already been sanctioned for this conduct, it is still highly relevant in that it shows that strong but non-dispositive sanctions do not change Papst's use of discovery as a weapon.

Papst says nothing substantive about its second and third violations of Rule 26(g), why it failed to comply with the direct Orders of Judge Collyer that it could not serve additional requests, or why it refused to comply with Judge Collyer's warnings about further abuse of the discovery process.

## VII.    PAPST'S LEGAL ARGUMENTS

### A.    The Standard of Proof

The standard of proof should not be an issue here, because the evidence satisfies either a clear and convincing standard or a preponderance standard.

Papst argues that Casio must prove the abusive behavior by clear and convincing evidence.  Papst cites *Shepherd v. Am. Broad. Cos.,* 62 F.3d 1469, 1472 (D.C. Cir. 1995), for this proposition.  This case, however, only addresses sanctions issued pursuant to the Court's underline powers, not those issued pursuant to Fed. R. Civ. P. 37.  In *Shepherd,* the Court expressly found that Rule 37 sanctions were not appropriate because there was no court order at issue.  *Id.* at 1474.

The clear and convincing standard should not apply to dismissal or default sanctions under Rule 37.  The Seventh Circuit recently addressed this issue in *Wade v. Soo Line R.R. Corp.*, 500 F.3d 559 (7th Cir. 2007):

> *Maynard* held that dismissal is an appropriate sanction for a violation of Rule 37 only when there is "clear and convincing evidence of willfulness, bad faith or fault", 332 F.3d at 468.  We doubt that "clear and convincing" evidence is required; the Supreme Court held in *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991), that heightened burdens of proof do not apply in civil cases unless a statute says so or the Constitution requires an elevated burden. *See also Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983).

*Id.* at 564.

### B.    Prejudice Is Present, But Not Required

Papst also contends that Casio has shown no prejudice as a result of Papst's refusals to comply with all these Court Orders, or from its numerous violations of Rule 26(g).  Not surprisingly, Papst cites no cases from this Circuit or this Court requiring prejudice before entry of a default judgment or dismissal.

The seminal case in this Circuit, *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071 (D.C. Cir. 1986), held that prejudice is not required, but instead it is just one of three alternative justifications for the sanction of dismissal. *Id.* at 1074-75. Dismissal may also be appropriate to mitigate severe burden on the judicial system and to punish abuses of the system and deter future misconduct. *Id.; see also Henderson v. Duncan*, 779 F.2d 1421, 1425 (9th Cir. 1986) (finding no prejudice to the defendant, but affirming dismissal due to the "inordinate delay" and prejudice to the Court) (*cited with approval* by the D.C. Circuit in *Shea*, 795 F.2d at 1076).

Even if a showing of prejudice was required, there is substantial prejudice to Casio that would satisfy that requirement. First, prejudice is presumed in these situations. The D.C. Circuit has held:

> [E]ven without a showing of actual prejudice, we agree, as at least two of our sister circuits have held, that "prejudice to defendants resulting from unreasonable delay may be presumed," and that there is no hard and fast requirement that the party aggrieved by such unreasonable delay always presents specific evidence of the exact nature of the prejudice.

*Shea*, 795 F.2d at 1075. Here, prejudice may be presumed as Papst has delayed providing the claim interpretations since the spring of 2007 in violation of three Court Orders, and in further violation of those Orders Papst withheld many thousands of responsive documents that should have been produced more than a year ago.

Beyond the presumption, Casio endured substantial prejudice since the beginning of this case, and it has demonstrated this prejudice throughout its various motion papers and its Principal Memorandum. For example:

- Casio has been precluded for fourteen months from using Papst claim interpretations in prior art searching, invalidity and infringement analyses, and from even knowing this information that forms the bases for Papst's infringement allegations. *See, e.g.,* Prin. Mem. pages 7, 9.

- For fifteen months, Casio has been denied access to many thousands of Papst's relevant documents, such as the inventor Thesis, other prior art, and Papst documents addressing the patents and invention generally.  *See, e.g.,* Prin. Mem. at 10-11, 13-15.

- Papst forced Casio to file numerous motions at great expense in order to get Papst to comply with the many Court Orders at issue, and Papst has still not fully complied with those Orders.  *See, e.g.,* Prin. Mem. at 7, and prior sanctions orders and related motion papers.

- Casio was forced to repeatedly deal with outrageous discovery requests seeking millions of documents from all over the world.  *See, e.g.,* Prin. Mem. at 15-19.

- Casio has been prejudiced by Papst's repeated refusals to provide its positions on the most basic of patent case discovery, such as alleged dates of conception which form a basis for establishing prior art.  *See, e.g.,* Prin. Mem. at 11-13.

Courts in this Circuit, including this Court, have dismissed actions with far less prejudice.

*See, e.g., Capitol Chem.*, 1988 WL 93136, at *2 n.3 (D.D.C. 1988), *aff'd*, 887 F.2d 332 (D.C. Cir. 1989) (dismissing action: failure to timely respond to interrogatories "prejudiced defendant by making it more difficult to investigate facts that become increasingly stale with the passage of time and by delaying defendant's ability to formulate a defense to this action."); *Dellums v. Powell*, 566 F.2d 231, 236 (D.C. Cir. 1977) (holding "that it was an abuse of discretion" for trial court to re-instate previously dismissed action "if for no other reason than the prophylactic considerations identified in *National Hockey League…*").

