**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

_____

This Document Relates To:
MEI and JVC v. Papst, No. 07-cv-1222

**Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880**

**MEI, JVC, AND THEIR U.S. SUBSIDIARIES' UNOPPOSED MOTION FOR
LEAVE TO FILE AN AMENDED COMPLAINT AND COUNTERCLAIMS**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and ¶ 19 of the Court's

April 8, 2008 Second Practice & Procedure Order, Camera Manufacturers Matsushita Electric

Industrial Company, Ltd. and Victor Company of Japan ("MEI" and "JVC," respectively), and

their U.S. subsidiaries, Panasonic Corporation of North America and JVC Company of America

("Panasonic" and "JVC America," respectively, and the "U.S. Subsidiaries," collectively),

hereby move for leave to amend their Complaint (for MEI and JVC) and Answers and

Counterclaims (for each of the U.S. Subsidiaries) to add a new claim for declaratory judgment of

unenforceability of the patents-in-suit, United States Patents No. 6,470,399 B1 ("the '399 patent")

and 6,895,449 B2 ("the '449 patent"). The new claim is alleged in Counts III and IV of the

accompanying proffered Amended Pleadings. MEI, JVC and their U.S. Subsidiaries have

obtained the evidence that serves as the basis for the new claim through discovery in this action.

Pursuant to Local Rule 7(m), counsel for the Camera Manufacturers conferred with

counsel for Papst, and Papst does not oppose this motion, subject to Papst retaining its right to

respond to Amended Pleadings in accordance with the Federal Rules (i.e., to answer or move to

dismiss the new claims). Papst also does not necessarily agree with all of the grounds for the

motion stated herein.  This motion is filed prior to the deadline set by the Court for amendment of pleadings.

The grounds for this motion are set forth more fully in the accompanying Statement of Points and Authorities.

Dated: June 25, 2008

By: /s/ Rachel M. Capoccia
Richard de Bodo  (Ca. Bar No. 128199)
Rachel M. Capoccia (Ca. Bar No. 187160)
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4694
Telecopier: (310) 785-4601
E-Mail: rdebodo@hhlaw.com
          rmcapoccia@hhlaw.com

Attorneys for Plaintiffs
MATSUSHITA ELECTRIC INDUSTRIAL CO.,
LTD.,  VICTOR COMPANY OF JAPAN, LTD.,
PANASONIC CORPORATION OF NORTH
AMERICA and JVC COMPANY OF AMERICA.

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** _____ This Document Relates To: MEI and JVC v. Papst, No. 07-cv-1222 | **Misc. Action No. 07-493 (RMC) MDL Docket No. 1880** |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MEI, JVC, AND THEIR U.S. SUBSIDIARIES' UNOPPOSED MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND COUNTERCLAIMS**

Matsushita Electric Industrial Company, Ltd. and Victor Company of Japan ("MEI" and "JVC," respectively), and their U.S. subsidiaries, Panasonic Corporation of North America and JVC Company of America ("Panasonic" and "JVC America," respectively, and the "U.S. Subsidiaries," collectively), hereby submit this statement of points and authorities in support of their motion for leave to amend their complaint and answers and counterclaims to add a claim for declaratory judgment of unenforceability of the patents-in-suit, United States Patents No. 6,470,399 B1 ("the '399 patent") and 6,895,449 B2 ("the '449 patent").

**Background**

This action was made a part of *In re Papst Licensing GmbH & Co. KG Patent Litigation*, MDL No. 1880.  Under this Court's Second Practice and Procedure Order, fact discovery as to liability began on March 20, 2008, and "[m]otions to… amend the pleadings shall be filed no later than June 25, 2008."  (PO ¶ 19).

Through discovery, MEI, JVC and their U.S. Subsidiaries learned that Michael Tasler, the sole inventor of the '399 patent authored a Master's Degree Thesis in 1996 that constitutes prior art

3

to the '399 and '449 patents.  Despite Tasler's obvious awareness of the Thesis, it was not disclosed to the PTO.  Consistent with the deadline to amend pleadings, MEI, JVC and their U.S. Subsidiaries now seek leave to amend their pleadings to add new claims (Counts III and IV) for a declaratory judgment that the patents-in-suit are unenforceable due to inequitable conduct.  MEI, JVC and their U.S. Subsidiaries' proffered Amended Pleadings are attached hereto, pursuant to Local Civil Rule 7(i).

### Points and Authorities

Rule 15(a) of the Federal Rules of Civil Procedure, which governs the amendment of pleadings, expressly provides that leave to amend shall be "freely given when justice so requires." Fed.R.Civ.P. 15(a); *accord, e,g., Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). [1] Indeed, even if a party delays in seeking leave to amend – a situation that has not occurred here – courts grant leave to amend as long as the opposing party is not prejudiced by the delay.  *See Djourbachi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 91-92 (D.D.C. 2005).  Rule 15's liberal approach to amendments is based on the sound policy of seeking, where possible, to resolve disputes comprehensively and on the merits.  *See Dove v. Washington Metropolitan Area Transit Authority*, 221 F.R.D. 246, 247 (D.D.C. 2004).

Here, the evidence that forms the basis for the new claim was recently produced by Papst in discovery, and MEI, JVC and their U.S. Subsidiaries were not aware of it at the time they filed their previous Pleadings.  Moreover, MEI, JVC and their U.S. Subsidiaries' motion for leave to amend is in accordance with the deadline set by the Court for such amendments.  Papst, moreover, has consented to this motion, and it is in no way prejudiced by the proposed amendments.  Fact

---

[1] Although an appeal in this action would be heard by the Federal Circuit, that Court applies D.C. Circuit law to procedural issues. *See, e.g., McGinley v. Franklin Sports, Inc.,* 262 F.3d 1339, 1357 (Fed. Cir. 2001).

4

discovery on liability does not end for nearly six months, expert discovery does not commence until 2009, and no trial date has been set.

## Conclusion

For the foregoing reasons, MEI, JVC and their U.S. Subsidiaries respectfully request that the Court grant their motion for leave to amend and permit the filing of the attached Amended Pleadings.

Dated: June 25, 2008

By: /s/ Rachel M. Capoccia
Richard de Bodo  (Ca. Bar No. 128199)
Rachel M. Capoccia (Ca. Bar No. 187160)
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4694
Telecopier: (310) 785-4601
E-Mail: rdebodo@hhlaw.com
        rmcapoccia@hhlaw.com

Attorneys for Plaintiffs
MATSUSHITA ELECTRIC INDUSTRIAL CO.,
LTD.,  VICTOR COMPANY OF JAPAN, LTD.,
PANASONIC CORPORATION OF NORTH
AMERICA and JVC COMPANY OF AMERICA.

**<u>CERTIFICATE OF SERVICE</u>**

I, Rachel M. Capoccia, hereby certify that on this 25th day of June, 2008, a true and correct copy of the foregoing document was served on all counsel of record by filing it through the United States District Court for the District of Columbia Electronic Case Filing System.


