UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING GMBH & CO. KG LITIGATION | Misc. Action No. 07-493 (RMC) |
| This Document Relates To: Casio v. Papst, 06-cv-1751 | MDL Docket No. 1880 |

### NOTICE OF FILING OF PETITION FOR WRIT OF MANDAMUS

Please be advised that on July 3, 2008 Papst Licensing GmbH & Co. KG filed a

Petition for Writ of Mandamus in the United States Court of Appeals for the Federal

Circuit concerning the scope of a waiver of attorney-client and work product privileges

imposed upon Papst as a discovery sanction for failing to respond to Casio's discovery in

a timely fashion.  A copy of the Petition filed is attached hereto.

Dated: July 3, 2008

/s/ Joseph E. Cwik
James P. White
Jerold B. Schnayer
Walter J. Kawula, Jr.
Joseph E. Cwik
WELSH & KATZ, LTD.
120 S. Riverside Plaza • 22nd Floor
Chicago, IL  60606
(312) 655-1500
**Counsel for Papst Licensing GmbH & Co. KG**

1

Misc. No. _____

# United States Court of Appeals

*for the*

# Federal Circuit

*In re* PAPST LICENSING GMBH & CO. KG

Petitioner

On Petition for a Writ of Mandamus to the
United States District Court for the District of Columbia
(Hon. Rosemary M. Collyer)

## PETITION FOR WRIT OF MANDAMUS

A. Sidney Katz
James P. White
Jerold B. Schnayer
Walter J. Kawula, Jr.
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza • 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

***Counsel for the Petitioners***
*Papst Licensing GmbH & Co. KG*

COUNSEL PRESS, LLC        (202) 783-7288  •  (888) 277-3259

## CERTIFICATE OF INTEREST

Pursuant to Circuit Rules 21(a)(2) and 47.4(a)(1), counsel for the petitioners certifies the following:

1. The full name of every party represented by me is:

Papst Licensing GmbH & Co. KG

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

None.

4. N/A

5. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in the court are:

A. Sidney Katz, James P. White, Jerold B. Schnayer, Joseph E. Cwik, Walter J. Kawula, Richard W. McLaren, Jr., of WELSH & KATZ, LTD., 120 South Riverside Plaza, 22nd Floor, Chicago, Illinois 60606. Robert F. Muse, Jacob A. Stein, Kerrie C. Dent, Joshua A. Levy, of STEIN MITCHELL & MEZINES, LLP, 1100 Connecticut Ave, NW, Washington, D.C. 20036. Campbell Killefer, of VENABLE LLP, 575 7th Street, N.W., Washington, D.C. 20004.

i

Dated:  July 2, 2008

Respectfully submitted,

*A. Sidney Katz*

A. Sidney Katz
James P. White
Jerold B. Schnayer
Walter J. Kawula, Jr.
Joseph E. Cwik

Attorneys for Petitioner Papst Licensing Gmbh & Co. KG

ii

# TABLE OF CONTENTS

Certificate of Interest ........................................................... i

Table of Contents. ............................................................. iii

Table of Authorities ......................................................... iv

Petition For Writ of Mandamus ......................................... 1

A.    Relief Sought ...................................................... 1

B.    Issues Presented .................................................. 2

C.    Facts Necessary to Understand Issues Presented ................. 2

D.    Reasons Why The Writ Should Issue ............................. 10

1.    The Requirements for Mandamus Review are Satisfied ......... 10

2.    Mandamus Is Appropriate Because The District Court Abused
Its Discretion..............................................................13

i.    It Was An Abuse of Discretion for The District Court
To Order Papst To Produce Privileged Materials That
Came Into Existence After May 31, 2007 ..................... 14

ii.    Papst Should Not Be Required To Produce Privileged
Materials That Do Not Relate Solely To Casio's
Products............................................................. 22

Conclusion ...................................................................... 24

Certificate of Service ......................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Ash v. Ford Motor Co.*,
No. 06-cv-210,
2008 U.S. Dist. LEXIS 43003 (N.D. Miss. May 30, 2008) .................................20

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ........................................................................21

*In re Cheney*,
334 F.3d 1096 (D.C. Cir. 2003) .......................................................................11

*In re Echostar Commc'ns Corp.*,
448 F.3d 1294 (Fed. Cir. 2006)............................................................. 13, 16, 17

*In re Martin Marietta Corp.*,
856 F.2d 619 (4th Cir. 1988)...........................................................................12

*In re Pioneer Hi-Bred Int'l, Inc.*,
238 F.3d 1370 (Fed. Cir. 2001) .......................................................................13

*In re Regents of Univ. of Calif.*,
101 F.3d 1386 (Fed. Cir. 1996)........................................................................11

*In re Seagate Technology, LLC*,
497 F.3d 1360 (Fed. Cir. 2007).................................................. 12, 13, 16, 21, 22

*In re Sealed Case*,
29 F.3d 715 (D.C. Cir. 1994) ..........................................................................14

*In re Spalding Sports Worldwide, Inc.*,
203 F.3d 800 (Fed. Cir. 2000)..........................................................................13

*Monsanto v. Ralph*,
382 F.3d 1374 (Fed. Cir. 2004)........................................................................10

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) .......................................................................................12

## **Rules**

D.C. Local Rule 16.3 ................................................................................................5

Fed. R App. Proc. 21 ..............................................................................................1

Fed. R. Civ. P. 26 ........................................................................................... 3, 4, 5

Fed. R. Evid. 612 ..................................................................................................20

## PETITION FOR WRIT OF MANDAMUS

### A.    Relief Sought

Petitioner Papst Licensing GmbH & Co. KG ("Papst") respectfully requests,

pursuant to Fed. R App. Proc. 21, a writ of mandamus concerning the scope of a

waiver of attorney-client and work product privileges imposed upon Papst as a

discovery sanction for failing to respond to Casio's discovery in a timely fashion.

In particular, Papst seeks an order instructing the district court to vacate that

portion of its order of June 9, 2008 requiring Papst to produce, in response to

Casio's discovery requests, all privileged and work product materials that came

into being on or before May 6, 2008, a year after the Magistrate's Order imposing

the sanction.  (A copy of the June 9, 2008 Order that is the subject of this Petition

is attached as Exhibit A.)  By vacating this portion of the District Court order, this

Court will (1) avoid punishing Papst so excessively in this MDL proceeding that its

ability to enforce its patents will be seriously and materially hampered and  (2)

avoid generating constant procedural chaos where one MDL party, Casio, is able to

use privileged materials in depositions, substantive briefs, *Markman* hearings and

the like, but other parties will not be able to use privileged materials in this MDL

proceeding which was consolidated for the purpose of coordinated discovery.

Papst further asks for (1) a ruling that Papst need only produce privileged

and attorney-client materials that came into being on or before May 31, 2007 (the

1

date of the Magistrate Judge's original order imposing sanctions); and (2) a ruling

that Papst may limit its production of privileged and work product documents to

documents related solely to Casio's products.  By limiting the scope of the waiver

imposed as a discovery sanction in these two respects, the purpose of the sanction

can be satisfied without unduly contravening the important policies underlying the

attorney-client and work product protections.

### B.    Issues Presented

1.    Whether the district court abused its discretion in ruling that Papst

must produce privileged and work product materials in response to

Casio's discovery requests as to any document or communication that

came into being on or before May 6, 2008 (the date the district court

upheld the Magistrate Judge's imposition of the discovery sanction)

instead of May 31, 2007 (the date that the original order imposing

sanctions was issued), where the imposition of sanctions was based on

conduct that took place prior to May 31, 2007; and

2.    Whether the district court abused its discretion in ruling that the scope

of waiver imposed as a discovery sanction applied to all privileged

materials in Papst's possession, and not just those that related solely to

Casio's products, where the practical effects of such a ruling are that

2

procedural chaos will ensue and that Papst effectively will be denied a fair opportunity to enforce its patents.

### C.    Facts Necessary To Understand Issues Presented

In October of 2006, Casio Inc. ("Casio") brought a Declaratory Judgment suit against Papst in the district court of D.C. seeking a declaration of noninfringement and invalidity of two patents owned by Papst. (Case No. 06-1751.) The patents relate to technology used in digital cameras. Papst filed its Answer and Counterclaim on January 3, 2007, alleging patent infringement by Casio and also alleging infringement by Casio Computer Company, Ltd., a Japanese corporation ("Casio Japan"), who had to be served through the Hague Service Convention.

The district court issued an Order Setting the Initial Scheduling Conference for February 1, 2007, which was postponed until March 20, 2007, because Casio Japan had not yet been served. (06-1751 1/29/07 Minute Order.)

On March 2, 2007, counsel for Papst and counsel for Casio U.S. spoke on the telephone concerning discovery matters. The parties, however, disagreed as to whether this conversation constituted a Rule 26(f) conference, which is generally required before a party can serve discovery. *See* Fed. R. Civ. P. 26(d) ("[A] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).") Counsel for Casio contended that this was a Rule 26(f)

3

conference, and proceeded to serve Papst with interrogatories and document requests after the conversation. Counsel for Papst, on the other hand, understood that this was not a proper Rule 26(f) conference because, *inter alia,* Casio Japan had not yet been served and did not participate in the conversation, and counsel for Casio U.S. could provide no information concerning discovery from Casio Japan. (3/7/07 Letter to J. Gold from J. Cwik, Ex. B.)

On March 6, 2007, Papst filed a Motion to Continue the March 20, 2007 Initial Scheduling Conference for at least two months because Casio Japan had not yet been served as the summons was being processed under the Hague Convention, and because the parties could not hold a proper Rule 26(f) conference or initial case management conference without Casio Japan. (06-1751 Dkt. No. 12, p. 3.) In response, Casio stated that "Casio and Papst have had their Rule 26(f) conference, and pursuant to Rule 26, discovery should begin." (06-1751 Dkt. No. 13, p. 2.)

A week later, on March 13, 2007, the district court continued the Initial Scheduling Conference until May 14, 2007, and also ordered "that discovery between Plaintiff and Defendant is to proceed . . ." (06-1751 Docket No. 16.) The parties disagreed about the implications of the Court's March 13th order that discovery "is to proceed." Casio construed the order to mean that Papst was to respond to the interrogatories and document requests served upon Papst on March 2, 2007. From that date, the 30 day response would have been due on April 2.

4

Taken from the date of the District Court's March 13 scheduling order, it would have been due by April 12. However, Papst believed that the order merely required the parties to proceed with discovery as contemplated by the Federal Rules of Civil Procedure, which required the parties to first conduct a proper Rule 26(f) conference before being permitted to serve discovery. On April 20, 2007, Casio moved for an order compelling Papst to respond to the discovery and for sanctions. (06-1751 Dkt. Nos. 22, 23 and 24.)

During this time, the parties engaged in further Rule 26(f) discussions, the last of which took place on May 3, 2007. The parties then filed their Joint Meet and Confer statement pursuant to Local Rule 16.3 on May 7, 2007 (07-1751 Dkt. No. 28), and on that day, Papst informed Casio that it considered the Rule 26(f) process complete, and Papst considered all pending discovery requests to be served as of May 7, 2007. (5/7/07 Letter to J. Gold from J. Cwik, Ex. C.) The district court held the Initial Scheduling Conference on May 14, 2007 and, among other things, referred the case to Magistrate Judge Robinson for all discovery disputes, including the pending Motion to Compel. (06-1751 Dkt. No. 34, p. 2.)

On May 30, 2007, Papst served Casio with its responses to the interrogatories and document requests given to Papst on March 2, 2007. This was within 30 days of the date that Papst informed Casio that Papst considered the discovery to have been properly served. And, if Casio were correct as to the

5

procedural dates of service, Papst's responses were, at most, two and a half months late.

On May 31, 2007, one day after Papst served its discovery responses, Magistrate Judge Robinson granted Casio's Motion to Compel and for Sanctions, and ordered "that complete responses — that is, without objections, which have been waived by the failure to respond in a timely fashion — be served within 10 calendar days of today's date." (5/31/07 Transcript at 27, Ex. D.) The Magistrate Judge also imposed as a sanction the costs to Casio, including reasonable attorney's fees, of moving to compel and for sanctions. (*Id.*) The sanction was issued very early in the litigation with only two court hearings having occurred and no depositions having been taken. Moreover, there was no showing of any real harm to Casio, other than its fees and expenses in connection with the filing of its sanctions motion.

On June 27, 2007, the Magistrate Judge denied Papst's motion for clarification concerning the scope of the waiver, so that under the May 31st Order, Papst was deemed to have waived its protections under the work product doctrine and the attorney-client and other privileges. (*See* Minute Order dated June 27, 2007, Ex. E attached and 06-1751 Dkt. No. 37.) The next day, on June 28, 2007, Papst sent Casio a check for $34,039.29 (the full amount requested by Casio) as

payment for the discovery sanction ordered by Magistrate Judge Robinson on May 31, 2007.

Meanwhile, on June 14, 2007, Papst filed its Objections to the Magistrate Judge's imposition of the discovery sanction of waiver of privilege in her Order of May 31. (06-1751 Dkt. No. 43.) However, on June 15, 2007, before these Objections were ruled upon by the district court in Case No. 06-1751, Papst sued Fujifilm for patent infringement in the Northern District of Illinois. (N.D. Ill. Dkt. 07-cv-03401.) Fujifilm sued Papst on June 21, 2007 seeking declarations of non-infringement and patent invalidity. (D.D.C. Dkt. 07-01118.) Papst sued Olympus on June 28, 2007 for patent infringement in the District of Delaware. (D. Del. Dkt. 07-cv-00415), and sued Samsung in the Central District of California. (C.D. Cal. Dkt. No. 07-cv-04249.) Matsushita and Victory Company of Japan sued Papst on July 6, 2007 seeking the same declarations. (07-01222 Dkt. No. 1.) All of these lawsuits concerned the same two patents that were at-issue in the Papst-Casio lawsuit and the same kind of accused products, digital cameras.

Discovery in the original case between Casio and Papst was then stayed on July 17, 2007 "pending a consolidated determination by the MDL panel." (06-1751 Minute Order of 7/17/07.) Papst requested the MDL consolidation and none of the camera manufacturers, including Casio, objected to the request for consolidation, although the camera manufacturers did object to Papst's proposed venue for the

MDL proceeding. On November 5, 2007, the United States Judicial Panel on Multidistrict Litigation issued a Transfer Order in which five pending actions involving Papst and the various digital camera manufacturers, including the Casio lawsuit, were centralized under 28 U.S.C. § 1407, and were all transferred to the District of Columbia District Court, under MDL Docket No. 1880. The Casio v. Papst case was assigned case No. 07-493.

