## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE PAPST LICENSING GMBH & CO.
KG LITIGATION

Misc. Action No.  07-493 (RMC);
MDL Docket No. 1880

This Document Relates To:
Casio v. Papst, No. 06-cv-1751

## MEMORANDUM OPINION RE: SEVENTH ORDER REGARDING CASIO/PAPST
## DISCOVERY – CASIO'S MOTION TO DISMISS

Papst Licensing GMBH & Co. ("Papst") alleges that digital cameras sold by Casio

America Inc., its predecessor Casio Inc., and Casio Computer Co., Ltd. (collectively "Casio") in the

United States infringe two patents owned by Papst, U.S. Patent Nos. 6,470,399 and 6,895,449 (the

"Patents-In-Suit"). Casio denies the allegations. The parties are engaged in pre-trial discovery as

part of a set of cases joined for multidistrict litigation ("MDL") during discovery. There has been

substantial discovery litigation between these parties, and the Court has imposed sanctions against

Papst due to discovery abuses. Now, due to additional alleged discovery abuse, Casio seeks the

ultimate sanction — dismissal of Papst's claims against Casio and entry of default judgment in favor

of Casio. Casio argues that Papst's Fourth Supplemental Answers and Papst's most recent

production of documents are too little too late. Casio's complaints are not without justification, but

the Court concludes that its request for dismissal and default is too much too soon.

The Court will deny Casio's motion to dismiss or for default. Even so, because of

the continuing discovery abuses revealed by the record, the Court will order Welsh & Katz Ltd. to

pay the costs to Casio of bringing this motion, including reasonable attorney fees, and will deem the

conception date for the Patents-In-Suit to be no earlier than October 1, 1996.

## I.  FACTS

### A.  Prior Discovery Abuse by Papst

Casio's current request for sanctions must be considered in context.  As the Court has

previously explained:

> Casio USA sells digital cameras in the United States.  Papst is a German company that produces no products; it acquires patents on products or methods allegedly invented by others and then searches the world for patents it might challenge for infringement.  At one of the first status conferences of the MDL, when the Court queried whether this was old-fashioned "claim-jumping," counsel for Papst readily agreed that it had been called worse.  Of course, this is a perfectly lawful and respectable business.  But it underscores that the business of Papst is *litigation*, not invention or production.  Litigation is the business model whereby Papst, when successful, achieves royalty payments from others.  As is clear from this record, the threat of litigation alone often achieves royalty payments.  Papst is not represented by counsel from Germany who may be unfamiliar with the federal rules.  Its U.S. counsel are from Chicago and regularly represent Papst in patent litigation across the country.  These counsel are highly experienced in U.S. patent law and in district court litigation.

*See* Second Mem. Op. Regarding Casio/Papst Discovery filed May 6, 2008 [Dkt. # 82] ("Second.

Op.") at 6.

This Court sanctioned Papst for its discovery abuses by the following opinions and

orders: (1)  First Order Regarding Casio/Papst Discovery filed April 24, 2008 [Dkt. # 77] ("First

Order"); (2)  Second Op. and Order Regarding Casio/Papst Discovery filed May 6, 2008 [Dkt. # 83];

and (3)  Third Order Regarding Casio/Papst Discovery filed May 19, 2008 [Dkt. # 102] ("Third

Order").  Pursuant to these three Orders, the Court agreed with Magistrate Judge Deborah Robinson

and required Papst to divulge all information requested by Casio without objection based on any privilege. Further, the Court struck Papst's "outrageously overbroad" discovery requests of Casio, and precluded Papst from advancing additional formal written discovery on Casio because written discovery had long since been closed by the prior presiding judge. Third Order at 5.

Papst's waiver of privilege arose from a May 31, 2007 order of the Magistrate Judge requiring Papst to respond to the initial discovery propounded by Casio America Inc., formerly known as Casio, Inc., ("Casio USA") — without objections — due to Papst's failure to comply with the district court's order requiring Papst to respond to Casio USA's initial discovery requests.[1] Papst objected to the Magistrate Judge's May 31, 2007 order, claiming disingenuously that it did not understand the district court's order "to proceed" with discovery. *See* Second Op. at 7. This Court denied Papst's objections, finding:

> Papst's failure to respond to Casio USA's discovery requests, as directly ordered, was entirely unjustified and inexcusable and smacks of bad faith. How difficult is it to understand a district court order that discovery is "to proceed"? Were there any doubt, Papst might have inquired. It did nothing.

