UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING GMBH & CO. KG LITIGATION | Misc. Action No. 07-493 (RMC) |
| This Document Relates To: | MDL Docket No. 1880 |
| ALL CASES | |

**PAPST'S REPLY BRIEF IN SUPPORT OF THE JOINT MOTION
BY HEWLETT-PACKARD AND PAPST FOR ENTRY OF
JUDGMENT IN THE HEWLETT-PACKARD CASE AND IN
SUPPORT OF PAPST'S MOTION FOR A STAY OF ALL OTHER
PROCEEDINGS WHILE THE HEWLETT-PACKARD CASE IS ON APPEAL**

**I.    Background.**

After the Court's rulings on claims construction, Papst studied the effect of the Court's rulings. Papst was able to determine that none of Hewlett-Packard's ("HP") accused devices met the Court's definition of "second connecting device." By contrast, each of the Camera Manufacturers other than Hewlett-Packard ("the Other CMs") had some accused devices with ways for connecting with external data transmit/receive devices. Papst concluded, therefore, that at least some devices of each of the Other CMs did not avoid this limitation.

HP and Papst discussed this situation and were able to agree upon the proposed form of Judgment Of Non-Infringement And Stay Of Fee Proceedings During Appeal (Doc. No. 346-1) that is Exhibit A to the Joint Motion By Hewlett-Packard And Papst For Entry Of Judgment In The Hewlett-Packard Case (Doc. No. 346). A copy of that Exhibit A proposed form of judgment is attached for convenient reference. Entry of that judgment will permit appeal of the HP case to the Federal Circuit.

CHI-7372-4

The appeal of the HP case will be hotly contested by HP and Papst. There is no agreement between HP and Papst other than the joint motion and accompanying form of judgment. Each side has every incentive to fight tooth and nail in that appeal.

An appeal cannot be pursued with respect to the Other CMs because appellate jurisdiction cannot be established until the question of infringement is determined for all of a party's accused products. *E.g.*, *Cyrix Corp. v. Intel Corp.*, 9 F.3d 978 (Table), 1993 WL 452278 (Fed. Cir. 1993) (nonprecedential). The Other CMs do not contest this legal principle.

## II.     The Exhibit A Proposed Form Of Judgment Should Be Entered In The HP Case.

The Other Camera Manufacturers oppose entry of the Exhibit A proposed form of judgment on only two grounds, neither of which has any merit.

First, the Other CMs argue that Civil Rule 54(b) certification is required. Every court that has considered the issue has held that Rule 54(b) certification is not required to perfect an appeal of one case separately from the others in an MDL proceeding. The Other CMs cite inapposite cases that do not involve MDL proceedings.

Second, the Other CMs complain about the level of detail provided in the Exhibit A proposed form of judgment. This proposed form of judgment provides as much detail as other stipulated judgments accepted by the Federal Circuit as bases for appeals. Whether read alone, or in view of the record, this proposed form of judgment is more than sufficient to support an appeal to the Federal Circuit.

A. **Rule 54(b) Certification Is Not Required.**

The MDL Panel's Conditional Transfer Order (Exhibit B hereto) transferred the HP case from California to this Court pursuant to 28 U.S.C. § 1407 that provides for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a) (emphasis added). Nothing in that order or in the statute joins the HP case to the other cases for the purpose of either trial or appeal. Indeed, the statute specifically contemplates that each case in an MDL proceeding will be eventually sent back to its respective transferor court if a trial is required. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district court from which it was transferred unless it shall be sooner terminated . . . ."). Upon such return to their respective transferor courts, the several independent cases would go to trial on their own, and then go up on appeal on their own. *Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 216-217 (D.C. Cir. 2003). Thus, the statutory MDL procedure contemplates individual appeals.

