**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** | **Misc. Action No. 07-493 (RMC)** |
| | **MDL Docket No. 1880** |
| **This Document Relates To:** | |
| **ALL CASES** | |

**The First Wave Camera Manufacturers' Motion for Summary Judgment of Noninfringement Based on the Limitation of "an Input/Output [a Storage] Device Customary in a Host Device"**

The First Wave Camera Manufacturers[1] ("Camera Manufacturers") respectfully move for summary judgment of noninfringement with respect to the "an input/output [a storage] device customary in a host device" claim limitation in U.S. Patent Nos. 6,470,399 ("'399 patent") and 6,895,449 ("'449 patent").

For the reasons stated in the accompanying Memorandum of Points and Authorities in Support of this Motion, the Camera Manufacturers respectfully request that the Court grant summary judgment that the "an input/output [a storage] device customary in a host device" limitation of the '399 and '449 patents is not met by the PTP Accused Devices or the MSC Accused Devices. The PTP Accused Devices and the MSC Accused Devices identify

---

[1] The "First Wave Camera Manufacturers" are:  Fujifilm Corporation; Fujifilm North America Corporation; Panasonic Corporation (formerly known as Matsushita Electric Industrial Co., Ltd.); Victor Company of Japan, Ltd.; Olympus Corporation; Olympus Imaging America Inc.; Samsung Techwin Co.; Samsung Opto-Electronics America, Inc.; Panasonic Corporation of North America; JVC Company of America; Nikon Corporation; and Nikon Inc.  Hewlett-Packard Company was a First Wave Camera Manufacturer, but Papst's infringement contentions against HP have been stricken and discovery stayed.

themselves as USB Still Image Capture devices and USB Mass Storage Class devices,

respectively; which are found outside of the computer and were not developed until after the

time of Papst's invention.  Accordingly, summary judgment is appropriate.

Dated:  May 16, 2011                    By:  /s/ Rachel M. Capoccia

*For the Panasonic Corporation (formerly Matsushita Electric Industrial Co., Ltd.) Parties and the Victor Company of Japan Parties*
Rachel M. Capoccia
Alston & Bird LLP
333 South Hope Street
16th Floor
Los Angeles, California 90071
Email: rachel.capoccia@alston.com
Phone: (213) 576-1037
Fax: (213) 576-1100

*For the Fujifilm Parties*
Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th St, NW
Washington DC 20005
E-mail: srouth@orrick.com
E-mail: sjensen@orrick.com
Phone: (202) 339-8400
Fax: (202) 339-8500

*For the Nikon Parties*
David L. Witcoff
Marc S. Blackman
Jones Day
77 W. Wacker Drive
Chicago, Illinois 60601
E-mail: dlwitcoff@jonesday.com
E-mail: msblackman@jonesday.com
Phone: (312) 782-3939
Fax: (312) 782-8585

*For the Olympus Parties*
Richard de Bodo

Christopher P. Broderick
Andrew V. Devkar
DLA Piper LLP (US)
1999 Avenue of the Stars
Suite 400
Los Angeles, CA 90067
E-mail: richard.debodo@dlapiper.com
E-mail: christopher.broderick@dlapiper.com
E-mail: andrew.devkar@dlapiper.com
Phone: (310) 595-3100
Fax: (310) 595-3300

***For the Samsung Parties***
Patrick J. Kelleher
Drinker Biddle & Reath LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
E-mail: patrick.kelleher@dbr.com
Phone: (312) 569-1375
Fax: (312) 569-3375

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**IN RE PAPST LICENSING GMBH & CO. KG**
**LITIGATION**

**Misc. Action No. 07-493 (RMC)**

**MDL Docket No. 1880**

**This Document Relates To:**

**ALL CASES**

**The First Wave Camera Manufacturers' Statement of Points and Authorities in Support of**
**Summary Judgment of Noninfringement Based on the Limitation of "an Input/Output [a**
**Storage] Device Customary in a Host Device"**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

TABLE OF EXHIBITS ...................................................................................................... v

INTRODUCTION .............................................................................................................. 1

LEGAL STANDARD........................................................................................................ 2

    I.    The Legal Standard For Summary Judgment ....................................................2

    II.   The Legal Standard For Noninfringement..........................................................3

        A.  Literal Infringement .....................................................................................3

        B.  Infringement Under The Doctrine Of Equivalents ........................................4

BACKGROUND ............................................................................................................... 5

    I.    The PTP And MSC Accused Devices .................................................................5

        A.  An Exemplary Accused Device .....................................................................6

    II.   The Asserted Patents.........................................................................................8

    III.  Claim Construction ...........................................................................................9

ARGUMENT ................................................................................................................... 10

    I.    The PTP Accused Devices Do Not Infringe the '399 Patent.............................10

        A.  The PTP Accused Devices...........................................................................10

        B.  Papst Concedes That the PTP Accused Devices Do Not Literally Infringe .11

        C.  The PTP Accused Devices Do Not Infringe The '399 Patent Under the
            Doctrine of Equivalents ..............................................................................13

    II.   The MSC Accused Devices Do Not Infringe the '399 and '449 Patents............16

        A.  The MSC Accused Devices .........................................................................16

        B.  The MSC Accused Devices Do Not Literally Infringe.................................17

        C.  The MSC Accused Devices Do Not Infringe Under the Doctrine of
            Equivalents..................................................................................................18

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amgen Inc. v. F. Hoffman-LA Roche Ltd*,
  580 F.3d 1340 (Fed. Cir. 2009)................................................................................5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................................................2, 3

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  402 F.3d 1188 (Fed. Cir. 2005).................................................................................14

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996)...................................................................................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...................................................................................................3

*Cleveland v. Policy Mgmt. Sys. Corp.*,
  526 U.S. 795 (1999)...................................................................................................3

*Combined Systems, Inc. v. Defense Technology Corp. of America*,
  350 F.3d 1207 (Fed. Cir. 2003).................................................................................3

*Conopco, Inc. v. May Dep't Stores Co.*,
  46 F.3d 1556 (Fed. Cir. 1994)...................................................................................13

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
  291 F.3d 1317 (Fed. Cir. 2002).................................................................................14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)...................................................................................................4, 5

*Hewlett-Packard Co. v. Mustek Systems, Inc.*,
  340 F.3d 1314 (Fed. Cir. 2003).................................................................................5

