**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**IN RE PAPST LICENSING GMBH & CO.**
**KG LITIGATION**

_____

**This Document Relates To:**
**ALL CASES**

**Misc. Action No. 07-493 (RMC)**
**MDL Docket No. 1880**

THE FIRST WAVE CAMERA MANUFACTURERS' REPLY MEMORANDUM IN
SUPPORT OF SUMMARY JUDGMENT OF NONINFRINGEMENT BASED ON THE
LIMITATION OF "AN INPUT/OUTPUT [A STORAGE] DEVICE CUSTOMARY IN A
HOST DEVICE" [DKT. 449]

**TABLE OF CONTENTS**

I.   INTRODUCTION ..............................................................................................1

II.  ARGUMENT ...................................................................................................3

    A.  The PTP Accused Devices Do Not Infringe the '399 Patent........................3

        1.  The PTP Accused Devices Cannot Meet the "at the Time of Invention" Limitation..............................................................................4

        2.  The PTP Accused Devices Do Not Identify Themselves As Devices "Within" the Chassis of a Computer and, As a Matter of Law, Devices "Outside" a Computer Chassis Are Not Equivalent to Devices "Within" a Computer Chassis ..................................................................5

        3.  Papst's Quibbles with Mr. Berg's Declaration Fail to Identify Any Disputed Genuine Issues of Material Fact...............................................11

    B.  The MSC Accused Devices Also Do Not Identify Themselves as "Devices Normally Present Within the Chassis of Most Commercially Available Computers at the Time of the Invention" ..................................................13

        1.  Papst Ignores the Distinction Between Hard Drives and USB Mass Storage Class Devices........................................................................13

        2.  Papst's Argument that the "Multi-Purpose Interface" Term Need Not be "Customary" is Irrelevant ..................................................................15

        3.  Papst's Reliance on SCSI Direct Access Devices is Barred Because They are Not In Papst's Infringement Contentions, and Are Otherwise Irrelevant .............................................................................................15

    C.  No Additional Information is Required under Fed. R. Civ. P. 56(d)............18

III.  CONCLUSION..............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*" Asyst Techs., Inc. v. Emtrak, Inc.,*
    402 F.3d 1188 (Fed. Cir. 2005)....................................................................7

*Antonious v. Spalding & Evenflo Cos., Inc.,*
    44 F. Supp.2d 732 (D. Md. 1998) *aff'd in part, rev'd in part,* 217 F.3d 849 (Fed. Cir.
    1999) ....................................................................................................7

*Arlington Indus., Inv. v. Bridgeport Fittings, Inc.,*
    290 F. Supp.2d 508 (M.D. Pa. 2003) .........................................................7

*Bicon, Inc. v. Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006)....................................................................7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).................................................................................12

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.,*
    291 F.3d 1317 (Fed. Cir. 2002)............................................................6, 8

*Cross v. Small,*
    2006 U.S. Dist. LEXIS 71769 (D.D.C. 2006) (Collyer, J.) ....................11

*Cybor Corp. v. FAS Techs., Inc.,*
    138 F.3d 1448 (Fed. Cir. 1998)..................................................................7

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,*
    114 F.3d 1547 (Fed. Cir. 1997)..................................................................7

*Exigent Tech. v. Atrana Solutions, Inc.,*
    442 F.3d 1301 (Fed. Cir. 2006).................................................................12

*Freedman Seating Co. v. American Seating Co.,*
    420 F.3d 1350 (Fed. Cir. 2005)..........................................................6, 7, 9

*Gaus v. Conair Corp.,*
    363 F.3d 1284 (Fed. Cir. 2004)..................................................................6

*Holcomb v. Powell,*
    433 F.3d 889 (D.C. Cir. 2006) .................................................................11

*Intex Recreation Corp. v. Metalast, S.A. Sociedad Unipersonal*,
  400 F. Supp.2d 123 (D. D.C. 2005)..............................................................................7

*Kothmann Enters., Inc. v. Trinity Indus., Inc.*,
  394 F. Supp.2d 923 (S.D. Tex. 2005) ....................................................................6, 8

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
  324 F.3d 1308 (Fed. Cir. 2003)...................................................................................6

*Moore U.S.A., Inv. v. Standard Register Co.*,
  229 F.3d 1091 (Fed. Cir. 2000), cert. denied, 552 U.S. 1008 (2001) .......................7

*Novartis Pharm. Corp. v. Abbot Labs.*,
  375 F.3d 1328 (Fed. Cir. 2004)...................................................................................7

*Planet Bingo, LLC v. Gametech Int'l Inc.*,
  472 F.3d 1338 (Fed. Cir. 2006)...................................................................................7

*Sage Products, Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997)...............................................................................7, 8

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001)...................................................................................7

*Seachange Int'l, Inc. v. C-COR Inv.*,
  413 F.3d 1361 (Fed. Cir. 2005)...................................................................................7

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998).................................................................................10

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1977)......................................................................................................6

**RULES**

**Fed. R. Civ. P. 56(d)**.....................................................................................................18

I.      **INTRODUCTION**

The Camera Manufacturers moved for summary judgment that neither the Picture

Transfer Protocol ("PTP") Accused Devices[1] nor the Mass Storage Class ("MSC") Accused

Devices[2] infringe U.S. Patent numbers 6,470,399 ("the '399 patent") and 6,895,449 ("the '449

patent") (collectively, "the Asserted Patents").[3]  Specifically, the Camera Manufacturers request

that the Court issue an Order that (1) the PTP Accused Devices do not infringe the '399 patent[4],

and (2) the MSC Accused Devices do not infringe the '399 and '449 patents.  Papst Licensing

GmbH & Co. KG ("Papst") has accused only Universal Serial Bus ("USB") PTP devices and

USB MSC devices of infringement.  Thus, if the Court grants this Motion in its entirety, then the

Court should enter judgment of noninfringement for all the Accused Devices for all Camera

Manufacturers.

