# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE PAPST LICENSING GMBH & CO. KG LITIGATION** | **Misc. Action No.  07-493 (RMC)**[1] <br><br> **MDL Docket No. 1880** |
| **This Document Relates To:** <br><br> **Papst Licensing GmbH & Co. KG v. Samsung Techwin Co.,** Civ. No. 07-2088 (D.D.C.) | |

## OPINION REGARDING SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT AS TO WRONGFULLY ACCUSED PRODUCTS

Papst Licensing GmbH & Co. KG brought suit against Samsung Techwin Co.,

Ltd., and Samsung Opto-Electronics America, Inc., for alleged infringement of Patent Nos.

6,470,399 and 6,895,449.  Defendants seek summary judgment of noninfringement on forty-

seven accused products that Defendants assert they never made, used, sold, offered, or imported

in/into the United States.[2]  The eight-page motion has occasioned a blizzard of paper but none

that effectively challenges Defendants' sworn affidavits.  In an effort to avoid summary

judgment, Papst claims indirect infringement by inducement but that claim was not sufficiently

---

[1] This Multi District Litigation currently consists of First and Second Wave Cases currently pending in this District.  The "First Wave Cases" are:  *Fujifilm Corp. v. Papst*, 07-cv-1118; *Matsushita Elec. Indus. Co., Ltd. v. Papst*, 07-cv-1222; *Papst v. Olympus Corp.*, 07-cv-2086; *Papst v. Samsung Techwin Co.*, 07-cv-2088; *Hewlett Packard Co. v. Papst*, 08-cv-865; and *Papst v. Nikon Corp.*, 08-cv-985.  The "Second Wave Cases" are:  *Papst v. Canon*, 08-cv-1406; *Papst v. Eastman Kodak*, 08-cv-1407; *Papst v. Sanyo*, 09-cv-530.

[2] This motion is just one piece of a much larger Multi District Litigation by which Papst claims that numerous manufacturers of digital cameras in the United States violate its Patents.

preserved in its final infringement contentions and will not be heard now.  Papst also argues that

it needs discovery, but nothing on which it seeks discovery would refute the highly confidential

sales records that Defendants already have shared with Papst.  Summary judgment of

noninfringement as to the forty-seven products will be granted to Defendants.

## I.  FACTS

This suit has a long procedural history.  In June 2007, Papst brought suit against

Korea-based Samsung Techwin Company (Techwin) and its U.S. subsidiary, Samsung Opto-

Electronics America, Inc. (Opto-Electronics) (collectively, Defendants).[3]  Papst complained that

Defendants infringed U.S. Patent Nos. 6,470,399 and 6,895,449 (the Patents) by "making, using,

offering to sell or selling within the United States and/or importing into the United States . . .

digital cameras" covered by the Patents.  *See Papst Licensing GmbH & Co. KG v. Samsung*

*Techwin Co. (Papst v. Techwin)*, Civ. No. 07-2088 (D.D.C.), Compl. [Dkt. 3-1] ¶¶ 9, 17.  Papst

also alleged that Defendants "actively induced others and/or contributed to the infringement" of

the Patents.  *Id*. ¶¶ 10, 18.

The Multi District Litigation Panel transferred the case into this Multi District

Litigation (MDL).  *See id.*, MDL Transfer Order [Dkt. 1].  In September 2008, the Court held a

three-day *Markman* hearing.[4]  Thereafter, the Court rendered its claims construction opinion and

order.  *See* Modified Claims Construction Op. [Dkt. 336]; Modified Order [Dkt. 337] (replacing

---

[3] Papst originally filed suit in federal district court in California.  *See Papst Licensing GmbH & Co. KG v. Samsung Techwin Co.*, No. 07-4249 (C.D. Calif.).  The Central District of California court then transferred the case to the District of New Jersey.  *See Papst Licensing GmbH & Co. KG v. Samsung Techwin Co.*, 07-4940 (D.N.J.).

[4] Pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), the Court is required to construe the contested claims of the patents before a jury can determine whether the accused products infringe.  Thus a claims construction hearing is often called a *Markman* hearing.

original claims construction Op. [Dkt. 312] and Order [Dkt. 313]).

