## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**IN RE PAPST LICENSING GMBH & CO. KG**  )
**LITIGATION**  )
)     **Misc. Action No. 07-493 (RMC)**
**This document relates to**  )
)     **MDL No. 1880**
**ALL CASES**  )
)
)
_____)

### OPINION RE: CAMERA MANUFACTURERS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT REGARDING DEVICES IDENTIFIED IN TABLE 15

Papst Licensing GmbH & Co. KG, a German company, sues multiple

manufacturers of digital cameras for alleged infringement of two patents owned by Papst: U.S.

Patent Number 6,470,399 (399 Patent) and U.S. Patent Number 6,895,449 (449 Patent).  The

Camera Manufacturers[1] have moved for summary judgment of noninfringement with respect to

the devices listed in Table 15 of Papst Final Infringement Contentions.  Because Papst has not

alleged infringement with regard to these devices with the required specificity, the motion will

be granted.

_____

[1] This Multi District Litigation (MDL) currently consists of First and Second Wave Cases.  The "First Wave Cases" are: *Fujifilm Corp. v. Papst*, 07-cv-1118; *Matsushita Elec. Indus. Co., Ltd. v. Papst*, 07-cv-1222; *Papst v. Olympus Corp.*, 07-cv-2086; *Papst v. Samsung Techwin Co.*, 07-cv-2088; *Hewlett-Packard Co. v. Papst*, 08-cv-865; and *Papst v. Nikon Corp.*, 08-cv-985.  The "Second Wave Cases" currently are: *Papst v. Canon*, 08-cv-1406; *Papst v. Eastman Kodak*, 08-cv-1407; *Papst v. Sanyo*, 09-cv-530.  The Camera Manufacturers seeking summary judgment here are parties in the First Wave Cases; they are: Fujifilm Corporation; Fujifilm U.S.A., Inc.; Fujifilm Japan; Matsushita Electric Industrial Co., Ltd.; Victor Company of Japan, Ltd.; Olympus Corporation; Olympus Imaging America Inc.; Samsung Techwin Co., Ltd.; Samsung Opto-Electronics America, Inc.; Panasonic Corporation of North America; JVC Company of America; Hewlett-Packard Company (HP); Nikon Corporation; and Nikon, Inc.  Papst's infringement contentions against HP have been stricken and discovery has been stayed.

# I.  FACTS[2]

The invention at issue is a "Flexible Interface for Communication Between a Host and an Analog I/O Device Connected to the Interface Regardless of the Type of the I/O Device." 399 Patent, Title; 449 Patent, Title.  Michael Tasler invented and patented the "interface device" and later sold the Patents to Papst.  The invention was never produced or used.

The "interface device" is designed to provide data transfer between a data transmit/receive device and a computer without the need for special software; this is accomplished by telling the computer that the interface device is a transmit/receive device already known to the computer (and for which the computer already has drivers, i.e., software), regardless of what kind of data transmit/receive device actually is attached to the interface device.  399 Patent, Abstract; 449 Patent, Abstract; *see also* 399 Patent 5:67 & 6:1-22; 449 Patent 4:66-67 & 5:1-22.[3]  By directing the computer to communicate using customary software already in the computer, the interface device can fulfill its purpose—to provide "communication between a host device and a data transmit/receive device whose use is host device-independent and which delivers a high data transfer rate."  399 Patent 3:24-27; 449 Patent 3:20-23 (same).

Papst alleges that certain accused devices manufactured and/or sold by the Camera Manufacturers are "interface devices" that infringe Claims 1-3, 5, 7, 11, and 14-15 of the 399 Patent and Claims 1-2, 6-9, 12-13, and 15-18 of the 449 Patent.  The accused products include digital cameras, camcorders, and digital voice recorders.[4]  Specifically, Papst's Final

---

[2] This motion is one of eight filed by the Camera Manufacturers.  In the interest of timely disposition of all, the Court does not recite the full background and assumes familiarity with its prior rulings.  *See, e.g.,* Modified Claims Construction Op. [Dkt. 336]; Sanctions Op. [Dkt. 429].

