UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| IN RE PAPST LICENSING GMBH & CO. KG PATENT LITIGATION | Misc. Action No. 07-493 (RDM) MDL No. 1880 |
|---|---|

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Camera Manufacturers' Motion for Leave to Amend Invalidity Contentions as to the "new patents" (U.S. Pat. Nos. 8,966,144 and 8,504,746) asserted by Papst in this multidistrict litigation.[1] Dkt. 662. The Camera Manufacturers contend that they recently discovered a break in the chain of priority that links Papst's new patents to its "old patents" (U.S. Pat. Nos. 6,470,399 and 6,895,449) rendering "Papst's own earlier published patent applications prior art to the [n]ew [p]atents." *Id.* at 4; *see also id*. at 5–9, 12. Because this theory was not set forth in the Camera Manufacturers' invalidity contentions, they seek leave to amend those contentions. *Id*. Papst opposes the Camera Manufacturers' motion, arguing that the Camera Manufacturers have failed to meet their burden of establishing "good cause" for amending their invalidity contentions. Dkt. 669.

For the reasons explained below, the Court will **GRANT** the Camera Manufacturers' motion for leave to amend their invalidity contentions.

## I. BACKGROUND

Initiated almost a decade ago, this multidistrict litigation originally concerned two patents—U.S. Patent Nos. 6,470,399 ('399 patent) and 6,895,449 ('449 patent). After extended proceedings, the Court entered final judgment of non-infringement pursuant to Rule 54(b) with

---

[1] Because Papst has not asserted the new patents against Samsung Techwin Co., Ltd. and Samsung Opto-Electronics America, Inc., they do not join the Camera Manufacturers' motion for leave to amend. *See* Dkt. 662 at 4 n.1.

respect to certain defendants, Dkts. 559, 560, and the plaintiff—Papst Licensing GMBH & Co. KG ("Papst")—appealed that partial final judgment, Dkt. 561.  In February 2015, the Federal Circuit concluded that the Court had incorrectly construed various claims terms and, accordingly, vacated the Court's entry of summary judgment.  *In re Papst Licensing Digital Camera Patent Lit.*, 778 F.3d 1255 (Fed. Cir. 2015).  After the case was remanded, Papst asserted two additional patents—U.S. Patent Nos. 8,504,746 ('746 patent) and 8,966,144 ('144 patent)—against the defendants, and, over Papst's objection, those new patent infringement actions were transferred to this Court in October 2015 for inclusion in the pending multidistrict litigation.  *See* Dkt. 606.

Following the transfer of the new cases asserting the '746 and '144 patents, the Court issued its Ninth Practice and Procedure Order.  Dkt. 608.  Among other things, that Order designated which cases would be included in the "First Wave" cases and designated the defendants in those cases as the "Camera Manufacturers;" affirmed that the litigation would be governed by the Patent Local Rules of the Northern District of California ("Patent Local Rules"); stayed all discovery other than discovery relating to claims construction; and directed that the Camera Manufacturers file their invalidity contentions no later than February 12, 2016.  *Id.* at 1–5.  The Order emphasized that the Camera Manufacturers would be permitted to amend their invalidity contentions only "by order of the Court upon a timely showing of good cause," as provided in Patent Local Rule 3-6.  *Id.* at 6 (quoting Patent L.R. 3-6).  The Camera Manufacturers filed their invalidity contentions on January 29, 2016.  Dkt. 620.

In July 2016, the multidistrict litigation was transferred to the undersigned judge, Dkt. 632, and the Court held a four-day claims construction hearing in November and December 2016.  On October 17, 2016, roughly a month before the claims construction hearing, counsel for the Camera Manufacturers wrote to Papst indicating that they intended to seek leave of the Court, pursuant to Patent Local Rule 3-6, to amend their invalidity contentions with respect to

