UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE PAPST LICENSING GMBH & CO. KG PATENT LITIGATION | Misc. Action No. 07-493 (RDM)<br><br>MDL No. 1880 |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Camera Manufacturers' request for a stay of proceedings. Dkt. 686 at 2. The U.S. Patent and Trademark Office ("PTO") has found unpatentable all asserted claims of three of the four patents-in-suit—the '399, '746, and '144 patents (hereinafter "the IPR patents").[1] Those decisions are now on appeal to the Court of Appeals for the Federal Circuit. Although the PTO also instituted *inter partes* review ("IPR") proceedings regarding the asserted claims of the fourth patent-in-suit—the '449 patent—it terminated those proceedings because Papst Licensing GMBH & Co. ("Papst") settled with each of the IPR petitioners.[2] In light of the PTO's decisions concerning the '399, '746, and '144 patents, and the substantial overlap between the claims that the PTO found unpatentable in those patents and the asserted claims of the '449 patent, the Camera Manufacturers contend that a stay of proceedings until completion of the Federal Circuit appeals will "conserve judicial resources and lead to the most efficient conclusion of this matter." Dkt. 686 at 2. Papst does not oppose

---

[1] *See* U.S. Patent No. 6,470,399 ("the '399 patent"); U.S. Patent No. 8,504,746 ("the '746 patent"); and U.S. Patent No. 8,966,144 ("the '144 patent").

[2] *See* U.S. Patent No. 6,895,449 ("the '449 patent"). As explained below, several of the defendants in this action have now filed a request for reexamination of the '449 patent with the PTO, which has yet to act on that request. *See* 35 U.S.C. §§ 302–307. The PTO must decide whether to reexamine the patentability of the '449 patent within three months of that filing. *See* 35 U.S.C. § 303.

staying this action with respect to the IPR patents. Dkt. 684 at 1. It does, however, oppose a stay of proceedings concerning the '449 patent. Dkt. 685 at 5. In its view, "there is little to no commonality between the issues on appeal concerning the IPR patents and the specific claim construction issues before the Court regarding the '449 patent," and a stay will substantially prejudice Papst, which has waited over a decade for a final resolution of its infringement claims. Dkt. 685 at 5.

For the reasons explained below, the Court will **GRANT** the Camera Manufacturers' request for a stay, Dkt. 686, and will **STAY** these proceedings pending the completion of the Federal Circuit appeals of the IPR decisions or until further order of the Court.

## I. BACKGROUND

**A.     Inter Partes Review**

Congress created the *inter partes* review procedure as a "timely, cost-effective alternative to litigation" and to establish "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." Changes to Implement Inter Partes Review Proceedings, 77 Fed. Reg. 48,680 (Aug. 14, 2012) (codified at 37 C.F.R. § 42.100 *et seq.*). *Inter partes* review allows a party other than the patentee to bring an adversarial proceeding before the PTO seeking "to cancel as unpatentable 1 or more claims of a patent . . . on a ground that could be raised under" 35 U.S.C. § 102 (novelty) or § 103 (non-obviousness) "on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311. The PTO may institute review proceedings if there is a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). If the PTO grants review, a final determination must generally be issued "not later than 1 year" after the petition for review is granted. 35 U.S.C. § 316(a)(11). The patentability determination is made by a panel of the Patent Trial and Appeal Board ("PTAB")

consisting of Administrative Patent Judges, 35 U.S.C. § 318, who must have relevant "legal knowledge and scientific ability," 35 U.S.C. § 6(a). PTAB decisions are appealable directly to the Federal Circuit. 35 U.S.C. § 141(c).

If the PTAB finds that a claim is unpatentable, and the patent holder fails to file a timely appeal or the appeal is unsuccessful, then the PTO is required to issue a certificate cancelling the claim, and the patent holder may no longer assert that claim in litigation or otherwise. 35 U.S.C. § 318(b). But, because the PTO has adopted its own rules and standards for claim construction, *see Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2146 (2016), a claim construction adopted by the PTO in an IPR proceeding is not binding on the federal district courts, *see SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016).