## VIII.   <u>CONCLUSION</u>

For all the foregoing reasons, Casio respectfully requests that the Court enter judgment

against Papst on all claims in this case and dismiss all Papst claims with prejudice.


Dated: June 23, 2008                              Respectfully submitted,


                                                  /s/ J. Kevin Fee
                                                  J. Kevin Fee (D.C. Bar No. 494016)
                                                  Morgan, Lewis & Bockius LLP
                                                  1111 Pennsylvania Avenue, NW
                                                  Washington, D.C. 20004
                                                  Tel.: (202) 739-3000
                                                  Fax: (202) 739-3001

                                                  Scott D. Stimpson
                                                  The Law Office of Scott D. Stimpson
                                                  Suite 1102
                                                  445 Hamilton Avenue
                                                  White Plains, N.Y. 10601
                                                  Tel: 203-258-8412

                                                  *Attorneys for Plaintiff and Counter-Defendant*
                                                  *Casio America Inc. and Counter-Defendant Casio*
                                                  *Computer Co., Ltd.*





Scott Stimpson <stimpsonlaw@gmail.com>

# Papst discovery status

**stimpsonlaw@gmail.com <stimpsonlaw@gmail.com>**          **Thu, May 15, 2008 at 11:20 AM**
Reply-To: stimpsonlaw@gmail.com
To: Jerold Schnayer <jbschnayer@welshkatz.com>
Cc: Kevin He <khe@morganlewis.com>, Kevin Fee <jkfee@morganlewis.com>, Joe Cwik
<jecwik@welshkatz.com>, Laura Krawczyk <lkrawczyk@morganlewis.com>, Jim White
<jpwhite@welshkatz.com>

Jerry:

As you advised me at the deposition today, we have the Papst interrogatory answers per Judge Collyer's
orders, but we have not yet received all your production documents.

Can you please let me know when we will receive the rest of the Papst documents?

Thanks.

Scott


Sent from my Verizon Wireless BlackBerry



EXHIBIT

B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


IN RE: PAPST LICENSING          :
GMBH & CO. KG LITIGATION        :
                                :          Misc. Action No. 07-493
                                :           MDL Docket No. 1880
                                :
                                :          Washington, D.C.
                                :          Monday, May 19, 2008
---------------------------x               2:35 p.m.



TRANSCRIPT OF TELECONFERENCE
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiffs:          Robert F. Muse, Esquire
                             Kerrie Dent, Esquire
                             STEIN, MITCHELL & MEZINES LLP
                             1100 Connecticut Avenue, NW
                             Washington, DC  20036

                             James P. White, Esquire
                             Jerold B. Schnayer, Esquire
                             Walter Kawula, Esquire
                             Joseph E. Cwik, Esquire
                             WELSH & KATZ, LTD.
                             120 South Riverside Plaza 22nd Floor
                             Chicago, IL 60606-3912

For the Defendants:          Scott D. Stimpson, Esquire
                             THE LAW OFFICE OF SCOTT STIMPSON
                             445 Hamilton Ave.
                             White Plains, NY  10601