/s/ Rachel M. Capoccia
Attorney for Plaintiffs
MATSUSHITA ELECTRIC INDUSTRIAL CO.,
LTD.,  VICTOR COMPANY OF JAPAN, LTD.,
PANASONIC CORPORATION OF NORTH
AMERICA and JVC COMPANY OF AMERICA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** | **Misc. Action No. 07-493 (RMC) MDL Docket No. 1880** |
| This Document Relates To: MEI and JVC v. Papst, No. 07-cv-1222 | |

**<u>PROPOSED ORDER</u>**

Having considered MEI, JVC and their U.S. Subsidiaries' Unopposed Motion for Leave to File An Amended Complaint and Counterclaims, and the entire record herein,

**IT IS HEREBY ORDERED** as follows:

1.    MEI, JVC and their U.S. Subsidiaries' Unopposed Motion for Leave to File Amended Complaint, Answers and Counterclaims is **GRANTED**; and

2.    The Clerk is directed to file the following pleadings, which are attached to the Motion, on the date on which this Order is entered:

a.    MEI and JVC's Second Amended Complaint for Declaratory Judgment of Non-Infringement, Invalidity and Unenforceability of Patents and Jury Demand.

b.    Panasonic Corporation of North America's First Amended Answer to Papst Licensing's Counterclaims and Counterclaims.

c.    JVC Company of America's First Amended Answer to Papst Licensing's Counterclaims and Counterclaims

Dated:  June __, 2008

_____
Judge Rosemary M. Collyer
United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel M. Capoccia, hereby certify that on this 25th day of June, 2008, a true and correct copy of the foregoing document was served on all counsel of record by filing it through the United States District Court for the District of Columbia Electronic Case Filing System.


/s/ Rachel M. Capoccia
Attorney for Plaintiffs
MATSUSHITA ELECTRIC INDUSTRIAL CO.,
LTD.,  VICTOR COMPANY OF JAPAN, LTD.,
PANASONIC CORPORATION OF NORTH
AMERICA and JVC COMPANY OF AMERICA

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| |
|---|

**IN RE PAPST LICENSING GMBH & CO. KG LITIGATION**

————————————————

**This Document Relates To:**

**MEI and JVC v. Papst Licensing, No. 1:07-CV-01222 (GK)**

**Misc. Action No. 07-493 (RMC)**
**MDL Docket No. 1880**

### SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF PATENTS AND JURY DEMAND

Plaintiffs Matsushita Electric Industrial Co., Ltd. ("MEI") and Victor Company of Japan, Ltd. ("JVC"), bring this action against Papst Licensing GmbH & Co. KG ("Papst Licensing") for a declaration that MEI and JVC's products do not infringe two patents purportedly owned by Papst Licensing, and a declaration that those two patents are invalid and unenforceable.

### Parties

1.      Plaintiff Matsushita Electric Industrial Co., Ltd. is a Japanese corporation with its principal place of business at 1006, Oaza-Kadoma, Kadoma City, Osaka, Japan.

2.      Plaintiff Victor Company of Japan, Limited is a Japanese corporation with its principal place of business at 3-12, Moriya-cho, Kanagawa-ku, Yokohama, Kanagawa, Japan.

3.      MEI manufactures and sells a wide range of consumer electronics products, including digital cameras and camcorders sold under the Panasonic label.

4.      JVC manufactures and sells a wide range of consumer electronics products, including digital camcorders.

5.      Upon information and belief, Papst Licensing is a company existing under the laws of The Federal Republic of Germany with its principal place of business at Bahnhofstrasse 33, 78112 St. Georgen, Germany.

6.      Upon information and belief, Papst Licensing does not manufacture or sell any consumer products.  Its sole business is to acquire and attempt to license or enforce intellectual property rights.

## Patents-in-Suit

7.      Papst Licensing has held itself out to be the owner of United States Patent No. 6,470,399 B1 ("the '399 patent"), entitled "Flexible Interface for Communication Between a Host and an Analog I/O Device Connected to the Interface Regardless of the Type of the I/O Device," which issued on October 22, 2002.

8.      Papst Licensing has also held itself out to be the owner of United States Patent No. 6,895,449 B2 ("the '449 patent"), entitled "Flexible Interface for Communication Between a Host and an Analog I/O Device Connected to the Interface Regardless the Type of the I/O Device," which issued on May 17, 2005.

9.      Papst Licensing has prosecuted continuations and divisional applications of the '399 and the '449 patents, including pending application No. 11/078,778.

10.     Papst Licensing has told MEI, along with dozens of other companies, that if MEI does not license the '399 and the '449 patents, Papst Licensing will sue MEI for infringing those patents and subject MEI to costly patent litigation that will cause significant injury to MEI's business and reputation.  Papst Licensing has made these threats without conducting an

2

appropriate analysis of MEI's digital cameras, camcorders, or other products it accuses of infringement and with knowledge that those products do not infringe the '399 and the '449 patents.

11.     Papst Licensing has specifically accused MEI products of infringing the '399 patent and the '449 patent on several occasions.  For example, in a letter dated November 27, 2006, Papst Licensing accused several models of Panasonic digital cameras of infringing both patents.  Papst Licensing has repeated its accusations of infringement and threats of litigation during 2006 and 2007, including during meetings with MEI's representatives.

12.     MEI has explained to Papst Licensing in detail on several different occasions why MEI's products do not infringe the '399 patent or the '449 patent, including, without limitation, during meetings in 2006 and 2007.

13.     Notwithstanding the evidence that MEI's products do not infringe the '399 patent or '449 patent, Papst Licensing has continued to demand that MEI pay Papst Licensing royalties for use of the '399 and '449 patents.

14.     MEI has refused to take a license to these patents on the ground that no such license is needed, because MEI's digital cameras, camcorders, and other products do not infringe the '399 and '449 patents.

15.     Papst Licensing has also specifically accused JVC products of infringing the '399 patent and the '449 patent on several occasions.  For example, in a letter dated December 21, 2006, Papst Licensing accused a JVC digital camcorder of infringing both patents.  Papst Licensing has repeated its accusations of infringement and threats of litigation during 2007, including during a  meeting with JVC's representatives.  Papst Licensing has made these threats

3

and accusations without conducting an appropriate analysis of JVC's digital camcorders or other products it accuses of infringement.

16.     Papst Licensing has continued to demand that JVC pay Papst Licensing royalties for use of the '399 and '449 patents.

17.     JVC has refused to take a license to these patents on the ground that no such license is needed, because JVC's digital camcorders and other products do not infringe the '399 and '449 patents.

## Jurisdiction and Venue

18.     This action arises under the Declaratory Judgment Act and the patent laws of the United States. See 28 U.S.C. §§ 2201 and 2202; Title 35 U.S.C. §§ 100 et seq.

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

20.     Venue in this judicial district is proper under at least 28 U.S.C. § 1391(c) and (d).

21.     The '399 and the '449 patents are already being litigated in this District in two other matters. Specifically, Casio, Inc. filed an action against Papst Licensing seeking a declaratory judgment that the '399 and '449 patents are not infringed by Casio products and are invalid. That action is entitled *Casio v. Papst Licensing*, Case No. 1:06-cv-01751-GK. Fujifilm Corporation and Fujifilm U.S.A., Inc. also filed an action in this District seeking a declaratory judgment that the '399 and '449 patents are not infringed by Fujifilm products and are invalid. That action is entitled *Fujifilm Corp. and Fujifilm U.S.A., Inc. v. Papst Licensing GmbH & Co., KG*, Case No. 1:07-cv-01118-GK.

22.     This court has personal jurisdiction over Papst Licensing based, among other things, on its activities in this District. Papst's Licensing's business is to generate revenue by obtaining and enforcing patents. Consistent with this model, Papst has obtained the '399 and

4

'449 patents, and is presently attempting to enforce these same patents in this District against Casio Inc. and Casio Computer Co., Ltd. in *Casio Inc. v. Papst Licensing GmbH & Co., KG*.

23.     An actual and justiciable controversy exists between MEI and JVC, on the one hand, and Papst Licensing, on the other hand, concerning Papst Licensing's claims of infringement of the '399 and the '449 patents and concerning whether those patents are valid.