On November 30, 2007, the MDL district court further stayed all discovery until a discovery order was established by the court. (MDL Case No. 07-493 Docket (hereafter "MDL Dkt.") No. 3.) The stay of discovery was not lifted until March 20, 2008, eight months after the stay order was entered in the Papst-Casio lawsuit. (MDL Dkt. No. 36.)

On January 31, 2008, the MDL district court held an initial case management conference with the parties. Soon thereafter, several new related cases were filed. Papst sued Ricoh on February 28, 2008 for patent infringement on the same two at-issue patents. (N.D. Ill. Dkt. 08-1218.) Hewlett-Packard sued Papst on March 31, 2008 seeking declarations of non-infringement and invalidity on the same two-at-issue patents. (N.D. Cal. Dkt. 08-1732.) Papst sued Nikon on May 2, 2008 for patent infringement on the same two at-issue patents. (N.D. Ill. Dkt. 08-2510.) All of these lawsuits were transferred to the present MDL for consolidated pretrial activities.

8

Finally, on May 6, 2008, the district court in the MDL affirmed Magistrate Judge Robinson's May 31, 2007 Order imposing discovery sanctions upon Papst, and ordered Papst to "respond to Casio USA's initial discovery requests without objection based on attorney client privilege, consulting expert privilege, or attorney work product." (MDL Dkt. No. 82 pp. 8-9, Ex. F attached.)

On May 16, 2008, Papst filed a Motion for Clarification concerning the scope of the waiver imposed by the district court. (MDL Dkt. No. 101.) The issues on which Papst sought further clarification included:

1.    Whether the Privileged Materials that Papst must produce may be limited to materials that relate solely to Casio's products;

2.    Whether the Privileged Materials that Papst must produce may be limited to those materials that existed as of May 31, 2007, when the initial order allowing sanctions was issued; and

3.    Whether the Privileged Materials that Papst must produce may be disclosed only to Casio and not to the other parties to this MDL proceeding.

On June 9, 2008, the Court ruled on Papst's Motion for Clarification as follows:

(1) Papst may not limit its production of otherwise privileged documents to documents related "solely to Casio's products," and Papst must respond to Casio's discovery requests without objection based on attorney-client privilege, consulting expert privilege, or attorney work product as to any document or communication that came into being on or before May 6, 2008.

9

This requirement extends to all Casio discovery requests, not just its initial discovery; and

(2) Papst has not waived its privileges as to the other Camera Manufacturers.

(MDL Dkt. No. 123 p. 11, Ex. A attached.)

### D. Reasons Why The Writ Should Issue

This case meets the requirements for mandamus review because the district court abused its discretion when, as a discovery sanction for a delay in responding to discovery requests, it improperly ordered Papst to produce all documents responsive to Casio's discovery requests protected by the attorney-client privilege and work product privilege and other protections that existed as of May 6, 2008, thereby effectively depriving Papst of a fair opportunity to enforce its patents in this litigation. A writ should issue here to prevent the wrongful disclosure of these privileged and work product documents in order to safeguard the important policies behind the attorney client privilege and work product protections and the administration of justice in this case. In reviewing sanctions orders, this Court applies the law of the regional circuit from which the case arose, in this case, the D.C. Circuit. *Monsanto v. Ralph*, 382 F.3d 1374, 1380 (Fed. Cir. 2004).

### 1.    The Requirements for Mandamus Review are Satisfied

In determining whether mandamus is warranted, the D.C. Circuit considers "whether the party seeking the writ has any other adequate means, such as a direct appeal, to attain the desired relief," and "whether that party will be harmed in a

10

way not correctable on appeal." *In re Cheney*, 334 F.3d 1096, 1102 (D.C. Cir. 2003).

These two elements are satisfied here. First, the privilege would be lost if review were denied until final judgment. Papst has been ordered to produce all privilege and work product materials responsive to Casio's discovery requests that were in existence as of May 6, 2008. Once these materials are produced to Casio, any privilege associated with them will be lost as to Casio. *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996).("appeal after disclosure of privileged communication is an inadequate remedy"). This Court has recognized that preserving privilege up to its proper limits has "substantial importance to the administration of justice . . . because an appeal after disclosure of the privileged communication is an inadequate remedy." *Id.* Accordingly, "[a] writ of mandamus may be sought to prevent the wrongful exposure of privileged communications" and documents protected by the work-product privilege. *Id.*

Second, if this matter is not resolved now, the doctrine as interpreted by the district court will undermine the attorney-client privilege and work product doctrine. That is, Papst will have been harmed by being forced to turn over, as a discovery sanction, protected documents that would excessively prejudice Papst in its lawsuits with Casio and its lawsuits with other camera manufacturers, which, in turn, will undermine the policies of the attorney-client and work product privileges

11

and the adversary trial process itself. Papst respectfully submits that the district court's intent to punish Papst for what the Court believed was bad faith on the part of Papst should be balanced against the need for Papst to communicate with counsel and the need for counsel to prepare legal theories and plan strategy without undue and needless interference.

As recently noted by this Court in *Seagate*, the attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Concerning attorney work product protection, this Court went on to state that "[p]rotecting lawyers from broad subject matter of work product disclosure 'strengthens the adversary process, and . . . may ultimately and ideally further the search for the truth." *Id.* at 1375 (quoting *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988)). These important public policies should not be overshadowed by the sanction here, especially considering that the sanction was, at most, based on a 2 1/2 month delay in responding to discovery requests; the sanctioned conduct occurred early in the case and has since been remedied; Papst paid over $34,000 in fees to Casio as part of the sanction; and Casio cannot demonstrate how the delay has caused it any prejudice. The sanction was not commensurate with the alleged conduct. The

sanction is unduly prejudicial to Papst, and is inconsistent with the public policies underlying the attorney-client privilege and work product doctrine.

Finally, the issue of the proper scope of a waiver imposed as a discovery sanction is one of first impression in this Court and the D.C. Circuit. The reported opinions in this Circuit concerning the scope of waiver of privilege address, for example, waiver triggered by reliance on the opinion of counsel in defense to a claim of willful infringement (*see, e.g., In re Seagate*, 497 F.3d 1360; *In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006)), waiver allegedly triggered by the crime-fraud exception, *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000), and waiver triggered by disclosure of materials to third parties, *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001). Papst has been unable to locate any ruling in this Court or the D.C. Circuit that addresses the scope of a waiver imposed as a discovery sanction. Papst submits that because the policies behind a waiver imposed as a discovery sanction (*i.e.* to punish a discovery abuse or deter similar conduct in the future) are different than the policies behind a waiver resulting from a voluntary disclosure for tactical purposes (*i.e.* to prevent a party from using privilege as a sword and a shield), this Court should consider the proper scope of the waiver of privilege in this case.

## 2. *Mandamus Is Appropriate Because The District Court Abused Its Discretion*

13

This Court reviews the trial court's determination of the scope of waiver for an abuse of discretion. *In re Sealed Case*, 29 F.3d 715, 719 (D.C. Cir. 1994). Papst submits that the district court abused its discretion in determining the scope of waiver in this case because (1) the temporal limit of the waiver should have been limited to materials in existence no later than May 31, 2007 (if at all), the date the original order imposing sanctions was issued; and (2) the waiver should have been limited to materials that related solely to Casio's products. Mandamus is also appropriate because there is no clear case law addressing the scope of waiver where the waiver is ordered as a sanction

> i.  **It Was An Abuse of Discretion for The District Court To Order Papst To Produce Privileged Materials That Came Into Existence After May 31, 2007**

As part of its motion for clarification, Papst asked the district court to limit the waiver of privilege to those materials that existed as of May 31, 2007, because that was the date of the original order imposing sanctions. The district court, however, imposed a temporal limitation of nearly a year later:

> The appropriate temporal limitation must be May 6, 2008, the date of this Court's Order denying Papst's objections to the Magistrate Judge's May 31, 2007 order. Accordingly, Papst must respond to Casio's discovery requests without objection based on attorney-client privilege, consulting expert privilege, or attorney work product as to any document or communication that came into being on or before May 6, 2008. This requirement extends to all Casio discovery requests, not just its initial discovery.

(June 9, 2008 Order p. 9, Ex. A attached.)  The district court apparently used this later date because "[t]o hold otherwise would merely reward Papst for its unwarranted discovery delays."  (*Id.* n. 8.)

Papst asks this Court to vacate the district court's order imposing the temporal limitation of May 6, 2008, because the Magistrate Judge's original May 31, 2007 Order allowing sanctions relates to Papst's conduct that took place prior to May 31, 2007, and before this proceeding was made part of an MDL.  The district court's order that Papst must produce privileged and work product materials through May 6, 2008, and its statement that "to hold otherwise would only reward Papst for its unwarranted discovery delays" overlooks the fact that the discovery in the case was stayed for over 8 months during the time between the Magistrate Judge's order and the district court's affirmance of the order, which delay cannot be attributed to Papst.  In essence, the 8 month MDL process was unfairly used to enlarge the scope of waiver even though the MDL panel determined that Papst's MDL petition was proper and none of the camera manufacturers, including Casio, objected to an MDL proceeding being declared. The lower court's June 9, 2008 order, in effect, punishes Papst for conduct that has not been the subject of a motion for sanctions, because the original motion for sanctions was filed over a year earlier, on April 20, 2007. (06-1751 Dkt. Nos. 22-24.)  The windfall result for Casio is that it will receive many more privileged and

work product materials than it would have otherwise received had the delayed MDL process not occurred. Accordingly, Papst asks that it only be required to produce those Privileged Materials in response to Casio's initial discovery requests that existed as of May 31, 2007, since it was the initial discovery requests that were the subject of the original motion to compel.

Although this Court has not issued an opinion concerning the scope of a waiver imposed as a discovery sanction, the Court's opinions in connection with waiver based on a defense to a charge of willful infringement is nevertheless instructive. In *Seagate*, this Court determined the scope of a waiver in cases where the waiving party voluntarily waives a privilege in order to gain a tactical advantage, by applying "principles of fairness" that "serve[] to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones." 497 F.3d at 1372. Also, in *Echostar*, this Court held that the petitioner who had asserted a good faith defense based on opinion of counsel was not required to produce work product materials that were never communicated to the client, because their "relevant value is outweighed by the policies of the work-product doctrine." 448 F.3d at 1305.

In view of the "principles of fairness" and the need to prevent an "inequitable result" discussed in *Seagate*, and the balancing of the various policies

16

at issue when determining the scope of waiver discussed by *Echostar*, the district court should have weighed the relative need to sanction Papst for at most its alleged 2 ½ month delay in responding to the discovery requests (which in a practical sense had no impact on the case) against the policies of the work product doctrine and attorney-client privilege. The Court should have at most limited the scope of waiver of privilege or work product to include the materials before May 31, 2007, because that is the date of the initial order imposing the sanction, and such a temporal limitation would punish Papst for its conduct up to that point without continuing to punish Papst for its conduct after that date, which was not the subject of the motion for sanctions at issue here. Because Papst's alleged improper conduct took place very early in the case with only two court hearings having occurred and no depositions having been taken, Casio was not prejudiced and the alleged delay did not impact the Court's discovery schedule.

Indeed, there was a stay of discovery in this case from July of 2007 until April of 2008 as a result of Papst's request to the panel on multidistrict litigation to consolidate for pretrial discovery, during which time and prior thereto Papst continued to investigate the infringements of Casio and many other camera manufacturers, including the current parties to this MDL proceeding: Casio, Fujifilm, Olympus, Matsushita, Victor Company of Japan, Samsung, Ricoh, Hewlett-Packard and Nikon; and many other companies who are not parties to this

17

MDL proceeding. During this investigation period, Papst also generated many materials protected by the attorney client privilege and/or work product doctrine concerning these many other camera manufacturers who were then being investigated and are now part of the MDL proceeding. To punish Papst for conduct that has not specifically been found to be sanctionable and force Papst to turn over materials that were generated during a time when all discovery was stayed was an abuse of discretion because it will produce an inequitable result.[1]

With the current sanction, discovery will become almost entirely focused on the content of Papst's prior work product and privileged communications rather than the at-issue patents and accused products. Prior to May 31, 2007, Papst was diligently investigating nearly all the camera manufacturers to determine infringement of their products which generated an enormous amount of work product and privileged communications. From May 31, 2007 to May 6, 2008, Papst's investigation of the camera manufacturers continued, and in many areas, increased as many more camera manufacturers became named parties in litigation.

_____

[1] Since the beginning of this case, Papst has produced over 300,000 pages of documents in response to Casio's document requests. Papst provided 618 pages of documents to Casio including documents that concern Casio's products only, were dated prior to May 31, 2007 and that are otherwise protected by the attorney-client privilege and work product doctrine. The remaining privileged documents ordered to be produced on July 9, 2008 will be many thousands of pages more. Papst provided detailed responses to Casio's interrogatories and has paid in full Casio's fees incurred in connection with the underlying motion to compel that resulted in the sanctions being imposed.

As a result, a very large amount privileged and work product materials were generated by Papst. Should the current sanction stand, Papst will be entirely consumed with defending itself and explaining statements from its previous privileged and work product materials rather than focusing on the substantive issues of the case. Depositions, briefs and hearings will undoubtedly focus more on the tangential issue of Papst's privileged and work product materials than the substantive issues of this case. Papst's preparations for depositions and hearings also will necessarily be more focused on trying to anticipate which privileged or work product materials will be used against it rather than being focused on the merits of the case. The overall effect of consuming Papst with these tangential time consuming issues is that Papst may lose the realistic ability to otherwise prosecute its case.

The current waiver also will generate constant procedural chaos where one MDL party, Casio, will use privileged materials in depositions, substantive briefs, *Markman* hearings and the like, but other parties to this MDL proceeding will not use nor even see the privileged materials. Thus, the sanction undermines a key goal of the MDL proceeding, which is to conduct coordinated discovery among all the parties. As an example, Casio will use privileged and work product materials with witnesses during depositions, but then other camera manufacturers need to leave the deposition. Witnesses will surely become confused in trying to keep

track of what privileged knowledge can be shared with which attorneys when non-Casio attorneys ask their own questions.