*Id*. at 8. Thus, on May 6, 2008, this Court again ordered Papst to respond to Casio USA's discovery requests without privilege objections. Then, on June 9, 2008, the Court clarified the Papst waiver of privilege as follows:

> (1) Papst may not limit its production of otherwise privileged documents to documents related "solely to Casio's products," and Papst must respond to Casio's discovery requests without objection based on attorney-client privilege, consulting expert privilege, or attorney work product as to any document or communication that came into being on or before May 6, 2008. This requirement extends

---

[1] The Magistrate Judge also imposed on Papst the costs to Casio USA, including attorney fees, of moving to compel.

to all Casio discovery requests, not just its initial discovery.

(2)  Papst has not waived its privileges as to the other Camera Manufacturers.

Fifth Mem. Order Regarding Casio/Papst Discovery filed June 9, 2008 [Dkt. # 124] ("Fifth Order") at 1; *see also* Fifth Mem. Op. Regarding Casio/Papst Discovery filed June 9, 2008 ("Fifth Op.") [Dkt. # 123].

### B.  Alleged Current Discovery Abuses

In apparent satisfaction of the Magistrate Judge's May 31, 2007, order requiring complete responses to Casio USA's discovery requests, Papst served its First Supplemental Interrogatory Responses on Casio on June 11, 2007.  Because Papst's answers were woefully inadequate and incomplete, Casio filed a motion to compel.  *See* Civ. No. 06-1751, Motion to Compel [Dkt. # 47], refiled in MDL, MC No. 07-493 [Dkt. # 47].  On April 24, 2008,[2] this Court granted the motion to compel, ordering Papst to respond to Interrogatory Nos. 1, 3, 4, 5, and 6 as follows:

> k.  Papst shall supplement its response to Casio's Interrogatory 1. Although Papst provided a response regarding six specific Casio models that Papst alleges infringe the patents-in-suit and Papst indicated that Casio infringes at least claim 1 for each patent, Papst's response was insufficient because Papst did not identify *all* infringing products and *all* claims that are alleged to be infringed.  Further, instead of indicating what each claim means, Papst merely stated "the claim element reads on . . . ."  Papst shall set forth its contentions regarding how Papst alleges that each element of each claim should be interpreted, as specifically requested in Interrogatory 1.

---

[2] Discovery between Papst and Casio was stayed for eight months after July 17, 2007, pending resolution of Papst's request that the case be transferred into this MDL proceeding.  *See* Civ. No. 06-1751, Order Granting Stay filed July 17, 2007 [Dkt. # 77].  This Court lifted the discovery stay effective March 20, 2008.  *See* Second Practice and Procedure Order filed April 8, 2008 [Dkt. # 36].

l.  Papst must respond to Casio's Interrogatory No. 3 (regarding secondary considerations evidencing non-obviousness).

m.  Papst must respond to Casio's Interrogatory No. 4 (regarding persons with whom Papst discussed a license) and may not limit its response to those documents in existence "up until the complaint was filed."  Papst may redact financial terms. Papst's positions with regard to the meaning and scope of the patents-in-suit are relevant.

n.  Papst must respond to Casio's Interrogatory No. 5, requesting that Papst "state the art area and level of ordinary skill in the art pertaining to the patents-in-suit and state in detail all bases for each such contention." Papst has access to the patents, the prosecution histories, the closest prior art, and the inventor.

o.  Papst must respond to Casio's Interrogatory No. 6, requesting a detailed description of the conception and reduction to practice of the alleged invention.  Papst has access to the inventor.

First Order ¶ 6k - o.[3]

In response to the April 24, 2008 Order, Papst served its Second Supplemental Interrogatory Answers on May 9, 2008.  *See* Casio Mem. in Supp. of its Mot. to Dismiss ("Casio Mem."), Ex. D Second Supp. Interrogatory Answers ("Second Supplemental Answers").  Papst supplemented these answers on May 28, 2008, by serving its Fourth Supplemental Answers.  *See* Casio Mem., Ex. V Papst's Fourth Supp. Interrogatory Answers.