Accordingly, every court that has considered the issue has held that Rule 54(b) certification is not required in order to send one case in an MDL proceeding up on appeal separately from the others. *Hampton*, 318 F.3d at 217 ("Despite the [MDL] consolidation [under § 1407], Hampton's action thus retained its separate status and the order dismissing it was a final judgment, appealable without the need for rule 54(b) certification."); *Brown v. U.S.,* 976 F.2d 1104, 1107 (7th Cir. 1992) ("While the district court did not dispose of all the claims in MDL 644, it did render a final judgment in Brown's tax case, and that judgment is appealable notwithstanding the lack of a Rule 54(b) determination."); *In re Ski Train Fire*, 2005 WL 1523508, *3 (SDNY 2005) ("Rule 54(b) certification is, therefore, unnecessary when a decision disposes of all claims in one of the actions within the MDL.").

3

There are no cases to the contrary. There is no "circuit split" on this issue.

The *Hampton*, *Brown*, and *Ski Train* cases were cited by HP and Papst, but are entirely ignored by the Other CMs.

Although the Federal Circuit has never spoken on the issue of whether or not Rule 54(b) certification is required to appeal a case separately from others in an MDL proceeding, all the other courts that have considered the issue have held that Rule 54(b) certification is <u>not</u> required, and there is no reason to believe that the Federal Circuit would choose to deviate from this otherwise uniform precedent.

The Other CMs cite *Spraytex, Inc. v. DJS&T*, 96 F.3d 1377 (Fed. Cir. 1996), as well as two nonprecedential cases. *Boston Edison Co. v. U.S.*, 299 Fed. Appx. 956 (Fed. Cir. 2008); *Thomson Licensing SA v. Berry*, 154 Fed. Appx. 206 (Fed. Cir. 2005), *vacated*, 180 Fed. Appx. 931 (2006). None of these cases involved an MDL proceeding. Civil Rule 42, <u>not</u> 28 U.S.C. § 1407, was the only basis available for consolidation in those cases.

Civil Rule 42 consolidation and § 1407 MDL proceedings address entirely different situations. A district court can only use Rule 42 in cases that are already before it. *Williams v. City of New York*, 2006 WL 399456, *1 n.1 (SDNY 2006) (Civil Rule 42 cannot be used to consolidate cases in different districts.). On the other hand, § 1407 is used to bring together separate cases from different districts (that is why its called a "multidistrict" proceeding), but only for the limited pretrial purpose specified by the statute and that does not include appeals. Nothing in § 1407 changes the individual character of those cases for the purpose of appeal. Each case in an MDL, thus, retains its own "separate identity." *Hampton*, 318 F.3d at 217 ("retained its separate status"); *Brown*, 976 F.2d at 1107 ("retains its separate identity"); *Ski Train*, 2005 WL 1523508 at *3 n. 29 ("retains its separate identity").

Because an MDL procedure is a statutory creature, the Other CMs could prevail in their argument only if there were some basis in the statute itself for hamstringing appeals from cases in an MDL proceeding. The Other CMs cite no such basis in the statute for their argument and, in fact, there is none. The Other CM's argument is *ultra vires* the statute.

Rule 54(b) certification is not needed to perfect an appeal from the Exhibit A proposed form of judgment. Rule 54(b) begins by referring to "an" action in the singular. Fed. R. Civ. Pro. 54(b) ("When an action ….") (emphasis added). In this case that action is the individual HP case itself, *i.e.*, case no. 08-cv-865, and not some amalgam with the other cases in the MDL. That follows from the fact that an MDL proceeding consists of multiple "separate" actions. *Hampton*, 318 F.3d at 217; *Brown*, 976 F.2d at 1107; *Ski Train*, 205 WL 1523508 at *3 n.29. Rule 54(b) then permits that single action to be divided up by certifying an appeal of "one or more, but fewer than all, claims or parties" in that single action. No such certification is needed here because, as explained in the Joint Motion, all the claims and parties in the HP case are already accounted for. In the proposed form of judgment all of Papst's infringement claims against HP are adjudicated and HP's counterclaims are dismissed without prejudice. No claims or parties are left to be divided out. Rule 54(b) certification is not needed.