*Kao Corp. v. Unilever United States, Inc.*,
  441 F.3d 963 (Fed. Cir. 2006)...................................................................................3

*Kopykake Enterprises, Inc. v. Lucks Co.*,
  264 F.3d 1377 (Fed. Cir. 2001).................................................................................15

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991).................................................................................4

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
    324 F.3d 1308 (Fed. Cir. 2003)................................................................4

*\*Maniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008)..............................................................15

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), (en banc), *aff'd*, 517 U.S. 370 (1996) .......................3

*\*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)..............................................................14

*NOMOS Corp. v. BrainLAB USA, Inc.*,
    357 F.3d 1364 (Fed. Cir. 2004)................................................................4

*Ormco Corp. v. Align Tech., Inc.*,
    498 F.3d 1307 (Fed. Cir. 2007)................................................................2

*\*PC Connector v. Smartdisk*,
    406 F.3d 1359 (Fed. Cir. 2005).........................................................15, 16

*\*Planet Bingo v. Gametech*,
    472 F.3d 1338 (Fed. Cir. 2006)..............................................................14

*\*Sage Products, Inc. v. Devon Industries, Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997)..............................................................15

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998)..............................................................16

*V-Formation, Inc. v. Benetton Group Spa*,
    401 F.3d 1307 (Fed. Cir. 2005)................................................................4

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)................................................................4, 13, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ................................................................................2

Fed. R. Civ. P. 56(e) ................................................................................3

**TABLE OF EXHIBITS**

| Exhibit | Title | Starting Production Number | Ending Production Number |
|---|---|---|---|
| 1 | U.S. Patent No. 6,470,399 | PAP0007022 | PAP0007031 |
| 2 | U.S. Patent No. 6,895,449 | PAP0007056 | PAP0007065 |
| 3 | Declaration of Paul Berg | N/A | N/A |
| 4 | Nikon D200 Digital Camera Manual (excerpts only) | NIKON-P_K44846 | NIKON-P_45066 |
| 5 | *Universal Serial Bus Still Image Capture Device Definition* ("*USB SSCID*") | CM012288 | CM012333 |
| 6 | *Photographic and Imaging Manufactures, Inc.* ("PIMA 15740:2000") | CM012334 | CM012492 |
| 7 | Microsoft, *USB Storage – FAQ for Driver and Hardware Developers*, Updated Oct. 28, 2010, http://msdn.microsoft.com/en-us/windows/hardware/gg487419 (Last visited April 26, 2011) | CM012493 | CM012497 |
| 8 | Microsoft, *Archive USB Storage – FAQ for Driver and Hardware Developers*, Updated Oct. 28, 2004, http://www.microsoft.com/china/whdc/archive/usbfaq.mspx (Last visited April 26, 2011) | CM012498 | CM012502 |
| 9 | Errata for "*Universal Serial Bus Still Image Capture Device Definition*" Revision 1.0 as of 03/16/2007 | CM012503 | CM012504 |
| 10 | *Universal Serial Bus Specification* v.1.1 (excerpts only) | CM012505 | CM012831 |
| 11 | *Universal Serial Bus Mass Storage Class Specification Overview* - Revision 1.4 | CM012832 | CM012845 |
| 12 | *Universal Serial Bus Mass Storage Class Bulk-Only Transport* - Revision 1.0 | CM012846 | CM012867 |
| 13 | *Universal Serial Bus Mass Storage Class Control/Bulk/interrupt (CBI) Transport* – Revision 1.1 | CM012868 | CM012896 |
| 14 | Microsoft, *Gates Ushers In Next Generation of PC Computing With Launch of Windows 2000*, Feb. 17, 2000, http://www.microsoft.com/presspass/press/2000/Feb00/W2Kgatespr.mspx (Last visited April 28, 2011) | CM012897 | CM012899 |

## INTRODUCTION

Papst Licensing GmbH & Co. KG ("Papst") alleges that the Camera Manufacturers' products infringe U.S. Patent Nos. 6,470,399 ("the '399 patent") and 6,895,449 ("the '449 patent") (collectively, "the Asserted Patents", attached as Ex. 1 and Ex. 2) (CMF[1] 3). Papst contends that each of the Camera Manufacturers' products communicates with a computer either as a Universal Serial Bus ("USB") Picture Transfer Protocol ("PTP") device or a USB Mass Storage Class ("MSC") device (*id.*). The claims of the Asserted Patents require the "interface device" to identify itself to the host device as "an input/output device customary in a host device" for the '399 patent, and as "a storage device customary in a host device" for the '449 patent. The Court construed these phrases, to mean a "data input/output [storage] device that was normally present within the chassis of most commercially available computers at the time of the invention." But neither the PTP Accused Devices[2] nor the MSC Accused Devices[3] identify themselves as data input/output [storage] devices that were normally present *within* the chassis of most commercially available computers *at the time of the invention.*

---

[1] CMF refers to the Camera Manufacturers' Facts found in The First Wave Camera Manufacturers' Statement of Material Facts in Support of the First Wave Camera Manufacturers' Motion for Summary Judgment of Noninfringement Based on the Limitation of "an Input/Output [a Storage] Device Customary in a Host Device"

[2] The "PTP Accused Devices" refers to all of the Camera Manufactures' devices listed in Table 14 entitled "PTP Capable Devices that infringe the '399 patent" of Papst's Revised Asserted Claims and Infringement Contentions (Dkt. 416 at 287-306; CMF 6). Papst does not contend in its Final Contentions that PTP Accused Devices infringe the '449 patent.

[3] The "MSC Accused Devices" refers to all of the Camera Manufactures' devices listed in Table 12 entitled "MSC Capable Devices that infringe the '399 patent" and Table 13 entitled "MSC Capable Devices that infringe the '449 patent" of Papst's Revised Asserted Claims and Infringement Contentions (Dkt. 416 at 287-306; CMF 4-5). The PTP Accused Devices and the MSC Accused Devices collectively are referred to as the "Accused Devices."

Rather, the PTP Accused Devices and the MSC Accused Devices identify themselves as USB Still Image Capture devices and USB Mass Storage Class devices, respectively; which are found outside of the computer chassis and which did not exist at the time of Papst's purported invention. Thus, as a matter of law, neither the PTP Accused Devices nor the MSC Accused Devices can infringe the Asserted Patents. In support of this Motion the Camera Manufacturers submit the declaration of Paul E. Berg. Mr. Berg is an expert in USB technology.