Every independent claim of the '399 patent requires the "interface device" to identify

itself to the "host device" as "an input/output device customary in a host device" (CMF 9).

Additionally, every independent claim of the '449 patent requires the "interface device" to

identify itself to the host device as "a storage device customary in a host device."  The Court

construed these phrases nearly identically, to mean a "data input/output [storage] device that was

---

[1] The "PTP Accused Devices" refer to the Camera Manufactures' devices listed in Table 14 entitled "PTP Capable Devices that infringe the '399 patent" of Papst's Revised Asserted Claims and Infringement Contentions (Dkt. 416 at 287-306; CMF 6).  "CMF" in this brief refers to the Camera Manufacturer's Facts from their Statement of Material Facts in Support of the instant motion.

[2] The "MSC Accused Devices" refer to the Camera Manufactures' devices listed in Table 12 entitled "MSC Capable Devices that infringe the'399 patent" and Table 13 entitled "MSC Capable Devices that infringe the '449 patent" of Papst's Revised Asserted Claims and Infringement Contentions (Dkt. 416 at 287-306; CMF 4-5).  The PTP Accused Devices and the MSC Accused Devices collectively are referred to as the "Accused Devices."

[3] The First Wave Camera Manufacturers Motion, and Statement of Points and Authorities in Support thereof are located in Dkt. 449.  Papst's Opposition to this motion is located in Dkt. 474.

normally present within the chassis of most commercially available computers at the time of the invention."

Yet none of the Accused Devices identifies itself as a data input/output [storage] device that was normally present *within* the chassis of most commercially available computers *at the time of the invention*.  Rather, the PTP Accused Devices and the MSC Accused Devices identify themselves as Still Image Capture Devices (as that device type is defined in the USB standards), and Mass Storage Class devices (as that device type is defined in the USB standards), respectively.[5]  Both of these types of devices *did not exist at the time* of Papst's purported invention and, therefore, could not have been normally present within the chassis of computers at that time.  In addition, Still Image Capture Devices are customarily found *outside*, not inside, of the computer chassis.  Thus, as a matter of law, none of the Accused Devices can infringe the Asserted Patents.

Papst's Opposition confirms that summary judgment is warranted.  Papst does not dispute that the PTP Accused Devices identify themselves as USB Still Image Capture Devices and that such devices did not exist at the time of the invention.  Papst also does not dispute that USB Still Image Capture Devices are not normally present within the chassis of computers.  Papst's argument that devices "outside" the computer chassis are equivalent under the doctrine of

---

[4] Papst does not contend that PTP Accused Devices infringe the '449 patent.

[5] Papst quibbles with the Camera Manufacturers' reference to the "USB" Mass Storage Class and the "USB" Still Image Capture Device class, but Papst is elevating form over substance.  Within the USB standards, the Mass Storage Class is also referred to "USB Mass Storage Class" as defined in the standards (*e.g.*, Dkt. 449, Ex.11 at 1), and Still Image Capture Devices are also referred to as "USB Still Image Capture Devices" as defined in the standards (*e.g.*, Dkt. 449, Ex. 5 at page 1).  These USB standards define, among other things, the behavior or characteristics of such USB devices, including how they identify themselves to the attached computers.  Even Papst's own expert refers to "USB Still Image Capture Devices" (Dkt. 475, Locke Decl. ¶ 492).

equivalents to devices "inside" the computer chassis fails as a matter of law because it vitiates the claim limitation "an input/output device customary in a host device."

With respect to the MSC Accused Devices, Papst admits that they identify themselves as USB Mass Storage Class devices and that such devices did not exist at the time of invention. Finally, as discussed in detail below, Papst does not need any additional discovery from the Camera Manufacturers.  Because the material facts are not disputed, summary judgment should be granted.

## II.   ARGUMENT

### A.   The PTP Accused Devices Do Not Infringe the '399 Patent

The Parties do not dispute that the PTP Accused Devices identify themselves to the host device as Still Image Capture Devices as that device class is defined under the USB standards ("USB Still Image Capture Devices") (Dkt. 474, Papst's Opposition at 2; Dkt. 449, Ex. 3, Declaration of Paul Berg ("Berg Decl.") at ¶¶ 20 and 21).  Summary judgment on the PTP Accused Devices is warranted for two independent reasons.  First, Papst does not dispute that USB Still Image Capture Devices did not exist at the time of Tasler's invention and, therefore, could not be normally present within the chassis of computers at that time.  Second, Papst concedes that USB Still Image Capture Devices are not found within the chassis of computers. Consequently, Papst does not contend that the PTP Accused Devices literally infringe the '399 patent[6] (*see* Dkt. 416, Papst's Final Contentions at 4, 38, 71-72, 75, and 77; Dkt. 474, Papst' Opposition at 13).  Instead, Papst argues that devices "outside" the computer chassis are