In February 2009, after the claims construction hearing but before the claims construction ruling, Techwin transferred its digital camera business to Samsung Digital Imaging Company, which in turn merged its digital camera business into Korea-based Samsung Electronics Company Ltd. on April 1, 2010.[5]  Before Techwin's transfer to Samsung Digital Imaging Company, co-Defendant Opto-Electronics purchased digital cameras made by Techwin and Opto-Electronics sold these cameras in the United States.  *See* Mot. for Summ. J. Regarding Wrongfully Accused Products [Dkt. 448], Ex. 2 (First Lee Decl.) ¶ 2; Resp. to Surreply [Dkt. 495], Ex. 8 (Second Lee Decl.) ¶ 2.

A year and a half after Techwin spun-off its digital camera business, in October 2010, Papst moved for leave to file a first amended complaint, seeking to add as defendants in *Papst v. Techwin*, the following:  Samsung Electronics Company Ltd. and its U.S. subsidiaries, Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC. (all three collectively, Samsung Electronics Entities).  The Court denied the motion to amend because it was untimely and because it would complicate and delay the litigation against Defendants.[6]  *See* Op. [Dkt. 424]; Order [Dkt. 425].

Thereafter, the Court ordered Papst to file final asserted infringement claims and contentions (Final Contentions) in compliance with detailed requirements.  *See* Mot. for Sanctions [Dkt. 388], Ex. A (Tr. of Aug. 31, 2010 Hearing); Sixth Prac. & Pro. Order (Sixth PPO) [Dkt. 372].  In January 2011, Papst filed Final Contentions, but because Papst failed to

---

[5] After the merger, Samsung Digital Imaging Company ceased to exist as a separate entity.

[6] While Papst has not filed a separate suit against the Samsung Electronics Entities in this district, the record does not indicate whether Papst has filed suit against them in another forum.

follow the direct orders of the Court, the Court ordered sanctions. *See* Final Contentions [Dkt. 416]; Sanctions Op. [Dkt. 429]; Sanctions Order [Dkt. 430]. In the Sanctions Order, the Court barred Papst "from advancing any arguments for infringement . . . that are not set forth specifically and explicitly" in the Final Contentions. *See* Sanctions Order [Dkt. 430] at 2. In its Final Contentions, Papst also attempted to advance claims against the Samsung Electronics Entities that are *not* part of this MDL. In the Sanctions Order, the Court struck all contentions that assert claims against the Samsung Electronics Entities. *Id*.

## II.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. The nonmoving party must point out specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable

jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly

probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations

omitted).

Papst seeks additional discovery under Federal Rule of Civil Procedure 56(d),

which provides:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition,
> the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take
> discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  "The nonmoving party bears the burden of identifying the facts to be

discovered that would create a triable issue and the reasons why the party cannot produce those

facts in opposition to the motion.  The nonmoving party must show a reasonable basis to suggest

that discovery would reveal triable issues of fact."  *Scott-Blanton v. Universal City Studios*

*Prods. LLP*, 246 F.R.D. 344, 347 (D.D.C. 2007), *aff'd* 308 Fed. App'x 452 (D.C. Cir. 2009).  A

generalized, speculative request for more discovery is insufficient; a request for more discovery

must show that "further *specific* discovery will defeat a summary judgment motion."  *Estate of*

*Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 35 (D.D.C. 2010), *aff'd*, No. 10-7085, 2011

WL 3528749 (D.C. Cir. Aug. 12, 2011).

### III.  ANALYSIS

In its Final Contentions, Papst accused Defendants and the Samsung Electronics

Entities of infringement, pointing to over 350 "Samsung" products.  Since the Samsung

Electronics Entities are not parties in this MDL, especially after this Court barred their untimely

addition, Defendants asked Papst to withdraw its contentions regarding certain alleged

"Samsung" products that the Samsung Electronics Entities may have made, used, sold, offered

for sale, or imported ("made/sold") in/into the United States, but that were not made/sold in the

United States by *Defendants*.  Papst partially complied but continues to accuse forty-seven

products that Defendants assert are wrongfully accused.[7]

      Forty of the products at issue[8] were made/sold in the United States by a Samsung

Entity but not by these Defendants (Non-Techwin Products):

| AQ 100 | HZ50W | SL30 | SL620 | TL210 |
|--------|-------|------|-------|-------|
| CL 65 | i80 | SL35 | SL630 | TL229 |
| CL80 | NX10 | SL40 | SL720 | TL225 |
| HZ10W | PL200 | SL420 | SL820 | TL240 |
| HZ15W | PL90 | SL50 | TL100 | TL320 |
| HZ25W | SL102 | SL502 | TL105 | TL350 |
| HZ30W | SL105 | SLK600 | TL110 | TL500 |
| HZ35W | SL202 | SL605 | TL205 | TL90 |