[3] The Patents are cited by a column number, then colon, then the line number.

[4] Papst was not granted leave to add cell phones and MP3 players to this litigation.  *See* Sanctions Op. at 12.

Infringement Contentions assert that (1) the Mass Storage Class (MSC) accused devices listed in Table 12 infringe the 399 Patent; (2) the MSC accused devices listed in Table 13 infringe the 449 Patent; and (3) the Picture Transfer Protocol (PTP) accused devices listed in Table 14 infringe the 399 Patent.  *See* Final Infringement Contentions (FICs) [Dkt. 416], Tables 12 & 13  & Table 14.[5]

Papst also expressly noted that it lacked sufficient information to allege that other devices infringe, setting forth a list of such products on Table 15, titled "Devices likely to be MSC Capable, PTP Capable, or both."  FICs at 307-13 (Table 15).  With regard to Table 15, the Final Infringement Contentions (FICs) assert:

> Papst has not received adequate discovery for Papst to determine if the devices in Table 15 are MSC Capable Devices, PTP Capable Devices, or both.  Papst asserts that a reasonable opportunity for discovery is likely to show evidentiary support that these devices are either MSC Capable Devices, PTP Capable Devices, or both. To the extent that the devices are MSC Capable Devices, Papst asserts that a reasonable opportunity for discovery is likely to show evidentiary support that they infringe Claims 1, 2, 3, 5, 7, 11, 14, and 15 of the 399 patent, and Claims 1, 2, 6, 7, 8, 9, 12, 13, 15, 16, 17, and 18 of the 449 patent, literally and/or under the doctrine of equivalents.  To the extent that the devices are PTP Capable Devices, Papst asserts that a reasonable opportunity for discovery is likely to show evidentiary support that they infringe Claims 1, 3, 5, 11, and 14 of the 449 patent, literally and/or under the doctrine of equivalents.  To the extent that the devices are not MSC Capable Devices or PTP Capable Devices, Papst asserts that a reasonable opportunity for discovery is likely to show evidentiary support that they may infringe Claims 1, 2, 3, 5, 7, 11, 14, and 15 of the 399 patent, and Claims 1, 2, 3, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, and 18 of the 449 patent, literally and/or under the doctrine of equivalents.  Papst reserves the right to revise or update these

---

[5] PTP and MSC relate to how a device is recognized by a computer.  When a user connects an accused device to a computer, depending on the mode setting for the device, the computer will recognize the device as a PTP device or as a MSC device.  Some accused products are alleged to operate in both MSC mode and PTP mode.  *See, e.g.*, FICs, Table 12 (asserting that Fujifilm model V10 is MSC-capable); *id*., Table 14 (asserting that Fujifilm model V10 is PTP-capable).

> contentions upon receipt of sufficient further relevant discovery
> from the [Camera Manufacturers].

FICs at 307.  In sum, Papst made no specific allegations against the Table 15 products; it alleged

only that discovery would likely show evidentiary support that these products are MSC and/or

PTP devices.

The Camera Manufacturers seek summary judgment of noninfringement because

Papst has not alleged infringement with any specificity whatsoever with regard to the devices set

forth in Table 15, and the Court's Sanctions Opinion and Order prohibit Papst from modifying its

FICs.  *See* Mot. for Summ. J. Re Table 15 Devices [Dkt. 447]; Reply [Dkt. 505].