2

the '746 and '144 patents, and asking whether Papst would consent to the proposed amendment. Dkt. 662-3 at 2. As explained in the October 17, 2016, letter, the Camera Manufacturers asserted that the new patents were "not entitled to claim priority" back to the old patents because the chain of priority linking them together "was broken." *Id.* Specifically, the Camera Manufacturers pointed out that patent application '778—the application that the new patents cite to support their priority claim back to the old patents, *see* Dkt. 662 at 6–7—failed to claim priority to the '399 patent or its application, Dkt. 662-3 at 2. Accordingly, the Camera Manufacturers continued, "all asserted claims in the [new patents] [we]re invalid as anticipated . . . by" the inventor's "earlier publications" and applications. *Id.*; *see also* Dkt. 662 at 9. On October 28, 2016, Papst responded in a letter that posed a series of questions relating to whether the standards set forth in Patent Local Rule 3-6 were satisfied, denied that "there [wa]s any break in the priority chain for" the new patents, and indicated that, "[b]ased on [the] October 17, 2016[,] letter, Papst [could not] consent to the [Camera Manufacturers'] proposed amendment to [their] invalidity contentions." Dkt. 662-4 at 2.

Notwithstanding Papst's denial that there was a break in the priority chain, on November 10, 2016, Papst filed a petition with the U.S. Patent and Trademark Office ("PTO") for a "delayed claim of priority," arguing that the failure of the '778 patent application to claim priority to the '399 patent was the "result of an administrative error" that had only "recently come to [Papst's] attention." Dkt. 662-1 at 4. The parties continued to correspond with each other over the next several months. On December 7, 2016, the Camera Manufacturers responded to the list of questions posed by Papst on October 28, 2016. Dkt. 662-5 at 2. They explained that the '778 application was not the application for either of the new patents, but rather was "one of many applications related to" those patents; that the prosecution of the new patents "spanned a period of [eighteen] years" and that the prosecution history included "tens of

3

thousands of pages;" that the Camera Manufacturers informed Papst of the issue "[u]pon discover[y]" of the alleged priority defect; that Papst has been on notice of the issue "since at least August" when it was raised in a similar case "pending in the Eastern District of Texas;" and that Papst would suffer no prejudice by permitting the amendment.  *Id.*  About three weeks later, Papst responded more definitively than in its first letter, asserting that "it is apparent that the Camera Manufacturers . . . cannot demonstrate the requisite diligence for amending [their] invalidity contentions" and that, accordingly, Papst would oppose their motion for leave to amend.  Dkt. 662-6 at 2.

By mid-January 2017, the Camera Manufacturers had learned that Papst had filed a petition with the PTO for a delayed claim of priority with respect to the '778 patent application, and, on that basis, they asked, once "again[,] that Papst consent to the proposed amendment to the invalidity contentions" in order to "avoid wasting the parties' and the Court's time with an unnecessary dispute."  Dkt. 662-7 at 2.  If Papst would not consent, the Camera Manufacturers continued, they intended to "request a telephonic conference [with the Court, as required by the Court's procedures] to discuss the parties' dispute and [to] seek leave to file a motion for leave to amend [their] invalidity contentions."  *Id.*  The next day, Papst responded succinctly:  "Papst does not consent to the [Camera Manufacturers'] request to amend their invalidity contentions."  Dkt. 662-8 at 2.  At a telephonic status conference held on January 27, 2017, the Court granted the Camera Manufacturers leave to file the pending motion.  *See* Minute Entry (Jan. 27, 2017).

## II. ANALYSIS

As the parties have agreed and the Court has repeatedly confirmed, unless otherwise ordered, the Patent Local Rules for the Northern District of California apply to this litigation.  *See*, *e.g.*, Dkt. 628 at 2.  As relevant here, Patent Local Rule 3-6, provides that invalidity contentions may be amended "only by order of the Court upon a timely showing of good cause."

4

Patent L.R. 3-6. The moving party bears the burden of establishing good cause. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). To do so, it must demonstrate that it "acted with diligence in promptly moving to amend." *Id.* at 1363. If the moving party is able to show sufficient diligence, the Court "then must determine whether the non-moving party would suffer [undue] prejudice if the motion to amend were granted." *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-cv-05184, 2014 WL 5499511, at *2 (N.D. Cal. Oct. 30, 2014) (internal quotation marks omitted) (citing Patent L.R. 3-6).