**B.     Factual Background**

Papst initiated this multidistrict litigation over a decade ago. Its current iteration, however, dates back to only 2015. After years of litigation, this Court granted summary judgment in favor of the "First Wave Camera Manufacturers" and entered final judgment with respect to those defendants pursuant to Federal Rule of Civil Procedure 54(b). Dkt. 560. On appeal, the Federal Circuit disagreed with the Court's claims construction and, accordingly, set aside the judgment in favor of the Camera Manufacturers. *In re Papst Licensing Dig. Camera Patent Litig.*, 778 F.3d 1255 (Fed. Cir. 2015). After the case was remanded, Papst filed new lawsuits against the Camera Manufacturers asserting two additional patents—the '746 and '144 patents—which were subsequently transferred to this Court pursuant to 28 U.S.C. § 1407. Dkt. 598; Dkt. 606.

In November and December 2016, the Court held a four-day claims construction hearing. Shortly thereafter, the Camera Manufacturers notified the Court that the PTO has instituted eight IPR proceedings regarding the '144 and '746 patents. Dkt. 663. In response, the Court directed

that the parties inform the Court of the status of those proceedings and indicate whether the Court should await a decision from the PTO before issuing a claims construction decision with respect to those patents. Minute Order (June 20, 2017). At that point, the Camera Manufacturers (but not Papst) notified that Court that the PTO had subsequently initiated IPR proceedings regarding the two other patents-in-suit, the '399 and '449 patents. Dkt. 672. In response to the Court's question, the Camera Manufacturers declined to take a position, noting that they had "not reached a consensus" among themselves. *Id.* at 4. Papst, for its part, urged the Court to press forward with the claims construction as to all four of the patents-in-suit. Dkt. 671.

In December 2017, the Camera Manufacturers notified the Court that the PTO had found all of the asserted claims of the '144 and '746 patents to be unpatentable, Dkt. 679, and, a few days later, Papst notified the Court that it had settled with the IPR petitioners who had challenged the '449 patent and that, as a result, the IPR proceedings regarding that patent were "likely to be terminated," Dkt. 680. Finally, in March 2018, the Camera Manufacturers notified the Court that the PTO had found all of the asserted claims in the remaining patent-in-suit, the '399 patent, to be unpatentable. Dkt. 682. In light of these developments, the Court again raised the question of whether and how the IPR proceedings might affect this proceeding, and, in particular, asked for the parties' views on whether the Court should stay proceedings with respect to each of the patents-in-suit pending the Federal Circuit's review of the IPR dispositions. Minute Order (Apr. 5, 2018). In response, the Camera Manufacturers took the position that the Court should stay the case with respect to all four patents-in-suit. Dkt. 683. Papst did not oppose a stay of the action with respect to the IPR patents, but opposed staying proceedings relating to the '449 patent. Dkt. 684. Although the Court had already requested the parties' views on whether to stay proceedings, Papst requested the opportunity to brief the issue, "if the Court [was] inclined to stay the case." *Id.* at 3.

The Court granted that request and provided the parties with an opportunity to submit supplemental briefs addressing whether the Court should stay the case. Minute Order (Apr. 17, 2018). As they had already done, the Camera Manufacturers responded that the Court should stay the case with respect to all four patents-in-suit, Dkt. 686, while Papst argued that a stay was only warranted with respect to the IPR patents, Dkt. 685. In the view of the Camera Manufacturers, a stay of the entire case is warranted because the Federal Circuit's decisions respecting the patentability of the asserted claims in the IPR patents are likely to shed substantial light on the construction and patentability of the asserted claims in the '449 patent. Dkt. 686. Papst disagrees with that premise and adds that, in its view, a stay would cause it undue prejudice. Dkt. 685.