                             J. Kevin Fee, Esquire
                             MORGAN LEWIS & BOCKIUS LLP
                             1111 Pennsylvania Avenue, NW
                             Washington, DC  20004

```
 1  Appearances continued:

 2
    Court Reporter:            Crystal M. Pilgrim, RPR
 3                             United States District Court
                               District of Columbia
 4                             333 Constitution Avenue, NW
                               Room 4704
 5                             Washington, DC  20001

 6
    Proceedings recorded by machine shorthand, transcript produced
 7  by computer-aided transcription.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1           THE COURT:  Good afternoon everybody this is Judge

 2   Collyer.

 3           MR. STIMPSON: Good afternoon Your Honor, Scott

 4   Stimpson representing Casio, with me is Kevin Fee of Morgan,

 5   Lewis.

 6           MR. WHITE:  Good afternoon, Your Honor, this is Jim

 7   White in Chicago and with me is Jerry Schnayer, Joseph Cwik and

 8   Walter Kawula.

 9           MR. MUSE:  Here in Washington on behalf of Papst is

10   Bob Muse, Your Honor, with Kerri Dent.

11           THE COURT:  All right.  Well, the question, the

12   reason for this phone call was to have something of an informal

13   conversation about discovery into the future.  And then I

14   received your proposed discovery plans and that raised a few

15   fact questions for me that I wanted to ask each of you before

16   we sort of moved forward.

17           Now, tell me if I understand the sequence correctly

18   here.  That first I ordered you to meet and confer and that

19   Casio sent a draft report to Papst on the morning of May 7th.

20        Now were there any telephone conversations between Papst

21   and Casio?  You don't mind do you, I'm going to call you by

22   your clients, but I know that you're actually independent

23   people.  Since it's very hard to distinguish which lawyers

24   might have talked to which lawyers, I'm just going to sort of

25   call you Papst and Casio for ease of, ease of reference if you

1    don't object.

2         So, were there any telephone conversations between Casio

3    and Papst at any time after the morning of May 7th when Casio

4    sent its draft report and the late afternoon of May 8th when

5    Papst sent back its edits?

6         MR. STIMPSON:  Your Honor, this is Scott Stimpson.  I

7    think the answer to your question is yes.  You tested my memory

8    a little bit.  But the one thing I do remember is calling and

9    asking where is it, we have to get moving.  I don't remember if

10   there were any substantive discussions between those two times,

11   but the first thing we wrote back was 6 p.m. on May 8th.

12        THE COURT:  There were, as you remember, no

13   substantive discussions?

14        MR. STIMPSON:  Between those two times I don't

15   believe so, no.

16        THE COURT:  Mr. White, Mr. Schnayer do you have any

17   different recollection?

18        MR. WHITE:  I have a slightly different recollection,

19   Your Honor, this is Jim White speaking.

20        On the afternoon of May 7th, we had a meet and confer

21   with Casio and all of the MDL defendants' counsel dealing with

22   the discovery, okay, outstanding discovery requests.  And any

23   ideas that they may have to modify those requests.  We also

24   briefly, briefly discussed with Mr. Stimpson that we would get

25   back to him in the morning with respect to his proposed plan as

1 drafted. And we provided him some edits to that plan probably

2 mid-morning, late morning, early afternoon in that area, after

3 10 a.m.

4     We then had Mr. Schnayer conduct some discussions with

5 him that I think number two at least before the evening came

6 and we lost people, et cetera, et cetera and we asked him to

7 seek a continuance.

8         MR. STIMPSON:  Your Honor if I may just respond.

9 First, Mr. White is correct about the May 7 conference. I

10 understood the Court to be asking about Casio and Papst, but

11 there was a conference generally with all manufacturers about

12 5 o'clock on May 7.  I don't remember receiving edits on the

13 morning of May 8th.  I don't know if Mr. White is referring to

14 new edits or he thinks somebody told me something, but I don't

15 remember that.

16         MR. WHITE:  My recollection and I'm not purporting to

17 have this chipped in stone, Your Honor. But I remember making

18 edits to the document itself and putting in Papst position

19 giving them to Mr. Schnayer and then they were sent out which

20 is what precipitated the discussions in the afternoon.

21         MR. STIMPSON:  Your Honor, I'm just checking my

22 e-mails right now.  But I represented to the Court my May 8

23 submission that we did not get anything until 6 p.m. and unless

24 I completely lost my mind, we got nothing before that.  And my

25 associate right now is frantically checking his e-mails to see

1  if we see anything on that day.  And if Mr. White or

2  Mr. Schnayer can identify a time of e-mail that will be very

3  helpful, but I don't remember anything like that.  I'm sorry if

4  I'm mistaken, it's possible but I really don't see it and I

5  don't remember it.

6         THE COURT:  Well, my problem is that I have from each

7  of you slightly different renditions of the facts.  And what

8  Papst tells me that during the business day on May 8th

9  negotiations between counsel for the parties ensued and as of

10  the close of business the parties were still considering,

11  continuing their discussions on the joint discovery plan.

12  Whereas Casio says to me, well we sent our plan over on the 7th

13  and the first time we heard anything was the close at the end

14  of the day on the 8th.

15     So I'm just trying to figure out whether Papst is being

16  entirely candid when it says that during the business day on

17  May 8th negotiations between counsel ensued and as of the close

18  of business the parties were still continuing their discussions