<u>**Count I**</u>
**(Declaratory Judgment of non-infringement and invalidity of the '399 patent)**

24.     MEI and JVC reallege and incorporate by reference their allegations in paragraphs 1 through 23 above as if fully set forth herein.

25.     MEI has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '399 patent, nor is MEI, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '399 patent.

26.      JVC has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '399 patent, nor is JVC, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '399 patent.

27.     The '399 patent is invalid for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq*., including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

28.     An actual and justiciable controversy exists between MEI and JVC, on the one hand, and Papst Licensing, on the other hand, regarding the alleged infringement and validity of the '399 patent by virtue of the allegations made by Papst Licensing that MEI and JVC and/or their customers are or have been infringing the '399 patent.

\\\LA - 088570/000009 - 391027 v3

29.     This case is an exceptional case pursuant to 35 U.S.C. § 285, entitling MEI and JVC to an award of their attorneys' fees.

## Count II
**(Declaratory Judgment of non-infringement and invalidity of the '449 patent)**

30.     MEI and JVC reallege and incorporate by reference their allegations in paragraphs 1 through 29 above as if fully set forth herein.

31.     MEI has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '449 patent, nor is MEI, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '449 patent.

32.     JVC has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '449 patent, nor is JVC, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '449 patent.

33.     The '449 patent is invalid for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq*., including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

34.     An actual and justiciable controversy exists between MEI and JVC, on the one hand, and Papst Licensing, on the other, regarding the alleged infringement and validity of the '449 patent by virtue of the allegations made by Papst Licensing that MEI and JVC and/or their customers are or have been infringing the '399 patent.

35.     This case is an exceptional case pursuant to 35 U.S.C. § 285, entitling MEI and JVC to an award of their attorneys' fees.

\\\LA - 088570/000009 - 391027 v3

36.     MEI expressly reserves the right to amend this Complaint to add declaratory judgment counts with respect to any continuation or divisional applications relating to the patents-in-suit that may issue after the date this complaint is filed.

### Count III
### (Declaratory Judgment of unenforceability of the '399 patent)

37.     MEI and JVC reallege and incorporate by reference their allegations in paragraphs 1 through 36 as if fully set forth herein.

38.     Papst Licensing contends that the '399 patent is enforceable.

39.     MEI and JVC deny Papst Licensing's contention and allege that the '399 patent is unenforceable by reason of the patent having been procured through inequitable conduct and fraud.

40.     In or about 1996, Michael Tasler, the sole named inventor of the '399 patent, authorized a thesis entitled *Design and Construction of a Universal Data Acquisition and Control System for Scanning Probe Microscopy* (the "Thesis").  The Thesis was in partial fulfillment of the requirements for Mr. Tasler's Master of Arts degree at the University of Texas at Austin.

41.     On information and belief, the Thesis was made publicly available at least through publication in or about December 1995 at the "Texas Instruments 1995 DSP Solution Challenge" contest and through cataloguing in or about August 1996 by the University of Texas in the OCLC Online Computer Library Center, before the filing of the application for the '399 and '449 patents, and is prior art to the '399 and '449 patents.  See Thesis, p. 87.  Mr. Tasler, as an author of the Thesis, was aware of the publication and cataloguing of the Tasler Thesis.

42. The Thesis is material because a reasonable examiner would have considered the information contained in the Thesis important in deciding whether to allow the applications to issue into the '399 and '449 patents.

43. The Thesis is directed toward an interface device to interface a scanning electron microscope with a PC using an industry-standard printer port. Thesis, p. 1, 19. The Thesis is directed to solving the same two problems as the patents, *i.e.* PCs are not fast enough to handle the large amount of data using a direct connection to the scanning electron microscope (p. 14), and the printer port provides compatibility with many different hosts because it is standard on most PCs. Thesis, p. 19. The Thesis describes a "Universal Data Acquisition and Control System for Scanning Probe Microscopy" that interfaces with a PC through the standard printer port. Thesis, p. 1, 19. The Thesis further describes the system as comprising a DSP Motherboard with memory (p. 18), a first connecting device for interfacing with the PC through the standard printer port (p. 19-21), a second connection device, the TLC320AC01, for interfacing the STM scanner with the DSP Motherboard (p. 4-7, 23), where the DSP Motherboard is configured to communicate with the PC via the printer port (p. 19-21) and includes software that communicates with the PC via the standard printer port (p. 30-31).

44. Mr. Tasler and, on information and belief, others substantially involved in the prosecution of the application resulting in the '399 patent were aware or should have been aware of the Thesis and its contents during the time that the application resulting in the '399 patent was pending in the Patent and Trademark Office.

45. During the time that the application resulting in the '399 patent was pending in the Patent and Trademark Office, the Thesis was never disclosed to the patent examiner.

\\\LA - 088570/000009 - 391027 v3

46.     On information and belief, Mr. Tasler and/or others substantially involved in the prosecution of the application resulting in the '399 patent intentionally failed to disclose the Thesis with the intent to deceive or mislead the patent examiner, and/or acted in reckless disregard of their duty to disclose material information.

47.     An actual and justiciable controversy exists between MEI and JVC, on the one hand, and Papst Licensing, on the other, as to whether the '399 patent is enforceable.

48.     Accordingly, MEI and JVC seek and are entitled to a judgment against Papst Licensing that the '399 patent is unenforceable.

### Count IV
### (Declaratory Judgment of unenforceability of the '449 patent)

49.     MEI and JVC reallege and incorporate by reference their allegations in paragraphs 1 through 48 as if fully set forth herein.

50.     Papst Licensing contends that the '449 patent is enforceable.

51.     MEI and JVC deny Papst Licensing's contention and allege that the '449 patent is unenforceable by reason of the patent having been procured through inequitable conduct and fraud.

52.     In or about 1996, Michael Tasler, the sole named inventor of the '449 patent, authorized a thesis entitled *Design and Construction of a Universal Data Acquisition and Control System for Scanning Probe Microscopy* (the "Thesis").  The Thesis was in partial fulfillment of the requirements for Mr. Tasler's Master of Arts degree at the University of Texas at Austin.

53.     On information and belief, the Thesis was made publicly available at least through publication in or about December 1995 at the "Texas Instruments 1995 DSP Solution Challenge" contest and through cataloguing in or about August 1996 by the University of Texas

9

in the OCLC Online Computer Library Center, before the filing of the application for the '399 and '449 patents, and is prior art to the '399 and '449 patents. See Thesis, p. 87. Mr. Tasler, as an author of the Thesis, was aware of the publication and cataloguing of the Tasler Thesis.

54.     The Thesis is material because a reasonable examiner would have considered the information contained in the Thesis important in deciding whether to allow the applications to issue into the '399 and '449 patents.

55.     The Thesis is directed toward an interface device to interface a scanning electron microscope with a PC using an industry-standard printer port. Thesis, p. 1, 19. The Thesis is directed to solving the same two problems as the patents, *i.e.* PCs are not fast enough to handle the large amount of data using a direct connection to the scanning electron microscope (p. 14), and the printer port provides compatibility with many different hosts because it is standard on most PCs. Thesis, p. 19. The Thesis describes a "Universal Data Acquisition and Control System for Scanning Probe Microscopy" that interfaces with a PC through the standard printer port. Thesis, p. 1, 19. The Thesis further describes the system as comprising a DSP Motherboard with memory (p. 18), a first connecting device for interfacing with the PC through the standard printer port (p. 19-21), a second connection device, the TLC320AC01, for interfacing the STM scanner with the DSP Motherboard (p. 4-7, 23), where the DSP Motherboard is configured to communicate with the PC via the printer port (p. 19-21) and includes software that communicates with the PC via the standard printer port (p. 30-31).