In addition, to properly prepare its witnesses for depositions, Papst will need to show witnesses the privileged and work product materials that Casio may question them on. However, because the other camera manufacturers will undoubtedly ask the witness what materials were reviewed prior to the deposition, the witness will be forced to then disclose these privileged materials to the other camera manufacturers. Fed. R. Evid. 612; *Ash v. Ford Motor Co.*, No. 06-cv-210 2008, U.S. Dist. LEXIS 43003, *2 (N.D. Miss. May 30, 2008). It is simply not fair to give a witness the Hobson's choice of either properly preparing for a deposition by reviewing all materials knowing full disclosure will occur to the other camera manufacturers, or not preparing for a deposition to prevent the disclosure of privileged information to other camera manufacturers.

Casio also will use privileged and work product materials in briefs and at hearings on issues impacting the entire case, such as claim interpretation, but the other camera manufacturers will be blind to Casio's evidence and related arguments. Because the scope of waiver is not limited to Casio's products, it is likely that Casio will use and take positions concerning privileged and work product evidence addressing even the products of other camera manufactures. In

20

that case, the other camera manufacturers will lose the ability to address evidence relating to their own products.

In addition to causing procedural chaos to the parties and the witnesses, even the Court will be put in the difficult position of having to render opinions on issues relevant to the entire case, such as claim interpretations, based upon privileged and work product evidence submitted by Casio, but not available by others. If the Court elects to rely on certain privileged or work product evidence for an opinion, the Court would be denied the practical ability to discuss that evidence without disclosing the contents to the other camera manufacturers who are not entitled to see the evidence.

Further, the value to Casio of any privileged and work product materials that Papst is ordered to produce is outweighed by important public policies that were not expressly addressed in the Court's May 6, 2008 and June 9, 2008 opinions. (Ex. A and F.)  *See Seagate* 497 F.3d at 1375 ("Protecting lawyers from broad subject matter of work product disclosure 'strengthens the adversary process and . . . may ultimately and ideally further the search for truth.'") (internal citations omitted); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980) ("The purpose of the [work product] privilege, however, is not to protect any interest of the attorney . . . but to protect the adversary trial process

21

itself. It is believed that the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans concerning the case.").

In view of the foregoing, Papst should not be required to produce privileged or work product materials that existed after May 31, 2007. Indeed, even the use of the privilege and work product waiver as a discovery sanction in these circumstances to compel the production of all such materials that existed prior to that date is dubious.

        ii.      **Papst Should Not Be Required To Produce Privileged Materials That Do Not Relate Solely To Casio's Products**

In its motion for clarification, Papst also asked the district court to rule that the privileged materials that Papst was required to produce could be limited to materials that relate solely to Casio's products. However, the district court ruled that "Papst may not limit its production of otherwise privileged documents to documents related 'solely to Casio's products.'" (Ex. A p. 11.) This aspect of the ruling was also an abuse of discretion because, as explained in part D(2)(i) above, it violates principles of fairness and leads to an inequitable result. *See Seagate*, 497 F.3d at 1372. The waiver sanction imposed upon Papst was issued solely in connection with Casio's initial discovery requests served upon Papst before this matter became an MDL proceeding (06-1751 Dkt. No. 43), and the initial Order allowing sanctions related to conduct that was directed toward a single defendant

22

in this MDL proceeding — Casio. Because Papst was in the process of investigating and filing patent infringement suits, or being sued by several other camera manufacturers during this time, Papst also generated during the affected time period a large amount of privileged materials and work product in connection with Papst's efforts to enforce its patent rights against many other companies, a number of which were added to this MDL proceeding. During this time, Papst also was investigating many other camera manufacturers for potential infringement generating again privileged materials and work product unrelated to Casio. By limiting the waiver to only Casio products, this Court will achieve at least three important purposes. First, the limited waiver will greatly reduce the volume of privileged materials to be produced thereby providing Papst a reasonable opportunity to fairly pursue its litigation. Otherwise, as discussed above, discovery will become almost entirely focused on the very large volume of Papst's prior work product and privileged communications rather than preparing the case for a trial on the merits. Second, the limited waiver will eliminate the problem wherein Casio will be submitting and addressing evidence with witnesses and the Court relating to other camera manufacturers, but those same camera manufacturers will not be able to address or even see the evidence concerning their own accused products. Third, the volume of privileged and work product materials that Casio will request the Court to rely on and consider will be significantly be reduced.

23

Consequently, Papst's production of Privileged Material should be limited to materials that specifically relate to Casio's products. In this manner, Papst will suffer the consequences of its alleged bad faith occasioned by its alleged delay in responding to discovery, and Casio will obtain the benefits of the sanction, without completely eviscerating Papst's ability to defend itself and pursue its claims in this lawsuit.

## CONCLUSION

For the reasons stated herein, Papst respectfully requests this Court to vacate that portion of the district court's ruling of June 9, 2008 requiring Papst to produce all materials responsive to Casio's discovery requests, without objection based on attorney-client privilege, consulting expert privilege, or attorney work product as to any document or communication that came into being before May 6, 2008, and further direct the district court to rule that Papst at most need only produce otherwise privileged or work product documents in response to Casio's initial discovery requests, that (1) relate solely to Casio products; and (2) that came into being on or before May 31, 2007.

Dated:  July 2, 2008

A. Sidney Katz
James P. White
Jerold B. Schnayer
Walter J. Kawula, Jr.
Joseph E. Cwik
WELSH & KATZ, LTD.
120 South Riverside Plaza • 22nd Floor
Chicago, Illinois 60606
(312) 655-1500

*Attorneys for Papst Licensing GmbH & Co. KG*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
| --- | --- |
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** <br><br> ──────────────── <br><br> **This Document Relates To:** <br> **Casio v. Papst, 06-1751** | **Misc. Action No.  07-493 (RMC);** <br> **MDL Docket No. 1880** |

**MEMORANDUM OPINION REGARDING FIFTH ORDER ON CASIO/PAPST DISCOVERY:  PAPST'S MOTION FOR CLARIFICATION CONCERNING SCOPE OF WAIVER**

Papst Licensing GMBH & Co. KG ("Papst") requests clarification regarding the scope of the privilege waiver set forth in the May 6, 2008, Second Order Regarding Casio/Papst Discovery and its accompanying Memorandum Opinion. *See* Dkt. ## 81 & 82. In the May 6, 2008 ruling, the Court required Papst to "respond to Casio USA's initial discovery requests without objection based on attorney-client privilege, consulting expert privilege, or attorney work product." Mem. Op. [Dkt. # 82] at 8-9.  Papst requests clarification on the following three issues:

> (1) Whether the materials protected by attorney-client privilege, consulting expert privilege, or attorney work product (the "Privileged Materials") that Papst must produce may be limited to materials that relate solely to Casio's Products;
>
> (2) Whether the Privileged Materials that Papst must produce may be limited to those materials that existed as of May 31, 2007, when the initial order allowing sanctions was issued; and

-1-

(3) Whether the Privileged Materials that Papst must produce may be
disclosed only to Casio and not to the other Camera Manufacturers[1]
in this MDL proceeding.

Casio,[2] as well as the other Camera Manufacturers, object to Papst's request for

clarification. As explained below, the Court will grant in part and deny in part Papst's motion.

## I. FACTS

The May 6, 2008, Second Order Regarding Casio/Papst Discovery and its

accompanying Memorandum Opinion dealt with Papst's objections to the May 31, 2007 order of the

Magistrate Judge requiring Papst to respond to the initial discovery propounded by Casio America

Inc., formerly known as Casio, Inc., ("Casio USA") — without objections — due to Papst's failure

to comply with the district court's order requiring Papst to respond to Casio USA's initial discovery

requests. The Magistrate Judge had heard oral argument on Casio's motion to compel on May 31,

2007, and had granted the motion to compel from the bench, noting:

> [T]he court reviewed the motion, the opposition and the reply . . . .
> Having done so, the Court will grant the motion, largely for the
> reasons offered by the Movant, both orally and in writing.
>
> More specifically, the Court finds that what Papst urges upon the
> Court is a novel way of counting the number of days in which a party
> must serve responses to written discovery requests. The Court uses
> the term, quote, "novel," close quote, because there is simply no
> authority which supports this method of calculating the deadline.
>
> The rules make plain when it is that a party is to serve responses to
> written discovery requests. There was no motion for enlargement of
> time filed by Papst. Papst did not seek any clarification of the due

_____

[1] The "Camera Manufacturers" are all parties to this Multi District Litigation other than
Papst.

[2] Casio America Inc., its predecessor Casio Inc., and Casio Computer Co., Ltd. are
collectively referred to here as "Casio."

-2-

> date in the meet and confer report that counsel, along with opposing
> counsel, filed in this matter, and appears to have unilaterally taken the
> position that because Papst was displeased with the manner in which
> the Rule 26(f) meeting or conference was conducted that the
> responses to the written discovery requests would be withheld.

Tr. of May 31, 2007 hearing at 25. The Magistrate Judge ordered "that complete responses — that

is *without objections*, which have been waived by the failure to respond in a timely fashion — be

served within 10 calendar days of today's date." *Id.* at 27 (emphasis added). Papst then filed

objections to the Magistrate's order. This Court denied Papst's objections as follows:

> The Court finds that waiver of privileges is not too harsh a sanction
> under the circumstances presented here. Papst's failure to respond to
> Casio USA's discovery requests, as directly ordered, was entirely
> unjustified and inexcusable and smacks of bad faith. How difficult
> is it to understand a district court order that discovery is "to proceed"?
> Were there any doubt, Papst might have inquired. It did nothing. It
> merely delayed — a delay that continues, in part, to this day.[3] It may
> be a successful business model, when the "business" of a business is
> litigation, to interpose delay at any possible opportunity. Delay costs
> money to opponents and may, in the end, cause an opponent to settle
> a case. Ultimately, Papst offers no good reason why its experienced
> counsel should be allowed, without sanction, to ignore totally a court
> order on which they had been heard fully.
>
> Accordingly, Papst is required to respond to Casio USA's initial
> discovery requests without objection based on attorney client
> privilege, consulting expert privilege, or attorney work product.
> Casio has agreed, and there is now a Protective Order entered by the
> Court, that will shield Papst's confidential documents from public
> display.

Mem. Op. [Dkt. # 82] at 8-9. Now, Papst seeks "clarification" of the Court's Order to respond to

Casio USA's initial discovery requests without objection based on attorney-client privilege,

---

[3] As of April 24, 2008, Papst still had not responded sufficiently to Casio's discovery requests. *See* First Order Regarding Casio/Papst Discovery Dkt. #77 (ordering Papst to respond to Casio's interrogatories). Thus, the delay in question was not a matter of weeks, but more than a year.

consulting expert privilege, or attorney work product.

## II. ANALYSIS

First, Casio and the other Camera Manufacturers argue that Papst's motion constitutes a request for reconsideration. A request for reconsideration under Federal Rule of Civil Procedure 59(e) "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A Rule 59(e) motion is not "simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it an avenue for a losing party to present theories, arguments, or issues that could have been raised previously. *Jones v. Bernanke*, 538 F. Supp. 2d 53, 60 (D.D.C. 2008) (citing *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993)).

Although Papst points out no intervening change in the law, no new evidence, and no clear error, Papst asserts that the current breadth of the sanction constitutes a manifest injustice. While Papst could have argued previously that the sanction should be limited, it focused its argument on its claim that the sanction should not have been imposed at all. Nonetheless, the Court is willing to clarify its May 6, 2008 Order as detailed below.

-4-

**A. Whether the Privileged Materials that Papst must produce may be limited to (1) materials that relate solely to Casio's Products and/or (2) may be limited to those materials that existed as of May 31, 2007, when the initial order allowing sanctions was issued**

Papst asks that the Court limit Papst's production of otherwise privileged materials to materials that relate solely to Casio's products and that its production be limited to those materials that existed as of May 31, 2007, when the Magistrate Judge issued the original order requiring production without objection. Papst reasons that because the sanction arose from a dispute between Casio and Papst and was based on Papst's conduct prior to May 31, 2007, the sanction should be similarly limited. Papst also points out that the May 6, 2008 Order expressly requires Papst to respond to "Casio USA's *initial* discovery requests without objection," May 6, 2008 Order at 8-9 (emphasis added), and thus that the sanction should not apply to Casio's subsequent discovery requests.

In addition, Papst contends that the broad sanction is simply unfair and that if Papst is required to turn over Privileged Materials "throughout the entire proceedings of this case, this would effectively deny Papst the benefit of counsel, and would seriously impede counsel's ability to represent Papst and communicate openly with Papst in order to prepare for trial. . . . Papst submits that the need to punish Papst for its alleged bad faith should, at some point, give way to the need for Papst to retain its privileges and work product materials as it conducts discovery and prepares for trial . . . ." Papst's Mot. for Clarification at 5. By limiting the sanction, Papst argues that it "will suffer the consequences of its alleged bad faith, and Casio will obtain the benefits of the sanction, without completely eviscerating Papst's ability to defend itself and pursue its claims in this lawsuit." Papst's Mot. for Clarification [Dkt. # 101] at 4. Papst argues that the scope of waiver is grounded

-5-

in principles of fairness, that it "serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007). Papst reasons that because the waiver in this case was involuntary — *i.e.*, it was not done voluntarily in order to gain a tactical advantage — that the scope of the waiver of attorney-client privilege should be balanced against Papst's need for adequate representation.

Casio makes three arguments in opposition to Papst's request for a more limited waiver of privileges. First, Casio contends that the harsh sanction imposed by the Court was justified by Papst's conduct, as discussed in the May 6, 2008 Memorandum Opinion. Second, Casio's initial discovery requests were not limited to inquiries regarding its own products because Papst will be making representations regarding the scope of the patents-in-suit.[4] For example, Casio's Document Request No. 5 requests "each and every document and thing which addresses, analyzes, assesses or otherwise concerns the potential infringement, patentability, validity and/or enforceability of one or more claims of Papst's patents and applications." *See* Casio's Resp., Ex. C. at 7. Casio's Request No. 12 seeks documents "relating to, referring to, describing, evidencing or constituting any allegations made by or on behalf of defendant that anyone has infringed one or more claims of any Papst patent or application." *Id.* at 8. The Camera Manufacturers assert that Papst's request for limitation is "a veiled attempt to shield the vast majority of its formerly privileged documents, as surely the vast majority of its documents will not relate 'solely to Casio's products,' but rather relate as much to Casio's products as any other Manufacturers' products." Resp. of Other

---

[4] Also, Papst has treated the cameras made by all of the Camera Manufacturers the same.