_____

[3] Casio seeks sanctions based on Papst's current conduct as well as for the conduct that was the basis for Casio's motion for sanctions filed June 21, 2007.  *See* Civ. No. 06-1751, Mot. for Sanctions [Dkt. # 47], refiled without amendment in MDL, MC No. 07-493 [Dkt. # 37].  The Court initially held in abeyance Casio's motion for sanctions as well as Casio's request for sanctions included in Casio's motion to strike Papst's discovery requests.  Casio's motion to strike was originally filed in Civ. No. 06-1751 [Dkt. # 48] and was refiled without amendment in MDL, MC No. 07-493 [Dkt. # 38].  *See* First Order.  Subsequently, the Court declined to impose sanctions.  *See* Fourth Order Regarding Casio/Papst Discovery filed June 4, 2008 [Dkt. # 117] (finding that the 2007 motions can be put to rest as Papst already had been sanctioned, because Papst was precluded from advancing additional written discovery requests).  Accordingly, this Opinion focuses on Papst's conduct since the discovery stay was lifted on March 20, 2008 — conduct that was not the subject of prior sanctions motions.

In sum, the relevant timeline is as follows:

May 31, 2007 – Magistrate Judge ordered Papst to respond to Casio's discovery without objections.

June 11, 2007 – Papst served its First Supplemental Interrogatory Responses.

July 17, 2007 – Case stayed pending transfer to MDL proceeding.

March 20, 2008 – Stay on discovery lifted.

April 24, 2008 – Papst ordered to supplement its answers to Interrogatory Nos. 1 and 3-6. Parties were directed to meet and confer and file a joint discovery plan.

May 6, 2008 – Court affirmed Magistrate Judge's May 31, 2007 Order.

May 8 & 9, 2008 – Casio and Papst filed their disputed discovery plans.

May 9, 2008 – Papst served its Second Supplemental Interrogatory Answers. Casio Mem., Ex. D.

May 19, 2008 – Court again directed parties to meet and confer and file a joint discovery plan by June 2, 2008

May 28, 2008 – Papst served its Fourth Supplemental Interrogatory Answers. Casio Mem., Ex. V.

June 9, 2008 – Court clarified its May 6, 2008 Order regarding the scope of Papst's privilege waiver.

June 10, 2008 – Papst ordered to complete document production by June 13, 2008 (except documents subject to Papst's motion for clarification due July 9, 2008).[4]

Casio complains that the Second Supplemental Answers, even as supplemented by the Fourth Supplemental Answers, are inadequate and that Papst should have completed its document production as of June 10, 2007.

_____

[4] On July 3, 2008, Papst filed a petition for writ of mandamus in the Federal Circuit. This petition appeals the Fifth Opinion and Order that clarified Papst's privilege waiver. On July 7, 2008, the Federal Circuit stayed production of privileged documents, pending resolution of the petition for writ of mandamus.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2) provides that a court may impose a number of sanctions against a party for failure to obey discovery orders:

> If a party or a party's officer, director, or managing agent — or a witness designated under Rule 30(b)(6) or 31(a)(4) — fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2).

Sanctions may include a requirement that the recalcitrant party and/or its counsel pay the expense caused by the sanctioned conduct.  For example, when a party fails to serve answers to interrogatories, instead of or in addition to the sanctions listed in Rule 37(b)(2), "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the failure was substantially justified

or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). The apportionment of such liability between the party and its counsel is within the discretion of the court, and must be explained by sufficient findings. *Weisberg v. Webster*, 749 F.2d 864, 874 (D.C. Cir. 1984).

Dismissal or judgment under Rule 37(b)(2)(v) or (vi) is appropriate only when a party's disobedience is willful, in bad faith, or grossly negligent. *Id.* at 871. For example, in *G-K Properties v. Redevelopment Agency*, 577 F.2d 645 (9th Cir. 1978), the court ordered the plaintiffs to produce documents. While the plaintiffs did produce a large number of documents, by four months later they had still not completed production. *G-K Properties*, 577 F.2d at 647. The defendants moved for dismissal, and three days prior to the hearing on the motion to dismiss, the plaintiffs completed the document production. *Id*. The court rejected the tender of documents and dismissed the case. *Id*. at 648 (discussed with approval in *Weisberg*, 749 F.2d at 871-72)); *accord Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 11-13 (1st Cir. 1991) (court dismissed case after plaintiff refused to respond to discovery, and then after a court order, failed to comply on a timely basis); *Weisberg*, 749 F.2d at 871-72 (D.C. Circuit affirmed district court's dismissal due to plaintiff's willful failure to answer interrogatories).