In sum, neither law nor logic supports the Other CMs' argument that Rule 54(b) certification is required.

### B. The Proposed Form Of Judgment Provides Enough Information To Maintain An Appeal.

The Other CMs rely on *Jang v. Boston Scientific Corp.*, 532 F.3d 1330 (Fed. Cir. 2008), to argue that the Exhibit A proposed form of judgment does not say enough about why the HP

5

devices do not infringe under the Court's claim construction.[1]  The Exhibit A proposed form of judgment does not suffer from the defects present in the stipulated judgment in *Jang*.

The Federal Circuit could not determine from the stipulated judgment in *Jang* which claim elements mattered.  *E.g.*, 532 F.3d at 1331 ("The stipulation did not explain whether Jang's success on appeal in overturning any particular claim construction issue would, in fact, affect the infringement dispute."); 1336 ("[I]t is impossible to discern from the stipulated judgment which of the district court's claim construction rulings would actually affect the issue of infringement.").  By contrast, paragraph 9 of the Exhibit A proposed form of judgment expressly states that the term "second connecting device" is the one at issue.  The Other CMs do not dispute that this adequately specifies what claim term is at issue.

Instead, the Other CMs focus on the other criticism made by the Federal Circuit of the stipulated judgment in *Jang*, namely, the failure to explain "how the claim constructions would render the accused products infringing or noninfringing."  532 F.3d at 1331.  The relevant portion of the stipulated judgment in *Jang* appears in footnote 2 of the court's opinion.  *Id.* at 1333n.2.  An inspection of that footnote reveals that there is in fact no attempt whatsoever in *Jang* to link any claim language to any part of the accused devices.

That criticism cannot be made of the Exhibit A proposed form of judgment.  After specifying that the term "second connecting device" is the one at issue, paragraph 9 of the proposed form of judgment states, "The basis for the stipulation of noninfringement is that each of the Accused Devices lacks an interface device having a plug or socket that permits a user readily to physically attach/detach the interface device to/from a data transmit/receive device

---

[1] The Other CMs also parenthetically mention *Lava Trading, Inc. v. Sonic Trading Management, LLC*, 445 F.3d 1348 (Fed. Cir. 2006), but that case does not help the Other CMs' argument because there the Federal Circuit accepted the appeal and heard the case on the merits.

outside the Accused Device." Nothing like that appears in the stipulated judgment criticized in *Jang*. Accordingly, the *Jang* case is entirely distinguishable from the case at bar and provides no basis for saying that the Exhibit A proposed form of judgment is inadequate.

The level of detail appearing in the Exhibit A proposed form of judgment is in line with other stipulated judgments that have been sufficient to support appeals to the Federal Circuit since *Jang* was decided. Two examples are attached as Exhibit C and D hereto. Exhibit C is the Final Judgment in *RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.*, 342 Fed. Appx. 628 (Fed. Cir. 2009). The relevant portion of Exhibit C reads as follows:

> Defendants EPC Global Class-1, Generation-2 products include a transmitter and do not meet the "interrogator/reader" limitation of claims 1 and 15 of U.S. Patent No. 6,967,563 ("the '563 patent"). Therefore, Defendants do not infringe claim 1 or claim 15 of the '563 patent, literally or under the doctrine of equivalents.

Exhibit D is the Stipulation For Entry Of Final Judgment And Order from *Tuna Processors, Inc. v. Hawaii International Seafood, Inc.*, 327 Fed. Appx. 204 (Fed. Cir. 2009). After specifying three "disputed claim construction points" in paragraph 2, Exhibit D's paragraph 3 then states:

> The parties stipulate that, under the construction of the claims of the '619 Patent specified in Claim Construction Order of October 17, 2007, Defendant Hawaii International Seafood, Inc., does not infringe and has not infringed the '619 Patent because the patent claim limitations referred to in Paragraph 2 above are not met in regards to any of the products that are the subject of Plaintiff Tuna Processors, Inc.'s Complaint against Defendant Hawaii international Seafood, Inc.