The Camera Manufacturers respectfully move for summary judgment that neither the PTP Accused Devices nor the MSC Accused Devices infringe the Asserted Patents. Specifically, the Camera Manufacturers request that the Court rule (i) that the PTP Accused devices do not infringe the claims of the '399 patent, and (ii) that the MSC Accused Devices do not infringe the claims of the '399 and '449 patents. As Papst has only accused PTP and MSC devices of infringement, if the Court grants this motion in its entirety then the Court must enter judgment of noninfringement for all of the Camera Manufacturers' accused products.

## LEGAL STANDARD

### I.      The Legal Standard For Summary Judgment

Summary judgment is appropriate following claim construction when there is no genuine issue of material fact remaining. Fed. R. Civ. P. 56(c) ("[Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1312 (Fed. Cir. 2007). The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248.

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (*citing Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  However, "the mere existence of a scintilla of evidence" will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some "significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249, 252.

## II.     The Legal Standard For Noninfringement

Patent infringement analysis involves two steps: (i) the court must first construe the patent claims to determine their scope and meaning, and second, the claims as construed by the court must be compared to the allegedly infringing device.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), (en banc), *aff'd*, 517 U.S. 370 (1996); *see also Combined Systems, Inc. v. Defense Technology Corp. of America*, 350 F.3d 1207, 1210 (Fed. Cir. 2003).

### A.     Literal Infringement

To prove literal infringement, Papst must prove by a preponderance of the evidence that the Camera Manufactures' Accused Devices either contain or perform every limitation in the asserted claims.  *See Kao Corp. v. Unilever United States, Inc.*, 441 F.3d 963, 972 (Fed. Cir.

2006).  "Each element contained in a patent claim is deemed material to defining the scope of the

patented invention."  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29

(1997).  "[F]ailure to meet a single limitation is sufficient to negate infringement of the claim."

*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991); *NOMOS Corp. v.

BrainLAB USA, Inc.*, 357 F.3d 1364, 1367 (Fed. Cir. 2004).

### B.      Infringement Under The Doctrine Of Equivalents

Under the doctrine of equivalents, a claim element will be found equivalent and an

accused process or device infringing only if the differences between the element of the accused

process or device and the claim limitation at issue are insubstantial.  *V-Formation, Inc. v.

Benetton Group Spa*, 401 F.3d 1307, 1313 (Fed. Cir. 2005).  This turns on whether the accused

product elements perform substantially the same function in substantially the same way to obtain

substantially the same result as the asserted claim elements.  *Id*. at 1313.  Further, under the "all

elements" rule, there can be no infringement under the doctrine of equivalents if even one

limitation of a claim, or its equivalent, is not present in the accused device.  *Lockheed Martin

Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

One important caveat to an infringement analysis under the doctrine of equivalents

concerns a legal principle referred to as prosecution history estoppel.  Central to prosecution

history estoppel is the notion that "[w]hen a patentee originally claimed the subject matter

alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that

the surrendered territory comprised unforeseen subject matter that should be deemed equivalent

to the literal scope of the issued patent."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,

535 U.S. 722, 723 (2002).  Essentially, claim scope relinquished during prosecution to obtain the

patent, cannot be recaptured through the doctrine of equivalents.  *Id*.  The Supreme Court has

made clear that "[p]rosecution history estoppel may apply to any claim amendment made to

4

satisfy the Patent Act's requirements, not just to amendments made to avoid the prior art." *Id*. at 722, 736.  A patentee alleging infringement under the doctrine of equivalents bears the burden of proving that an amendment does not give rise to estoppel. *Id*. at 740.

To prove infringement under the doctrine of equivalents, the plaintiff must present "on a limitation-by-limitation basis, particularized testimony and linking argument as to the 'insubstantiality of the differences' between [the claims] and [the accused product], or with respect to the function, way, result test." *Amgen Inc. v. F. Hoffman-LA Roche Ltd*, 580 F.3d 1340, 1382 (Fed. Cir. 2009) (citation omitted).  Conclusory testimony that the accused device performs the same function, achieves the same result, and does it in the same way as the claim element "falls far short of the long-standing evidentiary requirement for proof of infringement under the doctrine of equivalents." *Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003).

## BACKGROUND

### I.     The PTP And MSC Accused Devices

Papst has accused PTP capable devices and MSC capable devices of infringing the Accused Patents (CMF 3).  This motion addresses Papst's allegations of infringement related to the PTP Accused Devices and MSC Accused Devices that are camcorders, digital cameras, and voice recorders.  As the Court has previously ruled, Papst has not been granted leave to amend its complaint to include cell phones and MP3 players (Dkt. 429, Memorandum Opinion on Camera Manufacturers' Motion for Sanctions at 12).  Accordingly, those products are not in the case.  Many of the accused camcorders, digital cameras and voice recorders that are in the case are both PTP and MSC capable.

In layman's terms, PTP and MSC relates to how a device is recognized by a computer. When a user connects an Accused Device to a computer with a USB cable, depending on the

mode setting, the computer will either recognize the Accused Device as a PTP device or a MSC

device.  As explained by Papst, if a device is in PTP mode, then the device will be recognized as

"an image class device, such as a scanner" (*e.g.*, Dkt. 416, Papst's Revised Asserted Claims

and Infringement Contentions 38 ("Papst's Final Contentions")).  If a device is in MSC mode,

then the device will be recognized as a USB mass storage class device, such as a USB disk drive

(*see id.* at 36).

### A.    An Exemplary Accused Device

For example, the Nikon D200 digital camera is both a PTP Accused Device and an MSC

Accused Device (Dkt. 416, Papst's Final Contentions at 234, 267, and 297).  As shown below,

the Nikon D200 is a digital camera.

**Nikon D200**



(Nikon, D200, http://www.nikonusa.com/en_INC/IMG/Assets/Digital-SLR/2010/25235-Nikon-
D200/Views/353_25235_D200_front_d_left.png (last visited May 5, 2011)).

In order to connect the Nikon D200 to a computer, the user selects whether to connect the

camera to the computer via PTP or MSC (Ex. 4, Nikon D200 Digital Camera Manual at NIKON-

P_K44962-64).  In the setup menu the user would select either PTP or Mass Storage, i.e., MSC

(*id.*).