---

[6] Papst conceded that the PTP Accused Devices do not literally infringe the asserted claims of the '399 patent:  "Scanners were available for use with computers at the time of the invention.  They were not, however, typically *within* the chassis of the computer" (Dkt. 474, Papst's Opposition at 2; (*see also* Dkt. 416, Papst's Final Contentions at 4, 38, 71-72, 75, and 77; Dkt. 474, Papst' Opposition at 13)).  Additionally, Papst has not asserted the '449 patent against the PTP Accused Devices.

equivalent to devices "in" the computer chassis.  Papst's doctrine of equivalents argument cannot succeed as a matter of law because it vitiates the claim limitation "an input/output device customary in a host device," which is found in every independent claim of the '399 patent.

> **1.     The PTP Accused Devices Cannot Meet the "at the Time of Invention" Limitation**

The Camera Manufacturers have shown that PTP Accused Devices do not meet the "at the time of invention" limitation.  As stated above, the parties agree that the PTP Accused Devices identify themselves as Still Image Capture Devices as defined by the USB standards (Dkt. 474, Papst's Opposition at 2; Dkt. 449, Ex. 3, Berg Decl. at ¶¶ 20 and 21; Ex. L43 to Locke Declaration).  The Camera Manufacturers do not, as Papst contends, claim that scanners did not exist in March 1998.  Rather, Still Image Capture Devices, as those devices are defined by the USB standards (i.e., USB Still Image Capture Devices) did not exist as of March 3, 1998 (CMFs 13-17).  Critically, Papst does not dispute that USB Still Image Capture Devices were not available at the time of the purported Tasler invention.  Because there is no dispute that the PTP Accused Devices identify themselves as USB Still Image Capture Devices and that such devices did not exist as of March 3, 1998, the PTP Accused Devices can not infringe the '399 patent and summary judgment is warranted.

Papst also argues that the "input/output device customary in a host device" limitation is met because (i) at the time of invention scanners were devices associated with computers, (ii) today scanners may be Still Image Capture Devices, and (iii) the PTP Accused Devices (*e.g.*, cameras and camcorders) identify themselves as Still Image Capture Devices (Dkt. 474, Papst's Opposition at 22).  Papst cannot, however, logically connect these dots.  It was not possible at the time of the invention for any scanner to identify itself to a computer through the USB protocol as a Still Image Capture Device, since the relevant standard did not exist at that time.

That scanners today may identify themselves as USB Still Image Capture Devices is irrelevant. As the Camera Manufacturers have proven, and Papst has failed to refute, USB Still Image Capture Devices and the USB Still Image Capture Device specifications did not exist at the time of invention.

> **2.      The PTP Accused Devices Do Not Identify Themselves As Devices "Within" the Chassis of a Computer and, As a Matter of Law, Devices "Outside" a Computer Chassis Are Not Equivalent to Devices "Within" a Computer Chassis**

Summary judgment also should be granted regarding the PTP Accused Devices for the independent reason that USB Still Image Capture Devices are not found within the chassis of computers. Conceding this material fact, Papst resorts to arguing that Still Image Capture Devices, which are "outside" the chassis of computers, are equivalent to devices "in" a computer chassis. But "outside" is not equivalent to "in" and the Court already rejected Papst's argument. During claim construction, Papst sought to have "in" construed as "with respect to," but the Court rejected this argument, instead equating "in" with "within:"

> And the word "in" should be construed in accordance with its ordinary meaning to mean "within," not "with respect to" as Papst proposes. Papst's construction ignores the word "in" rendering it superfluous, and such a construction is disfavored. *See Merck*, 395 F.3d at 1372 (a construction that gives meaning to all the terms of the claim in preferred over one that does not).

(Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 58). Papst cannot bypass the Court's claim construction by resorting to the doctrine of equivalents.[7] Papst's attempt to do so would impermissibly remove the claim term "in" from the patent claims.

---

[7] As this Court has already noted, "the intrinsic evidence – the claims, the specification, and the prosecution history – provide the full record necessary for claims construction" (Dkt. 336, Modified Mem. Opinion Regarding Claims Construction at 13-14). As a result, the Court did not admit expert testimony at the Markman hearing, and has disregarded prior Dr. Locke declarations as improper extrinsic evidence (*Id*. at 14; Dkt. 343, Order dated January 29, 2010 at 4). Similarly, the Court should disregard Dr. Locke's Third Supplemental Declaration (Dkt. 475) and the dictionary definitions cited by Papst as improper extrinsic evidence.

"[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1977) ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."); *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("[I]f a court determines that a finding of infringement under the doctrine of equivalents would entirely vitiate a particular claim[ed] element, then the court should rule that there is no infringement under the doctrine of equivalents." (quotations omitted)).

To determine whether a finding of equivalence would vitiate a claim limitation, "courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005). Furthermore, "a particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied." *Gaus v. Conair Corp.*, 363 F.3d 1284, 1291 (Fed. Cir. 2004) (quotations omitted).

Courts routinely reject doctrine of equivalents arguments similar to Papst's. For example:

(1)  "Between" cannot be equivalent to a claimed "above." *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002).