Seven of the products at issue[9] were not made/sold in the United States (Non-U.S. Products):

---

[7] Defendants advise that their products covered by the summary judgment motions filed jointly with the First Wave Camera Manufacturers (*e.g*., Mots. for Summ. J. [Dkts. 447, 449, 450, 451, 452,) are limited to Techwin/Opto-Electronics products and do not include the forty-seven products at issue here.  Mot. for Summ. J. Regarding Wrongfully Accused Products at 2 n.2.

[8] Papst accused these forty products of infringement in the Final Contentions.  *See* Final Contentions (Part III) at 82-84, 89-91, 111-17, 133-37, 158-63, 170-72, 187-94, 205-06, 214-17.

[9] Papst also accused these seven products of infringement in the Final Contentions.  See Final Contentions (Part III) at 82-84, 89-91, 111-117, 133-37. 158-163, 170-72, 187-94, 205-06, 214-17.

| Digimax A4 |
|---|
| DigimaxA40 |
| DigimaxA403 |
| DigimaxD85 |
| L83T |
| S1030 |
| S830 |

The Non-Techwin Products together with Non-U.S. Products are collectively referred to as the

"Forty-Seven Accused Products."

Sang-Yoon Lee, a Techwin Senior Manager during the relevant time period,

described the relationship between Techwin and Opto-Electronics.  Mr. Lee made four critical

points:

> (1) Techwin is a South Korean publicly traded company which
> spun off its digital camera business into a new, separate publicly
> traded company, Samsung Digital Imaging Company, on February
> 1, 2009.  First Lee Decl.¶ 1.
>
> (2) Opto-Electronics is a wholly-owned subsidiary of Techwin
> located in the United States.  Prior to the spin-off, Opto-Electronics
> sold in the United States digital cameras that were made by
> Techwin.  *Id*. ¶ 2; Second Lee Decl. ¶ 2.
>
> (3) In his First Declaration, Mr. Lee referred to Techwin and Opto-
> Electronics collectively as "STW."  First Lee Decl. *¶ 2.*
>
> (4) The forty Non-Techwin Products and the seven Non-U.S.
> Products were never made/sold by "STW," i.e., were not ever
> made/sold by either Techwin or Opto-Electronics.  *Id*. ¶¶ 6–17;
> Second Lee Decl. ¶¶ 6–7.

Papst opposes summary judgment.  First, Papst argues that it has a valid claim of

infringement by inducement against Defendants with regard to the Forty-Seven Accused Products. *See Samsung Techwin*, Civ. No. 07-2088, Compl. ¶¶ 10-18. Second, Papst contends there is sufficient circumstantial evidence that the Forty-Seven Accused Products were made/sold here by Defendants, that such evidence is sufficient to create a genuine issue of material fact, and that Papst is entitled to more discovery to prove it.[10]

## A. Infringement by Inducement

In order to induce infringement, there must be an act of direct infringement and proof that a defendant "knowingly induced infringement with the intent to encourage the infringement." *DSU Med. Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). "A person induces infringement under [35 U.S.C.] § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys. Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). Although Papst contends that Defendants induced the Samsung Electronics Entities to infringe the Patents, Papst has not preserved this claim in light of the Sanctions Order. The Sanctions Order arose from a Court mandate that Papst revise its original infringement contentions, as Papst had filed them before the *Markman* decision. The Court and the parties discussed the need for final contentions from Papst at a discovery status conference in August 2010. The Court chastised Papst for failing to propose focused discovery and ordered Papst to define its asserted claims and infringement contentions in light of the claims construction:

---

[10] In response to motions for summary judgment filed by Defendants and by the other Camera Manufacturers, Papst filed motions for Rule 56(d) discovery. *See* Mot. for Discovery [Dkt. 479] (addressing Techwin and Opto-Electronics specifically at 33-36); Opp. [Dkt. 472] (Papst seeks discovery in opposition to the Motion for Summary Judgment Regarding Wrongfully Accused Products).