The Sanctions Opinion and Order, issued on February 8, 2011, required Papst to

file infringement contentions with specificity.  *See* Sanctions Op. [Dkt. 429]; Sanctions Order

[Dkt. 430].  The Sanctions Order arose from Papst's failure to follow Court orders.  The Court

mandated that Papst revise its original infringement contentions, as Papst had filed them before

the Court construed the Patents.  *See* Claims Constr. Op. [Dkt. 336] (interpreting the claims in

the Patents).  The Court and the parties discussed the need for final contentions from Papst at a

discovery status conference in August 2010.  The Court chastised Papst for failing to propose

focused discovery and ordered Papst to define its asserted claims and infringement contentions in

light of the claims construction:

> I said focused discovery and what I got was a shotgun shell.  I
> mean, everything.  I do not consider that focused and I don't think
> that it fulfills my obligation to get this done quickly and with the
> least expense possible under the circumstances.   So what I think
> we need to start with is the concept that Papst filed infringement
> contentions . . . and hasn't changed them, hasn't indicated it wants
> to change them, hasn't indicated it plans or needs to change them
> but now says [it] need[s] a ton of discovery.  I'm not sure that all
> of your contentions can stand in light of the claims construction
> decision which I appreciate you don't like, it's okay.  But nobody
> knows what they're fighting about now.  Nobody can tell and you
> don't want to tell them, and we're not going to do it that way.  I

> mean, you're the plaintiff.  You have allegations, you need to say
> what they are.  So the first thing is I'm going to direct Papst to
> refile its claims contentions, its infringement contentions. . . . File
> that, then we'll know what we're arguing about.  Only then can we
> figure out what discovery is really needed.

*See* Mot. for Sanctions [Dkt. 388], Ex. A (Tr. of Aug. 31, 2010 Hearing) at 18-19.

The Court further directed,  "you have got to bring your infringement contentions up to date.

People have to know what they're litigating about.  And only when you do can you then say

okay, this is the discovery we need for these reasons."  *Id.* at 32.   The Court told Papst that its

asserted claims and infringement contentions needed to be clear cut:

> First you have to decide what your infringement contentions are.
> Only when you know what, what camera you're asserting
> [infringes] what claim and for what reason[,] can you possibly
> figure out what discovery you might need that you don't already
> have.

 *Id.* at 33-34.

As a result of the status conference, the Court issued its Sixth Practice and

Procedure Order (PPO) requiring Papst to file final contentions with specificity as to each

alleged infringer, each alleged infringing product, and each Patent Claim allegedly infringed.

The Sixth PPO provided:

> 2.   No later than October 13, 2010, Papst shall file its Final
> Disclosure of Asserted Claims and Infringement Contentions.
> Separately for each opposing party, this Final Disclosure shall
> contain the following information:
>
> a.   Each claim of each patent in suit that is allegedly infringed by
> each opposing party, including for each claim the applicable
> statutory subsections of 35 U.S.C. § 271 asserted;
>
> b.   *Separately for each asserted claim, each accused apparatus,
> product, device, process, method, act or other instrumentality
> ("Accused Instrumentality") of each opposing party of which
> Papst is aware. This identification shall be as specific as possible.*
> Each product, device, and apparatus shall be identified by name or
> model number, if known.   Each method or process shall be

identified by name, if known or by any product, device or
apparatus which, when used, allegedly results in the practice of the
claimed method or process;

c. *A chart identifying specifically where each limitation of each
asserted claim is found within each Accused Instrumentality*,
including for each limitation that such party contends is governed
by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or
material(s) in the Accused Instrumentality that performs the
claimed function.

d. For each claim which is alleged to have been indirectly
infringed, an identification of any direct infringement and a
description of the acts of the alleged indirect infringer that
contribute to or are inducing that direct infringement. Insofar as
alleged direct infringement is based on joint acts of multiple
parties, the role of each such party in the direct infringement must
be described;

e. Whether each limitation of each asserted claim is alleged to be
literally present or present under the doctrine of equivalents in the
Accused Instrumentality; and

f. For any patent that claims priority to an earlier application, the
priority date to which each asserted claim allegedly is entitled.

Sixth PPO [Dkt. 372] ¶ 2 (adopting provisions of Rule 3-1 (N.D. Cal. Patent Local Rules))

(emphasis added).