Determining whether "good cause" exists is not a mechanical process. The Court must consider all of the relevant circumstances, including the extent to which permitting an amendment would interfere with the purposes of requiring the early disclosure of invalidity contentions, and whether permitting an amendment would facilitate the "just, speedy, and inexpensive determination" of the litigation, *see* Fed. R. Civ. P. 1.

**A.     Diligence**

As explained below, the Court concludes that the Camera Manufacturers have acted with sufficient diligence at this early stage of the proceeding concerning the new patents. "The diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Tech. Props. Ltd. LLC v. Canon Inc.*, No. 14-cv-03640, 2016 WL 1570163, at *2 (N.D. Cal. Apr. 19, 2016) (quotation marks and alteration omitted). The Court will start with the latter phase and then turn to the former.

    1.     *Diligence in Seeking Amendment*

The Court is persuaded that, once they became aware of the potential invalidity defense, the Camera Manufacturers acted with sufficient dispatch in raising the issue, first, with Papst and, then, with the Court. Although the Camera Manufacturers do not specify precisely when

5

they learned of the asserted break in the chain of priority, they have explained that the "issue came to [their] attention" when "invalidity contentions were served" on August 24, 2016, in a case involving the same patents pending in the Eastern District of Texas. Dkt. 661 at 5 (Tr. of Jan. 27, 2017, Telephonic Conf.). They have further represented that, after learning that the break in the chain of priority had been raised in the Texas litigation, they "spent a month researching [whether] it would be relevant" in this proceeding, and then contacted Papst by letter on October 17, 2016, to notify Papst that they wanted to add this theory to their invalidity contentions and to see whether Papst would consent to the amendment. *Id*. at 5–6; *see also* Dkt. 662-3.

Had Papst simply responded that it would not consent, the Camera Manufacturers might reasonably be faulted for having waited until January to raise the issue with the Court. But that is not what Papst did. Rather, it posed a series of questions to the Camera Manufacturers seeking an explanation for why the good cause standard was satisfied; it "disagreed" with the Camera Manufacturers' contention that a break in priority had occurred; and it declined to consent to the proposed amendment "[b]ased on [the Camera Manufacturers'] October 17, 2016[,] letter." Dkt. 662-4. In the Court's view, the Camera Manufacturers reasonably construed this response as a request for further justification and not as a firm "no." The Camera Manufacturers, then, responded to the questions posed by Papst in letter dated December 7, 2016. Dkt. 662-5. Although they might have responded more quickly, the Court concludes that, given the number of parties and attorneys involved and the intervening holiday, the forty days it took the Camera Manufacturers to answer Papst's letter was not unreasonable.

Approximately three weeks later, Papst wrote back stating that "it is apparent that the Camera Manufacturers . . . cannot demonstrate the requisite diligence for amending [their] invalidity contentions" and that, accordingly, Papst had decided to oppose their motion for leave

to amend. Dkt. 662-6 at 2. That response, among other things, validates the Camera Manufacturers' understanding the Papst was, until then, considering whether to consent to the amendment. Finally, despite Papst's unqualified response, the Camera Manufacturers gave their effort to obtain consent one more shot. Having learned (without notification from Papst) that Papst had petitioned the PTO in early November 2016 for a delayed claim of priority with respect to the '778 patent application, the Camera Manufacturers asked whether, "[i]n view of Papst's recently-filed petition and Papst's admissions therein," it would "consent to the proposed amendment to the invalidity contentions." Dkt. 662-7 at 2. And, in the alternative, they asked "when Papst [wa]s available" for a telephonic conference with the Court to address "the parties' dispute and [for the Camera Manufacturers to] seek leave to file a motion for leave to amend [their] invalidity contentions." *Id.* When Papst reaffirmed its decision not to consent the next day, Dkt. 662-8, the Camera Manufacturers promptly sought permission from the Court to file the pending motion, *see* Notice of Hearing (Jan. 24, 2017).