The parties have brought two final developments to the Court's attention. First, in another case brought by Papst involving the '399, '449, '746, and '144 patents, the United States District Court for the Eastern District of Texas stayed proceedings regarding the IPR patents but not the '449 patent. Dkt. 688-1 at 2; *Papst Licensing GmbH & Co. KG v. Apple Inc.*, No. 6:15-cv-1095, slip op. at 1 (E.D. Tex. Aug. 9, 2018). Second, on August 1, 2018, several of the Camera Manufacturers filed a request with the PTO for reexamination of the '449 patent. Dkt. 689.

## II. ANALYSIS

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citation omitted). When deciding whether to grant a stay pending *inter partes* review, courts apply the same framework applicable to motions to stay proceedings pending reexamination. *See Universal Elecs., Inc. v. Universal Remove Control, Inc.*, 943 F. Supp. 2d 1028, 1030 (C.D. Cal. 2013). Under that approach, courts typically

consider three factors: (1) the stage of the proceeding and, in particular, whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the case; and (3) whether a stay would unduly prejudice the nonmoving party. *Id.* at 1030–31; *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). Although these factors provide helpful guidance, the Court must ultimately base its decision on "the totality of the circumstances." *Universal Elecs.*, 943 F. Supp. 2d at 1031 (quoting *Allergan Inc. v. Cayman Chem. Co.*, No. SACV 07–01316–JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009)). The same general approach, moreover, applies to a court's determination whether to stay a case pending review by the Federal Circuit of the PTO's findings in a related IPR proceeding. *See* Dkt. 688-1 at 4–5; *Papst*, slip op. at 3–4 (E.D. Tex.).

**A.     Stay of Proceedings Regarding the IPR Patents**

The Camera Manufacturers request that the Court stay proceedings relating to the IPR patents pending completion of the Federal Circuit appeals, and Papst does not oppose that request. The Court agrees that a stay of proceedings with respect to those patents is warranted. Among other things, if the Federal Circuit sustains the decisions of the PTO, the PTO will cancel the asserted claims in those patents, resolving that portion of the present litigation. If the Federal Circuit reverses the PTO is whole or in part, moreover, it is likely to provide useful guidance for this Court.

**B.     Stay of Proceedings Regarding the '449 Patent**

Although less clear cut, the Court also concludes that a stay is warranted with respect to the '449 patent. Each of the three factors relevant to the stay determination either weighs in favor of granting a stay or is, at best, neutral.

6

1. *Stage of the Proceeding*

The parties take very different views with respect to how the first factor—the stage of the proceeding—applies in this case. Papst correctly observes that this litigation has been pending for over a decade, and it argues that this fact—standing alone—counsels against staying the action. Dkt. 685 at 6–8. The Camera Manufacturers, in turn, correctly observe that "the '449 patent litigation remains at an early stage, with discovery and claim construction not complete, revised infringement or invalidity contentions possible[,] . . . dispositive motions still to be filed, expert discovery still remaining, and the rest of the pre-trial activities not yet scheduled." Dkt. 686 at 3. In their view, moreover, the age of the litigation tells only a part of the story because "[t]he current instantiation of the case"—that is, the case post-remand from the Federal Circuit— "has been pending only since 2015," and because "Papst itself bears much of the responsibility for protracting the litigation prior to the [Federal Circuit] appeal." *Id.* at 3 n.2.

Without deciding who, if anyone, was to blame for earlier delays in the proceeding, the Court concludes that the Camera Manufacturers have the better of the arguments with respect to the first factor. Although Papst is understandably frustrated by the long duration of this litigation, it conflates this factor—which focuses on the *stage* of the proceeding—with the third factor—which considers any undue *prejudice* to the non-moving party. In 2015, the Federal Circuit reversed this Court's claims construction decision and vacated its decision granting summary judgment in favor of the First Wave Camera Manufacturers. *In re Papst*, 778 F.3d at 1271. In light of that decision, much of the case began anew on remand. It was not long after the Court held the renewed *Markman* hearing, however, that the Camera Manufacturers notified the Court that the PTO had instituted the first set of IPR proceedings. Dkt. 663. The Court, as a result, has yet to issue its claims construction decision, and it has yet to set a schedule for the completion of discovery, dispositive motions, and, if appropriate, trial.