19  or whether what really happened is Casio filed its plan.  Papst

20  responded with its plan, which completely took out everything

21  that Casio had suggested and substituted its own and then said,

22  gee, we're out of business for the end of the day.  We don't

23  have any people here.

24         MR. WHITE:  Your Honor, this is Jim White.  Exhibit A

25  to our filing of Papst proposed plan sheds some light on this

1  issue, okay.  And there is an e-mail from Jerry Schnayer's

2  secretary Cynthia Salinski at 4:55 p.m. May 8 to Mr. Stimpson,

3  and the e-mail has an attachment.  Jerry Schnayer asked me to

4  send you the attached draft for your review and consideration,

5  okay.

6       And the next e-mail that we have there is a response on

7  May 8th, well there's another e-mail that Mr. Schnayer sent at

8  7:45 p.m. saying I have no secretarial help.  I can't provide

9  you with a written response tonight since you have not sent me

10  a proposed draft by now.  I'm leaving my office.  And then

11  there is a response by Mr. Stimpson at seven, I guess it's

12  6:45 p.m. our time which indicates:  Jerry, here's the

13  revision.  We're filing this tonight and you just told me that

14  you would wait.  We will wait for your comments and then file

15  tonight, okay.  Scott.

16       So  it's 7:45 his time and I think the filing is at

17  8:46 p.m.  And what Casio filed is, they filed their proposal

18  without our comments that were included in the earlier draft.

19  And what we did when we filed our proposed papers, we attached

20  the draft that we had sent to Mr. Stimpson and we italicized in

21  the first two or three pages the section that we had included

22  in the draft that we sent to Mr. Stimpson so the Court could

23  see that in fact we had done some work on this particular

24  document with Mr. Stimpson before the time in the evening ran

25  so late that we lost secretarial help et cetera, et cetera.

1  Then we attached that as Exhibit A to the Papst Proposed Plan

2  in compliance with your order.

3  THE COURT:  I have to say that I have never had an

4  experience -- I haven't been a judge that long perhaps.  But

5  I've never had an experience in dealing consistently with

6  counsel whom I don't trust to tell me the truth.

7  Now I think that what each of you submitted to me gave

8  me the facts that were only helpful to you and didn't tell me

9  the truth.  Didn't tell me what really happened.  And you know,

10 I recent that.  I recent the time I take on this.  I recent

11 your approach to this litigation.  I recent the way that you

12 treat me as if it didn't matter whether you told me the truth

13 or not.

14 I'm going to tell you and I'm going to issue an order so

15 it's very clear.  If I find in the future that any party; that

16 is, any party that's before me right now because there's nobody

17 else in front of me to so warn, that if either of you submits

18 documents to me that omit critical facts and so, therefore, are

19 so incomplete as to be wholly misleading I will hold you in

20 contempt; do you understand that?

21 I am not use to people who don't know how to litigate like

22 professionals.  Now you people litigate all the time.  And you

23 are not to play any more games.  I am sick to death of this

24 case because of the gamesmanship and the expense of it.

25 I'm going to require you to start repaying your clients

1 for the time you spend on the nonsense that you submit to me,

2 if you don't start flying right and treating me like a Judge

3 and treating each other like respectable counsel.

4      Now we're not going to have anymore of this.  And if we do

5 I will hold you in contempt, do you understand?

6           MR. WHITE:  Yes, Your Honor.

7           MR. STIMPSON:  Yes, Your Honor.

8           THE COURT:  You'd better, because I have two separate

9 documents from each of you that are not anywhere close to

10 telling me the same story as to what happened.  And to tell you

11 the truth, at this present time I don't have any reason to

12 trust any of you to tell me the truth.

13      Now that is a really bad position to be in with a Judge,

14 where nothing the lawyer says is credited.  A really bad

15 position.  It's particularly a bad position this early in the

16 case.  It's particularly a bad position when you know, there

17 aren't going to be clients testifying about credibility.  It'

18 all you guys.

19      Now this is just nonsense that you submitted to me.  I

20 would use a stronger word except we're on the record.  I want

21 the record to reflect the Court wishes it could use a stronger

22 word.  Absolute nonsense.

23      Nobody has done anything that I talked about, but let me

24 just explain something to Papst, just for clarity sake.  The

25 discovery between Papst and Casio was declared by Judge Kessler

1  to be over.  Papst discovery requests to Casio were stricken by

2  this Court because they were over the top, simply outrageous

3  and, in my opinion, propounded in bad faith because they were

4  so clearly over the top and outrageous.

5      Therefore, Papst has no outstanding discovery to Casio.

6  Discovery has closed.  I have warned Casio that it is going to

7  have to provide reasonable discovery as might be needed by

8  Papst as this case proceeds.  But since Papst has no legal

9  basis to advance any more discovery requests to Casio because

10  it's requests have been stricken and discovery is officially

11  suppose to be over between you, you're going to have to act

12  like gentlemen and deal with each other in a reasonable fashion

13  and say, we reasonably need this additional information and not

14  play games and not propound discovery requests that are full of

15  holes and nonsense.

16      You're going to have to conduct this litigation as

17  reasonable, professional civil lawyers.  Like as if it were a

18  profession.  As if it weren't just a business, as if it were a

19  profession.  We'll see if you can do that.  And then if Casio

20  is not being reasonable and professional and civil in its own