56.     Mr. Tasler and, on information and belief, others substantially involved in the prosecution of the application resulting in the '449 patent were aware or should have been aware of the Thesis and its contents during the time that the application resulting in the '449 patent was pending in the Patent and Trademark Office.

57.    During the time that the application resulting in the '449 patent was pending in the Patent and Trademark Office, the Thesis was never disclosed to the patent examiner.

58.    On information and belief, Mr. Tasler and/or others substantially involved in the prosecution of the application resulting in the '449 patent intentionally failed to disclose the Thesis with the intent to deceive or mislead the patent examiner, and/or acted in reckless disregard of their duty to disclose material information.

59.    An actual and justiciable controversy exists between MEI and JVC, on the one hand, and Papst Licensing, on the other, as to whether the '449 patent is enforceable.

60.    Accordingly, MEI and JVC seek and are entitled to a judgment against Papst Licensing that the '449 patent is unenforceable.

## Prayer for relief

WHEREFORE, MEI and JVC pray this Court for the following relief:

A.    A declaration that MEI has not infringed, and is not infringing, the '399 or '449 patents;

B.    A declaration that JVC has not infringed, and is not infringing, the '399 or '449 patents;

C.    A declaration that MEI has not infringed, and is not infringing, any of the claims of any continuation or divisional application relating to the patents-in-suit that may hereafter issue;

     D.      A declaration that JVC has not infringed, and is not infringing, any of the claims of any continuation or divisional application relating to the patents-in-suit that may hereafter issue;

     E.      A declaration that each of the claims of the '399 and '449 patents is invalid;

     F.      A declaration that each of the claims of the '399 and '449 patents is unenforceable;

     G.      An injunction prohibiting Papst Licensing from alleging infringement of the '399 and '449 patents by MEI and its customers;

     H.      An injunction prohibiting Papst Licensing from alleging infringement of the '399 and '449 patents by JVC and its customers;

     I.      An award of damages that MEI and JVC have sustained;

     J.      A declaration that this case is exceptional under 35 U.S.C. § 285, and MEI and JVC should be awarded their reasonable attorney fees and costs incurred in connection with this action; and

     K.      Such other further relief as the Court deems just and proper.

## **Jury Demand**

Plaintiffs MEI and JVC demand a jury trial on all issues so triable.

Dated:  June 25, 2008          HOGAN & HARTSON LLP

               /s/  RachelM. Capoccia
               Richard de Bodo  (Ca. Bar No. 128199)
               Rachel M. Capoccia (Ca. Bar No. 187160)
               1999 Avenue of the Stars
               Suite 1400
               Los Angeles, CA 90067
               Telephone: (310) 785-4694
               Telecopier: (310) 785-4601
               E-Mail: rdebodo@hhlaw.com
                     rmcapoccia@hhlaw.com

\\\LA - 088570/000009 - 391027 v3

ATTORNEYS FOR PLAINTIFFS
MATSUSHITA ELECTRIC INDUSTRIAL CO.,
LTD. AND VICTOR COMPANY OF JAPAN,
LTD.

\\\LA - 088570/000009 - 391027 v3

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel M. Capoccia, hereby certify that on this 25th day of June, 2008, a true and correct copy of the foregoing document was served on all counsel of record by filing it through the United States District Court for the District of Columbia Electronic Case Filing System.

/s/ Rachel M. Capoccia
Attorney for Plaintiffs
MATSUSHITA ELECTRIC INDUSTRIAL
CO., LTD.,  VICTOR COMPANY OF JAPAN,
LTD., PANASONIC CORPORATION OF
NORTH AMERICA and JVC COMPANY OF
AMERICA

14

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

_____

This Document Relates To:
07-cv-1222

Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880

## PANASONIC CORPORATION OF NORTH AMERICA'S FIRST AMENDED ANSWER TO PAPST LICENSING'S COUNTERCLAIMS AND COUNTERCLAIMS

Defendant Panasonic Corporation of North America ("Panasonic") hereby responds to the Counterclaims filed by Papst Licensing GmbH & Co. KG ("Papst"), with the following Answer, Defenses and Counterclaims:

## GENERAL DENIAL

Unless specifically admitted below, Panasonic denies each and every allegation set forth in Papst's Counterclaims.

## RESPONSE TO PARTIES

37.    Panasonic lacks knowledge or information sufficient to form a belief as to whether Papst "is a corporation existing under the laws of The Federal Republic of Germany, and has a principal place of business at Bahnhofstrasse 33, 78112 St. Georgen, Germany."

38.    Admitted.

39.    Admitted.

40.    Admitted.

41.    Panasonic denies that JVC Company of America is a Delaware Corporation.  JVC Company of America is a division of JVC Americas Corp., a Delaware Corporation with its

principal place of business located at 1700 Valley Road, Wayne, NJ 07470.  JVC Americas Corp.

is a wholly owned subsidiary of JVC.  Panasonic denies that Matsushita Electric Industrial Co.,

Ltd. ("MEI") is the ultimate global parent of JVC Company of America, nor is MEI the ultimate

global parent of JVC Americas Corp. or JVC.

## RESPONSE TO JURISDICTION AND VENUE

42.    Admitted.

43.    Admitted.

## RESPONSE TO PATENTS AT ISSUE

44.    Panasonic lacks knowledge or information sufficient to form a belief as to

whether Papst is the lawful owner, by assignment, of the entire right, title and interest in and to

United States Patent No. 6,895,449 ("the '449 patent") and United States Patent No. 6,470,399

("the '399 patent").

45.    Panasonic admits that the '449 patent was issued on May 17, 2005, but denies any

further characterization of the '449 patent.  Panasonic lacks knowledge or information sufficient

to form a belief as to whether the '449 patent is duly and legally issued as alleged in paragraph

45 of the Counterclaims and therefore denies those allegations.

46.    Panasonic admits that the '399 patent was issued on October 22, 2002, but denies

any further characterization of the '399 patent.  Panasonic lacks knowledge or information

sufficient to form a belief as to whether the '399 patent is duly and legally issued as alleged in

paragraph 46 of the Counterclaims and therefore denies those allegations.

## RESPONSE TO CLAIMS FOR RELIEF

47.    Panasonic incorporates its responses in paragraphs 37 through 46 as if fully set

forth herein.

2

48.    Denied.

49.    Denied.

50.    Denied.

51.    Denied.

## RESPONSE TO PAPST'S PRAYER FOR RELIEF

Panasonic denies that Papst is entitled to any relief whatsoever against Panasonic in this action, either as requested in Papst's Counterclaims or otherwise.

## PANASONIC'S AFFIRMATIVE DEFENSES

Further answering Papst's Counterclaims, Panasonic asserts the following defenses:

1.    Papst's Counterclaims fail to state a claim upon which relief can be granted.

2.    Panasonic does not infringe, and has not infringed, any claim of the '399 and/or '449 patents (collectively, the "patents-in-suit"), either literally or under the doctrine of equivalents, by direct, contributory or induced infringement.

3.    All claims of the patents-in-suit are invalid or unenforceable for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq.*, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

4.    Papst is estopped from construing the claims of the patents-in-suit to cover or include, either literally or by application of the doctrine of equivalents, methods used or devices manufactured, used, imported, sold, or offered for sale by Panasonic because of admissions, amendments, and statements to the PTO during prosecution of the applications leading to the issuance of the patents-in-suit, disclosure or language in the specification of the patents-in-suit, and/or limitations in the claims of the patents-in-suit.