-6-

Camera Mfrs. [Dkt. # 109] at 2.[5]

Third, Casio argues that once a waiver occurred, it is inappropriate to limit it on a

temporal basis. *Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237

F.R.D. 618, 627 (N.D. Cal. 2006). A privilege waiver is a subject waiver, extending to materials

relating to the same subject regardless of when the waiver occurred. *Id.* at 238; *see Ideal Elec. Sec.*

*Co., Inc. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 152 (D.C. Cir. 1997) (once a communication is

disclosed, the attorney-client privilege is waived for all documents and communications relating to

the subject matter of the disclosure); *In re United Mine Workers of Am. Employee Benefit Plan Litig.*,

159 F.R.D. 307, 309 (D.D.C. 1994) (same).[6] In *Leland Stanford*, the court held that the privilege

waiver on the subject matter of inventorship extended from the time of initial contact between the

inventors and their attorney until later communications that covered the issue of inventorship, even

though the later communications might post-date the issuance of the patents. *Leland Sanford*, 237

F.R.D. at 627.[7]

---

[5] Casio also argues that even if a temporal limitation were called for, the May 31, 2007 date is not the right date, as Papst still has not complied with the Magistrate Judge's order. Casio's Resp. at 7. Casio's allegation that Papst continues to violate Court discovery orders is more fully set forth in its Motion to Dismiss and for Default Judgment [Dkt. ## 112 & 113]. That motion is not yet ripe and ready for decision.

[6] Under the law of this Circuit, the voluntary disclosure of privileged communications waives the privilege, *Permian Corp. v. U.S.*, 665 F.2d 1214, 1221 (D.C. Cir. 1981), as does the inadvertent disclosure of privileged information. *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989); *Elliott v. Federal Bur. of Prisons*, 521 F. Supp. 2d 41, 57-58 (D.D.C. 2007).

[7] In support of its claim that the privilege waiver should be limited in time, Papst cites *Ronald Katz v. AT&T Corp.*, 191 F.R.D. 433, 441 (E.D. Pa. 2000), setting forth its alleged holding in a parenthetical stating "even though party waived attorney-client privilege by disclosing documents to third party, the waiver was 'not absolute' and had a 'temporal limitation.'" Papst's Mot. for Clarification at 6. Papst's reading of the case is overbroad. The court in *Katz* imposed a temporal limitation because the subject matter of the waiver in that case was the conception date of the

-7-

A district court "retains broad discretion in deciding the appropriate scope of a waiver." *In re United Mine Workers*, 159 F.R.D. at 309; *see generally Gen. Elec. Co. v. Johnson*, No. 00-2855, 2006 WL 2616187, at *19 (D.D.C. Sept. 12, 2006) (the broad subject matter definition advanced by the party seeking the documents was unwarranted where there was no indication that the party claiming the privilege acted in bad faith or disregarded the sanctity of the attorney-client privilege); *In re United Mine Workers*, 159 F.R.D. at 309 (in its discretion, court may limit the scope of waiver to the same "specific" subject matter as that already disclosed).

This Court also has discretion to require or limit the production of documents protected by the attorney work product doctrine. Work product protected documents are not subject to the same broad waiver principle as communications covered by the attorney-client privilege. A waiver of the attorney work product privilege as to particular documents does not extend to other documents addressing the same subject matter. *In re United Mine Workers*, 159 F.R.D. at 310-12. Even so, the work product privilege is qualified and may be overcome on a showing of substantial need, *i.e.*, that the requesting party cannot obtain the information by other means without undue hardship. *Equal Rights Ctr. v. Post Props., Inc.*, 247 F.R.D. 208, 212 (D.D.C. 2008) (citing Fed. R. Civ. P. 26(b)(3)(A)).

In balancing the competing interests at issue here, the Court finds that Papst may not limit its production of otherwise privileged documents to documents related "solely to Casio's products"; however, a temporal limitation is appropriate. The appropriate temporal limitation must be May 6, 2008, the date of this Court's Order denying Papst's objections to the Magistrate Judge's

---

invention, and thus the waiver was limited to the time period prior to the time the patent application was filed. *Id.*

-8-

May 31, 2007 order. Accordingly, Papst must respond to Casio's discovery requests without objection based on attorney-client privilege, consulting expert privilege, or attorney work product as to any document or communication that came into being on or before May 6, 2008. This requirement extends to all Casio discovery requests, not just its initial discovery.[8]

### B. Whether the Privileged Materials that Papst must produce may be disclosed only to Casio and not to the other Camera Manufacturers

Papst also contends that the Privileged Materials should not be produced to any party other than Casio. The basis for this contention is fairness — that the sanction was imposed on Papst based on its conduct toward Casio alone and that to grant the other Camera Manufacturers access to Papst's Privileged Materials would be a windfall to them and would unfairly prejudice Papst.

Casio and the other Camera Manufacturers point out that the concept of "selective waiver" has been rejected by the D.C. Circuit. "Because the attorney-client privilege inhibits the truth-finding process, it has been narrowly construed, and courts have been vigilant to prevent litigants from converting the privilege into a tool for selective disclosure." *Permian*, 665 F.2d at 1221 (citations omitted). "The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already comprised for his own benefit. . . . The attorney-client privilege is not designed for such tactical employment." *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984) (quoting *Permian*, 665 F.2d at 1221; *see also Cobell v. Norton*, 213 F.R.D. 16, 24 (D.D.C. 2003) (confidentiality does not survive disclosure to a third party).

---

[8] To hold otherwise would merely reward Papst for its unwarranted discovery delays.

Here, the Magistrate Judge ordered "that complete responses — that is *without objections*, which have been waived by the failure to respond in a timely fashion — be served." Papst objected to the Magistrate Judge's ruling that it waived all objections based on attorney client privilege, consulting expert privilege, and protection under the work product doctrine, asserting that waiver was too harsh because Papst's conduct grew out of a misunderstanding of a court order for discovery "to proceed." This Court rejected Papst's objections finding:

> [W]aiver of privileges is not too harsh a sanction under the circumstances presented here. Papst's failure to respond to Casio USA's discovery requests, as directly ordered, was entirely unjustified and inexcusable and smacks of bad faith. How difficult is it to understand a district court order that discovery is "to proceed"? Were there any doubt, Papst might have inquired. It did nothing. It merely delayed — a delay that continues, in part, to this day. It may be a successful business model, when the "business" of a business is litigation, to interpose delay at any possible opportunity. Delay costs money to opponents and may, in the end, cause an opponent to settle a case. Ultimately, Papst offers no good reason why its experienced counsel should be allowed, without sanction, to ignore totally a court order on which they had been heard fully.

Mem. Op. [Dkt. # 82] at 8.

Even though the Court's May 6, 2008 Order required Papst to respond to Casio's discovery requests "without objection" and the Court used the term "waiver" in its opinion, in fact the Court ordered that Papst must produce Privileged Materials only because of the Court's order, and not due to Papst's own voluntary or inadvertent disclosure. Where a party's disclosure is the result of judicial compulsion, courts do not imply a waiver. *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982) (citing *Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978)). This is not a circumstance where Papst disclosed documents to one party for tactical purposes and then sought to protect such materials from disclosure to others. Because Papst was

-10-

compelled to produce privileged documents by Court order, the disclosure shall be made to Casio only. Papst has not waived its privileges as to the other Camera Manufacturers.

## III. CONCLUSION

For the foregoing reasons, Papst's motion for clarification [Dkt. # 101] will be granted in part and denied in part as follows:

> (1) Papst may not limit its production of otherwise privileged documents to documents related "solely to Casio's products," and Papst must respond to Casio's discovery requests without objection based on attorney-client privilege, consulting expert privilege, or attorney work product as to any document or communication that came into being on or before May 6, 2008. This requirement extends to all Casio discovery requests, not just its initial discovery.

> (2)  Papst has not waived its privileges as to the other Camera Manufacturers.

A memorializing order accompanies this Memorandum Opinion.

Dated:  June 9, 2008                              /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge

-11-

# EXHIBIT B

## WELSH & KATZ, LTD.
### *Attorneys at Law*
120 SOUTH RIVERSIDE PLAZA · 22ND FLOOR
CHICAGO, ILLINOIS 60606-3912

TELEPHONE (312) 655-1500
FACSIMILE (312) 655-1501

www.welshkatz.com

A. SIDNEY KATZ*
RICHARD L. WOOD*
JEROLD B. SCHNAYER
JOSEPH R. MARCUS
GERALD S. SCHUR
GERALD T. SHEKLETON
JAMES A. ECKER
DANIEL R. CHERRY
ROBERT B. BREISBLATT
JAMES P. WHITE
R. MARK HALLIGAN
HARTWELL P. MORSE, III
EDWARD P. GAMSON, Ph.D.
KATHLEEN A. RHEINTGEN
THOMAS W. TOLPIN*
RICHARD W. McLAREN, JR.
ELLIOTT C. BANKENDORF
ERIC D. COHEN
JOHN L. AMBROGI
JULIE A. KATZ
JON P. CHRISTENSEN
WALTER J. KAWULA, JR.
LEONARD FRIEDMAN
STEVEN E. FELDMAN
JEFFREY W. SALMON
LOUISE T. WALSH
PAUL N. VARGO, Ph.D.
JOSEPH E. CWIK

J. ARON CARNAHAN
ERIK B. FLOM, Ph.D.
JAMES B. RADEN

RICHARD J GURAK
DANIEL H. GURFINKEL
MICHELE S. KATZ
BRIAN A. SODIKOFF
BRETT M. TOLPIN
GEORGE S. PAVLIK
MICHAEL A. KROL, Ph.D.
SHERRY L. ROLLO
CRAIG M. KUCHII
STEPHEN P. BENSON
GREGORY J. EKONY

OF COUNSEL
LAURIE A. HAYNIE
JAMES J. MYRICK
THOMAS R. VIGIL
PHILIP D. SEGREST, JR.**
WALLACE L. OLIVER, Ph.D.
LAURA A. LaBEOTS, Ph.D.

DONALD L. WELSH (1025-1996)

* ALSO ADMITTED IN DISTRICT OF COLUMBIA
** ALSO ADMITTED IN ALABAMA

March 7, 2007

VIA FACSIMILE AND U.S. MAIL
Jeffrey Gold, Esq.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178

Re:     Casio Inc. v. Papst Licensing, Case No. 1:06 CV 011751 (GK)

Dear Jeffrey:

I write to address your March 6, 2006 e-mail asserting that the parties had a Rule 26(f) conference on March 2, 2007, and therefore discovery may now proceed. There was not and could not be a Rule 26(f) conference for several reasons.

First, there could not be a Rule 26(f) conference because one of the parties, Casio Computer Co., Ltd., refused to participate. At our March 2, 2007 conference, you stated that you could not and would not speak on behalf of one of the parties in this case, Casio Japan. When we asked if Casio Japan agreed to each of your case management proposals, you indicated that you could not and would not answer that question. When we asked if you knew any of the details concerning Casio Japan's electronic information and computer systems, you stated that you could not and would not provide that information. Accordingly, there was not and could not be a Rule 26(f) conference given that the required topics for any such conference, such as the scope of each party's electronic discovery, could not be addressed. Furthermore, Local Rule 16.3(a) clearly anticipates that if all parties cannot participate at a Rule 26(f) conference, the conference should be continued until such time all parties are served. Here, Casio Japan has not yet been served because your firm has refused to accept service on behalf of Casio Japan. As a result, Papst Licensing has been forced to effectuate service through the months long Hague Service Convention procedure. Because the Affidavit of Rick Hamilton clearly demonstrates

Exhibit B, Page 1

Jeffrey Gold                                                    March 7, 2007
                                                                    Page 2

that Papst Licensing has diligently pursued its service of Casio Japan, any delays in service are
the fault of your firm, not Papst Licensing.

        Second, Papst Licensing never agreed that the March 2, 2007 telephone conference
would in fact be a Rule 26(f) conference. Instead, Papst Licensing participated on March 2,
2007 to listen to proposals that Casio Inc. had concerning scheduling, to ask questions related
thereto, and to request a two-month extension of any Rule 26(f) conference and the initial case
management conference. If Casio Inc. had actually intended for the March 2, 2007 conference to
be a Rule 26(f) conference, it would have sent a proposed case management plan in advance of
the conference. In fact, Papst Licensing specifically asked you by e-mail on March 1, 2007 and
early on March 2, 2007 if there were any materials that you wanted Papst Licensing to review
before the conference. Because Casio Inc. sent no proposed case management plan or any other
materials in advance of our March 2, 2007 conference, there was clearly no expectation on
behalf of the parties that anything other than a preliminary discussion would occur.

        Therefore, the parties have not yet conducted a Rule 26(f) conference, your March 2,
2007 service of discovery was premature and not permitted under the Federal Rules of Civil
Procedure.

                                              By:  _____
                                                    Joseph E. Cwik

JEC/pm
cc:    Jerold B. Schnayer

# EXHIBIT C

# WELSH & KATZ, LTD.

*Attorneys at Law*

120 SOUTH RIVERSIDE PLAZA · 22ND FLOOR
CHICAGO, ILLINOIS 60606-3912

TELEPHONE (312) 655-1500
FACSIMILE (312) 655-1501

www.welshkatz.com

A. SIDNEY KATZ*
RICHARD L. WOOD*
JEROLD B. SCHNAYER
JOSEPH R. MARCUS
GERALD S. SCHUR
GERALD T. SHEKLETON
JAMES A. SCHEER
DANIEL R. CHERRY
ROBERT B. BREISBLATT
JAMES P WHITE
R. MARK HALLIGAN
HARTWELL P. MORSE, III
EDWARD P. GAMSON, PH.D.
KATHLEEN A. RHEINTGEN
THOMAS W. TOLPIN*
RICHARD W. McLAREN, JR.
ELLIOTT C. BANKENDORF
ERIC D. COHEN
JOHN L. AMBROGI
JULIE A. KATZ
JON P. CHRISTENSEN
WALTER J. KAWULA, JR.
LEONARD FRIEDMAN
STEVEN E. FELDMAN
JEFFREY W. SALMON
LOUISE T. KATZ
PAUL M. VARGO, PH.D.
JOSEPH E. CWIK

J. ARON CARNAHAN
ERIK B. FLOM, PH.D.
JAMES B. RADEN
─────
RICHARD J. GURAK
DANIEL H. GURFINKEL
MICHELE S. KATZ*
BRIAN J. SODIKOFF
BRETT M. TOLPIN
GEORGE S. PAVLIK
MICHAEL A. KROL, PH.D.
SHERRY L. ROLLO
CRAIG M. KUCHII
STEPHEN P. BENSON
GREGORY J. SKONY
─────
OF COUNSEL
LAURIE A. HAYNIE
JAMES J. MYRICK
THOMAS R. VIGIL
PHILIP D. SEGREST, JR.**
WALLACE L. OLIVER, PH.D.
LAURA A. LABEOTS, PH.D.
─────
DONALD L. WELSH (1925-1998)

* ALSO ADMITTED IN DISTRICT OF COLUMBIA
** ALSO ADMITTED IN ALABAMA

May 7, 2007

<u>VIA E-MAIL & U.S. MAIL</u>
Jeffrey Gold, Esq.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178

      Re:   <u>Casio Inc. v. Papst Licensing</u>, Case No. 1:06 CV 011751 (GK)

Dear Jeffrey:

     With the finalization and filing of the Joint Meet and Confer Statement today, the Rule 26(f) conference is now complete, and Papst Licensing considers all pending discovery requests to be served as of today's date.