The purpose of the severe sanctions of dismissal and default is twofold: such sanctions penalize the offending party and deter others from improper conduct. "[T]he most severe in the spectrum of sanctions provided by statue or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). A district

court need not exhaust lesser sanctions before imposing dismissal or judgment as a sanction, but the court must explain its reason for not adopting a lesser sanction. *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998).

In addition to the authority set forth in Rule 37, federal courts have inherent authority to dismiss an action and/or enter default judgment in order to prevent abuse of the judicial process and to protect the integrity of the court. *Shepard v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995). A court may exercise its inherent authority to enter a default judgment in limited circumstances — only if (1) it finds by clear and convincing evidence that the abusive conduct occurred, and (2) "a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits." *Id.*

Casio seeks dismissal of Papst's claims and entry of a default judgment against Papst, both pursuant to Rule 37(b)(2) (v) and (vi) and pursuant to the Court's inherent authority.

### III. ANALYSIS

Papst and its counsel, Welsh & Katz Ltd., have repeatedly failed in their discovery obligations in this matter. Their responses to Casio's Interrogatories have been lacking in precision and detail and their document production to Casio has lagged far behind applicable discovery deadlines under the Federal Rules of Civil Procedure. Further, they have misrepresented the status of their document production. The Court finds dismissal of the client's claims against Casio or a default judgment against Papst would be more extreme than the record supports; even so, monetary sanctions will be imposed against Welsh & Katz Ltd. and the conception date of the Patents-In-Suit will be limited.

### A.  Interrogatory No. 1, Request for Papst's Claim Interpretations

In response to Interrogatory No. 1, Papst was required to provide its claim interpretations.  In its Second Supplemental Answers, Papst provided examples of what Papst believes falls within each term, but failed to commit to claim interpretations.  For example, Papst stated that "the term data transmit/receive devices may be understood to cover an entire spectrum of sensors . . . [including] a CCD image sensor typically found in a digital camera . . . and a microphone."  Casio Mem, Ex. D at 66-67.  Similarly, Papst responded, "an example of a first connecting device . . . includes an interface circuit."  *Id*. at 67.[5]  In addition, Papst failed to define the phrase "configured by," as used in the statement that the interface device is "configured by the processor and memory." *Id*. at 68.

Papst asserts that its Fourth Supplemental Answers adequately responded to Interrogatory No. 1.  Casio contends, "This [Fourth] response still fails to provide a number of interpretations, and where it does interpret terms this only serves to confirm what Papst could have done, but refused to do, in response to the multiple court orders."  Casio Mem. at 10 n.3.  Casio complains that Magistrate Judge Robinson ordered a complete response to Interrogatory No. 1 on May 31, 2007 and this Court issued the same order on April 24, 2008 but that Papst has still not interpreted some claim elements, *i.e.*, "configured by the processor in memory"; "sampling circuit"; "analog to digital converter"; "second connecting device"; "digital signal processor"; "direct restructure"; "configuration file"; "executable or batch file"; "virtual file system"; "starting position"; "length of file allocation table"; "blocks"; "drivers for storage devices"; and "drivers for input/out devices."  *See* July 17, 2008 Tr. at 9-11.

---

[5] For other examples, *see* Casio Mem. at 8-9.

Further, in its *Markman*[6] brief, Papst interpreted "digital signal processor,"[7] "second connecting device,"[8] and "virtual file system."[9]  Casio argues that Papst could have provided these claim interpretations when they should have been provided, that is, more than a year before Papst filed its *Markman* brief.  Casio notes that none of the other terms it listed at oral argument, *supra*, has yet to be interpreted or construed by Papst.[10]

_____

[6] Under *Markman v. Westview Instruments, Inc.*, 518 U.S. 370, 389-90 (1996), the interpretation of patent claims is a question of law for the court.  Accordingly, the parties have filed "Markman" briefs advocating their position on claims interpretation.

[7] Papst writes that "[s]ome claims recite a Digital Signal Processor (e.g., claim 5 of the '399 patent).  This term is well known in the art, and it should be given its ordinary meaning of a processor with highly parallel, pipeline architecture optimized to perform repetitive operations." Papst's *Markman* Brief [Dkt. # 173] at 22 (citing its expert declaration).

[8] Papst asserts that "[t]he 'second connecting device' [in the '449 patent only] should be construed to mean the circuit devices used to couple the data transmit/receive device to the interface device, without limiting such circuit devices to sampling circuits or analog to digital converters." Papst's *Markman* Brief at 27.