No further explanation as to why there is no infringement appears in either Exhibit C or D, yet both were sufficient for the appeals in those cases. The Exhibit A proposed form of judgment is at least on a par with Exhibits C and D, and is actually more informative than either of them.

Besides the language of a stipulated judgment itself, the Federal Circuit will also look to the rest of the record for additional context. *Jang*, 532 F.3d at 1337 ("[W]e would sufficiently infer the factual context from the record."). In the case at bar, the record provides additional

explanation. For example, page 2 of Papst's Motion For A Stay Of All Other Proceedings While The Hewlett-Packard Case Is On Appeal (Doc. No. 347) states:

> … Papst can stipulate to non-infringement in that case because each accused HP device "lacks an interface device having a plug or socket that permits a user readily to physically attach/detach the interface device to/from a data transmit/receive device outside the" accused H/P device. By contrast, each of the other Camera Manufacturers have at least some accused devices that have mechanisms for readily attaching and detaching external devices such as microphones, intelligent flash units, GPS units, etc. that transmit data to the interface device. Papst believes that devices with such features constitute infringements even under the Court's claims constructions.

*See also, e.g.,* Tr. (7/14/09) at 34:4-6 ("[C]ertain devices appear to have jacks that would allow you to plug in an external device such as a microphone.") (attached as Exhibit E hereto). From this record the Federal Circuit can readily understand what it is that makes the HP devices noninfringing, namely, they lack ways for attaching external data transmit/receive devices.

Thus, whether taken alone or in light of the record, the Exhibit A proposed form of judgment is adequate to support an appeal to the Federal Circuit. Moreover, there is no need to pre-guess the Federal Circuit on this. In the unlikely event that for some reason the Federal Circuit decides that the proposed stipulated judgment is not informative enough, the Federal Circuit will tell us so and the problem can be addressed at that time.

**III.    The Court Ought To Stay The Other Cases During The Appeal Of The HP Case.**

The Other CMs argue that the motion for a stay is premature because the proposed form of judgment in the HP case is inadequate. As explained above, the Exhibit A proposed form of judgment in the HP case is adequate and should be entered. Accordingly, the Other CMs' first argument for opposing the stay is meritless.

The Other CMs also argue that an *affirmance* of the HP case will not impact the other cases. Curiously, the Other CMs say nothing about what effect a *reversal* would have, thereby

conceding by their silence that a reversal would greatly impact the other cases, as of course it would.

If the Federal Circuit reverses the Court's claims construction in the HP case, we will all have learned that many accused devices sold by the Other CMs that, at the moment, appear to be noninfringing are in fact back at issue. We may also have learned things about how to interpret the Tasler patent that affect the construction of other claim terms.

Furthermore, the reasons for having *Markman* proceedings so early in the case (claim construction often does not occur until later in the case, *e.g.*, after discovery) was the hope to narrow the case somewhat. But if there is a reversal in the HP case, any narrowing that might have occurred may have to be undone. For example, what if the Court is persuaded to narrow discovery based on the present construction of "second connecting device"? (Papst would object to that approach, but expect the Other CMs to push for it.) Discovery would have to be redone with the new claim scope in mind. That could include, *inter alia*, having to retake depositions.

If there were a reversal in the appeal of the HP case, how would HP's absence from discovery be dealt with? Would depositions of third parties, or even witnesses from the Other CMs, have to be retaken in order to give HP a chance to participate? In the absence of such participation, these depositions could not be used against HP by Papst. Fed. R. Civ. Pro. 32(a)(1)(A) (Requiring that party against whom a deposition is offered have been "present or represented at the taking of the deposition or had reasonable notice of it."). The purpose of the MDL proceeding is to reduce duplicative discovery. That purpose would be served by the stay and undermined without it.