**Nikon D200 – Connecting to a Computer**

### Before Connecting the Camera

Install the necessary software after reading the manuals and reviewing the system requirements. To ensure that data transfer is not interrupted, be sure the camera battery is fully charged. If in doubt, charge the battery before use or use an EH-6 AC adapter (available separately).

Before connecting the camera, set the USB option in the setup menu (121) according to the computer operating system and whether the camera is being controlled from Nikon Capture 4 Version 4.4 or later (available separately) or photographs are being transferred to the computer using the supplied software:



| Operating system | Supplied software | Nikon Capture 4 Camera Control |
|---|---|---|
| Windows XP Home Edition<br>Windows XP Professional<br>Mac OS X | Choose **PTP** or **Mass Storage** | Choose **PTP** |
| Windows 2000 Professional<br>Windows Millennium Edition (Me)<br>Windows 98 Second Edition (SE) | Choose **Mass Storage**\* | |
| Mac OS 9 | Not supported | |

\* Do NOT select **PTP**. If **PTP** is selected when the camera is connected, the Windows hardware wizard will be displayed. Click **Cancel** to exit the wizard, and then disconnect the camera. Be sure to select **Mass Storage** before reconnecting the camera.

(*id.*).

Whether the user selects PTP or Mass Storage depends, in part, on what type of computer the Nikon D200 is being connected to (*id.*). As shown in the table above, certain operating systems will support both PTP and Mass Storage connections whereas others may only support one type of connection (*id.*).

The user connects the Nikon D200 to a computer as shown in the following Figure:

7

**Nikon D200 – Connecting the USB Cable**



(*id.* at NIKON-P_K44963).

## II.    The Asserted Patents

The '399 patent has three independent claims, claims 1, 11, and 14 (CMF 8).  The '449

patent also has three independent claims, claims 1, 17, and 18 (CMF 10).  Each independent

claim (and thus each claim) of the '399 patent includes the limitation "an input/output device

customary in a host device" (CMF 9), and each independent claim (and thus each claim) of the

'449 patent, includes the limitation "a storage device customary in a host device" (CMF 11).  For

the Court's convenience, the relevant portions of the independent claims of the '399 and '449 are

reproduced below.

| '399 Patent | '449 Patent |
|---|---|
| 1… wherein the first command interpreter is configured in such a way that the command interpreter, when receiving an inquiry from the host device as to a type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is *an input/output device customary in a host device*, whereupon the host device communicates with the interface device by means of the driver for the input/output device customary in a host device, and …. | 1…wherein the interface device is configured by the processor and the memory in such a way that the interface device, when receiving an inquiry from the host device as to the type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is *a storage device customary in a host device*, whereupon the host device communicates with the interface device by means of the driver for the storage device customary in a host device, and |

| '399 Patent | '449 Patent |
|---|---|
| | …. |
| 11…wherein the first command interpreter is configured in such a way that the interface device, when receiving an inquiry from the host device as to the type of a device attached at the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is *an input/output device customary in a host device*, whereupon the host device communicates with the interface device by means of the specific driver for the multi-purpose interface, and . . . . | 17…where the interface device is configured using the processor and the memory in such a way that the interface device, when receiving an inquiry from the host device as to the type of a device attached at the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, to the host device which signals to the host device that it is *a storage device customary in a host device*, whereupon the host device communicates with the interface device by means of the specific driver for the multi-purpose interface, and . . . . |
| 14…regardless of the type of the data transmit/receive data attached to the second connecting device of the interface device, responding to the inquiry from the host device by the interface device in such a way that it is *an input/output device customary in a host device*, whereupon the host device communicates with the interface device by means of the usual driver for the input/output device, and . . . . | 18…regardless of the type of the data transmit/receive device attached to the second connecting device of the interface device, responding to the inquiry from the host device by the interface device in such a way that it is *a storage device customary in a host device*, whereupon the host device communicates with the interface device by means of the usual driver for the storage device, and . . . . |

### III.  Claim Construction

During the claim construction process, the Court construed "an input/output [a storage] device customary in a host device." (CMFs 1 and 2; *see also* Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 53-59).  For the '399 patent, "an input/output device customary in a host device" was construed as a "data input/output device that was normally present within the chassis of most commercially available computers at the time of the invention" (CMF 1).  For the '449 patent, "a storage device customary in a host device" was construed as a "storage device that was normally present within the chassis of most commercially available computers at the time of the invention" (CMF 2).

9

The Court also determined that the timeframe for the customary limitation was as of "1998 when Mr. Tasler applied for the '399 Patent" (Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 55). For the purposes of this motion, this date is March 3, 1998 (CMF 12). Thus, in order to infringe the '399 and/or '449 patents, when the Accused Device (i.e., digital camera, camcorder, or voice recorder) responds to an inquiry from the host device (i.e., computer), the Accused Device must identify itself as a data input/output [storage] device that was normally present within the chassis of most commercially available computers as of March 3, 1998 (CMFs 1 and 2; *see also* Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 53-59).

## ARGUMENT

The PTP Accused Devices and the MSC Accused Devices do not infringe the Asserted Patents. As required by the claims of the Asserted Patents, neither the PTP Accused Devices nor the MSC Accused Devices identify themselves as data input/output [storage] devices that were normally present *within* the chassis of most commercially available computers *at the time of the invention*. Papst has accused two types of devices that did not exist at the time of the purported invention and in nearly all circumstances are attached *outside* the chassis of a computer. Thus, summary judgment of noninfringement is appropriate.

### I.      The PTP Accused Devices Do Not Infringe the '399 Patent

#### A.      The PTP Accused Devices

When the PTP Accused Devices are connected to a computer, the PTP Accused Devices identify themselves as Still Image Capture Devices, such as a camera or scanner (Ex. 3, Declaration of Paul Berg ("Berg Decl.") at ¶¶ 20 and 21). Indeed, Papst admits that the PTP Accused Devices identify themselves as "an image class device, such as a scanner" (Papst's Final Contentions at 38; *see also* Ex. 3, Berg Decl. at ¶20). This is further confirmed by the

10

relevant USB specifications, which require PTP devices to identify themselves as a Still

Image Capture Device such as a camera or a scanner (Ex. 3, Berg Decl. at ¶¶ 20 and 21; Ex. 5,

*Universal Serial Bus Still Image Capture Device Definition* at CM012302 and CM012311).