(2)  Nor can "between" be equivalent to a claimed "below." *Kothmann Enters., Inc. v. Trinity Indus., Inc.*, 394 F. Supp.2d 923, 956-58 (S.D. Tex. 2005).

6

(3)   "Slot within" cannot be equivalent to a claimed "on top of." *Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424-26 (Fed. Cir. 1997).

(4)   A "minority" cannot be equivalent to a claimed "majority." *Moore U.S.A., Inv. v. Standard Register Co.*, 229 F.3d 1091, 1105-06 (Fed. Cir. 2000), cert. denied, 552 U.S. 1008 (2001).

(5)   "After" cannot be equivalent to a claimed "before." *Planet Bingo, LLC v. Gametech Int'l Inc.*, 472 F.3d 1338, 1344-45 (Fed. Cir. 2006).

(6)   "Metallic" cannot be equivalent to a claimed "nonmetallic." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345-47 (Fed. Cir. 2001).

(7)   One shape (frusto-conical, concave) cannot be equivalent to another claimed shape (e.g., frusto-spherical, convex). *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955-56 (Fed. Cir. 2006).

(8)   "Indirect" cannot be equivalent to a claimed "direct." *Seachange Int'l, Inc. v. C-COR Inv.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005).

(9)   "Not mounted" cannot be equivalent to a claimed "mounted*." Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005).

(10)   A "surfactant" cannot be equivalent to a claimed "nonsurfactant excipient." *Novartis Pharm. Corp. v. Abbot Labs.*, 375 F.3d 1328, 1336-38 (Fed. Cir. 2004).

(11)   "Grooved" cannot be equivalent to a claimed "smooth." *Intex Recreation Corp. v. Metalast, S.A. Sociedad Unipersonal*, 400 F. Supp.2d 123, 133-34 (D. D.C. 2005).

(12)   "Not smooth" cannot be equivalent to a claimed "smooth." *Cf. Arlington Indus., Inv. v. Bridgeport Fittings, Inc.*, 290 F. Supp.2d 508, 525-26 (M.D. Pa. 2003).

(13)   A reactive gas cannot be equivalent to a claimed inert gas. *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1560-61 (Fed. Cir. 1997) (overruled on other grounds by *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998)).

(14)   "Attached at both ends" cannot be equivalent to a claimed "attached solely at one end." *Antonious v. Spalding & Evenflo Cos., Inc.*, 44 F. Supp.2d 732, 737-38 (D. Md. 1998) *aff'd in part, rev'd in part*, 217 F.3d 849 (Fed. Cir. 1999).

(15)   "Rotational motion" cannot be the equivalent to a claimed "slidably mounted." *Freedman Seating Co. v. American Seating Co.*, 420 F.3d at 1362.

Notably, the first three of these fifteen cases support the conclusion that location-related claim limitations must be met by the purported equivalent. *See Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d at 1322 (holding that the doctrine of equivalents could not be used to cover an accused structure that was "above" two plugs, when doing so would vitiate the claim term "between"); *Kothmann Enters., Inc. v. Trinity Indus., Inc.*, 394 F. Supp.2d at 957-58 (holding that patent for roadside guardrail, requiring the mounting of a cuttable member "between" two parallel guardrails, was not equivalently infringed by accused devices whose cuttable members were mounted between guardrails when viewed from above, but below guardrails when viewed from side); *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d at 1425-26 (holding that an elongated slot within, rather than on top of, the claimed container did not infringe under the doctrine of equivalents).

Papst only relies on two cases to support its doctrine of equivalents argument (Dkt. 474, Papst's Opposition at 18-22). However, in both cases the doctrine of equivalents argument did not vitiate the claim limitation. First, in *Voda v. Cordis Corp.*, defendant Cordis argued that the accused catheters could not meet "straight portion" limitations in the asserted claims under the doctrine of equivalents because the accused catheters were curved. 536 F.3d 1311, 1326-27 (Fed. Cir. 2008). The Federal Circuit upheld the finding of infringement under the doctrine of equivalents because, among other things, "one of Voda's experts testified that the difference in shape between the redesigned curve portion and a straight portion was so insubstantial that cardiologists would have difficulty distinguishing the two during use." *Id.* at 1327. In other words, the court determined that the "curve" was so slight as to be indistinguishable from "straight" to the user. This equivalence argument did not vitiate the "straight portion" limitation but instead found it met with a close-to-straight equivalent structure.

Second, in *Cordis Corp. v. Boston Scientific Corp.*, defendant Cordis argued that the accused stents could not infringe the "corners" limitation in the asserted claim under the doctrine of equivalents because the accused stents had "circular arcs." 561 F.3d 1319, 1323, 1329-31 (Fed. Cir. 2009). The circular arcs in the accused products are shown in the following figure in blue:



*see id.* at 1328; *see also Cordis Corp. v. Boston Scientific Corp.*, App. No. 2008-1003, -1072, Brief for Cordis Corp. at 26, 44, and 54 (Feb. 1, 2008).

The Federal Circuit upheld the finding of infringement partially because the "circular arcs" were determined to be "rounded corners" that satisfied the "corners" limitation. *Id.* at 1330. In both *Voda* and *Cordis Corp.*, the relevant claim limitations were not vitiated because they were not rendered meaningless; that is, there would still be devices that could not infringe the claim limitation.