> I said focused discovery and what I got was a shotgun shell. I
> mean, everything. I do not consider that focused and I don't think
> that it fulfills my obligation to get this done quickly and with the
> least expense possible under the circumstances. So what I think
> we need to start with is the concept that Papst filed infringement
> contentions . . . and hasn't changed them, hasn't indicated it wants
> to change them, hasn't indicated it plans or needs to change them
> but now says [it] need[s] a ton of discovery. I'm not sure that all of
> your contentions can stand in light of the claims construction
> decision which I appreciate you don't like, it's okay. But nobody
> knows what they're fighting about now. Nobody can tell and you
> don't want to tell them, and we're not going to do it that way. I
> mean, you're the plaintiff. You have allegations, you need to say
> what they are. So the first thing is I'm going to direct Papst to
> refile its claims contentions, its infringement contentions. . . . File
> that, then we'll know what we're arguing about. Only then can we
> figure out what discovery is really needed.

Tr. of Aug. 31, 2010 Hearing at 18-19. The Court further directed, "you have got to bring your

infringement contentions up to date. People have to know what they're litigating about. And

only when you do can you then say okay, this is the discovery we need for these reasons." *Id*. at

32. The Court told Papst that its asserted claims and infringement contentions needed to be clear

cut:

> First you have to decide what your infringement contentions are.
> Only when you know what, what camera you're asserting
> [infringes] what claim and for what reason[,] can you possibly
> figure out what discovery you might need that you don't already
> have.

*Id*. at 33-34.

   As a result of the status conference, the Court issued its Sixth Practice and

Procedure Order (PPO) requiring Papst to file final contentions with specificity as to each alleged

infringer, each alleged infringing product, and each Patent Claim allegedly infringed. The Sixth

PPO provided:

   2. No later than October 13, 2010, Papst shall file its Final

Disclosure of Asserted Claims and Infringement Contentions. Separately for each opposing party, this Final Disclosure shall contain the following information:

a.  Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;

b.  Separately for each asserted claim, each accused apparatus, product, device, process, method, act or other instrumentality ("Accused Instrumentality") of each opposing party of which Papst is aware. This identification shall be as specific as possible.  Each product, device, and apparatus shall be identified by name or model number, if known.  Each method or process shall be identified by name, if known or by any product, device or apparatus which, when used, allegedly results in the practice of the claimed method or process;

c.  A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

*d.  For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement.  Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.*

e.  Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality; and

f.  For any patent that claims priority to an earlier application, the priority date to which  each asserted claim allegedly is entitled.

Sixth PPO ¶ 2 (adopting provisions of Rule 3-1 (N.D. Cal. Patent Local Rules)) (emphasis added

regarding infringement by inducement).

The Sixth PPO adopted the requirements set forth in Northern District of California Patent Rule 3-1 because that Rule was designed to "make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Micrel, Inc.*, Civ. No. 09-1144, 2010 WL 520513, at *2 (N.D. Cal. Feb. 6, 2010).  Rule 3-1 was intended to prevent cases from "stagger[ing] for months without clear direction" by "focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment trial, and beyond." *Connectel, LLC v. Cisco Sys.*, *Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005).  Via the language of Rule 3-1, the Court required Papst to "crystallize its theory of the case and patent claims."[11] *See InterTrust Tech. Corp. v. Microsoft Corp.*, Civ. No. 01-1640, 2003 WL 23120174, at *3 (N.D. Cal. Dec. 1, 2003) (characterizing Rule 3-1).  In sum, the Court ordered Papst to file contentions that comported with the Court's claims constructions and that were sufficiently precise and detailed for the purpose of streamlining this already protracted litigation.

Papst filed Final Contentions, but they were vague and uninformative.  Through its experienced patent lawyers, Papst blatantly disregarded the Sixth PPO.  The Court took Papst to task for obfuscating its infringement theories, finding that Papst had done so intentionally as part of its strategy to extend this litigation excessively, since Papst's business *is* litigation:

> Instead of crystallizing its asserted claims and infringement contentions in this case, Papst's Final Contentions intentionally obfuscate Papst's infringement theories.  As this Court has previously noted, Papst is in the business of litigation.

---

[11] A plaintiff in the Northern District of California is expected to articulate its infringement contentions no later than 14 days after the initial case management conference, a much earlier stage than was required in this MDL.  N.D. Cal. Patent Rule 3-1.  Papst was required to crystallize its theory only after claims construction.