The Sixth PPO adopted the requirements set forth in Northern District of

California Patent Rule 3-1 because that Rule was designed to "make the parties more efficient, to

streamline the litigation process, and to articulate with specificity the claims and theory of a

plaintiff's infringement claims." *Bender v. Micrel Inc.*, Civ. No. 09-1144, 2010 WL 520513, at

*2 (N.D. Cal. Feb. 6, 2010). Rule 3-1 was intended to prevent cases from "stagger[ing] for

months without clear direction" by "focusing discovery on building precise final infringement or

invalidity contentions and narrowing issues for *Markman*, summary judgment trial, and beyond."

*Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005). Via the language

of Rule 3-1, the Court required Papst to "crystallize its theory of the case and patent claims."[6]

*See InterTrust Tech. Corp. v. Microsoft Corp.*, Civ. No. 01-1640, 2003 WL 23120174, at *3

(N.D. Cal. Dec. 1, 2003) (characterizing Rule 3-1).  In sum, the Court ordered Papst to file

contentions that comported with the Court's claims constructions and that were sufficiently

precise and detailed for the purpose of streamlining this already protracted litigation.

Papst filed Final Infringement Contentions, *see* FICs [Dkt. 416], but many

contentions remained vague and uninformative.  Through its experienced patent lawyers, Papst

blatantly disregarded the Sixth PPO.  The Court took Papst to task for obfuscating its

infringement theories, finding that Papst had done so intentionally as part of its strategy to extend

this litigation excessively, since Papst's business *is* litigation:

> Instead of crystallizing its asserted claims and infringement contentions in this case, Papst's Final [Infringement] Contentions intentionally obfuscate Papst's infringement theories.  As this Court has previously noted, Papst is in the business of litigation.
>
>> Papst is a German company that produces no products; it acquires patents on products or methods allegedly invented by others and then searches the world for patents it might challenge for infringement.  At one of the first status conferences of the MDL, when the Court queried whether this was old-fashioned "claim-jumping," counsel for Papst readily agreed that it had been called worse. Of course, this is a perfectly lawful and respectable business.  But it underscores that the business of Papst is litigation, not invention or production. Litigation is the business model whereby Papst, when successful, achieves royalty payments from others.  As is clear from this record, the threat of litigation alone often achieves royalty payments.

---

[6] A plaintiff in the Northern District of California is expected to articulate its infringement contentions no later than 14 days after the initial case management conference, a much earlier stage than was required in this MDL.  N.D. Cal. Patent Rule 3-1.  Papst was required to crystallize its theories only after claims construction.

> Mem. Op. [Dkt. 86].  While the threat of litigation alone often
> achieves royalty payments, the threat of never-ending discovery
> can induce even larger royalty payments.  Frankly, this appears to
> be Papst's strategy in this case.   The Final [Infringement]
> Contentions are purposefully vague; they were drafted to further
> Papst's intention to engage in protracted and expensive litigation.

Sanctions Op. at 7-8.

In addition to concealing its infringement theories, Papst purposely disregarded

the Modified Claims Construction Opinion and Order.  The Sanctions Opinion explained:

> [T]he Final [Infringement] Contentions additionally lack the
> requisite specificity because they repeatedly reiterate Papst's
> version of previously rejected claims constructions and then
> advance theories based on such rejected constructions.  *See, e.g.*,
> [FICs] at 33 (asserting that "second connecting device" means a
> device for interfacing and not "a physical plug or socket for
> permitting a user readily to attach and detach . . ." as construed by
> the Court).  In this same vein, Papst also attempts to incorporate
> and reassert its original contentions filed May 28, 2008, before
> claims construction.  *Id*. at 2.  Such an approach bespeaks a total
> lack of respect for Court orders and the timely resolution of this
> case, but it is consistent with Papst's approach from the
> beginning.[7]

*Id*. at 10.  Papst's failure to properly detail its infringement claims was not an innocent error; it

was part of a calculated strategy.