In the Court's view, although the Camera Manufacturers might have moved with somewhat greater alacrity, much of the delay is attributable to the questions Papst posed and, to a lesser extent, to Papst's failure to inform the Camera Manufacturers when it filed its petition for a delayed claim of priority with the PTO in November 2016. The Camera Manufacturers, more generally, can hardly be faulted for attempting to resolve the present dispute without the need for a contested motion or for substantial judicial involvement.

Papst pushes back by arguing that "interim communications between the parties" do not "excuse [the Camera Manufacturers'] . . . protracted delay" in "rais[ing] th[is] issue with the Court," and it cites a handful of cases that it says supports that position. Dkt. 669 at 15. The requests for amendment in those cases, however, arose in contexts unlike the present circumstances. In *Oracle America, Inc. v. Google Inc.*, for example, the court chastised the

7

defendant for "gambl[ing] for months on the possibility that a stipulation [permitting amendment] might be reached" between the parties, but it also highlighted that the defendant was attempting to amend its invalidity contentions at the "eleventh hour," just two months before trial. No. C 10-03561, 2011 WL 3443835, at *1 (N.D. Cal. Aug. 8, 2011) (emphasis removed); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846, 2012 WL 1067548, at *3 (N.D. Cal. Mar. 27, 2012) (noting that, "[w]hile seeking a stipulation from opposing counsel may establish reasonable diligence in some instances," Samsung's attempts to obtain Apple's consent did not demonstrate diligence in light of "the expedited case schedule faced by the parties"). Here, no such concern is present. Trial has not been scheduled, discovery is stayed, and there are no upcoming deadlines that might be affected by the proposed amendment.

The Court, accordingly, finds that the Camera Manufacturers acted with sufficient diligence in seeking leave of the Court to amend their invalidity contentions after they recognized that there was a potential break in the chain of priority.

2.   *Diligence in Discovering Basis for the Amendment*

The more difficult question is whether the Camera Manufacturers were sufficiently diligent in the first phase—that is, whether they should have identified the alleged defect in the chain of priority earlier than they did. "[I]n considering a party's diligence, the critical question is whether the party 'could have discovered [the new information] earlier had it acted with the requisite diligence.'" *Symantec Corp. v. Acronis Corp.*, No. 11-5310, 2013 WL 5368053, at *4 (N.D. Cal. Sept. 25, 2013) (quoting *Google, Inc. v. Netlist, Inc.*, No. C 08-4144, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010)); *see also Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807, 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009 ("[T]he critical issue is whether or not [the party seeking to amend] exercised diligence in discovering the prior art."). The requirement that the moving party act with "the requisite diligence" does not mean, however,

8

that courts demand "perfect diligence"—"hindsight is often '20/20'" and courts recognize that "identifying and evaluating prior art can be difficult." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587, 2014 WL 491745, at *4 (N.D. Cal. Feb. 5, 2014). Although "mistakes or omissions are not[,] by themselves," sufficient to establish good cause for amendment, *Symantec Corp.*, 2013 WL 5368053, at *4, "[c]ourts have allowed amendments when the movant has made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery," *OpenDNS, Inc. v. Select Notifications Media, LLC*, No. C11-05101, 2013 WL 2422623, at *3 (N.D. Cal. June 3, 2013).

Here, Papst argues that the Camera Manufacturers were not diligent because they were aware of the '778 application years before they filed their invalidity contentions. They assert that, because the "'778 application [wa]s listed on the face of the [n]ew [p]atents," the Camera Manufacturers "cannot credibly claim that it was difficult to locate . . . the alleged mistake" in the chain of priority. Dkt. 669 at 12; *see also id.* at 10–17. Put differently, Papst argues that the Camera Manufacturers had all of the information necessary to assert this invalidity contention long before their contentions were due, and their failure to put the pieces together in a timely fashion does not constitute good cause. Papst's argument has some appeal; it is correct that the Camera Manufacturers *could have* identified the grounds for their new invalidity contention from the face of the relevant patents and patent applications. Although a close question, the Court nonetheless finds that the Camera Manufacturers have met their burden of showing sufficient diligence for several reasons.