In this respect, this case differs from the litigation pending in the Eastern District of Texas involving the same patents-in-suit. Unlike the present litigation, that "case has progressed through claim construction, fact and expert discovery and exchange of pretrial disclosures," and the court has indicated that it intends to set the case for trial in October 2018. Dkt. 688-1 at 8; *Papst*, slip op. at 7 (E.D. Tex.). Because that trial date is only "three months away," the court held that "the stage of litigation [weighs] against a stay." Dkt. 688-1 at 8; *Papst*, slip op. at 7 (E.D. Tex.). Applying that same analysis, the opposite conclusion follows here. The case has not progressed through claims construction, discovery and pretrial disclosures are not complete, the parties have not filed dispositive motions, and the case has not been set for trial.

The Court, accordingly, finds that the first factor weighs in favor of granting the Camera Manufacturers' request for a stay.

2. *Simplification of the Case*

"[T]he most important factor bearing on whether to grant a stay . . . is the prospect that the inter partes review"—or, as here, the Federal Circuit's review of the PTO's IPR decisions—"will result in simplification of the issues before the Court." *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J.). The parties agree, as they must, that resolution of the pending Federal Circuit appeals will simplify at least portions of this case. The PTO found that all of the asserted claims in the IPR patents are unpatentable. To the extent those decisions are upheld, the PTO will cancel the claims, thus precluding Papst from relying on any such claim in this litigation. And, to the extent the Federal Circuit reverses, its decision—even if the court applies a different standard from the one applicable in this case—will likely provide the Court will significant guidance. None of the pending appeals or IPR proceedings, however, involve the '449 patent, and the parties disagree about whether the

8

Federal Circuit's decisions regarding the other patents are likely to simplify proceedings before this Court as they relate to the '449 patent.

The Camera Manufacturers argue that "the Federal Circuit's opinions likely will provide helpful guidance on numerous issues relevant to the '449 patent." Dkt. 683 at 11. Most notably, in their view, those opinions will likely address the same prior art references—Aytac, Kawaguchi, NcNeill, and Yamamoto—that the Camera Manufacturers contend invalidate the '449 patent. *Id.* In addition, according to the Camera Manufacturers, "the Federal Circuit's analysis of claim construction issues applicable to the '449 patent likely will simplify and inform this Court's . . . adjudication of summary judgment motions for the '449 patent." *Id.* Papst disagrees on both counts. With respect to the prior art references, it asserts that the IPR procedure applies a preponderance of the evidence standard, while the clear and convincing standard of proof will apply to any prior art challenge the Camera Manufacturers may assert in this proceeding. Dkt. 685 at 11. They also stress, moreover, that this Court can issue a claims construction decision without the benefit of the Federal Circuit's views regarding any prior art. *Id.* at 11–12. And, with respect to the claims construction issues, Papst simply disagrees with the Camera Manufacturers that any of the issues raised in the pending appeals are likely to bear on any disputed terms in the '449 patent. *Id.* at 9–11.

The Court, once again, concludes that the Camera Manufacturers have the better of the arguments. Papst is, of course, correct that different standards of proof apply in IPR and district court proceedings. But that takes too narrow a view of the simplification of issues that will likely result from the Federal Circuit opinions. Regardless of what standard the Federal Circuit applies, its understanding of the scope, content, and application of the asserted prior art is likely to assist the Court in this proceeding. Papst also takes too narrow a view of the possibility that the Federal Circuit's decisions will address the meaning of terms that appear in both the IPR

patents and the '449 patent. Papst focuses on the terms that are currently in dispute between the parties in this case and argues that none of those same terms are at issue in the Federal Circuit cases. But, as long as "terms found in the '449 patent are at issue in the pending IPR appeals," as the Camera Manufacturers represent, Dkt. 686 at 5, the Federal Circuit decision will likely clarify future proceedings before this Court.