21  right, then Papst can turn to the Court by phone, not by

22  motion, and say we've asked for the following.  We've been very

23  reasonable.  They've been unreasonable and then we'll decide

24  whether one of you or the other is not conducting themselves in

25  a professional and reasonable and civil manner.

 1          A professional and civil manner means more than just
 2  not yelling at each other.  It means not dissembling, not lying
 3  to the Court, not giving half truths.  It means recognizing
 4  that your clients have a dispute, but you do not have to be
 5  nasty.  And I'm telling you guys, I have never had this
 6  experience.  I'm glad to have it with only the two of you
 7  instead of the whole group at once because I'd put you all in
 8  jail.  I don't know.  I'd just step you all back for a weekend
 9  and say now see if you like the D.C. Jail for a weekend and if
10  that will make you behave yourselves.  I don't know what to do
11  with you, but I won't put up with it.  Now does everybody
12  understand that?
13          MR. STIMPSON:  Your Honor, Scott Stimpson, we fully
14  understand, thank you.
15          MR. WHITE:  Yes, Your Honor, Jim White.
16          THE COURT:  All right, now with that in mind, I'm
17  going to presume that the proposed discovery plans which each
18  of you submitted to me are no longer what your proposed
19  discovery plans are because they don't actually address
20  anything I just said.  So I'm going to send you back and tell
21  you again to discuss it as civil, professional lawyers and
22  determine what Papst might still need if anything from Casio.
23  And Casio you're just as much under the gun to act in a
24  professional action.  And then you can come back to me and say
25  we've worked it all out.  We need your assistance on these

1  points because we Papst think we need them and Casio is saying

2  no, okay.

3          MR. WHITE:  Yes, Your Honor.

4          MR. STIMPSON:  Yes, Your Honor.

5          THE COURT:  Great.  Now I do have Papst's motion for

6  clarification concerning the scope of waiver.  I do not have of

7  course as yet any response from Casio.  I would be happy to

8  take Casio's response orally at a slightly different time when

9  Casio might be prepared to respond.  If you would rather do

10 that instead of writing it down.  But if you would like to have

11 a full record on this point, I would be happy to have you write

12 it down.  But I want to tell you, we got to get out of the

13 writing business, but anyway this is already written down once

14 so Casio I will give you your choice.

15         MR. STIMPSON:  Your Honor, if it's easier for the

16 Court we'll be happy to provide that orally, but I'm not really

17 prepared to do it today.

18         THE COURT:  I didn't anticipate that you would be.  I

19 mean, there's no -- it's basically just been filed, so you have

20 time to consider a response.  And we can either set a telephone

21 conference call if we can find a time on my schedule for you to

22 do it or as I said you can do something in writing, it's your

23 choice.

24         MR. STIMPSON:  I had one of my associates prepare

25 something short in writing that's five pages, but it's entirely

1    up to the Court.  I can do it either way.

2         THE COURT:  No, if you've already got it then submit

3    it.

4         MR. STIMPSON:  All right, I haven't even read it yet.

5    We'll probably submit it in the next two or three days, is that

6    okay?

7         THE COURT:  That would be fine.  All right, under the

8    circumstances is there anything else that we should address

9    today?

10        MR. WHITE:  No, Your Honor, Jim White in Chicago.

11        MR. STIMPSON:  Oh, Your Honor, I really hate to raise

12   this, but we have some other rather significant developments

13   since the last conference and I feel like I need to at least

14   raise them.

15        THE COURT:  All right.

16        MR. STIMPSON:  We've had, we found out late last week

17   that Papst has submitted supplemental responses in response to

18   your April 24 order.  You provided, you ordered that Papst

19   provide responses to Casio's outstanding interrogatories.  And

20   we've also received about 50,000 documents from Papst and their

21   responses I understand and we still do not have claim

22   interpretation.  I mean, I can read you some of their responses

23   if you want.  But basically they said that in your order

24   paragraph 6 (k) you stated that their prior responses have said

25   Papst responses said claim element leave on were not

1  sufficient.  I'm reading from their responses in response to

2  your order.  Here's one example, input output devices,

3  customary device include for example and basically it's the

4  same thing they had in response to Magistrate Robinson's order,

5  just giving examples of things that might be covered.  There

6  are no interpretations that I can see.

7      We've also had produced 50,000 documents to us, just

8  recently.  You may recall at the last hearing we had, this is

9  my recollection, that it was represented that the only things

10  that were not being provided to Casio were documents that were

11  privileged and third party confidential.  And I honestly don't

12  see how the majority of this, these 50,000 documents fall into

13  either category.

14      I think these documents should have been produced in

15  response to Magistrate Judge Robinson's order back in 2007.

16  From our perspective, Your Honor, we've had several court

17  orders now.  Your order on claim interpretation, it was the

18  second one directly on claim one.  It was a third order

19  including Judge Kessler's order that should have resulted in

20  interpretation.

21      We're now 18 months into litigation.  We're 14 months

22  after we served interrogatories.  We're three court orders

23  later and we don't have our interpretations.  There have been

24  other court orders that have been violated.  And you know Rule

25  37 (B)(2) provides that when parties don't respond to court