5.    The relief sought by Papst is barred in whole or in part by the doctrine of laches.

3

6.    Discovery may reveal evidence that the patents-in-suit are unenforceable by reason of inequitable conduct before the PTO.

7.    Discovery may reveal evidence that Papst is precluded and barred from any recovery of damages or other relief by reason of Papst's unclean hands.

8.    Papst's claim for damages is statutorily limited by 35 U.S.C. §§ 286 and/or 287.

## PANASONIC'S COUNTERCLAIMS

Defendant Panasonic brings this action against Papst for a declaration that Defendant Panasonic's products do not infringe U.S. Patents No. 6,895,449 ("the '449 patent") and 6,470,399 ("the '399 patent") purportedly owned by Papst, and a declaration that those two patents are invalid or unenforceable.

### Parties

1.    Defendant Panasonic Corporation of North America is a Delaware corporation with its principal place of business located at 1 Panasonic Way, Secaucus, NJ 07094.

2.    Panasonic manufactures and sells a wide range of consumer electronics products, including digital cameras and camcorders.

3.    Upon information and belief, Papst is a company existing under the laws of The Federal Republic of Germany with its principal place of business at Bahnhofstrasse 33, 78112 St. Georgen, Germany.

4.    Upon information and belief, Papst does not manufacture or sell any consumer products. Its sole business is to acquire and attempt to license or enforce intellectual property rights.

4

**Patents-in-Suit**

5.    Papst has held itself out to be the owner of United States Patent No. 6,470,399 B1 ("the '399 patent"), entitled "Flexible Interface for Communication Between a Host and an Analog I/O Device Connected to the Interface Regardless of the Type of the I/O Device," which issued on October 22, 2002.

6.    Papst has also held itself out to be the owner of United States Patent No. 6,895,449 B2 ("the '449 patent"), entitled "Flexible Interface for Communication Between a Host and an Analog I/O Device Connected to the Interface Regardless the Type of the I/O Device," which issued on May 17, 2005.

7.    Papst has prosecuted continuations and divisional applications of the '399 and the '449 patents, including pending application No. 11/078,778.

**Jurisdiction and Venue**

8.    This action arises under the Declaratory Judgment Act and the patent laws of the United States.  See 28 U.S.C. §§ 2201 and 2202; Title 35 U.S.C. §§ 100 *et seq*.

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

10.    Venue in this judicial district is proper under at least 28 U.S.C. § 1391(c) and (d).

11.    This court has personal jurisdiction over Papst by virtue of Papst's filing of its Counterclaims against Panasonic in this matter.

12.    An actual and justiciable controversy exists between Panasonic, on the one hand, and Papst, on the other hand, concerning Papst's claims of infringement of the '399 and the '449 patents and concerning whether those patents are valid.

### Count I
### (Declaratory Judgment of non-infringement, invalidity, and unenforceability of the '399 patent)

13.     Panasonic realleges and incorporates by reference its allegations in paragraphs 1 through 12 above as if fully set forth herein.

14.     Panasonic has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '399 patent, nor is Panasonic, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '399 patent.

15.     The '399 patent is invalid or unenforceable for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq*., including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

16.     An actual and justiciable controversy exists between Panasonic, on the one hand, and Papst, on the other hand, regarding the alleged infringement and validity of the '399 patent by virtue of the allegations made by Papst that Panasonic and/or its customers are or have been infringing the '399 patent.

17.     This case is an exceptional case pursuant to 35 U.S.C. § 285, entitling Panasonic to an award of their attorneys' fees.

### Count II
### (Declaratory Judgment of non-infringement, invalidity, and unenforceability of the '449 patent)

18.     Panasonic realleges and incorporates by reference its allegations in paragraphs 1 through 17 above as if fully set forth herein.

19.     Panasonic has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '449 patent, nor is Panasonic, either literally or under the

6

doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '449 patent.

20.     The '449 patent is invalid or unenforceable for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq.*, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

21.     An actual and justiciable controversy exists between Panasonic, on the one hand, and Papst, on the other, regarding the alleged infringement and validity of the '449 patent by virtue of the allegations made by Papst that Panasonic and/or its customers are or have been infringing the '399 patent.

22.     This case is an exceptional case pursuant to 35 U.S.C. § 285, entitling Panasonic to an award of their attorneys' fees.

23.     Panasonic expressly reserves the right to amend these Counterclaims to add declaratory judgment counts with respect to any continuation or divisional applications relating to the patents-in-suit that may issue after the date these Counterclaims are filed.

### Count III
### (Declaratory Judgment of unenforceability of the '399 patent)

24.     Panasonic realleges and incorporates by reference its allegations in paragraphs 1 through 23 as if fully set forth herein.

25.     Papst Licensing contends that the '399 patent is enforceable.

26.     Panasonic denies Papst Licensing's contention and alleges that the '399 patent is unenforceable by reason of the patent having been procured through inequitable conduct and fraud.

27.    In or about 1996, Michael Tasler, the sole named inventor of the '399 patent, authorized a thesis entitled *Design and Construction of a Universal Data Acquisition and Control System for Scanning Probe Microscopy* (the "Thesis").  The Thesis was in partial fulfillment of the requirements for Mr. Tasler's Master of Arts degree at the University of Texas at Austin.

28.    On information and belief, the Thesis was made publicly available at least through publication in or about December 1995 at the "Texas Instruments 1995 DSP Solution Challenge" contest and through cataloguing in or about August 1996 by the University of Texas in the OCLC Online Computer Library Center, before the filing of the application for the '399 and '449 patents, and is prior art to the '399 and '449 patents.  See Thesis, p. 87.  Mr. Tasler, as an author of the Thesis, was aware of the publication and cataloguing of the Tasler Thesis.

29.    The Thesis is material because a reasonable examiner would have considered the information contained in the Thesis important in deciding whether to allow the applications to issue into the '399 and '449 patents.

30.    The Thesis is directed toward an interface device to interface a scanning electron microscope with a PC using an industry-standard printer port.  Thesis, p. 1, 19.  The Thesis is directed to solving the same two problems as the patents, *i.e.* PCs are not fast enough to handle the large amount of data using a direct connection to the scanning electron microscope (p. 14), and the printer port provides compatibility with many different hosts because it is standard on most PCs.  Thesis, p. 19.  The Thesis describes a "Universal Data Acquisition and Control System for Scanning Probe Microscopy" that interfaces with a PC through the standard printer port.  Thesis, p. 1, 19.  The Thesis further describes the system as comprising a DSP Motherboard with memory (p. 18), a first connecting device for interfacing with the PC through

8

the standard printer port (p. 19-21), a second connection device, the TLC320AC01, for interfacing the STM scanner with the DSP Motherboard (p. 4-7, 23), where the DSP Motherboard is configured to communicate with the PC via the printer port (p. 19-21) and includes software that communicates with the PC via the standard printer port (p. 30-31).

31.    Mr. Tasler and, on information and belief, others substantially involved in the prosecution of the application resulting in the '399 patent were aware or should have been aware of the Thesis and its contents during the time that the application resulting in the '399 patent was pending in the Patent and Trademark Office.

32.    During the time that the application resulting in the '399 patent was pending in the Patent and Trademark Office, the Thesis was never disclosed to the patent examiner.

33.    On information and belief, Mr. Tasler and/or others substantially involved in the prosecution of the application resulting in the '399 patent intentionally failed to disclose the Thesis with the intent to deceive or mislead the patent examiner, and/or acted in reckless disregard of their duty to disclose material information.