               By:    *[signature]*

                    Joseph E. Cwik

JEC/pm
cc:    Jerold B. Schnayer
       Campbell Killefer

WASHINGTON OFFICE
CRYSTAL PLAZA ONE · SUITE 311 · 2001 JEFFERSON DAVIS HIGHWAY · ARLINGTON, VIRGINIA 22202-3603 · TELEPHONE (703) 415-4777

# EXHIBIT D

**Cwik, Joseph**

| | |
|---|---|
| **From:** | DCD_ECFNotice@dcd.uscourts.gov |
| **Sent:** | Friday, June 01, 2007 9:35 AM |
| **To:** | DCD_ECFNotice@dcd.uscourts.gov |
| **Subject:** | Activity in Case 1:06-cv-01751-GK-DAR CASIO INC v. PAPST LICENSING GMBH & CO. KG Motion Hearing |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

**U.S. District Court**

**District of Columbia**

**Notice of Electronic Filing**

The following transaction was entered on 6/1/2007 at 10:34 AM and filed on 5/31/2007
**Case Name:**        CASIO INC v. PAPST LICENSING GMBH & CO. KG
**Case Number:**      1:06-cv-1751
**Filer:**
**Document Number:** No document attached

**Docket Text:**
Minute Entry. Proceedings held before Magistrate Judge Deborah A. Robinson : Motion Hearing held on 5/31/2007 re [24] MOTION for Sanctions filed by CASIO INC and [22] MOTION to Compel Discovery and for Sanctions is granted for reasons set forth on the record. (Court Reporter Pro-typists.) (lm )


**1:06-cv-1751 Notice has been electronically mailed to:**
Campbell Killefer ckillefer@venable.com, docket@welshkatz.com, mamarkowska@venable.com, mhbelayneh@venable.com, wjkawula@welshkatz.com
J. Kevin Fee jkfee@morganlewis.com
Scott D. Stimpson stimpsonlaw@gmail.com
Jeffrey M. Gold jgold@morganlewis.com
Joseph E. Cwik jecwik@welshkatz.com

**1:06-cv-1751 Notice will be delivered by other means to::**

Jerold B. Schnayer
WELSH & KATZ, LTD.
120 South Riverside Plaza
22nd Floor
Chicago, IL 60606


6/1/2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - x
                     :
In the Matter of:         :
                     :
CASIO, INC.,          :
                     :
    Plaintiff,     :
                     :
      vs.        :   Civil Action No. 06-1751
                     :
PAPST LICENSING GMBH & CO., :
                     :
    Defendant.     :
                     :   Washington, D.C.
- - - - - - - - - - - - - - x  May 31, 2007


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:      J. KEVIN FE, ESQ.
                        SCOTT D. STIMPSON, ESQ.

For the Defendant:      JEROLD B. SCHNAYER, ESQ.
                        DAMON W.D. WRIGHT, ESQ.


Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C. 20005, 202-347-5395, www.pro-typists.com
M1837V/bf

2

1                         P R O C E E D I N G S

2            THE CLERK:  Civil Case Number 06-1751.  This is

3   in the matter of Casio, Inc. versus Papst Licensing GMBH &

4   Company.  I don't know what the "KG" is.  I have that on our

5   archive.  Kevin Fe and Scott D. Stimpson for the Plaintiffs;

6   Jerold B. --

7            MR. SCHNAYER:  "Schnayer."

8            THE CLERK:  -- Schnayer and Damon Wright for the

9   Defendant.  This is set for a motions hearing.

10           THE MAGISTRATE JUDGE:  Now, good afternoon to all

11  of you.  This matter was scheduled for a hearing on the

12  motion filed by Casio, to compel and for sanctions.

13           The issue presented by the motion is a relatively

14  straightforward one, and the Court indeed considered ruling

15  on the motion without scheduling a hearing.  But recognizing

16  that the status of the issue presented might have changed

17  as of the time the Court made a ruling had there been no

18  hearing, the Court thought it prudent for counsel to come in

19  and address the matter.

20           I understand, based upon your informal discussion

21  off the record my law clerk before the case was called, that

22  it may be the case that some responses to the outstanding

23  interrogatories have been served.  However, recognizing that

24  that may not fully address the pending motion, the Court

25  will hear first from Plaintiff's counsel, then from counsel

3

1    for the Defendant, regarding these issues.

2            Now, who will address the matter on behalf of

3    the Plaintiff?

4            MR. STIMPSON:  I will, Your Honor.  Scott

5    Stimpson.

6            THE MAGISTRATE JUDGE:  Mr. Stimpson, good

7    afternoon.

8            MR. STIMPSON:  Good afternoon, and thank you.

9    I will be brief.

10            We were served last night with responses to

11    interrogatories and document requests.  There are many

12    objections.  We still have not received a single document

13    in document production.

14            I think it would help just to have a very short

15    recitation of the chronology as things have played out here.

16            On March 2 we had what we believed to be our 26(f)

17    conference and we served our discovery requests.  We served

18    a proposed discovery plan on the other side on March 9.  It

19    was more than six weeks later before we got any comments

20    from the other side after this motion was filed.

21            On March 13, Judge Kessler issued an order that

22    discovery proceed.

23            Exhibit J to our motion is a letter we sent to

24    opposing counsel shortly before their responses were due,

25    which I think is instructive here.  We were getting wind

4

1   that -- it's "J," Your Honor.  We were getting wind that

2   perhaps they were not going to respond on time, and we sent

3   a letter telling them that Judge Kessler has ordered

4   discovery to proceed and we expect full and appropriate

5   responses, and if we don't get them we are going to take

6   appropriate action.

7           So counsel for Papst took the risks they were

8   taking with their eyes wide open to what might happen here.

9           It is now May 31.  We are about three months since

10  we served our discovery requests.  We are two-and-a-half

11  months after Judge Kessler ordered discovery to proceed.

12  We do not have a single document.  And the responses we

13  received last night are riddled with objections.

14          THE MAGISTRATE JUDGE:  May I ask you to state the

15  substance of some of the objections.  In other words, what

16  sort of objections were raised.

17          MR. STIMPSON:  I only received them last night,

18  so I went over them briefly today, Your Honor.

19          The objections to the document requests -- they

20  have objections on a protective order, they have objections

21  on over-breadth, they have, you know, your typical

22  objections you'd expect, privilege and work product.

23          Some of the document requests, they say they will

24  give us some documents at some unspecified date.  Some of

25  the document requests, they simply -- if I remember

5

1   correctly, they simply say, "No," or "We'll think about it.
2   We'll talk to you at some other time." Or, "We'll have a
3   meet and confer, and discuss it."

4          But as I say, we have yet to receive a single
5   document, and the case has been going for three months now -
6   discovery has been going for three months.

7          THE MAGISTRATE JUDGE:  What is your proffer
8   regarding whether or not any agreement was reached with
9   respect to objections?

10         MR. STIMPSON:  I believe no agreement was reached
11  -- absolutely none.

12         THE MAGISTRATE JUDGE:  Very well, you may
13  continue.

14         MR. STIMPSON:  So, Your Honor, my opponent is
15  trying to make this into a 26(f) issue.  26(f) is long since
16  done, and this is not a 26(f) issue.  This is a 26(d) issue.
17  This is about a failure to respond to the Court order.
18  26(d) says that discovery can proceed regardless of whether
19  there's been a 26(f) conference if the Court orders it, and
20  unquestionably the Court ordered it.

21         So the question, I think, or the consequences of
22  what's happened here, it's very clear that the Court order
23  has been -- they have not complied with the Court order.
24  And so we request basically four remedies for that.

25         One is, since the objections are untimely, they

6

1    are waived.  That we get prompt discovery, including all the

2    documents that should have been produced.  We also request

3    our fees and costs under 37(a) and (b).

4            THE MAGISTRATE JUDGE:  And by "fees and costs,"

5    may I assume you mean fees and costs associated with the

6    filing of the motion?

7            MR. STIMPSON:  Correct.  Correct.  And lastly,

8    Your Honor, I think an appropriate sanction in this

9    situation would be entry of an order bifurcation.  I think,

10   for one thing, it's going to avoid another motion which may

11   be coming, and bifurcation is particularly appropriate in

12   this case.

13           Judge Kessler has asked that fact discovery be

14   completed by December, December of this year.  We've now had

15   three months of our fact discovery period go by.  We haven't

16   received a single document.  We've now just got six months

17   left.  And if damages and willfulness are left in this case,

18   it is going to be darn near impossible to get this done

19   pursuant to Judge Kessler's order.  And it's a particularly

20   appropriate sanction here, Your Honor, because they're

21   effectively using the 26(f) procedures as a shield to

22   prevent themselves from having to comply with the CRA.

23           So if there are no questions, I'll turn it over to

24   my opponent.

25           THE MAGISTRATE JUDGE:  Well, I do have one

7

1   additional question, Mr. Stimpson.  Is your request for what

2   you term "bifurcation" a request for a sanction or is it

3   simply your view that, given the delay in making discovery

4   that discovery cannot be completed in the time for which the

5   Court already provided.

6        MR. STIMPSON:  Well, it's both actually, Your

7   Honor.  We've cited cases where, in fact, one Court

8   specifically mentioned entering a scheduling order by

9   opposing party if they didn't comply with the Court orders.

10  It's certainly an appropriate sanction for what's happened

11  here.

12       But stepping back and just looking at where we are

13  now, and we've got six more months of fact discovery, it's a

14  very complicated case, even liability-wise.  We've got two

15  patents, we've got many accused products, we've got lots and

16  lots of prior art.  I assume there will be many accused

17  claims of each patent that are alleged to be infringed.

18  It is going to be a mountain for a jury.  And if you add

19  damages and willfulness to that, it is going to be a very

20  lengthy trial and I can't see how we can really get it done

21  in time.

22       So there are many reasons for bifurcation.  I will

23  leave that argument for another day, if it's needed.  But a

24  short answer to your question is, as a sanction and because

25  it's appropriate, we request bifurcation.

8

1            THE MAGISTRATE JUDGE:  Very well.  Thank you very

2   much, Mr. Stimpson.

3            MR. STIMPSON:  Thank you.

4            THE MAGISTRATE JUDGE:  Mr. Schnayer?

5            MR. SCHNAYER:  Yes, Your Honor.

6            THE MAGISTRATE JUDGE:  Very well.  Good afternoon.

7            MR. SCHNAYER:  Good afternoon.  Nice to see you

8   again.

9            Your Honor, first of all, let me make it clear we

10  did serve discovery responses, and I would like to point out

11  that the -- I'm going to hand up a copy -- they only have

12  one copy, but I'd like to point out --

13           THE MAGISTRATE JUDGE:  Let me interrupt you just

14  one moment.

15           MR. SCHNAYER:  Sure.

16           THE MAGISTRATE JUDGE:  I don't believe that I need

17  to see the responses.  Let me ask whether you concede that

18  service of any responses last night was well beyond the time

19  in which --

20           MR. SCHNAYER:  No, Your Honor.

21           THE MAGISTRATE JUDGE:  -- the responses were due.

22           MR. SCHNAYER:  Your Honor -- no.

23           THE MAGISTRATE JUDGE:  When were you served with

24  the discovery requests?

25           MR. SCHNAYER:  We were served with the discovery

9

1    requests -- maybe I should go back and give you my version

2    of what happened.

3            THE MAGISTRATE JUDGE:  Well, let me ask when you

4    were served with the discovery requests.

5            MR. SCHNAYER:  On March 2nd, we were served with

6    the discovery responses, Your Honor.  And --

7            THE MAGISTRATE JUDGE:  Discovery "requests."

8            MR. SCHNAYER:  Discovery requests.

9            THE MAGISTRATE JUDGE:  Very well.  You may

10   continue.

11           MR. SCHNAYER:  Your Honor, in this case originally

12   we had been having discussions about infringement charges.

13   I'm going to go back to the beginning, because I think it

14   needs to be understood.  We've had discussions with Casio

15   about charges of infringement we made against them

16   concerning two patents that are involved in this lawsuit.

17   They concern digital cameras.  We had one meeting with them,

18   never with their client, and my normal experience is we

19   usually have five, ten meetings with companies and we

20   discuss the issues.  They decided to sue Papst, to bring a

21   DJ action.  So this case started as a DJ action.

22           We filed a counterclaim against them, and

23   originally it was Casio USA involved, and we also sued Casio

24   Japan.  And when we sued Casio Japan we did so because it's

25   our understanding that they manufacture the infringing goods

10

1    here.

2            And we had meetings with counsel before the

3    Rule 26(f) conference that they claim happened, and we said

4    to them, "Lookit, do you represent Casio Japan?  Would you

5    accept service of process for Casio Japan?"

6            And we were told, "We don't represent Casio Japan

7    and we won't accept service of process for Casio Japan."

8            So we were forced to go through the Hague

9    Convention.  What that means is, since it's a foreign

10   company we have to file a request with the Court, the Court

11   files a request with the Justice Department, the Justice

12   Department here files a request in Japan, and they serve the

13   company, and eventually they got served.

14           And so a lot of delay that was caused in this case

15   was caused by the Plaintiff in this case.  They could have

16   accepted services of process.