[9] Referencing Col. 5, lines 35-44 of the '449 patent (Ex. B to Papst's *Markman* Brief), Papst contends:

> A person of ordinary skill in the art would understand that this portion of the specification describes how to simulate a virtual file system, *i.e.*, the interface device responds to the host computer with a file system and director structure of the type that would be found on a conventional hard disk, even though the physical structure of a conventional hard disk is not present on the interface device.  For example, while the disks inside a hard disk drive have "sectors" (portions of a track on the disk ion which information is recorded magnetically), memory chips do not have physical sectors.  Therefore, the invention simulates the existence of sectors, and provides the data that would normally be stored in the sectors, to simulate a virtual file system.

Papst's *Markman* Brief at 30.

[10] According to Casio, Interrogatory Nos. 1, 2, 4 and 6 "are still not answered." July 17, 2008 Tr. at 12.

-11-

Papst responds that while it may not have provided full claim interpretations in its response to Interrogatory No. 1, it provided claim interpretations in its answers to other, different interrogatories and that this should be sufficient to satisfy its obligation to respond to Casio's Interrogatory No. 1. Papst provided some claim interpretations in its answer to Interrogatory No. 7 on April 11, 2008 and supplemented its answer on April 18, 2008. Papst's Resp., Exs. 1 & 2. Papst's answer to Interrogatory No. 7 included claim interpretation on the claim language that Casio had identified as infringement defenses. Also, on May 7, 2008, Papst provided claim interpretation in response to interrogatories presented by the other, non-Casio, Camera Manufacturers.

Casio should not be required to scour Papst's responses to other interrogatories or other parties' interrogatories for Papst's response to Casio's Interrogatory No. 1. Moreover, Papst's response to Interrogatory No. 7, for example, only interpreted certain claim language identified as infringement defenses, not all of the claim terms as requested by Interrogatory No. 1. It is not clear whether Papst's response to the Camera Manufacturers' interrogatories contained sufficient information that could permit Casio to glean a complete response to Casio's Interrogatory No. 1. The point is that Casio is not required to search for the answers to its interrogatories; Papst is required to provide them.

In an attempt to support its supplementation of its answer to Interrogatory No. 1 on May 28, Papst points out that its asserted claims and infringement contentions were not due until May 28 2008, pursuant to the Court's Second Practice and Procedure Order [Dkt. # 36]. The requirement that Papst file its legal claims and infringement contentions should not be confused with the requirement that it respond to Casio's Interrogatory No. 1 requesting claim interpretations. These are two different things. Claim interpretations define the claim terms of the patent. Infringement

contentions identify which accused products are alleged to violate which patent claims. The May 28 deadline for filing claims and infringement contentions is not relevant to the issue of whether Papst sufficiently and timely responded to discovery.

### B. Interrogatory No. 2, Request for Papst's Identification of Prior Art and Document Production

Although the Magistrate Judge ordered Papst to provide a complete response to Interrogatory No. 2, this Court did not compel a response because Papst stated that it was moot. Papst indicated in its response to Casio's motion to compel:

> [Interrogatory No. 2 asked] Papst to identify alleged prior art. Casio does not deny that *Papst has complied by specifically listing every single reference that has been identified by others as potential prior art to the patents-in-suit.* (Ex. A, pp. 19-22) Casio also does not deny it is proper for Papst to also "identify" these documents under Rule 33(d), and that Papst did promise to provide a letter identifying the designated documents by Bates Number once the documents were numbered. On June 25, 2007, Papst provided its responsive documents in compliance with the Court's June 27, 2007 Order, and Papst provided its designations by letter on June 29, 2007. (Ex. D). *Thus, the issue is moot.*

Papst Resp. to Mot. for Sanctions filed April 9, 2008 [Dkt. #39] at 7 (emphasis added). Despite Papst's representation to Casio and the Court that it already had listed every reference identified as potential prior art, Papst recently[11] produced several additional prior art references,[12] including the Masters Thesis of the inventor, Michael Tasler. *See* Casio Mem., Ex. S. The Thesis was not disclosed to the U.S. Patent Office, despite the fact that Mr. Tasler presented it to the Faculty at the

---

[11] The pleadings do not indicate the date that Papst turned over additional prior art.

[12] Additional prior art references are set forth in Casio Mem., Ex. R. These include the user guide for the Kodak DC 25 camera, U.S. patent 6,147,703, and U.S. patent 5,402,170.