As to the possibility of an affirmance in the HP case, that too would help with the administration of the rest of the cases in the MDL. The Court and the parties would then know

that a large number of accused devices do not infringe.[2] The remaining cases could be tailored to deal with the devices that are still at issue. Whichever way the appeal of the HP case turns out, the Court and the parties could adjust the other cases to deal with what the Federal Circuit has said.

Going forward here in the district court before receiving such guidance from the Federal Circuit promises complications down the road and a waste of the resources of the Court and all the parties. It is indeed ironic that the Other CMs who in the past have complained about the cost of discovery, now oppose a proposal that would suspend discovery and not cost them a dime.

### IV. A Stay In The District Court Will Not Impede The Ability Of The Other CMs To Participate In The HP Appeal As Amici.

At the March 10 hearing the Court expressed concern over the fact that the Other CMs would not be parties to the HP appeal even though they are accused of infringing the same patents. This is not an infrequent occurrence. This happens when an appeal occurs in a case against one accused infringer and there are other cases against other accused infringers. *E.g., Miken Composites, LLC v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1333 (Fed. Cir. 2008) ("Litigation stemming from the enforcement of U.S. Patent No. 5,415,398 ("the '398 patent") returns to this court for the third time, having visited us on two prior occasions in appeals from two different suits against two other accused infringers."); *Brady Construction Innovations, Inc. v. Perfect Wall, Inc., 290 Fed. Appx. 358, 361n.4 (Fed. Cir. 2008) (same term from same patent construed in earlier case against different accused infringer).*

---

[2] Papst can not say exactly how many because discovery was stayed. Starting shortly after the original claims construction order, Papst has repeatedly requested additional information it needs about the accused devices, but none has been forthcoming from the Other CMs.

In such situations nonparty accused infringers are <u>not</u> bound by issue preclusion from contesting prior claim constructions by the Federal Circuit. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996) ("[I]ssue preclusion could not be asserted against new and independent defendants even within a given jurisdiction…."). Accordingly, a subsequent "defendant is free to argue to the Federal Circuit that its claim construction was wrong and should not be followed, or to petition the United States Supreme Court for a writ of *certiorari* on this question." *Symantec Corp. v. Computer Assoc. International, Inc.*, 2005 WL 6225275, *13 (E.D. Mich. 2005).

The Federal Circuit does, however, give *stare decisis* effect to its own earlier claim constructions. *Miken*, 515 F.3d at 1338n.*. The doctrine of *stare decisis* does not require the later court always to follow the earlier ruling. For example, the Federal Circuit follows "a well-recognized exception to *stare decisis*," namely, that the later court "will reexamine and overrule a prior decision that was clearly erroneous." *Schott Optical Glass, Inc. v. U.S.*, 750 F.2d 62, 64 (Fed. Cir. 1984). In *Schott* the appellant sought to interpret the term "optical glass" as used in certain tariff regulations in a manner different from what had been affirmed in an earlier case. The Federal Circuit held that the appellant was entitled to challenge the earlier interpretation, and to submit additional evidence to support its arguments. *Id.* at 64 ("additional expert testimony and excerpts from treatises"), 65 ("should have been allowed to offer the additional evidence"). *See also Brady*, 290 Fed. Appx. at 363 ("[T]his court follows claim construction of prior panels absent exceptional circumstances.").

The Federal Circuit is quite cognizant of the *stare decisis* effect of its claim constructions. *Key Pharmaceuticals v. Hercon Labs*, 161 F.3d 709, 716 (Fed. Cir. 1999) ("We do not take our task lightly in this regard, as we recognize the national *stare decisis* effect that

this court's decisions on claim construction have."). Accordingly, the Federal Circuit takes pains to accept all relevant input, lest it make a mistake that would affect not only the parties before it, but other parties in other cases. *E.g.*, *id.* (considering a proposed claim construction contrary to the one the same party asserted in the district court). *See also*, *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1358-60 (Fed. Cir. 2008) (considering contrary arguments before maintaining a prior claim construction).