But Still Image Capture Devices were not normally present within the chassis of a

computer at the time of the invention (Ex. 3, Berg Decl. at ¶ 22).  In fact, such a category of

devices did not exist as of March 3, 1998 (CMFs 13-17).  *Universal Serial Bus Still Image*

*Capture Device Definition* ("*USB SICDD*)", which defines how PTP devices communicate over

a USB connection, was not approved until July 11, 2000 (CMFs 14 and 15).  In addition, the first

PTP specification, PIMA 15740:2000, was not published until May of 2000 (CMFs 16 and 17).

Because PTP and the *USB SICDD* did not exist at the time of the purported Tasler invention,

Still Image Capture Devices could not be found inside the chassis of a computer at the time of

the invention

Furthermore, as of March 3, 1998, Still Image Capture Devices, like cameras and

scanners, were not found inside the chassis of most commercially available computers (Ex. 3,

Berg Decl. at ¶22).  Even today, Still Image Capture Devices are not found inside the chassis of

most commercially available computers (Ex. 3, Berg Decl. at ¶23).  Thus, when the PTP

Accused Devices are connected to a computer, they identify themselves as devices that are

ordinarily found *outside* the chassis of a computer, and that were first defined *after* the time of

the invention.

## B.    Papst Concedes That the PTP Accused Devices Do Not Literally Infringe

In view of the Court's construction of the term "an input/output [a storage] device

customary in a host device," Papst conceded that the PTP Accused Devices do not literally

infringe the asserted claims of the '399 patent[4] (Dkt. 416, Papst's Final Contentions at 4, 38, 71-72, 75, and 77).  Papst had to abandon its baseless literal infringement position because the PTP Accused Devices identify themselves as "an image class device, such as a scanner," which admittedly were not found within the chassis of most commercially available computers at the time of the invention (*id.* at 38; Ex. 3, Berg Decl. at ¶¶ 20, 22 and 23).  As discussed above, when a PTP device is connected to a computer it identifies itself as a device ordinarily found *outside* the chassis of a computer *after* the time of the invention (*see* Ex. 3, Berg Decl. at ¶¶ 22 and 23).

Thus, Papst resorted to alleging that "the PTP capable devices infringe under the doctrine of equivalents" (*id.* at 4).  Papst further states "in view of the Modified Order and the disclosure of the '399 patent, a scanner is also an equivalent of an input/output device customary in a host device" (*id.* at 72, 75, and 77).  Papst has not alleged that the PTP Accused Devices infringe the '449 patent (CMF 7).  Papst has maintained that "properly interpreted, a scanner literally is an input/output device which is customary in a host device" (*id.* at 71-72, 75, and 77).   As the Court has stated, "Papst will be barred from modifying its Final Contentions." (Dkt. 429, Memorandum Opinion on Camera Manufacturers' Motion for Sanctions at 12).  Additionally, the Court Ordered that Papst will be barred from advancing any arguments for infringement . . ., that are not based solely on this Court's construction of the [Asserted] Patents" (*id.*).  Thus, Papst's contentions are limited to alleging that the PTP Accused Devices infringe the '399 patent under the doctrine of equivalents, and the Camera Manufacturers are entitled to judgment that the PTP Accused Devices do not literally infringe the '399 patent.

---

[4] Papst is not asserting the '449 patent against the PTP Accused Devices.

C.    **The PTP Accused Devices Do Not Infringe The '399 Patent Under the Doctrine of Equivalents**

In order to meet this limitation under the doctrine of equivalents, Papst has to argue that "inside" the chassis of a computer is equivalent to "outside" the chassis of a computer.  But the doctrine of equivalents cannot be used to vitiate a limitation found in the patent claims.

As discussed above, PTP devices identify themselves as devices that are found *outside* of the chassis of most commercially available computers *after* the time of invention (Ex. 3, Berg Decl. at ¶¶ 22 and 23).  Thus, Papst has argued that a PTP device that identifies itself as a USB Still Image Capture Device (e.g., a scanner) found *outside* a computer, is the equivalent of a device that is located *inside* a computer (*e.g.*, Dkt. 416, Papst's Final Contentions at 38).  But "outside" is not equivalent to "inside," and the Court should enter judgment that the PTP Accused Devices do not infringe the '399 patent.

The Court has already rejected Papst's argument (Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 58).  As the Court stated:

> The phrase "customary in a host device" refers to the immediately antecedent noun "device;" there is no other antecedent word that the phrase reasonably could modify.  Thus, the input/output must be "customary in a computer."  And the word "in" should be construed in accordance with its ordinary meaning to mean "within," not "with respect to" as Papst proposes.  Papst's construction ignores the word "in" . . . .

(*id.*).

Papst is again trying to ignore the word "in" and to change it to its exact opposite.  "[T]he doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562, (Fed. Cir. 1994) (internal citations omitted).  Thus, "in" is not "out" and, as a matter of law, Papst is not permitted to rely upon the doctrine of equivalents because doing so would vitiate the claim term "in." *Warner-Jenkinson Co. v. Hilton*

*Davis Chem. Co.*, 520 U.S. 17, 29-30 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individuals elements of the claim, not to the invention as a whole.  It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.").  The Supreme Court has emphasized that the doctrine of equivalents must not expand to eliminate a claim element entirely.  *Id.*

Papst has argued, without any supporting case law, that it is permissible to read out the word "in" in its doctrine of equivalents analysis because the analysis allegedly does not need to be applied to each word of a claim limitation. (Dkt. 407, Papst's Reply to the Camera Manufacturers' Response to Papst's Proposed Infringement Discovery Plan at 15-16).  That is wrong as a matter of law.