In the instant case, "out" cannot be the equivalent of the claimed "in" because if the Court accepts Papst's argument, then *any* device internal or external would satisfy the claim limitation, and the claim term "in" would be rendered meaningless. The Federal Circuit has consistently rejected doctrine of equivalents arguments where any device would satisfy a limitation. *See, e.g., Freedman Seating Co. v. American Seating Co.*, 420 F.3d at 1362

("[Plaintiff's] argument would mean that any support member capable of allowing translational and rotational motion would be equivalent to a support member 'slidably mounted to said seatbase'…. This is the precise type of overextension of the doctrine of equivalents that the claim vitiation doctrine is intended to prevent."); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (holding that finding all shapes to be equivalent structure would entirely vitiate the limitation requiring a 'generally conical shape').

Further, Papst's Opposition tries to shift focus to other terms not at issue. Papst argues that the claim term at issue "concerns the signals sent by the PTP Capable Devices in response to an inquiry instruction, not whether any particular input/output devices are inside the chassis or outside" (Dkt. 474, Papst's Opposition at 18). Papst misses the point. Regardless of whether signals sent by internal or external devices are similar, the claim term at issue focuses on the type of *device* identified by the interface device to the host device (*i.e.*, an "input/output [or storage] device customary in a host device"). Each of the PTP Accused Devices identifies itself as a USB Still Image Capture Device (*i.e.*, a device compliant with the USB Still Image Capture Device specifications), which was not found within the chassis of computers at the time of invention (and is rather a peripheral device found outside the chassis of most available computers after the time of invention).

Papst's equivalency argument also should be rejected because it conflicts with the Court's construction of "host device." Papst argues that the asserted patents "have an expansive view of what comprises a 'host device'" such that a "host device" is interchangeable with a "computer system," which, in turn, includes peripherals attached to the computer by cable like a mouse, printer, and so on (Dkt. 474, Papst's Opposition at 16-18). The Court, however, construed "host device" in the claims of the patents as "a general purpose computer that connects

to and directs the operation of peripherals...” (Dkt. 336, Modified Memorandum Opinion Regarding Claims Construction at 27).  In other words, the Court did not adopt the “expansive view” of a “host device” now advanced by Papst wherein connected peripherals are part of the “host device.”  Instead, the Court explicitly rejected Papst’s argument that “customary in a host device” meant “customary in a *computer system*,” and thus distinguished a “host device” from a “computer system.”  *See id.* at 58-59 (emphasis in original).  Finally, while Papst now claims that a printer is “considered part of the ‘computer’” or “host device,” (Dkt. 474, Papst’s Opposition at 17), in its Final Infringement Contentions Papst acknowledged that “[a] printer would not be considered a ‘host device,’ as that term is used in the ’399 and ’449 patent.”  (Dkt. 416 at 25.)

Papst’s doctrine of equivalents argument must fail as a matter of law because it would vitiate and render meaningless the claim term “in.”  The Court should therefore grant the Camera Manufacturers’ Motion for Summary Judgment that the PTP Accused Devices do not infringe the ’399 patent.

### 3.    Papst’s Quibbles with Mr. Berg’s Declaration Fail to Identify Any Disputed Genuine Issues of Material Fact

Papst also attempts to attack the credibility of the Declaration of Paul Berg submitted in support of the Camera Manufacturers’ Motion.  But every alleged “problem” Papst cites with Mr. Berg’s declaration is simply the omission of an irrelevant detail.  Papst’s attempt to manufacture alleged inaccuracies and disagreements on ancillary matters between Mr. Berg and Dr. Locke does not preclude summary judgment.  *See Cross v. Small*, 2006 U.S. Dist. LEXIS 71769, *28 (D.D.C. 2006) (Collyer, J.) (“The mere existence of *some* alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there be no *genuine* issue of *material* fact.”) (*citing Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)) (emphasis in original).

For example, Papst takes issue with Mr. Berg's explanation of USB Still Image Capture Devices as typically being "devices that produce digital still images such as digital still picture cameras or scanners" (Dkt. 474, Papst's Opposition at 25; Dkt. 449, Ex. 3, Berg Decl. at ¶ 20). The Camera Manufacturers agree that many of the devices in suit can also capture video and sound (i.e., camcorders), as well as still images, and that some of those devices support PTP connectivity. But all of the camcorders in the case can also produce digital still images. This is not material, however, because the material point of this part of Mr. Berg's declaration is to establish that devices identifying themselves through the USB protocol as Still Image Capture Devices were not customarily found within the chassis of computers at the time of the invention. In the same way that digital cameras and scanners were not found within a computer chassis at that time, neither were camcorders. Whether some accused devices record movies and sound in addition to still images is neither in dispute nor an issue that would bear at all on a jury's determination of infringement. The remaining "inaccuracies" Papst points to in Mr. Berg's declaration are in the same vein. Fatally, as the party with the burden of proving infringement, Papst has not identified a single Still Image Capture Device found within a computer chassis at the time of the invention. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308 (Fed. Cir. 2006) ("even assuming that the [employee] declaration should be given no weight, it is clear that [defendant] did not have to support its motion with evidence of non-infringement"). The cases cited by Papst do not help Papst because, unlike here, they involved genuine factual disputes that directly affected the infringement question.