> Papst is a German company that produces no
> products; it acquires patents on products or methods
> allegedly invented by others and then searches the
> world for patents it might challenge for
> infringement.  At one of the first status conferences
> of the MDL, when the Court queried whether this
> was old-fashioned "claim-jumping," counsel for
> Papst readily agreed that it had been called worse.
> Of course, this is a perfectly lawful and respectable
> business.  But it underscores that the business of
> Papst is *litigation*, not invention or production.
> Litigation is the business model whereby Papst,
> when successful, achieves royalty payments from
> others.  As is clear from this record, the threat of
> litigation alone often achieves royalty payments.

> Mem. Op. [Dkt. 86].  While the threat of litigation alone often
> achieves royalty payments, the threat of never-ending discovery
> can induce even larger royalty payments.  Frankly, this appears to
> be Papst's strategy in this case.  The Final Contentions
> are purposefully vague; they were drafted to further Papst's intention
> to engage in protracted and expensive litigation.

Sanctions Op. at 7-8.

In addition to concealing its infringement theories, Papst purposely disregarded

the Modified Claims Construction Opinion and Order.  The Sanctions Opinion explained:

> [T]he Final Contentions additionally lack the requisite specificity
> because they repeatedly reiterate Papst's version of previously
> rejected claims constructions and then advance theories based on
> such rejected constructions.  *See, e.g.*, Final Contentions at 33
> (asserting that "second connecting device" means a device for
> interfacing and not "a physical plug or socket for permitting a user
> readily to attach and detach . . ." as construed by the Court).  In this
> same vein, Papst also attempts to incorporate and reassert its
> original contentions filed May 28, 2008, before claims
> construction.  *Id*. at 2.  Such an approach bespeaks a total lack of
> respect for Court orders and the timely resolution of this case, but
> it is consistent with Papst's approach from the beginning.[12]

---

[12] *See, e.g.*, Mem. Op. [Dkt. 82] (sanctioning Papst for failure to comply with a direct discovery order), *modified in part by* Mem. Op. [Dkt. 123].  Notably, Papst filed a petition for writ of

*Id*. at 10.  Papst's failure to properly detail its infringement claims was not an innocent error; it was part of a calculated strategy.

For this astounding and brash failure to follow court orders, the Court imposed a reasonable sanction against Papst—requiring Papst "to live with its Final Contentions as they stand without further modification."  Sanctions Op. at 7.  Thus, the Court barred Papst from modifying the Final Contentions and barred Papst from advancing any arguments for infringement (or against claims of noninfringement) that either (1) are not based solely on this Court's constructions of the Patents or (2) are not already set forth specifically and explicitly in the Final Contentions.  *See* Sanctions Order at 2.

In this context, the Court considers Papst's induced-infringement contentions against Defendants to ascertain whether they are specific and explicit enough to survive the Court's sanction.  They are not.  Papst's Final Contentions assert induced-infringement by merely making this conclusory statement:

> Papst further asserts that each of these Defendants also is liable under 35 U.S.C. § 271(b) for actively inducing users of the accused products to directly infringe the asserted claims in the U.S., and thus is liable for infringement by inducement. Papst also asserts that each of these Defendants also [is] liable under 35 U.S.C. § 271(b) for actively inducing their own affiliates and/or related entities and/or third-parties to sell infringing products in the U.S., and thus [is] liable for inducement by infringement.

Final Contentions at 3.  These allegations fail to meet the level of specificity demanded by the Sixth PPO, especially paragraph 2(d), which required Papst to set forth "[f]or each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a

mandamus, *see* Dkt. 167, and the Federal Circuit denied the petition.  *In re Papst Licensing GmbH & Co. KG*, Misc. No. 877, 314 Fed. App'x 295, 2008 WL 5691048 (Fed. Cir. Aug. 5, 2008).

description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement.  Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described."  Papst's vague and conclusory contentions regarding infringement by inducement in no way satisfy the level of specificity that the Court required, and thus Papst has waived the claim against Defendants for infringement by inducement.