For this astounding and brash failure to follow court orders, the Court imposed a

reasonable sanction against Papst—requiring Papst "to live with its Final [Infringement]

Contentions as they stand without further modification."  Sanctions Op. at 7.  Thus, the Court

barred Papst from modifying the FICs and barred Papst from advancing any arguments for

---

[7] *See, e.g.*, Mem. Op. [Dkt. 82] (sanctioning Papst for failure to comply with a direct discovery order), *modified in part by* Mem. Op. [Dkt. 123].  Notably, Papst filed a petition for writ of mandamus, *see* Dkt. 167, and the Federal Circuit denied the petition.  *In re Papst Licensing GmbH & Co. KG*, Misc. No. 877, 314 F. App'x 295 (Fed. Cir. 2008).

infringement (or against claims of noninfringement) that either (1) are not based solely on this Court's constructions of the Patents or (2) are not already set forth specifically and explicitly in the FICs.  *See* Sanctions Order at 2.  Further, although Papst claimed that it "reserved the right" to accuse more products of infringement, the Court found that this claim was imprecise and limitless and that it violated the Court's orders.  Sanctions Op. at 12.

Papst opposes the Camera Manufacturers' motion for summary judgment regarding the Table 15 products and seeks further discovery.  *See* Opp'n [Dkt. 471]; Mot. for Rule 56(d) Discovery [Dkt. 479].

## II.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  On summary judgment, the burden on a moving party who does not bear the ultimate burden of proof in the case may be satisfied by making an initial showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.*

The burden then shifts to the nonmovant to demonstrate the existence of a genuine issue of material fact.  The nonmovant may not rest on mere allegations or denials, but must instead by affidavit or otherwise, present specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c);  *Celotex*, 477 U.S. at 324; *see also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (nonmovant must present specific facts that would enable a reasonable jury to find in its favor).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  In addition, if the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Summary judgment can be granted in a patent case if there is no dispute over the structure of the accused products, at which point the question of infringement "collapses" into the question of claim construction and may be resolved by the court. *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332-33 (Fed. Cir. 1998).  The burden of proving infringement rests on the patent holder. *Welker Bearing Co. v. PHD, Inc*., 550 F.3d 1090, 1095 (Fed. Cir. 2008).  Thus, on summary judgment the Camera Manufacturers bear the burden of making an initial showing that there is an absence of evidence to support Papst's claim of infringement, and Papst bears the burden of presenting specific facts showing that there is a genuine issue for trial.

## III. ANALYSIS

The Camera Manufacturers seek a judgment of noninfringement as to the Table 15 products.  Papst complains that (1) it has insufficient information to assert specific infringement contentions as to the Table 15 devices; (2) the Camera Manufacturers should be required to provide discovery as to the mode of communication (MSC, PTP, or other) of the

Table 15 devices; and (3) Papst should be permitted to supplement its contentions or, at least, the Court should decline to enter judgment regarding the Table 15 products so that Papst can sue on those items later.

At its core, Papst's argument seeks reconsideration of the Sanctions Opinion and Order. But Papst fails to meet the standard for reconsideration. *See Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (reconsideration may be permitted when a court patently misunderstood a party, made a decision outside the adversarial issues presented, made an error not of reasoning but of apprehension, or where there has been a controlling or significant change in the law or facts). Papst has not alleged, let alone shown, that the Court patently misunderstood a party, made a decision outside the issues presented, made an error of apprehension, or that a controlling or significant change in the law or facts occurred.