First, although this multidistrict litigation is approaching its tenth year, the potential significance of the '778 application is relatively new to the case. The purported break in the priority chain found in the '778 application was not relevant to any of the issues litigated by the parties between 2007 and 2015, nor was it relevant to any of the issues appealed to the Federal

9

Circuit. As a result, the years of work that preceded the incorporation of Papst's new cases asserting the '746 and '144 patents into the multidistrict litigation in 2015 has no bearing on the issue presented.

Second, although Papst is correct that a careful analysis of the priority chain would have revealed the defect now at issue, a showing of diligence does not require a showing of "perfect[ion]." *Fujifilm*, 2014 WL 491745, at *4; *see also OpenDNS*, 2013 WL 2422623, at *3 (noting that honest mistake[s]" happen in litigation). Here, Papst is hard pressed to argue that the Camera Manufacturers' oversight was so obvious that they cannot possibly establish good cause. As the Camera Manufacturers point out, Papst itself missed the same arguable break in the priority chain. It was only after the issue was raised in the Texas litigation, and only after the Camera Manufacturers raised the issue with Papst, that Papst petitioned the PTO seeking to correct the alleged defect in the chain of priority for the new patents. In doing so, Papst explained that it had only recently come to its attention that the '778 application "mistakenly omit[ted] a specific reference to" an earlier filed application. Dkt. 662-1 at 4. Papst further explained that "this omission [was] a result of an administrative error." *Id.* Although the standard for a petition for a delayed claim of priority is admittedly less demanding than the good cause standard, *see* 37 C.F.R. § 1.78(e) (delay was "unintentional"), the fact that Papst nonetheless put its claims at risk by the omission, and the fact that Papst presumably conducted substantial due diligence with respect to the '746 and '144 patents before bringing the pending infringement actions, amply demonstrate that Papst failed to live up to the standard that it sets for the Camera Manufacturers. To be sure, two wrongs don't make a right. But the question of due diligence turns on whether the omitted contention was "difficult to find," *Sunpower Corp. Sys.*, 2009 WL 1657987, at *2, and Papst's failure to find precisely the same issue—when it had every incentive to do so—provides powerful evidence in support of the Camera Manufacturers.

10

Third, the Court must consider the Camera Manufacturers' claim of good cause in light of the purposes of Patent Local Rules 3-3 (invalidity contentions) and 3-6 (amendments to contentions). *See Netflix, Inc. v. Rovi Corp.*, No. 11-cv-06591, 2015 WL 3504969, at *2 (N.D. Cal. June 2, 2015) (explaining the "philosophy behind" the interplay of the rule permitting amendment and the rule "requir[ing] parties to define their theories of infringement and invalidity early on in the course of the litigation" (internal quotation marks omitted)). Those rules are designed to permit a party asserting an infringement claim "to pin down" the other side's "theories" and to thereby channel "discovery and trial preparation" in an efficient and fair manner. *O2 Micro*, 467 F.3d at 1365. The rules, accordingly, "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories" at issue. *Id.* at 1366. As a corollary to this underlying purpose, court have frequently "allowed amendments when 'the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery,'" *Tech. Licensing*, 2014 WL 5499511, at *3 (quoting *OpenDNS*, 2013 WL 2422623, at *3), and have stressed that the "Patent Local Rules were designed to prevent the parties from shifting their theories in reaction to adverse substantive rulings or late in discovery, leaving the opposing party with little time to conduct discovery on a new theory," *Yodlee Inc. v. CashEdge, Inc.*, No. C 05-1550, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007) (citations omitted). This "policy . . . prevents the 'shifting sands' approach to claim construction" and reflects the Patent Local Rules' "concern with parties sandbagging opponents late in the discovery period." *Id.* (internal quotation marks omitted).

Here, these considerations favor permitting the Camera Manufacturers to amend their invalidity contentions. In this case—as in *Yodlee*—there have been no substantive rulings issued by the Court between when the Camera Manufacturers served their invalidity contentions and when they filed their motion to amend those contentions, and there is no basis to believe that the

11

Camera Manufacturers motion is "motivated by gamesmanship." *Id.* Moreover—as in *Yodlee*—the press of a discovery deadline is not at issue; discovery is currently stayed, and the Court has not yet set a discovery schedule. *See id.*; *see also Tech. Licensing*, 2014 WL 5499511, at *3. Unlike many of the cases cited by Papst in which amendments were proposed late in the discovery period or on the eve of trial, *see* Dkt. 668 at 4, permitting an amendment here would not affect the timing or pace of proceedings between the parties. The Court is cognizant that this litigation has been ongoing for nearly a decade, but the Camera Manufacturers' request will not prolong it any further.