The Court, accordingly, finds that the second factor also weighs in favor of granting the Camera Manufacturers' request for a stay.

3. *Undue Prejudice*

This leaves the final factor—undue prejudice. Papst identifies three forms of prejudice that it says it will suffer if the Court grants a stay. First, Papst asserts that it will be prejudiced due to "the extraordinary amount of time and resources spent on this litigation." Dkt. 685 at 12. It is undoubtedly true that all of the parties have devoted enormous time and resources to this case. But Papst's contention that these expenditures establish undue prejudice has it backwards. The limited delay that will be occasioned by waiting for the Federal Circuit to render its decisions will likely *save* the parties from incurring unnecessary expenses resulting from piecemeal litigation (since all agree that a stay is warranted as to the IPR patents) and from the need to repeat various tasks (once the parties and the Court receive valuable input from the Federal Circuit). With the benefit of guidance from the Federal Circuit, the parties will be able to focus their efforts on the issues that will, in the end, matter most.

Second, Papst asserts that it will be prejudiced because a stay will result in "the loss of damages that [it] may be able to recover" and will diminish its "ability to license [the '449] patent." Dkt. 685 at 12. It is far from clear, however, that the stay will materially delay the entry of final judgment in this case; rather, waiting for the Federal Circuit decisions may well streamline the litigation. Moreover, even if the Court were to assume that a stay might delay

10

entry of final judgment, assume that the '449 patent is valid, and assume that Papst will prevail on its claims that the Camera Manufacturers have infringed the patent, Papst has not shown that it would suffer any undue prejudice. There is no claim for injunctive relief in this case, and, if Papst prevails, it will be entitled to damages and will be able to apply for an award of prejudgment interest. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983). And, although Papst contends that it may lose licensing opportunities in the interim, it has failed to offer any evidence that that is so.

Finally, Papst argues that it will be prejudiced by the loss of evidence due to the additional passage of time. Dkt. 685 at 13. It asserts, in particular, that "it is likely that many of the business units and/or employees associated with the accused products have disappeared" and that, even if those employees still work for defendants, "it is foreseeable that memories and evidence have faded over the passage of time." *Id.* Papst fails to explain, however, why waiting less than a year (or so) for decisions from the Federal Circuit, *see* Dkt. 686 at 4 & n.3 (estimating time required for IPR appeals), would add in any material respect to this concern. To be sure, memories may dim with every passing year, but more is required to tip the scale against issuance of a stay of limited duration that is likely to simplify and streamline a case. As Judge Bryson observed in response to a similar contention, a "generalized claim" that "memories will fade and discovery may likely be lost" carries "little weight" in the absence of "any showing as to particular evidence or discovery that is at risk of being lost." *NFC Tech.*, 2015 WL 1069111, at *3.

\* \* \*

The Court understands Papst's desire to move this case forward. It has been pending for many years, and it still has a long way to go. But that consideration, standing alone, does not provide sufficient justification for pressing forward with respect to one of four patents-in-suit,

11

where that patent overlaps in significant respects with the remaining patents, which are the subject of pending Federal Circuit appeals. Those appeals are likely to resolve a number of significant issues regarding the IPR patents, and, by implication, with respect to the '449 patent. The Court, accordingly, finds that the relevant factors tip in favor a granting a stay. Finally, because the pending Federal Circuit appeals provide sufficient basis to grant the Camera Manufacturers' request for a stay, the Court need not—and does not—consider whether the pending request for reexamination of the '449 patent provides further grounds for a stay.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Camera Manufacturers' request for a stay, Dkt. 686, and will **STAY** these proceedings with respect to all four patents-in-suit pending the completion of the Federal Circuit appeals of the IPR patents or further order of the Court. The Court further **ORDERS** that the parties promptly notify the Court of any material developments in those appeals, including the issuance of any decisions by the Federal Circuit, and of any material developments relating to pending request for reexamination of the '449 patent.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 15, 2018