```
 1  orders, two sanctions that are available are dismissal and
 2  default judgment.  And we have drafted a motion for judgment
 3  and I would like permission to file it.
 4       I know that you don't want motions in writing, but --
 5       THE COURT:  No, a motion for judgment would have to
 6  be in writing.
 7       MR. STIMPSON:  Yeah, and I understand.  You can't
 8  get, you can't get a feel for this without seeing the
 9  documents.
10       THE COURT:  Well, you can't get more serious than a
11  motion for judgment.
12       MR. STIMPSON:  I fully understand that, Your Honor.
13  I fully understand that.  But I would give this a great deal of
14  thought.  And we've looked at the law in the D.C. Circuit and,
15  you know, I just don't think a fourth order that should result
16  in claim interpretations is appropriate.  It's time to consider
17  the most serious of sanctions.
18       THE COURT:  Did you want to respond to that right now
19  Mr. White?
20       MR. WHITE:  Obviously Your Honor, it becomes
21  ludicrous if you're going to have a hearing on discovery
22  situations and then we're going to start talking about and
23  making all sorts of allegations.  I'm not prepared to respond
24  to it.  And I recent the fact that he even brings it up.  If
25  you're going to make some kind of a motion like this, we need
```

1  to be, have some notice of it, outline what your arguments are

2  and then have the Court please schedule a hearing before Your

3  Honor so that we can come and argue this motion and have some

4  exhibits and have some issues so Your Honor has a chance to

5  look at in fact what we have done and what we have not done

6  according to Mr. Stimpson.

7         THE COURT:  Well, I certainly agree with you that a

8  motion of the type described by Mr. Stimpson is most serious

9  and can't be decided immediately and on a telephone conference

10 call.  I think, I take it from Mr. Stimpson that he was giving

11 me a heads up that this was going to happen.

12        I think that you are now advised that this is going to

13 happen and that when it's fully briefed, we'll have an argument

14 and then we'll decide it.  But I guess the first thing to do

15 Mr. Stimpson is complete your motion and file it.

16        MR. STIMPSON:  Thank you, Your Honor.

17        THE COURT:  All right, is there anything else?

18        MR. WHITE:  I don't believe so, Your Honor.

19        MR. STIMPSON:  Thank you very much.

20        THE COURT:  Thank you.  Have a good afternoon.

21        MR. STIMPSON:  Bye-bye.

22        (Adjourned 3:15 p.m.)

23                          -oOo-

24

25

CERTIFICATE

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____        _____
Crystal M. Pilgrim, RPR                 Date

**EXHIBIT**

**C**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of: Michael Tasler          Group No.: 2181

Serial No.:      11/078,778                          Conf. No.: 8978

Filed:           3/11/05                             Examiner:  Harold J. Kim

For:             ANALOG DATA GENERATING
                 AND   PROCESSING   DEVICE
                 FOR USE WITH A PERSONAL
                 COMPUTER (As Amended)

Attorney
Docket No.:      0757/96910

## INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
Box IDS- NON FEE
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Pursuant to 37 C.F.R. §1.97, a list of documents is disclosed on the attached Form PTO-1449 that may be material to the examination of this application.  It is submitted that no fees are due in connection with this Information Disclosure Statement because it is being submitted before the First Office Action has been mailed from the USPTO.

The Examiner is asked to assume only for purposes of examination of the instant application that the cameras and software described in the documents submitted herewith actually are prior art to all currently pending claims.  However, this request should not be construed as being an admission regarding the prior art status of any of the documents or the cameras/software described therein.  Applicant expressly reserves the right to revoke this

request, and to dispute in all forums whether the documents submitted herewith and the cameras/software described therein actually are prior art.

A manual for Kodak's camera model no. DC20 is submitted herewith. Numbered page 3 of the manual states that the "DC 20 camera package has everything you need to easily capture images and transfer them to your computer. Simply use the enclosed software to create personalized images to share with family and friends."

Page 1-1 of the manual for Kodak's camera model no. DC25 states that the camera described therein offers "2 megabytes of picture storage on an optional Picture Card." Page 1-2 of the DC25 manual refers to "Kodak Picture Easy Software – a quick and easy way to transfer pictures from your DC25 to your computer" as well as to "PictureWorks' PhotoEnhancer Special Fun Edition [software] – transfer pictures from the DC25 to your computer and let the fun begin! Quickly view, enhance and used your pictures in templates to create cards, invitations, calendars, and more." Both of these applications level software programs are included on a CD-ROM disc sold by Kodak.

A two-page printout from Kodak's website is submitted herewith, and describes certain Kodak software which is used for transferring pictures from certain Kodak digital cameras to a personal computer. In particular, this printout describes the Kodak Picture Enhancer Software which a user must load onto a computer in order to be able to transfer pictures to the computer.

A one-page printout from Kodak's website is submitted herewith, and describes the Kodak Picture Easy Software. A user must load the Picture Easy Software onto a computer in order to be able to transfer pictures to it.

US Patent No. 6,147,703 (filed Dec. 19, 1996) is entitled electronic still camera with image review. The first paragraph of the background of the invention of this patent refer to

"Picture Disk software from Eastman Kodak, which is provided to a customer on a diskette along with scanned images from a roll of film, presents a screen in a Microsoft Windows environment with thumbnails of images."

US Patent No. 5,402,170 (issued Mar. 28, 1995) is entitled hand-manipulated electronic camera tethered to a personal computer. The cover page of this patent indicates that it is owned by Eastman Kodak. In Figure 3 and at column 5, lines 53-55, the patent discloses that, to get images from the camera disclosed therein to a personal computer, a user "opens a 'tethered camera' application program in the computer 12."

It is respectfully submitted that all currently pending claims should be found to be patentable over all assumed prior art submitted herewith because, for example, such assumed prior art does not teach or suggest the *automatic and without user intervention* feature of the claims. One reason for this is that all such assumed prior art affirmatively requires a user to load applications level software, *i.e.* software sold by Kodak, onto a PC in order to be able to transfer pictures to it, which is antithetical to the *automatic and without user intervention* claim element.