34.    An actual and justiciable controversy exists between Panasonic and Papst Licensing  as to whether the '399 patent is enforceable.

35.    Accordingly, Panasonic seeks and is entitled to a judgment against Papst Licensing that the '399 patent is unenforceable.

## Count IV
### (Declaratory Judgment of unenforceability of the '449 patent)

36.    Panasonic realleges and incorporates by reference its allegations in paragraphs 1 through 35 as if fully set forth herein.

37.    Papst Licensing contends that the '449 patent is enforceable.

9

38.    Panasonic denies Papst Licensing's contention and alleges that the '449 patent is unenforceable by reason of the patent having been procured through inequitable conduct and fraud.

39.    In or about 1996, Michael Tasler, the sole named inventor of the '449 patent, authorized a thesis entitled *Design and Construction of a Universal Data Acquisition and Control System for Scanning Probe Microscopy* (the "Thesis").  The Thesis was in partial fulfillment of the requirements for Mr. Tasler's Master of Arts degree at the University of Texas at Austin.

40.    On information and belief, the Thesis was made publicly available at least through publication in or about December 1995 at the "Texas Instruments 1995 DSP Solution Challenge" contest and through cataloguing in or about August 1996 by the University of Texas in the OCLC Online Computer Library Center, before the filing of the application for the '399 and '449 patents, and is prior art to the '399 and '449 patents.  See Thesis, p. 87.  Mr. Tasler, as an author of the Thesis, was aware of the publication and cataloguing of the Tasler Thesis.

41.    The Thesis is material because a reasonable examiner would have considered the information contained in the Thesis important in deciding whether to allow the applications to issue into the '399 and '449 patents.

42.    The Thesis is directed toward an interface device to interface a scanning electron microscope with a PC using an industry-standard printer port.  Thesis, p. 1, 19.  The Thesis is directed to solving the same two problems as the patents, *i.e.* PCs are not fast enough to handle the large amount of data using a direct connection to the scanning electron microscope (p. 14), and the printer port provides compatibility with many different hosts because it is standard on most PCs.  Thesis, p. 19.  The Thesis describes a "Universal Data Acquisition and Control

10

System for Scanning Probe Microscopy" that interfaces with a PC through the standard printer port. Thesis, p. 1, 19. The Thesis further describes the system as comprising a DSP Motherboard with memory (p. 18), a first connecting device for interfacing with the PC through the standard printer port (p. 19-21), a second connection device, the TLC320AC01, for interfacing the STM scanner with the DSP Motherboard (p. 4-7, 23), where the DSP Motherboard is configured to communicate with the PC via the printer port (p. 19-21) and includes software that communicates with the PC via the standard printer port (p. 30-31).

43.     Mr. Tasler and, on information and belief, others substantially involved in the prosecution of the application resulting in the '449 patent were aware or should have been aware of the Thesis and its contents during the time that the application resulting in the '449 patent was pending in the Patent and Trademark Office.

44.     During the time that the application resulting in the '449 patent was pending in the Patent and Trademark Office, the Thesis was never disclosed to the patent examiner.

45.     On information and belief, Mr. Tasler and/or others substantially involved in the prosecution of the application resulting in the '449 patent intentionally failed to disclose the Thesis with the intent to deceive or mislead the patent examiner, and/or acted in reckless disregard of their duty to disclose material information.

46.     An actual and justiciable controversy exists between Panasonic and Papst Licensing as to whether the '449 patent is enforceable.

47.     Accordingly Panasonic seeks and is entitled to a judgment against Papst Licensing that the '449 patent is unenforceable.

**Prayer for Relief**

WHEREFORE, Panasonic prays this Court for the following relief:

A.   A declaration that Panasonic has not infringed, and is not infringing, the '399 or '449 patents;

B.   A declaration that Panasonic has not infringed, and is not infringing, any of the claims of any continuation or divisional application relating to the patents-in-suit that may hereafter issue;

C.   A declaration that each of the claims of the '399 and '449 patents is invalid or unenforceable;

D.   An injunction prohibiting Papst from alleging infringement of the '399 and '449 patents or of any continuation or divisional application relating to the '399 or '449 patents by Panasonic and its customers;

E.   An award of damages that Panasonic has sustained;

F.   A declaration that this case is exceptional under 35 U.S.C. § 285, and Panasonic should be awarded its reasonable attorney fees and costs incurred in connection with this action; and

G.   Such other further relief as the Court deems just and proper.

## **Jury Demand**

Defendant Panasonic demands a jury trial on all issues so triable.


Dated:  June 25, 2008                    HOGAN & HARTSON LLP

                                        _____/s/ Rachel M. Capoccia_____
                                        Richard de Bodo  (Ca. Bar No. 128199)
                                        Rachel M. Capoccia (Ca. Bar No. 187160)
                                        1999 Avenue of the Stars
                                        Suite 1400
                                        Los Angeles, CA 90067
                                        Telephone: (310) 785-4694

Telecopier: (310) 785-4601
E-Mail: rdebodo@hhlaw.com
      rmcapoccia@hhlaw.com

ATTORNEYS FOR COUNTERCLAIM
DEFENDANT PANASONIC COPORATION OF
NORTH AMERICA

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel M. Capoccia, hereby certify that on this 25th day of June, 2008, a true and correct copy of the foregoing document was served on all counsel of record by filing it through the United States District Court for the District of Columbia Electronic Case Filing System.


          /s/ Rachel M. Capoccia
ATTORNEY FOR COUNTERCLAIM
DEFENDANT PANASONIC COPORATION OF
NORTH AMERICA

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

_____

This Document Relates To:
07-cv-1222

Misc. Action No. 07-493 (RMC)
MDL Docket No. 1880

## JVC COMPANY OF AMERICA'S FIRST AMENDED ANSWER TO PAPST LICENSING'S COUNTERCLAIMS AND COUNTERCLAIMS

Defendant JVC Company of America ("JVC America") hereby responds to the Counterclaims filed by Papst Licensing GmbH & Co. KG ("Papst"), with the following Answer, Defenses and Counterclaims:

## GENERAL DENIAL

Unless specifically admitted below, JVC America denies each and every allegation set forth in Papst's Counterclaims.

## RESPONSE TO PARTIES

37.     JVC America lacks knowledge or information sufficient to form a belief as to whether Papst "is a corporation existing under the laws of The Federal Republic of Germany, and has a principal place of business at Bahnhofstrasse 33, 78112 St. Georgen, Germany."

38.     Admitted.

39.     Admitted.

40.     Admitted.

41.     JVC America denies that JVC Company of America is a Delaware Corporation. JVC Company of America is a division of JVC Americas Corp., a Delaware Corporation with its

principal place of business located at 1700 Valley Road, Wayne, NJ 07470.  JVC Americas Corp.

is a wholly owned subsidiary of JVC.  JVC America denies that Matsushita Electric Industrial

Co., Ltd. ("MEI") is the ultimate global parent of JVC Company of America, nor is MEI the

ultimate global parent of JVC Americas Corp. or JVC.

## RESPONSE TO JURISDICTION AND VENUE

42.     Admitted.

43.     Admitted.

## RESPONSE TO PATENTS AT ISSUE

44.     JVC America lacks knowledge or information sufficient to form a belief as to

whether Papst is the lawful owner, by assignment, of the entire right, title and interest in and to

United States Patent No. 6,895,449 ("the '449 patent") and United States Patent No. 6,470,399

("the '399 patent").