17           Now, we have this meeting, and we asked them to

18   provide us with a draft before the meeting.  We also asked

19   them whether they represented Casio Japan.  Because Casio

20   Japan is a party.  And they come to the meeting, we never

21   got a draft of a proposal for the 26(f) scheduling order

22   that we had to present to the Court -- they're the

23   Plaintiff.  And they come to the meeting and they say,

24   "We don't represent Casio Japan."

25           So I said, "Well, how could we have a 26(f)

1    conference if you don't represent Casio Japan?"

2              And they said, "Well, we don't represent them.

3    And we're not going to accept service of process."

4              Counsel wasn't at that conference.  It lasted for

5    about 15 minutes.

6              THE MAGISTRATE JUDGE:  Do you agree, Mr. Schnayer,

7    that there's no authority which holds that even the complete

8    absence of a meet and confer session relieves a party of

9    the time limits which otherwise apply to the service of

10   responses to interrogatories and requests for production of

11   documents?

12             MR. SCHNAYER:  I don't.  I think the rule is

13   clear.  I think you have --

14             THE MAGISTRATE JUDGE:  What portion of the rule

15   is it --

16             MR. SCHNAYER:  26(f) --

17             THE MAGISTRATE JUDGE:  -- on which you rely?

18             MR. SCHNAYER:  Okay.  Yes.  It says --

19             THE MAGISTRATE JUDGE:  What portion are you

20   reading?

21             MR. SCHNAYER:  I'm in 26(d), Timing and Sequence

22   of Discovery.  "Except in categories of proceedings exempt

23   from initial disclosure under Rule 26(a)(1)(E) or when

24   authorized under these rules or by order of agreement of

25   the parties, a party may not seek discovery from any source

12

1   before the parties have conferred as required by Rule

2   26(f)."

3              And then, Your Honor --

4              THE MAGISTRATE JUDGE:  Doesn't the order of Judge

5   Kessler, which directed that discovery proceed, mean that

6   your reliance on that rule is misplaced?

7              MR. SCHNAYER:  I don't think so, Your Honor,

8   at all.  It's not how I read the Judge's order.

9              Counsel asked that discovery be allowed to go

10  forward.  After we had that 15-minute conference, this

11  so-called 26(f) conference, we met numerous times for many

12  hours on the phone.

13             And when I saw the Judge's order, it was my

14  understanding that we had to -- that discovery would go

15  forward, but the Judge never said that you don't have to

16  comply with 26(d).  26(d) is very specific.  It says you

17  have to have a 26(f) conference.  That doesn't mean meet for

18  15 minutes and discovery goes forward.  It means you're

19  supposed to prepare a discovery plan.  You're supposed to

20  discuss the issues.  And I have a section of the statute

21  that -- I'm going to hand up a copy of this, if I may, Your

22  Honor?

23             THE MAGISTRATE JUDGE:  You need not hand up the

24  statute or the rule.  We have it here.

25             MR. SCHNAYER:  Well, these are the notes for the -

13

1   - committee notes for that, that were part of it, describing

2   what was contemplated under new twenty -- or, 26(f), and

3   what it basically talks about is -- these were recently

4   passed.  It talks about electronic discovery, it talks about

5   the requirement to talk about electronic discovery, to

6   exchange information; that the committee now wants these

7   initial conferences to be significant, to exchange

8   information, for the parties to cooperate.

9          And the first conference we had, one of the

10  parties wasn't even present at that conference.  Because

11  they wouldn't agree -- the same attorneys that represent

12  them now wouldn't agree to talk on their behalf.  We

13  couldn't have had a conference.

14         I asked them to provide me with information about

15  electronic discovery.  The new rules say this is an

16  important issue that must be addressed, and we had hours of

17  conversations after this.  Right up until the time we filed

18  the 26(f) statement.  And we -- we -- took the initiative

19  on that.

20         We asked them to provide us with a bunch of

21  information.  If you look at the letters attached to my

22  motion, we sent out letters and we show you a list of

23  questions we asked them, that they never complied with.

24         So, for example -- we were trying to hone the

25  issues down.  This is a complicated case.  Understand,

14

1    there's a Japanese company and a U.S. company.  This is not

2    easy.  There might be additional companies involved here.

3·   If we don't get the parties that we need involved or find

4    out about the electronic data, it's hard for us to comply

5    with Rule 26(f) as contemplated by the rules.  And we had

6    conversation after conversation with them.  And they

7    wouldn't provide us with the information.  Their answer was,

8    "We're not going to give you free discovery."

9          Serve formal requests.  Well, the rule

10   contemplates the parties are going to cooperate.  We hoped

11   to get a 26(l) conference completed pretty quickly, but we

12   couldn't until the very last day because the parties were

13   exchanging extensive drafts, because we weren't getting

14   cooperation.  In the end, I finally threw up my hands and

15   said, "Okay, I have to move forward, I have to agree on

16   something," and we submitted a joint report to the Court.

17         THE MAGISTRATE JUDGE:  Do you agree that in the

18   joint report this issue which -- when I say the "joint

19   report," I mean the joint report which you also signed  --

20   does not raise this issue at all?

21         MR. SCHNAYER:  No, it doesn't really address it at

22   all.  They filed a separate motion.  It doesn't address it.

23   And it does not --

24         THE MAGISTRATE JUDGE:  Do you also acknowledge

25   that you did not file a motion to extend the deadline for

15

1   serving your answers to these discovery requests until a

2   more meaningful meet and confer session could take place?

3            MR. SCHNAYER:  Your Honor, I didn't -- the rule is

4   specific.  It says you have to have one beforehand.

5            You know, I feel like I'm getting set up here.

6   You know, they complain my answers aren't sufficient.  Your

7   Honor, they gave me nothing in their answers.  They gave me

8   nothing.  They objected to everything.  I provided them with

9   substantive responses.  You know, we walk into this case --

10           THE MAGISTRATE JUDGE:  Is there a motion pending

11  regarding your client's concerns about the sufficiency of

12  the responses served by Casio?

13           MR. SCHNAYER:  I haven't had a chance to meet and

14  confer with them.  We were preparing for this motion, and

15  we'll deal with it.  We have to meet and confer.  I was only

16. -- he comes in and he says my responses aren't good.  I was

17  responding to that.  And I was pointing out to you and I was

18  going to show you, here's a several-page response showing

19  how the claims read on their device.

20           We gave them substantive responses.  They didn't

21  give us substantive responses.  They wouldn't provide us

22  with the information we needed for the 26(f) conference.

23. It's my view that it never occurred until the day we

24  finalized, signed off on the agreement, and sent it to the

25  Court, and the answers aren't due until -- they're not even

16

1    due today.  We served them early.  By serving him yesterday,

2    we served him early.

3              THE MAGISTRATE JUDGE:  What is your contention

4    regarding when the answers to discovery requests served on

5    March 2nd, 2007, are due?

6              MR. SCHNAYER:  They won't be due until a couple

7    of days from now.  They're not due, because we never had a

8    26(f) conference.

9              THE MAGISTRATE JUDGE:  What is the basis of your

10   determination that they're not due until two days from

11   today?

12             MR. SCHNAYER:  Because we took the exact date when

13   the parties did have a completed 26(f) conference, after

14   several substantive meetings, and the parties came to a

15   proposal to submit to the Court and we submitted the

16   scheduling proposal.  That's the day that we had our 26(f)

17   conference and finalized it.  And it's my position that's --

18   according to the rules, that's the only date that makes

19   sense.

20             If I'm wrong, I apologize.  We did this in good

21   faith.  We did not do this to delay anything.  This is a

22   complicated case.  There's complicated issues.  We have been

23   looking into getting documents, we've got a client from

24   Germany, we've got a -- the patentee doesn't work for our

25   company, so it's not such an easy issue, but we have been

17

1  gathering documents.  And we put together a very substantive

2  charge of infringement here.  Your Honor, they don't have

3  anything like this in their discovery responses.  So this

4  took time to put together.

5          But they complain that I delayed everything.  It's

6  not true.  We tried to get the 26(f) conference done sooner.

7  We couldn't get any responses from them.  They didn't give

8  us the information.  I'll point out the letters to you,

9  because I think those are important.   .

10         .     If you look at our brief --

11             THE MAGISTRATE JUDGE:  I have it here.

12             MR. SCHNAYER:  And if you look at Exhibit A.

13  This is an interesting one.  Exhibit A, in the back two

14  pages, is a letter from opposing counsel.  It starts out

15  as a -- the bottom part is an e-mail from J. Gold, who is

16  Plaintiff's counsel, and Mr. Swick, Joseph Swick, who is the

17  top part, this is a response to a e-mail, is on the part --

18  is the top part.

19         But if you look at the second page -- and this is

20  the letter that Mr. Gold sent after that supposed

21  conference.  It says, "With regard --" on the last page of

22  this..  Second to last page, I'm sorry.  Second to last page,

23  point 4 of Exhibit A, it says -- Point 4 on there?  Second

24  line?   .     .

25             THE MAGISTRATE JUDGE:  I have it.

18

1          MR. SCHNAYER:  Okay.  "Regarding your request to

2    identify the specific details of Casio Inc., Casio Japan,

3    and any related entities'· computer systems, such a request

4    is beyond the scope of the 26(f) conference."  Then he goes

5    on and gives us a little bit of information about it, but

6    he says -- and this is the important part -- bottom line,

7    last line, "If you believe you are entitled to any more

8    information about Casio Inc.'s system or any specific

9    discovery, please serve a discovery request and we'll

10   consider it."  That was their attitude.  We're not going to

11   give you free discovery.  As the rules contemplate, parties

12   should cooperate.

13          Then if you look at my letter, if you look at

14   Exhibit  -- look at Exhibit, if you would, please, Your

15   Honor, E.  First page.

16          THE MAGISTRATE JUDGE:  I have it.

17          MR. SCHNAYER:  This discusses a conference that

18   Mr. Swick in my office had with Mr. Gold, and Mr. Gold

19   represents the Plaintiff.  And you can see the second

20   paragraph.  It says, "At·the conference we asked you several

21   questions relevant to developing a carefully considered

22   litigation schedule.  At the time, you weren't able to

23   provide any answers to several of our questions.  We ask

24   that you please provide us with answers to these questions

25   before our next meeting on April 16th."  So these were part

19

1    of the continuing meetings.

2            And you can see we're asking questions about the

3    name of the companies that were involved in the design and

4    development, so we can decide if we have the right parties

5    and know how long discovery is going to take -- reasonable

6    questions.  "What are the names of the companies that were

7    involved in the manufacture of the cameras.  What are the

8    names --" 3, "What are the names of all Casio companies that

9    were involved in the sale of the cameras."  That's also

10   relevant.  "Are both Casio Japan and Casio USA willing to

11   voluntarily produce relevant information and witnesses from

12   all their parent companies?"  So we're trying to find out

13   how much foreign discovery we have to do.  That's a

14   reasonable request.

15           Five, "Is Casio Japan and Casio US potentially

16   relevant electronic information reasonably accessible?"

17   The rules require you to talk about reasonable accessibility

18   in the 26(f) conference.  That is something you must

19   discuss.  Or you should discuss.  And that is, is the

20   information reasonably accessible because electronic

21   discovery is very complicated and if it's not reasonably

22   accessible, then you have to talk about shifting costs and

23   who should pay for it.  And that's important, according to

24   the new rules, to deal with electronic discovery.  We asked

25   them questions about that and we got no answers.

20

1          And then we asked, "Who are the names of the .--
2     names, titles and employers of those individuals at Casio
3     Japan and Casio US who have special knowledge about each
4     respective party's computer system."  If you read the
5     section of the rule, the notes on it, it says that that's
6     the kind of information you're supposed to talk about.
7     In fact, they discuss and some Courts have said you've got
8     to bring somebody knowledgeable about it from the company
9     and have a real significant exchange.  So we tried to do
10    that with them.
11          And now look, if you would, at Exhibit F.
12    Exhibit F is April 18th, a further letter from Mr. Swick to
13    Mr. Gold.  "We are disappointed that you called this morning
14    to state you were unilaterally canceling our previously
15    agreed to upon continuation of the Rule 26(f) conference
16    scheduled to occur. today.  As we understand it, you are
17    unwilling to participate because you have not received
18    _____ proposal.  However, at this time you also
19    indicated you were unwilling to discuss many of the
20    Rule 26(f) issues that will help parties develop a carefully
21    developed scheduling plan.  Specifically, you told me, for
22    the first time, you're unwilling to discuss the following
23    questions," and those are the same questions that we had
24    listed in our other letter to them.  And there's no letter
25    that says, "Yes, we were willing to discuss these with you."

21

1          So a lot of the delay here was caused in having

2    the final Rule 26(f) conference by counsel for Plaintiff not

3    giving us, quote, "free discovery," which is the kind of

4    cooperation you need in a case to formulate a reasonable

5    discovery plan.

6          THE MAGISTRATE JUDGE: Am I correct, Mr. Schnayer,

7    that the sole basis of your client's determination to serve

8    no answers until last night has to do with the manner in

9    which the conference was conducted?

10          MR. SCHNAYER: The fact that there was no

11   conference. There was no conference. And --

12          THE MAGISTRATE JUDGE: Very well.

13          MR. SCHNAYER: There was none. That's not a

14   conference. And it didn't occur until we signed the papers

15   after many discussions, and trying to do it in a quick

16   fashion.

17          I also have one other point I'd like to make.

18          THE MAGISTRATE JUDGE: Yes.

19          MR. SCHNAYER: Counsel has raised an issue, and

20   this is sort of a side point, but I want to make this clear

21   because I think it's important.

22          He said one of the sanctions we want is that you

23   should segregate out the damages issue and willfulness

24   issue. And I'd like to point out that at the hearing that

25   occurred with the Judge, the scheduling hearing that we had,

22

1  the one hearing, the Judge -- that issue was before the

2  Court because both parties addressed it in the papers they

3  filed, this big paper we put together finally which listed

4  the parties' positions.  And they asked the Judge for

5  bifurcation.  They asked the Judge for bifurcation.

6        And the Judge, at the end of the hearing, issued

7  an order and that's -- of the record, and she ordered the

8  schedule.  And there's nothing in the order that talks about

9  bifurcation.  And after she read the order -- she read it

10 out loud, and then she issued it in writing after the

11 hearing, she said, "Are there any more questions?"  She

12 turned to Plaintiff first.  Counsel didn't raise any

13 questions.  He didn't raise this issue with the Judge.