University of Texas in 1996, well before the U.S. Patent Office filing dates of the Patents-In-Suit.[13]

Papst asserts that it acquired these documents after the discovery stay was imposed. This claim is disingenuous. As the Court previously noted, "Papst has access to the patents, the prosecution histories, the closest prior art, and the inventor." First Order ¶ 6n; *see also* First Practice and Procedure Order filed November 30, 2007 [Dkt. # 3] ¶ 5 (for the purpose of the limitation on depositions, the inventor of the patents in suit is considered part of Papst). Papst had access to and control over the inventor, and the inventor had access to his own Thesis before the beginning of this case. Papst also has known of the prior art set forth in Exhibit R since June of 2007. Papst submitted this prior art to the Patent Office in an Information Disclosure Statement dated June 18, 2007. *See* Casio Reply, Ex. C Information Disclosure Statement.

Counsel for Papst asserts that they used their judgment to determine whether the alleged prior art was material or merely cumulative of other documents already identified. Papst asserts that the prior art patents in Exhibit R are not material and that the inventor's Thesis is not relevant to the patents because "identifying a problem in which the inventor was interested is not the same as disclosing a solution that ultimately constituted a claimed invention." Papst Opp'n to Casio Mot. to Dismiss [Dkt. # 133] at 6. Papst makes no showing that the alleged prior art was cumulative information. Further, the scope of discovery is broad. Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The

---

[13] The filing date of the '399 patent is October 22, 2002; the filing date of the '499 patent is May 15, 2005.

inventor's Thesis and the Patents-In-Suit relate to the same type of technology — flexible interface devices. The Thesis states, "Since almost any modern PC system offers a parallel Line Printer Port (LPT), the communication with the DSP [digital signal processor] will be established using this standard interface." Casio Mem., Ex. S at 19. It also states, "It is part of this project to invent a communication of DSP and PC via the standard parallel printer port of any Personal Computer System. The idea is not only to allow a convenient way of separating the devices, but also to provide compatibility to different PC systems." *Id.*, Ex. S at 15. Similarly, both the '399 and the '499 patents state, "It is an object of the present invention to provide an interface device for communication between a host device and a transmit/receive device whose use is host-device independent . . . ." *Id.*, Ex. T col. 3, lines 24-28 ('399 patent); *id.*, Ex. U col. 3 lines 20-23. Further, the prior art that Papst disclosed to the Patent Office in June of 2007 is relevant and should have been disclosed previously.

In addition to withholding prior art, Papst withheld numerous other documents while misrepresenting to Casio and the Court the status of its production. Counsel for Papst assured counsel for Casio in a June 2, 2008 email that Papst was not withholding documents on relevancy grounds. Casio Reply, Ex. D. Papst similarly assured the Court, in response to a direct question on April 22, 2008, that it had completed production of all documents except those that were privileged or concerned third parties.[14] However, after making these representations, by June 13, 2008, Papst

---

[14] During a April 22, 2008, telephone conference, Papst told the Court that the only documents it was withholding were those where it asserted privilege or work product protection or those that were third-party confidential documents.

> COURT: So it's your position that Papst doesn't owe Casio any
> documents?
> MR. WHITE: Other than [privileged documents and third party

had produced an additional 273,000 pages of documents,[15] and its full production was represented as being only "substantially complete."  July 17, 2008 Tr. at 14-15.  Casio complains:

> I know short of dumping what is probably 80 to a hundred boxes of documents on the Court, I'm really at a loss here. Because I can't give you a feel for what's there.  I tried to submit examples.  There's prior art.  There's inventor documents.  That inventor thesis, I mean that was like Exhibit A.  And they didn't give it to us.

*Id*. at 15.

Many of the 273,000 pages of documents are relevant and not privileged, and Papst's withholding of these documents is not excused.  Relevant and not privileged documents that Papst only recently produced include, for example: Casio Mem., Ex. S (inventor's Thesis); Ex. O (reports and blueprints of the inventor's work in 1995); Ex. P (documents relating to Casio cameras); Ex. Q (Papst documents relating to the patents and foreign counterparts); and Ex. R (prior art).

It must be noted that this Court set a date of June 13, 2008, for document production[16]

------

> confidential documents], I would say given that my understanding is, and Mr. Schnayer can correct me if I'm wrong or Mr. [Cwik], that would be the case.

Apr. 22, 2008 Tr. at 49.  Neither Mr. Schnayer nor Mr. Cwik corrected Mr. White.