Frequently, nonparties to an appeal want to get their views in front of the Federal Circuit when the Court hears an appeal in another case involving a patent affecting them. They do so by filing amicus briefs. *E.g., Trading Tech. Int'l, Inc. v. ESpeed, Inc.*, 595 F.3d 1340, 1344 (Fed. Cir. 2010) (Amicus brief filed by GL Trade SA, defendant in case no. 1:05-cv-04120, N.D. Ill.); *Ortho-McNeil Pharmaceutical, Inc. v. Teva Pharmaceuticals Indus., Ltd.*, 344 Fed. Appx. 595, 596 (Fed. Cir. 2009) (Amicus brief filed by Apotex, Inc., defendant in case no. 1:07-cv-04050, N.D. Ill.); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. Appx. 697, 698 (Fed. Cir. 2008) (Amicus brief filed by Designer's Eyewear Studio, Inc., defendant in case no. 1:02-cv-20609, S.D. Fla.).

Under Fed. R. App. Pro. 29(a) an amicus brief may be filed either by leave of court or if all parties consent. For its part, Papst will not object to the filing of an amicus brief by the Other CMs. Even if a party were to object, the Federal Circuit would be unlikely to reject an amicus brief offered by someone actually affected by the claim construction at issue.

Under Fed. R. App. pro. 29(g) an amicus curiae may request oral argument.

Under Fed. R. App. Pro. 29(e) an amicus curiae files its brief <u>after</u> the principal brief of the party being supported is filed. This means that an amicus brief filed by the Other CMs would be filed after they have read both Papst's appellant's brief and HP's appellee's brief. This would

give them the advantages of having seen all the arguments and of being able to select exactly where to put the emphasis in their arguments.

It is difficult to understand just what the Other CMs might say to the Federal Circuit about the construction of the term "second connecting device" that cannot be said in an amicus brief.

Furthermore, the Other CMs may not even file an amicus brief because they judge that HP has adequately presented all the relevant arguments. Or the Other CMs may choose not to file an amicus brief because of the expense involved or for some reason of litigation tactics.

As a practical matter, it is hard to see how the Other CMs would actually be prejudiced by the HP appeal.

## V.  Conclusion.

None of the arguments raised by the Other CMs have any merit. The Exhibit A proposed form of judgment should be entered in the HP case.[3] The other cases ought to be stayed during the appeal of the HP case.

---

[3] Papst again asks the Court to address the matters raised in Papst's Motion To Complete The Record Regarding Dr. Williams (Doc. No. 345) before entering judgment in the HP case.

Respectfully submitted,

Dated: April 6, 2010

/s/ Yasmin S. Schnayer
James P. White
Jerold B. Schnayer
Daniel R. Cherry
Walter J. Kawula
Joseph E. Cwik
J. Aron Carnahan
Yasmin S. Schnayer
HUSCH BLACKWELL SANDERS, LLP
 WELSH & KATZ
120 South Riverside Plaza Suite 2200
Chicago, Illinois 60606
(312) 655-1500
**Attorneys for Papst Licensing GmbH &
 Co. KG**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing Papst's Reply Brief In Support Of The Joint Motion By Hewlett-Packard And Papst For Entry Of Judgment In The Hewlett-Packard Case And In Support Of Papst's Motion For A Stay Of All Other Proceedings While The Hewlett-Packard Case Is On Appeal was served on this the 6th day of April, 2010 with the Clerk of the Court using the CM/ECF system of the United States District Court for the District of Columbia, and thereby served upon all parties of record by CM/ECF, including the attorneys for the Camera Manufacturers.

                                              /s/ Yasmin S. Schnayer
                                              Attorney for Papst Licensing GmbH & Co. KG