The Federal Circuit has repeatedly refused to apply the doctrine of equivalents to cases where "the accused device contained the antithesis of the claimed structure."  *Planet Bingo v. Gametech*, 472 F.3d 1338, 1344-45 (Fed. Cir. 2006) (Upholding the district court's decision finding noninfringement where the plaintiff's doctrine of equivalents analysis would change the term "before" to "after"); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002) (holding that the doctrine of equivalents could not be used to cover an accused structure that was "above" two plugs, when doing so would vitiate the claim term "between"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (refusing to find infringement under the doctrine of equivalents for an accused product with only a "minority" of adhesive strips where the claim called for a "majority"); *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (holding that under the doctrine of

14

equivalence an "unmounted" computer was not an equivalent to a "mounted" computer); *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1425-26 (Fed. Cir. 1997) (holding that an elongated slot within, rather than on top of, the claimed container did not infringe under the doctrine of equivalents); *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1582, (Fed. Cir. 1996) (holding that after construing that a system for stringing tennis rackets required at least three different splay-creating offset distances for the strings, that the doctrine of equivalents cannot be used to extend the claims to cover a two-distance splayed string system). The principle articulated in the aforementioned cases is related to the familiar rule that the doctrine of equivalents cannot be employed in a manner that wholly vitiates a claim limitation. *See Warner-Jenkinson Co.*, 520 U.S. 29-30.  Accordingly, Papst's doctrine of equivalents argument must fail.  The Court should therefore grant the Camera Manufacturers' Motion for Summary Judgment that the PTP Accused Devices do not infringe the '399 patent because Papst cannot simply ignore the claim term "in" by reference to the doctrine of equivalents.

Additionally, there can be no infringement under the doctrine of equivalents of the limitations described as "customary" because a theory of equivalence would vitiate the "customary" claim limitation.  The Federal Circuit has repeatedly held that terms that are implicitly time-dependent, necessarily have a meaning specific to the time of filing.  *PC Connector v. Smartdisk*, 406 F.3d 1359, 1363-64 (Fed. Cir. 2005) (limiting "input/output port *normally* connectible to a *conventional* computer input/output port" and "*standard* input/output port" that is "*traditionally* connectable to a computer" to input/output technologies existing at the time of filing) (*emphasis added*); *see also Maniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) (holding that a "*conventional*" Internet browser is limited to web browsers in existence at the time of the alleged invention) (*emphasis added*); *Kopykake Enterprises, Inc. v.*

*Lucks Co.,* 264 F.3d 1377, 1384 (Fed. Cir. 2001) (holding that "*conventional* screen printing" did not cover ink jet printing because that was not a conventional method of printing at the time of filing) (*emphasis added*).

Like the Federal Circuit, this Court found that the term "customary" was time dependent and related to "the time of invention" (Dkt. 337, Modified Order Regarding Claim Construction at 3, ¶14; Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 55-56). "As a matter of law, there can be no infringement under the doctrine of equivalents '[i]f a theory of equivalence would vitiate a claim limitation.'" *PC Connector*, 406 F.3d at 1364-65 (*citing Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998)).  Thus, Papst cannot use the doctrine of equivalents to escape the "customary" limitation.

In conclusion, Papst's doctrine of equivalents argument must fail and summary judgment of noninfringement is appropriate.  PTP devices identify themselves as devices that are found *outside* of the chassis of most commercially available computers *after* the time of invention (*see* Ex. 3, Berg Decl. at ¶¶ 22 and 23).  Papst cannot use the doctrine of equivalents to rewrite the claims to change "in" to "out."

## II.   The MSC Accused Devices Do Not Infringe the '399 and '449 Patents

The MSC Accused Devices do not infringe the Asserted Patents for the same two reasons as the PTP Accused Devices.  First, USB MSC devices, including the MSC Accused Devices, identify themselves as a unique class of device (i.e., USB mass storage class device), which did not exist until after the time of the invention.  Second, USB MSC devices are not commonly used inside the chassis of a computer today, let alone at the time of the purported invention.

### A.   The MSC Accused Devices

When the MSC Accused Devices are connected to a computer, the MSC Accused Devices identify themselves as USB Mass Storage Class devices (Ex. 3, Berg Decl. at ¶29; Ex.

12, *Universal Serial Bus Mass Storage Class Bulk-Only Transport* at CM012856).  Papst admits

that the MSC Accused Devices identify themselves as "mass storage class device[s]" (*e.g.*, Dkt.

416, Papst's Final Contentions at 53).  Indeed, the relevant USB specifications *require* MSC

devices to identify themselves as a USB Mass Storage Class device (Ex. 3, Berg Decl. at ¶29;

Ex. 12, *Universal Serial Bus Mass Storage Class Bulk-Only Transport* at CM012856).

## B.    The MSC Accused Devices Do Not Literally Infringe

When the MSC Accused Devices are connected to a computer, they do not identify

themselves as a device ordinarily found inside the chassis of a computer at the time of the

invention.  As explained by Mr. Berg, the MSC Accused Devices identify themselves as USB

Mass Storage Class devices (Ex. 3, Berg Decl. at ¶29; Ex. 12, *Universal Serial Bus Mass Storage*

*Class Bulk-Only Transport* at CM012856), which did not exist as of March 3, 1998 (CMFs 18-

23).  All of the relevant USB MSC specifications were not available until after March 3, 1998

(*id.*; Ex. 3, Berg Decl. at ¶¶ 26-28 and 30).  Thus, a device that identifies itself as a USB Mass

Storage Class device cannot be ordinarily found inside the chassis of a computer at the time of

the invention (Ex. 3, Berg Decl. at ¶30).

Because USB Mass Storage Class devices did not exist by the time of the invention, there

were no drivers for USB MSC devices supported by any Windows operating system at that time

(CMFs 18-23).  Drivers for USB MSC devices were not preinstalled on operating systems until

the release of Windows 2000 on February 17, 2000 (CMFs 24-26).   According to Microsoft

"[Windows 98 did] not provide native USB storage support because the USB storage

specification was not finalized during the development phase of these versions of Windows" (Ex.

8, Microsoft's Archive on USB-Storage – FAQ for Driver and Hardware Developers at CM-

012498).  Thus, to use a USB MSC device with a Windows 98 operating system (which itself

was not released until June 1998 after the purported Tasler invention), users had to install a

device driver (*id.*).  Windows 2000 was the first Windows operating system to provide native

support for USB MSC devices (CMF 25).

As of March 3, 1998, there were no USB MSC devices inside the chassis of most

commercially available computers (Ex. 3, Berg Decl. at ¶30).  Even today, USB MSC devices

are not commonly found inside the chassis of most commercially available computers (Ex. 3,

Berg Decl. at ¶31).