12

**B.  The MSC Accused Devices Also Do Not Identify Themselves as "Devices Normally Present Within the Chassis of Most Commercially Available Computers at the Time of the Invention"**

Summary judgment should also be granted regarding the MSC Accused Devices because they do not meet the "at the time of invention" limitation of the '399 and '449 Patents.  There is no dispute that the MSC Accused Devices identify themselves as USB Mass Storage Class Devices, which did not exist at the time of Tasler's invention (Dkt. 449, Ex. 3, Berg Decl. at ¶¶29-31; Dkt. 449, Ex. 12, *Universal Serial Bus Mass Storage Class Bulk-Only Transport* at CM012856).  Thus, the MSC Accused Devices could not have been customarily found "in" the computer chassis at that time (Dkt. 449, Ex. 3, Berg Decl. at ¶¶30-31).  As explained in the Camera Manufacturers' opening brief, USB MSC devices *did not exist* as of March 3, 1998, because all of the relevant USB MSC specifications were not available until after that date (*id.* at ¶¶ 26-28 and 30).  Therefore, as of March 3, 1998, there were no USB MSC devices inside the chassis of computers (*id.* at ¶30).

**1.     Papst Ignores the Distinction Between Hard Drives and USB Mass Storage Class Devices**

Papst's Opposition tries to blur the distinction between a general category of devices known as "mass storage devices" and a specific class of devices known as "USB Mass Storage Class devices."  The Camera Manufacturers agree that the general category of mass storage devices, such as hard drives, were available at the time of the invention, and that they were often found within the chassis of computers at that time (as they are now).  But, as with most of Papst's Opposition, this issue is irrelevant.  The MSC Accused Devices, when attached through a USB connection, identify themselves to the host device as the specific class of devices known as USB Mass Storage Class devices, which is defined in the USB protocol (CMFs 30 and 31).  Papst concedes this critical point (*see* Dkt. 475, Locke Decl. ¶ 568 ("The MSC Accused Products

13

are CM products that communicate with an attached host computer in accordance with the USB

Mass Storage Class ("MSC") specification"), *citing* Ex. L42 ("Universal Serial Bus Mass

Storage Class Overview")).  Indeed, Papst's Technology Tutorial included a screenshot showing

that the computer recognizes an attached device in this class as a *USB* Mass Storage Device.



(Dkt. 215 at p. 20).

Papst does not dispute that USB Mass Storage Class devices as defined by the USB protocol did

not exist at the time of the invention.[8]

Even Dr. Locke does not allege that USB Mass Storage Class devices were available at

the time of invention (Dkt. 475, Locke Decl. ¶¶ 581-584).  Rather, Dr. Locke and Papst argue

that the general category of mass storage devices, such as hard drives, were found inside

computers at the time of the invention.  A fundamental problem with Papst's argument is that

hard drives *at the time of the invention* were not USB Mass Storage Class Devices (which

are peripherals that are typically found outside the chassis of computers *after* the time of

invention).  Papst's arguments are irrelevant because it is undisputed that the specific class of

USB Mass Storage Class devices did not exist at the time of the invention.

---

[8] Although Papst conclusively states that "'MASS STORAGE Class' devices such as hard disk
drives were normally present within the chassis of most commercially available computers by
March 1997," the support cited by Papst merely refers to the general category of "mass storage"
devices, not the specific class of "USB Mass Storage Class" (Dkt. 474, Papst's Opposition at 9
(*citing* Locke Decl. ¶581 and PAMF ¶3)).

>
> **2.     Papst's Argument that the "Multi-Purpose Interface" Term Need Not be "Customary" is Irrelevant**

Papst erroneously argues that the Camera Manufacturers' Motion is premised on the assumption that the "multi-purpose interface" recited in the claims must be "customary" (Dkt. 474, Papst's Opposition at 5-6 and 22-23).  But the Camera Manufacturers' Motion is not based on any such assumption because the "multi-purpose interface" is not at issue in this motion.  The Camera Manufacturers' references to USB do not refer to a physical USB connector, but to the type of device identified by the Accused Devices to a computer (*i.e.*, USB Mass Storage Class and USB Still Image Capture Devices).  According to Papst, when the interface device is connected to a host device the interface device must identify itself as a "device customary *in* a host device."  The device the interface device identifies itself as must be customary, regardless of whether or not the interface and protocol the interface device uses to make the identification is customary.  The term "customary" in the claims clearly modifies "input/output [storage] device," and the Camera Manufacturers do not argue to the contrary.

>
> **3.     Papst's Reliance on SCSI Direct Access Devices is Barred Because They are Not In Papst's Infringement Contentions, and Are Otherwise Irrelevant**

Despite conceding the material fact that the MSC Accused Devices identify themselves as USB Mass Storage Class Devices to a computer, Papst now argues that the MSC Accused Devices also identify themselves as SCSI Direct Access Devices (Dkt. 474, Papst's Opposition at 11).  This newly-minted theory is not found in Papst's Final Infringement Contentions, and therefore, Papst is barred from advancing such an argument (Dkt. 430, Order on Camera Manufacturers' Motion for Sanctions at ¶3).