### B.  Alleged Genuine Issue of Fact and Motion for Rule 56(d) Discovery

Papst  argues that it should be allowed "some discovery . . . to track down the actual facts because . . . the . . . story keeps changing with respect to these 47 models of Samsung products." *See* Mot. for Discovery at 34.  Papst also attacks the declaration of Mr. Lee because, in part, Mr. Lee stated the "legal conclusion" that Defendants never made/sold the Forty-Seven Accused Products in the United States, and Papst wants to review every Techwin and every Opto-Electronics document that Mr. Lee reviewed before he submitted his declarations.  *See* Reply [Dkt. 491] at 1–2.  In order to sort out the "changing story" and determine if Mr. Lee's First and Second Declarations are credible, Papst requests (1) a Rule 30(b)(6) deposition of a corporate representative of both Defendants concerning the manufacture and sale of the Forty-Seven Accused Products; (2) the identity of the Samsung department and company that authored User Manuals for these products; (3) the identity of the Samsung department and company that authored and maintains the Samsung websites which offer drivers and other support over the Internet for these products; (4) the knowledge of Defendants as to where and to whom these products would be sold; and (5) the facts underlying Defendants' alleged indirect induced infringement.  *See* Mot. for Discovery [Dkt. 479] at 34–36.

The parties have met numerous times and counsel for Defendants tried to provide

convincing information that neither of Defendants has made/sold any of the Forty-Seven

Accused Products in the United States.  Papst remains unconvinced.  Papst does not contest that

Defendants have shared confidential proprietary information with Papst on importation and sales

in the United States and that such information does not include any sales of the Forty-Seven

Accused Products.  Instead, Papst complains that Samsung has not produced any documents such

as sales receipts, invoices, correspondence, or emails that demonstrate how the Forty-Seven

Accused Products reached the United States or that demonstrate Defendants knew the products

would reach the United States.  Mot. for Discovery [Dkt. 479] at 36.

Papst's demand that Defendants produce U.S. import and sales information from

corporate entities, which are not parties to this suit, cannot forestall summary judgment.  Sales by

any other "Samsung" affiliate would not prove infringement of the Patents by *these* Defendants,

and Papst has waived its claim to infringement by inducement.  Thus, the question devolves to

whether Papst has enough information to support a good faith belief that the immediate

Defendants—Techwin and Opto-Electronics—might have infringed the Patents through the

making/selling of any of the Forty-Seven Accused Products.

First, Papst urges the Court to give Mr. Lee's declarations no weight regarding

Defendants' liability because they have not provided or identified the business records he

reviewed prior to making his declarations.  Papst concludes that Defendants' summary judgment

motion "should be denied because it is not supported by any competent evidence."  Papst

Surreply [Dkt. 493] at 6.  The argument is unavailing.  Mr. Lee's declarations constitute

competent evidence of the matters of which he declares.  Merely claiming that the First and

Second Lee Declarations are inaccurate or incorrect is not sufficient.  "A party may not defeat a

properly supported motion for summary judgment merely by raising generalized questions as to

the credibility of the movant's affiants." *Robinson v. Cheney*, 876 F.2d 152, 162 (D.C. Cir. 1989).[13]

Papst also presents a vehement argument that Opto-Electronics is not entitled to summary judgment because Mr. Lee's declaration addresses only Techwin and does not even assert that Opto-Electronics never made/sold the Forty-Seven Accused Products in the United States. *See* Papst Surreply [Dkt. 493] at 1. The argument represents a complete misrerepresentation of Mr. Lee's first declaration. Mr. Lee made it clear that he referred to both Techwin and Opto-Electronics collectively as "STW." *See* First Lee Decl. ¶ 2. He also explained that Opto-Electronics was a Techwin subsidiary which sold digital cameras made by Techwin in the United States. *Id.* Thus, his references to "Techwin" included Opto-Electronics and his review of Techwin records revealed which model cameras Techwin sold to Opto-Electronics for further sale in the United States. The argument that Mr. Lee's declarations failed to address Opto-Electronics is totally meritless.

Papst further argues extensively that Defendants have been inconsistent in their position regarding the accused products and that this somehow shows that questions of material fact remain open for discovery. Defendants respond that they supplemented their discovery over the years that this case has been pending and that they have never changed their position on the Forty-Seven Accused Products. To show the alleged inconsistency, Papst notes:

---

[13] Papst moved to strike the Second Lee Declaration, asserting erroneously that it was untimely, lacked foundation, and contained hearsay. Mot. to Strike [Dkt. 497]. The Second Lee Declaration is deemed timely as it bolstered Defendants' original position and addressed new matters Papst raised. Further, the Second Declaration was based on Mr. Lee's personal knowledge, including his familiarity with Defendants' products and sales history, and his review of business records including sales records. Second Lee Decl. ¶¶ 3, 8. The motion to strike will be denied.