Furthermore, a cursory read of the Sanctions Opinion and Order reveals that the Court did not simply "exclude" the Table 15 devices from this litigation, as Papst wishes it had, for the purpose of permitting Papst to amend its infringement contentions or to bring a new lawsuit against those devices. Papst was sanctioned for its failure to comply with Court orders, and the sanction requires Papst "to live with its Final [Infringement] Contentions as they stand without further modification." Sanctions Op. at 7. The Court expressly "barred [Papst] from modifying its Final [Infringement] Contentions" and "barred [Papst] from advancing any arguments for infringement, or against the Camera Manufacturers' claims of noninfringement, that are not set forth specifically and explicitly in the Final [Infringement] Contentions." *Id*. at 12; Sanctions Order at 2. To permit amendment of the Final Infringement Contentions against the Table 15 devices or future suit against the Table 15 devices would more than undermine the sanction, it would negate it.

Papst contends that it does not know whether the products listed in Table 15 communicate with a host computer in MSC mode and/or PTP mode or whether they use another mode of communication altogether,[8] and that it should be permitted to seek discovery of this information, which (Papst alleges) is within the exclusive control of the Camera Manufacturers. Papst moves for discovery under Federal Rule of Civil Procedure 56(d).[9]  *See* Mot. for 56(d) Disc. [Dkt. 479]; Reply [Dkt. 515].  On a Rule 56(d) motion, "[t]he non-moving party bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion."  *Scott-Blanton v.*

---

[8] Papst insists that the devices listed in Table 15 infringe the Patents even if they are not MSC or PTP capable:

> If there were another capability besides MSC and PTP for these cameras — and Papst doubts that there is one because no documents have mentioned such a third way of communicating with the host device — it, too, would likely infringe because of the similarity in functions of the Table 15 products to the functions of products listed in the other tables. Papst would need discovery from the [Camera Manufacturers] about any such heretofore unmentioned capability in order to determine the matter of infringement.

Opp'n [Dkt. 471] at 2 n.2.  Papst, however, alleged infringement only by products that operate in MSC and/or PTP mode.  It is too late for Papst to assert a new theory of infringement.  *See* Sanctions Order at 2.

[9] Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

*Universal City Studios Prods. LLLP*, 246 F.R.D. 344, 347 (D.D.C. 2007), *aff'd* 308 F. App'x 452 (D.C. Cir. 2009).

Papst's claim that it was "unable" to make specific allegations against the Table 15 devices is belied by (1) the fact that Papst made specific allegations against the numerous MSC and PTP devices listed in Tables 12, 13, and 14 of the Final Infringement Contentions; and (2) prior to the date that Papst filed the FICs (January 21, 2011), the Camera Manufacturers expressly identified in interrogatory responses many Table 15 products that have MSC and/or PTP functionality. *See, e.g.*, Reply, Ex. A [Dkt. 505-1] (Sept 29, 2008 Matsushita/Panasonic 2d Supp. Resp. to 2d Revised Interrog.) at 13[10] (informing Papst that models NV-GS120GC, NV-GS200GC, NV-GS300, NV-GS30EN, NV-GS3EN, NV-GS5EN (listed in Table 15 at 310) are MSC and/or PTP capable); Ex. B [Dkt. 505-1] (June 12, 2008 Fujifilm Resp. to 2d Revised Interrog.) at 26 (revealing that the FinePix Z5R camera (listed in Table 15 at 308) as "category 3," *i.e.* PTP capable); Ex. C (Sept. 29, 2008 Victor/JVC 2d Supp. Resp. to 2d Revised Interrog.) at 34, 37 (specifying that models GC-A33, GZ-MG435, GZ-MG465 (listed in Table 15 at 309) are MSC and/or PTP capable).

Further, Papst's assertion that the information regarding whether the accused devices operate in MSC and/or PTP mode is in the exclusive control of the Camera Manufacturers is undermined by the wealth of information publically available on the Internet. For example, Papst asserts that it has insufficient information to determine the functionality of the Nikon D3s camera and listed this model in Table 15.   FICs at 310.  The Nikon website, however, shows that the D3s camera can communicate in MSC and PTP modes.  *See* http://support.nikonusa.com/app/answers/detail/a_id/4613 (last viewed June 19, 2013).