Fourth, although the parties have agreed that the Patent Local Rules will govern this proceeding, those rules—including any requirements relating to amendment—must yield to the Federal Rules of Civil Procedure in the event of any conflict. The Federal Rules are meant to "secure the just, speedy, and inexpensive determination of every action," *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 1), and as the Federal Circuit has explained, "refusing to allow any amendment to [invalidity] contentions based on new information developed" by the parties over the course of the litigation "could be contrary to the spirit of the Federal Rules," *O2 Micro*, 467 F.3d at 1366. Questions of patent validity, moreover, are of broad public importance and thus merit consideration where fairly presented. *See, e.g.*, *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431, 2006 WL 1329997, at *6 (N.D. Cal. May 15, 2006) (explaining that "the Federal Circuit strongly encourages district courts to decide issues pertaining to invalidity when those issues have been presented to the court, particularly because patent validity has important public implications"). Here, there is no reason not to permit the Camera Manufacturers to raise this additional invalidity contention other than their modest delay in identifying the issue.

Finally, the Court is not convinced that the PTO's decision to grant Papst's petition for a delayed claim of priority, *see* Dkt. 669-4, changes this analysis. The Camera Manufacturers have asserted that they may contest the PTO's *ex parte* determination in this Court, *see* Dkt. 662 at 12 n.6, and, even if that determination is upheld, they assert that it would only apply prospectively from the date of the PTO's decision, *see* Dkt. 668 at 6 (citing *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1295–96 (Fed. Cir. 2000) ("[W]here the claim is invalid on its face without the certificate of correction, it strikes us as an illogical result to allow the patent holder, once the certificate of correction has issued, to sue an alleged infringer for activities that occurred before the issuance of the certificate of correction.")).

The Court, accordingly, concludes that the Camera Manufacturers have demonstrated sufficient diligence in their discovery of the grounds for their proposed amendment.

**B.     Prejudice**

Even if the moving party has carried its "burden of establishing diligence," the Court "may deny a motion for leave to amend invalidity contentions if" doing so "would cause 'undue prejudice to the non-moving party.'" *Tech. Props.*, 2016 WL 1570163, at *2 (quoting Patent L.R. 3-6). For many of the same reasons discussed above, the Court concludes that Papst will not suffer any undue prejudice if the Camera Manufacturers are permitted to amend their invalidity contentions. Papst has not filed any pending motions that will be "impacted or rendered moot by [the Camera Manufacturers'] amendment," and, as discussed above, there is no "fact discovery cutoff" that would be affected by permitting the Camera Manufacturers to assert a new invalidity theory at this juncture in the litigation. *Yodlee*, 2007 WL 1454259, at *3. The Court is cognizant that Papst may have to expend "resources" addressing an invalidity contention that it deems "meritless and futile," Dkt. 669 at 5; *see also id.* at 18–20, but, at this point in the litigation, "any tax on [Papst's] resources is outweighed by the [Camera Manufacturers'] right to

13

develop new information . . . , as well as the interest in considering material information to secure the just resolution of this action," *Fujifilm*, 2014 WL 491745, at *6.

In short, the only cost imposed on Papst by the Camera Manufacturers' identification of this additional invalidity contention, which it would not have incurred had they included the contention in their January 29, 2016, filing, has been the cost of opposing this motion.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Camera Manufacturers have demonstrated good cause for amending their invalidity contentions as required under Patent Local Rule 3-6. Accordingly, the Court **GRANTS** the Camera Manufacturers' motion for leave to amend their invalidity contentions (Dkt. 662). The Camera Manufacturers are **ORDERED** to file their amended contentions on or before September 1, 2017.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 24, 2017