No inferences should be drawn that the list filed herewith represents a comprehensive investigation or that any material disclosed is equivalent to the subject invention. The Examiner is requested to review the document(s) and determine the extent of the materiality of the document disclosures with respect to the present invention.

The discussion of any art and the citation of any document(s) herein or in the papers filed contemporaneously herewith is not to be construed as an admission that the art or document disclosure is necessarily within the invention field of endeavor, that the art or document disclosure is necessarily prior in time to a particular date which may be relevant to the instant

patent application, and/or that the art or document disclosure is otherwise necessarily prior art as defined by the patent law with respect to the instant invention and application.

Also, there is reserved the right to later set forth how the instant invention is distinguished over the disclosure of any document or other art, including the disclosures of the art and document(s) recited herein, that may be cited by the Examiner in rejecting a claim in the instant patent application. The recitation herein of the art and document(s) is not to be construed as an assertion that more pertinent art could not possibly be in existence.

It is respectfully submitted that all currently pending claims are in condition for allowance and, therefore, that a formal notice to that effect is earnestly solicited.

Respectfully submitted,

By: _____
Jeffrey W. Salmon, Esq.
Registration No. 37,435

Dated: June 18, 2007
Enclosures:    Form PTO-1449
**WELSH & KATZ, LTD.**
120 South Riverside Plaza, 22nd Floor
Chicago, Illinois  60606
Telephone:    (312) 655-1500
Facsimile:    (312) 655-1501
E-mail: jwsalmon@welshkatz.com

| Form PTO-1449<br>(Rev. 8-88) | U.S. Department of Commerce<br>Patent and Trademark Office | | Attorney Docket No.<br>0757/96910 | | Serial No.<br>11/078,778 | |
|---|---|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT<br>(Use several sheets if necessary) | | | Applicant<br>Michael Tasler | | | |
| | | | Filing Date<br>03/11/05 | | Group No.<br>2181 | |

### U.S. PATENT DOCUMENTS

| Examiner<br>Initial* | Document<br>Number | Date | Name | Class | Subclass | Filing Date<br>If Appropriate |
|---|---|---|---|---|---|---|
| | 6,147,703 | 12/19/1996 | Miller, et al. | | | |
| | 5,402,170 | 03/28/1995 | Parulski, et al. | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | Document Number | Date | Country | Class | Subclass | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| | Kodak DC20 Camera Manual (37 pages) |
| | Kodak DC 25 Camera Manual (47 pages) |
| | Kodak Picture Easy Software (1 page) |
| | Kodak Picture Works Software (2 pages) |

| Examiner | Date Considered |
|---|---|
| | |

*Examiner:    Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

PAP0022790

EXHIBIT

D



Scott Stimpson <stimpsonlaw@gmail.com>

## questions on the plan

**Kawula, Walter <wjkawula@welshkatz.com>**                          **Mon, Jun 2, 2008 at 6:49 PM**
To: stimpsonlaw@gmail.com
Cc: "White, James" <jpwhite@welshkatz.com>, "Cwik, Joseph" <jecwik@welshkatz.com>,
jkfee@morganlewis.com

Mr. Stimpson,

Jim White asked that I respond to your email.

1) We are processing third party documents to meet the June 13 date. We are not withholding third party documents, and intend to produce all responsive documents by June 13th. However, we understand our discovery obligations to be continuing, and if we identify additional responsive documents, we will produce those, too

2) We are waiting for the Court to rule on the motion for clarification. When the Court rules, we will advise you further in this regard.

3) We are not withholding documents on relevancy grounds. We have produced responsive documents in the past, and are producing responsive documents now, without holding any documents back on grounds of relevancy. Given that we are producing documents on June 13th, and that we are not withholding documents on relevancy grounds, we don't understand your question. However, just to be clear, the Court has ordered the following:

p.        Because liability and damages issues have been bifurcated for discovery and for trial [,]

          and discovery on the issue of damages and willfulness is stayed pending a

          determination of liability, discovery requests related to these issues are not permitted.

See, Dkt. No. 77, p. 5. We understand that you are not seeking documents in violation of this order.

**From:** Scott Stimpson [mailto:stimpsonlaw@gmail.com]
**Sent:** Monday, June 02, 2008 4:07 PM
**To:** White, James; Cwik, Joseph
**Cc:** J. Fee
**Subject:** questions on the plan

Gentlemen:

1) What is the status of your third party production?  Are they all being produced on June 13?

2) Why are you not producing the pre-May 31, 2007 Casio-related privileged documents on June 13?

3) Are you unwilling to agree to tell us if you decide to hold back documents on relevance grounds?

Scott

--
Scott D. Stimpson
The Law Office of Scott D. Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
email: stimpsonlaw@gmail.com
phone: 203-258-8412

Disclaimer: This email is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy, or distribute this message. If you have received this communication in error, please notify me immediately by email and delete the original message.



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------------X
CASIO INC., 570 Mount Pleasant Avenue,              :
Dover, New Jersey  07801                            :
                                                    :        Civil Action No. 1:06 CV 01751
                        Plaintiff,                  :        Judge:  Gladys Kessler
                                                    :
       v.                                           :
                                                    :
PAPST LICENSING GMBH & CO. KG,                      :
Bahnhofstrasse 33, 78112 Georgen,                   :
Germany                                             :
                                                    :
                        Defendant.                  :
-----------------------------------------------------------------X
-----------------------------------------------------------------X
PAPST LICENSING GMBH & CO. KG,                      :
Bahnhofstrasse 33, 78112 Georgen,                   :
Germany                                             :
                                                    :
                        Counter-Plaintiff,          :
                                                    :
       v.                                           :
                                                    :
CASIO INC., 570 Mount Pleasant Avenue,              :
Dover, New Jersey 07801, and CASIO COMPUTER         :
CO., LTD., 6-2, Honmachi 1-chome, Shibuya-ku, Tokyo :
151-8543, Japan                                     :
                                                    :
                        Counter-Defendants.  :
-----------------------------------------------------------------X
```