45.     JVC America admits that the '449 patent was issued on May 17, 2005, but denies

any further characterization of the '449 patent.  JVC America lacks knowledge or information

sufficient to form a belief as to whether the '449 patent is duly and legally issued as alleged in

paragraph 45 of the Counterclaims and therefore denies those allegations.

46.     JVC America admits that the '399 patent was issued on October 22, 2002, but

denies any further characterization of the '399 patent.  JVC America lacks knowledge or

information sufficient to form a belief as to whether the '399 patent is duly and legally issued as

alleged in paragraph 46 of the Counterclaims and therefore denies those allegations.

## RESPONSE TO CLAIMS FOR RELIEF

47.     JVC America incorporates its responses in paragraphs 37 through 46 as if fully set

forth herein.

2

48.    Denied.

49.    Denied.

50.    Denied.

51.    Denied.

## RESPONSE TO PAPST'S PRAYER FOR RELIEF

JVC America denies that Papst is entitled to any relief whatsoever against JVC America

in this action, either as requested in Papst's Counterclaims or otherwise.

## JVC AMERICA'S AFFIRMATIVE DEFENSES

Further answering Papst's Counterclaims, JVC America asserts the following defenses:

1.    Papst's Counterclaims fail to state a claim upon which relief can be granted.

2.    JVC America does not infringe, and has not infringed, any claim of the '399

and/or '449 patents (collectively, the "patents-in-suit"), either literally or under the doctrine of

equivalents, by direct, contributory or induced infringement.

3.    All claims of the patents-in-suit are invalid or unenforceable for failing to comply

with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq.*,

including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

4.    Papst is estopped from construing the claims of the patents-in-suit to cover or

include, either literally or by application of the doctrine of equivalents, methods used or devices

manufactured, used, imported, sold, or offered for sale by JVC America because of admissions,

amendments, and statements to the PTO during prosecution of the applications leading to the

issuance of the patents-in-suit, disclosure or language in the specification of the patents-in-suit,

and/or limitations in the claims of the patents-in-suit.

5.    The relief sought by Papst is barred in whole or in part by the doctrine of laches.

3

6.    Discovery may reveal evidence that the patents-in-suit are unenforceable by reason of inequitable conduct before the PTO.

7.    Discovery may reveal evidence that Papst is precluded and barred from any recovery of damages or other relief by reason of Papst's unclean hands.

8.    Papst's claim for damages is statutorily limited by 35 U.S.C. §§ 286 and/or 287.

## JVC AMERICA'S COUNTERCLAIMS

Defendant JVC America brings this action against Papst for a declaration that JVC America's products do not infringe U.S. Patents No. 6,895,449 ("the '449 patent") and 6,470,399 ("the '399 patent") purportedly owned by Papst Licensing, and a declaration that those two patents are invalid or unenforceable.

### Parties

1.    Defendant JVC America is a division of JVC Americas Corp., a Delaware Corporation with its principal place of business located at 1700 Valley Road, Wayne, NJ 07470.

2.    JVC America manufactures and sells a wide range of consumer electronics products, including digital camcorders.

3.    Upon information and belief, Papst is a company existing under the laws of The Federal Republic of Germany with its principal place of business at Bahnhofstrasse 33, 78112 St. Georgen, Germany.

4.    Upon information and belief, Papst does not manufacture or sell any consumer products.  Its sole business is to acquire and attempt to license or enforce intellectual property rights.

**Patents-in-Suit**

5.     Papst has held itself out to be the owner of United States Patent No. 6,470,399 B1

("the '399 patent"), entitled "Flexible Interface for Communication Between a Host and an

Analog I/O Device Connected to the Interface Regardless of the Type of the I/O Device,"

which issued on October 22, 2002.

6.     Papst has also held itself out to be the owner of United States Patent No.

6,895,449 B2 ("the '449 patent"), entitled "Flexible Interface for Communication Between a

Host and an Analog I/O Device Connected to the Interface Regardless the Type of the I/O

Device," which issued on May 17, 2005.

7.     Papst has prosecuted continuations and divisional applications of the '399 and the

'449 patents, including pending application No. 11/078,778.

**Jurisdiction and Venue**

8.     This action arises under the Declaratory Judgment Act and the patent laws of the

United States.  See 28 U.S.C. §§ 2201 and 2202; Title 35 U.S.C. §§ 100 *et seq*.

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

10.     Venue in this judicial district is proper under at least 28 U.S.C. § 1391(c) and (d).

11.     This court has personal jurisdiction over Papst by virtue of Papst's filing of its

Counterclaims against JVC America in this matter.

12.     An actual and justiciable controversy exists between MEI and JVC, on the one

hand, and Papst, on the other hand, concerning Papst's claims of infringement of the '399 and

the '449 patents and concerning whether those patents are valid.

### Count I
### (Declaratory Judgment of non-infringement, invalidity, and unenforceability of the '399 patent)

13.    JVC America realleges and incorporates by reference its allegations in paragraphs 1 through 12 above as if fully set forth herein.

14.    JVC America has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '399 patent, nor is JVC America, either literally or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '399 patent.

15.    The '399 patent is invalid or unenforceable for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq*., including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

16.    An actual and justiciable controversy exists between JVC America, on the one hand, and Papst, on the other hand, regarding the alleged infringement and validity of the '399 patent by virtue of the allegations made by Papst that JVC America and/or its customers are or have been infringing the '399 patent.

17.    This case is an exceptional case pursuant to 35 U.S.C. § 285, entitling JVC America to an award of their attorneys' fees.

### Count II
### (Declaratory Judgment of non-infringement, invalidity, and unenforceability of the '449 patent)

18.    JVC America realleges and incorporates by reference its allegations in paragraphs 1 through 17 above as if fully set forth herein.

19.    JVC America has not directly infringed, contributed to infringement of, or induced infringement of any valid claim of the '449 patent, nor is JVC America, either literally

or under the doctrine of equivalents, directly infringing, contributing to direct infringement of, or inducing infringement of any valid claim of the '449 patent.

20.    The '449 patent is invalid or unenforceable for failing to comply with one or more of the requirements for patentability set forth in Title 35 U.S.C. § 101, *et seq*., including, without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

21.    An actual and justiciable controversy exists between JVC America, on the one hand, and Papst, on the other, regarding the alleged infringement and validity of the '449 patent by virtue of the allegations made by Papst that JVC America and/or its customers are or have been infringing the '399 patent.

22.    This case is an exceptional case pursuant to 35 U.S.C. § 285, entitling JVC America to an award of their attorneys' fees.

23.    JVC America expressly reserves the right to amend these Counterclaims to add declaratory judgment counts with respect to any continuation or divisional applications relating to the patents-in-suit that may issue after the date these Counterclaims are filed.

## **Count III**
### **(Declaratory Judgment of unenforceability of the '399 patent)**

24.    JVC America realleges and incorporates by reference its allegations in paragraphs 1 through 23 as if fully set forth herein.

25.    Papst Licensing contends that the '399 patent is enforceable.

26.    JVC America denies Papst Licensing's contention and alleges that the '399 patent is unenforceable by reason of the patent having been procured through inequitable conduct and fraud.

27.     In or about 1996, Michael Tasler, the sole named inventor of the '399 patent, authorized a thesis entitled *Design and Construction of a Universal Data Acquisition and Control System for Scanning Probe Microscopy* (the "Thesis").  The Thesis was in partial fulfillment of the requirements for Mr. Tasler's Master of Arts degree at the University of Texas at Austin.