14        Bifurcation was already considered by the Court --

15 by the District Court Judge -- and denied.  It was denied.

16 And now they're saying, we want the sanction of bifurcation.

17 Well, they have it -- it's already been ruled on.  And

18 second, it's not a proper -- there's no authority to say

19 that this is a proper sanction under the rules.  There's no

20 authority for it.  it's just like, we want it because we

21 want it.  It's not proper.  So it's already been ruled on.

22        So, Your Honor, we did believe that the Judge's

23 order -- they have the ability to ask the Judge -- and they

24 never did in the papers they filed -- to address the issue

25 of the Rule 26(f) conference.  They never said to the Judge,

23

1    "You know, we want a specific ruling that discovery should

2    be considered served as of that day."  They never asked for

3    it in their pleading.  And the Judge never ruled on it.  If

4    you look at the paper they filed, it doesn't ask for that.

5    So they never asked for it, the Judge never ruled on it, and

6    we proceeded with that understanding.

7          If I'm wrong, I apologize.  We served our

8    discovery requests.  But it's not sanctionable; Your Honor.

9          THE MAGISTRATE JUDGE:  Very well, thank you,

10   Mr. Schnayer.

11         MR. SCHNAYER:  Thank you, Your Honor.

12         THE MAGISTRATE JUDGE:  Mr. Stimpson, if you wish

13   a brief reply I will hear you.

14         MR. STIMPSON:  Your Honor, I don't (inaudible)

15   have 30 seconds.

16         THE MAGISTRATE JUDGE:  My expectation was that one

17   of you would address the issue -- do you need a moment to

18   confer with Mr. Schnayer?  If so, you certainly may do so

19   and I'm happy to take a brief recess if you need more than a

20   moment or two to huddle.

21         MR. STIMPSON:  Not a problem.

22         MR. SCHNAYER:  Your Honor?

23         THE MAGISTRATE JUDGE:  Mr. Schnayer, yes.

24         MR. SCHNAYER:  If I may, please.  Thank you.

25   Counsel points out to me, co-counsel, that the committee

24

1   notes _____ -- Subsection (f) of the committee notes

2   points out and it talks about Rule 26(f) as amended to

3   direct the parties to discuss discovery electronically

4   stored information during their discovery planning

5   conference.  And the rule focuses on the issues relating to

6   disclosure or discovery of electronically stored

7   information.  Discussion is not required in cases which

8   involve -- don't involve electronic discovery.  In this

9   case, of course, it does.

10          And it goes on in the committee notes, it says,

11  it talks extensively about how this is important to focus

12  the issues, to focus the issues so that you can have a good

13  proposal to the Judge and focus the discovery in the case.

14          To have a 15-minute discussion where the parties

15  haven't done anything is not a local rule conference.  It's

16  not consistent with these guidelines that are set out in the

17  committee notes.  It really contemplates that you -- and it

18  goes through, and if Your Honor would care to read it after

19  the hearing, it goes through and it says you're supposed to

20  discuss these issues and narrow the issues.

21          THE MAGISTRATE JUDGE:  The Court is eminently

22  familiar with the committee notes.

23          MR. SCHNAYER:  Thank you, Your Honor.

24          THE MAGISTRATE JUDGE:  Very well.  Thank you.

25  You may have a seat.

25

1        MR. SCHNAYER:  Appreciate it.  Thank you.

2        MR. STIMPSON:  Your Honor, 30 seconds.  Just on

3    the last point that Mr. Schnayer raised, about this being

4    already -- bifurcation already being decided by Judge

5    Kessler.  And that meet and confer statement, I believe --

6    I don't have it in front of me, but I believe the very first

7    thing we said was we're asking for this as a sanction, and

8    Judge Kessler said she's passing this motion on to Your

9    Honor.  She certainly did not rule on bifurcation.

10        The rest of Mr. Schnayer's argument was all about

11    26(f), and I don't believe this is about 26(f).  This is

12    about noncompliance with Judge Kessler's order.

13        If you don't have any further questions, I'll sit

14    down.

15        THE MAGISTRATE JUDGE:  Very well.  Thank you.

16    You may have a seat.

17        MR. STIMPSON:  Thank you.

18        THE MAGISTRATE JUDGE:  As the Court indicated at

19    the outset, the Court reviewed the motion, the opposition

20    and the reply in advance of the hearing, and the Court has

21    now considered the proffers and arguments of counsel during

22    the course of the hearing.  Having done so, the Court will

23    grant the motion, largely for the reasons offered by the

24    Movant, both orally and in writing.

25        More specifically, the Court finds that what Papst

26

1    urges upon the Court is a novel way of counting the number

2    of days in which a party must serve responses to written

3    discovery requests.  The Court uses the term, quote,

4    "novel," close quote, because there is simply no authority

5    which supports this method of calculating the deadline.

6            The rules make plain when it is that a party is to

7    serve responses to written discovery requests.  There was no

8    motion for enlargement of time filed by Papst.  Papst did

9    not seek any clarification of the due date in the meet and

10   confer report that counsel, along with opposing counsel,

11   filed in this matter, and appears to have unilaterally taken

12   the position that because Papst was displeased with the

13   manner in which the Rule 26(f) meeting or conference was

14   conducted that the responses to the written discovery

15   requests would be withheld.

16            However, there is no authority that suggests

17   that a party may unilaterally alter the rule which would

18   otherwise apply, particularly in an instance such as this

19   where the Court ordered that discovery proceed, simply

20   because of a concern regarding the sufficiency of the 26(f)

21   conference.

22            For these reasons, the Court finds that the

23   opposition to the motion to compel and for sanctions was not

24   substantially justified and that there are no circumstances

25   which would make the imposition of sanctions unjust.

27

1          The Court therefore orders the following.

2          First, the Court orders that complete responses --

3    that is, without objections, which have been waived by the

4    failure to respond in a timely fashion -- be served within

5    10 calendar days of today's date.

6          Second; the Court imposes as a sanction the costs

7    to Casio, including reasonable attorney's fees, of moving to

8    compel and for sanctions.  The Court will order that such

9    costs be paid within 30 days of today's date and that

10   counsel work cooperatively to share and comment upon the

11   reasonableness of those costs.  This is not a matter that

12   should entail the filing of a motion, because the Court

13   expects that you will work cooperatively to determine what

14   the reasonable costs are.

15         To the extent that there is an additional sanction

16   that Casio requests, the motion for any additional sanction

17   other than the fees and costs, is denied.  ·

18         The Clerk will prepare a minute entry·which will

19   indicate that the motion to compel and for sanctions was

20   granted for the reasons set forth on the record at the

21   hearing. · There is no order, no written order, that will

22   follow.  The minute entry will also indicate that complete

23   responses without objection are to. be served within ten days

24   of today's date, and that Papst is to pay Casio's costs

25   within 30 ·calendar days of today's date.

28

1          Now, is there anything further in this matter
2     this afternoon?  Mr. Stimpson or Mr. Fe?
3          MR. STIMPSON:  Not that's pending before Your
4     Honor right now, nothing (inaudible).  ·
5          THE MAGISTRATE JUDGE:  Very well, thank you.
6     Mr. Schnayer, Mr. Wright?
7          MR. SCHNAYER:  Nothing further, Your Honor.
8     Thank you.
9          THE MAGISTRATE JUDGE:  Very well.  Thank you
10    very much.      ·  ·
11          There is nothing scheduled for the courtroom·for
12    the rest of the day, so if you wish to stay and continue
13    your efforts to confer before you return to your respective
14    destinations, you are welcome to do so.
15          COUNSEL:  Thank you.
16          THE MAGISTRATE JUDGE:  Very well.  Thank you
17    very much.
18          (Whereupon, proceedings were concluded.)
·19
20
21
22

29

UNITED STATES OF AMERICA )
                         ) Civil Action No. 06-1751
DISTRICT OF COLUMBIA     )

    I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                             _____
                                PAUL R. CUTLER

    I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                             _____
                                BONNIE FURLONG

# EXHIBIT E

---

ⓘ This message was sent with high importance.

**Haynie, Laurie**

| | | | |
|---|---|---|---|
| **From:** | Haynie, Laurie | **Sent:** | Wed 6/18/2008 7:48 AM |
| **To:** | Haynie, Laurie | | |
| **Cc:** | | | |
| **Subject:** | FW: Activity in Case 1:06-cv-01751-GK-DAR CASIO INC v. PAPST LICENSING GMBH & CO. KG Order on Motion for Miscellaneous Relief | | |
| **Attachments:** | | | |

**From:** DCD_ECFNotice@dcd.uscourts.gov [mailto:DCD_ECFNotice@dcd.uscourts.gov]
**Sent:** Wednesday, June 27, 2007 3:34 PM
**To:** DCD_ECFNotice@dcd.uscourts.gov
**Subject:** Activity in Case 1:06-cv-01751-GK-DAR CASIO INC v. PAPST LICENSING GMBH & CO. KG Order on Motion for Miscellaneous Relief

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court

### District of Columbia

## Notice of Electronic Filing

The following transaction was entered on 6/27/2007 at 4:33 PM and filed on 6/27/2007

| | |
|---|---|
| **Case Name:** | CASIO INC v. PAPST LICENSING GMBH & CO. KG |
| **Case Number:** | 1:06-cv-1751 |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
MINUTE ORDER by Magistrate Judge Deborah A. Robinson on 6/27/07 denying for the reasons offered by Plaintiff in its opposition [35] Motion for Clarification. (EW)

**1:06-cv-1751 Notice has been electronically mailed to:**
Campbell Killefer ckillefer@venable.com, docket@welshkatz.com, mamarkowska@venable.com, mhbelayneh@venable.com, wjkawula@welshkatz.com
J. Kevin Fee jkfee@morganlewis.com
Scott D. Stimpson stimpsonlaw@gmail.com
Jeffrey M. Gold jgold@morganlewis.com
Joseph E. Cwik jecwik@welshkatz.com

**1:06-cv-1751 Notice will be delivered by other means to::**

Jerold B. Schnayer
WELSH & KATZ, LTD.
120 South Riverside Plaza
22nd Floor
Chicago, IL 60606

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

---

This Document Relates To:
Casio v. Papst, 06-1751

Misc. Action No.  07-493 (RMC);
MDL Docket No. 1880

---

## MEMORANDUM OPINION DENYING PAPST'S OBJECTIONS TO MAGISTRATE JUDGE'S MAY 31, 2007 ORDER

Papst Licensing GMBH & Co. KG ("Papst") objects to the May 31, 2007 order of the

Magistrate Judge requiring Papst to respond to the initial discovery propounded by Casio America

Inc., formerly known as Casio, Inc., ("Casio USA") — without objections concerning attorney client

privilege, consulting expert privilege, attorney work product protections, objections based on

confidentiality, and objections based on relevance — due to Papst's failure to comply with the

district court's order requiring Papst to respond to Casio USA's initial discovery requests.  As

explained below, the objections will be denied.

### I. FACTS

Papst's objections arise from the earlier stages of this case before it was approved as

Multi-District Litigation ("MDL") and transferred to the undersigned.  Casio USA filed its complaint

against Papst on October 16, 2007.  Papst filed an answer and counterclaim, adding Casio Computer

Company, Ltd. ("Casio Japan") as a defendant on January 2, 2007.  The district court to whom the

-1-

case was assigned set an initial scheduling conference for February 1, 2007, and then postponed the conference until March 20, 2007.

Under the Local Rules, parties are required to hold a Rule 26(f) conference twenty-one days before the initial scheduling conference. *See* LCvR 16.2; *see also* Fed. R. Civ. P. 26(f). The Local Rule provides that a party may move to extend the deadline for holding a Rule 26(f) conference if a defendant has not been served or appeared in the case. Papst did not move to extend the deadline for the Rule 26(f) conference despite the fact that it had not then served Casio Japan.

Counsel for Papst and counsel for Casio USA conducted a telephone conference on March 2, 2007. Casio USA understood and intended this teleconference to be the Rule 26(f) conference; all required topics were discussed. Papst takes the position that the March 2, 2007, teleconference was not a proper Rule 26(f) conference because Papst had not yet served Casio Japan. As a result, Casio Japan was not represented during the phone call.[1]

On March 6, 2007, Papst filed a motion to continue the initial scheduling conference. Casio USA opposed the motion, challenging Papst's statement that it would take up to four months to serve Casio Japan under the Hague Convention, but also noting that if the Judge granted the motion, Casio USA requested that discovery continue. *Casio Am., Inc. v. Papst Licensing GMBH & Co. KG*, No. 06-1751, Casio's Resp. Dkt. #13 at 2. Casio USA explained:

> It is black letter law that once a 26(f) conference takes place, discovery can begin. This is applicable whether or not all parties have been served. Casio [USA] and Papst have had their Rule 26(f) conference, and pursuant to Rule 26, discovery should begin.

*Id.* Casio USA also explained that it already had served interrogatories and document requests on

---

[1] Papst served Casio Japan through the Hague Convention on March 13, 2007. Thereafter, counsel for Casio USA began joint representation of Casio USA and Casio Japan.

-2-

Papst on March 2, 2007, after it completed its Rule 26(f) conference with Papst. *Id.* at 3. In its

Reply, Papst first argued that the March 2, 2007 telephone call did "not satisfy Local Rule 16.3(a)

because not all Defendants participated." *See id.*, Papst's Reply Dkt. #14 at 2.[2] Second, Papst

contended that "[p]roceeding with a discovery plan now, when Casio Japan has not yet been served

and counsel for Casio U.S. will not and apparently cannot speak for Casio U.S. [sic], will waste the

time and resources of the Court and parties." *Id.* Papst's third argument was that Casio U.S. was

"attempting to gain tactical advantage in discovery by claiming to have conducted a good faith Rule

26(f) conference on March 2, and immediately thereafter serving written discovery on Papst

Licensing, when the phone call was missing *the* critical Defendant's counsel." *Id.*

With this completely briefed argument before it, in a Minute Entry Order dated March

13, 2007, the Court entered its "Order granting the Motions to Continue; the Initial Scheduling

Conference is hereby continued until May 14, 2007, at 10:15 a.m.; no further continuances will be

granted; discovery between Plaintiff and Defendant *is to proceed.*" *Casio Am., Inc. v. Papst

Licensing GMBH & Co. KG*, No. 06-1751, Minute Order filed Mar. 13, 2007 (emphasis added).