[15]  Papst produced the additional 273,000 pages of documents in three batches:  on May 9, 2008, Papst produced about 50,000 documents; on May 23, 2008, Papst produced about 78,000 documents and said it had more to deliver in June; and on June 13, 2008, Papst produced an additional 145,000 pages and said that its production was "substantially complete, but not 100% due to 'clean up.'" Papst Opp'n to Casio Mot. to Dismiss [Dkt. # 133] at 8.

[16]  On June 10, 2008, the Court ordered:

> Although Papst has repeatedly assured the Court that it has completed document production to Casio, that is clearly not the case.  The Court orders Papst to complete production to Casio by June 13, 2008, including all privileged documents that are not subject to Papst's

and Papst has seemingly complied with that deadline. Further, Papst's May 9 Second Supplemental

Answers cannot be considered grossly untimely as they were filed promptly after the April 24, 2008

First Order, in light of the parties' ongoing discovery plan discussions. Papst's Fourth Supplemental

Answers were served shortly thereafter on May 28. Even so, Casio has a point: it asked for

documents and claim interpretations over a year before it received anything close to full answers.

Nonetheless, the transfer to an MDL, the resulting stay, and this Court's spring 2008 orders may

have confounded the process and for these reasons the Court will not sanction Papst's delays with

the extreme order of dismissal or default judgment.

### C. Interrogatory No. 6, Request for Information Regarding the Conception and Reduction to Practice

Casio's Interrogatory No. 6 asked Papst to describe the facts concerning the

conception and reduction to practice of the alleged invention. The Interrogatory requested the

"specific dates of such conception and reduction to practice." Magistrate Judge Robinson's May 31,

2007 Order required a complete response to this Interrogatory. This Court's April 24, 2008 order

again required a complete response to Interrogatory No. 6. *See* Order [Dkt. 77] ¶ 60. Papst indicated

in its proposed discovery plan that it would provide, on that very day, "the few remaining additional

updated responses to Casio's interrogatories." Papst's Prop. Discovery Plan filed May 9, 2008 [Dkt.

# 93]. Papst's May 9 Second Supplemental Answers state that the conception date is sometime

between January and October of 1996:

---

Motion for Clarification (*see* Dkt. # 101). Documents subject to
Papst's Motion for Clarification, shall be produced no later than July
9, 2008.

Sixth Order Regarding Casio/Papst Discovery: Regarding Parties' Disputed Discovery Plan, filed
10, 2008 [Dkt. # 125] at 4.

On January 2d or 3d, 1996, Mr. Michael Tasler, the inventor of the two patents at issue, spoke to Mr. Leitner of Siemens in Germany about Siemens' need for what Siemens called a new data acquisition system ("DAS"). Mr. Tasler was told that the device was needed to interface test equipment that had analog output signals to a computer. Mr. Tasler was told that Siemens had tried to find such equipment, but none was available.

From January[] 1996 to October[] 1996, Tasler attempted to solve Mr. Leitner's stated need, and at some point during this time period, Mr. Tasler first conceptualized his new idea for an invention that is the subject matter of the two patents at issue in these MDL proceedings in Wurzburg, Germany. On or about October 18, 1996, Michael Tasler first developed a working prototype for his new idea in Germany. An electronic test file from October 18, 1996, "DMA 13A.TXT," corresponds to the working prototype and states, "That's the one!! It is newer than DMA 13b." Between October 1996 and March of 1997, Mr. Tasler continued to develop his idea into an interface device that he called DAS. On March 4, 1997, Mr. Tasler filed for a patent in Germany, and shortly thereafter delivered a DAS device to Siemens AG in Germany.

Papst's Second Supp. Answers, Ex. D at 80.[17]

Papst does not identify any proof in support of a conception date prior to October 1996.[18] As a result, Casio argues, "either Papst is improperly asserting a possible conception date in January 1996, or it has failed to provide the information expressly required by this interrogatory." Casio Mem. at 13.

Papst argues that it has provided the best information that it has regarding the date

---

[17] Due to Papst's assertion of conception sometime between January and October of 1996, it cannot be determined whether Papst concedes that the inventor's Thesis, dated May 1996, is prior art. See 35 U.S.C. § 102(a) ("a person shall be entitled to a patent unless — the invention was . . . described in a printed publication in this or a foreign country, before the invention thereof by the applicant for the patent.").