In sum, the MSC Accused Devices do not identify themselves as a data input/output

[storage] devices that were normally present within the chassis of most commercially available

computers at the time of the invention.  Rather, the MSC Accused Devices identify themselves

as devices that are found *outside* the chassis of most commercially available computers *after* the

time of invention (*see* Ex. 3, Berg Decl. at ¶¶ 30 and 31).  Accordingly summary judgment of

noninfringement is appropriate.

### C.      The MSC Accused Devices Do Not Infringe Under the Doctrine of Equivalents

Papst has only alleged that the MSC Accused Devices literally infringe the Asserted

Patents (*e.g.*, Dkt. 416, Papst's Final Contentions at 4).  Papst has not alleged that the MSC

Accused Devices infringe under the doctrine of equivalents (*id.*).  Pursuant to the Court's

Sanctions Order, Papst is precluded from advancing any doctrine of equivalents theory (Order

Dkt. 429, Memorandum Opinion on Camera Manufacturers' Motion for Sanctions at 12).

### CONCLUSION

Based on the Court's constructions of an "input/output device customary in a host

device" and the phrase "a storage device customary in a host device," as a matter of law neither

the PTP Accused Devices nor the MSC Accused Devices can infringe the Asserted Patents.  The

PTP Accused Devices and the MSC Accused Devices identify themselves as USB Still Image

Capture devices and USB Mass Storage Class devices, respectively.  These types of devices are found outside of most commercially available computers and were not developed until after the time of Papst's invention.  Thus, neither the PTP Accused Devices nor the MSC Accused Devices identify themselves as data input/output [storage] devices that were normally present *within* the chassis of most commercially available computers *at the time of the invention.*

Accordingly, the Camera Manufacturers respectfully request that the Court grant their Motion for Summary Judgment of Noninfringement and Order that (i) the PTP Accused Devices do not infringe the claims of the '399 patent, and (ii) the MSC Accused Devices do not infringe the claims of the '399 and '449 patents.

Dated:  May 16, 2011          By:  /s/ Rachel M. Capoccia

*For the Panasonic Corporation (formerly Matsushita Electric Industrial Co., Ltd.) Parties and the Victor Company of Japan Parties*
Rachel M. Capoccia
Alston & Bird LLP
333 South Hope Street
16th Floor
Los Angeles, California 90071
Email: rachel.capoccia@alston.com
Phone: (213) 576-1037
Fax: (213) 576-1100

*For the Fujifilm Parties*
Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th St, NW
Washington DC 20005
E-mail: srouth@orrick.com
E-mail: sjensen@orrick.com
Phone: (202) 339-8400
Fax: (202) 339-8500

*For the Nikon Parties*
David L. Witcoff

Marc S. Blackman
Jones Day
77 W. Wacker Drive
Chicago, Illinois 60601
E-mail: dlwitcoff@jonesday.com
E-mail: msblackman@jonesday.com
Phone: (312) 782-3939
Fax: (312) 782-8585

***For the Olympus Parties***
Richard de Bodo
Christopher P. Broderick
Andrew V. Devkar
DLA Piper LLP (US)
1999 Avenue of the Stars
Suite 400
Los Angeles, CA 90067
E-mail: richard.debodo@dlapiper.com
E-mail: christopher.broderick@dlapiper.com
E-mail: andrew.devkar@dlapiper.com
Phone: (310) 595-3100
Fax: (310) 595-3300

***For the Samsung Parties***
Patrick J. Kelleher
Drinker Biddle & Reath LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
E-mail: patrick.kelleher@dbr.com
Phone: (312) 569-1375
Fax: (312) 569-3375

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**IN RE PAPST LICENSING GMBH & CO. KG LITIGATION**

**Misc. Action No. 07-493 (RMC)**

**MDL Docket No. 1880**

**This Document Relates To:**

**ALL CASES**

**The First Wave Camera Manufacturers' Statement of Material Facts in Support of the First Wave Camera Manufacturers' Motion for Summary Judgment of Noninfringement Based on the Limitation of "an Input/Output [a Storage] Device Customary in a Host Device"**

Pursuant to LCvR 7(a)(h) the First Wave Camera Manufacturers contend that there are no genuine issues to the following facts.  Each of the following Camera Manufacturers' Facts ("CMF") support the First Wave Camera Manufacturers' Motion for Summary Judgment of Noninfringement Based on the "Customary in a Host Device" Limitation.

**CMF 1.**       In U.S. Patent No. 6,470,399 ("the '399 patent"), the Court construed the phrase "an input/output device customary in a host device" as a "data input/output device that was normally present within the chassis of most commercially available computers at the time of the invention" (Dkt. 337, Modified Order Regarding Claim Construction at 3, ¶14; Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 53-59).

**CMF 2.**       In U.S. Patent No. 6,895,449 ("the '449 patent), the Court construed the phrase "a storage device customary in a host device" as a "storage device that was normally present within the chassis of most commercially available computers at the time of the invention" (Dkt. 337, Modified Order Regarding Claim Construction at 3, ¶14; Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 53-59)).

**CMF 3.**       Papst Licensing GmbH & Co. KG ("Papst") has accused only Picture Transfer Protocol ("PTP") capable devices and Mass Storage Class ("MSC") capable devices of infringing the '399 and '449 patents (collectively, "the Asserted Patents").

**CMF 4.**       Papst has asserted claims 1-3, 5, 7, 11, 14, and 15 of the '399 patent against MSC capable devices (Dkt. 416, Papst's Revised Asserted Claims and Infringement Contentions ("Papst's Final Contentions"), at Table 12, 220-250).

**CMF 5.**       Papst has asserted claims 1, 2, 6-9, 12, 13, 15-18 of the '449 patent against MSC capable devices (Dkt. 416, Papst's Final Contentions at Table 13, 251-286).

**CMF 6.**      Papst has asserted claims 1, 3, 5, 11, and 14 of the '399 patent against PTP capable devices (Dkt. 416, Papst's Final Contentions at Table 14, 287-306).

**CMF 7.**      Papst has not asserted the '449 patent against PTP capable devices (*See generally*, Dkt. 416, Papst's Final Contentions).

**CMF 8.**      The only independent claims of the '399 patent are claims 1, 11, and 14 (Ex. 1, '399 patent at claims 1, 11, and 14).

**CMF 9.**      Claims 1, 11, and 14 of the '399 patent each recite the limitation: "an input/output device customary in a host device" (Ex.1, '399 patent at claims 1, 11, and 14).