In its contentions, when identifying what allegedly meets the "first command interpreter" claim limitation requiring that the interface device "sends a signal . . . to the host device which

signals to the host device that it is an input/output device customary in a host device," Papst

states that the accused cameras identify themselves as Mass Storage Class devices in response to

the "Get Descriptor" USB command.  For example, regarding claim 1 of the '399 patent, Papst

accused the following functionality:

| | |
|---|---|
| Wherein the first command interpreter is configured in such a way that the command interpreter, when receiving an inquiry from the host device as to the type of a device attached to the multi-purpose interface of the host device, sends a signal, regardless of the type of the data transmit/receive device attached to the second connecting device, to the host device which signals to the host device that it is an input/output device customary in a host device. | Papst incorporates by reference Part F, "First Command Interpreter and Second Command Interpreter," and Part G, "Inquiry and Response," above including any objections stated therein.  The first command interpreter comprises, for example a USB command interpreter.  When a MSC Capable Device addressed herein is plugged into a USB port on a host device, the camera receives a "Get_Descriptor" USB command. ***The "Get_Descriptor USB command in an inquiry from the host device.***  The first command interpreter of the MSC Capable Device interprets the "Get_Descriptor" USB command and returns the requested descriptor(s).  MSC Capable Devices address herein are believed, for example, to send a signal to the host device, regardless of the dissimilar data transmit/receive device which may be attached to the interface device, that ***the MSC Capable Device is a mass storage class device***, such as a disk drive.  Disk drives are input/output devices that were customary in a host device at the time of the invention. |

(Dkt. 416, Papst's Final Contentions at 53) (emphasis added).[9]

Now that Papst realizes that the USB Mass Storage and USB Still Image Capture

Device classes were not created until after the time of invention, Papst is trying to rewrite its

Final Contentions.  Papst argues that in addition to the interface device identifying itself as a

USB Mass Storage Class device by a USB command, the interface device subsequently

---

[9] Similarly, for the PTP Accused Devices, Papst indicates that they indicate to the host device that they are "imaging devices" in response to the USB Get_Descriptor command (Dkt. 416 at 71-72).

identifies itself as a SCSI Direct Access Device by a SCSI command.  This argument is simply irrelevant and need not be considered because Papst is prohibited from rewriting its infringement contentions.

Moreover, Papst's reliance on the SCSI Direct Access Device again misses the point. The claimed interface device is required to identify itself to a computer as "an input/output device customary in a host device," so that the computer can communicate with the interface device by a "driver for the input/output device customary in a host device" (*see, e.g.*, '399 patent, claim 1).  There is no dispute that the MSC Accused Devices identify themselves as USB Mass Storage Class Devices, and there is no dispute that computers communicate with the MSC Accused Devices using drivers for USB Mass Storage Class Devices.[10]  In arguing that the MSC Accused Devices also identify themselves as SCSI Direct Access Devices, Papst does not contend that the computer no longer uses the USB device drivers to communicate with the identified-USB Mass Storage Class device, or that the MSC Accused Devices and computer communicate directly through SCSI drivers.[11]  Thus, Papst's argument regarding SCSI Direct Access Devices is unavailing and irrelevant.[12]

---

[10] Papst concedes that the host device uses USB drivers to communicate with a USB Mass Storage class device (e.g., usbstor.sys) (*see, e.g.*, Dkt. 416, Papst's Final Contentions at 54 ("[a] PC also uses usbstor.sys to communicate with hard disk drives attached to the USB port"); *see also id.* at 37, 38, 43, 60, 63, 69).

[11] Indeed, Papst concedes that even the purported SCSI commands it now points to are always communicated to the computer within USB commands, and are processed by the computer using the USB drivers.  (Dkt. 475, Locke Decl. at ¶ 606).  Thus, contrary to Papst's suggestions, the host never believes it is communicating with a SCSI hard disk; the host always knows it is communicating with a USB Mass Storage Class device, using USB specific drivers.

[12] Papst also tries to impugn Mr. Berg again by pointing out that his declaration does not make reference to the SCSI commands used within the data portion of USB protocol commands.  But as demonstrated herein, the details Mr. Berg did not include are irrelevant to the Camera Manufacturers' motion, and as such, were unnecessary to the declaration.

**C.       No Additional Information is Required under Fed. R. Civ. P. 56(d)**

Papst has alleged that it requires additional discovery that is essential to its opposition

(Dkt. 474, Papst's Opposition at 25-27).  The Camera Manufacturers respond to Papst's requests

in Papst's Opposition below, as well as in more detail in the Camera Manufacturers' Opposition

to Papst's 56(d) Motion which has been filed concurrently with this Reply.

In its Opposition, Papst alleges it requires discovery comprising or relating to:

1.   The source code for the Accused Devices;

2.   Efforts by the Camera Manufacturers relating to certification of their products with
     relation to any interface or any operating system . . .;

3.   The TWAIN protocol . . .; and

4.   The Camera Manufacturers' decision to use the USB PTP or USB MSC protocol for
     communication with a host computer . . . .

(Dkt. 474, Papst's Opposition at 27).