(1) Defendants' second set of Answers to Interrogatories added 23 camera models that were not mentioned in their first set. Surreply [Dkt. 493] at 3.

(2) Defendants' third set of Answers to Interrogatories added 7 more cameras not in their first or second set of answers. *Id*. at 4.

(3) Defendants told Papst that model i80 was not sold in the U.S. but then later asserted that it is not a Techwin model. *Id.*

(4) Defendants told Papst that models i50 and i70 were not sold in the United States but now list them as still at issue. *Id.* at 4.

Of these camera models, only the i80 is among the Forty-Seven Accused Products immediately at issue.

The Court finds no relevant inconsistency. Papst sees "inconsistency" in Defendants' supplemental interrogatory answers which added camera models because, allegedly, those models might have been mentioned earlier. Papst's definition of inconsistency is highly questionable. A matter is inconsistent with another when it is incompatible or contradictory. There is no inconsistency here, but merely the addition of camera models without any subtraction. Defendants can be deemed to have been "inconsistent" only with regard to one camera model, the i80. While Defendants originally told Papst the i80 was not sold in the United States, they now state that it may have been sold in the United States by others but it is not a Techwin product and was not made/sold here by these Defendants. *See* Second Lee Decl. ¶ 5-6. The difference is not material to the critical issue: the i80 should not be an accused product because neither of these Defendants ever made/sold the i80 model in the United States.

Furthermore, Papst contends that it should be permitted discovery because circumstantial evidence shows that the Forty-Seven Accused Products were in fact made/sold in the United States by these Defendants. The circumstantial evidence on which Papst relies

includes the following facts:  (1) user manuals for the forty Non-Techwin Products list Opto-Electronic's name and address; (2) user manuals for the seven Non-U.S. Products include a declaration of compliance with the U.S. Federal Communications Commission requirements; and (3) the www.samsung.com website offers individuals in the United States the ability to download drivers and user manuals for the Forty-Seven Accused Products.  Mr. Lee explained these anomalies, noting that the department responsible for creating user manuals sometimes does not know where the products will be sold.  First Lee Decl. ¶ 19.  The user manuals for the Non-U.S. Products list multiple Samsung affiliates from around the world, regardless of where the products are actually sold.  *Id*.  With regard to FCC compliance declaration, this only indicates that Techwin designed cameras for compliance with the standards of multiple countries, including the United States.  It is not proof that any of the seven cameras was sold here.  Further, the international website offering drivers and manuals to individuals located in the United States does not indicate that the products were made/sold here by these Defendants, only that it is possible that some residents in the United States may have such cameras.

To defeat Defendants' motion for summary judgment and demonstrate a genuine issue of fact, Papst must show more than a scintilla of evidence in support of its position.  *See Anderson*, 477 U.S. at 252.  Papst has failed in this regard.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (citations omitted).  On its Rule 56(d) motion, Papst bears the burden of (1) identifying the specific facts to be discovered that would create a triable issue and (2) showing a reasonable basis to suggest that discovery would reveal triable issues of fact as to these Defendants.  *Scott-Blanton*, 246 F.R.D. at 347; *Estate of Parsons*, 715 F. Supp. 2d at 35.  The circumstantial evidence on which Papst relies is not probative of whether these Defendants, contrary to their confidential business records and

-18-

sworn statements, made/sold the Forty-Seven Accused Products in the United States.  Papst has

not raised a genuine issue of material fact nor has it shown that more discovery would help it do

so.

## IV.  CONCLUSION

As explained above, the motion for summary judgment regarding wrongfully

accused products filed by Samsung Techwin Co. and Samsung Opto-Electronics America, Inc.

[Dkt. 448] will be granted.  Papst's motion for Rule 56(d) discovery [Dkt. 479] will be denied in

part, insofar as it relates to the motion for summary judgment filed by Defendants.[14]  The Forty-

Seven Accused Products will be stricken from Papst's Final Contentions [Dkt. 416].  Papst's

motion to strike the Second Lee Declaration [Dkt. 497] will be denied.  A memorializing Order

accompanies this Opinion.


Date: November 20, 2012              _____/s/_____
                                     ROSEMARY M. COLLYER
                                     United States District Judge

---

[14] Papst's motion for discovery otherwise remains pending.