---

[10] Citations to the Camera Manufacturers' Reply Exhibits are to the page numbers in the ECF header.

User manuals either produced by the Camera Manufacturers in discovery or available on the Internet also reveal whether a product can operate in MSC and/or PTP mode. Papst alleges that it does not have adequate information to determine the communication mode of the Nikon L100 camera.  *See* Table 15 at 310.  However, the user manual for the Nikon L100, available on Nikon's website,[11] indicates that this model uses PTP data transfer protocol.  *See* Ex. E [Dkt. 505-1] (Nikon Coolpix L100 User Manual Specifications) at 44.  User manuals for all of the Panasonic and JVC products sold in the United States and listed in Table 15 have been produced in discovery or are accessible online.  *See* Reply at 7-8 (citing http://service.us.panasonic.com/operman/ (last viewed June 19, 2013) and http://books.jvc.com/ (last viewed June 19, 2013)).  Thus, Papst could have read the user manual for the Panasonic DMC-FZ100, listed on Table 15 at 309, and determined that this product can use the MSC or PTP communication protocol.  Ex. G [Dkt. 505-1] (excerpt of DMC-FZ100 User Manual) at 59. Papst could have reviewed the user manual for the JVC model GZ-HD3US, listed on Table 15 at 509, which explains that the camera can be connected to a computer in MSC mode.  Ex. H [Dkt. 505-1] (excerpt of GZ-HD3US User Manual) at 62.  Papst also could have tested the accused products by simply attaching them to a computer.  *See* Locke Decl. [Dkt. 193-3] ¶ 24-25 (explaining that computers can detect the attachment of MSC and still image capture (PTP) devices); Papst Tutorial Slides [Dkt. 215] at 20 (depicting the typical computer screen message that appears when a camera is attached, which states "Found New Hardware – USB Mass Storage Device").

Papst has made infringement allegations against the products listed in Table 15 without any factual basis whatsoever.  Papst claims that it could not have determined whether

---

[11] *See* https://support.nikonusa.com/app/answers/detail/a_id/16311/~/user's-manual---coolpix-l100 (last viewed June 19, 2013).

those devices were MSC and/or PTP capable, but this claim is made without evidentiary support and in the face of substantial evidence to the contrary.  Papst's failure to make precise allegations against the Table 15 products is not excused.

Having made only bald allegations against the Table 15 devices, Papst cannot demonstrate the existence of a genuine issue of material fact with regard to infringement, *Celotex*, 477 U.S. at 324, nor can Papst present specific facts that would enable a reasonable jury to find in its favor.  *See Greene*, 164 F.3d at 675.  Papst cannot save itself now by ignoring the Court's sanctions and demanding imprecise discovery, much of it unnecessary.  Accordingly, summary judgment will be granted in favor of the Camera Manufacturers with regard to the accused devices set forth in Table 15.

## IV.  CONCLUSION

The Camera Manufacturers' motion for summary judgment of noninfringement with respect to devices identified in Table 15 [Dkt. 447] will be granted, and Papst's motion for further discovery [Dkt. 479] will be denied with regard to the Table 15 products.[12]  Summary judgment of noninfringement will be granted in favor of the Camera Manufacturers with respect to the Table 15 devices.  A memorializing Order accompanies this Opinion.

Date: July 1, 2013                                    _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge

---

[12] Papst moved to file a surreply in opposition to the Camera Manufacturers' motion for summary judgment with respect to Table 15 devices.  *See* Mot. for Leave to File Surreply [Dkt. 509].  Because surreplies are disfavored in this District and because the Camera Manufacturers' Reply [Dkt. 505] did not raise new issues, Papst's motion to file a surreply will be denied.  *See Crummey v. Social Sec. Admin*., 794 F. Supp. 2d 46, 62 (D.D.C. 2011).