## [PROPOSED] ORDER

Upon consideration of the Motion of Plaintiff and Counter-Defendant, Casio, Inc. to

Compel and for Sanctions, it is hereby

**ORDERED**, that the Motion to Compel is **granted,** in that all Papst objections to

Casio Inc.'s outstanding Interrogatories and Document Requests are waived, and Papst shall

provide full responses to the Interrogatories and a complete document production within ten

(10) days of the date of this Order; and it is further

      **ORDERED** that Casio Inc.'s Request for Sanctions is **granted** in that 1) the terms

proposed by Casio Inc. with respect to scheduling and case management are adopted for this

action, including the bifurcation of discovery and trial on the issues of willfulness and

damages until such a time as liability is determined; 2) Casio Inc.'s proposed case schedule

will be adopted; 3) Papst shall pay all of Casio Inc.'s attorneys' fees and costs associated

with this motion; and 4) Counsel for Casio Inc. is directed to submit a proposed Scheduling

Order consistent with the provisions of this Order, and a schedule of expenses and fees

within ten (10) days of this Order.


DATED:_____

                                  _____

                                  Gladys Kessler
                                  United States District Judge

**CERTIFICATE OF SERVICE**

I certify that on this 20th day of April 2007, copies of this MOTION OF CASIO INC. TO COMPEL AND FOR SANCTIONS, the accompanying MEMORANDUM OF LAW IN SUPPORT OF CASIO INC.'S MOTION TO COMPEL AND FOR SANCTIONS, and PROPOSED ORDER were served on counsel for defendant PAPST LICENSING GMBH & CO. KG, as follows:

**VIA ELECTRONIC MAIL**

Joseph E. Cwik
Welsh & Katz, Ltd.
120 S. Riverside Plaza, 22nd Floor
Chicago, IL 60606
Direct Phone: (312) 526-1622



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASIO INC.

               Plaintiff,

      v.

PAPST LICENSING GMBH & CO. KG,
               Defendant.

_____

PAPST LICENSING GMBH & CO. KG,
               Counter-Plaintiff

      v.

CASIO INC. and
CASIO COMPUTER CO., LTD.

               Counter-Defendants

Civil Action No. 1:06 CV 01751

Judge: Gladys Kessler

Magistrate Judge: Deborah A Robinson

Next court deadline: June 15, 2007 –
Exchange of Witness Lists

**PAPST LICENSING GMBH & CO. KG'S MOTION FOR EXTENSION OF
TIME TO PRODUCE ADDITIONAL DOCUMENTS**

      Defendant and Counter-Plaintiff Papst Licensing GmbH & Co. KG ("Papst

Licensing") will be producing extensive documents beginning on Monday, June 11,

2007. Additional documents will need to be obtained from Germany, reviewed and

processed. Therefore, Papst Licensing respectfully moves for an extension of time to

produce additional documents pursuant to Magistrate Judge Robinson's May 31, 2007

Order. In support thereof, Papst Licensing states as follows:

      On May 31, 2007, U.S. Magistrate Judge Robinson heard oral argument on Casio

Inc.'s Motion to Compel and for Sanctions. A copy of the transcript from this hearing

1

and the Court's related Minute Entry are attached hereto as Exhibit A.  In its oral ruling, the Court stated "First, the Court orders that complete responses – that is, without objections, which have been waived by the failure to respond in a timely fashion – be served within 10 calendar days of today's date."  (Ex. A, p. 27.)

Although the Order is not clear as to whether Papst Licensing has also been ordered to produce its responsive documents within the same 10 calendar days (as opposed to only responding in writing to Casio's written discovery requests), Papst Licensing is diligently assembling documents and plans to produce as many as  10,200 pages of documents on June 11, 2007 that are responsive the Casio's very wide scope of requested documents.  Papst Licensing will also serve its supplemental responses to Casio's document requests and interrogatories on June 11, 2007.  However, because it will be physically impossible to produce all of Papst Licensing's responsive documents by June 11, 2007, Papst Licensing respectfully requests an extension of time of fourteen days, until June 25, 2007.  Should Papst Licensing be ready to produce additional documents before June 25, 2007, those documents will be produced as soon as they are ready on a rolling basis.

Many reasons exist why Papst Licensing is unable to produce each and every responsive document by Monday, June 11, 2007.  First, Papst Licensing is a German company and many of its responsive documents are written in German and are located in Germany.  While Papst Licensing's counsel has already assembled some documents from Papst Licensing, other Papst Licensing documents were only recently shipped from Germany and are not due to arrive until Friday, June 8, 2007 at the earliest.  Once the German documents are received, Papst Licensing's attorneys must determine which

documents are responsive to Casio's requests, conduct a privilege and a confidentiality review, and then work with a third-party document management vendor to process the documents into the agreed to electronic format of production. Specifically, the Joint Case Management Plan states that:

> (a)    The parties agree to produce all responsive hard copy and electronic documents in single-page Tagged Image File Format ("TIFF") with an accompanying Summation or Concordance load file. To the extent available, the load file shall contain for each document the beginning Bates number, the ending Bates number, a description of the source from which the document came, a description of the computer from which the document came, the associated file name, and the associated directory path for the document.

[Docket # 28, pp. 17-18]

Despite this complicated and time consuming process, Papst Licensing expects that it will still produce as many as 10,200 pages of documents on June 11, 2007. However, given that many other documents still need to be reviewed and processed, Papst Licensing expects that it will take up to fourteen additional days to produce its additional responsive documents.

On June 8, 2007, counsel for Papst Licensing, Joseph E. Cwik, attempted to reach counsel for Casio, Jeffrey Gold, by both telephone and e-mail in an attempt to meet and confer on this issue pursuant to Local Rule 7(m). As of the time of drafting this motion, Casio has not yet responded with its position on the motion.

WHEREFORE, Papst Licensing respectfully requests that this Court enter an order granting Papst Licensing an extension of time of fourteen days, until June 25, 2007, to produce its additional responsive documents.

Dated:  June 8, 2007

Campbell Killefer (Bar. No. 268483)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4000


Jerold B. Schnayer
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza ● 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

**Attorneys for Defendant/Counter-Plaintiff Papst Licensing GmbH & Co. KG**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon the following counsel for Plaintiff and Counterclaim Defendant Casio Inc. and Counterclaim Defendant Casio Computer Co., Ltd. through the Court's ECF electronic service and by regular U.S. mail, postage prepaid, this June 8, 2007:

J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004

Jeffrey M. Gold
Laura Krawczyk
MORGAN LEWIS & BROCKIUS LLP
101 Park Avenue
New York, New York 10178

Scott D. Stimpson
The Law Office of Scott Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
**Counsel for Casio Inc.**

Campbell Killefer