28.     On information and belief, the Thesis was made publicly available at least through publication in or about December 1995 at the "Texas Instruments 1995 DSP Solution Challenge" contest and through cataloguing in or about August 1996 by the University of Texas in the OCLC Online Computer Library Center, before the filing of the application for the '399 and '449 patents, and is prior art to the '399 and '449 patents.  See Thesis, p. 87.  Mr. Tasler, as an author of the Thesis, was aware of the publication and cataloguing of the Tasler Thesis.

29.     The Thesis is material because a reasonable examiner would have considered the information contained in the Thesis important in deciding whether to allow the applications to issue into the '399 and '449 patents.

30.     The Thesis is directed toward an interface device to interface a scanning electron microscope with a PC using an industry-standard printer port.  Thesis, p. 1, 19.  The Thesis is directed to solving the same two problems as the patents, *i.e.* PCs are not fast enough to handle the large amount of data using a direct connection to the scanning electron microscope (p. 14), and the printer port provides compatibility with many different hosts because it is standard on most PCs.  Thesis, p. 19.  The Thesis describes a "Universal Data Acquisition and Control System for Scanning Probe Microscopy" that interfaces with a PC through the standard printer port.  Thesis, p. 1, 19.  The Thesis further describes the system as comprising a DSP Motherboard with memory (p. 18), a first connecting device for interfacing with the PC through

8

the standard printer port (p. 19-21), a second connection device, the TLC320AC01, for interfacing the STM scanner with the DSP Motherboard (p. 4-7, 23), where the DSP Motherboard is configured to communicate with the PC via the printer port (p. 19-21) and includes software that communicates with the PC via the standard printer port (p. 30-31).

31.    Mr. Tasler and, on information and belief, others substantially involved in the prosecution of the application resulting in the '399 patent were aware or should have been aware of the Thesis and its contents during the time that the application resulting in the '399 patent was pending in the Patent and Trademark Office.

32.    During the time that the application resulting in the '399 patent was pending in the Patent and Trademark Office, the Thesis was never disclosed to the patent examiner.

33.    On information and belief, Mr. Tasler and/or others substantially involved in the prosecution of the application resulting in the '399 patent intentionally failed to disclose the Thesis with the intent to deceive or mislead the patent examiner, and/or acted in reckless disregard of their duty to disclose material information.

34.    An actual and justiciable controversy exists between JVC America and Papst Licensing  as to whether the '399 patent is enforceable.

35.    Accordingly, JVC America seeks and is entitled to a judgment against Papst Licensing that the '399 patent is unenforceable.

## <u>Count IV</u>
### (Declaratory Judgment of unenforceability of the '449 patent)

36.    JVC America realleges and incorporates by reference its allegations in paragraphs 1 through 35 as if fully set forth herein.

37.    Papst Licensing contends that the '449 patent is enforceable.

9

38.     JVC America denies Papst Licensing's contention and alleges that the '449 patent is unenforceable by reason of the patent having been procured through inequitable conduct and fraud.

39.     In or about 1996, Michael Tasler, the sole named inventor of the '449 patent, authorized a thesis entitled *Design and Construction of a Universal Data Acquisition and Control System for Scanning Probe Microscopy* (the "Thesis").  The Thesis was in partial fulfillment of the requirements for Mr. Tasler's Master of Arts degree at the University of Texas at Austin.

40.     On information and belief, the Thesis was made publicly available at least through publication in or about December 1995 at the "Texas Instruments 1995 DSP Solution Challenge" contest and through cataloguing in or about August 1996 by the University of Texas in the OCLC Online Computer Library Center, before the filing of the application for the '399 and '449 patents, and is prior art to the '399 and '449 patents.  See Thesis, p. 87.  Mr. Tasler, as an author of the Thesis, was aware of the publication and cataloguing of the Tasler Thesis.

41.     The Thesis is material because a reasonable examiner would have considered the information contained in the Thesis important in deciding whether to allow the applications to issue into the '399 and '449 patents.

42.     The Thesis is directed toward an interface device to interface a scanning electron microscope with a PC using an industry-standard printer port.  Thesis, p. 1, 19.  The Thesis is directed to solving the same two problems as the patents, *i.e.* PCs are not fast enough to handle the large amount of data using a direct connection to the scanning electron microscope (p. 14), and the printer port provides compatibility with many different hosts because it is standard on most PCs.  Thesis, p. 19.  The Thesis describes a "Universal Data Acquisition and Control

10

System for Scanning Probe Microscopy" that interfaces with a PC through the standard printer port. Thesis, p. 1, 19. The Thesis further describes the system as comprising a DSP Motherboard with memory (p. 18), a first connecting device for interfacing with the PC through the standard printer port (p. 19-21), a second connection device, the TLC320AC01, for interfacing the STM scanner with the DSP Motherboard (p. 4-7, 23), where the DSP Motherboard is configured to communicate with the PC via the printer port (p. 19-21) and includes software that communicates with the PC via the standard printer port (p. 30-31).

43.     Mr. Tasler and, on information and belief, others substantially involved in the prosecution of the application resulting in the '449 patent were aware or should have been aware of the Thesis and its contents during the time that the application resulting in the '449 patent was pending in the Patent and Trademark Office.

44.     During the time that the application resulting in the '449 patent was pending in the Patent and Trademark Office, the Thesis was never disclosed to the patent examiner.

45.     On information and belief, Mr. Tasler and/or others substantially involved in the prosecution of the application resulting in the '449 patent intentionally failed to disclose the Thesis with the intent to deceive or mislead the patent examiner, and/or acted in reckless disregard of their duty to disclose material information.

46.     An actual and justiciable controversy exists between JVC America and Papst Licensing as to whether the '449 patent is enforceable.

47.     Accordingly JVC America seeks and is entitled to a judgment against Papst Licensing that the '449 patent is unenforceable.

**Prayer for Relief**

WHEREFORE, JVC America prays this Court for the following relief:

11

A.    A declaration that JVC America has not infringed, and is not infringing, the '399 or '449 patents;

B.    A declaration that JVC America has not infringed, and is not infringing, any of the claims of any continuation or divisional application relating to the patents-in-suit that may hereafter issue;

C.    A declaration that each of the claims of the '399 and '449 patents is invalid or unenforceable;

D.    An injunction prohibiting Papst from alleging infringement of the '399 and '449 patents or of any continuation or divisional application relating to the '399 or '449 patents by JVC America and its customers;

E.    An award of damages that JVC America has sustained;

F.    A declaration that this case is exceptional under 35 U.S.C. § 285, and JVC America should be awarded its reasonable attorney fees and costs incurred in connection with this action; and

G.    Such other further relief as the Court deems just and proper.

### **Jury Demand**

Defendant JVC America demands a jury trial on all issues so triable.

Dated:  June 25, 2008                     HOGAN & HARTSON LLP

                                          _____/s/ Rachel M. Capoccia_____
                                          Richard de Bodo  (Ca. Bar No. 128199)
                                          Rachel M. Capoccia (Ca. Bar No. 187160)
                                          1999 Avenue of the Stars
                                          Suite 1400
                                          Los Angeles, CA 90067
                                          Telephone: (310) 785-4694

Telecopier: (310) 785-4601
E-Mail: rdebodo@hhlaw.com
      rmcapoccia@hhlaw.com

ATTORNEYS FOR COUNTERCLAIM
DEFENDANT JVC COMPANY OF AMERICA.

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel M. Capoccia, hereby certify that on this 25th day of June, 2008, a true and correct copy of the foregoing document was served on all counsel of record by filing it through the United States District Court for the District of Columbia Electronic Case Filing System.


　　　　　　/s/ Rachel M. Capoccia
ATTORNEY FOR COUNTERCLAIM
DEFENDANT JVC COMPANY OF AMERICA.