Papst alleges that it believed that the court's order that discovery was "to proceed"

meant that all three parties, Casio USA, Casio Japan, and Papst, should proceed with a Rule 26(f)

conference before Papst was required to respond to the Casio USA interrogatories and document

requests. Casio USA understood the Minute Order to mean that the time for response to its

---

[2]  Papst particularly complained that "[e]ven simple questions such as Casio Japan's electronic data and e-mail systems went unanswered." *Id.* This Court has subsequently stricken all of Papst's initial discovery requests to Casio USA as overbroad, unduly burdensome, not likely to lead to the discovery of relevant evidence, and propounded in bad faith, including its highly complex "simple questions" concerning information technology for each and every Casio company around the world. *See* First Order Regarding Casio/Papst Discovery Dkt. #77.

-3-

discovery requests began to run on March 2 when Casio USA served them upon Papst and that

Papst's responses therefore were due on April 2, 2007. As is clear from its own argument to the

Court, counsel for Papst acknowledged that they had received the Casio USA discovery requests on

March 2, 2007. Despite the direct Order of the Court, and its clear knowledge of the outstanding

discovery, Papst failed to respond by April 2.

On April 20, 2007, Casio USA moved to compel responses, and Papst opposed. The

district court referred the motion to compel to the Magistrate Judge. The Magistrate Judge heard oral

argument on May 31, 2007, and granted Casio USA's motion to compel from the bench, noting:

> [T]he court reviewed the motion, the opposition and the reply . . . .
> Having done so, the Court will grant the motion, largely for the
> reasons offered by the Movant, both orally and in writing.
>
> More specifically, the Court finds that what Papst urges upon the
> Court is a novel way of counting the number of days in which a party
> must serve responses to written discovery requests. The Court uses
> the term, quote, "novel," close quote, because there is simply no
> authority which supports this method of calculating the deadline.
>
> The rules make plain when it is that a party is to serve responses to
> written discovery requests. There was no motion for enlargement of
> time filed by Papst. Papst did not seek any clarification of the due
> date in the meet and confer report that counsel, along with opposing
> counsel, filed in this matter, and appears to have unilaterally taken the
> position that because Papst was displeased with the manner in which
> the Rule 26(f) meeting or conference was conducted that the
> responses to the written discovery requests would be withheld.

Tr. of May 31, 2007 hearing at 25. She ordered "that complete responses — that is *without*

*objections*, which have been waived by the failure to respond in a timely fashion — be served within

10 calendar days of today's date." *Id.* at 27 (emphasis added). As a sanction, the Magistrate Judge

also imposed on Papst the costs to Casio USA, including reasonable attorney's fees, of moving to

-4-

compel. *Id.*

On June 6, 2007, Papst filed a Request for Clarification, seeking clarification whether Papst was deemed to have waived the attorney client privilege, consulting expert privilege, attorney work product protections, objections based on confidentiality, and objections based on relevance. *Casio*, No. 06-1751, Dkt. #35. On June 7, 2007, Casio USA filed a response maintaining that all privileges had been waived, but agreeing to maintain the confidentiality of documents produced. *Id.*, Dkt. #37. On June 27, 2007, the Magistrate Judge summarily denied the Request for Clarification "for the reasons offered by [Casio]." *Id.*, June 27, 2007 Minute Order.

Prior to the Magistrate Judge's ruling on June 27, Papst had timely filed before the district court its objections to and motion to reconsider the Magistrate Judge's May 31, 2007 order. *Casio*, No. 06-1751, Dkt. #43, filed 6/14/07. Papst refiled that same motion, without change or update, in this MDL. *See* Papst's Objections to and Mot. to Reconsider the Magistrate Judge's May 31, 2007 Order Dkt. #43. Casio USA then responded. *See* Casio's Resp. Dkt.#49. Papst replied, *see* Papst's Reply Dkt. #44, and Casio USA supplemented its response, *see* Casio's Supp. Resp. Dkt. #63.

## II. LEGAL STANDARDS

Papst objects to the Magistrate Judge's Order under Local Civil Rule 72.2(b). Papst's Objections Dkt. #43 at 1 (citing LCvR 72.2(b) ("any party may file written objections to a magistrate judge's ruling . . . within 10 days after being served with the order")). Under Local Rule 72.2(c), "Upon consideration of objections filed in accordance with this Rule, a district judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be *clearly erroneous or contrary to law*." LCvR 72.2(c) (emphasis added). The comment to Rule 72.2 indicates, "The

Rule is intended to make clear that objections to the Magistrate Judge's proposed findings and

recommendations should not be called motions for reconsideration and are to be directed to the

district judge." Thus, even though Papst titled its motion as "objections to and motion to

reconsider," the Court treats the pleading as objections to the Magistrate Judge's order and not as

a motion to reconsider.

### III. ANALYSIS

Before addressing the merits of the parties' positions, the Court describes the nature

of the parties and this litigation to put this matter in context. Casio USA sells digital cameras in the

United States. Papst is a German company that produces no products; it acquires patents on products

or methods allegedly invented by others and then searches the world for patents it might challenge

for infringement. At one of the first status conferences of the MDL, when the Court queried whether

this was old-fashioned "claim-jumping," counsel for Papst readily agreed that it had been called

worse. Of course, this is a perfectly lawful and respectable business. But it underscores that the

business of Papst is *litigation*, not invention or production. Litigation is the business model whereby

Papst, when successful, achieves royalty payments from others. As is clear from this record, the

threat of litigation alone often achieves royalty payments. Papst is not represented by counsel from

Germany who may be unfamiliar with the federal rules. Its U.S. counsel are from Chicago and

regularly represent Papst in patent litigation across the country. These counsel are highly

experienced in U.S. patent law and in district court litigation.

With these considerations in mind, we turn to the instant matter. Papst objects to the

Magistrate Judge's ruling that it waived all objections based on attorney client privilege, consulting

expert privilege, protection under the work product doctrine, and relevance and that Papst is liable

-6-

for monetary damages. Papst asserts that waiver is too harsh because Papst's conduct grew out of a misunderstanding of the court order for discovery "to proceed."

This claim of "misunderstanding" cannot be credited. Casio USA had indicated specifically that it would not object to rescheduling the initial scheduling conference as long as discovery were not delayed, that Papst and Casio USA had held a Rule 26(f) conference, that Casio USA had served discovery requests on Papst, and that discovery between Casio USA and Papst should be allowed to proceed. Papst did not contest that the parties had had a teleconference that covered all subjects required by Rule 26(f) and acknowledged that it had received Casio USA's discovery requests on March 2, 2007; instead, it challenged the sufficiency of the teleconference; argued that time would be wasted by discovery against Casio USA without Casio Japan in the suit; and claimed that Casio USA was merely seeking strategic advantage. The district court granted Papst's motion to continue the initial scheduling conference to allow Papst time to serve Casio Japan. But the Court also ordered, succinctly and precisely, that "discovery between Plaintiff and Defendant is to proceed." When the Court ordered discovery "to proceed," it was clearly ruling on that aspect of the motion in Casio's favor and rejecting Papst's arguments. The time for serving responses to written discovery requests was clear under the rules, but Papst never filed a motion for an enlargement of time. In briefing here, Counsel for Papst do not address their failure to seek an enlargement. Nor did Papst seek clarification of the deadline for its discovery responses in the meet and confer report or in any other pleading. Counsel for Papst do not address their failure to seek any clarification of the deadline for its discovery responses. In the face of a direct Order of the Court, Papst simply withheld its responses.

Papst argues that the sanction of waiver of privileges is unduly harsh. "As a general

-7-

rule, when a party fails to object timely to discovery requests, such objections are waived." *See, e.g., United Steelworkers of Am., AFL-CIO v. IVACO, Inc.*, 2003 U.S. Dist. LEXIS 10008, at \*13 (N.D. Ga. Jan. 13, 2002); *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991); *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). However, "waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *United States v. British Am. Tobacco*, 387 F.3d 884, 891 (D.C. Cir. 2004). "[M]inor procedural violations, good faith attempts at compliance, and other mitigating circumstances will militate against finding waiver." *United Steelworkers of Am.*, 2003 U.S. Dist. LEXIS 10008, at \*13.

The Court finds that waiver of privileges is not too harsh a sanction under the circumstances presented here. Papst's failure to respond to Casio USA's discovery requests, as directly ordered, was entirely unjustified and inexcusable and smacks of bad faith. How difficult is it to understand a district court order that discovery is "to proceed"? Were there any doubt, Papst might have inquired. It did nothing. It merely delayed — a delay that continues, in part, to this day.[3] It may be a successful business model, when the "business" of a business is litigation, to interpose delay at any possible opportunity. Delay costs money to opponents and may, in the end, cause an opponent to settle a case. Ultimately, Papst offers no good reason why its experienced counsel should be allowed, without sanction, to ignore totally a court order on which they had been heard fully.

Accordingly, Papst is required to respond to Casio USA's initial discovery requests without objection based on attorney client privilege, consulting expert privilege, or attorney work

---

[3] As of April 24, 2008, Papst still had not responded sufficiently to Casio's discovery requests. *See* First Order Regarding Casio/Papst Discovery Dkt. #77 (ordering Papst to respond to Casio's interrogatories). Thus, the delay in question was not a matter of weeks, but more than a year.

product. Casio has agreed, and there is now a Protective Order entered by the Court, that will shield Papst's confidential documents from public display.

Papst further points out that is it not clear whether the Magistrate Judge ordered objections as to relevance be waived. She ordered "that complete responses — that is *without objections*, which have been waived by the failure to respond in a timely fashion — be served within 10 calendar days of today's date." Tr. of May 31, 2007 hearing at 27. The Magistrate Judge did not order that relevance objections be waived because "concluding that [irrelevance] is invariably waived whenever it is not timely asserted would lead to absurd results." *Byrd v. Reno*, No. 96-2375, 1998 U.S. Dist. Lexis 11855, at *15 (D.D.C. Feb. 12, 1998).

> [P]arties in discovery hardly need an inducement to ask the most outrageous questions possible in the hope than an untimely response would permit them to get indirectly what they knew they could not get directly. Accepting the proposition that a federal court must order an interrogatory answered no matter how irrelevant the information it seeks mocks the true purpose of the Federal Rules of Civil Procedure as stated in Rule 1 that the rules be "construed and administered to secure the just, speedy, and inexpensive determination of every action."

*Id*. Because waiver of a relevance objection would lead to absurd results, the Court finds that the Magistrate Judge could not have so intended. Accordingly, relevance objections have not been waived.

Finally, Papst argues that the sanction requiring it to pay Casio USA's costs and attorney's fees is unjust. Again, Papst contends that it was merely mistaken regarding its interpretation of the district court's order for discovery "to proceed." As explained above, this contention by Papst's experienced counsel is not credible. The sanction shall remain in place.

-9-

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the May 31, 2007 order of the Magistrate Judge was not clearly erroneous or contrary to law. The Court will deny Papst's Objections to and Motion to Reconsider Portions of Magistrate Judge Robinson's May 31, 2007 Order [Dkt. #43]. The Magistrate Judge's May 31, 2007 order in the underlying case, No. 06-1751, will be affirmed. A memorializing order accompanies this Memorandum Opinion.

Dated: May 6, 2008                              _____/s/_____
                                               ROSEMARY M. COLLYER
                                               United States District Judge

-10-

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 21(a)(1), I hereby certify

that on July 3, 2008, copies of the foregoing Petition for Writ of Mandamus and

nonconfidential addendum were caused to be served via e-mail on the following

counsel for respondents:

***For The Casio Parties*** (via e-mail)*:*

Laura Krawczyk
Morgan Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Phone: (212) 309-6000
Fax: (212) 309-6001
lkrawczyk@morganlewis.com

J. Kevin Fee
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
jkfee@morganlewis.com

Scott D. Stimpson
The Law Office of Scott D. Stimpson
Suite 1102
445 Hamilton Avenue
White Plains, NY 10601
stimpsonlaw@gmail.com

***For The Samsung Parties*** (via e-mail)*:*

Patrick J. Kelleher
Drinker Biddle Gardner Carton
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Phone: (312) 569-1375
Fax: (312) 569-3375
Patrick.kelleher@dbr.com

***Camera Manufacturers' Administrative Counsel and***
***For The Fujifilm Parties*** (via e-mail)***:***

Steven J. Routh
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone: (202) 637-5600
Fax: (202) 637-5910
sjrouth@hhlaw.com

Sten Jensen
Hogan & Hartson, LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone: (202) 637-6465
Fax: (202) 637-5910
sajensen@hhlaw.com

***For the Olympus Parties*** (via e-mail)***:***

Richard deBodo
Rachel M. Cappoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone: (310) 785-4694
Fax: (310) 785-4601
rdebodo@hhlaw.com
rmcappoccia@hhlaw.com

***For The Matsushita and Victory Company of Japan Parties*** (via e-mail):

Richard deBodo
Rachel M. Capoccia
Hogan & Hartson, LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 785-4694
Fax: (310) 785-4601
rdebodo@hhlaw.com
rmcapoccia@hhlaw.com

2

Adam K. Levin, Esq.
Hogan & Hartson LLP
555 13th Street, NW
Washington, DC 20004
aklevin@hhlaw.com

*For the Ricoh Parties* (via e-mail):

Paul Devinsky
McDermott Will & Emery LLP
600 13th Street N.W.
Washington D.C. 20005-3096
pdevinsky@mwe.com

*For Hewlett-Packard Company* (via e-mail):

Charlene M. Morrow
Heather N. Mewes
Fenwick & West LLP
555 California Street, Suite 1200
San Francisco, CA 94104
Phone: (415) 875-2300
Fax: (415) 281-1350
cmorrow@fenwick.com
hmewes@fenwick.com

*Attorneys For Nikon*  (via e-mail):

David L. Witcoff
Marc S. Blackman
Jones Day
77 West Wacker Drive
Chicago, IL 60601
Phone: (312) 782-3939
Fax: (312) 782-8585
dlwitcoff@jonesday.com
msblackman@jonesday.com

_____
Counsel for Papst Licensing Gmbh & Co. KG

3

Also pursuant to Federal Rule of Appellate Procedure 21(a)(1), I hereby certify that one copy of the foregoing Petition for Writ of Mandamus with addenda was provided to the trial court-judge no later than July 3, 2008 by filing a copy of the same with the court clerk for the U.S. District Court for the District of Columbia.

_____

Counsel for Papst Licensing Gmbh & Co. KG

4