[18] Papst acknowledges that it bears the burden of establishing the date of conception. See Papst Opp'n to Casio Mot. to Dismiss [Dkt. # 133] at 6 ("To the extent that conception will make any difference in this lawsuit, it would be Papst's burden to establish that date.").

of conception, that the inventor does not remember the exact date in 1996 when he conceived what would become the patented invention, and that it will supplement its answer if it finds more evidence. Specifically, Papst states that "Casio asserts that Papst has not identified anything 'that could possibly support a conception any earlier than October of 1996.' *Be that as it may*, if Papst finds additional evidence, it will supplement its discovery responses." Papst Opp'n to Casio Mot. to Dismiss [Dkt. # 133] at 7. "Be that as it may" is an American idiom that means "although it may be true," Cambridge Dictionary of Am. Idioms, Cambridge University Press 2003, or that a speaker "accept[s] a piece of information as a fact" but it "does not make [him] think differently about the subject" under discussion. Cambridge Int'l Dictionary of Idioms, Cambridge University Press, 1998. At the motion hearing, the Court asked counsel for Papst whether its use of the phrase meant that Papst agreed that it had not identified anything that could possibly support a conception date any earlier than October of 1996. Counsel for Papst responded, "[T]he information we received from the inventor Michael Tassler [sic] was that he didn't know a precise date." July 17, 2008 Tr. at 31. This statement does not contradict Papst's concession that it has no evidence that conception was before October 1996.

Of all the parties to this MDL, Papst alone has access to all of the information on conception because it is evidence from the inventor. In Interrogatory No. 6, Casio asked for "specific dates" of conception provided "separately for each asserted claim." Papst refuses to take a stand on any asserted claim, let alone separately for each claim. Papst's response that conception happened at an unknown time period between January and October 1996 is clearly overbroad and cannot be sustained. It is clear that Mr. Tasler spoke to Siemans in January 1996 about its need for an interface device that could receive analog data, that he published his Thesis in May 1996, at a time when he

had not yet solved the problem, and that he believes he was successful in October 1996. One more time, Papst's failure to respond directly and candidly has sent its opponents down a rabbit hole, trying to ascertain prior art. Because of its discovery abuses and its concession, the Court finds that the conception date of the Patents-In-Suit is deemed to be no earlier than October 1, 1996.

### D. Papst's Document Requests

Casio also complains that despite Judge Kessler's order setting a July 1, 2007 deadline for serving written discovery requests and this Court's affirmance of that order, see Ex. K, Mar. 20, 2008 Tr. at 6 and Ex. L, Mar. 25, 2008 Tr. at 70, Papst served a set of 133 document requests on March 28, 2008, well after the July 1, 2007 deadline. *See* Ex. M. Papst abandoned these document requests after the Court issued the Second Practice and Procedure Order on April 8, 2008. The Second Practice and Procedure Order expressly provided, "no further written discovery shall be allowed between Casio and Papst." Second Practice and Procedure Order filed April 8, 2008 [Dkt. # 36] ¶ 4. Papst again served document requests on Casio on May 2, 2008, and then withdrew them. Because Papst abandoned or withdrew these document requests, the Court will decline to sanction Papst's conduct in this regard.

### IV. CONCLUSION

For the reasons set forth above, Casio's motion for dismissal and for a default judgment [Dkt. ## 111 & 113] will be denied. While such severe sanctions are not warranted at this juncture, sanctions are appropriate to cure and deter the conduct of Papst and its counsel, Welsh & Katz Ltd. Monetary sanctions will be imposed on Welsh & Katz Ltd.[19] No later than <u>September 8,</u>

---

[19] The law firm of Welsh & Katz Ltd. recently reorganized and became Husch Blackwell Sanders Welsh & Katz. The monetary sanction imposed here lies against the original firm, Welsh & Katz Ltd.

2008, Casio shall file an affidavit detailing its costs in bringing this motion, including reasonable attorney fees.  Welsh & Katz Ltd. shall pay such costs, including attorney fees, to Casio no later than September 29, 2008.  Further, the conception date for the Patents-In-Suit will be deemed to be no earlier than October 1, 1996.  Papst and its counsel stand warned that any further discovery abuse, failure to act in good faith, or failure to act honestly and candidly with the Court or any party to this MDL may result in contempt or other sanction proceedings against Papst and its counsel, and may result in dismissal or default in favor of any or all of the Camera Manufacturer(s).  A memorializing order accompanies this Memorandum Opinion.

DATE: August 8, 2008                              _____/s/_____
                                                                    ROSEMARY M. COLLYER
                                                                    United States District Judge