**CMF 10.**      The only independent claims of the '449 patent are claims 1, 17, and 18 (Ex. 2, '449 patent at claims 1, 17, and 18).

**CMF 11.**      Claims 1, 17, and 18 of the '449 patent each recite the limitation: "a storage device customary in a host device" (Ex. 2, '449 patent at claims 1, 17, and 18).

**CMF 12.**      The PCT filing date of the application that lead to the '399 patent is March 3, 1998 (Ex. 1, '399 patent).

**CMF 13.**      On September 23, 1998, *Universal Serial Bus Specification* v.1.1 published (Ex. 10 at CM021505 and CM021506).

**CMF 14.**      On July 11, 2000, *Universal Serial Bus Still Image Capture Device Definition* revision 1.0 was approved (Ex. 5 at CM012288 and CM012290; Ex. 3, Declaration of Paul Berg ("Berg Decl.") at ¶18).

**CMF 15.**      Prior to July 11, 2000, *Universal Serial Bus Still Image Capture Device Definition* was not publicly available (Ex. 5 at CM012288 and CM012290; Ex. 3, Berg Decl. at ¶18).

**CMF 16.** In May of 2000, *Photographic and Imaging Manufactures, Inc.* ("PIMA 15740:2000") was published (Ex. 6 at CM012334).

**CMF 17.** Prior to May of 2000, PIMA 15740:2000 was not publicly available (Ex. 6 at CM012334).

**CMF 18.** On October 22, 1998, *Universal Serial Bus Mass Storage Class Specification Overview* was first released (Ex. 11 at CM012833; Ex. 3, Berg Decl. at ¶26).

**CMF 19.** Prior to October 22, 1998, *Universal Serial Bus Mass Storage Class Specification Overview* was not publicly available (Ex. 11 at CM012833; Ex. 3, Berg Decl. at ¶26).

**CMF 20.** On September 31, 1999, *Universal Serial Bus Mass Storage Class Bulk-Only Transport* was released (Ex. 12 at CM012847; Ex. 3, Berg Decl. at ¶27).

**CMF 21.** Prior to September 31, 1999, *Universal Serial Bus Mass Storage Class Bulk-Only Transport* was not publicly available (Ex. 12 at CM012847; Ex. 3, Berg Decl. at ¶27).

**CMF 22.** On December 14, 1998, *Universal Serial Bus Mass Storage Class Control/Bulk/interrupt (CBI) Transport* was released (Ex. 13 at CM012869; Ex. 3, Berg Decl. at ¶28).

**CMF 23.** Prior to December 14, 1998, *Universal Serial Bus Mass Storage Class Control/Bulk/interrupt (CBI) Transport* was not publicly available (Ex. 13 at CM012869; Ex. 3, Berg Decl. at ¶28).

**CMF 24.** Windows 98 did not provide native support for USB MSC devices (Ex. 7, Microsoft's USB-Storage – FAQ for Driver and Hardware Developers at CM-012493 (Omitting Windows 98 from the list of Windows operating systems that provide native support for USB MSC devices); Ex. 8, Microsoft's Archive on USB-Storage – FAQ for Driver and Hardware

Developers at CM-012498 ("[Windows 98 Gold and Windows 98 Second Edition] do not provide native USB storage support because the USB storage specification was not finalized during the development phase of these versions of Windows")).  Thus, a user had to download and/or install drivers to use a USB MSC device with Windows 98 (*id.*).

**CMF 25.**     Windows 2000 was the first Windows operating system to provide native support for USB MSC devices (Ex. 7, Microsoft's USB-Storage – FAQ for Driver and Hardware Developers at CM-012493).  Thus, Windows 2000 was the first Windows operating system where a user did not have to download and/or install drivers to use a USB MSC (*id.*; *see also* Ex. 8, Microsoft's Archive on USB-Storage – FAQ for Driver and Hardware Developers at CM-012498 ("[Windows 98 Gold and Windows 98 Second Edition] do not provide native USB storage support because the USB storage specification was not finalized during the development phase of these versions of Windows")).

**CMF 26.**     Windows 2000 was released on February 17, 2000 (Ex. 14, Microsoft Press Release entitled *Gates Ushers In Next Generation of PC Computing With Launch of Windows 2000* at CM-012897).

Dated:  May 16, 2011                     By:  /s/ Rachel M. Capoccia

*For the Panasonic Corporation (formerly*
*Matsushita Electric Industrial Co., Ltd.) Parties and*
*the Victor Company of Japan Parties*
Rachel M. Capoccia
Alston & Bird LLP
333 South Hope Street
16th Floor
Los Angeles, California 90071
Email: rachel.capoccia@alston.com
Phone: (213) 576-1037
Fax: (213) 576-1100

*For the Fujifilm Parties*
Steven J. Routh

Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th St, NW
Washington DC 20005
E-mail: srouth@orrick.com
E-mail: sjensen@orrick.com
Phone: (202) 339-8400
Fax: (202) 339-8500

***For the Nikon Parties***
David L. Witcoff
Marc S. Blackman
Jones Day
77 W. Wacker Drive
Chicago, Illinois 60601
E-mail: dlwitcoff@jonesday.com
E-mail: msblackman@jonesday.com
Phone: (312) 782-3939
Fax: (312) 782-8585

***For the Olympus Parties***
Richard de Bodo
Christopher P. Broderick
Andrew V. Devkar
DLA Piper LLP (US)
1999 Avenue of the Stars
Suite 400
Los Angeles, CA 90067
E-mail: richard.debodo@dlapiper.com
E-mail: christopher.broderick@dlapiper.com
E-mail: andrew.devkar@dlapiper.com
Phone: (310) 595-3100
Fax: (310) 595-3300

***For the Samsung Parties***
Patrick J. Kelleher
Drinker Biddle & Reath LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606-1698
E-mail: patrick.kelleher@dbr.com
Phone: (312) 569-1375
Fax: (312) 569-3375

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 16, 2011, a true and correct copy of the

foregoing was filed with the Court and served electronically by the Court's CM/ECF System to

all registered users.


Dated:  May 16, 2011              By:  /s/ Rachel M. Capoccia
                                 Attorney for the Panasonic Corporation (formerly
                                 Matsushita Electric Industrial Co., Ltd.) Parties and
                                 the Victor Company of Japan Parties