But Papst does not need any additional discovery from the Camera Manufacturers to

respond to this Motion.  Papst's infringement contentions are directed to MSC Capable Devices

and PTP Capable Devices and it is undisputed that such devices identify themselves as USB

Mass Storage Class and USB Still Image Capture Devices, respectively.  Papst concedes that

such devices communicate with computers using standard protocols (*see* Dkt. 475, Locke Decl. ¶

568) ("The MSC Accused Products are CM products that communicate with an attached host

computer in accordance with the USB [MSC] specification . . . , PTP Accused Products are CM

products that communicate with an attached host computer in accordance with the USB [PTP]

specification")).  The specifications for these protocols are publicly available and Papst confirms

that it has such specifications (*see, e.g.*, Dkt. 475, Locke Decl. Exs. L42-43).  Consequently,

Papst's demands for more discovery are just an attempt to use discovery as a sword to impose an

unnecessary discovery burden on the Camera Manufacturers.  Indeed, the source code and

technical information requested regarding the Camera Manufacturers' products is not relevant to the issue of whether the standardized device classes of USB Mass Storage Class and USB Still Image Capture Device Class were normally present within the chassis of most commercially available computers at the time of the invention.  Accordingly, Papst's requests for discovery should be denied.

In particular, the source code of the Accused Devices is irrelevant to the instant motion, because there is no dispute about how the devices identify themselves.  Moreover, Papst's expert could determine this information from publicly available information, such as through testing like that done by Mr. Berg for the Camera Manufacturers.

Second, certification of products is irrelevant.  Papst has only accused of infringement PTP devices and MSC devices.  Therefore, discovery unrelated to PTP and MSC should be prohibited.  As discussed in the Camera Manufacturers' Motion and Reply related to the Products Identified in Table 15, Papst had all of the necessary information to determine if an Accused Device was a PTP device or an MSC device (*see generally* Dkt. 447).

Third, the TWAIN protocol is irrelevant to this motion, and to infringement overall. Papst never mentioned the TWAIN protocol previously, and it does not appear in Papst's Final Infringement Contentions.

Fourth, decisions and designs by the Camera Manufacturers related to PTP and MSC are also irrelevant—Papst only needs to address whether PTP and MSC devices, as defined by their standards, can infringe the Asserted Patents as a matter of law.

## III.    CONCLUSION

None of the Accused Devices identify themselves as data input/output [storage] devices that were normally present *within* the chassis of most commercially available computers *at the time of the invention*.  Rather, all the Accused Devices identify themselves as types of devices

that were not developed until after the time of Papst's purported invention.  Moreover, the

Accused Devices were not found inside the chassis of most commercially available computers at

the time of invention.  Thus, the Camera Manufacturers respectfully request that the Court enter

an Order that (1) the PTP Accused Devices do not infringe the claims of the '399 patent, and (2)

the MSC Accused Devices do not infringe the claims of the '399 and '449 patents, in both

instances for failure to meet the "device customary in a host device" limitation.


DATED: December 15, 2011                Respectfully submitted,

                                        By: /s/ Rachel M. Capoccia_____

                                        *For The Panasonic Corporation (formerly*
                                        *Matsushita Electric Industrial Co., Ltd.) Parties*
                                        *and The Victor Company of Japan Parties*
                                        Rachel M. Capoccia
                                        Alston & Bird LLP
                                        333 South Hope Street, 16th Floor
                                        Los Angeles, California 90071
                                        Email:  rachel.capoccia@alston.com
                                        Phone:  (213) 576-1037
                                        Fax:  (213) 576-1100

                                        *For The Samsung Parties*
                                        Patrick J. Kelleher
                                        Drinker Biddle & Reath LLP
                                        191 North Wacker Drive
                                        Suite 3700
                                        Chicago, IL 60606-1698
                                        E-mail:  patrick.kelleher@dbr.com
                                        Phone: (312) 569-1375
                                        Fax: (312) 569-3375

                                        *For the Olympus Parties*
                                        Richard de Bodo
                                        Christopher P. Broderick
                                        Andrew V. Devkar
                                        DLA Piper LLP (US)
                                        2000 Avenue of the Stars
                                        Suite 400, North Tower
                                        Los Angeles, CA 90067
                                        E-mail: richard.debodo@dlapiper.com
                                        E-mail: christopher.broderick@dlapiper.com

E-mail: andrew.devkar@dlapiper.com
Phone: (310) 595-3100
Fax: (310) 595-3300

***For the Nikon Parties***
David L. Witcoff
Marc S. Blackman
Jones Day
77 W. Wacker Drive
Chicago, Illinois 60601
E-mail:  dlwitcoff@jonesday.com
E-mail:  msblackman@jonesday.com
Phone:  (312) 782-3939
Fax:  (312) 782-8585

***For the Fujifilm Parties***
Steven J. Routh
Sten A. Jensen
T. Vann Pearce, Jr.
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th St, NW
Washington, DC 20005
E-mail:  srouth@orrick.com
E-mail:  sjensen@orrick.com
E-mail:  vpearce@orrick.com
Phone: (202) 339-8400
Fax: (202) 339-8500

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 15, 2011, a true and correct copy of the foregoing was filed with the Court and served electronically by the Court's CM/ECF System to all registered users.


Dated:  December 15, 2011            By: /s/ Rachel M. Capoccia

Attorney for the Panasonic Corporation (formerly Matsushita Electric Industrial Co., Ltd.) Parties and the Victor Company of Japan Parties